UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JANIAH MONROE, MARILYN MELENDEZ, EBONY STAMPS, LYDIA HELÉNA VISION, SORA KUYKENDALL, and SASHA REED,<br><br>Plaintiffs,<br><br>v.<br><br>BRUCE RAUNER, JOHN BALDWIN, STEVE MEEKS, and MELVIN HINTON,<br><br>Defendants. | Civil No. 3:18-cv-00156-DRH-DGW |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANT RAUNER'S MOTION TO DISMISS**

Plaintiffs in this case are women currently in the custody of the Illinois Department of Corrections (IDOC) who are transgender. Compl. ¶ 1. They have alleged that "IDOC systematically fails to provide necessary medical treatment for gender dysphoria," and seek, on behalf of a putative class, declaratory and injunctive relief "to force IDOC to provide constitutionally adequate medical treatment for prisoners seeking evaluation and treatment for gender dysphoria." *Id.* ¶¶ 4, 6.

Defendant Governor Rauner is the Chief Executive Officer of the State of Illinois. Compl. ¶ 46. Plaintiffs allege that Governor Rauner "is responsible for ensuring the provision of constitutionally adequate medical care for all prisoners in the custody of IDOC, including those who have requested evaluation or treatment for gender dysphoria." *Id.* ¶ 46. Governor Rauner is empowered by the Illinois Constitution with "the supreme executive power." ILL. CONST. art. V, § 8.

Despite Governor Rauner's constitutional authority as the executive, and despite Plaintiffs' allegations that he bears responsibility for ensuring the provision of constitutionally adequate medical care for IDOC prisoners, Governor Rauner has moved to dismiss, arguing without explanation that he "would not be involved in carrying out any prospective injunctive relief." Mot. at 3.

The Motion should be denied. At the pleading stage, and for purposes of surviving Governor Rauner's Rule 12(b)(6) Motion, Plaintiffs have adequately provided the basis for why Governor Rauner is a proper defendant. *See* Compl. ¶ 46. It remains to be seen what prospective injunctive relief the Court will order in this case, but it would be remarkable to conclude in advance of discovery that Governor Rauner as chief executive has no power over the Illinois Department of Corrections such that he would have no role in carrying out that relief. Regardless, Plaintiffs are entitled to take that discovery and to proceed in this case with Governor Rauner remaining as a defendant.

## BACKGROUND

The named Plaintiffs represent a putative class of prisoners in the custody of IDOC who are transgender and who have requested evaluation or treatment for gender dysphoria. Compl. ¶ 1. Gender dysphoria refers to the clinically significant distress that may accompany incongruence between one's experienced or expressed gender and one's assigned gender. *Id.* ¶ 3. The American Medical Association, the American Psychiatric Association, the American Psychological Association, the Endocrine Society, and the World Professional Association for Transgender Health all recognize gender dysphoria as a serious medical condition. *Id.* Medically necessary treatment for gender dysphoria may include social transition, hormone therapy, and surgery. *Id.*

Plaintiffs allege that IDOC systematically fails to provide necessary medical treatment for transgender inmates suffering from gender dysphoria. Compl. ¶ 4. Among common and medically necessary treatments, IDOC routinely fails to provide adequate hormone therapy and to accommodate social transition so that a prisoner can live consistently with his or her gender identity. *Id.* And while gender affirming surgery also is medically necessary for some patients with gender dysphoria, IDOC has adopted a policy that such surgery can be approved only in "extraordinary circumstances," which in practice means that IDOC never has approved any prisoner for surgical gender dysphoria treatment. *Id.* If a prisoner does manage to obtain any medical treatment, it is typically after substantial delay, and the treatment ultimately falls woefully short of accepted medical standards. *Id.*

## ARGUMENT

It is well-established that State officials such as Governor Rauner are proper defendants (and do not enjoy sovereign immunity) when a lawsuit seeks prospective injunctive relief under federal law, and the state official being sued has "some connection with the enforcement of the [law]." *Ex Parte Young*, 209 U.S. 123, 157 (1908). "Personal action by defendants individually is not a necessary condition of injunctive relief against state officers in their official capacity. All that is required is that the official be responsible for the challenged action." *Luckey v. Harris*, 860 F.2d 1012, 1015 (11th Cir. 1988) (governor properly named in § 1983 suit brought by indigent defendant alleging inadequate representation and denial of counsel because of the governor's power to commence prosecutions and responsibility for administering system of representation for indigent defendants).

Consistent with this principle, courts regularly deny motions to dismiss State governors as defendants in constitutional challenges seeking systemic relief brought pursuant to Section 1983.

*See, e.g.*, *Church v. Missouri*, 268 F. Supp. 3d 992, 1012–13 (W.D. Mo. 2017) (governor properly named in class action brought by arrestees alleging inadequate representation and denial of counsel, because governor exercised power to commence prosecutions, to distribute funding to public defender, and to appoint public defender leadership); *Bowling v. Pence*, 39 F. Supp. 3d 1025, 1028–29 (S.D. Ind. 2014) (governor properly named in case challenging same-sex marriage ban, in part, "because [the claim] is not based on the governor's general duty to enforce the laws. It is based on his specific ability to command the executive branch regarding the law."); *Connor B. ex rel. Vigurs v. Patrick*, 771 F. Supp. 2d 142, 158–59 (D. Mass. 2011) (governor properly named in constitutional challenge to state foster care system because, among other reasons, the governor had "direct supervisory authority over [the agency director], who develops and implements [agency] policies and programs"); *see also Futernick v. Sumpter Twp.*, 78 F.3d 1051, 1055 n.5 (6th Cir. 1996), abrogated on other grounds by *Boone v. Spurgess*, 385 F.3d 923 (6th Cir. 2004) (rejecting as "ridiculous" defendants' argument that "only the officer with immediate control over the challenged act or omission is amenable to § 1983" and explaining that "[t]he directors of a state agency, no matter how far removed from the actions of agency employees, are proper parties to a suit for an *injunction* under § 1983.") (emphasis in original).

Illinois is no different; the Governor routinely is a defendant in actions seeking injunctive relief. *See, e.g.*, *H.O.P.E., Inc. v. Eden Mgmt. LLC*, No. 13-CV-7391, 2017 WL 4339824, at *9 (N.D. Ill. Sept. 29, 2017) (denying Governor Rauner's motion to dismiss where "[t]he complaint alleges enough to show that Illinois' governor has 'some connection' to enforcing the challenged rules, policies, and practices …."); *Marie O. v. Edgar*, 157 F.R.D. 433, 435 (N.D. Ill. 1994) (denying Governor's motion to dismiss in "action aris[ing] out of the state of Illinois' alleged failure to provide critical early intervention services to developmentally-delayed infants and

toddlers under The Individuals With Disabilities Education Act"); *see also Lippert v. Baldwin*, N.D. Ill. Case No. 10-c-4603 (Governor Rauner as a defendant in a class action alleging that the health care provided to incarcerated individuals in IDOC violates constitutional standards); *Williams v. Quinn*, 748 F. Supp. 2d 892, 894 (N.D. Ill. 2010) (former Governor Quinn as a defendant in case to force the state to "provide persons with mental illnesses who reside in privately owned Institutions for Mental Diseases … the opportunity to be placed in an integrated community setting."); *Colbert v. Blagojevich*, No. 07 C 4737, 2008 WL 4442597 (N.D. Ill. Sept. 29, 2008) (former Governor Blagojevich as defendant in case involving class of Medicaid-eligible individuals alleging that Illinois officials failed to provide adequate long-term services in an integrated setting).

The case law Governor Rauner cites in his Motion is not to the contrary. In *Randle v. Butler*, No. 16-cv-01191-NJR, 2017 WL 1035752 (S.D. Ill. Mar. 17, 2017), the court dismissed *without prejudice* a claim against Governor Rauner because his "involvement in prison housing decisions is not established by the allegations." *Id.* at *7. As explained above, Plaintiffs here adequately have pled Governor Rauner's responsibility for the classwide and systemic inadequacies in medical treatment for gender dysphoria provided to prisoners in IDOC.

*Hearne v. Board of Education of City of Chicago*, 185 F.3d 770, 777 (7th Cir. 1999) likewise is inapposite. *Hearne* affirmed dismissal of various claims against the governor because the "plaintiffs [did] not and could not ask anything of the governor that could conceivably help their cause." *Id.* at 777. The plaintiffs in *Hearne* were Chicago Public School employees who claimed that Illinois laws wrongly eliminated civil service protections. In affirming dismissal of the governor, the Seventh Circuit reasoned that he had "no role to play in the enforcement of the challenged statutes, nor [did he] have the power to nullify legislation once it has entered into

force." *Id*. In this case, Plaintiffs are not asking Governor Rauner to enforce or nullify a statute. Rather, on behalf of a putative class, they seek systemic changes to IDOC to remedy constitutional deficiencies in medical care for gender dysphoria. Defendant cites no authority interpreting *Hearne* to warrant dismissal in these circumstances. And the fundamental deficiency that made the governor an improper defendant in *Hearne*—that "the State was not the relevant employer," *id.* at 774—simply does not exist here. *See Tibbs v. Admin. Office of the Illinois Courts*, 860 F.3d 502, 508 (7th Cir. 2017) (explaining that *Hearne* "held that Chicago teachers employed by the local board of education could not sue the Governor, the State of Illinois, or the Illinois Educational Labor Relations Board under Title VII because none was plaintiffs' employer," and that "[t]he *Hearne* decision distinguished between *local* and *State* government entities, not the much finer difference between a State and its agencies") (emphasis in original).

Plaintiffs have good reason to allege that Governor Rauner "is responsible for ensuring the provision of constitutionally adequate medical care for all prisoners in the custody of IDOC, including those who have requested evaluation or treatment for gender dysphoria," Compl. ¶ 46, and thus to conclude that he would be involved in carrying out prospective injunctive relief. As Chief Executive Officer of the State of Illinois, Governor Rauner exercises executive and administrative authority over IDOC. He nominated Defendant Baldwin to the position as the Director of IDOC.[1] *See* ILL. CONST. art. V, § 9 (Governor's constitutional appointing power).

Governor Rauner has issued executive orders that have direct and immediate legal impact on IDOC. *See* ILL. CONST. art. V, § 11 (Governor's power to "reassign functions among or reorganize executive agencies…"). For example, in February of 2015, he issued Executive Order No. 15-14, entitled, "Executive Order Establishing the Illinois State Commission on Criminal

---

[1] https://www2.illinois.gov/idoc/aboutus/Pages/director.aspx (last visited April 9, 2018) ("John Baldwin was named director of the Illinois Department of Corrections August 14, 2015, by Governor Bruce Rauner.").

Justice and Sentencing Reform."[2] That Executive Order established a commission to review criminal justice sentencing practices and the use of alternatives to incarceration in IDOC prisons, and included a review and evaluation of the availability of education, job training, and re-entry preparation programs in IDOC prisons designed to facilitate inmates' transitions back into their communities after release. Likewise, in December of 2009, Governor Rauner's predecessor announced an "overhaul of the [IDOC] Meritorious Good Time program," and included a directive to "[b]olster IDOC [o]perations" through improved communications between the Governor's office and IDOC.[3] The Order included the appointment of new IDOC officials responsible for overseeing the initiatives, who would report directly to the Office of Governor's General Counsel.

Governor Rauner's public statements further demonstrate his authority and oversight for IDOC. In Governor Rauner's 2015 State of the State Address, he explained that: "The conditions in our prisons are unacceptable. Inmates and corrections officers alike find themselves in an unsafe environment. It's wrong. We will hire more correctional officers to improve safety in our prisons."[4] Governor Rauner similarly touted his authority over IDOC in his 2017 State of the State Address:

> Over the past two years[,] our Administration has worked to … address underlying behavioral and mental health issues for those in our systems of care … We've shuttered the outdated Roundhouse at Stateville Prison while repurposing two other facilities in Murphysboro and Kewanee as life skill centers to help non-violent offenders return to the work force more effectively.[5]

---

[2] *See* Illinois.gov, Executive Orders, available at:
https://www2.illinois.gov/Pages/government/execorders/2015_14.aspx (last visited April 9, 2018).
[3] Illinois.gov, "Governor Quinn Overhauls Prison Release Program," December 30, 2009, available at:
https://www2.illinois.gov/Pages/news-item.aspx?ReleaseID=8138 (last visited April 9, 2018).
[4] Governor Bruce Rauner, 2015 Illinois State of the State Address at 11, Illinois.gov, available at:
https://www2.illinois.gov/gov/Documents/SOS_Transcript_02_04_15.pdf (last visited April 9, 2018).
[5] Governor Bruce Rauner, 2017 Illinois State of the State Address, IllinoisPolicy.org, available at:
https://www.illinoispolicy.org/gov-bruce-rauners-2017-state-of-the-state-address/ (last visited April 9, 2018).

Governor Rauner thus claims not only to be capable of affecting IDOC policy, but to directly effectuate changes, at least according to his public pronouncements.

Nonetheless, Governor Rauner argues in his Motion, without explanation, that, with respect to this case, he "would not be involved in carrying out any prospective injunctive relief." Mot. at 3. As explained above, this assertion is likely factually incorrect. At minimum, Plaintiffs are entitled to discovery that would reveal whether Governor Rauner has authority over IDOC. *See Marie O.*, 157 F.R.D. at 437 ("A common thread running through the Governor's motion to dismiss is his assertion that he is not responsible for the plaintiffs' alleged injury. Such a determination, however, is premature at this juncture."). Plaintiffs have alleged that Governor Rauner "is responsible for ensuring the provision of constitutionally adequate medical care for all prisoners in the custody of IDOC, including those who have requested evaluation or treatment for gender dysphoria." Compl. ¶ 46. For purposes of Governor Rauner's Motion to Dismiss, this allegation must be taken as true, with all possible inferences drawn in Plaintiffs' favor. *See Tamayo v. Blagojevich*, 526 F.3d 1074, 1078 (7th Cir. 2008). The Motion should be denied.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court deny Defendant Governor Rauner's Motion to Dismiss.

Dated: April 26, 2018

Respectfully submitted,

By: /s/ *Scott Lerner*
John A. Knight
Ghirlandi Guidetti
ROGER BALDWIN FOUNDATION OF ACLU, INC.
180 North Michigan Avenue, Suite 2300
Chicago, Illinois 60601
Telephone: (312) 201-9740
Facsimile: (312) 201-9760
jknight@ACLU-il.org
gguidetti@ACLU-il.org

Catherine L. Fitzpatrick
Jordan M. Heinz
Erica B. Zolner
Megan M. New
Scott Lerner
KIRKLAND & ELLIS LLP
300 North LaSalle Street
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
catherine.fitzpatrick@kirkland.com
jordan.heinz@kirkland.com
erica.zolner@kirkland.com
megan.new@kirkland.com
scott.lerner@kirkland.com

*Attorneys for Plaintiffs*

## **CERTIFICATE OF SERVICE**

I certify that on April 26, 2018, I electronically filed the foregoing document and any attachments with the Clerk of this Court by using the CM/ECF system, which will accomplish service through the Notice of Electronic Filing for parties and attorneys who are Filing Users.

/s/ *Scott Lerner*