## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF ILLINOIS

JANIAH MONROE, MARILYN      )
MELENDEZ, EBONY STAMPS, LYDIA )
HELÉNA VISION, SORA KUYKENDALL, )
and SASHA REED,             )
                            )
        Plaintiffs,      )
                            )
v.                          )    Civil No. 3:18-cv-00156-DRH-DGW
                            )
BRUCE RAUNER, JOHN BALDWIN, )
STEVE MEEKS, and MELVIN HINTON, )
                            )
        Defendants.      )

## PLAINTIFFS' OBJECTIONS TO MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 73.1(b), Plaintiffs respectfully submit the following objections to the Magistrate Judge's Report and Recommendation ("R&R," Dkt. 91), issued on November 9, 2018. As explained below, Plaintiffs respectfully object to the following:

(1) The recommendation that Defendant Governor Rauner's Rule 12(b)(6) motion be granted and that he be dismissed from the case. While dismissal is not warranted at all, any dismissal should be without prejudice.

(2) The recommended finding of fact that characterizes Plaintiffs' opposition to Defendant Governor Rauner's motion to dismiss. (*See* R&R at 2 ("Plaintiff opposes the motion, arguing that [Defendant Rauner] is the very person who can provide the full relief they seek.").

(3) The recommended conclusions of law that "Plaintiff[s'] allegations against the Governor's office are not robust or detailed enough to push them over the line from possibility to plausibility," (R&R at 3); that "Plaintiffs allege systemic problems with delivery of care to transgender inmates but do not tie such relief to the Governor's office," (R&R at 4); and that "the Complaint fails to set forth what the Governor could conceivably do to remedy the alleged constitutional violations above and beyond the other named parties" such that "[h]is inclusion in this lawsuit appears superfluous," (*id.*).

## BACKGROUND

Plaintiffs in this case are women currently in the custody of the Illinois Department of Corrections (IDOC) who are transgender.  Compl. ¶ 1.  They have alleged that "IDOC systematically fails to provide necessary medical treatment for gender dysphoria," and seek, on behalf of a putative class, declaratory and injunctive relief "to force IDOC to provide constitutionally adequate medical treatment for prisoners seeking evaluation and treatment for gender dysphoria." *Id.* ¶¶ 4, 6.

Gender dysphoria refers to the clinically significant distress that may accompany incongruence between one's experienced or expressed gender and one's assigned gender. *Id.* ¶ 3. The American Medical Association, the American Psychiatric Association, the American Psychological Association, the Endocrine Society, and the World Professional Association for Transgender Health all recognize gender dysphoria as a serious medical condition. *Id.*  Medically necessary treatment for gender dysphoria may include social transition, hormone therapy, and surgery.  *Id.*

Plaintiffs allege that IDOC systematically fails to provide necessary medical treatment for transgender inmates suffering from gender dysphoria. Compl. ¶ 4. Among common and medically

necessary treatments, IDOC routinely fails to provide adequate hormone therapy and to accommodate social transition so that a prisoner can live consistently with his or her gender identity.  *Id*.  And while gender affirming surgery also is medically necessary for some patients with gender dysphoria, IDOC has adopted a policy that such surgery can be approved only in "extraordinary circumstances," which in practice means that IDOC never has approved any prisoner for surgical gender dysphoria treatment.  *Id*.  If a prisoner does manage to obtain any medical treatment, it is typically after substantial delay, and the treatment ultimately falls woefully short of accepted medical standards.  *Id*.

Defendant Governor Rauner is the Chief Executive Officer of the State of Illinois. Compl. ¶ 46.  Plaintiffs allege that Governor Rauner "is responsible for ensuring the provision of constitutionally adequate medical care for all prisoners in the custody of IDOC, including those who have requested evaluation or treatment for gender dysphoria."  *Id*.  Governor Rauner is empowered by the Illinois Constitution with "the supreme executive power."  ILL. CONST. art. V, § 8.

Despite Governor Rauner's constitutional authority as the executive, and despite Plaintiffs' allegations that he bears responsibility for ensuring the provision of constitutionally adequate medical care for IDOC prisoners, Governor Rauner moved to dismiss on March 27, 2018, arguing without explanation or elaboration that he "would not be involved in carrying out any prospective injunctive relief."  Dkt. 41 at 3.

Plaintiffs responded on April 26, 2018, arguing, *inter alia*, that "[a]t the pleading stage, and for purposes of surviving Governor Rauner's Rule 12(b)(6) Motion, Plaintiffs have adequately provided the basis for why Governor Rauner is a proper defendant."  Dkt. 55 at 2 (citing Compl. ¶ 46).  Plaintiffs explained: "It remains to be seen what prospective injunctive relief the Court will

order in this case, but it would be remarkable to conclude in advance of discovery that Governor Rauner as chief executive has no power over the Illinois Department of Corrections such that he would have no role in carrying out that relief.  Regardless, Plaintiffs are entitled to take that discovery and to proceed in this case with Governor Rauner remaining as a defendant." Dkt. 55 at 2.

The Magistrate Judge issued a Report and Recommendation on November 9, 2018, recommending that Defendant Rauner's motion be granted and that the Governor be dismissed from the case with prejudice.  R&R at 4–5.

## OBJECTIONS

## I.   DISMISSAL OF DEFENDANT GOVERNOR RAUNER IS NOT WARRANTED.

It is well-established that State officials such as Governor Rauner are proper defendants (and do not enjoy sovereign immunity) when a lawsuit seeks prospective injunctive relief under federal law, and the state official being sued has "some connection with the enforcement of the [law]." *Ex parte Young*, 209 U.S. 123, 157 (1908).  "Personal action by defendants individually is not a necessary condition of injunctive relief against state officers in their official capacity. All that is required is that the official be responsible for the challenged action." *Luckey v. Harris*, 860 F.2d 1012, 1015 (11th Cir. 1988) (governor properly named in § 1983 suit brought by indigent defendant alleging inadequate representation and denial of counsel because of the governor's power to commence prosecutions and responsibility for administering system of representation for indigent defendants).

Consistent with this principle, courts regularly deny motions to dismiss State governors as defendants in constitutional challenges seeking systemic relief brought pursuant to Section 1983. *See, e.g.*, *Church v. Missouri*, 268 F. Supp. 3d 992, 1012–13 (W.D. Mo. 2017) (governor properly named in class action brought by arrestees alleging inadequate representation and denial of

counsel, because governor exercised power to commence prosecutions, to distribute funding to public defender, and to appoint public defender leadership); *Bowling v. Pence*, 39 F. Supp. 3d 1025, 1028–29 (S.D. Ind. 2014) (governor properly named in case challenging same-sex marriage ban, in part, "because [the claim] is not based on the governor's general duty to enforce the laws. It is based on his specific ability to command the executive branch regarding the law."); *Connor B. ex rel. Vigurs v. Patrick*, 771 F. Supp. 2d 142, 158–59 (D. Mass. 2011) (governor properly named in constitutional challenge to state foster care system because, among other reasons, the governor had "direct supervisory authority over [the agency director], who develops and implements [agency] policies and programs."); *see also Futernick v. Sumpter Twp.*, 78 F.3d 1051, 1055 n.5 (6th Cir. 1996), *abrogated on other grounds by Boone v. Spurgess*, 385 F.3d 923 (6th Cir. 2004) (rejecting as "ridiculous" defendants' argument that "only the officer with immediate control over the challenged act or omission is amenable to § 1983" and explaining that "[t]he directors of a state agency, no matter how far removed from the actions of agency employees, are proper parties to a suit for an *injunction* under § 1983") (emphasis in original).

Illinois is no different; the Governor routinely is a defendant in actions seeking injunctive relief. *See, e.g.*, *H.O.P.E., Inc. v. Eden Mgmt. LLC*, No. 13-CV-7391, 2017 WL 4339824, at *9 (N.D. Ill. Sept. 29, 2017) (denying Governor Rauner's motion to dismiss where "[t]he complaint alleges enough to show that Illinois' governor has 'some connection' to enforcing the challenged rules, policies, and practices."); *Marie O. v. Edgar*, 157 F.R.D. 433, 435 (N.D. Ill. 1994) (denying Governor's motion to dismiss in "action aris[ing] out of the state of Illinois' alleged failure to provide critical early intervention services to developmentally-delayed infants and toddlers under The Individuals With Disabilities Education Act"); *see also Lippert v. Baldwin*, N.D. Ill. Case No. 10-cv-4603 (Governor Rauner as a defendant in a class action alleging that the health care provided

to incarcerated individuals in IDOC violates constitutional standards); *Williams v. Quinn*, 748 F. Supp. 2d 892, 894 (N.D. Ill. 2010) (former Governor Quinn as a defendant in case to force the state to "provide persons with mental illnesses who reside in privately owned Institutions for Mental Diseases … the opportunity to be placed in an integrated community setting."); *Colbert v. Blagojevich*, No. 07 C 4737, 2008 WL 4442597 (N.D. Ill. Sept. 29, 2008) (former Governor Blagojevich as defendant in case involving class of Medicaid-eligible individuals alleging that Illinois officials failed to provide adequate long-term services in an integrated setting).

The case law Governor Rauner cited in his motion (Dkt. 41 at 3–4), and which the Magistrate Judge relied on in his Report and Recommendation (R&R at 4) is not to the contrary. In *Randle v. Butler*, No. 16-cv-01191-NJR, 2017 WL 1035752 (S.D. Ill. Mar. 17, 2017), the court dismissed *without prejudice* a claim against Governor Rauner because his "involvement in prison housing decisions is not established by the allegations." *Id.* at *7.  As explained above, Plaintiffs here adequately have pled Governor Rauner's responsibility for the classwide and systemic inadequacies in medical treatment for gender dysphoria provided to prisoners in IDOC.

*Hearne v. Board of Education of City of Chicago*, 185 F.3d 770, 777 (7th Cir. 1999) likewise is inapposite.  *Hearne* affirmed dismissal of various claims against the governor because the "plaintiffs [did] not and could not ask anything of the governor that could conceivably help their cause." *Id*. at 777.  The plaintiffs in *Hearne* were Chicago Public School employees who claimed that Illinois laws wrongly eliminated civil service protections.  In affirming dismissal of the governor, the Seventh Circuit reasoned that he had "no role to play in the enforcement of the challenged statutes, nor [did he] have the power to nullify legislation once it has entered into force." *Id*.  In this case, Plaintiffs are not asking Governor Rauner to enforce or nullify a statute. Rather, on behalf of a putative class, they seek systemic changes to IDOC to remedy constitutional

deficiencies in medical care for gender dysphoria. Neither Defendants nor the Report and Recommendation cite any authority interpreting *Hearne* to warrant dismissal in these circumstances. And the fundamental deficiency that made the governor an improper defendant in *Hearne*—that "the State was not the relevant employer," *id.* at 774—simply does not exist here. *See Tibbs v. Admin. Office of Illinois Courts*, 860 F.3d 502, 508 (7th Cir. 2017) (explaining that *Hearne* "held that Chicago teachers employed by the local board of education could not sue the Governor, the State of Illinois, or the Illinois Educational Labor Relations Board under Title VII because none was plaintiffs' employer," and that "[t]he *Hearne* decision distinguished between *local* and *State* government entities, not the much finer difference between a State and its agencies") (emphasis in original).

Plaintiffs have good reason to allege that Governor Rauner "is responsible for ensuring the provision of constitutionally adequate medical care for all prisoners in the custody of IDOC, including those who have requested evaluation or treatment for gender dysphoria," Compl. ¶ 46, and thus to conclude that he would be involved in carrying out prospective injunctive relief.[1] As Chief Executive Officer of the State of Illinois, Governor Rauner exercises executive and administrative authority over IDOC. He nominated Defendant Baldwin to the position as the Director of IDOC.[2] *See* ILL. CONST. art. V, § 9 (Governor's constitutional appointing power).

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Governor-elect Pritzker automatically will be substituted as a party in this case when Governor Rauner leaves office. *See* FED. R. CIV. P. 25(d) ("An action does not abate when a public officer who is a party in an official capacity … ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party."). The new governor will have the same executive and administrative authority to direct the relief Plaintiffs seek as Governor Rauner, and thus will remain an appropriate defendant in this case. Indeed, Governor-elect Pritzker campaigned in part on promising criminal justice reform, including "[c]onnect[ing] people in prison with evidence-based rehabilitative services including job training, education, mental health and substance abuse treatment." *See* https://www.jbpritzker.com/criminal-justice (last visited November 19, 2018).

[2] https://www2.illinois.gov/idoc/aboutus/Pages/director.aspx (last visited November 14, 2018) ("John Baldwin was named director of the Illinois Department of Corrections August 14, 2015, by Governor Bruce Rauner.").

Governor Rauner has issued executive orders that have direct and immediate legal impact on IDOC.  *See* ILL. CONST. art. V, § 11 (Governor's power to "reassign functions among or reorganize executive agencies.").  For example, in February of 2015, he issued Executive Order No. 15-14, entitled, "Executive Order Establishing the Illinois State Commission on Criminal Justice and Sentencing Reform."[3]  That Executive Order established a commission to review criminal justice sentencing practices and the use of alternatives to incarceration in IDOC prisons, and included a review and evaluation of the availability of education, job training, and re-entry preparation programs in IDOC prisons designed to facilitate inmates' transitions back into their communities after release.  Likewise, in December of 2009, Governor Rauner's predecessor announced an "overhaul of the [IDOC] Meritorious Good Time program," and included a directive to "[b]olster IDOC [o]perations" through improved communications between the Governor's office and IDOC.[4]  The Order included the appointment of new IDOC officials responsible for overseeing the initiatives, who would report directly to the Office of Governor's General Counsel.

Governor Rauner's public statements further demonstrate his authority and oversight for IDOC.  In Governor Rauner's 2015 State of the State Address, he explained that: "The conditions in our prisons are unacceptable.  Inmates and corrections officers alike find themselves in an unsafe environment.  It's wrong.  We will hire more correctional officers to improve safety in our prisons."[5]  Governor Rauner similarly touted his authority over IDOC in his 2017 State of the State Address:

> Over the past two years[,] our Administration has worked to … address underlying behavioral and mental health issues for those in our systems of care … We've

[3] *See* Illinois.gov, Executive Orders, available at:
https://www2.illinois.gov/Pages/government/execorders/2015_14.aspx (last visited November 14, 2018).
[4] Illinois.gov, "Governor Quinn Overhauls Prison Release Program," December 30, 2009, available at:
https://www2.illinois.gov/Pages/news-item.aspx?ReleaseID=8138 (last visited November 14, 2018).
[5] Governor Bruce Rauner, 2015 Illinois State of the State Address at 11, Illinois.gov, available at:
https://www2.illinois.gov/gov/Documents/SOS_Transcript_02_04_15.pdf (last visited November 14, 2018).

shuttered the outdated Roundhouse at Stateville Prison while repurposing two other facilities in Murphysboro and Kewanee as life skill centers to help non-violent offenders return to the work force more effectively.[6]

Governor Rauner thus claims not only to be capable of affecting IDOC policy, but to directly effectuate changes, at least according to his public pronouncements.

Nonetheless, Governor Rauner argues in his motion, without explanation, that, with respect to this case, he "would not be involved in carrying out any prospective injunctive relief." Dkt. 41 at 3. As explained above, this assertion is likely factually incorrect. At minimum, Plaintiffs are entitled to discovery that would reveal the extent to which Governor Rauner has authority over IDOC. *See Marie O.*, 157 F.R.D. at 437 ("A common thread running through the Governor's motion to dismiss is his assertion that he is not responsible for the plaintiffs' alleged injury. Such a determination, however, is premature at this juncture."). Plaintiffs have alleged that Governor Rauner "is responsible for ensuring the provision of constitutionally adequate medical care for all prisoners in the custody of IDOC, including those who have requested evaluation or treatment for gender dysphoria." Compl. ¶ 46. For purposes of Governor Rauner's motion to dismiss, this allegation must be taken as true, with all possible inferences drawn in Plaintiffs' favor. *See Tamayo v. Blagojevich*, 526 F.3d 1074, 1078 (7th Cir. 2008). The recommendation to grant the Motion to Dismiss (Dkt. 41) thus was incorrect, and the motion to dismiss should be denied.

## II.    ANY DISMISSAL SHOULD BE WITHOUT PREJUDICE.

As explained above, Plaintiffs believe that dismissal is not warranted at all. However, even if dismissal pursuant to Rule 12(b)(6) were appropriate, that dismissal should be without prejudice. Seventh Circuit case law "makes clear that a motion to dismiss under Rule 12(b)(6) is

---

[6] Governor Bruce Rauner, 2017 Illinois State of the State Address, IllinoisPolicy.org, available at: https://www.illinoispolicy.org/gov-bruce-rauners-2017-state-of-the-state-address/ (last visited November 14, 2018).

not a responsive pleading and so, if an answer has not been filed, a plaintiff ordinarily retains the ability to amend his complaint once as a matter of right, even after a court grants a motion to dismiss." *Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011) (citing *Foster v. DeLuca,* 545 F.3d 582, 583–84 (7th Cir. 2008)).

The Report and Recommendation recommends dismissal with prejudice, despite the fact that it does not grapple at all with whether dismissal with or without prejudice is the proper course.  While relying on *Randle v. Butler*, No. 16-cv-01191-NJR, 2017 WL 1035752 (S.D. Ill. Mar. 17, 2017), to justify dismissal, the Report and Recommendation does not acknowledge that *Randle* involved dismissal *without prejudice*.  *Id.* at *7.

As explained above, while Plaintiffs believe that their initial pleading regarding Defendant Governor Rauner's involvement was sufficient, any pleading defect is curable. Plaintiffs can amend their Complaint to include additional details regarding Defendant Rauner's involvement in and authority over IDOC—including, as explained further above, his Constitutional authority, his appointment power, his executive orders issued regarding IDOC, his public statements claiming authority over IDOC, as well as his authority over IDOC budgeting. Against this backdrop, there simply is no basis to order dismissal with prejudice when the purported pleading deficiencies can be cured.

## III.   CERTAIN PROPOSED FACTUAL FINDINGS ARE ERRONEOUS.

Plaintiffs object to the characterization in the Report and Recommendation of Plaintiffs' bases for opposing the motion to dismiss.  *See* R&R at 2 ("Plaintiff opposes the motion, arguing that [Defendant Rauner] is the very person who can provide the full relief they seek.").  As detailed above, this is an inaccurate and incomplete description of Plaintiffs' opposition to the motion.  Plaintiffs opposed the motion on a number of bases, including that they had sufficiently

pleaded Defendant Governor Rauner's involvement; that Governor Rauner—unlike the other Defendants—holds responsibilities as the Chief Executive Officer of Illinois; that relevant case law favors Plaintiffs' position; and that discovery was needed to determine the full scope of Defendant Rauner's ability to implement any injunctive relief ordered here.

## IV.    CERTAIN PROPOSED LEGAL CONCLUSIONS ARE ERRONEOUS.

Plaintiffs object to the recommended conclusions of law that "Plaintiff[s'] allegations against the Governor's office are not robust or detailed enough to push them over the line from possibility to plausibility," (R&R at 3); that "Plaintiffs allege systemic problems with delivery of care to transgender inmates but do not tie such relief to the Governor's office," (R&R at 4); and that "the Complaint fails to set forth what the Governor could conceivably do to remedy the alleged constitutional violations above and beyond the other named parties" such that "[h]is inclusion in this lawsuit appears superfluous," (*id.*).  As explained above, Plaintiffs' allegations regarding Defendant Governor Rauner's involvement are sufficient to overcome a Rule 12(b)(6) challenge, and are fully consistent with the weight of case law holding that a governor is an appropriate defendant to provide the type of relief sought in this case.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court sustain Plaintiffs' objections and deny Defendant Governor Rauner's Rule 12(b)(6) Motion.

Dated:  November 20, 2018

Respectfully submitted,

By: /s/ *Scott Lerner*
John A. Knight
Ghirlandi Guidetti
ROGER BALDWIN FOUNDATION OF ACLU, INC.
150 North Michigan Avenue, Suite 600
Chicago, Illinois 60601
Telephone: (312) 201-9740
Facsimile: (312) 201-9760
jknight@ACLU-il.org
gguidetti@ACLU-il.org

Catherine L. Fitzpatrick
Jordan M. Heinz
Erica B. Zolner
Megan M. New
Scott Lerner
KIRKLAND & ELLIS LLP
300 North LaSalle Street
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
catherine.fitzpatrick@kirkland.com
jordan.heinz@kirkland.com
erica.zolner@kirkland.com
megan.new@kirkland.com
scott.lerner@kirkland.com

*Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on November 20, 2018, I electronically filed the foregoing document and any attachments with the Clerk of this Court by using the CM/ECF system, which will accomplish service through the Notice of Electronic Filing for parties and attorneys who are Filing Users.


/s/ *Scott Lerner*