**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS DIVISION**

| | | |
|---|---|---|
| JANIAH MONROE, MARILYN MELENDEZ, | ) | |
| LYDIA HELENA VISION, | ) | |
| SORA KUYKENDALL, and SASHA REED, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| - vs- | ) | No. 18-156-NJR-MAB |
| | ) | |
| MELVIN HINTON, ROB JEFFREYS, | ) | |
| and STEVE MEEKS, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION**

The Defendants, MELVIN HINTON, ROB JEFFREYS, and STEVE MEEKS, by and

through their attorney, Kwame Raoul, Attorney General for the State of Illinois, provide the

following response in opposition to Plaintiffs' motion for class certification [d/e 124]:

**Introduction**

Plaintiffs are inmates in the custody of the Illinois Department of Corrections.  The

named Plaintiffs are transgender women, who seek to represent "*all* prisoners in the custody of

IDOC who have requested from IDOC evaluation [or] treatment for gender dysphoria."  [d/e

124, p. 38, emphasis added in italics].

The Plaintiffs have moved to certify a class that would be defined as quoted above.  [d/e

124].  Plaintiffs' motion for class certification should be denied.  Plaintiffs' motion is long, but

fails to meet the prerequisites set forth in Federal Rule of Civil Procedure 23.  Plaintiffs seek

only equitable relief in this action.  In their complaint, Plaintiffs requested injunctive relief to

enjoin Defendants "from subjecting Plaintiffs and the Plaintiff Class to the illegal and

1

unconstitutional conditions, acts, omissions, policies, and practices" set forth in the complaint. [d/e 1, p. 37, ¶ c.]. Plaintiffs also requested relief in the form of "a plan to eliminate the substantial risk of serious harm" that Plaintiffs and putative class members suffer. [d/e 1, p. 37, ¶ d.]. They have also sought a preliminary injunction, which also seeks broad relief as discussed in separate filings. [d/e 123 & 143]. But, no injunction entered against IDOC may be entered in a fair manner to bind all inmates who would be part of the proposed class. There is significant overlap between the motion at hand and Plaintiffs' motion for preliminary injunction. [*Compare* d/e 123 *with* d/e 124]. Defendants will not restate the facts presented in their response to Plaintiffs' motion for preliminary injunction, but will incorporate those facts for general background [*see* d/e 143, pp. 3-7], and will provide specific citations where appropriate.

For the reasons argued below, Plaintiffs' motion for class certification should be denied.

## Argument

A class action is an exception to the usual rule that only a named party can have his or her claims adjudicated. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348-49 (2011), *quoting Califano v. Yamasaki*, 442 U.S. 682, 700-701 (1979). A party seeking to certify a class action must meet all of the necessary elements of Rule 23. Fed. R. Civ. P. 23. First, the movant must show the putative class satisfies the four prerequisites of Rule 23(a). *Oshana v. Coca–Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006); *Rosario v. Livaditis*, 963 F.2d 1013, 1017 (7th Cir. 1992). Then, the action must qualify under at least one of the three subsections of Rule 23(b). Fed. R. Civ. P. 23(b); *Rosario*, 963 F.2d at 1017.

A party seeking class certification bears the burden of proving by a preponderance of the evidence that each of these requirements under Rule 23 has been met. *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 162 (1982); *Bell v. PNC Bank, Nat'l Ass'n*, 800 F.3d 360, 373 (7th Cir.

2015).  "Before deciding whether to allow a case to proceed as a class action, therefore, a judge should make whatever factual and legal inquiries are necessary under Rule 23." *Szabo v. Bridgeport Mach., Inc.*, 249 F.3d 672, 676 (7th Cir. 2001).

## I.     Plaintiffs fail to meet the prerequisites listed in Rule 23(a).

Rule 23(a) lists four prerequisites that must be met:  (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. Fed. R. Civ. P. 23(a).  Plaintiffs cannot meet all of these prerequisites.  As argued below, Plaintiffs will be unable to establish that there is sufficient commonality, because any assessment of the facts or liability will necessarily involve individualized review.  Plaintiffs do not meet their burden with respect to the numerosity prong. Plaintiffs also fail to establish that their claims are typical of that of the proposed class.  Finally, Plaintiffs cannot establish that they are adequate representatives for the proposed class.

### A.   The class claims fail the commonality analysis because there is no single answer that will resolve a central issue to all class members' claims.

Plaintiffs cannot meet the crucial commonality prong.  To assess whether the class is sufficiently cohesive to satisfy the commonality prong under Rule 23(a)(2), a court must conduct a 'rigorous analysis' to determine whether the evidence and law support plaintiffs' theory.  *Wal-Mart Stores, Inc.*, 564 U.S. at 349, n. 5.  The commonality analysis will often overlap with plaintiffs' merits contentions.  *Id*. at 349-50.  Courts are not simply applying a pleading standard; instead a prospective class must be prepared to prove that there are *in fact* common questions of law or fact.  *Id*. at 350-51 (emphasis in original text).  Because the purpose of Rule 23 is efficiency, class certification under Rule 23 is appropriate only when a large number of plaintiffs share similar potentially viable claims whose "truth or falsity" can be resolved one way or another "in one stroke," making a single suit more efficient than multiple ones  *Id*. at 350.

The Seventh Circuit, following the decision in *Wal-Mart*, has stated that to satisfy the Rule 23(a)(2) prong, all class members' claims must "share some question of law or fact that can be answered *all at once* and that the *single answer* to that question will resolve a central issue in all class members' claims." *Jaime S. v. Milwaukee Public Schools*, 668 F.3d 481, 497 (7th Cir. 2012); *see also Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 756 (7th Cir. 2014), *quoting Wal-Mart*, 564 U.S. at 350 ("What matters to class certification is the capacity of a class wide proceeding to generate common answers apt to drive the resolution of the litigation.").

For Eighth Amendment deliberate indifference claims, the Seventh Circuit has recognized two categories:  (1) isolated instances of indifference to a particular inmate's needs, or (2) claims of systemic deficiencies rendering the treatment constitutionally inadequate for all. *Phillips v. Sheriff of Cook County*, 828 F.3d 541, 554 (7th Cir. 2016).  In *Phillips*, current and former detainees of Cook County Jail filed a putative class action claiming that the dental treatment they received at the jail violated their rights under the Eighth and Fourteenth Amendments.  828 F.3d at 543.  The district court originally certified two classes of plaintiffs, but then decertified one of the classes and subsequently determined the motion for injunctive relief was moot.  *Id*.  The Seventh Circuit Court of Appeals upheld the class decertification based on the "lack of a common issue of fact or law."  *Id*. at 543-44.  This was based on a finding that the claims at issue there were best characterized as claims of isolated instances of indifference to a particular detainee's medical needs.  *Id*. at 554.  Although dental treatment for all detainees was at issue, the detainees each presented a different situation, involving different types of dental issues, over different periods of time, involving different medical professionals and prison staff, and concerning different alleged deficiencies in the treatment process.  *Id*. at 555.  The Seventh Circuit Court was unwilling to agree that delay claims could be appropriate for a class

determination. *Id*. at 555-56. Because the assessment of a delay claim varies depending on each individual's circumstances, liability must be determined on an individual basis. *Id*. ("These questions can only be answered by looking at the unique facts of each detainee's case").

Similarly, in this matter as in *Phillips*, much of the Plaintiffs' case focuses on delay of treatment. The named Plaintiffs complain of delays in receiving hormone therapy, delays in receiving gender-affirming clothing, etc.[1] But, each alleged delay must be reviewed in the context of the individual claims. Delay that is tolerable in one context may not be tolerable in another. *See Phillips*, 828 F.3d at 554, *quoting McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010) ("We have previously held that when assessing deliberate indifference claims, a delay in medical treatment 'is not a factor that is either always, or never, significant. Instead, the length of delay that is tolerable depends on the seriousness of the condition and the ease of providing treatment.'") As noted in a separately filed response, the delays at issue with these Plaintiffs may not be sufficient alone to rise to the level of an Eighth Amendment violation. [d/e 143, pp. 10-11]. It is even more difficult to tell based on putative class members' experiences. The evidence cited in Plaintiffs' motion and exhibits is very general, referencing "many" or "vast majority" without specific factual bases or numbers. [d/e 124]. Yet, each patient is different, and questions about the way hormones are administered or whether surgery is appropriate for a given patient are fact-dependent and may not be answered in one fell swoop.

This matter is distinguishable from that presented in *Lacy v. Cook County*, 897 F.3d 847 (7th Cir. 2018). There, the Seventh Circuit found that there was sufficient commonality for a class of wheelchair-bound inmates to proceed. *Id*. at 865-66. The Court noted that the class members shared a common physical impairment—one that was obvious (they were all confined

---

[1] As Defendants point out in their response to Plaintiffs' motion for preliminary injunction, the named Plaintiffs all receive hormone therapy and some gender-affirming clothing. [d/e 143, pp. 17-18].

in wheelchairs when attending court); they faced common physical barriers and noncompliant bathroom facilities, and they sought common modifications in the form of mandatory policies for assistance going up steep ramps and escorting them to ADA-compliant restrooms. *Id*. at 865-66. By contrast, this case involves matters that are individualized and specific to each Plaintiff and each putative class member. The circumstances presented here are deeply personal and not at all obvious or easily fixed by bright-line rules.

Plaintiffs contend that "[g]ender dysphoria is not a novel medical condition, nor its treatment unknown or untested." [d/e 124, p. 7]. Such an argument ignores the evolving nature of gender dysphoria and potential treatments. "Gender identity" may be a "well-established concept in medicine," *see* Decl. of Ettner at d/e 124-1, p. 5, ¶ 13; but "Gender Dysphoria" has not always been an established diagnosis. Plaintiffs' proffered expert, Dr. Randi Ettner, provides some historical background in her declaration, filed along with the Plaintiffs' motion. [d/e 124-1, pp. 5-9]. According to Dr. Ettner, the diagnosis of "Gender Identity Disorder" was "introduced" by the American Psychiatric Association in 1980. [de 124-1, p. 5, ¶ 16]. That diagnosis was later removed (in 2013) and replaced with Gender Dysphoria. [de 124-1, p. 5, ¶ 17]. This was not simply a change in name, but the "new diagnostic term was based on *significant changes* in the understanding of the condition of individuals whose birth-assigned sex differs from their gender identity." [de 124-1, p. 5, ¶ 17, emphasis in italics added]. Dr. Ettner also states that "the medical research that supports the Gender Dysphoria diagnosis has evolved." [de 124-1, p. 7, ¶ 20]. This is echoed by IDOC 30(b)(6) representative, Dr. Puga, who testified: "This is an evolving topic and evolving issue in our department." [d/e 143-4, at dep. pp., 76-77]. At this point, it has not been clear that there is one right answer or correct manner of treatment for gender dysphoria.

An "illegal policy might provide the 'glue' necessary to litigate otherwise highly individualized claims as a class." *Phillips*, 828 F.3d at 551, *quoting Jamie S v. Milwaukee Public Schools.*, 668 F.3d 481, 498 (7th Cir. 2012). But, an illegal policy is different from complaints of systemic failures. *Jamie S.*, 668 F.3d at 498. Here, there is no illegal policy in place. [*See* d/e 143]. Plaintiffs contend that the policy concerning sex reassignment surgery amounts to a *de fact*o rule of refusing to permit surgical treatment [d/e 124, p. 20]; however, as noted previously by Defendants, it is neither medically nor legally established that surgery is a necessary or effective treatment for gender dysphoria. [d/e 143, pp. 17-18, *quoting Gibson v. Collier*, 920 F.3d 212, 222-23 (5th Cir. 2019)]. It is clear that there is no illegal policy in place within IDOC. Plaintiffs' complaints in this suit necessarily involve individualized determinations that are not appropriate for class certification.

**B. Plaintiffs do not meet their burden with respect to the numerosity requirement.**

The Northern District of Illinois has stated: "Numerosity does not rest on any magic number." *Arenson v. Whitehall Convalescent & Nursing Home, Inc.*, 164 F.R.D. 659, 663 (N.D. Ill. Feb. 28, 1996). Numerosity cannot be established by relying solely on numbers, there must also be some showing that the numbers estimated for the class would be backed by legitimate claims. *Marcial v. Coronet Ins. Co.*, 880 F.2d 954, 957 (7th Cir. 1989) (plaintiffs failed to prove numerosity where they only speculated as to who would have legitimate claims against defendant). Because Plaintiffs fail to establish that there are sufficient members with legitimate claims, and for whom joinder would be impractical, Plaintiffs do not meet their burden with respect to the numerosity requirement.

IDOC tracks "Transgender Population Totals By Facility." (*See* attached Exhibit 1, with inmate names and numbers redacted for filing). As of March 28, 2019, IDOC identified a total

of 89 inmates who were confirmed to fall under the definition of "transgender," and 26 inmates who were identified as "pending."  (Ex. 1).  This amounts to a total of 115 transgender inmates in IDOC as of the end of March 2019.  Seventy of those were receiving hormones.  (Ex. 1).  But, this does not mean that 115 inmates would necessarily have claims to bring individual suits related to their own treatment.  A great number of the transgender inmates receive hormone therapy (70), so it would only be the remaining inmates who could challenge a continuing denial for prescription of hormones.  Thus, this Court cannot presume that a number of 100+ inmates necessarily means that joinder of suits would be impractical.  Further, there is no indication on the record that that many inmates would want to join in *this* suit particular suit.

Based on the relief sought, and the particularities of each individual, it cannot be presumed that numerosity is met here.  Moreover, because these Plaintiffs seek only equitable relief in this action, it could be possible that any Plaintiffs and/or class members could file separate damages actions.  Proceeding as a class here would not preclude separate actions.  For the reasons, explained here and elsewhere in this response, class certification is inappropriate.

### C. The class claims fail to meet the typicality requirement because the named Plaintiffs cannot show their claims share the essential characteristics of the group at large.

The typicality requirement of Rule 23(a)(3) focuses on whether the named representatives' claims have the same essential characteristics as the claims of the class at large. It is not correct for Plaintiffs to argue that the typicality is "presumed also to be met" if the commonality requirement is met.  [d/e 124, p. 24].  Although the commonality and typicality prongs tend to merge, they are still separate elements that must be met under Rule 23.

"A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on

the same legal theory." *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 596–97 (7th Cir. 1993); *De La Fuente v. Stokely–Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983). In other words, proof of the named plaintiffs' claims must prove the claims of any other class member. *Id*. "Even though some factual variations may not defeat typicality, the requirement is meant to ensure that the named representative's claims have the same essential characteristics as the claims of the class at large." *Oshana*, 472 F.3d at 514 (internal quotations omitted); *see also Arreola v. Godinez*, 546 F.3d 788, 798 (7th Cir. 2008).

These named Plaintiffs appear to have shared experiences; however, that does not mean that their background or treatment within IDOC is typical of that of all IDOC prisoners. The comparisons in the evidence submitted by Plaintiffs lack the type of specificity needed to establish that these Plaintiffs have suffered experiences typical of the group at large. Plaintiffs make only generalizations about putative class members, using terms like "many" or "vast majority" without giving specific data to compare the typicality of their claims. [*See, e.g.*, d/e 124, p. 40 & Ettner Decl. at d/e 124-1, p. 37, ¶ 126]. It cannot be assumed that every inmate diagnosed with, or otherwise falling under the definition of, gender dysphoria wants to have sex reassignment surgery or the other items sought by these Plaintiffs. Accordingly, Plaintiffs cannot show that their claims are typical of the group at large.

### D. Plaintiffs fail to establish that the representative parties will fairly and adequately protect the interests of the class.

Rule 23(a)(4) requires a showing that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). In many cases, "the typicality requirement "merges with the further requirement that the class representative 'will fairly and adequately protect the interests of the class.'" *CE Design Ltd. v. King Architectural Metals, Inc*., 637 F.3d 721, 724 (7th Cir. 2011).

This suit presently involves five named Plaintiffs who were born biologically male but identify as female.  Based on the declarations, complaint, and motions filed on their behalf, the named Plaintiffs all appear to want the same or similar relief.  As Defendants addressed in their response to Plaintiffs' motion for preliminary injunction, they are actually barred by the Eleventh Amendment and Prison Litigation Reform Act from seeking much of the relief they request.  [d/e 143, pp. 14-19].

It is logical that these five Plaintiffs could proceed as a group; however, they do not represent the views of all other potential class members.  The named Plaintiffs are compared to each other—not to other putative class members.  This ignores a wide range of variation.  They completely disregard and have no named representative who was born female but identifies as male.  They have presented no putative class member who has gender dysphoria but chooses not to receive hormone treatment.  Absent a representative with a differing viewpoint, they cannot fairly and adequately represent those interests.  This means that these particular representatives cannot adequately protect the interests of "*all* prisoners in the custody of IDOC who have requested from IDOC evaluation [or] treatment for gender dysphoria" as they wish to define the class.

For these reasons, Plaintiffs fail to meet the prerequisites mandated by Rule 23(a).

**II.     There is no action or refusal to act that warrants the imposition of a class, nor is there adequate basis for class-wide relief, pursuant to Rule 23(b)(2).**

A case may be certified as a class action for equitable relief under rule 23(b)(2) where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).  Defendants have already argued that there is no basis for injunctive relief, because there is no unlawful act by these Defendants.  [d/e 143].

10

Yet, there is an additional component to this analysis.  Because the injunctive relief sought must be final to the whole class, there can be no variation in any injunction called for to the class.  As the Supreme Court explained:

> claims for *individualized* relief . . . do not satisfy the Rule.  The key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them.  In other words, Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class.  It does not authorize class certification when each individual class member would be entitled to a *different* injunction or declaratory judgment against the defendant.

*Wal-Mart Stores, Inc.*, 564 U.S. at 360-61 (emphasis in original, internal quotation and citation omitted).

In their complaint, Plaintiffs have sought general injunctive relief. This has been expressed a little more in-depth through Plaintiffs' motion for preliminary injunction.  [d/e 123]. However, there is still nothing specific that could be imposed that would provide relief to each member of the class—nothing that could provide relief to "all of the class members or as to none of them."  *See, supra*.  This results, in part, from the individualized nature of each claim that could be presented; but also because of the necessarily individualized relief that should be given to any individual patient.  In asking for generic, one-size-fits-all relief, Plaintiffs ignore the obvious fact that difficult medical decisions cannot be made in such a manner without greater risk of harming any one patient.

Under controlling law, Plaintiffs' claims are not amenable to class-wide injunctive relief. For these reasons, these named Plaintiffs cannot represent a class for injunctive relief.

**Conclusion**

In summary, Plaintiffs fail to meet the requirements for a class action under Rule 23.

Plaintiffs do not meet the four prerequisites listed under Rule 23(a).  There is no commonality in

this case, because it necessarily requires individualized assessment.  There is also insufficient

evidence of numerosity, typicality, and commonality.  Moreover, this is not the type of action

contemplated as a class under Rule 23(b)(2).

WHEREFORE, Defendants respectfully request that this Court deny Plaintiffs' motion

for class certification.

Respectfully submitted,

ROB JEFFREYS, MELVIN HINTON, and
STEVE MEEKS,

Defendants,

Christopher Higgerson, #6256085
Lisa A. Cook, #6298233
Assistant Attorney General
500 South Second Street
Springfield, Illinois  62701
(217) 557-0261 Phone
(217) 524-5091 Fax
Email: lcook@atg.state.il.us

KWAME RAOUL, Attorney General
State of Illinois

Attorney for Defendants,

By:  s/Lisa A. Cook_____
       Lisa A. Cook

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**
**EAST ST. LOUIS DIVISION**

| | | |
|---|---|---|
| JANIAH MONROE, MARILYN MELENDEZ, | ) | |
| EBONY STAMPS, LYDIA HELENA VISION, | ) | |
| SORA KUYKENDALL, and SASHA REED, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| - vs- | ) | No. 18-156-NJR-MAB |
| | ) | |
| MELVIN HINTON, ROB JEFFREYS, | ) | |
| and STEVE MEEKS, | ) | |
| | ) | |
| Defendants. | ) | |

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on June 14, 2019, the foregoing document, **Defendants' Response to Plaintiffs' Motion for Class Certification**, was electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

| | |
|---|---|
| John A. Knight | jknight@aclu.il.org |
| Catherine L. Fitzpatrick | cfitzpatrick@kirkland.com |
| Erica B. Zolner | ezolner@kirkland.com |
| Ghirlandi Guidetti | gguidetti@aclu.il.org |
| Megan M. New | mnew@kirkland.com |
| Sydney L. Schneider | Sydney.schneider@kirkland.com |
| Jordan M. Heinz | jheinz@kirkland.com |
| Cameron N. Custard | cameron.custard@kirkland.com |
| Sarah Jane Hunt | sarahjane@tkennedylaw.com |
| Thomas E. Kennedy, III | tkennedy@tkennedylaw.com |
| Brent P. Ray | brent.ray@kirkland.com |
| Samantha G. Rose | sam.rose@kirkland.com |
| Austin B. Stephenson | austin.stephenson@kirkland.com |
| Carolyn M. Wald | cwald@aclu-il.org |

s/ Lisa A. Cook
Lisa A. Cook, #6298233
Assistant Attorney General
Office of the Attorney General
500 South Second Street
Springfield, Illinois  62701
(217) 557-0261 Phone
(217) 524-5091 Fax
Email: lcook@atg.state.il.us

13