IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS DIVISION

| | | |
|---|---|---|
| JANIAH MONROE, MARILYN MELENDEZ, EBONY STAMPS, LYDIA HELENA VISION, SORA KUYKENDALL, and SASHA REED, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| - vs- | ) ) | No. 18-156-NJR-MAB |
| ROB JEFFREYS, MELVIN HINTON, and STEVE MEEKS, | ) ) ) ) | |
| Defendants. | ) | |

**DEFENDANTS' RESPONSE TO PLAINTIFFS' SECOND MOTION FOR LEAVE TO SUPPLEMENT PRELIMINARY INJUNCTION RECORD**

The Defendants, ROB JEFFREYS, MELVIN HINTON, and STEVE MEEKS, by and through their attorney, Kwame Raoul, Attorney General for the State of Illinois, provide the following in response to Plaintiffs' second motion for leave to supplement the preliminary injunction record [Doc. 175]:

**Introduction**

On October 17, 2019, Plaintiffs filed a second motion for leave to supplement the preliminary injunction record with additional information pertaining specifically to Plaintiff Monroe. [Doc. 175]. On October 18, 2019, the Court ordered Defendants to respond to the motion by October 22, 2019, at 5:00 p.m. [Doc. 176].

Before Plaintiffs filed the motion at issue in this action, a motion for preliminary injunction was filed on Monroe's behalf in a Central District case: *Monroe v. Baldwin (now, Jeffreys)*, case no. 19-1060 (CDIL). The Defendant—Rob Jeffreys, who is sued in his official

capacity as the Acting Director of IDOC—responded to Plaintiff's motion yesterday. [Case no. 19-1060, Docs 17-18].

Plaintiffs' attorneys are obviously aware of the duplication of efforts and working in concert, as they are citing to and attaching each other's filings in the other cases. As the earlier filed case and the one that has progressed furthest, this should be the case that continues. Yet, neither of the recently filed motions explain why the same issues are being raised in both actions.

In any event, Plaintiffs' second motion for leave to supplement the record should be denied. Monroe's concerns regarding a transfer are speculative. In fact, the concerns raised in the second supplemental filing are undercut by Monroe's declaration that she asked for a transfer. And, Plaintiff Monroe is not entitled to control her housing assignment.

## Plaintiff Monroe's IDOC records[1]

Plaintiff Monroe's records show that she was placed in the health care unit (HCU) on October 2, 2019. **Exhibit 2, Pl's Living Unit History (relevant entries highlighted)**. Plaintiff's assignment history contains no mention of Administrative Detention status. **Exhibit 3, Pl's Assignment History.** Yet, it was noted that she was on temporary confinement/disciplinary segregation status beginning September 28, 2019, and it was scheduled to end October 9, 2019. **Ex. 3 (relevant entries highlighted)**.

On October 1, 2019, a note was made by a mental health provider for an "SMI (Seriously Mentally Ill) Ticket review." **Exhibit 4, portion of Pl records at Bates-numbers 314336-314337.[2]** The provider was reviewing Monroe's chart regarding "a 107 ticket" and opined that Plaintiff's behavior was not a direct result of her mental illness. **Ex. 4 at # 314337.** A 107 charge in the IDOC is one for Sexual Misconduct, which is defined as:

---

[1] This is substantially the same as the section that was filed by Defendant Jeffreys in case no. 19-1060. [Case no. 19-1060, Docs 17-18]. Exhibit 1 is omitted from this filing, as it is not relevant to this response.
[2] These documents designated Exhibit 4 will be filed under seal.

> Engaging in sexual intercourse, sexual conduct or gesturing, fondling or touching done to sexually arouse, intimidate or harass either or both persons; or engaging in any of these activities with an animal. However, private masturbation in the offender's living area, excluding a deliberate display of the act or to affront others, shall not be considered sexual misconduct.

Ill. Admin Code, tit. 20, § 504. App. A. As a mental health note dated October 8, 2019, states: "She has either been on watch [or] in segregation, primarily for (6) Sexual Misconduct charges, most of her time since 4/1/19 transfer." **Ex. 4 at # 314358.**

On October 2, 2019, Monroe was evaluated for suicide potential. **Ex. 4 at ## 314338-314340**. She was seen for crisis intervention, but no watch was initiated at that time. **Ex. 4 at # 314340.** Monroe was evaluated the following day, on October 3. **Ex. 4 at ## 314344-314345**. Again, no watch was ordered at that time. **Ex. 4 at # 314345.** Subsequently, on October 6, Monroe was found to have engaged in self-harm and was taken to an outside hospital on an emergency basis. **Ex. 4 at ## 314101 & 314381.** When Monroe returned to IDOC from the hospital on October 7, she had already been classified on a continuous watch and was to reside in the HCU, where she is still housed as of October 21. **Ex. 4 at # 314381; Ex. 2.** Monroe's records make note of many complaints she has voiced about her treatment at Logan Correctional Center. Yet, after her return from the outside hospital, it was noted that Monroe discussed "she cut herself 'in protest' and 'to show the warden what he is doing to [her].'" **Ex. 4 at # 314351.**

## Argument

### I. Plaintiff Monroe's assertions regarding transfer are speculative.

A declaration signed by Janiah Monroe and dated October 3, 2019, was filed on October 17, 2019. [Doc. 175-1]. In that declaration, Plaintiff Monroe attested that IDOC legal counsel Kelly Presley and Assistant Warden McGary met with her at her cell front and asked how she was. [Doc. 175-1, p. 2, ¶¶ 5-6]. Monroe further attested that she told Ms. Presley she (Monroe) wanted to go to another state. [Doc. 175-1, p. 2, ¶ 7]. According to Monroe, Ms. Presley only said

something to the effect of, "We are working on it," which Plaintiff took to mean that IDOC was going to transfer her. [Case no. 18-156, Doc. 175-1, p. 3, ¶ 8]. Even if this was taken as true, this is speculative. Such allegations would not even be sufficient to satisfy the pleading standard, let alone the standard for injunctive relief. S*ee Swanson v. Citibank, N.A.*, 614 F.3d 400, 403 (7th Cir. 2010) (pleading standard requires that "a plaintiff must do better than putting a few words on paper that, in the hands of an imaginative reader, might suggest that something has happened to [him] that might be redressed by the law.")

Even if it is "theoretically possible" that the decision to house Monroe in a female institution could be reversed, such possibility is speculative and not sufficient to proceed on a claim for injunctive relief. *Nelson v. Miller*, 570 F.3d 868, 882 (7th Cir. 2009), *abrogated on other grounds by Jones v. Carter*, 915 F.3d 1147, 1149-50 (7th Cir. 2019). In *Nelson*, an inmate sought injunctive relief that the prison provide him a certain religious diet; yet, it was undisputed that he already received the religious diet he wanted. *Id*. at 882. The inmate-plaintiff argued that his request for injunctive relief was not moot because his religious diet could be revoked at any time. *Id*. The Seventh Circuit Court of Appeals rejected the inmate-plaintiff's argument and found that speculative possibilities were not sufficient to proceed on moot claims for injunctive relief. *Id*. at 883.

In this instance, Monroe claims that a discussion with IDOC legal counsel leads her to believe that she will be transferred to a different facility, and implies that this Court should take action to prevent that from happening.[3] If we disregard the case law and presume for the sake of argument that Plaintiff is entitled to avoid a transfer, the actual evidence Plaintiff has submitted is not adequate for injunctive relief to issue. Even so, the undersigned provided all of Plaintiff's attorneys with information in response to their inquiry about the alleged conversation between

---

[3] Plaintiffs do not specifically ask for an order from this Court regarding a potential transfer, but it is relief sought in their original motion for preliminary injunction [Doc. 123] and their motion to supplement suggests that they want the Court to intervene in her placement. [Doc. 175].

Monroe and Ms. Presley. It was undisputed that the two spoke, though there was disagreement about the content of their conversation. [Doc. 175-2, p. 2]. The undersigned confirmed to Plaintiffs' attorneys on October 1 that no one from IDOC legal had been asked to or authorized to discuss a transfer with Monroe. [Doc. 175-2, p. 2]. IDOC would not commit to discuss a future transfer with her counsel, and would not agree to give Plaintiff special treatment. [Doc. 175-2, p. 2]. Monroe "would receive *the same notice* IDOC gives any inmate prior to transfer." [Doc. 175-2, p. 2, emphasis added]. Plaintiffs contend that it was notable that Defendants did not deny consideration of an out-of-state transfer. [Doc. 175, p. 3, ¶ 6]. But, defense had just written an explanation that DOC would not plan to discuss *any* future transfer with Monroe's attorneys. [Doc. 175-2, p. 2 ("IDOC cannot commit to discuss with you where, when, or how a future transfer could be effected prior to such taking place. If Ms. Monroe were to be transferred at any point, she would not be entitled to special treatment and would receive the same notice IDOC gives any inmate prior to transfer")]. The lack of an express denial is not evidence of anything.

Since October 1, Monroe has remained at Logan Correctional Center. Her mental health notes show that she was presented for possible transfer to Elgin Treatment Center on October 9.[4] **Ex. 4 at # 314370.** At that time, her disciplinary violations (which included several sexual misconduct guilty findings) and other considerations weighed against her transfer to Elgin. **Ex. 4 at # 314370.** Her notes provide the following plan: "P=Logan MH staff will continue to reassess [Monroe, a.k.a. Patterson] and consider other treatment options." Monroe cannot show that any transfer is imminent or anything beyond speculative. Based on these notes, it appears that Monroe will be staying at Logan for the near future. It is clear from these notes that at least one transfer was discussed and ultimately rejected. The mere fact that Plaintiffs would like additional commitments from IDOC does not mean they are entitled to Court intervention.

---

[4] Elgin Treatment Center is "a secured mental health inpatient treatment facility for convicted adult males and females designated with a severe mental illness." *See* https://www2.illinois.gov/idoc/facilities/Pages/ElginTreatmentCenter.aspx (last accessed on Oct. 21, 2019)

## II. Plaintiff Monroe is not entitled to control her housing assignment.

As discussed above, Monroe is speculating as to whether she will be transferred and her records indicate the contrary. According to Monroe's own version of events, it was *Monroe* who said she wanted to go to another state. [Doc. 175-1, p. 2, ¶ 7]. Although her attorneys have made it clear that she does not now wish to be transferred, it is dubious that so many motions have been filed concerning something their client claims that she asked IDOC staff for.

It is also clear that Plaintiff Monroe has not had a successful social transition at Logan CC. [Doc. 166, p. 2, ¶ 2; Doc. 175, pp. 3-4, ¶ 6[5]]. Although Monroe does not agree with her placements, her records reflect that it is difficult to find adequate placement for her. Her records note the difficulties, where she has mostly been on watch or in segregation for disciplinary reasons. *See* **Ex. 4 at # 314358 & # 314370.** These are not concerted efforts to discriminate against Monroe, as she claims.

There is no constitutional requirement that Monroe be afforded any particular input into the facility where she is housed. Monroe seeks to control her housing to the exclusion of IDOC's judgment. Yet, absent a few exceptions that are not applicable here, it has been left to the States to decide where to place prisoners. *See, e.g., Meachum v. Fano*, 427 U.S. 215, 228 (1976) (prison officials have the discretion to transfer prisoners for any number of reasons); *Olim v. Wakinekona*, 461 U.S. 238, 247 (1983) (confinement in another State is within the normal limits that an inmate's conviction has authorized State to impose). Monroe is not entitled to control her housing. This basis for supplementing the record is inapt.

---

[5] There are two paragraphs numbered 6. The paragraph referenced here is the later paragraph 6.

WHEREFORE, for these reasons, Defendants respectfully request that this Court deny Plaintiffs' second motion for leave to supplement the preliminary injunction record.

                                               Respectfully submitted,

                                               ROB JEFFREYS, MELVIN HINTON, and STEVE MEEKS,

                                               Defendants,

| | |
|---|---|
| Lisa A. Cook, #6298233<br>Assistant Attorney General<br>500 South Second Street<br>Springfield, Illinois   62701<br>(217) 557-0261 Phone<br>(217) 524-5091 Fax<br>Email: lcook@atg.state.il.us | KWAME RAOUL, Attorney General<br>State of Illinois<br><br>Attorney for Defendants,<br><br>By:   s/Lisa A. Cook<br>      Lisa A. Cook |

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS DIVISION**

| | |
|---|---|
| JANIAH MONROE, MARILYN MELENDEZ, EBONY STAMPS, LYDIA HELENA VISION, SORA KUYKENDALL, and SASHA REED, | ) ) ) ) |
| Plaintiffs, | ) ) |
| - vs- | ) No. 18-156-NJR-MAB ) |
| JOHN BALDWIN, MELVIN HINTON, and STEVE MEEKS, | ) ) ) |
| Defendants. | ) ) |

**CERTIFICATE OF SERVICE**

I hereby certify that on October 22, 2019, the foregoing document, **DEFENDANTS' RESPONSE TO PLAINTIFFS' SECOND MOTION FOR LEAVE TO SUPPLEMENT PRELIMINARY INJUNCTION RECORD,** was electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

| | |
|---|---|
| John A. Knight | jknight@aclu.il.org |
| Catherine L. Fitzpatrick | cfitzpatrick@kirkland.com |
| Erica B. Zolner | ezolner@kirkland.com |
| Ghirlandi Guidetti | gguidetti@aclu.il.org |
| Megan M. New | mnew@kirkland.com |
| Sydney L. Schneider | Sydney.schneider@kirkland.com |
| Jordan M. Heinz | jheinz@kirkland.com |
| Cameron N. Custard | cameron.custard@kirkland.com |
| Sarah Jane Hunt | sarahjane@tkennedylaw.com |
| Thomas E. Kennedy, III | tkennedy@tkennedylaw.com |
| Brent P. Ray | bray@kslaw.com |
| Samantha G. Rose | sam.rose@kirkland.com |
| Austin B. Stephenson | austin.stephenson@kirkland.com |
| Carolyn M. Wald | cwald@aclu-il.org |

s/ Lisa A. Cook
Lisa A. Cook, #6298233
Assistant Attorney General
Office of the Attorney General
500 South Second Street
Springfield, Illinois   62701
(217) 557-0261 Phone
(217) 524-5091 Fax
Email: lcook@atg.state.il.us