# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JANIAH MONROE,<br>MARILYN MELENDEZ,<br>EBONY STAMPS,<br>LYDIA HELÉNA VISION,<br>SORA KUYKENDALL, and<br>SASHA REED,<br><br>    Plaintiffs,<br><br>v.<br><br>STEVE MEEKS,<br>MELVIN HINTON, and<br>ROB JEFFREYS,<br><br>    Defendants. | Case No. 18-cv-00156-NJR |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

  Janiah Monroe, Marilyn Melendez, Ebony Stamps, Lydia Helena Vision, Sora Kuykendall, and Sasha Reed are transgender women in the custody of the Illinois Department of Corrections ("IDOC") (Doc. 1). They filed this putative class action under 42 U.S.C. § 1983, alleging IDOC provides transgender inmates inadequate treatment for gender dysphoria, in violation of the Eighth Amendment (*Id.*). Plaintiffs bring this suit against the IDOC Director, Chief of Health Services, and Mental Health Supervisor in their official capacities (*Id.*). On May 2, 2019, Plaintiffs filed a motion for preliminary injunction requesting the Court to order that IDOC cease certain practices and policies that deny and delay competent treatment to prisoners with gender dysphoria, and instructing IDOC to provide medically necessary treatment. (Doc. 123, p. 39). The Court granted the motion (Doc. 186) and entered a preliminary injunction ordering Defendants

to immediately:

1. cease the policy and practice of allowing the Transgender Committee to make the medical decisions regarding gender dysphoria and develop a policy to ensure that decisions about treatment for gender dysphoria are made by medical professionals who are qualified to treat gender dysphoria;

2. cease the policy and practice of denying and delaying hormone therapy for reasons that are not recognized as contraindications to treatment, ensure timely hormone therapy is provided when necessary, and perform routine monitoring of hormone levels; and

3. cease the policy and practice of depriving gender dysphoric prisoners of medically necessary social transition, including by mechanically assigning housing based on genitalia and/or physical size or appearance.

(Doc. 187, p. 1). Defendants were further ordered to:

1. develop policies and procedures which allow transgender inmates access to clinicians who meet the competency requirements stated in the WPATH[1] Standards of Care to treat gender dysphoria;

2. allow inmates to obtain evaluations for gender dysphoria upon request or clinical indications of the condition;

3. develop a policy to allow transgender inmates medically necessary social transition, including individualized placement determinations, avoidance of cross-gender strip searches, and access to gender-affirming clothing and grooming items; and

4. advise the Court what steps, if any, IDOC has taken to train all correctional staff on transgender issues, including the harms caused by misgendering and harassment—by both IDOC staff and other inmates.

(*Id.* at p. 2). Defendants filed a motion for reconsideration of the Court's preliminary injunction order (Doc. 203), and Plaintiffs filed a response in opposition (Doc. 206). For the following reasons, the motion for reconsideration is granted in part and denied in

---

[1] The World Professional Association for Transgender Health ("WPATH").

part.

## MOTION FOR RECONSIDERATION

"[D]istrict judges always retain discretion to visit their interlocutory rulings." *Parker v. Four Seasons Hotel, Ltd.* 791 F. App'x 600, 600-601 (7th Cir. 2020). Pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, an order adjudicating fewer than all the claims among the parties "may be revised at any time" before the entry of a final judgment. FED. R. CIV. P. 54(b). Motions to reconsider under Rule 54(b) are judged by largely the same standard as motions to alter or amend a judgment under Rule 59(e) and serve a limited function: to correct manifest errors of law or fact. *See Rothwell Cotton Co. v. Rosenthal & Co.*, 827 F.2d 246, 251 (7th Cir. 1987). "A manifest error is not demonstrated by the disappointment of the losing party." *Oto v. Metropolitan Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000) (quotation omitted).

A motion to reconsider is also appropriate where the Court has misunderstood a party, where the Court has made a decision outside the adversarial issues presented to the Court by the parties, where the Court has made an error of apprehension (not of reasoning), where a significant change in the law has occurred, or where significant new facts have been discovered. *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990). "Such problems rarely arise and the motion to reconsider should be equally rare." *Id.* at 1192 (citation omitted).

In their motion for reconsideration, Defendants argue that certain aspects of the preliminary injunctive relief ordered by the Court do not comply with the Prison Litigation Reform Act ("PLRA") or the Eleventh Amendment. (Doc. 203, p. 1). Specifically, Defendants argue that the following portions of the Order are not narrowly

drawn to extend "no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right" (18 U.S.C. § 3626(a)(1)(A)): (1) requiring Defendants to cease any policy and practice of denying or delaying hormone therapy; and (2) requiring Defendants to develop policies and procedures to give access to clinicians who meet the competency requirements stated in the WPATH Standards of Care. (*Id.* at pp. 3, 4, 5, 6). Defendants state that because each Plaintiff is currently receiving hormone therapy, the injunction violates the PLRA by enjoining past violations of denying and delaying therapy that do not apply to the putative class. (*Id.* at p. 5). Furthermore, requiring Defendants to allow transgender inmates access to clinicians who meet the competency requirements stated in the WPATH Standards of Care violates the PLRA and the Eighth Amendment because the WPATH Standards of Care are not constitutionally required. (*Id.* at p. 6).

In response, Plaintiffs argue that all of Defendants' arguments have been previously presented and considered by the Court, which is not a proper use of Rule 54(b). (Doc. 206, pp. 1, 3, 4, 6). Plaintiffs further refute Defendants' contention that aspects of the preliminary injunction do not comply with the PLRA. The preliminary injunction provision ordering Defendants to cease its policy of delaying or denying hormone therapy is not impermissibly broad under the PLRA. (*Id.* at p. 6). Because of Defendants' past misconduct, there is a significant risk of mistreatment going forward. Each Plaintiff may be receiving hormone therapy, but as an ongoing medical treatment, any delays in dosage adjustments can expose Plaintiffs to serious medical risks. (*Id.*). Requiring Defendants to monitor hormone levels does not address the likelihood that IDOC will ignore or delay a medically necessary change to a prisoner's hormone dosage in the

future. Additionally, because the Court has the authority to implement injunctive relief that would apply to the putative class, the Court can infer from Defendants' past misconduct that they will deny or delay hormone therapy for other members of the putative class. (*Id.* at p. 7).

Likewise, according to Plaintiffs, the provision ordering Defendants to provide transgender prisoners with access to clinicians who meet the competency requirements stated in the WPATH Standards of Care also does not violate the PLRA. Plaintiffs argue that Defendants have failed to present any alternative, less intrusive standard of care. "As the only accepted standards of care and practice within the medical community for the treatment of gender dysphoria, the WPATH Standards are the proper point of reference for determining what care is medically acceptable for determining deliberate indifference." (*Id.* at p. 8). Plaintiffs argue that the Seventh Circuit has held that WPATH Standards are the authoritative standards for the treatment of gender dysphoria, and so, they do not exceed what the Constitution requires. (*Id.*).

Given the arguments, the Court finds it necessary to clarify the preliminary injunction order. (Doc. 186, 187). To the extent that the Order has been construed to enjoin past wrongs for the denial and delay of hormone therapy, the Order is **VACATED**. *See Palmer v. City of Chi.* 755 F.2d 560, 571-72 (7th Cir. 1985); *Sierakowski v. Ryan,* 223 F.3d 440, 445 (7th Cir. 2000); *City of Los Angeles v. Lyons,* 461 U.S. 95 (1983). The Court still finds, however, that Plaintiffs have provided plenty of evidence that IDOC continuously fails to provide adequate treatment to inmates with gender dysphoria, including in the administration of hormone therapy. (Doc. 186, pp. 33, 37). Despite the known serious side effects of the hormones administered, IDOC fails to adequately monitor inmates

receiving hormone therapy and properly adjust dosages. (Doc. 186, p. 33-34, 37) (expert testimony stating that IDOC "did not monitor approximately twenty-five to fifty percent of inmates at all."). Therefore, paragraph 2 of the preliminary injunction order (Doc. 187, p. 1), is modified as follows:

> Defendants are immediately **ORDERED** to ensure that timely hormone therapy is provided when medically necessary, including the administration of hormone dosage adjustments, and to perform routine monitoring of hormone levels.

The Court **DENIES** the motion to the extent Defendants are requesting reconsideration of the requirement that Defendants develop policies and procedures which allow transgender inmates access to clinicians who meet the competency requirements stated in the WPATH Standards of Care to treat gender dysphoria. Defendants argue that the WPATH Standards of Care are not required by the Eighth Amendment, and so the order violates the PLRA by exceeding what is Constitutionally required. (Doc. 203, p. 6). Defendants state that it would be more appropriate to order that they "provide care by professionals who are qualified to treat gender dysphoria[.]" (*Id.* at p. 7). As previously mentioned, this Court finds that the WPATH Standards of Care are an appropriate benchmark for treating gender dysphoria at this time. (Doc. 186, p. 31) (citing *Edmo v. Corizon, Inc.* 935 F.3d 757, 769 (9th Cir. 2019)). The Court recognizes that while "the recommendations of [various medical groups] may be instructive in certain cases, they do not establish the constitutional minima." *Bell v. Wolfish,* 441 U.S. 520, 543 n. 27 (1979). Notably, Defendants still have not put forth a single expert to contest the WPATH Standards of Care or offer an opinion about the appropriate level of care for transgender inmates. (*See* Doc. 186, p. 31). Unless Defendants offer an alternative

constitutionally adequate standard of treatment or an expert who can speak to differing medically accepted treatment criteria regarding gender dysphoria, the Court will continue to use the WPATH Standards of Care as guidelines for constitutionally adequate care under the Eighth Amendment.

## DISPOSITION

For the reasons set forth above, the Court **VACATES** its previous preliminary injunction order (Doc. 187) to the extent that the Order could be construed to enjoin past wrongs for the denial and delay of hormone therapy and **GRANTS in part and DENIES in part** Defendants' Motion for Reconsideration. (Doc. 203). Paragraph 2 of the preliminary injunction order is modified as follows:

2. Defendants are immediately **ORDERED** to ensure that timely hormone therapy is provided when medically necessary, including the administration of hormone dosage adjustments, and to perform routine monitoring of hormone levels.

Pursuant to *MillerCoors LLC v. Anheuser-Busch Companies, LLC,* 940 F.3d 922 (7th Cir. 2019), the Court will enter the terms of the amended preliminary injunction in a separate document.

Finally, the Court will address the issues regarding Defendants' compliance with the preliminary injunction order and the request for the appointment of an expert to oversee compliance, as raised by Plaintiffs, in a separate order.

**IT IS SO ORDERED.**

DATED: March 4, 2020

_Nancy J. Rosenstengel_
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**