IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JANIAH MONROE,<br>MARILYN MELENDEZ,<br>EBONY STAMPS,<br>LYDIA HELÉNA VISION,<br>SORA KUYKENDALL, and<br>SASHA REED,<br><br>          Plaintiffs,<br><br>v.<br><br>STEVE MEEKS,<br>MELVIN HINTON, and<br>ROB JEFFREYS,<br><br>          Defendants. | Case No. 18-cv-00156-NJR |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

This matter is before the Court on the motion for class certification brought by Plaintiffs Janiah Monroe, Marilyn Melendez, Ebony Stamps,[1] Lydia Heléna Vision, Sora Kuykendall, and Sasha Reed pursuant to Federal Rule of Civil Procedure 23(b)(2). (Doc. 124). Defendants opposed the motion for class certification in a response filed on June 14, 2019. (Doc. 145). Plaintiffs then filed a reply brief. (Doc. 149). For the following reasons, the motion is granted.

## INTRODUCTION

Plaintiffs, transgender women currently incarcerated in the Illinois Department of Corrections ("IDOC") facilities, bring this civil action pursuant to 42 U.S.C. § 1983 for

---

[1] Plaintiffs state that Ebony Stamps is no longer in IDOC custody. (Doc. 124, p. 7). Because an individual "who [is] no longer incarcerated [does] not have a legally cognizable interest in enjoining IDOC's future behavior" and does "not have standing to assert the class claims" Ebony Stamps will be dismissed from this case. *Holmes v. Godinez,* 311 F.R.D. 177, 213 (N.D. Ill. Oct. 8, 2015).

violations of their constitutional rights. Plaintiffs claim that IDOC fails to provide constitutionally adequate medical treatment for inmates seeking evaluation and treatment for gender dysphoria in violation of the Eighth Amendment. (Doc. 1, p. 3; Doc. 124, p. 7). Plaintiffs seek declaratory and injunctive relief, asking the Court to compel Defendants to develop and implement a plan to eliminate the substantial risk of serious harm that Plaintiffs and members of the putative class suffer due to Defendants' inadequate evaluation and treatment of gender dysphoria. (Doc. 1, p. 37; Doc. 124, p. 7). Plaintiffs also have moved for the certification of a class action under Federal Rule of Civil Procedure 23(b)(2). (Doc. 124, p. 7). As defined in the motion and memorandum in support of class certification, the proposed class includes, "all prisoners in the custody of IDOC who have requested evaluation or treatment for gender dysphoria." (Doc. 124, pp. 8, 38).

## DISCUSSION

**I. LEGAL STANDARD FOR CLASS CERTIFICATION**

A plaintiff seeking to certify a class must satisfy the four requirements of Federal Rule of Civil Procedure 23(a): numerosity, commonality, typicality, and adequacy of representation. *See, e.g., Harper v. Sheriff of Cook Cty.*, 581 F.3d 511, 513 (7th Cir. 2009). In addition to meeting the threshold requirements of Rule 23(a), a plaintiff also must satisfy the requirements of at least one subsection of Rule 23(b). Here, Plaintiffs seek to certify a class under Rule 23(b)(2), and therefore they must show that "a single injunction or declaratory judgment would provide relief to each member of the class." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 621 (2011). Finally, the Seventh Circuit has "long recognized an implicit requirement under Rule 23" that a class must be ascertainable, meaning "the class must be defined clearly and that membership be defined by objective criteria." *Mullins v. Direct*

*Digital, LLC*, 795 F.3d 654, 657 (7th Cir. 2015).[2]

"Plaintiffs bear the burden of showing that a proposed class satisfies the Rule 23 requirements, but they need not make that showing to a degree of absolute certainty." *Messner v. Northshore Univ. Health Sys.*, 669 F.3d 802, 811 (7th Cir. 2012) (internal citation omitted). "It is sufficient if each disputed requirement has been proven by a preponderance of evidence." *Messner*, 669 F.3d at 811 (citing *Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*, 546 F.3d 196, 202 (2d Cir. 2008)).

**II. RULE 23(A) REQUIREMENTS**

    **A. Numerosity**

The first requirement of Rule 23(a) is that the proposed class "be so numerous that joinder of all members is impracticable." FED. R. CIV. P. 23(a)(1). "Although there is no 'bright line' test for numerosity, a class of forty is generally sufficient." *McCabe v. Crawford & Co.*, 210 F.R.D. 631, 643 (N.D. Ill. 2002) (citations omitted). *See also Mulvania v. Sheriff of Rock Island Cty.*, 850 F.3d 849, 859 (7th Cir. 2017). A plaintiff is not required to specify the exact number of persons in the class, nor is a plaintiff required to establish the exact identity of the class members. *See Marcial v. Coronet Ins. Co.*, 880 F.2d 954, 957 (7th Cir. 1989) (citation omitted). In addition to class size, courts consider "the geographic dispersion of the class members, the type of relief sought, and the practicability of relitigating the common core issue, when determining whether joinder would be practicable. *Murry v. E*Trade Fin. Corp.*, 240 F.R.D. 392, 396 (N.D. Ill. 2006) (citations omitted).

Plaintiffs state that as of July 28, 2018, IDOC records indicate that there are one hundred thirteen transgender prisoners across twenty-one different IDOC facilities.

---

[2] Because Defendants do not dispute that the class is ascertainable or raise objections to the proposed class definition, the Court finds that Plaintiffs have satisfied this requirement.

(Doc. 124, pp. 8, 10-11; Doc. 127-3, p. 2). According to more recent numbers presented by Defendants, the proposed class consists of one hundred fifteen transgender inmates at twenty-eight different facilities as of March 2019. (Doc. 145-1, p. 1). Defendants argue that seventy inmates of the one hundred fifteen were receiving hormone treatment, and so the proposed class would only be the remaining inmates who could challenge a continuing denial of prescription hormones. (Doc. 145, p. 8). The Court finds, however, that Plaintiffs claim they and the proposed class have been denied constitutionally adequate care for gender dysphoria due to system-wide policies, which is not limited to, but includes, denial or delay of hormone therapy and routine follow up. Therefore, class membership could include as many as one hundred fifteen inmates who "would have legitimate claims." *Marcial,* 880 F. 2d at 957. Accordingly, the Court finds that Plaintiffs have successfully demonstrated numerosity.

### B. Commonality

The second requirement of Rule 23(a) is that there is at least one question of law or fact common to the class. FED. R. CIV. P. 23(a)(2). "Although a court need only find a single common question of law or fact, the mere occurrence of all plaintiffs suffering as a result of a violation of the same provision of law is not enough. The claim must depend upon a common contention that is capable of class-wide resolution." *Chi. Teachers Union, Local No. 1 v. Bd. of Educ. of City of Chi.*, 797 F.3d 426, 434 (7th Cir. 2015) (citations omitted). "Where the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members, there is a common question." *Lippert v. Baldwin,* No. 10-c-4603, 2017 WL 1545672 at *2 (N.D. Ill. Apr. 28, 2017) (quoting *Suchanek v. Sturm Foods, Inc.,* 764 F.3d 750, 756 (7th Cir. 2014)).

Plaintiffs state that Defendants' system-wide policies and practices have deprived all

proposed class members, who are seeking treatment of the same medical condition, of constitutionally adequate medical care. (Doc. 124, p. 12). These policies and practices: (1) allow under qualified medical professionals and non-medical prison staff to evaluate and design treatment plans for prisoners seeking treatment for gender dysphoria through the use of the Transgender Committee; (2) deny or delay hormone treatments for reasons that are not recognized as contraindications to treatment; (3) fail to prescribe or administer appropriate hormones and dosages and monitor prisoners' health while receiving hormone treatment; (4) do not evaluate and consider gender confirmation surgeries as a treatment option; and (5) deprive prisoners of medically necessary social transition. (*See Id.* at pp. 13-24). While gender dysphoria treatment must be tailored to each individual's needs, IDOC's systemic policies and practices do not comply with established standards and guidelines defining appropriate treatment, and so the treatment provided to all members of the proposed class share the same inadequacies. (*Id.* at p. 13).

Defendants argue that Plaintiffs' claims focus on delay of treatment — "delays in receiving hormone therapy, delays in receiving gender affirming clothing, etc." (Doc. 145, p. 5). These allegations of delay can vary depending on an individual's circumstances and must be determined on an individual basis. Each claim of delay in treatment might not be sufficient alone to rise to the level of an Eighth Amendment violation. (*Id.*). Defendants state that it has not been established that there is one correct manner of treatment for gender dysphoria, and treatment involves matters that are individualized and specific to each Plaintiff and proposed class member. Even though an "illegal policy might provide the 'glue' necessary to litigate otherwise highly individualized claims as a class[,]" an illegal policy is different from complaints of systemic failures, and there is no illegal policy in place. (*Id.* at p. 7) (citing *Phillips v. Sheriff of Cook Cty.*, 828 F. 3d 541, 551 (7th Cir. 2016) (citations omitted)). Thus, this

Page 5 of 11

suit is not appropriate for class certification.

The Court finds that Plaintiffs have repeatedly identified IDOC policies and practices that have allegedly resulted in inadequate medical treatment for Plaintiffs and apply to all those in the proposed class. Because they claim that the Transgender Committee is responsible for the overall treatment plans for transgender prisoners with gender dysphoria, they are ultimately arguing that the Committee functions as "a common mode of exercising discretion that pervades the entire" IDOC system. *Wal-Mart Stores, Inc.*, 564 U.S. at 356. Plaintiffs do not solely argue that a delay in care has caused constitutional deprivations, but that multiple practices and policies, including delay of care for non-medical reasons, have all contributed to misdiagnoses and inappropriate treatment for Plaintiffs. Therefore, the common question applicable to all Plaintiffs and the proposed class is whether IDOC policies and practices resulted in inadequate medical treatment in violation of the Eighth Amendment. *See Lippert,* 2017 WL 1545672 at *4 (holding that that the common question of whether "policies and practices do in fact put inmates with serious medical conditions at risk" satisfies the commonality requirement) (citing *Parsons v. Ryan,* 754 F.3d 657, 678, 681 (9th Cir. 2014)). "[A]ny dissimilarities among the proposed class members will not impede the generation of common answers in this case." *Lacy v. Cook Cty. Ill.* 897 F.3d 847, 865 (7th Cir. 2018). Thus, Plaintiffs have met the commonality requirement.

### C. Typicality

The third requirement of Rule 23(a) is that the claims of the presentative parties are typical of the claims of the class. FED. R. CIV. P. 23(a)(3). The typicality requirement is meant to ensure that there is "enough congruence between the named representative's claim and that of the unnamed members of the class to justify allowing the named party to litigate on behalf of the group." *Spano v. The Boeing Co.*, 633 F.3d 574, 586 (7th Cir. 2011). In other words,

the named representative's claims must have "the same essential characteristics as the claims of the class at large." *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 514 (7th Cir. 2006) (quoting *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983)). It is well-established that typicality is satisfied if the named representative's claim "arises from the same event or practice or course of conduct that gives rise to the claims of other class members and . . . [the] claims are based on the same legal theory." *Oshana*, 472 F.3d at 514 (quoting *Rosario v. Livaditis,* 963 F.2d 1013, 1018 (7th Cir. 1992)); *De La Fuente,* 713 F.2d at 232.

Because Plaintiffs and proposed class members are subjected to Defendants' centralized policies, procedures, and practices, Plaintiffs assert that their claims are typical of the proposed class as a whole. Additionally, medical care for all inmates with gender dysphoria is guided and overseen by a single body, the Transgender Committee. (Doc. 124, p. 25). Plaintiffs and the proposed class members have experienced the same harm and seek the same injunctive relief—reform of the systemic deficiencies in the provision of healthcare to individuals suffering from gender dysphoria. (*Id.*, at p. 34). Differences in the precise details of the named Plaintiffs' injuries and those of the proposed class are irrelevant to the determination of typicality, as the harm already incurred and the risk of future injury arises from the same system-wide policies and practices. (*Id.*).

Defendants claim that while the named Plaintiffs appear to have shared experiences, that does not mean that their background or treatment within IDOC is typical of that of all IDOC prisoners. (Doc. 145, p. 9). The evidence submitted by Plaintiffs lacks the type of specificity needed to establish that these Plaintiffs have suffered experiences typical of the proposed class. Plaintiffs make only generalizations about proposed class members without specific data to compare the typicality of their claims. It cannot be assumed that every inmate diagnosed with, or otherwise falling under the definition of, gender dysphoria wants to have

sex reassignment surgery or the other items sought, and so Plaintiffs cannot show that their claims are typical of the group at large. (*Id.*).

Here, the Court finds that Plaintiffs' claim that they and the class members have been exposed to Defendants' same treatment policies and practices meets the typicality requirement. While there may be distinctions between claims of the named Plaintiffs and those of other class members, "the alleged harm arises from the same course of conduct on the part of IDOC." *Rasho v. Walker*, No. 7-cv-01298-MMM, Doc. 252, p. 5 (C.D. Ill., Aug. 14, 2015); *see also De La Fuente,* 713 F.2d at 232. If Plaintiffs succeed in demonstrating that IDOC policies have resulted in constitutionally inadequate medical care for transgender prisoners with gender dysphoria, then the resulting injunctive relief would likely benefit [P]laintiffs as well as other similarly-afflicted IDOC prisoners." *Lippert,* 2017 WL 1545672 at *6. Accordingly, Plaintiffs have established typicality.

### D. Adequacy

The final Rule 23(a) requirement for class certification is that "the representative parties will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4). Defendants do not challenge the adequacy of class counsel (*see* Doc. 145, p. 10), and the Court has no reason to believe they are not qualified. Therefore, the Court will only analyze whether the named Plaintiffs are adequate representatives of the class.

Plaintiffs argue that, as transgender prisoners with gender dysphoria, their interests directly align with those of the purposed class. (Doc. 124, p. 35). If Plaintiffs achieve the relief requested, for Defendants to implement constitutionally adequate medical care for prisoners with gender dysphoria, the injunctive relief would also benefit all proposed class members. (*Id.*; Doc. 149, p. 11).

Defendants argue that Plaintiffs could proceed as a group, but they do not represent

sex reassignment surgery or the other items sought, and so Plaintiffs cannot show that their claims are typical of the group at large. (*Id.*).

Here, the Court finds that Plaintiffs' claim that they and the class members have been exposed to Defendants' same treatment policies and practices meets the typicality requirement. While there may be distinctions between claims of the named Plaintiffs and those of other class members, "the alleged harm arises from the same course of conduct on the part of IDOC." *Rasho v. Walker*, No. 7-cv-01298-MMM, Doc. 252, p. 5 (C.D. Ill., Aug. 14, 2015); *see also De La Fuente,* 713 F.2d at 232. If Plaintiffs succeed in demonstrating that IDOC policies have resulted in constitutionally inadequate medical care for transgender prisoners with gender dysphoria, then the resulting injunctive relief would likely benefit [P]laintiffs as well as other similarly-afflicted IDOC prisoners." *Lippert,* 2017 WL 1545672 at *6. Accordingly, Plaintiffs have established typicality.

### D. Adequacy

The final Rule 23(a) requirement for class certification is that "the representative parties will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4). Defendants do not challenge the adequacy of class counsel (*see* Doc. 145, p. 10), and the Court has no reason to believe they are not qualified. Therefore, the Court will only analyze whether the named Plaintiffs are adequate representatives of the class.

Plaintiffs argue that, as transgender prisoners with gender dysphoria, their interests directly align with those of the purposed class. (Doc. 124, p. 35). If Plaintiffs achieve the relief requested, for Defendants to implement constitutionally adequate medical care for prisoners with gender dysphoria, the injunctive relief would also benefit all proposed class members. (*Id.*; Doc. 149, p. 11).

Defendants argue that Plaintiffs could proceed as a group, but they do not represent

sex reassignment surgery or the other items sought, and so Plaintiffs cannot show that their claims are typical of the group at large. (*Id.*).

Here, the Court finds that Plaintiffs' claim that they and the class members have been exposed to Defendants' same treatment policies and practices meets the typicality requirement. While there may be distinctions between claims of the named Plaintiffs and those of other class members, "the alleged harm arises from the same course of conduct on the part of IDOC." *Rasho v. Walker*, No. 7-cv-01298-MMM, Doc. 252, p. 5 (C.D. Ill., Aug. 14, 2015); *see also De La Fuente,* 713 F.2d at 232. If Plaintiffs succeed in demonstrating that IDOC policies have resulted in constitutionally inadequate medical care for transgender prisoners with gender dysphoria, then the resulting injunctive relief would likely benefit [P]laintiffs as well as other similarly-afflicted IDOC prisoners." *Lippert,* 2017 WL 1545672 at *6. Accordingly, Plaintiffs have established typicality.

### D. Adequacy

The final Rule 23(a) requirement for class certification is that "the representative parties will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4). Defendants do not challenge the adequacy of class counsel (*see* Doc. 145, p. 10), and the Court has no reason to believe they are not qualified. Therefore, the Court will only analyze whether the named Plaintiffs are adequate representatives of the class.

Plaintiffs argue that, as transgender prisoners with gender dysphoria, their interests directly align with those of the purposed class. (Doc. 124, p. 35). If Plaintiffs achieve the relief requested, for Defendants to implement constitutionally adequate medical care for prisoners with gender dysphoria, the injunctive relief would also benefit all proposed class members. (*Id.*; Doc. 149, p. 11).

Defendants argue that Plaintiffs could proceed as a group, but they do not represent

the views of all potential class members. (Doc. 145, p. 10). In the Motion for Class Certification, Plaintiffs are compared to each other, not to other putative class members, ignoring a wide range of variation between prisoners with gender dysphoria. Defendants further argue that Plaintiffs completely disregard and have no named representative for a member who was born female but identifies as male or a member who has gender dysphoria but chooses not to receive hormone treatment. As such, Defendants argue that Plaintiffs cannot adequately protect the interests of all prisoners in the custody of IDOC who have requested from IDOC evaluation or treatment for gender dysphoria. (*Id.*).

The Court finds that Plaintiffs and the proposed class members have the same interest in receiving constitutionally adequate care for the treatment of gender dysphoria. The Court does not see how a variation in medical treatment between different prisoners with gender dysphoria would result in conflicting interests or inadequate representation, as all transgender inmates with gender dysphoria have allegedly been harmed by the same policies and practices implemented throughout IDOC system. As such, the purposed class meets the adequacy requirement.

### IV. Rule 23(b)(2) Requirements

Plaintiffs seek to certify a class under Rule 23(b)(2), which allows for certification upon a finding that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole[.]" "Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class. It does not authorize class certification when each individual class member would be entitled to a *different* injunction or declaratory judgment against the defendant." *Wal-Mart Stores, Inc.*, 564 U.S. at 360.

Plaintiffs state that Defendants' conduct applies to the class generally by depriving Plaintiffs and proposed class members of constitutionally adequate medical treatment for gender dysphoria through IDOC's system-wide policies and practices. The request for injunctive relief to address systemic failures in treatment would apply to and benefit all members of the proposed class. (Doc. 124, p. 38).

Defendants argue, first, that there is no basis for injunctive relief because there is no unlawful act by Defendants. (Doc. 145, p. 10). Additionally, there is not an injunctive remedy that could be imposed that would be final to the whole class and provide relief to each class member due to the individualized nature of the claims that could be presented. (*Id.*, at p. 11). Because medical decisions cannot be made through a generic remedy and necessitate individualized relief, Plaintiffs' claims are not amenable to class-wide injunctive relief. (*Id.*).

Here, although each Plaintiff has included specific allegations regarding her unconstitutional care, Plaintiffs' main argument is that they have suffered serious harm and are at risk of further harm as a result of IDOC policies, procedures, and practices that deny evaluation and medically necessary treatment of gender dysphoria. Furthermore, they seek injunctive relief regarding Defendants' conduct and IDOC policies that would "apply generally to the class…" FED. R. CIV. P. 23(b)(2). "When members of a putative class seek uniform injunctive or declaratory relief from policies or practices that are generally applicable to the class as a whole[,]" the requirements of Rule 23(b) are deemed satisfied. *Lippert*, 2017 WL 154672 at *9 (quoting *Parsons,* 754 F.3d at 688). Therefore, the Court grants class certification under Rule 23(b)(2).

DISPOSITION

For the reasons set forth above, the Court **GRANTS** Plaintiffs' Motion for Class Certification (Doc. 124) and **CERTIFIES** a class defined as "**all prisoners in the custody of IDOC who have requested evaluation or treatment for gender dysphoria**."

IT IS SO ORDERED.

DATED:   March 4, 2020

                                                                          **NANCY J. ROSENSTENGEL**
                                                                          **Chief U.S. District Judge**