**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| JANIAH MONROE, MARILYN MELENDEZ, LYDIA HELÉNA VISION, SORA KUYKENDALL, and SASHA REED, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | Civil No. 3:18-cv-00156-NJR |
| v. | ) ) | |
| ROB JEFFREYS, STEVE MEEKS, and MELVIN HINTON, | ) ) ) | |
| Defendants. | ) ) | |

## PLAINTIFFS' MOTION TO COMPEL DISCOVERY RESPONSES

Though the document discovery deadline is today—July 6—Defendants' productions remain materially deficient.  In fact, Defendants ***admit*** this is so.

Defendants did not even serve objections to Plaintiffs' Second and Third Requests for Production, each served months ago, and few, if any, responsive documents have been produced. Regarding Plaintiffs' First Requests for Production, Defendants refuse to timely and fully supplement their earlier productions, despite repeated requests from Plaintiffs.  While there have been delays due to the impact of COVID-19, these have been addressed by orders from this Court.  Defendants have failed to offer any reasonable explanation for their continued refusal to respond to and update outstanding discovery.

Unfortunately, the present situation is yet another example of the Defendants not taking this case seriously.  Plaintiffs face significant prejudice if Defendants do not promptly produce these documents, particularly as the parties are in the middle of critical depositions that must be completed by the August 17, 2020 discovery deadline.

1

The Court should compel immediate and full production of all documents responsive to Plaintiffs' requests.

## BACKGROUND

On May 2, 2019, Plaintiffs moved for a preliminary injunction "halting IDOC's policies and practices that deny and delay competent treatment to prisoners with gender dysphoria, and instructing IDOC to provide medically-necessary treatment." Dkt. No. 123, PI Mot. at 33. The Court held a preliminary injunction hearing on July 31 and August 1, 2019, where it heard testimony from named Plaintiffs about their misdiagnoses, mistreatment, delays in treatment, and overall harrowing experiences as transgender women in IDOC's system. *See generally* Dkt. No. 157, 7/31/2019 PI Hr'g Tr.; Dkt. No. 158, 8/1/2019 PI Hr'g Tr. The Court also heard testimony from expert medical specialists in the treatment of patients with gender dysphoria, who explained that appropriately monitored hormone therapy, social transition, and surgery are often necessary components of treating gender dysphoria. *See* Dkt. No. 186, PI Order ("Order") at 11–16 (citing testimony from Dr. Vin Tangpricha and Dr. Randi Ettner).

On December 19, 2019, the Court issued its Order granting Plaintiffs' motion and enjoining Defendants. The Court found "evidence that IDOC denies and delays the diagnosis and treatment of gender dysphoria without a medical basis or penological purpose," Order at 32–33, and "plenty of evidence that IDOC continuously fails to provide adequate treatment to inmates with gender dysphoria," *id*. at 37.  Subsequently, on March 4, 2020, the Court certified a class of "all prisoners in the custody of IDOC who have requested evaluation or treatment for gender dysphoria." Dkt. No. 213 at 11.  This order lifted a stay on discovery that had been placed pending resolution of Plaintiffs' motion for class certification. Dkt. No. 174, 10/17/2019 Minute Entry for Tele. Discovery Dispute Conf.

2

This motion seeks documents responsive to Plaintiffs' Second and Third Requests for Production ("RFPs"). (*See* Exs. A & B). Plaintiffs served the RFPs on Defendants on October 3, 2019[1] and April 8, 2020. IDOC failed to provide *any* responses or objections to these requests, let alone produce documents sufficient to comply with these requests. Defendants acknowledged the same on the parties' meet and confer held July 2, 2020.

This motion also seeks documents responsive to Plaintiffs' first set of RFPs, which were served **over two years ago**, on May 29, 2018. (*See* Ex. C.) Defendants agreed to timely provide updated documents in response to these requests, but failed to do so. (*See* Ex. D, April 28, 2020 L. Cook Email; Ex. E, April 29, 2020 A. Bailey Email.) On the July 2, 2020 meet and confer, Defendants failed to justify their untimely responses and productions.

## ARGUMENT

Federal Rule of Civil Procedure 26(b)(1) allows discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense." FED. R. CIV. P. 26(b)(1). Courts are given the power to compel discovery because a party's failure to comply with the discovery rules may make it difficult, if not impossible, to adjudicate a case on its merits. *Levit ex rel. Thomas Consol. Indus. v. Herbst (In re Thomas Consol. Indus.), Inc.*, No. 04 CV 6185, 2005 WL 3776322, at *9 (N.D. Ill. May 19, 2005). Here, Plaintiffs' RFPs are narrowly drafted and targeted to obtain information necessary to appropriately adjudicate their claims at trial. Defendants' failure to respond *at all* to Plaintiffs' RFPs—let alone in a way that complies with the discovery rules—now warrants an order compelling them to respond.

---

[1]    Responses to these requests were stayed by this Court pending the resolution of Plaintiffs' motion for class certification, which was granted on March 4, 2020.

I.      **PLAINTIFFS' REQUESTS ARE RELEVANT, PROPORTIONAL TO THE NEEDS OF THE CASE, AND NOT UNDULY BURDENSOME**

A.      **Plaintiffs' Requests Seek Documents Relevant To The Claims In This Case**

Even Defendants agree that Plaintiffs' requests are almost entirely unobjectionable under Rule 26(b)(1).  "Relevancy is construed broadly and may include even information not directly related to claims in the pleadings when it relates to the underlying subject matter or reasonably could lead to other matters that could bear on, any issue that is or may be in the case." *Eagle Forum v. Phyllis Schlafly's Am. Eagles*, No. 3:16-CV-946-NJR, 2020 WL 374557, at *2 (S.D. Ill. Jan. 23, 2020) (quotations and citation omitted).  Here, Plaintiffs' discovery requests are unquestionably relevant, as they seek information on issues at the heart of this case: IDOC's policies and procedures regarding the provision of medical care for gender dysphoria, as well as IDOC's compliance with the Court's Preliminary Injunction Order.  During the parties' July 2, 2020 meet and confer, Defendants conceded that they do not intend to make any relevancy objections to Plaintiffs' Second or Third RFPs.  This is not surprising given the obvious relevance of the requests on which Plaintiffs now move to compel.

1.      *Preliminary Injunction Compliance Requests (3rd RFPs, Requests 1–4, 7)*

Several of Plaintiffs' requests seek documents relating to the preliminary injunction hearing and IDOC's compliance with this Court's subsequent Preliminary Injunction Orders. Dkt. Nos. 186 and 211.  Documents responsive to these requests are essential to determine the necessity of permanent relief.

On January 22, 2020, Defendants filed a report regarding their compliance with the preliminary injunction.  Dkt. No. 202, Compliance Report.  Based on that initial report, the Court had "some reservations about Defendants' compliance" but found that IDOC was "taking steps to comply with certain aspects of the Court's Order."  Dkt No. 215, Compliance Order at 1–2.

4

Further, the Court instructed that if the parties "have further issues regarding compliance with the preliminary injunction order, a proper motion should be filed." *Id.* at 4.  Defendants' failure to produce documents responsive to these requests significantly hinders Plaintiffs' ability to evaluate IDOC's compliance with the Court's Order and the likely success of filing any such motion.

Moreover, these documents bear directly on Plaintiffs' claims.  Plaintiffs seek permanent relief enforcing IDOC to provide proper medical treatment for gender dysphoria and to cease violating the rights of transgender prisoners guaranteed under the Eighth Amendment.  It is difficult, if not impossible, to see how the Court will be able to evaluate Plaintiffs' request without documents related to IDOC's compliance with the preliminary injunction.

2.   *Policies and Practices Regarding the Evaluation of Transgender Prisoners (2nd RFPs, Requests 2, 6; 3rd RFPs, Request 5)*

Plaintiffs seek documents and communications relating to certain IDOC policies regarding the evaluation and care of transgender prisoners, specifically: (1) the new Administrative Directive on "Evaluations of Transgender Offenders"; (2) the "Quality Assurance Program" relating to transgender prisoners, referred to by Dr. Puga in his testimony at the PI hearing (8/1/2019 PI Hr'g Tr. at 410); and (3) the roles and responsibilities of the Transgender Care Review Committee from July 1, 2019 through the present.  These requests directly pertain to the ultimate issues in this case: what care does IDOC provide transgender prisoners, and does that care comport with the Constitution.

3.   *Suicide Task Force (2nd RFPs, Request 1)*

Plaintiffs requested documents relating to suicides among the transgender prison population, including documents relating to, and generated by, IDOC's "Suicide Task Force." As this Court is aware, failure to provide adequate care for gender dysphoria results in increased

risk of self-harm, including genital mutilation and suicide.  Order at 32.  Accordingly, Plaintiffs are entitled to documents reflecting instances of suicide among transgender prisoners, because that information reflects one consequence of inadequate care.  Moreover, these documents relate directly to the question of IDOC's knowledge and disregard of the substantial risk of suicide among transgender prisoners receiving inadequate care.

### 4. *Dr. Erica Anderson (3rd RFPs, Request 6)*

In their third set of RFPs, Plaintiffs requested documents relating to Dr. Erica Anderson. Although Defendants identified Dr. Anderson as an IDOC consultant in their compliance report, they did not describe the scope of her engagement, beyond stating that it was "anticipated" that she would "assist the Department in reviewing and drafting policies and procedures related to transgender care." Dkt. No. 202, Compliance Report, ¶ 11.  Because Dr. Anderson will allegedly be consulting on the care and treatment of transgender prisoners, additional information about her engagement with IDOC is relevant to the claims and allegations in this case.  Furthermore, Plaintiffs intend to depose Dr. Anderson and require documents responsive to this request to adequately prepare for that deposition.

### 5. *Correspondence Involving Dr. William Puga or Dr. Shane Reister (3rd RFPs, Request 8)*

Plaintiffs seek documents relating to correspondence involving Dr. William Puga or Dr. Shane Reister relating to the preliminary injunction briefing, hearing, or any Court order related thereto.  Dr. Puga and Dr. Reister are both central figures in this case.  Dr. Puga is the Chief of Mental Health and Chair of the Transgender Committee, and is thus responsible for overseeing the care of all transgender prisoners in IDOC custody.  Dr. Reister also serves on the Committee and—according to Defendants—developed the training for correctional staff on transgender issues.  Dkt. No. 210, Reply ISO Compliance Report at 5.  He also continues to "update the

training, discuss[] the training with IDOC staff, and attend[] conferences" *Id.* at 5.  As a result, these documents are unquestionably relevant to evaluating IDOC's compliance with the Court's Preliminary Injunction Orders and IDOC's deliberate indifference to Plaintiffs' serious medical needs.  Furthermore, Plaintiffs noticed the depositions of both Dr. Puga and Dr. Reister and will be substantially prejudiced if these documents are not produced in advance of those depositions.

### B.     Plaintiffs' Requests Do Not Impose Any Undue Burden On Defendants

None of Plaintiffs' requests are overly burdensome or disproportionate to the needs of this case.  Plaintiffs are conscientious of the additional burdens placed on Defendants and defense counsel during the COVID-19 pandemic.  This is exactly why Plaintiffs waited until the close of document discovery to bring this motion, even though Defendants failed to serve ***any*** responses or objections to these requests for many months, let alone within the thirty days granted to them under the Federal Rules of Civil Procedure.  *See* FED. R. CIV. P. 34.

COVID-19 has undoubtedly made the discovery process more difficult for all parties, but responding to discovery is never burden-free.  "[T]hat is not the test, or else there could be no discovery in any case."  *In re Sulfuric Acid Antitrust Litig.*, 231 F.R.D. 351, 360 (N.D. Ill. 2005).  Instead, "[t]he question is whether the burden is an undue one."  *Id.*  Plaintiffs' requests do not impose any undue burden, and Defendants conceded the same during the parties' July 2, 2020 meet and confer.  In fact, during this meet and confer, Defendants' counsel raised only one burden objection in regards to Request No. 1 of Plaintiffs' Second Set of RFPs.  Counsel stated that they intend to object to this request as overly burdensome because the gender identity of prisoners who commit suicide in IDOC custody is tracked in such a way that counsel will be required to review each suicide record individually in order to pull suicide records for only transgender prisoners.  During the call, Plaintiffs' counsel suggested that Defendants produce all

suicide records and offered to review them all to determine which records applied to transgender prisoners and which did not.  Defendants' counsel is still considering this offer.

## II.    DEFENDANTS CANNOT RELY ON THE DELIBERATIVE PROCESS PRIVILEGE TO WITHHOLD RESPONSIVE DOCUMENTS

At the parties' meet and confer on July 2, 2020—over *eight months* after Plaintiffs served their second set of RFPs, and over two months after Plaintiffs served their third set of RFPs—counsel for Defendants, *for the first time,* raised a "deliberative process privilege" objection.  Defendants did not specify which requests seek information and documents allegedly protected by this privilege.  They instead indicated that there are an uncertain number of requests they plan to object to on this basis, because—almost seven months after the Court entered the Preliminary Injunction—IDOC has not yet finalized a new Administrative Directive for the treatment of transgender prisoners.  That Plaintiffs are just now hearing of this broad-sweeping objection suggests that Defendants have not made a serious effort to comply with their discovery obligations.

Even if Defendants are permitted to rely upon this objection, it is without merit. Defendants cannot use this limited governmental privilege—that only protects certain categories of predecisional, deliberative documents—to avoid their discovery obligations under the Federal Rules.  *See Holmes v. Hernandez*, 221 F. Supp. 3d 1011, 1016 (N.D. Ill. 2016).  Indeed, the privilege is entirely inapplicable here.  Defendants failed to establish a *prima facie* case.  But, even if Defendants met their burden, Plaintiffs have a particularized need for the documents sought.

*First*, Defendants waived this objection by failing to timely respond to Plaintiffs' discovery requests and to make a substantiated claim of the privilege.  "Like other privileges, the deliberative process privilege may be waived." *Hale v. State Farm Mut. Auto. Ins. Co.*, No. 12-

0660-DRH, 2016 WL 813709, at *1 (S.D. Ill. Mar. 2, 2016).  Courts hold that abuses of the discovery process are grounds for finding waiver. *See, e.g.*, *Dominguez v. Schwarzenegger*, No. 09-2306 CW (JL), 2010 WL 3341038, at *6 (N.D. Cal. Aug. 25, 2010) (finding deliberative process privilege waived when government failed to substantiate claims on privilege log).  Here, Defendants sat on Plaintiffs' requests for months.  It was only ***after*** Plaintiffs requested a meet and confer on their outstanding discovery requests that Defendants even informally raised this objection.  This unjustifiable delay is a clear abuse of the discovery process and constitutes a basis for finding waiver.

 ***Second***, even if waiver did not apply, Defendants failed to make a *prima facie* case for the deliberative process privilege, as they did not make any type of formal claim.  *See Holmes*, 221 F. Supp. 3d at 1016.  In order for Defendants to satisfy their burden "three things must happen: (1) the department head with control over the matter must make a formal claim of privilege, after personal consideration of the problem; (2) the responsible official must demonstrate, typically by affidavit, precise and certain reasons for preserving the confidentiality of the documents in question; and (3) the official must specifically identify and describe the documents." *Id.* (citation omitted).

 Defendants did not satisfy even one of these requirements.  Counsel did not provide an affidavit stating precise and certain reasons for preserving the confidentiality of the documents in question.  To the contrary, counsel verbally lodged a broad and bare objection to Plaintiffs' requests.  Counsel did not even bother to specify which requests it was objecting to—let alone identify and describe the specific documents and information that it deems protected by the privilege.  Counsel's vague and conclusory objection does not begin to satisfy the threshold showing required to make a claim of deliberative process.

**Finally**, even if Defendants made a *prima facie* case, Plaintiffs can show an established particularized need for these documents, outweighing any governmental interest in confidentiality. *Bahena v. City of Chicago*, No. 17 C 8532, 2018 WL 2905747, at *2 (N.D. Ill. June 11, 2018).  "There are five factors the Court must consider to determine whether there is a particularized need: (1) the relevance of the documents to the litigation; (2) the availability of other evidence that would serve the same purpose; (3) the government's role in this litigation; (4) the seriousness of the litigation and the issues involved; and (5) the degree to which the disclosure of the document sought would tend to chill future deliberations within government agencies." *Id.* at *4.

Here, all five factors weigh heavily in favor of the disclosure.  The documents Plaintiffs request cut to the heart of the matter—Defendants' compliance with the Court's Preliminary Injunction Order.  There is no other way for Plaintiffs to get this information, as it is in the sole and exclusive possession of IDOC. Without these documents, Plaintiffs would be forced to litigate this case based only on the testimony of IDOC's witnesses.  But, relying on "the memory and candor of [a defendant's witness] is not the same as being armed with the [documents]." *Holmes*, 221 F. Supp. 3d at 1020.

Likewise, IDOC's role in this litigation weighs in favor of disclosure. "Where the government agency asserting the privilege is a party to the lawsuit, or its conduct bears on the plaintiff's claim, this factor weighs in favor of finding a particularized need."  *Id.* at 1021 (holding Defendant agency's role in the litigation showed that plaintiff had "a weighty need" for the reports).  IDOC is a Defendant in this lawsuit through its named representatives, and there is no question they are at its center—Plaintiffs' claim is based on IDOC's failure to provide adequate medical treatment to transgender prisoners in IDOC custody.

Moreover, the gravity of Plaintiffs' allegations—namely, IDOC's continued practice of deliberate indifference to Plaintiffs' serious medical needs in violation of the Eighth Amendment—warrants disclosing these documents.  As wards of the State, Plaintiffs have no choice but to rely entirely on IDOC for medical treatment.  At the Preliminary Injunction hearing, the Court heard testimony from named Plaintiffs about "overall harrowing experiences as transgender women in IDOC's system."  Dkt. No. 206, Pls.' Resp. to Defs.' Mot. for Reconsideration, at 2.  The Court found, among other things, that "the Committee's uninformed decisions place transgender inmates at risk" of "serious damage to *future* health." Order at 34 (emphasis in original).

Additionally, "[w]here a plaintiff directly challenges a government agency's deliberative process, courts routinely find that there is a particularized need for disclosure." *Holmes,* 221 F. Supp. 3d at 1021.  By accusing Defendants of deliberate indifference and challenging Defendants' compliance with the Court's Preliminary Injunction Order, Plaintiffs are necessarily challenging IDOC's deliberative process.  *See, e.g., Smentek v. Sheriff of Cook Cty.*, No. 09 C 529, 2013 WL 2588709, at *4 (N.D. Ill. June 11, 2013) (holding that plaintiffs had a particularized need for Cook County Jail pre-budget documents because plaintiffs alleged that the jail's policies were deliberatively indifferent to detainees health and safety); *Ferrell v. U.S. Dep't of Hous. & Urban Dev.*, 177 F.R.D. 425, 430–31 (N.D. Ill. 1998) (finding a particularized need in a case challenging the Department of Housing and Urban Development's compliance with a consent decree after observing that "[HUD's] decision[-]making process in this matter— and the corresponding 'roads not taken'—is 'the case' and is directly relevant and crucial to Plaintiffs' contempt motion").

On balance, the relevance of the documents sought and IDOC's role in this case, coupled with the seriousness of this litigation and the fact that Plaintiffs cannot reasonably obtain this information via other evidence clearly outweighs IDOC's claim that disclosure would chill future deliberations.  As such, Defendants cannot hide behind the deliberative process privilege to shield them from their discovery obligations.

## III.   DEFENDANTS FAILED TO TIMELY SUPPLEMENT THEIR PRIOR DOCUMENT PRODUCTIONS

In addition to their complete lack of response to Plaintiffs' Second and Third Set of RFPs, Defendants did not comply with their obligation and agreement to supplement previous document productions.  Plaintiffs repeatedly requested that Defendants update their productions, and Defendants did not once object to these requests.  (*See* Ex. F, 4/3/2020 L. Cook Email; Ex. G, 4/8/2020 A. Bailey Email; Ex. H, 4/20/2020 L. Cook Email.)  Nor could they have, as all parties are required to supplement their discovery responses under the federal rules.  FED. R. CIV. P. 26(e)(1).  Instead, Defendants' counsel provided a single update on their supplementary productions, explaining that they had conducted a search for relevant ESI and intended "to review a random subset of documents for sampling" and to "provide [] results as soon as [they were] able."  (Ex. D, 4/28/2020 L. Cook Email.)  Over two months later, Defendants have yet to provide the results of any random sampling.

Plaintiffs are doing their best to keep this case moving forward, including by deposing five witnesses and requesting availability for several more.  But, there is only so much Plaintiffs can do without updated and compliant document productions before subjecting themselves to prejudice.  Without a Court order, Defendants will continue to drag their feet and provide only lip service to their discovery obligations.  The Court should order Defendants to produce updated ESI and documents responsive to Plaintiffs' First Set of RFPs.

## CONCLUSION

WHEREFORE, Plaintiff respectfully requests that this Court enter an order compelling Defendants to produce documents responsive to Plaintiffs' Second and Third Requests for Production and supplement their productions responsive to Plaintiffs' First Requests for Production.


Dated: July 6, 2020

By: /s/ *Amelia H. Bailey*

John A. Knight
Camille E. Bennett
Ghirlandi Guidetti
Carolyn M. Wald
ROGER BALDWIN FOUNDATION OF ACLU, INC.
150 North Michigan Avenue, Suite 600
Chicago, IL 60601
Telephone: (312) 201-9740
Facsimile: (312) 288-5225
*jknight@ACLU-il.org*
*cbennett@ACLU-il.org*
*gguidetti@ACLU-il.org*
*cwald@ACLU-il.org*

Catherine L. Fitzpatrick
Jordan M. Heinz
Sydney L. Schneider
Austin B. Stephenson
Amelia H. Bailey
Sam G. Rose
KIRKLAND &ELLIS LLP
300 North LaSalle Street
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
*catherine.fitzpatrick@kirkland.com*
*jordan.heinz@kirkland.com*
*sydney.schneider@kirkland.com*
*austin.stephenson@kirkland.com*
*amelia.bailey@kirkland.com*
*sam.rose@kirkland.com*

Brent P. Ray
KING &SPALDING LLP
353 North Clark Street
Chicago, IL 60654
Telephone: (312) 995-6333
Facsimile: (312) 995-6330
*bray@kslaw.com*

Thomas E. Kennedy III
Sarah Jane Hunt
KENNEDY HUNT P.C.
906 Olive Street, Suite 200
Saint Louis, MO 63101
Telephone: (314) 872-9041
*tkennedy@KennedyHuntLaw.com*
*sarahjane@KennedyHuntLaw.com*

14

## <u>CERTIFICATE OF SERVICE</u>

I certify that on July 6, 2020, I electronically filed the foregoing document and any attachments with the Clerk of this Court by using the CM/ECF system, which will accomplish service through the Notice of Electronic Filing for parties and attorneys who are Filing Users.

/s/ *Amelia Bailey*
Amelia Bailey