IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS DIVISION

| | |
|---|---|
| JANIAH MONROE, MARILYN MELENDEZ, LYDIA HELENA VISION, SORA KUYKENDALL, and SASHA REED, | ) ) ) ) |
| Plaintiffs, | ) ) |
| - vs- | ) No. 18-156-NJR ) |
| ROB JEFFREYS, MELVIN HINTON, and STEVEN BOWMAN, | ) ) ) ) |
| Defendants. | ) |

**DEFENDANTS' RESPONSE TO PLAINTIFFS'
MOTION TO COMPEL DISCOVERY RESPONSES**

The Defendants, ROB JEFFREYS, MELVIN HINTON, and STEVEN BOWMAN (each sued in their official capacity as an official of the Illinois Department of Corrections [referred to as "IDOC" or "the Department"]), by and through their Attorney, Kwame Raoul, Attorney General for the State of Illinois, provide the following in response to Plaintiffs' motion to compel discovery responses [Doc. 222]:

**Introduction**

Plaintiffs move to compel responses to their second and third requests for production, as well as supplemental responses to their first request for production. [Doc. 222]. In their motion, the Plaintiffs accuse the Defendants of not taking this case seriously. The Defendants have produced over 340,000 pages to the Plaintiffs, reviewed tens of thousands of e-mails, responded to interrogatories, coordinated and defended depositions (with more to come), and responded to

other inquiries. In contrast, the Plaintiffs have produced little in this case despite requests from the Defendants for, among other things, any documents and statements related to their claims.[1]

The Defendants have continued to produce documents despite emergency conditions over the last four months that have limited staff availability in the Department. As part of the response to the COVID-19 pandemic, many IDOC employees have not been working in the facilities full time, and those that are have had to focus on providing for inmate safety rather than their usual administrative functions. The Department has provided documents although this production has at times been slowed by other priorities.

Plaintiffs have overstated the urgency of production in this case ("Plaintiffs face significant prejudice if Defendants do not promptly produce these documents, particularly as the parties are in the middle of critical depositions…"). The depositions being taken by the Plaintiffs are not critical, but are, in fact, mostly irrelevant. The Court has granted preliminary injunctive relief in this case. The Department had started making changes to its policies and procedures regarding transgender inmates before the injunction was entered and continue to do so with an eye on the specific requirements imposed by the Court. This included hiring a consultant affiliated with WPATH, revising the role of the Transgender Care Review Committee, and training staff on handling transgender inmates. Those efforts have been slowed, or in some cases halted, by the pandemic. The medical staff has been focused on responding to the needs of a population living in close quarters. All transfers within the Department are on hold to try to limit the possibility of spreading the virus. When the concerns related to the pandemic have passed, the Department will proceed with its efforts to address the needs of transgender inmates. It is the ultimate result of those efforts that will have to be considered when the Court decides whether permanent injunctive

---

[1] This grievance is not ripe for judicial review. Defense counsel has drafted a Rule 37 letter to Plaintiffs that has not been sent as of the filing of this response, and the parties are still obligated to meet and confer. Defendants only refer to this issue to show the stark contrast between how Plaintiffs view Defendants' discovery compliance and how Plaintiffs have responded to discovery served to them.

relief will be granted. Testimony about policies in place before the changes are implemented will be of limited, if any, relevance.

## Additional Background

Discovery on the merits was stayed between the filing of Plaintiffs' motion for class certification and this Court's ruling on the same. While Plaintiffs' class certification motion was pending, Plaintiffs served a second set of requests for production of documents and second set of interrogatories. Defendants objected to discovery at that time, and Magistrate Judge Beatty agreed that discovery was stayed. Plaintiffs acknowledge the stay in a footnote [Doc. 222, p. 3, fn. 1]; however, Plaintiffs still contend that their second set of discovery requests were pending for eight months, which is a stretch of the truth given the timing at issue. Yet, even after Plaintiffs moved for class certification, Defendants continued: (1) reviewing and producing emails recovered as part of a mass ESI search conducted in 2018 and still outstanding; (2) producing meeting notes related to Transgender Care; (3) producing medical records of named Plaintiffs and then-putative class members; and (4) updating named Plaintiff masterfile records.

Following this Court's March 4, 2020, order granting class certification, the parties began discussing a proposed schedule. On March 10, 2020, Plaintiffs reminded defense counsel of the second sets of discovery and requested an updated ESI search. Although defense counsel expressed concern about the tight schedule proposed by Plaintiffs, the parties were able to agree on a proposed schedule on March 13, 2020, just before the COVID-19 pandemic caused the shutdown of schools, businesses, and State offices in Illinois. The parties finalized their agreement and submitted a proposed schedule to the Court on March 19, 2020, while it was still uncertain that we would be facing COVID-related dangers that would last as long as they already have.

Since discovery has reopened and up to this response, Defendants have produced nearly 22,000 pages of documents (BATES 319783-341705) which includes a one-page placeholder for

a training PowerPoint with sound produced in native format. During a telephone conference in late April, defense counsel explained they were trying not to overwhelm Departmental staff during the COVID pandemic. Regardless, the parties went ahead with depositions in mid-June. Prior to July, defense counsel was unable to tell when they would receive full and complete information to use for the discovery responses.

Plaintiffs' counsel spoke with the undersigned counsel for Defendants on July 2, 2020. The Plaintiffs inquired about the timing of formal discovery responses—which defense counsel acknowledged were owed to Plaintiffs—and the undersigned explained that she had largely drafted responses to their second and third discovery requests; however, she was still waiting on information from the Department and would be able to get them out late the following week. The parties discussed the objections included in the responses and some of the responsive documents Plaintiffs could still expect to receive. On July 10, 2020, the undersigned served Defendants' responses to Plaintiffs. (*See* attached Exhibits 1 & 2). Many of the documents responsive to Plaintiffs' second request for production of documents had already been served to Plaintiffs in May 2020, though some were served in late June or early July.

During the July 2 call, the undersigned explained to Plaintiffs' counsel that they had the operative Administrative Directive concerning transgender care (eff. July 2019). The undersigned also explained that the Department was in the process of revising it, though defense counsel had no idea when the new policy would be finalized as it had been unexpectedly placed on hold while the Department dealt with COVID issues. The undersigned related that it was her understanding that the Department was beginning again with revisions, but did not know when they would be completed.

**Argument in Response to Plaintiffs' Motion**

**I.   The timing at issue here is more complicated than under normal circumstances.**

Federal Rule of Civil Procedure 34 provides that a party to whom a discovery request is directed "must respond in writing within 30 days after being served . . . . A longer or shorter time may be stipulated to under Rule 29 or be ordered by the court." Fed. R. Civ. P. 34(b)(2)(A). Federal Rule 29 provides that, the parties may stipulate to extend the time for any form of discovery so long as it does not interfere with the time set for completing discovery, for hearing a motion, or for trial, unless the court orders otherwise. Fed. R. Civ. P. 29(b). This Court entered Administrative Orders that automatically extended deadlines in cases pending in this district; however, the parties attempted to set the time by agreement despite Defendants' misgivings. *See* Exhibit 3, continuation of email chain related to Pls' Ex. E [Doc. 222-5, p. 2]; *see also* Pls' Ex. F, [Doc. 222-6, p. 2]; Exhibit 4, p. 2.

In their motion, Plaintiffs contend that Defendants have been dragging their feet and failing to comply with their discovery obligations. Plaintiffs also contend that Defendants have failed to provide responsive discovery responses to separate requests dating back, respectively, two years, eight months, and three months. Yet, Plaintiffs' characterization of discovery unfairly sets aside pertinent factors complicating discovery in this matter.

Defendants have continued to supplement past discovery responses throughout this action. The ESI requests referenced by Plaintiffs are a different matter, as there are no individual Defendants in this case. The listed Defendants are included in this suit as a function of their position and not because they are necessarily involved with the transgender care at issue here. Because the entire Department falls under the defense umbrella, e-mails are searched by the Illinois Department of Innovation & Technology (DoIT). The e-mail search is not continuing; rather, the Office of the Attorney General, through IDOC, must send a specific search request to

DoIT that contains search terms, custodians, and, if relevant, a time limitation. In 2018, the parties agreed to a set of search terms, timeframe, and custodians. The 2018 search completed by DoIT resulted in over 30,000 e-mails, many of which had attachments.

The parties' *Discovery Plan for Electronically Stored Information* initially limited e-discovery from January 31, 2015, to January 31, 2018, and the parties agreed that they would preserve ESI created outside of those dates but would neither collect or produce it unless there was a future request. [Doc. 65, p. 2, ¶ 5 ("The Parties further agree that they shall preserve, but neither collect nor produce . . . ESI created after January 31, 2018. The Parties reserve the right to request such ESI in the future and reserve the right to object to such production.")]. In March 2020, the Defendants agreed to conduct a new search. Prior to receiving the results of the 2020 ESI search, the undersigned was informed that there were close to 13,000 e-mails. Pursuant to the parties' ESI protocol, the undersigned reached out to Plaintiffs' counsel immediately after learning of the high number of emails. [Email filed as Pls' Ex. D at Doc. 222-4, p. 2]. After the emails were downloaded from IDOC, the undersigned began sampling them for responsiveness. The actual number of emails was closer to approximately 11,500 e-mails (plus uncounted attachments), but still well over the 7,500 documents the parties agreed to as the threshold number that would trigger additional negotiation. [Doc. 65, p. 3, ¶ 8]. Many search terms had low relevancy rates.

On the July 2, 2020, phone call, the undersigned explained her plan to filter the emails to exclude low relevance terms and to produce emails to Plaintiffs. This was done with the intention to save time to work with the overly broad data set the Defendants already possessed rather than to try again with a new mass e-mail search. The undersigned has reviewed several hundred emails and identified many for production to Plaintiffs; however, has encountered problems converting the emails from the Outlook form (.pst) to .pdf for Plaintiffs. Previously, defense

counsel tried to expedite the production of email files by sending in native format but Plaintiffs would not agree to receive the files in bulk email native format.[2]

With respect to other items that Defendants have been asked to produce or supplement, it is not as easy as asking a small number of people for information. For updated medical and mental health records—which are kept in hard-copy paper files only at the majority of the IDOC facilities—we must coordinate with the records custodians at each individual facility. Then, the scanned records must be reviewed in an effort to delete blank pages[3] and rotate documents that are facing different ways. Prisoners often move, so when it is discovered that one transgender prisoner's records have not been supplemented by the prior facility, we must first find out the reason (usually transfer or release) and, if it was a transfer, make contact with the new facility. These records were coming in at a trickle when the COVID pandemic first began, but has only picked up as staff members have been able to return to work and catch up on all that they had missed.

In addition to the specific delays above, the Department legal staff, which has helped to coordinate this matter, has been spending much of their time dealing with COVID-related issues pertaining to staff and prisoners. This has created delays in the receipt of information by defense counsel to pass along to Plaintiffs. Even coordinating depositions has required reaching out to multiple people. Although the Office of the Attorney General has added a third attorney to work on this matter and, since June, has had additional paralegal support, defense counsel's time has been stretched thin.[4]

---

[2] In January 2019, Defendants attempted to produce e-mail discovery without converting to .pdf, but Plaintiffs were not able to accept the records in the format offered by Defendants. (*See* Exhibit 5, Jan. 15, 2019, e-mail chain).

[3] These pages are often scanned double-sided, even though many of the second sides are completely blank.

[4] For instance, the undersigned attorney, Lisa Cook, works from home with three young children.

This Court does not need to compel Defendants' responses to written discovery requests nor does it need to compel supplementation of past discovery responses. Plaintiffs have sought to push this case as quickly as possible. Yet, even though Defendants are unable to work as quickly as Plaintiffs would like, defense counsel continues to work on discovery in this matter. Ultimately, this Court should deny Plaintiffs' motion to compel as unnecessary.

## II. The deliberative process privilege should be upheld for now, while the Department continues to revamp its policies on transgender care.

The Defendants responded to the third request for production on July 10, 2020. While no new documents were produced with that response, the Defendants directed Plaintiffs to relevant materials that had already been produced at various points between days and weeks prior to the formal discovery response.[5] The Defendants also objected that some of the materials sought are protected by the deliberative process privilege. That privilege protects communications that are part of the decision-making process of a governmental agency. *U.S. v. Farley*, 11 F.3d 1385, 1389 (7th Cir. 1993), *citing NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150-152 (1975). Communications made prior to and as part of an agency determination are protected from disclosure to allow frank discussion of legal and policy matters as part of the decision-making process. *Id*. "The deliberative process privilege resets on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news, and its object is to enhance 'the quality of agency decisions.'" *Dept. of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8-9 (2001). Additionally, the deliberative process privilege extends to consultants hired to discuss policies with the same candor as that expected of any agency employee. *Id.*, at 10-11, *citing Hoover v. U.S. Dept. of Interior*, 611 F.2d 1132, 1138 (5th Cir. 1980) (if consultant hired to advise the agency that hired

---

[5] One additional document, responsive to Plaintiffs' Third Set of Requests for Production, was located by the Department the following week and produced to Plaintiffs within days of its discovery.

it, it functions as employee would be expected to do). This privilege covers both memoranda and discussions of Executive officials leading to up to the formulation of an official position. *U.S. v. Zingsheim*, 384 F.3d 867, 872 (7th Cir. 2004).

Plaintiffs rely on a three-step process used in the Northern District when a party claims the deliberative process privilege. [Doc. 222 at p. 9, *citing Holmes v. Hernandez*, 221 F.Supp. 3d, 1011, 1016 (N.D. Ill. 2016)]. That process was extrapolated from a Supreme Court case addressing a military secrets privilege. *Holmes*, 221 F.Supp. 3d at 1016, *citing U.S. v. Reynolds*, 345 U.S. 1 (1953). The Supreme Court has not required the process imposed by the Northern District nor did it apply its ruling to the deliberative process privilege. Furthermore, *Holmes* involves very different circumstances than those at issue here. There, the Administrator of an estate filed a lawsuit concerning the fatal shooting of her son. 221 F.Supp. 3d at 1014. The plaintiff sought the production of draft summary reports from an Independent Police Review Authority. *Id*. The Review Authority objected to producing the reports citing to the deliberative process privilege. *Id*. And, although the Northern District court found that the privilege applied and was not waived, the court found a particularized need for the documents and a low likelihood of chilling deliberations. *Id*. at 1018-1022. The court further found that there was no other way to obtain the evidence sought. *Id*. at 1020. Here, in contrast, the privilege is used in a very limited manner for pre-decisional discussions.

Consistent with the rationale supporting the privilege, the Southern District of Illinois has stated the requirements of the privilege more simply: (1) the governmental agency must show that the privilege applies and (2) the materials at issue must be pre-decisional and deliberative. This means they must have been generated before the agency adopted a policy, and must involve the give and take of the consultative process. If the privilege applies, the court will still order disclosure if the plaintiff demonstrates a particularized need for the documents that outweighs

the defendant's need for confidentiality. *Doe v. Freeburg Community Consolidated School District*, 2011 WL 2013945 (S.D. Ill. 2011); *Harris v. Panter City Hauling, Inc.*, 2014 WL 29630 (S.D. Ill. 2014). This is the use of the privilege that Defendants seek to use: to protect the process while it remains ongoing.

There is no question that documents related to the Department's changes to its procedures for transgender inmates are pre-decisional, as the revised policy has not been finalized. The Defendants produced drafts of the transgender policy that was subsequently put into effect July 1, 2019; however, those drafts were nearly finalized and underwent few substantive changes prior to the policy's enactment. Conversely, here, the Department has hired consultants to assist with the policy changes and the Department is still actively engaged in the deliberative process. There will be documents that involve the give and take of the consultative process and some that do not. Plaintiffs' request is not merely for drafts of the new policy, but as they have acknowledged is much broader in that it seeks: "All documents and communications relating to the revision and implementation of the new Administrative Directive on 'Evaluations of Transgender Offenders.'" [Doc. 222-1, p. 7, Request #1]. As this is an ongoing process, the Defendants will continue to produce materials not protected by the privilege and assert the privilege when appropriate, until the new policy is completed.

Plaintiffs argue that even if the privilege applies, they have a particularized need for the documents that outweighs the need for confidentiality. This is an overstatement. As discussed above, it is the Department's permanent policy, once finalized, that the Court will examine to determine if permanent injunctive relief will be granted. And, mere "relevance alone is an insufficient reason for breaching the deliberative process privilege." *Farley*, 11 F.3d at 1389-90. The best way to get to the point where that policy is final and this case can be resolved is to allow the Department to work without interference from the Plaintiffs. When the changes have

been completed the Plaintiffs can determine whether to challenge the end result of the process. There is no need at this time for the Plaintiffs to see the internal deliberations at work.

### III. Other documents at issue have been addressed by Defendants.

Plaintiffs seek to compel the production of (1) the new Administrative Directive on "Evaluations of Transgender Offenders," (2) the "Quality Assurance Program" relating to transgender prisoners, and (3) the roles and responsibilities of the Transgender Care Review Committee from July 1, 2019 to the present. The Defendants have responded to these requests. There are no new Administrative Directives for either the evaluation of transgender offenders or describing the roles and responsibilities of the Committee. The Defendants have produced the most recent versions of those materials. Plaintiffs' requests for drafts of new policies and communications regarding the drafting are subject to the deliberative process procedure as explained above. The Defendants have also explained there is not a quality assurance program specifically related to transgender offenders and, therefore, the Defendants have nothing to produce for that request.

Below, Defendants will also address specific items raised by Plaintiffs with respect to suicide records, IDOC records concerning Dr. Anderson, correspondence to Dr. Puga and Dr. Reister, and Defendants' supplements to Plaintiffs' first request for production of documents.

A. <u>Suicide Task Force</u>

Plaintiffs seek to compel materials related to suicides by transgender inmates, including materials related to the "Suicide Task Force." Materials responsive to this request were included in the first, extensive ESI search conducted in this case, and will be included in any supplemental ESI searches. To the extent the Plaintiffs seek an additional search of suicide-related documents for information about transgender inmates, the Defendants have objected to the undue burden of the request and explained their objection. (Ex. 3, pp. 1-2). The Department does not separately

track suicide information related to transgender inmates. Any search for relevant materials would have to be of all suicide-related documentation. That search would be unlikely to produce anything not already identified in the ESI searches. Further, the request implicates the confidential information of deceased inmates. Defendants were ordered to produce medical records of IDOC inmates who may be potential class members. [Doc. 93]. Defendants have continued to produce medical and mental health records of those known to be gender dysphoric/transgender. To the extent Plaintiffs seek evidence of self-harm including genital mutilation and suicide attempts [see Doc. 222, pp. 5-6], such records are already being produced. However, Defendants were never ordered to produce the confidential records of non-class members. And, the burden of searching the suicide records based on the mere chance that responsive records will be located that will not otherwise be produced from the e-mail search or the medical/mental health records is undue and is not proportionate to the needs of the case.

 B. <u>Dr. Anderson</u>

  Plaintiffs requested documents related to Dr. Anderson's role as an IDOC consultant and her qualifications for her position. The IDOC contract with Dr. Anderson was produced on July 8, 2020. As to her qualifications, those have been previously referenced in Court filings. Plaintiffs served a subpoena to Dr. Anderson for documents and for deposition testimony. Dr. Anderson has since requested representation from the Office of Attorney General. Defense counsel is representing Dr. Anderson for discovery purposes. Further information will be provided directly from Dr. Anderson.

 C. <u>Correspondence Involving Dr. Puga and Dr. Reister</u>

  Plaintiffs seek to compel the production of documents related to correspondence involving Dr. Puga, the Chief of Mental Health, and Dr. Reister, who among other responsibilities has conducted the training on the handling of transgender inmates. The

Defendants have responded to this request and produced materials not otherwise covered by either the deliberative process privilege or the attorney-client privilege. (Ex. 2, p. 7).

Plaintiffs are aware that the Office of Attorney General represented Dr. Puga and Dr. Reister when they were deposed in this matter pursuant to Federal Rule 30(b)(6) and to arrange for Dr. Puga's testimony in the July/August 2019 preliminary injunction hearing. To the extent responsive, non-privileged documents are found as part of the 2020 ESI search, those documents will similarly be produced.

D.  Supplemental Production

Plaintiffs seek to compel supplemental production related to their first request for production. As discussed above, the Defendants have continued to produce additional documents to the Plaintiffs. The total production is now over 340,000 pages. Some supplemental production has been delayed by the current emergency working conditions, but the process is ongoing and the Defendants continue to provide new materials as they become available.

As Defendants point out above, the parties previously agreed that no ongoing collection of ESI was required. Once Plaintiffs requested an additional email search, the search was completed. The undersigned continues to review e-mails in accordance with the plan she offered. It is not necessary for this Court to compel any further supplementation, as Defendants continue to supplement as they are able.

## Conclusion

In conclusion, this Court should deny Plaintiffs' motion to compel. Although Defendants admit that there were delays in producing discovery responses, those delays are justified and are being corrected. There is still much discovery to do in this matter, and it is not simple or easy.

WHEREFORE, for these reasons, Defendants respectfully request that this Court deny Plaintiffs' motion to compel.

                                          Respectfully submitted,

                                          ROB JEFFREYS, MELVIN HINTON, and STEVEN BOWMAN,

                                          Defendants,

| | |
|---|---|
| Lisa A. Cook, #6298233<br>Assistant Attorney General<br>500 South Second Street<br>Springfield, Illinois   62701<br>(217) 782-9014 Phone<br>(217) 524-5091 Fax<br>Email: lcook@atg.state.il.us | KWAME RAOUL, Attorney General<br>State of Illinois<br><br>Attorney for Defendants,<br><br>By:   s/Lisa A. Cook<br>      Lisa A. Cook |

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS
### EAST ST. LOUIS DIVISION

| | |
|---|---|
| JANIAH MONROE, MARILYN MELENDEZ, LYDIA HELENA VISION, SORA KUYKENDALL, and SASHA REED, <br><br>Plaintiffs, <br><br>- vs- <br><br>ROB JEFFREYS, MELVIN HINTON, and STEVEN BOWMAN, <br><br>Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) No. 18-156-NJR |

## CERTIFICATE OF SERVICE

I hereby certify that on July 20, 2020, the foregoing document, *Defendants' Response to Plaintiffs' Motion to Compel Discovery Responses*, was electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

| | |
|---|---|
| Amelia H. Bailey | amelia.bailey@kirkland.com |
| Abby Parsons | aparsons@kslaw.com |
| Anne Hudson | anne.hudson@kirkland.com |
| Austin Stephenson | austin.stephenson@kirkland.com |
| Brent Ray | bray@kslaw.com |
| Camille Bennett | cbennett@aclu-il.org |
| Carolyn Wald | cwald@aclu-il.org |
| Catherine L. Fitzpatrick | cfitzpatrick@kirkland.com |
| Erica B. Zolner | ezolner@kirkland.com |
| Ghirlandi Guidetti | gguidetti@aclu.il.org |
| John A. Knight | jknight@aclu.il.org |
| Jordan M. Heinz | jheinz@kirkland.com |
| Megan M. New | mnew@kirkland.com |
| Samantha Rose | sam.rose@kirkland.com |
| Sarah Hunt | sarahjane@kennedyhuntlaw.com |
| Sydney L. Schneider | sydney.schneider@kirkland.com |
| Thomas E. Kennedy, III | tkennedy@tkennedylaw.com |
| Thomas Leahy | thomas.leahy@kirkland.com |

                                                                              s/ Lisa A. Cook
Lisa A. Cook, #6298233
Assistant Attorney General
500 South Second Street
Springfield, Illinois  62701
(217) 782-9014 Phone
(217) 524-5091 Fax
Email: lcook@atg.state.il.us