# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JANIAH MONROE, MARILYN MELENDEZ, LYDIA HELÉNA VISION, SORA KUYKENDALL, and SASHA REED, individually and on behalf of a class of similarly situated individuals,<br><br>    Plaintiffs,<br><br>v.<br><br>ROB JEFFREYS, MELVIN HINTON, and STEVE MEEKS,<br><br>    Defendants. | Case No. 3:18-cv-00156-NJR |

**PLAINTIFFS' REPLY TO DEFENDANTS' RESPONSE TO PLAINTIFFS' RENEWED REQUEST FOR APPOINTMENT OF INDEPENDENT MONITOR**

Defendants' Response (Dkt. 226) highlights its lack of urgency and disregard for Plaintiffs' suffering that has marred this case from the outset. Defendants promise improved care, but evidence reveals that these are still just words, leaving the Plaintiff class in crisis and even suicidal. These are not litigation tactics; Plaintiffs' sole goal is to receive adequate care in a timely fashion as mandated by the Constitution and ordered by this Court in December 2019.

Plaintiffs' respectful request for appointment of an independent monitor is warranted for at least three reasons. First, no question exists that this Court has the inherent authority to appoint an independent monitor to oversee Defendants' compliance with the Amended Preliminary Injunction. Defendants' unpersuasive attempt to conflate it with the Federal Rule of Civil Procedure 53 standard for special masters does not change this fact. Second, depositions of both parties show that IDOC has made no meaningful changes to its transgender care since the injunction and proceeds at a pedestrian pace with no end in sight. Finally, Defendants' half-hearted claim that the injunction expired is unsupported, inaccurate, and should be rejected.

## ARGUMENT

**I.   THE COURT HAS INHERENT AUTHORITY TO ORDER A MONITOR TO PREVENT AN IMMINENT THREAT OF SUICIDE OR SELF-HARM**

Defendants do not question this Court's inherent authority to grant Plaintiffs' requested relief. Instead, Defendants spend pages distinguishing inconsequential facts of decisions cited by Plaintiffs. Resp. at 2–7. No matter. These decisions recite black-letter law imbuing courts with the power to appoint an expert monitor. Indeed, there is no basis to challenge this Court's inherent authority. *See* Dkt. 225, Mot. at 11–12. This Court should exercise that authority to appoint a monitor to work *with* IDOC to improve transgender care in a timely fashion, and not overtake IDOC's day-to-day operations, as Defendants claim.

A 2019 decision highlights a court's authority to address an urgent need for appointment of an outside monitor in similar circumstances to prevent suicide. *See Braggs v. Dunn*, 383 F. Supp. 3d 1218 (M.D. Ala. May 4, 2019) (discussed at Mot. at 13 and Resp. at 5–6). Even Defendants recognize the authority in *Braggs* for "discrete monitoring for the immediate suicide-prevention measures [that] could not wait." Resp. at 5–6. Although *Braggs* represents action imposed by the court at a later stage of the case, this Court should not wait for prisoners to die or harm themselves before appointing a monitor.

## II. A MONITOR IS NECESSARY BECAUSE IDOC HAS MADE NO PROGRESS SINCE THE DECEMBER 2019 INJUNCTION

### A. Defendants have plans but no progress for improving transgender care.

Defendants criticize Plaintiffs for failing to cite Dr. Lamenta Conway's deposition testimony, but like IDOC's other witnesses, her testimony lacks any assurance that competent care is forthcoming. Dr. Conway admits that the only steps IDOC has taken are to draft the forthcoming Administrative Directive (AD) and to shift responsibility for hormone treatment from the unqualified Transgender Care Review Committee (TCRC) to the unqualified medical and mental health providers in the prisons. Ex. A, Sept. 11, 2020 Conway 30(b)(6) Dep. Tr. at 127:8–128:14, 46:7–13. Dr. Conway forecasts IDOC approval of the new AD by mid-to-late November—almost a year after this Court ordered IDOC to implement a new policy. *Id*. at 126:13–23. If approved, the AD would establish the Transgender Health and Wellness Committee (THAW) to oversee all medical and mental health treatment of gender dysphoria.[1]

Presently THAW is little more than a general concept, has never met, and will not meet until after the AD takes effect. *Id.* at 125:12–17. Dr. Conway will chair THAW, holds the tie-

---

[1] The TCRC, rebranded as the new "Administrative Committee," will oversee social transition of transgender prisoners. Ex. B, July 30, 2020 Conway Dep. Tr. at 53:13–55:2, 128:15–129:1.

breaking vote, and has the final say on who receives gender-affirming surgery. *Id.* at 108:24–109:2, 141:1–11; Ex. C, Aug. 17, 2010 Reister 30(b)(6) Dep. Tr. at 15:15–23. Yet Dr. Conway admits she has no experience treating patients with gender dysphoria, only began familiarizing herself with trans issues in 2020, and has no WPATH training. *See* Ex. B at 31:17–32:15, 33:24–35:15; Ex. A at 118:15–21. IDOC still is soliciting members to THAW, including physician volunteers and outside consultants that IDOC has not yet retained. *Id.* at 137:12–21, 150:9–152:15. Dr. Conway has only begun to "gather notes" to draft its bylaws (*see id.* at 147:23–150:3), and there are no criteria for hearing grievances related to hormone therapy or considering requests for surgery. *Id.* at 141:24–146:11, 206:5–17.

The AD itself lacks key details and Dr. Conway is responsible for drafting a myriad of policies and procedures to fill in the gaps, but she has barely begun. For example, Dr. Conway is developing guidelines for a transgender health clinic, as well as policies and procedures "that more or less outlines additional detail from a health and wellness perspective." Ex. A at 131:10–132:2. But, critically, nine months after the injunction, these documents are not even in draft form. *Id.* at 134:24–135:7, 136:12–21. The only care documents that presently exist come from Wexford, and Defendants recklessly imply that those materials meet the WPATH Standards of Care when they do not. *See* Resp. at 13–14, n.3. Dr. Conway repeatedly testified that physicians at IDOC follow the Wexford Guidelines, "which are based on the WPATH guidelines or the Endocrine Society guidelines." *See, e.g.*, Ex. A at 94:20–23. But Wexford admitted they were not (*see* Ex. D, Aug. 11, 2020 Wexford Dep. Tr. at 66:25–68:7, 85:17–86:8, 109:9–13), and that its guidelines and training materials that IDOC adopted depart from the Standards of Care in key respects. *See, e.g.*, Ex. D at 97:20–98:9, 79:20–81:10.

      B.      <u>Despite these plans, IDOC's care of transgender prisoners is largely the same as before the injunction.</u>

Defendants cannot backpedal from clear testimony showing that IDOC's current level of care of transgender prisoners is inadequate. For example, IDOC admitted it will not make any changes with respect to depriving prisoners of medically necessary social transition, including with respect to transfers and commissary items, until the new AD takes effect. Ex. A at 165:17–167:6, 191:1–4. Director Rob Jeffreys agreed that IDOC still has no policy to employ qualified professionals or meet accepted standards regarding hormone therapy, and that the TCRC continues to make medical decisions regarding gender dysphoria. Ex. E, Sept. 9, 2020 Jeffreys Dep. Tr. at 171:19–172:1, 172:2–7, 172:19–173:2. And although IDOC engaged outside experts—including Dr. Anderson and Ms. Wendy Leach of the Moss Group—an independent monitor still is necessary because IDOC admitted these limited engagements do not include oversight of implementation. *See* Ex. E at 201:23–202:6, 214:3–215:6.

These failures by IDOC are directly contributing to imminent harm of the Plaintiff class. During their recent depositions—taken more than seven months after the Court ordered IDOC to ***immediately*** make changes—the class representatives uniformly report similar or worsened conditions. For example, each of the class representatives have been subject to traumatic cross-gender strip searches in 2020.[2] At trial, Plaintiffs' security expert, Mr. James Aiken, will show that IDOC's current search policy is a plain violation of PREA, and Plaintiffs' medical expert, Dr. Vin Tangpricha, will show that IDOC's current hormone therapy practices are still inadequate.

---

[2] Attached hereto as Exhibit F are highlighted excerpts of Plaintiffs' deposition testimony showing examples of IDOC's failures to provide adequate care and its impact on them.

### III. DEFENDANTS CONCLUDE—WITHOUT ANALYSIS—THAT THE INJUNCTION HAS EXPIRED WHEN IT HAS NOT

The Amended Preliminary Injunction met the statutory requirements of the PLRA such that it is still in place today and until trial, and the Court already considered and rejected this argument in deciding Defendants' Motion for Reconsideration (Dkt. 206). Defendants now mention in passing that the Court's Order does not meet the "finality" requirement of the PLRA, but at least one court recently disagreed on similar facts. *See Georgia Advocacy Office v. Jackson*, No. 1:19-CV-1634-WMR-RDC, 2020 WL 1883877, at *5 (N.D. Ga. Feb. 26, 2020) ("[T]he phrase 'makes the order final,' as it is used in 18 U.S.C. § 3626(a)(2), refers to ***finalizing the preliminary injunction*** by including the required findings[.]") (emphasis added).

In the alternative, this Court may issue a new injunction without another hearing. *See, e.g.*, *Mayweathers v. Newland*, 258 F.3d 930, 936 (9th Cir. 2001) (affirming right to seek renewal of preliminary injunction under PLRA). That is because this Court's prior injunction is law of the case, and Defendants have no better evidence to avoid a second preliminary injunction. *See, e.g.*, *Mayweathers v. Terhune*, 328 F. Supp. 2d 1086, 1090 (E.D. Cal. 2004) (granting subsequent preliminary injunction against prison system based upon law of the case without a hearing).[3]

### CONCLUSION

For the reasons stated herein, Plaintiffs respectfully request the Court grant their renewed request for an outside monitor.

---

[3] Should the Court issue a new preliminary injunction, undersigned counsel could submit a proposed order that includes appropriate "needs-narrowness-intrusiveness" findings for the ongoing violation by Defendants in accordance with the PLRA for the Court's consideration.

| | |
|---|---|
| Date:  September 18, 2020 | By:  */s/ Abby L. Parsons*<br>John A. Knight<br>Camille E. Bennett<br>Ghirlandi Guidetti<br>Carolyn M. Wald<br>ROGER BALDWIN FOUNDATION OF ACLU, INC.<br>150 North Michigan Avenue, Suite 600<br>Chicago, IL 60601<br>Telephone: (312) 201-9740<br>Facsimile: (312) 288-5225<br>*jknight@ACLU-il.org*<br>*cbennett@ACLU-il.org*<br>*gguidetti@ACLU-il.org*<br>*cwald@ACLU-il.org*<br><br>Catherine L. Fitzpatrick<br>Jordan M. Heinz<br>Sydney L. Schneider<br>Austin B. Stephenson<br>Amelia H. Bailey<br>Sam G. Rose<br>KIRKLAND & ELLIS LLP<br>300 North LaSalle Street<br>Chicago, IL 60654<br>Telephone: (312) 862-2000<br>Facsimile: (312) 862-2200<br>*catherine.fitzpatrick@kirkland.com*<br>*jordan.heinz@kirkland.com*<br>*sydney.schneider@kirkland.com*<br>*austin.stephenson@kirkland.com*<br>*amelia.bailey@kirkland.com*<br>*sam.rose@kirkland.com*<br><br>Brent P. Ray<br>KING & SPALDING LLP<br>353 North Clark Street<br>Chicago, IL 60654<br>Telephone: (312) 995-6333<br>Facsimile: (312) 995-6330<br>*bray@kslaw.com* |

Abby L. Parsons
KING & SPALDING LLP
1100 Louisiana Street, Suite 4100
Houston, TX 77002
Telephone: (713) 751-3294
Facsimile: (713) 751-3200
*aparsons@kslaw.com*

Thomas E. Kennedy III
Sarah Jane Hunt
KENNEDY HUNT P.C.
906 Olive Street, Suite 200
Saint Louis, MO 63101
Telephone: (314) 872-9041
*tkennedy@KennedyHuntLaw.com*
*sarahjane@KennedyHuntLaw.com*

*Attorneys for Plaintiffs*

7

## **CERTIFICATE OF SERVICE**

I certify that on September 18, 2020, I electronically filed the foregoing document and any attachments with the Clerk of this Court by using the CM/ECF system, which will accomplish service through the Notice of Electronic Filing for parties and attorneys who are Filing Users.

*/s/ Abby L. Parsons*
Attorney Name