IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JANIAH MONROE, MARILYN MELENDEZ, LYDIA HELÉNA VISION, SORA KUYKENDALL, and SASHA REED, <br><br> **Plaintiffs,** <br><br> v. <br><br> ROB JEFFREYS, STEVE MEEKS, and MELVIN HINTON, <br><br> **Defendants.** | Case No. 3:18-CV-00156-NJR |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Pending before the Court is Plaintiffs' Motion to Compel Discovery Responses filed by Plaintiffs Janiah Monroe, Marilyn Melendez, Lydia Heléna Vision, Sora Kuykendall, and Sasha Reed. (Doc. 222). Plaintiffs are in the custody of the Illinois Department of Corrections ("IDOC"). (Doc. 1, p. 1.). They filed their Complaint on January 31, 2018, alleging Defendants fail to properly evaluate and provide necessary medical care for gender dysphoria. (Doc. 1, p. 19).

### FACTUAL & PROCEDURAL BACKGROUND

Plaintiffs filed their motion to compel seeking discovery responsive to Plaintiffs' second and third sets of Requests for Production ("RFPs"). (Doc. 222, p. 3). Plaintiffs claim IDOC failed to provide any responses or objections and failed to produce documents sufficient to comply with said requests. (*Id.*). Plaintiffs also seek discovery responsive to

Plaintiffs' first RFPs, alleging Defendants failed to timely provide updated documents in response to those requests. (*Id.*).

Plaintiffs ask the Court to order Defendants to produce updated electronically stored information ("ESI") and documents responsive to Plaintiffs' first RFPs. In addition, the second set of requests seek the following documents:

- Request #1: All documents and communications relating to previous suicides of transgender prisoners, including, but not limited to, documents relating to IDOC's "Suicide Task Force," and documents generated in the course of any mortality review of the death in question. (Doc. 222-1, p. 7).

- Request #2: All documents and communications relating to the revision and implementation of the new Administrative Directive on "Evaluations of Transgender Offenders." (Doc. 222-1, p. 7).

- Request #6: All documents and communications relating to any IDOC "Quality Assurance Program" relating to transgender prisoners, including the program referred to by Dr. Puga in his testimony at the PI hearing. (Doc. 222-1, p. 7).

The third set of requests seek the following documents:

- Request #1: Documents reflecting any efforts undertaken by IDOC to comply with the Preliminary Injunction Orders. (Doc. 222-2, p. 7).

- Request #2: Documents reflecting any changes made by IDOC to comply with the Preliminary Injunction Orders. (Doc. 222-2, p. 7).

- Request #3: Documents reflecting any efforts IDOC has directed Wexford Health staff to undertake for purposes of IDOC's compliance with the Preliminary Injunction Orders. (Doc. 222-2, p. 7).

- Request #4: Any internal or external correspondence relating to RFPs 1, 2, and 3. (Doc. 222-2, p. 7).

- Request #5: Documents reflecting the role and responsibilities of the Transgender Care Review Committee from July 1, 2019, through the

>   present. (Doc. 222-2, p. 7).
>
> - Request #6: Documents reflecting the current role and responsibilities of Dr. Erica Anderson in her position as IDOC's consultant, as well as her qualifications for that position. (Doc. 222-2, p. 7).
>
> - Request #7: Documents reflecting the role and responsibilities of Wendy Leach or anyone else serving as IDOC's consultant in complying with the Preliminary Injunction Orders (Dkts. 186 and 211), as well as their qualifications for that position. (Doc. 222-2, p. 7).
>
> - Request #8: Correspondence involving Dr. William Puga or Dr. Shane Reister relating to the Preliminary Injunction briefing, hearing, or any court order related thereto. (Doc. 222-2, p. 7).

Defendants responded, arguing Plaintiffs' motion should be denied because, along with the numerous amount of documents being requested, the COVID-19 pandemic caused delays, and some discovery is protected under the deliberative process privilege; and other discovery is either an undue burden or was provided to the best of Defendants' ability with other ongoing document production. (Doc. 223, pp. 5, 8, 11). More specifically, Defendants argue: (1) The timing at issue is more complicated than normal due to COVID-19; (2) The deliberative process privilege should be upheld for now, while the Department continues to revamp its policies on transgender care; and (3) Other documents at issue have been addressed by Defendants, such as documents concerning the Suicide Task Force, Dr. Anderson, correspondence involving Dr. Puga and Dr. Reister, and supplemental production. (Doc. 223, pp. 5, 8, 11-13).

In support of their first argument, Defendants highlight the numerous amount of documents requested, arguing COVID-19 is delaying the Department, and declaring that

Defendants' counsel tried sending emails in a native format, yet Plaintiffs allegedly disagreed with the receipt of those emails in said format. (Doc. 223, pp. 5-7).

In support of their second argument, Defendants suggest they have already responded to Plaintiffs' third set of RFPs on July 10, 2020, directing Plaintiffs to other documents produced without providing new ones. (Doc. 223, p. 8). Defendants argue that IDOC's changes to procedures for transgender inmates are pre-decisional, which falls under deliberative process privilege protection. (*Id*. at p. 10). Defendants further argue that relevance alone is not enough for Plaintiffs to compel discovery of said documents. (*Id*.).

Finally, in support of their third argument, Defendants suggest Plaintiffs' request for suicide information regarding only transgender inmates is an undue burden and would require Defendants to produce information on deceased, non-class-members. (Doc. 223, pp. 11-12).

Additionally, Defendants argue that Dr. Anderson's contract was produced on July 8, 2020, her qualifications were referenced in previous court filings, and further information will be provided directly from Dr. Anderson herself. (Doc. 223, p. 12). Regarding any correspondence between Dr. Puga and Dr. Reister, Defendants argued that they have responded to this request and produced materials not otherwise covered by the deliberative process privilege or attorney-client privilege. (Doc. 223, pp. 12-13). Defendants assured that responsive, non-privileged documents from the 2020 ESI search will be produced. (Doc. 223, pp. 13). Lastly, Defendants argue that some of their supplemental production was delayed due to COVID-19, but the process is ongoing, and

documents will be provided as they become available. (*Id.*).

Plaintiffs filed a reply brief arguing, "Defendants have not yet completed their supplementary ESI production, which they claim includes documents responsive to Plaintiffs' Second Set of RFPs No. 1 and Third Set of RFPs No. 8. Nor have they made out a *prima facie* case for the deliberative process privilege, which Defendants assert protects documents responsive to Plaintiffs' Second Set of RFPs No. 2 and Third Set of RFPs Nos. 1 and 2." (Doc. 224, p. 1).

## ANALYSIS

Federal Rule of Civil Procedure 26(b)(1) permits the discovery of any matter relevant to the subject matter of the pending action, so long as the sought-after information is not privileged. Discovery does not need to be admissible at trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence. The Supreme Court has interpreted relevance broadly to include any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).

### I.     *Deliberative Process Privilege*

Defendants argue certain requested documents and information are protected by the deliberative process privilege, specifically request number 2 in Plaintiffs' second set of RFPs and requests numbers 1 and 2 in Plaintiffs' third set of RFPs. (Doc. 223-1, p. 2; Doc. 223-2, pp. 1-2).

"The deliberative process privilege protects communications that are part of the decision-making process of a governmental agency." *U.S. v. Farley*, 11 F.3d 1385, 1389 (7th

Cir. 1993). Said communications include "documents reflecting advisory opinions, recommendations, and deliberations that are part of a process by which Government decisions and policies are formulated." *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 2, 121 S. Ct. 1060, 1062, 149 L.Ed.2d 87 (2001). This privilege is meant to protect documents that are both pre-decisional and deliberative. *Becker v. I.R.S.*, 34 F.3d 398, 403 (7th Cir. 1994). "The government bears the burden of proving what deliberative process was involved and what role the document played in that process." *King v. I.R.S.*, 684 F.2d 517, 519 (7th Cir. 1982).

Courts conduct a two-step inquiry when determining whether the requested information is protected under the privilege. *Sandholm v. Dixon Public School Dist. No. 170*, Case No. 09 C 50119, 2010 WL 899032, *3 (N.D. Ill. 2010). First, the governmental agency must show that privilege applies. *Id*. The privilege only applies to matters that are pre-decisional and deliberative. *Id*. Pre-decisional communications are ones in which the information was generated before the adoption of an agency policy, and deliberative communications involve the give and take of the consultative process. *Id*. Second, the privilege is not absolute; it may be defeated if the party opposed to it is able to make a sufficient showing of a particularized need that outweighs the need for the privilege. *Farley*, 11 F.3d at 1389. Relevance alone is not enough to overcome the privilege. *Id*. at 1390. The Court must balance "the particularized need for the documents against their nature and the effect of disclosure on the government." *Id*.

"Since frank discussion of legal and policy matters is essential to the decisionmaking process of a governmental agency, communications made prior to and

as part of an agency determination are protected from disclosure." *Farley*, 11 F.3d at 1389. Behind the deliberative process privilege is the thought that the potential for candid conversations will suffer if said conversations run the risk of being used in discovery. *Dep't of Interior*, 532 U.S. at 8-9. "Moreover, since the documents reflect an agency's preliminary positions about how to exercise discretion on a policy, they are privileged." *Farley*, 11 F.3d at 1389.

Plaintiffs argue Defendants failed to timely respond to Plaintiffs' requests, thereby constituting an abuse of process and causing Defendants to have waived the use of the deliberative process privilege. (Doc. 222, p. 9). Plaintiffs argue Defendants caused an unjustifiable delay by waiting months to respond and by only raising this objection after Plaintiffs requested a meet and confer to address their outstanding discovery requests. (*Id.*).

In light of the COVID administrative orders extending discovery deadlines, this Court finds Defendants' responses timely. There was no undue delay given that the parties participated in a meet and confer on July 2, 2020, which was prior to the discovery deadline.

Plaintiffs also argue that Defendants did not make a *prima facie* case for the deliberative process privilege. (Doc. 222, p. 9). Plaintiffs cite to *United States v. Reynolds*, 345 U.S. 1, 73 S.Ct. 528 (1953), and *Holmes v. Hernandez*, 221 F.Supp.3d 1011, 1016 (N.D. Ill. 2016), arguing the existence of three different requirements Defendants needed to fulfill in order to successfully claim the deliberative process privilege. (*Id.*).

Plaintiffs' case law in support of their argument, regarding the three requirements

from *Reynolds*, stem primarily from the Northern District of Illinois. Opinions from this Court, including *Doe v. Freeburg Community Consolidated School District*, Case No. 10-cv-458-JPG-DGW, 2011 WL 2013945 (S.D. Ill. 20,11) and *Harris v. Panter City Hauling, Inc.*, Case No. 13-cv-337-MJR-DGW, 2014 WL 29630 (S.D. Ill. 2014), employ the simple, two-step process of ruling on the deliberative process privilege, and this Court sees no reason to depart from said two-step process at this time. Additionally, unlike in *Reynolds*, we are dealing here not with military secrets. Therefore, Plaintiffs' argument that the factors used in *Reynolds* apply here is of no moment. Those factors were used with military secrets and military operations at issue as opposed to the circumstances at hand. Therefore, those factors are irrelevant for the purposes of this case.

Defendants objected to Plaintiffs' second request in their second set of RFPs which seeks all documents and communications relating to the revision and implementation of the new Administrative Directive on "Evaluations of Transgender Offenders." Defendants argue that the documents requested are deliberative and pre-decisional since they concern revisions and communications regarding the new Administrative Directive. (Doc. 222, p. 10). This Court agrees. The documents and information Plaintiffs requested include communications and documents relating to the revision and implementation of the new policy, which concerns both information generated before the adoption of a policy and the consultative process beforehand. This falls into the deliberative and pre-decisional categories. These reasons apply, as well, to Defendants' deliberative process privilege claims regarding Plaintiffs' first and second requests in their third set of RFPs, which seeks documents reflecting efforts taken by IDOC to comply with the preliminary

injunction and changes made by IDOC in order to comply with the preliminary injunction.

The question now turns to whether Plaintiffs can make a sufficient showing as to a particularized need for production of the requested documents and communications. Plaintiffs have demonstrated a particularized need for these documents. The documents Plaintiffs requested concern documents and communications regarding the revision and implementation of the new Administrative Directive; documents regarding any efforts to comply with the Preliminary Injunction Orders; and documents regarding any changes made to comply with the Preliminary Injunction Orders. These requests relate directly to the administrative processes regarding treatment of gender dysphoria and IDOC's efforts to comply with the Preliminary Injunction Order also regarding the treatment of gender dysphoria. Given the nature of the claims in this case, the Court finds that Plaintiffs' particularized need for these documents outweighs Defendants' need for confidentiality.

## II. *Suicide Task Force*

In Plaintiffs' second set of RFPs, they request, "All documents and communications relating to previous suicides of transgender prisoners, including, but not limited to, documents relating to IDOC's 'Suicide Task Force,' and documents generated in the course of any mortality review of the death in question." (Doc. 222-1, p. 7). Defendants have already produced documents related to the "Suicide Task Force," as well as mental and medical health records of those known to be gender dysphoric/transgender. (Doc. 223, p. 12). Documents regarding evidence of self-harm, including genital mutilation and suicide attempts, have also been produced.

Defendants object to any request for an additional search of suicide-related documents for possible information about transgender inmates. (Doc. 223, p. 11-12). Defendants note that IDOC does not track suicide information related to transgender inmates, and such a search would be unlikely to produce anything not already identified in the ESI searches. (*Id.*). The requested information would also implicate the confidential information of deceased inmates. (*Id.* at p. 12).

Plaintiffs, on the other hand, argue that these records are necessary as a failure to provide adequate care for inmates with gender dysphoria results in increased risk of self-harm, such as genital mutilation and suicide. (Doc. 222, pp. 5-6). Plaintiffs also argue that this information relates directly to the question of IDOC's knowledge and alleged disregard of the risk of suicide among transgender prisoners receiving inadequate care for gender dysphoria. (*Id.*).

Rule 26(b)(1) of the Federal Rules of Civil Procedure permits parties to obtain discovery regarding "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case," while considering other factors, one including whether the burden of the requested discovery outweighs the likely benefit. Furthermore, "the party from whom discovery is sought must show that the information is not reasonably accessible because of undue burden or cost." FED. R. CIV. P. 26(b)(2)(B).

The potential burden of Plaintiffs' discovery request is outweighed by the likely benefit of that information being provided. As Plaintiffs mentioned, inadequate treatment of gender dysphoria could lead to genital mutilation and suicide. Additionally, transgender suicide records could provide further insight into the effect of inadequate

treatment of gender dysphoria. This discovery request is relevant to Plaintiffs' claims for the aforementioned reasons and is proportional to the needs of the case as it goes to the heart of Plaintiffs' claims. Therefore, Defendants must disclose the information requested within the first request in Plaintiffs' second RFPs.

### III.  Other Requests

Potential issues regarding other documents, ESI searches and communications that were not provided due to delays, that were not provided due to the ongoing process of production, or that have already been produced are moot because it appears that Defendants have now produced those documents. Thus, to the extent Plaintiffs seek to compel further responses, those requests are **DENIED as moot**. An updated status of those productions should be provided at the status conference set for January 7, 2021.

### DISPOSITION

For the reasons state above, Plaintiffs' Motion to Compel Discovery Responses (Doc. 222) is **GRANTED** in part and **DENIED** in part.

**IT IS SO ORDERED.**

DATED:   December 17, 2020

**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**