IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JANIAH MONROE, MARILYN MELENDEZ, LYDIA HELÉNA VISION, SORA KUYKENDALL, and SASHA REED, individually and on behalf of a class of similarly situated individuals,<br><br>    Plaintiffs,<br><br>  v.<br><br>ROB JEFFREYS, MELVIN HINTON, and STEVE MEEKS,<br><br>    Defendants. | Case No. 3:18-cv-00156-NJR |

**PLAINTIFFS' PROPOSED WITNESS LIST FOR TRIAL**

  Pursuant to Federal Rule of Civil Procedure 26(a)(3), Plaintiffs provide the following list of fact and expert witnesses that they will or may call in their case-in-chief or in rebuttal during the upcoming trial.

**I.  Plaintiffs' Expert Witnesses**

  Plaintiffs intend to call the following expert witnesses in person and in their case-in-chief or in rebuttal during the upcoming trial.

  **a. Dr. Randi Ettner**
    1214 Lake Street
    Evanston, IL 60201
    (847) 987-3433

  Dr. Randi Ettner is a clinical and forensic psychologist with expertise concerning the diagnosis and treatment of gender dysphoria. She has served as Secretary and as a member of the Board of Directors of the World Professional Association of Transgender Health ("WPATH"), the preeminent professional organization dedicated to the understanding and treatment of gender dysphoria worldwide. Dr. Ettner has extensive experience treating transgender individuals with gender dysphoria in her clinical practice, and she has published numerous books and articles on the topic. During the course of Dr. Ettner's career, she has evaluated, diagnosed, and treated between 2,500 and 3,000 individuals with gender dysphoria and mental health issues related to gender variance from 1977 to present.

  At trial, Dr. Ettner will testify that the new Administrative Directive does not provide adequate medical care for persons with gender dysphoria. Dr. Ettner will explain that the named plaintiffs (and the class members at large) are not receiving adequate treatment for gender dysphoria, and as a result, all are at high risk of serious harm, including suicide. Dr. Ettner

further will testify that IDOC is still delaying or denying hormones without proper medical basis, *e.g.*, departing from the WPATH Standards of Care ("SOC") regarding contraindications. Dr. Ettner will testify that IDOC medical and mental health professionals do not meet minimum WPATH SOC requirements and that the medical records similarly show that Wexford medical and mental health staff are not qualified under the WPATH SOC. Dr. Ettner will provide examples how IDOC medical staff are still misgendering patients in their notes, while doctors are still using the DSM-IV, etc. Dr. Ettner further will testify that IDOC trainings are not sufficient to give medical and mental health professionals (including Dr. Conway) sufficient competency to treat gender dysphoria under WPATH. Dr. Ettner will also explain how the new ADs do not provide sufficient oversight to ensure proper care. For example, Dr. Conway, who is overseeing design and implementation of gender dysphoria treatment, is not sufficiently experienced or qualified to do so. And Dr. Ettner will explain how surgery requires significant planning to prepare patients for surgery and to manage care after surgery, and IDOC is not qualified to oversee such planning.

Dr. Ettner is a licensed clinical and forensic psychologist with a specialization in the diagnosis, treatment, and management of gender dysphoric individuals. Dr. Ettner received her doctorate in psychology (with honors) from Northwestern University in 1979. She is a Fellow and Diplomate in Clinical Evaluation of the American Board of Psychological Specialties, and a Fellow and Diplomate in Trauma/Post-Traumatic Stress Disorder.

Dr. Ettner has published four books related to the treatment of individuals with gender dysphoria, including the medical text entitled Principles of Transgender Medicine and Surgery (co-editors Monstrey & Eyler; Rutledge 2007); and the 2nd edition (co-editors Monstrey & Coleman; Routledge, 2016). She has authored numerous articles in peer-reviewed journals regarding the provision of health care to the transgender population.

Dr. Ettner has served as a member of the University of Chicago Gender Board and is on the editorial boards of Transgender Health and the International Journal of Transgender Health. Dr. Ettner previously served as Secretary and a member of the Board of Directors of WPATH, and was an author of the WPATH Standards of Care for the Health of Transsexual, Transgender and Gendernonconforming People (7th version), published in 2011. She also previously served as chair of the WPATH Committee for Incarcerated Persons and provides training to medical professionals on healthcare for transgender inmates.

Moreover, Dr. Ettner has lectured throughout North America, Europe, and Asia on topics related to gender dysphoria and has given grand rounds on gender dysphoria at university hospitals. She is the honoree of the externally funded Randi and Fred Ettner Fellowship in Transgender Health at the University of Minnesota. Dr. Ettner has been an invited guest at the National Institute of Health to participate in developing a strategic research plan to advance the health of sexual and gender minorities, and in November 2017 was invited to address the Director of the Office of Civil Rights of the United States Department of Health and Human Services regarding the medical treatment of gender dysphoria. Dr. Ettner received a commendation from the U.S. Congress House of Representatives on February 5, 2019 recognizing her work for WPATH and gender dysphoria in Illinois.

      b. **Dr. Vin Tangpricha**
         101 Wodruff Circle NE – WMRB1301
         Atlanta, GA 30322
         (404) 727-7254

Dr. Tangpricha is a medical doctor with special expertise in treatment of transgender patients with gender dysphoria. Dr. Tangpricha currently serves as the immediate past President of WPATH, the preeminent professional organization dedicated to the understanding and treatment of gender dysphoria worldwide. Dr. Tangpricha has published extensively on issues relating to treatment of individuals with gender dysphoria and he treats transgender patients as part of his clinical practice.

At trial, Dr. Tangpricha will testify about IDOC's denials of hormone therapy, delays in providing hormone therapy, and IDOC's incorrect categorization of certain medical conditions as contraindications for hormone therapy, which lead to further denials and delays. Dr. Tangpricha will explain the harm caused to Plaintiffs from IDOC's interruptions of hormone therapy, provision of inadequate hormone dosages, inadequate monitoring of hormone levels, and inadequate monitoring of additional bloodwork (potassium, etc.). Dr. Tangpricha will provide examples of IDOC's complete failure to titrate hormone dosages in response to bloodwork showing hormone levels outside the recommended therapeutic range. Dr. Tangpricha further will explain the importance that medical professionals treating gender dysphoria are properly trained and qualified before prescribing hormone therapy.

Dr. Tangpricha received his M.D. from Tufts University School of Medicine in Boston, Massachusetts in 1996. Dr. Tangpricha subsequently earned a Ph.D. in Molecular Medicine from Boston University School of Medicine in 2004. He is Board Certified in Internal Medicine and in Endocrinology, Diabetes, and Metabolism by the American Board of Internal Medicine.

Since January 2004, Dr. Tangpricha served as Professor of Medicine, Division of Endocrinology, Metabolism, and Lipids at the Emory University School of Medicine in Atlanta, Georgia. Dr. Tangpricha became a full professor in September 2017. Dr. Tangpricha has also been the Director of the Transgender Clinic and a staff physician at Emory since 2004 and has treated patients as a staff physician at the Department of Veterans' Affairs Medical Center ("VA") in Atlanta, Georgia since 2006.

Over the past 10 years, in his capacity as an endocrinologist, Dr. Tangpricha has treated approximately 260 transgender patients with gender dysphoria at Emory, and approximately 100 additional transgender patients with gender dysphoria at the Atlanta VA Medical Center. Dr. Tangpricha also participates in an initiative known as the WPATH Global Education Initiative, in which he delivers lectures three to four times a year on topics relating to hormone therapy for transgender persons.

Dr. Tangpricha has authored or co-authored numerous scholarly articles and contributed to several books on topics relating to endocrinology in general and treatment of transgender

patients in particular, including several guideline publications relating to endocrine treatments for transgender patients.

From 2007 to 2009, Dr. Tangpricha served as one of eight authors on the first hormone guidelines for transgender persons as a member of the Endocrine Society Task for Transgender Health Guidelines. This was one of the first such set of guidelines for hormone treatment of transgender persons published by a professional society and continues to be the authoritative reference regarding hormone therapy for transgender persons. Dr. Tangpricha has also served on committees of other relevant professional organizations, including with the American Association of Clinical Endocrinologists.

      c.  **Mr. James Aiken**
          36 Tsiya Court
          Brevard, North Carolina 28712
          (828) 883-9490

Mr. Aiken is an expert with almost 50 years of experience in prison administration, operations, and management. Mr. Aiken has decades of direct experience and knowledge regarding correctional strategies in the management of persons held in lawful confinement. Moreover, a major focus of his career has been to assess, redirect, and restore confinement facilities and systems that have experienced chronic/acute program and security shortfalls and staff misconduct related to all aspects of a confinement system.

At trial, Mr. Aiken will testify about how IDOC's policies and practices related to its treatment of transgender prisoners, including its new Administrative Directives related to the treatment of transgender prisoners and searches implemented by IDOC in April 2021, do not meet correctional standards and continue to put those prisoners at risk of serious harm. Mr. Aiken will testify regarding sound correctional practices with respect to the relationship between security and the provision of medical treatment, including that security grounds should not prevent a correctional system from providing a prisoner the medical care they need, including the ability to socially transition. Mr. Aiken will testify that IDOC's process and criteria for making transfer decisions have serious flaws. Mr. Aiken will testify that there is no security-based reason for denying transgender prisoners' placement in facilities consistent with their gender, if such a placement is part of the medical treatment they need. Placement of transgender prisoners in facilities consistent with their gender requires proper training of staff and education for prisoners. Mr. Aiken will explain that sound correctional practices support allowing transgender prisoners the choice of being searched by someone of the same gender; IDOC's practice of determining pat down search practices based on the gender of the facility where a person is placed violates that practice and can increase the likelihood of sexual assaults and violence against those prisoners. IDOC's blanket practice defeats that goal and is demeaning for these prisoners.

Mr. Aiken's experience in the administration, operation, and management of correctional facilities, including as the Director of the Bureau of Corrections for the United States Virgin Islands (1992-1994), the Commissioner of the Indiana Department of Corrections (1989-1992), and in various positions in the South Carolina Department of Corrections (1971-1989). In the United States Virgin Islands, he was given the specific task to remedy overcrowding, gang problems, lack of medical/mental health care, random and systemic violence, and general mismanagement. As the Commissioner of the Indiana Department of Corrections, Mr. Aiken was

responsible for the overall administration of the Indiana corrections system that consisted of 46 separate adult and juvenile facilities with a population of 14,000 inmates. As a Deputy Regional Administrator of the South Carolina Department of Corrections (1987-1989), Mr. Aiken supervised 16 South Carolina institutions at all security levels. He also was Warden of the Central Correctional Institution (state penitentiary, 1982-1987), the largest correctional facility in South Carolina with 1,800 medium and maximum-security custody male inmates and the South Carolina death row. Prior to that Mr. Aiken was the Warden of the South Carolina Women's Correctional Institution (1979-1982) responsible for all aspects of female inmate welfare and rehabilitation. These facilities and systems were in various states of major dysfunction related to public protection, security, programming, as well as the provision of required medical/mental health delivery to inmates.

Further, Mr. Aiken has consulted with the United States Department of Justice, National Institute of Corrections, and federal, state, and local prisons on a variety of subjects, including, but not limited to: inmate classification, management of women offenders, management of youthful offenders in adult prisons, general management of prison security systems, objective assessments of security operational performance, prison critical event avoidance, riot/gang management, management of super-maximum prisons, correctional leadership, objective/internal classification, seamless delivery integration of prison components to ensure reasonable safety and security, and updating wardens regarding more effective methods to manage prisons at all security levels.

In 2004 the United States Congress appointed Mr. Aiken to be one of nine Commissioners of the National Prison Rape Elimination Commission (the "Commission") established pursuant to 34 U.S.C.A. § 30306 (detailing establishment and objectives of Commission). The Commission held hearings throughout the country and was responsible for the development of standards that would lead to the prevention, detection, and elimination of prison rape. *See* 34 U.S.C.A. § 30306(d)(3)(B)(ii). The Commission issued the National Prison Rape Elimination Commission Report (the "Report") in June 2009 that became the basis for regulations issued by the Department of Justice in 28 C.F.R. § 115, the Prison Rape Elimination Act National Standards. The Commission's investigation and its Report accounted for the long under recognized reality that transgender inmates (as well as lesbian, gay and bisexual inmates) are particularly vulnerable to a prison's specific perils of intimidation, harassment, and random and systemic violence, including sexual assault. The Commission, over a five-year period, carefully considered the appropriate standard for the safe housing and placement of transgender inmates.

II.     **Plaintiffs' Non-Expert Witnesses**

Plaintiffs may introduce the deposition testimony of one or more of the following fact witnesses in their case-in-chief or in rebuttal during the upcoming trial, or call them live if available and time permits:

| Witness | May or Will Call | Live or by Deposition |
|---|---|---|
| Marilyn Melendez<br>IDOC Inmate | Will Call | Live |

| Witness | May or Will Call | Live or by Deposition |
|---|---|---|
| Janiah Monroe<br>IDOC Inmate | Will Call | Live |
| Sora Kuykendall<br>IDOC Inmate | Will Call | Live |
| Neil Fisher<br>Wexford Employee | Will Call | By Deposition |
| William Puga<br>IDOC Employee | Will Call | Live |
| Shane Reister<br>IDOC Employee | Will Call | Live |
| Melvin Hinton<br>IDOC Employee | Will Call | Live |
| Kayla Murphy<br>IDOC Inmate | May Call | Live |
| Chonna Anderson<br>IDOC Inmate | May Call | Live |
| Renee Broadway<br>IDOC Inmate | May Call | Live |
| Xavier Ball<br>IDOC Inmate | May Call | Live |
| London Fulton<br>IDOC Inmate | May Call | Live |
| Steven Bowman<br>IDOC Employee | May Call | By Deposition |
| Mike Chappell<br>IDOC Employee | May Call | By Deposition |
| Rob Jeffreys<br>IDOC Employee | May Call | By Deposition |
| Doug Stephens<br>IDOC Employee | May Call | By Deposition |

| Witness | May or Will Call | Live or by Deposition |
|---|---|---|
| Glenda Wortley<br>IDOC Employee | May Call | By Deposition |
| Ryan Nottingham<br>IDOC Employee | May Call | By Deposition |
| John Eilers<br>IDOC Employee | May Call | By Deposition |
| Glen Austin<br>IDOC Employee | May Call | By Deposition |
| Tangenise Porter<br>IDOC Employee | May Call | By Deposition |

Plaintiffs reserve the right to call any additional witnesses necessitated by any of the Court's pretrial or trial rulings. In addition, Plaintiffs reserve the right to call, either live or by deposition: (1) additional witnesses to provide foundational testimony should any party contest the authenticity or admissibility of any material proffered at trial; (2) substitute witnesses for any identified witness whose employment or other relationship with the department of corrections changes such that they are no longer able, available, or willing to testify on the department's behalf at trial; (3) any witnesses identified by Defendants; (4) any witness called to rebut Defendants' case or impeach a witness called by Defendants; or (5) additional witnesses to respond to issues raised after the submission of this list, such as the testimony of any witnesses who have not yet been deposed.

July 2, 2021

By: /s/ Abby L. Parsons
John A. Knight
Camille E. Bennett
Ghirlandi Guidetti
Carolyn M. Wald
ROGER BALDWIN FOUNDATION
OF ACLU, INC.
150 North Michigan Avenue, Suite 600
Chicago, IL 60601
Telephone: (312) 201-9740
Facsimile: (312) 288-5225
*jknight@ACLU-il.org*
*cbennett@ACLU-il.org*
*gguidetti@ACLU-il.org*
*cwald@ACLU-il.org*

7

Catherine L. Fitzpatrick
Amelia H. Bailey
Sam G. Rose
KIRKLAND & ELLIS LLP
300 North LaSalle Street
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
*catherine.fitzpatrick@kirkland.com*
*amelia.bailey@kirkland.com*
*sam.rose@kirkland.com*

Brent P. Ray
KING & SPALDING LLP
110 N. Upper Wacker Drive, Suite 3800
Chicago, IL 60606
Telephone: (312) 995-6333
Facsimile: (312) 995-6330
*bray@kslaw.com*

Abby L. Parsons
KING & SPALDING LLP
1100 Louisiana Street, Suite 4100
Houston, TX 77002
Telephone: (713) 751-3294
*aparsons@kslaw.com*

Thomas E. Kennedy III
Sarah Jane Hunt
KENNEDY HUNT P.C.
906 Olive Street, Suite 200
Saint Louis, MO 63101
Telephone: (314) 872-9041
*tkennedy@KennedyHuntLaw.com*
*sarahjane@KennedyHuntLaw.com*

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I certify that on July 2, 2021, I electronically filed the foregoing document and any exhibits with the Clerk of this Court by using the CM/ECF system, which will accomplish service through the Notice of Electronic Filing for parties and attorneys who are Filing Users.

By:    */s/ Abby L. Parsons*
       Abby L. Parsons