**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS DIVISION**

| | |
|---|---|
| JANIAH MONROE, MARILYN MELENDEZ, LYDIA HELÉNA VISION, SORA KUYKENDALL, and SASHA REED, individually and on behalf of a class of similarly situated individuals,<br><br>Plaintiffs,<br><br>v.<br><br>ROB JEFFREYS, MELVIN HINTON, and STEVEN BOWMAN,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Case No. 3:18-cv-00156-NJR |

**PLAINTIFFS' REVISED BRIEF REGARDING OBJECTIONS AND
RESPONSES TO DEPOSITION TESTIMONY FOR TRIAL**

Pursuant to this Court's Order regarding pre-trial matters (Dkt. 284 at 2), Plaintiffs Janiah Monroe, Marilyn Melendez, Lydia Heléna Vision, Sora Kuykendall, and Sasha Reed, individually and on behalf of a class of similarly situated individuals (collectively, "Plaintiffs") hereby submit this revised brief setting forth the bases for their objections and responses to the proposed deposition testimony and objections offered by Defendants Rob Jeffreys, Melvin Hinton, and Steven Bowman (collectively, "IDOC" or "Defendants"). Plaintiffs' submit this revised brief to include depositions of IDOC taken between July 21-23, 2021.

**INTRODUCTION**

The parties have exchanged affirmative, counter-, and completeness designations of deposition testimony taken in the case. A summary of the parties' selected testimony and objections are listed in Plaintiffs' Final Proposed Deposition Testimony. *See* Dkt. 317. Below, Plaintiffs explain the bases for their outstanding objections to testimony proffered by Defendants as well as respond to objections lodged to the testimony Plaintiffs intend to introduce at trial.

## ARGUMENT

### A.  Objections to Defendants' Affirmative Designations

1.      <u>Neil Fisher, Wexford (Aug. 11, 2020).</u> Defendants seek to introduce testimony from Dr. Neil Fisher, the corporate designee testifying on behalf of Wexford, who supplies all front-line medical and mental health professionals responsible for providing care to all transgender prisoners within IDOC. *See* Dkt. 317-1, Ex. B at 1. Plaintiffs objected to proffered testimony by Defendants as calling for speculation because Dr. Fisher was asked what his colleague, Dr. Ritz, meant in an email. *See id.* at 128:13-16, 128:19-129:14. Obviously Dr. Fisher could not have known what Dr. Ritz was thinking when he wrote an email, and Dr. Fisher's answer is pure speculation, not probative of the email itself, or any other fact relevant to the issues before the Court. This testimony should be excluded.

2.      <u>Wendy Leach (Aug. 12, 2020).</u> Defendants seek to introduce testimony from Wendy Leach, consultant to IDOC and employee of the Moss Group. That testimony includes the PREA-based factors she proposed IDOC use to decide where to house transgender prisoners (Dkt. 317-2, Ex. B at 2, lines 82:1-18, 228:6-230:6), the medical needs of transgender prisoners (*see id.* at 99:6-13), her experience with clients other than IDOC during the COVID-19 pandemic (*see id.* at 149:8-11), and the utility of court intervention in compelling IDOC to address deficiencies in the medical care it provides prisoners with gender dysphoria (*see id.* at 276:12-279:13).

Plaintiffs object to all of Ms. Leach's testimony as improper expert opinion, as set forth in Plaintiffs' Motion *in Limine* to Strike Defendants' Expert Designations of Dr. Erica Anderson and Ms. Wendy Leach (Dkt. No. 288). In addition, Plaintiffs object to the specific testimony outlined above because it includes speculative and overbroad claims that have little probative value and are outweighed by the risk of wasting time and confusing the issues before the Court.

First, Ms. Leach's opinions about PREA-based considerations for housing assignments lack foundation, are not based on her personal knowledge, and will not help this Court decide the issues before it, which have to do with the medical treatment for gender dysphoria, not the satisfaction of PREA. Second, Ms. Leach is a lawyer, not a medically trained expert (*see id.* at 100:3-6), so she is not qualified to opine on the medical needs of transgender prisoner—in either a prison or the community. Third, her account of the manner in which other clients managed COVID is wholly irrelevant, was not responsive to the question she was asked about the situation in IDOC and lacked foundation to support and contextualize the testimony. Fourth, Ms. Leach's opinion about this Court's role in addressing IDOC's constitutional violations is not relevant and speculative of what IDOC might do or not do in response. For all these reasons, the Court should exclude Ms. Leach's testimony.

### B.  Objections to Defendants' Counter-Designations

1.   <u>Steven Bowman (July 28, 2020).</u> Defendants seek to introduce counter-designations from Dr. Steven Bowman, agency medical director of IDOC, regarding the standard of care and the appropriate medical decision-making process regarding gender affirming surgery. *See* Dkt. 317-1, Ex. A at 1, lines 173:18-178:8. Plaintiffs object to these counter-designations because the testimony is duplicative, vague, ambiguous, and overbroad, and because the witness both lacks foundation to answer and is giving improper expert testimony. In addition, the questioning that elicited this testimony called for speculation.

The Court should exclude this testimony because Dr. Bowman lacks the foundation and necessary experience to make or opine on such decisions regarding gender affirming surgery. *See id.* at 39:19-40:2 (Dr. Bowman acknowledging that he could not recall receiving training specific to transgender health). The Court should also exclude portions of the testimony because Defendants' counsel explicitly sought for duplicative testimony, *id.* at 173:24-174:1 (Defense

Counsel restating the subject of prior testimony and asking, "[c]ould you please just explain that again."), and because Dr. Bowman's answer was vague, ambiguous, and overbroad. *See id.* at 174:2-175:22. Other portions of Defendant's multi-page counter-designation explicitly seek Dr. Bowman's expert opinion as a medical doctor and ask him to speculate in response to a hypothetical. Dkt. 317-1, Ex. A at 1, lines 176:3-6) ("Q. And in medicine when you're dealing with diagnoses or issues that you're not familiar with, what kinds of steps do you take in order to make a decision as a medical doctor?").

2.      Mike Chappell (Aug. 19, 2020). Defendants seek to introduce counter-designations of Mike Chappell, Operations Security Specialist of IDOC, where counsel for IDOC led Mr. Chappell through a hypothetical where, had additional facts been present, Mr. Chappell may have changed a vote he cast while participating in a Transgender Care Review Committee ("TCRC") transfer meeting. *See* Dkt. 317-1, Ex. A at 2, lines 146:17-147:9. Plaintiffs object to this testimony because it is misleading.  The Court should exclude it because counsel should not—six months after the fact—be able to suggest that, "with additional information could your opinion have been changed, your vote have been changed?" It mis-states the evidence and should be excluded.

3.      Rob Jeffreys (Sept. 9, 2020). Defendants seek to introduce counter-designations from Rob Jeffreys, director of IDOC, regarding COVID-19 that was elicited by Defendants' counsel on re-direct examination. *See* Dkt. 317-1, Ex. A at 6, lines 239:9-241:10. Plaintiffs object to these counter-designations because the testimony is an improper counter-designation. The Court should exclude the testimony Defendants' counsel elicited on re-direct examination because it went beyond the scope of the witnesses' initial testimony. Moreover, the

4

designation is not a proper completeness designation, as it does not complete any of
the Plaintiffs' affirmative designations.

4.  <u>Lydia Helena Vision (Aug. 25, 2020)</u>. Defendants seek to introduce counter-
designations from class representative Lydia Helena Vision regarding the nature of her criminal
conviction. *See* Dkt. 317-1, Ex. A at 9, lines 7:16-18.[1] Plaintiffs object to the proposed counter-
designations because the testimony is irrelevant. In addition, any probative value the testimony
could possibly have is far outweighed by its prejudicial effect. FED. R. EVID. 403.

The Court should exclude this testimony because the nature of Ms. Vision's criminal
conviction is not relevant to whether Defendants are providing constitutionally adequate medical
care for the treatment of gender dysphoria. Defendants offer the counter-designation in response
to Plaintiffs' designation of Ms. Vision's testimony that she began experiencing gender
dysphoria as a young child and her family was not supportive of her gender identity, and the
former has no connection to the latter. *Id.* at 13:3-1, 5. To the extent that Defendants argue the
nature of Ms. Vision's conviction is admissible as bearing on her character for truthfulness, they
cannot show the conviction satisfies the requirements of Federal Rule of Evidence 609(a)(1)(A)
because the testimony has no probative value. It should be excluded.

5.  <u>Ryan Nottingham (June 30, 2020)</u>. Defendants seek to introduce counter-
designations from Ryan Nottingham, Agency PREA Coordinator for IDOC, regarding Mr.
Nottingham's knowledge of litigation against a class representative, Janiah Monroe, that is
unrelated to the questions in this case. Dkt. 317-1, Ex. A at 10, lines 77:1-18 and 78:11-79:13.
Plaintiffs object to these counter-designations because they are improper counter-designations; it

---

[1] Exhibit A to Plaintiffs' Revised Proposed Deposition Testimony (Dkt. No. 281-1) inadvertently
identified this objection to testimony offered at 7:16-18, not 8:6-16.

is also irrelevant, prejudicial, and lacks foundation. The fact that Ms. Monroe is a defendant in a civil suit proves very little and, in this case, has no probative value as to whether IDOC fails to provide adequate medical treatment of Ms. Monroe's and others' gender dysphoria. Moreover, any probative value this testimony might have is outweighed by the highly prejudicial nature of the testimony—which alleges non-consensual sexual contact by Ms. Monroe—and therefore violates Federal Rule of Evidence 403. Lastly, Mr. Nottingham clearly lacked foundation to speak on this topic. He admitted that he was only "somewhat" familiar with Ms. Monroe's PREA record at Logan and he was "not too familiar" with the substance of the PREA allegations against her.

Defendants also seek to introduce a counter-designation from Mr. Nottingham regarding the putative process by which a transgender prisoner may elevate their concerns about a cross-gender search to the Transgender Administration Committee. Dkt. 317-1, Ex. A at 10, lines 190:19-191:2. Plaintiffs object to this counter-designation because the witness lacks the foundation and personal knowledge to answer. Mr. Nottingham is not a member of the Transgender Administration Committee or "facility management," and he does not perform searches of inmates in his role with IDOC. Thus, he does not and would not participate in the putative elevation process he describes, nor does he cite to any document in his answer that allegedly lays out that process. The Court should not consider this testimony given Mr. Nottingham's lack of personal knowledge and foundation.

6.    Sasha Reed (Sept. 9, 2020). Defendants seek to introduce counter-designation from Sasha Reed, a named Plaintiff, regarding PREA violations she reported that were later determined by IDOC to be unfounded. *See* Dkt. 317-1, Ex. A at 12, lines 57:4-59:15. Plaintiffs object to this counter-designation because it is an improper counter-designation and prejudicial. *Id.* The Court should exclude this testimony because this is an improper completeness

designation, as it does not complete any affirmative designation made by Plaintiffs. Moreover, any probative value this testimony might have, which is minimal at best, is outweighed by the prejudicial nature of the testimony and therefore violates Federal Rule of Evidence 403.

Defendants also seek to introduce a counter-designation from Ms. Reed recounting comments made to her by the Warden of the IDOC facility at which she was housed. *See* Dkt. 317-1, Ex. A at 12, lines 61:3-9. Plaintiffs object to this counter-designation because it is an improper-counter designation, prejudicial and violates the rule against hearsay. *Id.* The Court should exclude this testimony because this is an improper completeness designation, as it does not complete any affirmative designation made by Plaintiffs. Moreover, any probative value this testimony might have, which is minimal at best, is outweighed by the prejudicial nature of the testimony and therefore violates Federal Rule of Evidence 403. Finally, the testimony from Ms. Reed relays an out of court statement made to her by the Warden of her facility, and none of the exceptions or exclusions to the rule against hearsay apply.

Defendants seek to introduce a counter-designation from Ms. Reed reflecting her interactions with the IDOC nurses at her facility. *See* Dkt. 317-1, Ex. A at 12, 68:15-16. Plaintiffs object to this counter-designation because it is vague and ambiguous. *Id.* In response to the question "how do the nurses treat you," Ms. Reed responded, "they cool." But neither the question asked nor the answer given clarifies the context of Ms. Reed's interactions with nurses that she was describing. The testimony, therefore, is confusing and does not assist the Court in its analysis of IDOC's treatment and care of Plaintiffs.

7.    <u>Glenda Wortley (July 27, 2020)</u>. Defendants seek to introduce counter-designations from Glenda Wortley, an Assignment Coordinator for IDOC, regarding her role and participation on IDOC's former transgender committee and making decisions about transfers of prisoners. *See*

Dkt. 317-1, Ex. A at 15, lines 73:5-11, 87:20-88:1, 143:13-145:12, 146:3-22. Plaintiffs object to these designations because they are improper counter-designations, offer cumulative evidence, and are not admissible under Federal Rule of Evidence 403. The Court should exclude this testimony because the little probative value of this testimony is far outweighed by the confusing manner in which Ms. Wortley testified. The testimony also is duplicative of other testimony about the operations of the former transgender committee, including Ms. Wortley's role on it.

8.   Mike Chappell, IDOC (30(b)(6)) (July 22, 2021).   Defendants seek to introduce counter-designations by its 30(b)(6) witness, Mr. Mike Chappell, Operations Security Specialist at IDOC and the Department's 30(b)(6) designee with respect to housing issues for transgender prisoners, regarding whether any transgender prisoner has been subject to a cross-gender strip-search since the new search policy has gone into effect April 1, 2021. *See* Dkt. 317-1, Ex. A at lines 96:21-97:2; 105:21-106:9. Plaintiffs object to this testimony because it calls for speculation and is misleading given the record on this issue. For example, on page 93, Mr. Chappell admits that IDOC has "had some issues with transgender strip searches" and documents produced by Defendants and testimony from class members suggests that despite this new policy, cross-gender strip searches are still taking place. The Court should preclude IDOC from speculating on this point.

9.   Shane Reister, IDOC (30(b)(6)) (July 23, 2021).   Defendants seek to introduce counter-designations by its 30(b)(6) witness, Dr. Shane Reister, the Department's 30(b)(6) designee regarding training of its staff and of Wexford regarding transgender treatment and care, from speculating about whether Dr. Anderson has reviewed any medical or mental health records of IDOC. *See* Dkt. 317-1, Ex. A at 17, lines 56:24-57:7. Dr. Reister's own testimony demonstrates

that he does not know the answer, and the Court should preclude IDOC from relying upon his speculation as fact.

Furthermore, Defendants also seek to introduce testimony by Dr. Reister that is non-responsive to the questions being asked, including whether the Mental Health Standard Operating Procedural Manual ("SOP"), dated Jan. 20, 2021 (Deposition Exhibit 11) "includes services directed to transgender prisoners," (*see* Dkt. 317-1, Ex. A at 18, lines 89:9-24), and whether he agrees that the SOP does not include any required training for mental health providers working with transgender patients (*see id.* at lines 95:22-96:16). As to the former, Dr. Reister's answer is plainly non-responsive, talking about how the SOP "cannot include everything a transgender therapist would need to do." As to the latter, Dr. Reister later agreed that "there's no specific requirement for training Mental Health Providers related to transgender care." *See id.* at 101:20-102:2. Both counter-designations should be excluded.

### C.  Responses to Defendants' Objections to Plaintiffs' Affirmative Designations

1.      <u>Steven Bowman (July 28, 2020).</u> Plaintiffs intend to offer deposition testimony of Dr. Steven Bowman regarding Defendants' failure to adequately search for and produce relevant documents in response to Requests for Production. *See* Dkt. 317-1, Ex. A at 1, lines 13:3-5. Defendants object because they allege the testimony is not relevant. The Court should overrule the objection because the testimony is relevant to Defendant's compliance with their discovery obligations under the Federal Rules and the introduction of admissible evidence.

2.      <u>Mike Chappell (Aug. 19, 2020).</u> Plaintiffs intend to offer deposition testimony of Mike Chappell, Operations Security Specialist at IDOC, first relating to Mr. Chappell's understanding of the administrative directive of IDOC for strip-searches. *See* Dkt. 317-1, Ex. A at 2, lines 20:8-20; 23:12-17; 24:4-9. Defendants object that this testimony lacks relevance and is misleading because it pertains to the old administrative directive that has since been replaced.

The Court should consider Mr. Chappell's testimony because it was consistent with the prior administrative directive, which was in effect at the time of his testimony, where a prisoner would be searched by someone of the same gender as the facility in which the prisoner is housed. For example, anyone living in a male facility would be strip-searched by a male guard. Furthermore, that IDOC continued to rely on policies it knew did not comply with the Court's preliminary injunction and caused significant trauma to the class members for nearly a year after the Court's order shows Defendants' deliberate indifference and therefore cannot be trusted to conform their conduct with Constitutional standards going forward. The Court should overrule Defendants' objection.

Second, Plaintiffs intend to offer Mr. Chappell's testimony regarding his understanding of how transgender prisoners in IDOC's custody are housed—namely that initial housing decisions are made by IDOC based solely upon genitalia of the prisoner. *See* Dkt. 317-1, Ex. A at 2, lines 29:2-21. Defendants objected to this testimony because it lacked foundation, but IDOC recently again designated Mr. Chappell to speak for IDOC on issues relating to housing transgender prisoners. Even as recently as July 22, 2021, Mr. Chappell again testified that IDOC's practices have not changed of making initial housing decisions based solely upon genitalia, even under the new administrative directive. The Court should overrule Defendants' objection and admit the testimony.

Third, Plaintiffs intend to offer Mr. Chappell's testimony regarding Deposition Exhibit 3 (Bates 323753-772), meeting minutes from the February 4, 2020 TCRC meeting that he admittedly participated in (*see* Dkt. 28_-1, Ex. A at 2, lines 73:1-16), that reflect the fact that the committee refused to authorize prisoner Legel to obtain women's underwear despite her gender dysphoria. *See id.*, lines 79:2-4, 79:8-9, 82:1-7, 82:11. Defendants objected to this testimony

because it lacked foundation, but Mr. Chappell testified he was involved in both decision-making of the TCRC as well as issues relating to commissary. *See id.* at 76:11-13 ("Q. So you sit on the Commissary Committee as well, right? A. I do."). The Court should consider this example because it support's IDOC's deliberate indifference in depriving the class members of social transition and calls into serious question whether IDOC will continue to deny class members needed commissary items.

Fourth, Plaintiffs intend to offer Mr. Chappell's testimony regarding his experience with prisoners in IDOC's custody. *See* Dkt. 317-1, Ex. A at 2, lines 96:10-97:6. Defendants object because they argue Mr. Chappell lacks foundation to answer questions of this nature, but Mr. Chappell has nearly 30 years of experience working at IDOC and had no problem making sweeping statements about IDOC's prisoners elsewhere in his deposition. *See id.* at 97:7-99:19. The Court should overrule the objection.

Fifth, Plaintiffs intend to offer Mr. Chappell's testimony regarding Deposition Exhibit 5 (Bates 323706-718), minutes from the January 27, 2020 Transgender Requests for Transfer Meeting that he admittedly participated in (*see* Dkt. 317-1, Ex. A at 2, lines 106:23-107:1), and reflects the committee's discussion of a transfer request for prisoner Clemmons. *See id.* at 110:3-123:14. Defendants again object to this entire line of questioning because they allege it lacks foundation. The Court should overrule the objection as baseless because Mr. Chappell participated in the discussion and was answering questions about his own analysis relating to safety and security issues.

Finally, Plaintiffs intend to offer Mr. Chappell's testimony regarding factors he takes into account when voting on transfer decisions. *See* Dkt. 317-1, Ex. A at 2, lines 127:4-15, 137:8-141:1. Defendants object to this testimony as not relevant and lacking foundation but both are

baseless objections given that Mr. Chappell sits on the TCRC and votes on transfers as part of that role. In particular, this testimony examines Mr. Chappell's security and safety assessment for prisoner Padilla (class representative Lydia Helena Vision) that is reflected in Deposition Exhibit 6 (Bates 323719-728), minutes from the February 18, 2020 transfer sub-committee of the TCRC.[2] The Court should overrule the objection.

3.    <u>John Eilers (June 24, 2020)</u>. Plaintiffs intend to offer deposition testimony of John Eilers, Chief of Security of IDOC, relating to his belief that whether he believes IDOC would benefit from an outside monitor. *See* Dkt. 317-1, Ex. A at 4, lines 95:2-96:1, 96:5-11. Defendants object because they believe Chief Eilers lacks foundation to answer these questions. The Court should overrule Defendants' objection, however, because he was asked the questions based upon his personal opinion as the Chief of Operations of IDOC.

4.    <u>Neil Fisher, Wexford (Aug. 11, 2020)</u>. Plaintiffs intend to offer deposition testimony of Dr. Neil Fisher as the corporate designee testifying on behalf of Wexford, who supplies all front-line medical and mental health professionals responsible for providing care to all transgender prisoners within IDOC. *See* Dkt. 317-1, Ex. A at 5-6. Defendants objections are without merit.

At 54:13-18, Dr. Fisher was asked a question regarding a phone call involving Dr. Conway regarding various physicians within IDOC having difficulty prescribing hormones. He was asked whether Dr. Conway opened the call in a particular manner, and he answered in the affirmative. The testimony does not mischaracterize the email that mentions the call. Instead, it is consistent with Dr. Fisher's preceding testimony on the matter. *See* 53:5-54:10.

---

[2] Plaintiffs inadvertently failed to designate the testimony identifying this exhibit on the record but will add one for 123:20-124:4.

At 106:4-9, Dr. Fisher was asked a question regarding the Endocrine Society Guidelines. He did not possess knowledge to provide a substantive answer. Defendants' objection that the question lacks foundation is incorrect. The Guidelines were introduced as an exhibit in the deposition. 104:5-12. No objection was made that the question at 106:4-6 mischaracterized the document, because Dr. Fisher's lack of knowledge of the Guidelines does not render such question as lacking foundation. Instead, Plaintiffs were entitled to test the boundaries of the witness' knowledge of the Guidelines, which were before the witness at the time.

At 121:1-122:5, Dr. Fisher was asked a number of questions regarding his qualifications, including relating to WPATH. These questions were relevant for at least two reasons. First, Plaintiffs are entitled to know the qualifications and experience of Wexford's corporate designee witness. Second, Dr. Fisher attempted to answer numerous questions in his personal capacity. To the extent such attempts were proper, Plaintiffs are likewise entitled to understand Dr. Fisher's background regarding the subject matter of the lawsuit. Defendants objections are without merit.

At 124:5-11 and 124:14-125:3, Dr. Fisher testified regarding the qualifications of Dr. Funk (a Regional Medical Director for IDOC) and Dr. Ritz (the Chief Medical Officer for IDOC). Dr. Fisher works with both doctors. Their qualifications in transgender care are plainly relevant; this case concerns whether IDOC has the right people in place with the proper qualifications to do the job required. There is nothing irrelevant about Drs. Funk's and Ritz's lack of qualifications or their lack of experience caring for transgender individuals.

At 144:3-7 and 144:13-16, Dr. Fisher was asked whether Wexford physicians become WPATH qualified by taking Wexford training. He could not answer the question because he had not read the WPATH standards of care. This testimony is relevant because it shows that Wexford's corporate designee acknowledges the limitations of Wexford's training. The question

13

has foundation because the WPATH standards of care were previously admitted as an exhibit, available to the witness (*see* 96:7-18), and Dr. Fisher himself testified he consulted the WPATH standards of care in preparing draft guidelines for IDOC (*see id.* at 67:15-21). The question is not beyond the scope because the topics included "[t]raining developed by Wexford to educate IDOC medical providers regarding treatment of patients with gender dysphoria using hormone therapy," and the "identification and qualifications of [Wexford] personnel". At bottom, the limitations of the training of Wexford physicians is important for this Court's consideration of whether the primary care individuals working within IDOC are actually qualified to provide adequate care to transgender prisoners.

5.    <u>Rob Jeffreys (Sept. 9, 2020).</u> Plaintiffs intend to offer deposition testimony of Director Rob Jeffreys regarding his awareness of testimony at the preliminary injunction hearing regarding the deficiencies in Plaintiffs' care and the harmful effects of IDOC's policies and practices. *See* Dkt. 317-1, Ex. A at 7, lines 67:9-68:2. Defendants object because they allege the testimony is not relevant. *Id.* The Court should overrule the objection because the testimony is relevant as evidence of the Defendants' knowledge and notice of the serious harm caused by their policies and practices, which goes directly to Defendants' deliberate indifference.

Plaintiffs also intend to offer deposition testimony of Director Rob Jeffreys regarding his knowledge of the Defendants' policies and practices regarding transgender care. *See* Dkt. 317-1, Ex. A at 7, lines 72:1-11. Defendants object because they allege the testimony lacks foundation. *Id.* The Court should overrule the objection because, as an initial matter, the questions ask the director specifically about ***his knowledge***; as a practical matter, he cannot possibly lack foundation to speak to his own knowledge (or lack thereof). Moreover, as a named Defendant and the Agency Director of the Illinois Department of Corrections, Defendant's knowledge (or

lack thereof) regarding IDOC's practices with respect to transgender prisoners shows Defendant's deliberate indifference.

Plaintiffs intend to offer deposition testimony of Director Rob Jeffreys regarding his knowledge and understanding of the Court's preliminary injunction order and Defendants' efforts (or lack thereof) to comply. *See* Dkt. 317-1, Ex. A at 8, lines 172:19-173:17, 178:15-21, 180:24-181:20, 184:13-20, 185:6-13, 188:4-189:13. Defendants object because they allege the testimony is not relevant. *Id.* The Court should overrule the objection because as a named Defendant and as the Agency Director, Defendant's testimony regarding his understanding of this Court's order and IDOC's efforts (or lack thereof) to comply with it after over eight months are relevant evidence of Defendants' continued constitutional violations, deliberate indifference, and show a strong likelihood of continued harm to Plaintiffs without Court intervention.

Defendants also object to some of the same testimony alleging it misstates the record. *See* Dkt. 317-1, Ex. A at 8, lines 180:24-181:20, 184:13-20, 185:6-13, 188:4-189:13. The Court should overrule these objections because none of these designations misstate the record. The questions and opposing party admissions that Defendants are trying to exclude are well supported by the record.

Defendants also object to some of the same testimony because they allege the testimony lacks foundation. *Id.* 185:6-13, 188:4-189:13. The Court should overrule these objections because Director Jeffreys was asked about and offered testimony regarding his knowledge, understanding and actions relating to compliance with the Court's preliminary injunction order— something as the agency director and a named defendant who read the order, he certainly has foundation to testify about.

6.     <u>Ryan Nottingham (June 30, 2020)</u>. Plaintiffs intend to offer deposition testimony of Ryan Nottingham regarding his personal awareness of whether any training was implemented for staff, offenders, or both, prior to Janiah Monroe's arrival at Logan. *See* Dkt. 317-1, Ex. A at 11, lines 86:23-90:4 and 90:10-21. Defendants object to this testimony as lacking foundation. The Court should overrule this objection because, as the deposition transcript shows, plaintiffs' counsel asked about Mr. Nottingham's ***personal awareness*** of any training; Mr. Nottingham was never asked to speculate on whether training existed generally, and he never did so. A witness obviously cannot lack foundation to speak to their own recollection (or lack thereof). And for the very few questions in this designation that *did* ask about IDOC's actions generally, rather than merely the witness' awareness of these actions, Mr. Nottingham responded with "I do not know" (lines 87:12-15), or "Not that I'm aware of" (lines 89:15-19).

Plaintiffs also intend to offer deposition testimony from Mr. Nottingham regarding whether an expert monitor would be beneficial to IDOC in obtaining compliance with the Court's preliminary injunction Order. *See* Dkt. 317-1, Ex. A at 12, lines 258:21-23 and 259:9-12. Defendants object to this testimony as irrelevant. The Court should overrule this objection because the testimony is relevant to IDOC's own understanding of its need for judicial supervision to ensure its compliance with its duties under the Eighth Amendment. This testimony is also relevant in showing that Mr. Nottingham believed IDOC was not in compliance with the court's orders at the time of his deposition and that outside assistance "could be beneficial" in obtaining compliance.

7.     <u>Tangenise Porter (June 26, 2020)</u>. Plaintiffs intend to offer deposition testimony of Tangenise Porter regarding her position on, and participation in, IDOC's committees that review and make decisions regarding transgender care, treatment, placement, and security. *See*

Dkt. 317-1, Ex. A at 14-15, lines 73:20-77:1; 80:18-81:20; 83:3-84:18, 85:15-22, 86:4-7, 89:23-91:2, 137:24-138:3. Defendants object to this testimony as irrelevant. *Id.* The Court should overrule this objection because Ms. Porter—IDOC's head of the Women's Division—participated in meetings of IDOC's previous Transgender Committee and currently sits on and participates in meetings of IDOC's new Transgender Administration Committee. Ms. Porter's testimony is relevant to show her training, preparation, and qualifications (or lack thereof) to make decisions regarding the care, treatment, security, and safety of Plaintiffs. Her deposition testimony is further relevant to show IDOC's decision making regarding which IDOC officials are tasked with making decisions regarding the care and treatment of transgender prisoners, as well as what criteria, if any, IDOC uses to make decisions regarding security, placement, and safety of transgender prisoners. Finally, this evidence is relevant to show IDOC's compliance (or lack thereof) with the Court's preliminary injunction order and their continued deliberate indifference to Plaintiffs serious medical condition.

Defendants also object to some of the same testimony as lacking foundation. *See* Dkt. 317-1, Ex. A at 14, lines 73:20-77:1; 80:18-81:20; 83:3-84:18, 85:15-22, 86:4-7, 89:23-91:2. The Court should overrule this objection because the testimony relates specifically to Ms. Porter's knowledge; as a practical matter, she cannot possibly lack foundation to speak to her own knowledge (or lack thereof). Moreover, Ms. Porter testified that she had participated in at least two meetings of IDOC's previous Transgender Committee at the time of her deposition. She also testified that she participated in these meetings as part of her responsibilities as head of the Women's Division. Because the testimony relates to her understanding and knowledge (or lack thereof) about a committee—including the participants and their qualifications, the materials considered, the criteria applied to make decisions, and the process through which a prisoner is

presented to the committee—in which she participated, the testimony did not require speculation or lack foundation.

Plaintiffs intend to offer deposition testimony from Ms. Porter related to her knowledge of the existence of any policy related to the treatment of transgender prisoners and the identity of the IDOC individuals who are responsible for decisions about the treatment of gender dysphoria. *See* Dkt. 317-1, Ex. A at 15, lines 137:1-6. Defendants object to this testimony as not relevant. *Id.* The Court should overrule this objection because Ms. Porter, as the head of IDOC's Women's Division, is responsible for the care, treatment, and safety of both transgender female and male prisoners currently housed at IDOC female facilities. Her knowledge (or ignorance) of any such policy and/or the individuals responsible for making decisions regarding the treatment of gender dysphoria speaks to IDOC's continued deliberate indifference to Plaintiffs' gender dysphoria.

Plaintiffs also intend to offer testimony from Ms. Porter related to her knowledge of necessary treatment for gender dysphoria, specifically the medical necessity of social transition and use of gender-affirming pronouns. *See* Dkt. 317-1, Ex. A at 15, lines 147:16-21. Defendants object to this testimony as not relevant. *Id.* The Court should overrule this objection because Ms. Porter, as the head of IDOC's Women's Division, is responsible for the care, treatment, and safety of both transgender female and male prisoners currently housed at IDOC female facilities. Her knowledge (or ignorance) of the necessity of social transition for Plaintiffs speaks to IDOC's continued deliberate indifference to Plaintiffs' gender dysphoria.

Plaintiffs intend to offer testimony from Ms. Porter regarding training for IDOC employees in the Women's Division related to transgender prisoners. *See* Dkt. 317-1, Ex. A at 15, lines 151:6-22. Defendants object to this testimony as not relevant. *Id.* The Court should

overrule this objection because Ms. Porter's testimony is relevant evidence that the head of the Women's Division knew of no training for IDOC employees in the Women's Division related to transgender prisoners, even though both transgender women and transgender men are housed in the Women's Division. This is directly relevant to Defendants' continued deliberate indifference to the treatment and care of Plaintiffs' gender dysphoria.

8.     Glenda Wortley (July 27, 2020). Plaintiffs intend to offer deposition testimony of IDOC Assignment Coordinator Glenda Wortley, who served on IDOC's TCRC, regarding IDOC's consideration of a transgender prisoner's "sexual preference [and] the likelihood of penetration" as factors in deciding whether to transfer that prisoner to a facility that matches their gender identity. *See* Dkt. 317-1, Ex. A at 16, lines 96:23-97:15, 98:3-19. Her testimony also establishes that IDOC does not consider such information when making decisions about whether to transfer prisoners who are not transgender. *Id.* at 100:7-20.

Defendants object to this testimony as irrelevant. IDOC's consideration of a prisoner's likelihood of victimization and her sexual orientation when deciding whether to transfer her to a female facility are relevant to Plaintiffs' claims about how IDOC makes decisions about whether to transfer prisoners with gender dysphoria. This, in turn, is directly relevant to Defendants' continued deliberate indifference to the treatment and care of Plaintiffs' gender dysphoria.

9.     Mike Chappell, IDOC (30(b)(6)) (July 22, 2021).  Plaintiffs intend to offer deposition testimony of IDOC's 30(b)(6) witness, Mr. Mike Chappell, Operations Security Specialist, regarding whether IDOC asked him to search for and collect ESI and email in this case. *See* Dkt. 317-1, Ex. A at 17, lines 101:24-102:6. Defendants argued this testimony—that he did not collect and produce any electronic information whatsoever—is not relevant, but it

supports Plaintiffs' arguments that Defendants have violated Rule 26(e) as described in Plaintiffs' pending motion for sanctions pursuant to Federal Rule of Civil Procedure 37.

10.      <u>Shane Reister, IDOC (30(b)(6)) (July 23, 2021)</u>.  Plaintiffs intend to offer deposition testimony of IDOC's 30(b)(6) witness, Dr. Shane Reister, regarding whether IDOC asked him to search for and collect ESI and email in this case. *See* Dkt. 317-1, Ex. A at 19, lines 104:22-107:23; 108:6-20; 111:7-112:15; 113:11-116:13; 117:2-121:14. Defendants argued this testimony—that he did cherry-picked documents he believed to be relevant and produced a fragment of discoverable information—is not relevant, but it supports Plaintiffs' arguments that Defendants have violated Rule 26(e) as described in Plaintiffs' pending motion for sanctions pursuant to Federal Rule of Civil Procedure 37.

## CONCLUSION

For all the foregoing reasons, this Court should exclude the proffered deposition testimony by Defendants and overrule any objections by Defendants to Plaintiffs' proffered deposition testimony.

Dated: August 1, 2021                    Respectfully submitted by:

                                         */s/ Abby L. Parsons*
                                         _____
                                         John A. Knight
                                         Camille E. Bennett
                                         Ghirlandi Guidetti
                                         Carolyn M. Wald
                                         Joshua Blecher-Cohen
                                         ROGER BALDWIN FOUNDATION
                                         OF ACLU, INC.
                                         150 North Michigan Avenue, Suite 600
                                         Chicago, IL 60601
                                         Telephone: (312) 201-9740
                                         Facsimile: (312) 288-5225
                                         *jknight@ACLU-il.org*
                                         *cbennett@ACLU-il.org*
                                         *gguidetti@ACLU-il.org*
                                         *cwald@ACLU-il.org*
                                         *jblecher-cohen@ACLU-il.org*

                                         Catherine L. Fitzpatrick
                                         Amelia H. Bailey
                                         Sam G. Rose
                                         KIRKLAND & ELLIS LLP
                                         300 North LaSalle Street
                                         Chicago, IL 60654
                                         Telephone: (312) 862-2000
                                         Facsimile: (312) 862-2200
                                         *catherine.fitzpatrick@kirkland.com*
                                         *amelia.bailey@kirkland.com*
                                         *sam.rose@kirkland.com*

                                         Brent P. Ray
                                         KING & SPALDING LLP
                                         110 N. Upper Wacker Drive, Suite 3800
                                         Chicago, IL 60606
                                         Telephone: (312) 995-6333
                                         Facsimile: (312) 995-6330
                                         *bray@kslaw.com*

                                         Abby L. Parsons
                                         KING & SPALDING LLP
                                         1100 Louisiana Street, Suite 4100
                                         Houston, TX 77002
                                         Telephone: (713) 751-3294
                                         *aparsons@kslaw.com*

Thomas E. Kennedy III
Sarah Jane Hunt
KENNEDY HUNT P.C.
906 Olive Street, Suite 200
Saint Louis, MO 63101
Telephone: (314) 872-9041
*tkennedy@KennedyHuntLaw.com*
*sarahjane@KennedyHuntLaw.com*

*Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on August 1, 2021, I electronically filed the foregoing document and any

exhibits with the Clerk of this Court by using the CM/ECF system, which will accomplish

service through the Notice of Electronic Filing for parties and attorneys who are Filing Users.

By: /s/ *Abby L. Parsons*
Abby L. Parsons