IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JANIAH MONROE,<br>MARILYN MELENDEZ,<br>LYDIA HELÉNA VISION,<br>SORA KUYKENDALL, and<br>SASHA REED, individually and on<br>behalf of a class of similarly situated<br>individuals,<br><br>   Plaintiffs,<br><br>v.<br><br>STEVE MEEKS,<br>MELVIN HINTON, and<br>ROB JEFFREYS,<br><br>   Defendants. | Case No. 3:18-CV-00156-NJR |

## PRELIMINARY INJUNCTION

**ROSENSTENGEL, Chief Judge:**

Pursuant to Rule 65(d)(1)(C) of the Federal Rules of Civil Procedure and *MillerCoors LLC v. Anheuser-Busch Companies, LLC*, 940 F.3d 922 (7th Cir. 2019), the Court issues the following preliminary injunctive relief. This relief is in addition to the previous preliminary injunction at Doc. 212, which **CONTINUES** in force.

The Court **ORDERS** the following additional relief:

1. Plaintiffs Sora Kuykendall and Sasha Reed shall, within **7 days** of the date of this Order, be given lab tests to check their prolactin levels. If those levels are still elevated, they shall be given an MRI test within **5 days** of receipt of the prolactin results.

2. Each member of the Plaintiff class who is currently receiving hormone therapy shall, within **14 days** of the date of this Order, be given blood tests to assess hormone levels, as well as potassium, creatinine, and prolactin

    levels (for transgender females) and hemoglobin/hematocrit levels (for transgender males). Thereafter, if the hormone levels are not within the appropriate range set forth by the Endocrine Society Hormone Guidelines (for transgender females, testosterone of less than 15 nanograms/deciliter and estradiol between 100-200 picograms/milliliter; for transgender males, testosterone levels between 400-600 nanograms/deciliter), Defendants shall ensure that the individual's hormone medication is titrated following receipt of the bloodwork results and bloodwork repeated at least every **3 months** until the levels are within an appropriate range.

3. Any Plaintiff class member who has requested hormone therapy to date shall, within **21 days** of the date of this Order, get baseline bloodwork done and hormone therapy started within **14 days** thereafter, with follow-up bloodwork at least every **3 months** until the levels are within an appropriate range.

4. Each Plaintiff class member receiving hormone therapy shall get bloodwork done at least once a year to assess hormone levels, as well as potassium, creatinine, and prolactin levels (for transgender females) and hemoglobin/hematocrit levels (for transgender males) and shall be treated as medically indicated by the results. No Plaintiff class member shall be prescribed conjugated estrogen.

5. Any Plaintiff class member whose hormone levels are within the appropriate range, and who has requested evaluation for gender affirming surgery, shall be evaluated for such surgery within **120 days** of the date of this Order with inmates being evaluated in *chronological* order of the date of the inmate's original request for surgery. Each class member so evaluated shall be provided a prompt written notification of the decision and, if surgery is denied, the written notification shall include an explanation of the reasons for denial and a timeframe to request another evaluation thereafter.

6. Plaintiff class members shall be allowed to choose the gender of the correctional officer who will conduct a search of their person, and the search **SHALL BE** conducted by a correctional officer of the gender requested.

7. Each Plaintiff class member who has requested transfer to a facility matching his or her expressed gender (female facility for transgender women, male facility for transgender men) shall be evaluated for transfer within **120 days** of the date of this Order, with inmates being evaluated in *chronological* order of the date of the inmate's original request for transfer. Each class member so evaluated and denied transfer shall be promptly

provided with a written explanation of each reason for the denial and allowed to request another evaluation for transfer within **180 days** thereafter.

8. Each Plaintiff class member shall immediately be provided with access to gender affirming items in the commissary and shall immediately be provided with a list of available gender affirming items. Defendants shall immediately ensure all approved gender affirming items are available at the commissary at each class member's institution. Defendants shall, within **30 days** of the date of this Order, provide the Court with a list of all commissary items available at each facility.

9. Defendants shall immediately ensure that medical care and mental health treatment of Plaintiff class members shall be conducted only by medical staff and mental health professionals who have taken WPATH training and are committed to continuing education on issues of transgender health. Similarly, medical providers and mental health professionals who hold personal or religious beliefs that prohibit their treatment of inmates with gender dysphoria shall have no contact with any member of the class from this date forward.

10. Defendants shall immediately ensure that transgender inmates are allowed access to a private shower.

Again, the Court acknowledges Defendants have made some progress toward compliance with the Court's orders for preliminary injunctive relief (Docs. 186, 187, amended at Doc. 212), and recognizes that the COVID-19 pandemic has caused some of the delays in accomplishing compliance. This progress must continue. To that end, the Court further **ORDERS** Defendants to finalize the following "in progress" projects **within 120 days** of this Order.

1. Finalize the contract with Wexford to provide hair removal services to Plaintiff class members;

2. Finalize the contract with Dr. Schechter to provide gender affirming surgery to Plaintiff class members who are approved to receive such surgery;

3. Finalize and implement the CQI (Continuing Quality Improvement) program for transgender care;

4. Finalize IDOC's written surgical standards for transgender care;

5. Finalize and implement the PRISM project (the special population program) (discussed in Doc. 326, pp. 640, 648-49, 651)

6. Finalize and implement additional and ongoing training for *all* correctional staff on transgender issues and awareness, including the harm caused by misgendering and harassment;

7. Finalize and implement training for inmates and staff at Logan Correctional Center regarding incoming/transferred transgender inmates;

8. Finalize and implement IDOC's transgender identification policy.

**IT IS SO ORDERED.**

**DATED:   August 9, 2021**

**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**