**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

|  |  |
|---|---|
| **JANIAH MONROE,**<br>**MARILYN MELENDEZ,**<br>**LYDIA HELÉNA VISION,**<br>**SORA KUYKENDALL, and**<br>**SASHA REED, individually and on**<br>**behalf of a class of similarly situated**<br>**individuals,**<br><br>         **Plaintiffs,**<br><br>**v.**<br><br>**STEVE MEEKS,**<br>**MELVIN HINTON, and**<br>**ROB JEFFREYS,**<br><br>         **Defendants.** | <br><br><br><br><br><br><br><br>**Case No. 3:18-CV-00156-NJR** |

## PRELIMINARY INJUNCTION

**ROSENSTENGEL, Chief Judge:**

Pursuant to Rule 65(d)(1)(C) of the Federal Rules of Civil Procedure and *MillerCoors LLC v. Anheuser-Busch Companies, LLC*, 940 F.3d 922 (7th Cir. 2019), the Court issues the following preliminary injunctive relief. This Order incorporates the preliminary injunctive relief ordered on December 19, 2019 (Docs. 186, 212), on August 9, 2021 (Doc. 332, corrected at Doc. 336), and the additional relief ordered this date in February 2022 (Doc. 383). Each of these preliminary injunctions **CONTINUES** in force.

### I.  FIRST PRELIMINARY INJUNCTION

On **December 19, 2019**, Defendants were **ORDERED** to immediately:

1. cease the policy and practice of allowing the Transgender Committee to make the medical decisions regarding gender dysphoria and develop a

policy to ensure that decisions about treatment for gender dysphoria are made by medical professionals who are qualified to treat gender dysphoria;

2. ensure that timely hormone therapy is provided when medically necessary, including the administration of hormone dosage adjustments, and to perform routine monitoring of hormone levels; and

3. cease the policy and practice of depriving gender dysphoric prisoners of medically necessary social transition, including by mechanically assigning housing based on genitalia and/or physical size or appearance.

And **FURTHER ORDERED** to:

1. develop policies and procedures which allow transgender inmates access to clinicians who meet the competency requirements stated in the WPATH Standards of Care to treat gender dysphoria;

2. allow inmates to obtain evaluations for gender dysphoria upon request or clinical indications of the condition;

3. develop a policy to allow transgender inmates medically necessary social transition, including individualized placement determinations, avoidance of cross-gender strip searches, and access to gender-affirming clothing and grooming items; and

4. advise the Court what steps, if any, IDOC has taken to train all correctional staff on transgender issues, including the harms caused by misgendering and harassment—by both IDOC staff and other inmates.

(Docs. 186, 212).

## II.  SECOND PRELIMINARY INJUNCTION

On **August 9, 2021**, the Court **ORDERED** the following additional relief:

1. Plaintiffs Sora Kuykendall and Sasha Reed shall, within **7 days** of the date of this Order, be given lab tests to check their prolactin levels. If those levels are still elevated, they shall be given an MRI test within **5 days** of receipt of the prolactin results.

2. Each member of the Plaintiff class who is currently receiving hormone therapy shall, within **14 days** of the date of this Order, be given blood tests to assess hormone levels, as well as potassium, creatinine, and prolactin

levels (for transgender females) and hemoglobin/hematocrit levels (for transgender males). Thereafter, if the hormone levels are not within the appropriate range set forth by the Endocrine Society Hormone Guidelines (for transgender females, testosterone of less than 50 nanograms/deciliter [as corrected on August 18, 2021, at Doc. 336] and estradiol between 100-200 picograms/milliliter; for transgender males, testosterone levels between 400-600 nanograms/deciliter), Defendants shall ensure that the individual's hormone medication is titrated following receipt of the blood work results and blood work repeated at least every **3 months** until the levels are within an appropriate range.

3. Any Plaintiff class member who has requested hormone therapy to date shall, within **21 days** of the date of this Order, get baseline blood work done and hormone therapy started within **14 days** thereafter, with follow-up blood work at least every **3 months** until the levels are within an appropriate range.

4. Each Plaintiff class member receiving hormone therapy shall get blood work done at least once a year to assess hormone levels, as well as potassium, creatinine, and prolactin levels (for transgender females) and hemoglobin/hematocrit levels (for transgender males) and shall be treated as medically indicated by the results. No Plaintiff class member shall be prescribed conjugated estrogen.

5. Any Plaintiff class member whose hormone levels are within the appropriate range, and who has requested evaluation for gender-affirming surgery, shall be evaluated for such surgery within **120 days** of the date of this Order with inmates being evaluated in *chronological* order of the date of the inmate's original request for surgery. Each class member so evaluated shall be provided a prompt written notification of the decision and, if surgery is denied, the written notification shall include an explanation of the reasons for denial and a timeframe to request another evaluation thereafter.

6. Plaintiff class members shall be allowed to choose the gender of the correctional officer who will conduct a search of their person, and the search **SHALL BE** conducted by a correctional officer of the gender requested.

7. Each Plaintiff class member who has requested transfer to a facility matching his or her expressed gender (female facility for transgender women, male facility for transgender men) shall be evaluated for transfer within **120 days** of the date of this Order, with inmates being evaluated in *chronological* order of the date of the inmate's original request for transfer.

Each class member so evaluated and denied transfer shall be promptly provided with a written explanation of each reason for the denial and allowed to request another evaluation for transfer within **180 days** thereafter.

8. Each Plaintiff class member shall immediately be provided with access to gender-affirming items in the commissary and shall immediately be provided with a list of available gender-affirming items. Defendants shall immediately ensure all approved gender-affirming items are available at the commissary at each class member's institution. Defendants shall, within **30 days** of the date of this Order, provide the Court with a list of all commissary items available at each facility.

9. Defendants shall immediately ensure that medical care and mental health treatment of Plaintiff class members shall be conducted only by medical staff and mental health professionals who have taken WPATH training and are committed to continuing education on issues of transgender health. Similarly, medical providers and mental health professionals who hold personal or religious beliefs that prohibit their treatment of inmates with gender dysphoria shall have no contact with any member of the class from this date forward.

10. Defendants shall immediately ensure that transgender inmates are allowed access to a private shower.

(Doc. 332, corrected at Doc. 336).

Also on **August 9, 2021**, the Court ordered the following additional injunctive relief, to be completed within **120 days** (on or before **December 7, 2021**), with respect to projects that were "in progress" as of the time of trial:

1. Finalize the contract with Wexford to provide hair removal services to Plaintiff class members;

2. Finalize the contract with Dr. Schechter to provide gender-affirming surgery to Plaintiff class members who are approved to receive such surgery;

3. Finalize and implement the CQI (Continuing Quality Improvement) program for transgender care;

4. Finalize IDOC's written surgical standards for transgender care;

5. Finalize and implement the PRISM project (the special population program) (discussed in Doc. 326, pp. 640, 648-49, 651)

6. Finalize and implement additional and ongoing training for *all* correctional staff on transgender issues and awareness, including the harm caused by misgendering and harassment;

7. Finalize and implement training for inmates and staff at Logan Correctional Center regarding incoming/transferred transgender inmates;

8. Finalize and implement IDOC's transgender identification policy.

(Doc. 332).

### III.  NEW INJUNCTIVE RELIEF

1.  In addition to the relief ordered on August 9, 2021 in paragraph 2 regarding blood work to assess hormone levels and titration of hormone medication (*see* pp. 2-3 above), the Court **FURTHER ORDERS** that:

Defendants shall ensure that any necessary follow-up medical tests/treatment to address the results of potassium, creatinine, and prolactin level testing for transgender females and hemoglobin/hematocrit for transgender males takes place on a timely basis (for example, MRI tests for transgender females with elevated prolactin levels).

2.  In addition to the injunctive relief ordered on August 9, 2021 in paragraph 1 concerning "in progress" projects (specifically, hair removal services, *see* Doc. 332, p. 3, para. 1), the Court **FURTHER ORDERS** that:

Defendants shall ensure the availability to class members of all medically necessary hair removal services, in addition to and including hair removal to prepare for gender-affirming surgery, within **30 days** of the date of this Order.

### IV.  FOLLOW UP TO INJUNCTIVE RELIEF ORDERED ON AUGUST 9, 2021

1.  *Follow Up Injunctive Relief – Blood Work for Class Members Receiving Hormone Therapy*

Defendants were ordered to ensure that each member of the Plaintiff class who was receiving hormone therapy shall have blood work done to assess hormone levels and safety levels, and that each individual's hormone medication is titrated following receipt of the blood work results *and blood work repeated at least every 3 months until the levels are within an appropriate range* (emphasis added) (para. 2, pp. 2-3 above; and Doc. 332, pp. 1-2, para. 2).[1]

Defendants shall provide an update to the Court on this issue (whether blood work was done in November 2021 and is scheduled for February 2022, whether any doses have been titrated or follow up tests or treatment ordered, what has been done to address elevated prolactin levels, and whether class members with hormone levels outside of the recommended ranges have been brought within range) within **14 days** of the date of this Order.

2.  *Follow Up Injunctive Relief – Blood Work for Class Members Requesting Hormone Therapy*

The Court also ordered Defendants to conduct baseline blood work and start hormone therapy for any Plaintiff class member who has requested hormone therapy by August 30, 2021, and to start hormone therapy within 14 days thereafter, with follow-up blood work conducted at least every three months thereafter until the hormone levels are

---

[1] Today the Court also ordered Defendants to ensure necessary follow-up medical tests and treatment take place on a timely basis.

within an appropriate range (Doc. 332, p. 2, para. 3).

While Defendants reported that baseline blood tests were done for those inmates who did not refuse blood work (*see* Doc. 355, p. 2; Doc. 357), the Court has not been informed whether (or when) hormone therapy started or whether there has been any follow up blood work or medication titration. Defendants shall provide an update to the Court on this issue within **14 days** of the date of this Order.

3.    *Follow Up Injunctive Relief – Annual Blood Work for Class Members*

Defendants were ordered to conduct blood work for each Plaintiff class member receiving hormone therapy at least once a year to assess hormone levels, as well as potassium, creatinine, and prolactin levels (for transgender females) and hemoglobin/hematocrit levels (for transgender males) and to treat each Plaintiff as medically indicated (and to not prescribe conjugated estrogen—*see* summary of Dr. Tangpricha's testimony, above). (Doc. 332, p. 2, para. 4). As this was ordered in August 2021, the timeframe for completion is months away, in August 2022. Nonetheless, the Court directs Defendants to provide updated information concerning blood work as set forth above.

4.    *Follow Up Injunctive Relief – Surgery*

The Court ordered Defendants to have Plaintiff class members whose hormone levels were within appropriate range and who had requested gender-affirming surgery to be evaluated for surgery by December 7, 2021, in chronological order of the inmate's original surgery request. (Doc. 332, p. 2, para. 5).

Defendants shall provide an update on the status of those approved for surgery,

including whether any preliminary treatment—such as hair removal—has occurred, whether any surgeries have occurred, and the plans for post-surgery facility placement and treatment. Defendants shall also provide a detailed explanation as to why individual requests for surgery were denied (between August 9, 2021, and today) and report when those individuals can request re-evaluation. These status updates are due within **30 days** of the date of this Order.

5.     *Follow Up Injunctive Relief – Searches*

The Court ordered Defendants to allow Plaintiff class members to choose the gender of the officer who will search their person and to ensure that searches were conducted by an officer of the requested gender. (Doc. 332, p. 2, para. 6). Defendants report that body scanners will be deployed in five prisons (Doc. 369), but the Court is unsure whether this covers all class members. It is likewise not clear whether all cross-gender searches have ceased (discussed below).

The Court orders Defendants to clarify these issues and to provide an update on steps taken to implement, inform, and train staff on policies to avoid cross-gender searches within **30 days** of the date of this Order.

6.     *Follow Up Injunctive Relief – Transfers*

The Court ordered Defendants to evaluate Plaintiff class members who have requested transfer to a facility matching the inmate's expressed gender for transfer by December 7, 2021, in chronological order of the inmate's original transfer request. (Doc. 332, pp. 2-3, para. 7).

Defendants shall provide an update on the status of evaluations for transfer that

have occurred since October 8, 2021 (as previously ordered), including detailed reasons for any denials, within **30 days** of the date of this Order. Defendants also shall address the numerous inconsistencies identified by Plaintiffs in October 2021. (Doc. 359).

7.    *Follow Up Injunctive Relief – Commissary Items*

Defendants were ordered to make gender-affirming commissary items available to the Plaintiff class and to provide class members with a list of available items. The Court further ordered Defendants to provide a list of all items available at each facility by September 9, 2021. (Doc. 332, p. 3, para. 8). In that September 2021 report (Doc. 351), Defendants reported that not all items were available.

Defendants shall provide the Court with an updated list of all commissary items available at each facility and an explanation of when any unavailable items will be stocked within **14 days** from the date of this Order.

8.    *Follow Up Injunctive Relief – Medical and Mental Health Providers*

The Court ordered that Plaintiff class members should be treated only by medical and mental health providers who have taken WPATH training and are committed to continuing education on transgender health issues. The Court also ordered that providers whose beliefs prohibit their treatment of inmates with gender dysphoria shall have no contact with any Plaintiff class member. (Doc. 332, p. 3, para. 9).

Defendants have not provided an update on compliance with this item. The Court orders Defendants to report whether changes have been made to ensure compliance with the relief ordered within **30 days** of the date of this Order.

9.  *Follow Up Injunctive Relief – Showers*

The Court ordered that transgender inmates should have immediate access to a private shower. (Doc. 332, p. 3, para. 10). Defendants have not complied with the Court's Order.

Defendants shall inform the Court of measures taken at each prison housing transgender inmates to provide them access to a private shower within **14 days** from the date of this Order.

10. *Follow up Injunctive Relief – Contract for Hair Removal Services*

Defendants were ordered to finalize the contract with Wexford to provide hair removal services to Plaintiff class members by December 7, 2021. (Doc. 332, p. 3, para. 1). Defendants reported on December 8, 2021 (Doc. 369) that an electrolysis machine was purchased for Logan for hair removal to be done onsite. However, it is not clear whether treatment has begun or how treatment will be made available to class members not housed at Logan.

Defendants shall provide an update on these matters within **30 days** of the date of this Order.

And, as set forth above, today the Court has ordered Defendants to ensure the availability of all medically necessary hair removal services, in addition to and including hair removal to prepare for gender-affirming surgery, within **30 days** of this Order.

11. *Follow Up Injunctive Relief – Contract with Dr. Schechter*

Defendants appears to be full compliance with the order to arrange with Dr. Schechter to provide gender-affirming surgery to Plaintiff class members who are

approved for surgery. (Doc. 332, p. 3, para. 2). Unless anything has changed since Defendant's status report (Doc. 369, p. 3, para. 2), no update is needed on this item.

12.     ***Follow Up Injunctive Relief – CQI Program for Transgender Care***

Defendants were ordered to finalize and implement the CQI (Continuing Quality Improvement) program for transgender case by December 7, 2021. (Doc. 332, p. 4, para. 3). Defendants reported on December 8, 2021 (Doc. 369, p. 3, para. 3) that the CQI tool is complete, and implementation of the tool is underway.

Defendants shall provide an update on the progress made since December 2021 within **30 days** of the date of this Order.

13.     ***Follow Up Injunctive Relief – PRISM Project***

Defendants were ordered to finalize and implement the PRISM project (the special population program discussed in the summary of Dr. Reister's testimony above). (Doc. 332, p. 4, para. 5). Defendants appear to be in full compliance and implementation is ongoing. (Doc. 369, pp. 3-4, para. 5; Doc. 369-6).

Nonetheless, the Court orders Defendants to provide an additional update on the PRISM project within **30 days** of the date of this Order.

14.     ***Follow Up Injunctive Relief – Training for Correctional Staff***

Defendants were ordered to finalize and implement additional and ongoing training for all correctional staff on transgender issues and awareness, including the harm caused by misgendering and harassment by December 7, 2021. (Doc. 332, p. 4, para. 6).

Defendants shall provide an update to the Court on the status of training actually completed (and scheduled to be completed this year) within **30 days** of the date of this

Order.

15. ***Follow Up Injunctive Relief – Training for Inmates and Staff at Logan Correctional Center***

Defendants were ordered to finalize and implement training for inmates and staff at Logan regarding incoming/transferred transgender inmates by December 7, 2021 (Doc. 332, p. 4, para. 7).

Defendants shall report on the status of training actually completed (and scheduled to be completed this year) within **30 days** of the date of this Order.

16. ***Follow Up Injunctive Relief – Transgender Identification Policy***

Defendants were ordered to finalize and implement IDOC's transgender identification policy by December 7, 2021 (Doc. 332, p. 4, para. 8).

Defendants shall update the Court within **30 days** of the date of this Order on whether this policy has eliminated cross-gender body searches.

The updated status reports ordered above from Defendants shall be filed under seal to the extent they contain individuals' names, private health information, or could reveal other confidential information about an individual such as the person's transgender status.

Finally, the Court invites Defendants to advise the Court whether the contract with Dr. Anderson was renewed (and whether any other changes have occurred with respect to transgender issues since trial). The Court **FURTHER ORDERS** Defendants to work with the Monitor (once appointed) to develop and implement new Administrative Directives that cure the deficiencies outlined above and to ensure the comprehensive

training is provided to all staff tasked with responsibility of implementing those directives.

      **IT IS SO ORDERED.**

      **DATED:**  **February 7, 2022**

                                           _____

                                           **NANCY J. ROSENSTENGEL**
                                           **Chief U.S. District Judge**