IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS DIVISION

| | | |
|---|---|---|
| JANIAH MONROE, MARILYN MELENDEZ, LYDIA HELENA VISION, SORA KUYKENDALL, and SASHA REED, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| - vs- | ) ) | No. 18-156-NJR |
| ROB JEFFREYS, MELVIN HINTON, and STEVEN BOWMAN, | ) ) ) | |
| Defendants. | ) ) | |

**DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR STATUS CONFERENCE**

The Defendants, ROB JEFFREYS, MELVIN HINTON, and STEVEN BOWMAN (sued in their official capacities only), by and through their attorney, Kwame Raoul, Attorney General for the State of Illinois, provide the following response to Plaintiffs' Motion for Status Conference [Doc. 382]:

The Plaintiffs have asked the Court for a status conference to address a number of areas where they allege the Defendants are failing to comply with the injunction entered in this case. The Court has scheduled a conference for February 14, 2022, and ordered the Defendants to respond to the issues raised by Plaintiffs in their motion. When counsel for the Plaintiffs first informed defense counsel that they would be filing this motion defense counsel requested additional details. Counsel for the Plaintiffs provided those details, which formed the basis for defense counsel's inquiries. A copy of the email containing that additional information is being submitted under seal.

**1. Transgender women in isolation at Logan**

Plaintiffs allege that several transgender women who have been transferred to Logan Correctional Center are being housed in HU 15 (or D wing), which is very isolated and being

treated as a "Max Step Down" placement by the Department of Corrections. Plaintiffs further allege that other transgender women and two transgender men are being housed in a "transgender unit (HU 10), that is also very isolated.

Defendants' Response: The transgender men and women currently housed at Logan Correctional Center (as of 6:45 a.m. on 2/10/2022) are spread across 18 separate wings in 9 different housing units. There are currently no more than five transgender men or women concentrated on a single housing unit wing. When determining appropriate placement for an individual in custody, several factors are considered – the health and safety of the individual, as well as if the placement would present management or security problems. To ensure an appropriate placement, these factors are considered as a totality, not individually.

Specifically, as to Housing Unit (HU) 15, wings A, B, and C have specific populations (Reception & Classification and Restrictive Housing), but D-wing is a general population wing. Individuals housed on D-wing are typically no different than individuals housed across the many housing units at Logan, but may have unique placement needs which make placement in 2-person cells more appropriate than 4- or 6-person rooms, or even in an open dormitory setting.

Placement decisions are made in a way to ensure the health and safety of all individuals housed at a correctional center, not just a specific group. Aggression level, committing offense, age, physical stature, security threat group (gang) affiliation, and disciplinary history are all considered when determining the appropriate type of placement (dorm, room, cell) or potential wing-mates and/or cell-mates (or the decision to single-cell). All of these criteria apply to both cisgender and transgender inmates alike. There is no transgender unit at Logan. None of the living units, including those with two-person cells, are isolated and Dr. Puga did not make the observation alleged.

The members of the class who have been placed in Logan have received individual consideration of the best housing assignment for that inmate. This is consistent with the Court's injunction and PREA standards. The right process is being used, the Plaintiffs are now just questioning individual results of that process.

### 2. Transgender men at Logan trading surgery request for housing choice

Plaintiffs allege that several transgender men were transferred to Center Wing and away from support systems, and were told if they cancel their requests for surgery they could return to general population.

Defendants' Response: Housing decisions are made using the criteria described in the prior response. Being approved for surgery is not part of that criteria. Neither Dr. Cabarcas nor Warden Case had told anyone they could be returned to general population if they withdrew their request for surgery (the individuals in question were already in general population). Individuals have been informed in therapy sessions, in response to grievances and by Dr. Cabarcas that surgery is not a consideration in placement decisions.

### 3. Funneling transgender women to Centralia - PRISM instead of Logan

Plaintiffs allege that transgender women have been denied placement at Logan Correction Center but were told they could be housed in the new PRISM unit at Centralia Correctional Center.

Defendants' Response: The Court ordered the Defendants to consider class members for transfer to female correctional facilities on an individualized basis. An individualized process recognizes that some transgender women may not be appropriate for placement at a female facility. This is also consistent with PREA. The Court further ordered the Defendants to implement the PRISM project as an alternative placement for vulnerable inmates including transgender men and women.

Placement in PRISM is also considered on a case-by-case basis. Again, it is consistent

with the injunctive relief granted in this case that some class members will not be approved for placement at a female facility but will be given the option of placement in the PRISM program. Plaintiffs admit in the first issue they raise above that transgender women are being placed at Logan.  The process is working as designed and ordered and the Plaintiffs again are only raising issues regarding individual results within the process.

### 4. Hormone levels that significantly depart from ranges/orders

Plaintiffs allege that one class representative has been told her high testosterone levels were the basis of accusing her of having sex and thus moving her into isolation in cell 8. Plaintiffs further allege this representative has been told she needs authorization from the committee to be put on injectable testosterone blockers, and that a request is being submitted to the committee.

Defendants' Response: Department staff is aware of concerns about her hormone levels after her transfer to Logan and the medical staff is addressing that, although she has refused to cooperate with tests.  The committee is not involved in authorizing injectable testosterone blockers, this decision is made by treating medical staff.  This individual's housing assignment has been affected by specific instances of conduct, but she is not in isolation and her housing is not based on hormone levels.

### 5. Lack of private showers

Plaintiffs allege that one class member at Menard Correctional Center and one at Shawnee Correctional Center have been denied access to private showers.

Defendants' Response: Very explicit direction has been provided to facilities regarding policies and practices to ensure transgender individuals may shower separately and privately.  Transgender individuals in custody are provided an opportunity to shower alone while the dayrooms are closed or when foot traffic around the showers is restricted for other individuals in custody.  Shower coverings are provided at all facilities to ensure individuals in

custody may shower privately while still allowing for staff to make routine security rounds of the housing unit.

Plaintiffs have provided defense counsel with two specific individuals who say they have been denied private showers, one at Shawnee Correctional Center and one at Menard Correctional Center. Attached is a memo provided to all staff at Shawnee (read at Roll Call for all shifts for seven consecutive days) to give direction on when and how transgender individuals may shower with privacy. Also attached are photographs showing the curtain used to provide privacy in the shower at Menard. The individual cited by Plaintiffs is allowed to use that shower with the curtain. The individual at Shawnee also has access to a shower with a similar curtain. Because any inmate in the dayroom has access to the showers, the individual at Shawnee is allowed to shower between 7 a.m. and 8 a.m. when the dayroom is closed.

**6. No access to gender-affirming items at commissary**

Plaintiffs allege that Logan has been out of gender-affirming items, that razors and makeup have been unavailable at Hill Correctional Center, and that class members at Centralia Correctional Center have no access to female undergarments, nail polish, female brushes, or facial hair removal.

Defendants' Response: There have been supply issues that have made some items unavailable, including razors. These issues are agency-wide and affect both cisgender and transgender inmates alike. The Department has remaining supplies of transgender items, including makeup, centrally located at its Lincoln warehouse. The Department will re-supply Centralia Correctional Center with transgender commissary items on Monday February, 14, 2022.

The Department has struggled to stock commissary shelves statewide due to contractual disputes and supply chain disruptions. The Department has entered into several emergency contracts to address these concerns. Even with these emergency contracts, worldwide supply chain issues have still resulted in shortages. These issues have been reported in the media and,

again, are not specific to transgender inmates:

https://www.chicagobusiness.com/government/covid-19-again-hits-illinois-prisons

https://www.capitolnewsillinois.com/NEWS/idoc-inmates-continue-to-face-commissary-shortages

Illinois state prison commissary shelves left bare by supply chain disruptions - ABC7 Chicago

https://news.wttw.com/2022/01/18/how-lack-items-affecting-incarcerated-people-illinois

### 7. Disturbing encounters with staff

Plaintiffs allege that in September 2021, Dr. Tsang told one class representative that if she was in Saudi Arabia, they would "castrate" her. Dr. Tsang also stated that the representative was a "good looking man" and asked why she wanted to change. Plaintiffs further allege that a class member was strip-searched by a male officer on November 7, 2021, despite her showing him the Court's order, ID card, and saying she was transgender. Staff called her a "faggot" and similar slurs and threatened to rape her.

<u>Defendants' Response:</u> The Department of Corrections has opened investigations into both of these individual's complaints. The class member who alleges she was strip searched by a male officer was interviewed and has stated she has been strip searched only once and the search was conducted by a female officer.   A copy of that interview is being submitted under seal.

                                          Respectfully submitted,

                                          ROB JEFFREYS, MELVIN HINTON, and STEVEN BOWMAN,

                                          Defendants,

| | |
|---|---|
| Christopher Higgerson #6256085 | KWAME RAOUL, Attorney General |
| Assistant Attorney General | State of Illinois |
| 500 South Second Street | |
| Springfield, Illinois   62701 |     Attorney for Defendants, |
| (217) 782-9014 Phone | |
| (217) 524-5091 Fax | By:  s/Christopher Higgerson |
| Email: c.higgerson@ilag.gov |     Christopher Higgerson |

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS DIVISION

| | |
|---|---|
| JANIAH MONROE, MARILYN MELENDEZ, LYDIA HELENA VISION, SORA KUYKENDALL, and SASHA REED,<br><br>Plaintiffs,<br><br>- vs-<br><br>ROB JEFFREYS, MELVIN HINTON, and STEVEN BOWMAN,<br><br>Defendants. | No. 18-156-NJR |

## CERTIFICATE OF SERVICE

I hereby certify that on February 11, 2022, the foregoing document, **Defendants' Response to Plaintiffs' Motion for Status Conference**, was electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

| | |
|---|---|
| John A. Knight | jknight@aclu.il.org |
| Abby L. Parsons | aparsons@kslaw.com |
| Sarah Jane Hunt | sarahjane@tkennedylaw.com |
| Thomas E. Kennedy, III | tkennedy@tkennedylaw.com |
| Brent P. Ray | bray@kslaw.com |
| Samantha G. Rose | sam.rose@kirkland.com |
| Amelia Bailey | abailey@kirkland.com |
| Camille Bennett | cbennett@aclu-il.org |
| And all other counsel of record | |

                s/ Christopher Higgerson
                Christopher Higgerson, #6256085
                Assistant Attorney General
                Office of the Attorney General
                500 South Second Street
                Springfield, Illinois   62701
                (217) 782-9014 Phone
                (217) 524-5091 Fax
                Email: c.higgerson@ilag.gov