IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

JANIAH MONROE,[1]
MARILYN MELENDEZ,
LYDIA HELÉNA VISION,
SORA KUYKENDALL, and
SASHA REED, individually and on
behalf of a class of similarly situated
individuals,

                Plaintiffs,

v.                                                    Case No. 3:18-CV-00156-NJR

STEVE MEEKS,
MELVIN HINTON, and
ROB JEFFREYS,

                Defendants.

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

On December 13, 2021, the Court notified the parties that a Special Master/Monitor (hereinafter "Monitor")[2] will be appointed in this case. (Doc. 370); FED. R. CIV. P. 53; 18 U.S.C. § 3626. The parties submitted several candidates for possible selection as Monitor, and the Court has discussed the appointment with some of those individuals. (Docs. 377, 378). The Court has also considered the parties' objections and

---

[1] The named Plaintiffs, and many members of the Plaintiff class, use chosen names reflecting their gender identity rather than their given names at birth. Throughout this Order, the Court refers to each Plaintiff by their chosen name, which may not match the name in IDOC records. The Plaintiff class consists of all prisoners in the custody of IDOC who have requested evaluation or treatment for gender dysphoria. (Doc. 213). Approximately 159 individuals have been identified as belonging to the class. (*See* Sealed Doc. 401, Defendants' Response to Doc. 390, Feb. 28, 2022).
[2] *See* 18 U.S.C. § 3626(g)(8).

proposed amendments to the Monitor's duties. (Docs. 375, 376).

The Court determined that the assistance of a Monitor is necessary to oversee and advise the Court and the parties regarding Defendants' compliance with the Court's Preliminary Injunctions (Docs. 212, 332, 336, 384),[3] implementation of the Illinois Department of Corrections' April 2021 revised Administrative Directives regarding transgender prisoners, and to assess and advise the Court and the parties whether further revisions of Illinois Department of Corrections ("IDOC") policies and Administrative Directives are necessary in order to remedy the unconstitutional treatment of transgender prisoners in IDOC facilities. *See* FED. R. CIV. P. 53(b)(1).

Defendants make a salient point that the scope of the matters to be overseen by the Monitor may strain the expertise and resources of a single candidate. (Doc. 375, pp. 2-3, 4). The Court has determined that appointment of two Co-Monitors is appropriate.

The first Co-Monitor (appointed below) will be assigned the duties outlined in Part I, Sections A, B, and C of the Order at Doc. 370, pp. 7-11.[4] This includes monitoring Defendants' compliance with the ordered injunctive relief regarding hormone therapy (provision of initial and ongoing hormone treatment and follow-up blood work at regular intervals, titration of dosages, follow-up testing/treatment indicated by safety labs); gender affirming surgery evaluation, scheduling, hair removal services, and pre- and post-operative care (including monitoring the Continuing Quality Improvement

---

[3] Subsequent to the Order notifying the parties that a Monitor will be appointed, on February 7, 2022, the Court ordered additional injunctive relief and summarized all injunctive relief ordered to date. (Docs. 383, 384).
[4] The December 13, 2021 Order (Doc. 370) setting forth the Monitor's duties will be docketed as an exhibit to this order for convenient reference.

program and providers' compliance with the directive on WPATH training and continuing education); and transfers to achieve medically necessary social transition (including transfers to facilities matching the inmate's expressed gender or placement in the PRISM program), as well as Defendants' implementation of the PRISM program. These responsibilities correspond to the following sections/paragraphs of the comprehensive Preliminary Injunction (Doc. 384):

> Section II (Aug. 9, 2021), ¶¶ 2-5, 7, and 9 (Doc. 384, pp. 2-4), and ¶¶ 1-5[5] (Doc. 384, pp. 4-5)

> Section III (Feb. 7, 2022), ¶¶ 1-2 (Doc. 384, p. 5)

> Section IV (Feb 7, 2022), ¶¶ 1-4, 6, 8, 10-13 (Doc. 384, pp. 6-11).

Defendants shall permit he Co-Monitor to access correctional facilities and speak to staff and inmates, upon at least 48 hours' prior notice to Defendants' counsel, in connection with the responsibilities for monitoring the CQI program, training of providers, implementation of the PRISM program, and transfers to achieve medically necessary social transition.

The second Co-Monitor, yet to be selected, will oversee the matters in Part I, Sections D, E, and F, of the Order at Doc. 370, pp. 11-13. This will include monitoring Defendants' compliance with the ordered injunctive relief on access to gender-affirming

---

[5] Paragraphs 1-5 of Doc. 384, pp. 4-5 consist of items to have been completed by the 120-day deadline that ended on December 7, 2021. The contracts referenced in ¶¶ 1-2 (Doc. 384, p. 4) have been completed. (Doc. 369, pp. 2-3). The CQI tool (¶ 3) was completed but implementation was still ongoing as of December 8, 2021. (Doc. 384, p. 4; Doc. 369, p. 3; Doc. 369-3). Written surgical standards (¶ 4) are in place. (Doc. 384, p. 5; Doc. 369, p. 3; Doc. 369-5). The PRISM program (¶ 5) has been implemented and additional transfers of inmates to that program are anticipated. (Doc. 384, p. 5; Doc. 369, pp. 3-4; Doc. 369-6).

commissary items (clothing, personal care, and hygiene); elimination of cross-gender body searches and implementation of IDOC's transgender identification policy (including access to private showers); and training (on transgender issues and awareness for all correctional staff, and for Logan Correctional Center inmates and staff regarding incoming transgender inmates). These responsibilities correspond to the following sections/paragraphs of the comprehensive Preliminary Injunction (Doc. 384):

Section II (Aug. 9, 2021), ¶¶ 6, 8, 10 (Doc. 384, pp. 3-4), and ¶¶ 6-8 (Doc. 384, p. 5)[6]

Section IV (Feb 7, 2022), ¶¶ 5, 7, 9, 14-16 (Doc. 384, pp. 8-12).

Defendants submitted one potential monitor candidate, and Plaintiffs submitted four names; Defendants struck two of those. (Doc. 370, p. 15; Docs. 377, 378, 379). The Court discussed the monitoring duties with two of the remaining individuals (one nominated by each party) and after much consideration, Defendants' sole candidate withdrew her name. The first Co-Monitor appointed below is a candidate submitted by Plaintiffs.

### APPOINTMENT OF FIRST CO-MONITOR

The Court now **APPOINTS** Amanda L. Harris, M.D., as the first Co-Monitor to oversee compliance in the areas of hormone therapy, surgery and related treatment, and

---

[6] Paragraphs 6-8 of Doc. 384, p. 5 consist of items to have been completed by the 120-day deadline that ended on December 7, 2021. Defendants have contracted to provide the training referenced in ¶ 6 to all staff by March 30, 2022 and to provide future training; updates are needed on compliance. (Doc. 369, p. 4; Docs. 369-7, 369-8). Contracts are also in place to provide training to Logan staff and inmates (¶ 7); monitoring of implementation is needed. (Doc. 369, pp. 4-5; Docs. 369-7, 369-8). The transgender identification policy (¶ 8) was finalized and implemented; monitoring is needed to assess its effectiveness at ending cross-gender body searches. (Doc. 369, p. 5; Doc. 369-9).

transfers as set forth above (and in Doc. 370, pp. 7-11), and detailed in the pertinent sections of the Preliminary Injunctions (compiled at Doc. 384).

Within **seven days** of the date of this Order, Dr. Harris shall file an affidavit with the Court disclosing whether there is any ground for her disqualification under 28 U.S.C. § 455. If a ground is disclosed, the parties shall inform the Court within **three business days** of the filing of the affidavit whether they waive the disqualification. *See* FED. R. CIV. P. 53(b)(3). (See Doc. 370, p. 15).

### REPORTING BY FIRST CO-MONITOR

Dr. Harris shall make an initial report to the Court and the parties indicating Defendants' compliance, partial compliance, or noncompliance with the matters set forth in Parts A, B, and C of Doc. 370 and the related sections of Doc. 384 within **90 days** of the date of this Order. Thereafter, Dr. Harris shall submit follow-up reports at intervals to be determined by the Court, which shall address the identified areas of Defendants' partial compliance or noncompliance. Either party shall have **30 days** in which to respond to a report. (See Doc. 370, pp. 13-14).

In addition, for any component of the ordered injunctive relief within the scope of Dr. Harris's monitoring duties, if Dr. Harris concludes that Defendants are not in compliance, Dr. Harris shall report such finding to the parties and to the Court, within **14 days** of such finding. Either party shall have **14 days** in which to respond to a report of noncompliance.

As set forth in Doc. 370, p. 14, the Co-Monitor's duties will include assisting and facilitating the parties' development of remedial plans, including possible further

revisions to IDOC's Administrative Directives governing transgender prisoners. Dr. Harris may arrange conferences with counsel for the parties and with IDOC staff as appropriate, which may include coordination with the second Co-Monitor after that person is appointed. (See Doc 370, p. 14).

SELECTION OF SECOND CO-MONITOR

This individual will be responsible for monitoring the matters in Part I, Sections D, E, and F, of the Order at Doc. 370, pp. 11-13, which includes injunctive relief in the areas of gender-affirming prison commissary items, eliminating cross-gender body searches and implementation of an effective transgender identification policy, and training of correctional staff on transgender issues and awareness. (*See* Doc. 384, pp. 3-5, 8-12 as detailed above).

One potential monitor candidate remains from those names submitted by Plaintiffs. In addition, when Defendants' sole candidate withdrew from consideration, she suggested two other individuals who are her colleagues with experience in transgender health and who are willing to consider taking on this role. If the parties do not object to either of these two new candidates (whose names will be shared privately with the parties' counsel), the Court will discuss the Co-Monitor role as defined herein with the three individuals and will select one of them. The parties shall notify the Court of any objections to consideration of these two new candidates within **seven days** of the date of this Order. If any objection is made, the objecting party may submit one additional name for the Court to consider as the second Co-Monitor, within **seven days** of such objection.

The Co-Monitor shall be compensated from the Court's appropriated funds at a rate not to exceed the hourly rate established under 18 U.S.C. § 3006A for payment of court-appointed counsel (currently $158), plus costs reasonably incurred by the Monitor. 18 U.S.C. § 3626(f)(4); FED. R. CIV. P. 53(g)(2)(B).

The Court shall review the Co-Monitor's appointment every six months following the appointment, to determine whether the services of the Co-Monitor continue to be required during the remedial phase of this matter. 18 U.S.C. § 3626(f)(5).

**IT IS SO ORDERED.**

**DATED:  April 5, 2022**

_____

**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**