IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JANIAH MONROE,[1] <br> MARILYN MELENDEZ, <br> LYDIA HELÉNA VISION, <br> SORA KUYKENDALL, and <br> SASHA REED, individually and on behalf of a class of similarly situated individuals, <br><br>     Plaintiffs, <br><br> v. <br><br> STEVE MEEKS, <br> MELVIN HINTON, and <br> ROB JEFFREYS, <br><br>     Defendants. | Case No. 3:18-CV-00156-NJR |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

On December 13, 2021, the Court notified the parties that a Special Master/Monitor (hereinafter "Monitor")[2] would be appointed in this case. (Doc. 370); FED. R. CIV. P. 53; 18 U.S.C. § 3626. As noted in prior Orders, the Court determined that the assistance of a Monitor is necessary to oversee and advise the Court and the parties regarding Defendants' compliance with the Court's Preliminary Injunctions (Docs. 212,

---

[1] The named Plaintiffs, and many members of the Plaintiff class, use chosen names reflecting their gender identity rather than their given names at birth. Throughout this Order, the Court refers to each Plaintiff by their chosen name, which may not match the name in IDOC records. The Plaintiff class consists of all prisoners in the custody of IDOC who have requested evaluation or treatment for gender dysphoria. (Doc. 213). Approximately 159 individuals have been identified as belonging to the class. (*See* Sealed Doc. 401, Defendants' Response to Doc. 390, Feb. 28, 2022)).
[2] *See* 18 U.S.C. § 3626(g)(8).

332, 336, 384)[3], implementation of the Illinois Department of Corrections' April 2021 revised Administrative Directives regarding transgender prisoners, and to assess and advise the Court and the parties whether further revisions of Illinois Department of Corrections ("IDOC") policies and Administrative Directives are necessary in order to remedy the unconstitutional treatment of transgender prisoners in IDOC facilities. *See* FED. R. CIV. P. 53(b)(1).

The parties submitted several candidates for possible selection as Monitor. Defendants submitted one candidate, and Plaintiffs submitted four names; Defendants struck two of those. The Court discussed the monitoring duties with two of the remaining individuals (one nominated by each party) and after much consideration, Defendants' sole candidate withdrew her name.

In consideration of Defendants' suggestion to divide the monitoring duties between two individuals (Doc. 375), on April 5, 2022, the Court appointed Amanda L. Harris, M.D. (one of the candidates submitted by Plaintiffs) as the first Co-Monitor to oversee compliance in the areas of hormone therapy, surgery and related treatment, and transfers. (Doc. 418).

In the April 5, 2022 Order (Doc. 418, pp. 3-4), the Court advised the parties that a second Co-Monitor would be appointed to monitor the matters in Part I, Sections D, E, and F, of the Order at Doc. 370, pp. 11-13, which includes injunctive relief in the areas of

---

[3] Subsequent to the Order notifying the parties that a Monitor will be appointed, on February 7, 2022, the Court ordered additional injunctive relief and summarized all injunctive relief ordered to date. (Docs. 383, 384).

gender-affirming prison commissary items, eliminating cross-gender body searches and implementation of an effective transgender identification policy, and training of correctional staff on transgender issues and awareness. (*See* Doc. 384, pp. 3-5, 8-12).

Also in that Order, the Court noted that one potential monitor candidate still remained from the names submitted by Plaintiffs. Further, Defendants' sole candidate, when she withdrew, suggested two other individuals who might be willing to serve. The Court advised the parties that if no party objected to those two suggested candidates, the Court would discuss the Co-Monitor role with the three individuals and would select one of them. (Doc. 418, p. 6). Any party objecting was invited to submit one additional name for consideration as the second Co-Monitor. *Id.*

Plaintiffs objected to the credentials of the two individuals suggested by Defendants' withdrawn candidate and requested the Court to appoint their remaining nominee as the second Co-Monitor. (Doc. 420). Defendants did not object to the Court's suggested appointment procedure. Accordingly, the Court discussed the Co-Monitoring duties with julie graham, Plaintiffs' remaining candidate, and is satisfied with her expertise to serve as the second Co-Monitor in this case.

### APPOINTMENT OF SECOND CO-MONITOR

The Court now **APPOINTS** julie graham, MFT,[4] as the second Co-Monitor to oversee compliance in the areas set forth in Part I, Sections D, E, and F, of the Order at Doc. 370, pp. 11-13, including the reporting and facilitation duties set forth in Section G

---

[4] Marriage and Family Therapist.

of Doc. 370, pp. 13-14.[5] Her duties include monitoring Defendants' compliance with the ordered injunctive relief on access to gender-affirming commissary items (clothing, personal care, and hygiene); elimination of cross-gender body searches and implementation of IDOC's transgender identification policy (including access to private showers); and training (on transgender issues and awareness for all correctional staff, and for Logan Correctional Center inmates and staff regarding incoming transgender inmates). These responsibilities correspond to the following sections/paragraphs of the comprehensive Preliminary Injunction (Doc. 384):

Section II (Aug. 9, 2021), ¶¶ 6, 8, 10 (Doc. 384, pp. 3-4), and ¶¶ 6-8 (Doc. 384, p. 5)[6]

Section IV (Feb 7, 2022), ¶¶ 5, 7, 9, 14-16 (Doc. 384, pp. 8-12).

Defendants shall permit the Co-Monitor to access correctional facilities and speak to staff and inmates, upon at least 48 hours' prior notice to Defendants' counsel, in connection with her monitoring responsibilities.

Within **seven days** of the date of this Order, Ms. graham shall file an affidavit with the Court disclosing whether there is any ground for her disqualification under 28 U.S.C. § 455. If a ground is disclosed, the parties shall inform the Court within **three business**

---

[5] The December 13, 2021 Order (Doc. 370) setting forth the Monitor's duties will be docketed as an exhibit to this order for convenient reference.

[6] Paragraphs 6-8 of Doc. 384, p. 5 consist of items to have been completed by the 120-day deadline that ended on December 7, 2021. Defendants have contracted to provide the training referenced in ¶ 6 to all staff by March 30, 2022 and to provide future training; updates are needed on compliance. (Doc. 369, p. 4; Docs. 369-7, 369-8). Contracts are also in place to provide training to Logan staff and inmates (¶ 7); monitoring of implementation is needed. (Doc. 369, pp. 4-5; Docs. 369-7, 369-8). The transgender identification policy (¶ 8) was finalized and implemented; monitoring is needed to assess its effectiveness at ending cross-gender body searches. (Doc. 369, p. 5; Doc. 369-9).

**days** of the filing of the affidavit whether they waive the disqualification. *See* FED. R. CIV. P. 53(b)(3). (See Doc. 370, p. 15).

### REPORTING BY SECOND CO-MONITOR

Ms. graham shall make an initial report to the Court and the parties indicating Defendants' compliance, partial compliance, or noncompliance with the matters set forth in Parts D, E, and F of Doc. 370 and the related sections of Doc. 384 within **90 days** of the date of this Order. Thereafter, Ms. graham shall submit follow-up reports at intervals to be determined by the Court, which shall address the identified areas of Defendants' partial compliance or noncompliance. Either party shall have **30 days** in which to respond to a report. (See Doc. 370, pp. 13-14).

In addition, for any component of the ordered injunctive relief within the scope of Ms. graham's monitoring duties, if Ms. graham concludes that Defendants are not in compliance, Ms. graham shall report such finding to the parties and to the Court, within **14 days** of such finding. Either party shall have **14 days** in which to respond to a report of noncompliance.

As set forth in Doc. 370, p. 14, the Co-Monitor's duties will include assisting and facilitating the parties' development of remedial plans, including possible further revisions to IDOC's Administrative Directives governing transgender prisoners. Ms. graham may arrange conferences with counsel for the parties and with IDOC staff as appropriate, which may include coordination with the first Co-Monitor. (See Doc 370, p. 14).

The Co-Monitor shall be compensated from the Court's appropriated funds at a

rate not to exceed the hourly rate established under 18 U.S.C. § 3006A for payment of court-appointed counsel (currently $158), plus costs reasonably incurred by the Co-Monitor. 18 U.S.C. § 3626(f)(4); FED. R. CIV. P. 53(g)(2)(B).

The Court shall review the Co-Monitor's appointment every six months following the appointment, to determine whether the services of the Co-Monitor continue to be required during the remedial phase of this matter. 18 U.S.C. § 3626(f)(5).

**IT IS SO ORDERED.**

**DATED:  May 10, 2022**

_____
**NANCY J. ROSENSTENGEL
Chief U.S. District Judge**