IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JANIAH MONROE, MARILYN MELENDEZ, LYDIA HELÉNA VISION, SORA KUYKENDALL, and SASHA REED, individually and on behalf of a class of similarly situated individuals,<br><br>　　　　　Plaintiffs,<br><br>v.<br><br>ROB JEFFREYS, MELVIN HINTON, and STEVEN BOWMAN,<br><br>　　　　　Defendants. | Civil No. 3:18-cv-00156-NJR |

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR FINDING OF CONTEMPT**

In response to Plaintiffs' motion for a finding of contempt, Defendants ask the Court to believe they are exercising reasonable diligence. Dkt. 462. Their assurances are contradicted by the evidence of record and the reports of the Monitors. Defendants report they are "working with" the Monitors, when, in reality, Defendants provide the Monitors with inadequate (at best) data, then dismiss their suggestions as inoperable. Dkt. 462 at 19. This is the same loop the Plaintiff Class has been stuck in for years at the hands of IDOC. For example, when Defendants fail to start or manage a Class member hormone's therapy, she cannot get transferred or request surgery—all because her hormone levels are not in range. Defendants cannot hide in this loop anymore. A finding of contempt is warranted.

**Hormone treatment:** How can Defendants be in compliance with the Court's orders on hormone therapy when fewer than 10 percent of the women in the Class are in range? Dkt. 439 at 6. Defendants do not explain. Dkt. 462 at 3-4. Instead of submitting declarations or reports, Defendants concede that they provided Dr. Harris with "some incomplete or inconsistent records"

(*see id*. at 4-5), then point the finger at the Class members for not taking their medication. *Id.* at 4. The notion that Class members who desperately want gender affirming medications would not take them at a rate of over 90 percent defies common sense.

**Surgery:** Defendants' response on surgery is even worse. Defendants justify not scheduling or providing surgeries to Class members by arguing that Defendants were ordered to "evaluate," and they "evaluated." *Id*. at 5. The Court did not order mere evaluations. The Court ordered much-needed surgeries.[1] Defendants' assertions to the contrary are disingenuous and disrespectful. *See S.E.C. v. First Choice Mgmt. Services, Inc.*, 678 F.3d 538, 543 (7th Cir. 2012) (explaining an order's context "can disambiguate," which includes looking to the "result the order was [] clearly intended to bring about"); *Goluba v. Sch. Dist. of Ripon*, 45 F.3d 1035, 1039 (7th Cir. 1995) ("Where we cannot resolve [an] ambiguity on the basis of the decree's language alone, we look at the evil which the decree was designed to rectify") (internal quotation omitted).

Defendants know better. Exhibit 3 of Defendants' response is an email from Dr. Conway to IDOC Assistant Director Alyssa Williams and IDOC General Counsel Robert Fanning on October 26, 2022. She states: "As you know, *there is considerable urgency* to getting the surgeries underway to treat our patients with significant gender dysphoria and *to comply with the Monroe lawsuit that is expecting that we fully implement our stated pathway to gender affirming surgery*." Dkt. 462-3 at 1 (emphasis added).

Defendants' actions speak louder than their words. Since trial more than a year ago, there is only *one Class member* who has nearly completed the prerequisite electrolysis sessions before

---

[1] As of December 2, five Class members are purportedly in process to be scheduled for pre-surgical consultations with Dr. Schechter. Dkt. 462, under seal Exhibit 4. But Dr. Conway's email does not suggest that the "evaluation" process for other Class members is complete. *Id*.

surgery. Dkt. 446 at 3. Defendants make no excuse for this lack of effort, and this record does not show compliance. Dkt. 462 at 7.

**CQI:** Defendants have falsely asserted that they implemented the CQI program but their own exhibit shows they have not completed it. Dr. Puga's declaration reveals that the "audit instrument" on which the CQI program depends is still a work in progress. *See* Dkt. 462-5. Almost a year ago, Defendants assured the Court that their CQI program was up and running. *See* Dkt. 369 at 3 ("The CQI tool for transgender care has been completed. See attached Exhibit 4. Dr. Puga has begun to implement the audit . . ."). Three months later, Defendants said the same. Dkt. 414 at 4.

**Transfers:** Defendants again argue, this time for transfer, that they were told to "evaluate," not actually *grant*, requests. This defies common sense and ignores that Dr. Harris found that only 6 of 58 transfer requests to Logan had been granted as of August 2022. Dkt. 439 at 12.

Defendants' transfer "chart" (Dkt. 462, under seal Exhibit 6) is a model for lack of reasonable diligence. It highlights that Defendants continue to deny transfers for inappropriate reasons such as hormone levels (for which Defendants are responsible), "psychiatric instability," and violent histories. Dkt. 462 at 9. But Logan houses many cisgender women with violent histories.[2] The chart also shows that Defendants are not re-evaluating Class members. *See* Dkt. 462. Finally, Defendants' newest account of why the transgender women at Logan are in D-Wing, and why the conditions of D-Wing are what they are, is unintelligible. Dkt. 462 at 9-10.

**PRISM:** Like the CQI tool, Defendants' account of the current state of the PRISM program essentially says, "we finalized and implemented it," Dkt. 462 at 10, "but it's not our fault it isn't

---

[2] 480 of the 817 women at Logan in October were incarcerated for murder or a Class X felony. Illinois Department of Corrections, Quarterly Report October 1, 2022, Table 2, at https://www2.illinois.gov/idoc/reportsandstatistics/Documents/IDOC%20Quarterly%20Report_October%202022.pdf.

finalized and implemented," *see id*. at 11. Dr. Reister admits that "the program was unable to have daily unit meetings." Dkt. 462-8 at 1 (¶¶ 3-4). Dr. Reister also says there are "currently no individuals on the wait list" for PRISM. *Id*. at 2-3 (¶ 12). But this indicates a problem of Defendants, not with Class member interest in a program that provides some measure of safety for its participants *and* good time credits—albeit without the programming Defendants promised. Dkt. 462 at 10.

**Commissary and provision of gender-affirming items:** Defendants have failed to provide gender-affirming items to the Plaintiff Class and do not pretend otherwise. Although they have housed thousands of cisgender women for decades, Defendants feign inability to buy bras and say that they have decided to make them themselves. Dkt. 462 at 11; Dkt. 454 at 3. Defendants purport to be "confused" by Plaintiffs' straightforward position that a "gender-neutral commissary is not the same as a gender-affirming commissary," but it is Defendants who ignore that gender-affirming items are *medically necessary* for social transition, not a matter of preference. *See* Dkt. 462 at 11-12. And after a year-and-a-half of failing to comply with this simple order, Defendants now have willfully regressed. Class members report that gender-affirming items that were available earlier this year are no longer so. This is the opposite of reasonable diligence.

**Searches and IDs:** Defendants present two separate strawman arguments to excuse lack of compliance with the Court's order to avoid cross-gender searches. First, Defendants argue there is "no provision of the Court's orders directing IDOC to begin using the scanners, let alone within a particular time frame." Dkt. 462 at 13. But Defendants voluntarily acquired these scanners a year ago to alleviate issues with cross-gender searches yet, inexplicably, are not using them. *Id*. Second, Defendants twice made contracts with their unions that make order-compliant searches *more* difficult. *See* Dkt. 462-9, 462-10. These actions and inactions do not show reasonable diligence.

As to IDs, Defendants side-step the evidence that their policy creates risks for Class members and say that all they were ordered to do was implement the policy they chose. Dkt. 462 at 13. The Court did not order Defendants to implement a policy that puts Class members at risk. And Defendants reject out of hand the Monitor's proposals because they might require new technology. *Id*. This, too, weighs in favor of a contempt finding.

**Showers:** Defendants provide no evidence of compliance and tellingly challenge the sufficiency of the evidence against them, arguing that Monitor graham's findings about the lack of private showers are "merely" Class member reports. Dkt. 462 at 14. The evidence doesn't lie: a half-wall beside a toilet stall does not create a private shower. Dkt. 454 at 2.

**Training:** Defendants provide no evidence to support their claim that "[t]here has been" all sorts of training. Dkt. 462 at 14. Yet Defendants merely promise to work with The Moss Group "to provide training," instead of stating that such training already has been provided. Dkt. 462 at 15. Defendants said the same thing in their status report last year. *See* Dkt. 369 at 4 ("IDOC has also contracted with The Moss Group to provide future trainings directed to transgender issues at Logan Correctional Center as well as in IDOC men's facilities"). As to training for persons in custody at Logan, Defendants are silent. Defendants do not cite, let alone provide evidence, of anything The Moss Group has done for IDOC.

\* \* \* \* \*

In sum, Plaintiffs identified more than a sufficient basis to warrant a finding of contempt for Defendants' lack of reasonable diligence to comply with the Court's Orders in each category detailed above. Defendants' Response only solidifies the need for urgent relief by the Court.

Dated: December 12, 2022

**Brent P. Ray**
King & Spalding LLP
110 N. Wacker Drive, Suite 3800
Chicago, IL 60606
Telephone: (312) 995-6333
Facsimile: (312) 995-6330
*bray@kslaw.com*

**Abby L. Parsons**
King & Spalding LLP
1100 Louisiana Street, Suite 4100
Houston, TX 77002
Telephone: (713) 751-3294
*aparsons@kslaw.com*

**Thomas E. Kennedy III**
**Sarah Jane Hunt**
Kennedy Hunt P.C.
906 Olive Street, Suite 200
Saint Louis, MO 63101
Telephone: (314) 872-9041
*tkennedy@KennedyHuntLaw.com*
*sarahjane@KennedyHuntLaw.com*

Respectfully submitted by:

*/s/* Camille E. Bennett
**Camille E. Bennett**
**Michelle T. García**
Roger Baldwin Foundation of ACLU, Inc.
150 North Michigan Avenue, Suite 600
Chicago, IL 60601
Telephone: (312) 201-9740
Facsimile: (312) 288-5225
*cbennett@aclu-il.org*
*mgarcia@aclu-il.org*

**Amelia H. Bailey**
**Sam G. Rose**
Kirkland & Ellis LLP
300 North LaSalle Street
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
*amelia.bailey@kirkland.com*
*sam.rose@kirkland.com*

*Attorneys for Plaintiffs*

6

## **CERTIFICATE OF SERVICE**

I certify that on December 12, 2022, I electronically filed the foregoing document and any exhibits with the Clerk of this Court by using the CM/ECF system, which will accomplish service through the Notice of Electronic Filing for parties and attorneys who are Filing Users.

By: */s/* Camille E. Bennett