IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JANIAH MONROE, MARILYN MELENDEZ, LYDIA HELÉNA VISION, SORA KUYKENDALL, and SASHA REED, individually and on behalf of a class of similarly situated individuals,<br><br>Plaintiffs,<br><br>v.<br><br>ROB JEFFREYS, MELVIN HINTON, and STEVEN BOWMAN,<br><br>Defendants. | Civil No. 3:18-cv-00156-NJR |

### PLAINTIFFS' RECOMMENDATIONS FOR MODIFICATIONS TO PRELIMINARY INJUNCTIONS

Plaintiffs, in accordance with the Court's Order (Dkt. 453) submit the following recommendations for modifications to the preliminary injunctions. As explained in Plaintiffs Motion for a Finding of Contempt, Defendants have missed most of the Court's deadlines. *See* Dkt. 455. Moreover, as set out in the Motion, in class member declarations, and in findings from the Monitors, Defendants' failure to provide constitutionally adequate care persists and Class members continue to suffer. *See, e.g.,* Dkts. 455, 477, 479-481, 484, 468-474, 439, 444, 460. After years, Defendants have still not adopted and implemented appropriate policies and practices to ensure Class members receive constitutionally adequate care. Class members cannot be asked to wait for Defendants any longer, especially for relief that may never come absent further Court intervention.

First, to address Defendants' non-compliance, Plaintiffs propose a new scheduling order with new deadlines (Exhibit 1). Second, Plaintiffs propose a new Administrative Directive for the Evaluation, Treatment and Correctional Management of Transgender Offenders (Exhibit 2)

1

for Defendants to adopt, after consultation with the Monitors. Plaintiffs recognize the Court's stated constraints on ordering sweeping revisions to the existing Administrative Directive (Dkt. 383 at 67-68) and therefore request that Defendants be ordered to review this proposed Administrative Directive with the Monitors and submit a revised Administrative Directive. In support of these recommendations, Plaintiffs state the following:

I.     **Administrative Directive**

The initial report by julie graham indicates that there is confusion within IDOC about its policies and procedures for providing gender-affirming care for Class members. *See* Dkt. 444 at 5 ("There is some degree of confusion at IDOC. Depending who was asked questions, different answers would emerge."). To provide clarity, Defendants should adopt the Administrative Directive, Exhibit 2, which describes how Defendants should implement gender-affirming care including maintaining databases, providing medical care, and training staff, among other issues. At the Court's invitation, Plaintiffs previously proposed amendments to the existing Administrative Directive post-trial (Dkt. 328 at 21, 331 at 13) and Exhibit 2 supplements and amends those proposals based upon the past year-and-a-half of experience with Defendants' failures to comply with the Court's orders, discussions with Plaintiffs' experts, and Class member reports. A redline version of the Administrative Directive which reflects changes is attached at Exhibit 3.

To implement the Administrative Directive, as in August 2021, Plaintiff recommends that Defendants designate a Transgender Medical Lead, an individual responsible for overseeing all medical decisions, and a Transgender Mental Health Lead, an individual responsible for overseeing mental health decisions for Class members. It was clear in August 2021, and remains

clear today, that Defendants lack the resources to meet their constitutional obligations to provide care to the Class without additional trained and qualified personnel.

## II. Transgender Information Databases

Dr. Harris recommended "all parties to develop a more efficient method of tracking compliance" because Defendants' records are disorganized, incomplete, and have discrepancies. *See* Dkt. 439 at 5. As such, Plaintiffs recommend that Defendants have two centralized databases, which track both gender-affirming medical care (diagnosis, dates and results of hormone therapy, gender-affirming therapy, and surgeries, and names of current medical providers) and accommodation requests by transgender offenders (searches, commissary, showers, and transfers). *See* Exhibit 2, II. G. Transgender Information Databases. Besides a failure to keep centralized records, Dr. Harris reported transparency problems because IDOC did not share with the Monitors any information about Class members who requested surgery, the reasons for denial, and the timing for reconsideration. *See* Dkt. 439 at 5. To increase transparency and compliance during the pendency of this case, the Court should order Defendants to share the databases or the underlying information with the Monitors, the Court and Plaintiff's counsel each month. *See* Exhibit 1.

## III. Gender-Affirming Care

### a. Hormone Therapy

Subject to the review and approval of Dr. Harris, Plaintiffs propose that Defendants implement a Gender-Affirming Hormone Therapy Policy based on WPATH best practices (Exhibit 4). A redline version of the policy which reflects changes to account for Defendants' failure to comply with Court's orders, discussions with Plaintiffs' experts, and Class member reports is attached as Exhibit 5. Additionally, by end of January 2023, Defendants must provide

baseline blood work for Class members not in range, adjust dosages and schedule meetings with an endocrinologist, and begin hormone therapy for Class members newly tested. *See* Exhibit 1.

    b.  **Gender-Affirming Surgery**

Because Defendants, purportedly, have scheduled only five Class members for consultations for surgery (Dkt. 462-4) and Dr. Schechter has limited availability, Defendants must identify additional surgical providers for Class Members and their earliest availability for surgeries. *See* Exhibit 1. By February 8, Defendants must schedule consultations for each approved Class member for surgery. Exhibit 1.

Defendants indicate in an exhibit to their response that Joliet Treatment Center will provide post-operative care (Dkt. 462-3), but if JTC cannot provide care to all approved class members, then Defendants must identify additional post-operative locations. Defendants must write letters of recommendation for any class member not approved for surgery and provide written decisions on electrolysis to class members. Exhibit 1.

    c.  **Transfers to Logan, D-Wing, and PRISM**

Social transition is necessary medical care that should not be dependent on the Defendants' inability to provide or monitor hormones; some Class members do not want or cannot take hormones. Social transition also should not be dependent on some Class Members' purportedly violent histories; all persons in IDOC are there because they have been committed to serve a sentence for some offense. The default location for transgender women should be Logan Correctional Center, which has capacity to house Class members[1] and is accustomed to dealing

---

[1] According to IDOC's survey conducted in 2019, Logan has operational capacity of 1,667 (including beds, health care, etc.) and has total population of 1,071. *See* Illinois Department of Corrections, Logan Correctional Center, https://www2.illinois.gov/idoc/facilities/Pages/logancorrectionalcenter.aspx (last visited Dec. 13, 2022).

with offenders with violent histories. By February 1, 2023, Defendants must reconsider each of the 52 denials and provide written basis for any decision. Exhibit 1. By January 13, Defendants must place each class member housed in Logan's D-wing in the general population with the same privileges afforded to cisgender women (e.g., out time, jobs, etc.) absent a specific security reason for doing so. *Id.* In the meantime, Defendants must follow julie graham's recommendation and the Court's prior order, by implementing PRISM at Centralia, with programming and daily unit meetings, and admit Class members who have requested to be transferred to PRISM.

    d. **Gender-Affirming Items**

Gender-affirming items are necessary medical care for Class members. By February 15, Defendants should provide all Class members a kit of basic gender-affirming items (i.e., items that correspond with a particular gender) to include grooming, hair removal, and hygiene items. *See* Exhibit 1; *See* Exhibit 2,II. H. 4. Gender Affirming Items. Besides the kit, Defendants should offer Class members gender-affirming undergarments provided to cisgender offenders of their gender (i.e., transgender women should be offered the same underwear and bras as cisgender women). *See* Exhibit 2, II. H. 4. Gender Affirming Items. Defendants should replenish any item in the kit that has expired or been used free of charge on an on-going basis. Exhibit 1. Gender-affirming items cannot be dependent on Defendants' inability to stock and restock commissaries and the arbitrary decisions of medical and mental health providers who have shown themselves unwilling to recognize or understand Class members' needs; they must be provided free of charge as medical care necessities.

### e. Searches

Defendants cannot conduct cross-gender searches of Class members and must use the five acquired scanners. By January 6, 2023, Defendants must certify that each IDOC facility that houses Class members will conduct searches by persons of the Class member's requested gender or use a scanner. Exhibit 1. Defendants should transfer any Class Members to facilities that have certified appropriate persons to conduct searches or use of a scanner by January 31. *Id.*

### f. IDs

Plaintiffs support julie graham's recommendation that Defendants should include a QR code or scan code on IDS to identify Class Members (Dkt. 450 at 2) but recognize Defendants' infrastructure problems. In the meantime, Class members should have option to choose whether they want a gender identification added to their ID. *See* Exhibit 2, II. I. 1. Identification. For Class Members that do not want a gender identification on their ID, Defendants should consult the Transgender Accommodations Database for information about searches, commissary and private showers. *See id.*

### g. Private Showers

Defendants must certify that each IDOC facility that houses at least one Class member has a private shower for their use by January 6, 2023. Exhibit 1. If Defendants cannot certify that an IDOC facility has a private shower, it must transfer the Class member to a facility where it has certified a private shower. *Id.*

## IV. Education and Monitoring of Staff

### a. Training

Defendants must file a copy of the Moss Group training provided to staff and include information about the date(s) of trainings, the staff identities who attended those trainings, and any test results by January 6, 2023. Exhibit 1. By February 1, 2023, Defendants will host a

6

training of all incarcerated persons at Logan to be created by the Moss Group, which has been approved by monitor Julie graham. *Id.* Defendants must require that all staff participate in Gender Non-Conforming Offender training before they begin working at IDOC and Defendants must provide Gender Non-Conforming Offender annual training to staff and Class members. *See* Exhibit 2, II. N. Training and Mentoring. Such trainings should be approved by monitor julie graham or their successor. *Id.* Defendants must also institute additional training for medical and mental health providers as recommended by the Monitors. *Id.*

### b. CQI

By February 1, 2023, Defendants must certify to the Court that they have a working compliance tool or hire a third-party vendor to create one. Exhibit 1. By February 8, if Defendants have a working compliance tool, they must provide the monitor and Plaintiffs' counsel a copy of the tool for inspection and sample audit results for inspection. *Id.*

### c. Staff Discipline

Class members have declared that Defendants' correctional officers and staff use discriminatory language, misgender them, and even threaten to discipline them for requesting accommodations. *See* Dkts. 467; 478. julie graham's report recommends that Defendants treat this behavior as unprofessional conduct because it violates law and Court orders. *See* Dkt. 444 at 15. As such, Defendants must discipline staff for engaging such unprofessional conduct. *See* Exhibit 2, I. DN. Staff Discipline. To ensure compliance, Defendants must provide julie graham all grievance reports from Class members about IDOC staff and file a copy of any investigation or disciplinary action taken against staff within two weeks of filing a grievance report. Exhibit 1.

WHEREFORE, Plaintiffs respectfully requests that this Court consider the above recommendations and Exhibits 1-5 to modify the preliminary injunctions.

Dated: December 14, 2022   Respectfully submitted by:

/s/ *Camille E. Bennett*

| | |
|---|---|
| **Amelia H. Bailey** | **Camille E. Bennett** |
| **Sam G. Rose** | **Michelle T. García** |
| KIRKLAND & ELLIS LLP | ROGER BALDWIN FOUNDATION |
| 300 North LaSalle Street | OF ACLU, INC. |
| Chicago, IL 60654 | 150 North Michigan Avenue, Suite 600 |
| Telephone: (312) 862-2000 | Chicago, IL 60601 |
| Facsimile: (312) 862-2200 | Telephone: (312) 201-9740 |
| *amelia.bailey@kirkland.com* | Facsimile: (312) 288-5225 |
| *sam.rose@kirkland.com* | *cbennett@aclu-il.org* |
| | *mgarcia@aclu-il.org* |
| | |
| **Brent P. Ray** | **Abby L. Parsons** |
| KING & SPALDING LLP | KING & SPALDING LLP |
| 110 N. Wacker Drive, Suite 3800 | 1100 Louisiana Street, Suite 4100 |
| Chicago, IL 60606 | Houston, TX 77002 |
| Telephone: (312) 995-6333 | Telephone: (713) 751-3294 |
| Facsimile: (312) 995-6330 | *aparsons@kslaw.com* |
| *bray@kslaw.com* | |

**Thomas E. Kennedy III**
**Sarah Jane Hunt**
KENNEDY HUNT P.C.
906 Olive Street, Suite 200
Saint Louis, MO 63101
Telephone: (314) 872-9041
*tkennedy@KennedyHuntLaw.com*
*sarahjane@KennedyHuntLaw.com*

*Attorneys for Plaintiffs*

## **CERTIFICATE OF SERVICE**

I certify that on December 14, 2022, I electronically filed the foregoing document and any exhibits with the Clerk of this Court by using the CM/ECF system, which will accomplish service through the Notice of Electronic Filing for parties and attorneys who are Filing Users.

By: /s/ Camille E. Bennett