IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS DIVISION

| | |
|---|---|
| JANIAH MONROE, MARILYN MELENDEZ, LYDIA HELENA VISION, SORA KUYKENDALL, and SASHA REED, | ) ) ) ) |
| Plaintiffs, | ) ) |
| - vs- | ) No. 18-156-NJR ) |
| ROB JEFFREYS, MELVIN HINTON, and STEVEN BOWMAN, | ) ) ) ) |
| Defendants. | ) |

**DEFENDANTS' RESPONSE TO SEALED DECLARATIONS**

The Defendants, ROB JEFFREYS, MELVIN HINTON, and STEVEN BOWMAN (sued in their official capacities only) by and through their attorney, Kwame Raoul, Attorney General for the State of Illinois, provide their responses to the sealed declaration filed by Plaintiffs.

**Notes**

To protect the confidentiality of class members, when referencing the individual class members Defendants will refer to them by the exhibit letter of their declarations. For example: the individual whose declaration was filed as Exhibit A will be referred to as Plaintiff A.

In accordance with this Court's orders, all referenced exhibits will be filed under seal.

**Background and Introduction**

Plaintiffs moved for a finding of contempt on November 14, 2022. Although Plaintiffs represented that declarations would be forthcoming, they left the details on the declarations vague and did not provide any particular details concerning the facts presented in their motion. Beginning December 7, 2022, Plaintiffs filed a number of declarations under seal. [Docs. 468-474]. Plaintiffs filed additional declarations on December 13, and then another one was filed on

December 14, 2022. [Docs. 479-481 & 484]. The declarations do not contain the class member's legal name or inmate number and only refer to them by their preferred name, which is not simple to track or always easy to discern. Plaintiffs are aware that IDOC relies upon legal names and identification numbers of the nearly 30,000 individuals in custody to ensure that they are able to find information on the correct person. In addition, the most recent declaration on file states it is by "Zoe Kravitz"—which is a celebrity's name and does not match any names on IDOC transgender reports.

Furthermore, many of the assertions in the declarations are vague as to time, location, and involved individuals. Given the vagueness, not all assertions could be investigated and not within the limited time prior to the hearing date of December 15, 2022, that Plaintiff requested. Defendants were ordered to respond to Plaintiffs' declarations on or before December 29, 2022. [Doc. 494]. And, following a one-week extension of time, the deadline was moved to January 5, 2023. Responses are below, though many of the assertions are still too vague to be investigated.

**Overarching complaints regarding hormone values**

One of the themes raised in several of the declarations concerns decisions not to transfer class members whose hormones are not in range. This relates to many concerns. First, there is a concern for sexual safety because there is no assurance that male genitalia is no longer functional while on therapeutic hormones. When hormones are in range, it reduces a risk for sexual acting out and reduces any risk of sexual contact that may result in pregnancy for a cisgender female. This marker is also used to gauge the seriousness of the gender journey. There have been instances where individuals who are not serious about their transition engage in hormone non-compliance. IDOC and its committee members are cautious about the seriousness of the

individual patient's intentions given the limited history of transfers in prison for incarcerated transgender prisoners.

The discussion of hormones is not intended to be a barrier, and prisoners are re-presented for transfers as their hormone levels are brought within range. However, at least one class member who was transferred to Logan Correctional Center began to refuse labs to check hormones and other matters were raised that concerned staff at the facility. Although they were resolved without the need to transfer the class member, it was a learning experience for the facility and IDOC administrators.

### Response to Exhibit A [Doc. 468]

Plaintiff A submitted a two-page declaration regarding a rape that occurred at Centralia Correctional Center in March 2022. Following her report of the rape, Plaintiff A attests that she felt tricked to be moved to Graham Correctional Center, a facility that houses only men. However, on October 18, 2022, Plaintiff A was transferred to Logan Correctional Center and feels safer because she is living with other women.

The Transgender Administrative Committee (TAC) received a transfer request from Plaintiff A. Ms. Dulle from Centralia Correctional Center presented Plaintiff A's transfer request at the TAC meeting on March 15, 2022. According to the meeting notes, the only concern had to do with anxiety that prevented her from leaving her cell to participate in the PRISM program. There was concern over additional anxiety with the transfer, but the decision was made to move forward with an interview. On March 18, 2022, Dr. Puga sent a letter to Plaintiff A acknowledging the transfer request and indicating that an interview would be forthcoming. Exhibit 2.

Plaintiff A opted out of continuing with the PRISM program. [Doc. 465]. Accordingly, Plaintiff was moved from the location of the program. Plaintiff A was interviewed by Dr. Puga and expressed a prior rape in her history; however, the recency and additional information presented in the declaration at issue were not brought up to Dr. Puga. In any event, Plaintiff A was moved to Logan Correctional Center in October 2022 and still remains at that facility.

### Response to Exhibit B [Doc. 469].

Plaintiff B filed a declaration regarding lack of commissary items at the Joliet Treatment Center. There are currently seven transgender prisoners at the JTC, two of whom have high escape levels. Defendants do not have sufficient information to address the complaint that Plaintiff B was fondled in October 2022—there are no particular date and no officer names listed in the declaration. However, to the extent Plaintiff B is unaware of her ability to request a female conduct a physical search, IDOC hopes to remedy the lack of information by sending an informational pamphlet, as previously described.

As already provided to the Court, IDOC continues to work to obtain gender-affirming commissary items, including appropriate makeup, for class members. The new method to distribute items will hopefully address Plaintiff B's complaints.

### Response to Exhibit C [Doc. 470]

Plaintiff C, who is a transgender female in IDOC custody, claims that she has received hormone therapy for approximately four years but that her hormones are out of range and that her testosterone level is too high. [Doc. 470, ¶¶ 2-5]. Plaintiff C also claims that her testosterone blocker expired in October 2022 and she was told she would have to wait. [*Id.*, ¶ 6].

Yet, the records of labs collected at the beginning of November 2022 show that Plaintiff C's testosterone and estradiol levels are in the range set by this Court. Exhibit 3. This Court ordered

that hormone levels for transgender females be less than 50 nanograms/deciliter and estradiol between 100-200 picograms/milliliter. Here, Plaintiff C's November 2022 labs show estradiol at 126 PG/ML and testosterone at 31 ng/dL. Later that month, on November 23, 2022, additional labs were drawn, and the estradiol range was at 146 PG/ML and testosterone was at 6 ng/dL. Rather than have a testosterone level that is too high, her testosterone level is quite low.

Plaintiff C's declaration also represents that she had been denied access to a razor at two facilities and also about a week prior to the declaration. There is no specific information regarding the circumstances of the razor denial. At least around that time, Plaintiff C was on a crisis watch. Plaintiffs' counsel reached out to the undersigned because there was concern that Plaintiff C was in crisis but not placed on an actual crisis watch and could engage in self-harm. If the reason that Plaintiff C was denied a razor was due to a potential crisis, then any such claims should be considered in light of that fact.

### Response to Exhibit D [Doc. 471]

Plaintiff D is at Centralia Correctional Center in the PRISM program. Plaintiff D complains about the lack of gender-affirming commissary items and desires a move to a female institution. According to TAC Meeting Minutes from October 18, 2022, Plaintiff D was considered for transfer. Exhibit 4. Plaintiff D was recommended for removal from the PRISM program due to multiple disciplinary issues. It was also noted by Ms. Dulle, who presented at the TAC, that Plaintiff D was disruptive in groups and monopolized the conversation. It was also recognized at that time that the IDOC Transfer Coordinator, Doug Stephens, had a transfer stop on file. Regardless, a lengthy discussion was summarized from October 2022 that showed the committee members and others looked at Plaintiff D's individual circumstances and needs in addressing her living situation.

**Response to Exhibit E [Doc. 472]**

Plaintiff E declares that she is a transgender woman who was denied requested hormone therapy. [Doc. 472, ¶¶ 1, 7, 9]. Plaintiff E claims that she was denied a transgender ID card and the ability to use her preferred name on mail. [*Id.*, ¶ 10].

As an initial matter, IDOC prisoners are required to use their legal names and prisoner ID numbers throughout the system. Generally, Illinois law states that an individual convicted of a felony may not change their name unless they are pardoned or 10 years have passed since completion and discharge from their sentence, though there are other restrictions under the law. 735 ILCS 5/21-101(b).

In addition, this individual has been seen by mental health staff and has <u>not</u> been diagnosed with gender dysphoria, but rather with Transvestic Disorder, which is a distinct diagnosis. In accordance with the diagnosis, no hormones have been prescribed nor a transgender identification card given.

**Response to Exhibit F [Doc. 473]**

Plaintiff F is a transgender female at Danville Correctional Center. Plaintiff F contends that her electric shaver is not as good as her prior razor, that she has been unable to get commissary items, and that she has requested a transfer to Logan Correctional Center but has received no response.

Again, Defendants anticipate that commissary issues with receiving gender-affirming items will improve going forward. As for her complaints regarding a transfer, Plaintiff F was denied a transfer request because she does not wish to take hormones. Exhibit 5.

**Response to Exhibit G [Doc. 474]**

Plaintiff G is a transgender female at Pontiac Correctional Center. Contrary to Plaintiff G's assertions that she is denied job assignments since coming out as transgender, IDOC records show that Plaintiff G has had numerous job assignments, though even before 2021 they have only lasted for a few days. Exhibit 6 (relevant positions highlighted).

In addition, Plaintiff G is housed in Protective Custody at Pontiac Correctional Center. According to documentation from November 2021, Plaintiff G was presented to the TAC for a transfer request, but withdrew the request until after she could have surgery. Exhibit 7, Bates 401748; Exhibit 8. Another spreadsheet shows Plaintiff G had been reviewed by the THAW Committee and was to be presented again at a later date. [Doc. 415]. It is unclear based upon the information produced in this matter whether the second review occurred; however, she may always be presented for surgery again.

Plaintiff claims that requests for crisis are met with shakedowns and placement on suicide watch; however, mental health professionals determine whether to place a prisoner on suicide watch and what property they may have available to them while on crisis.

**Response to Exhibit H [Doc. 479]**

Plaintiff H is a transgender prisoner in the PRISM program. She acknowledges that her release date is in March 2023, which is too soon for IDOC to provide her gender-affirming surgery in the form of the vaginoplasty that she seeks. Although Plaintiff H declares that she has requested gender-affirming surgery since April 2020, IDOC had not been fully set up for surgery until just recently. Now, the first three patients are scheduled for gender-affirming surgery and post-operative care. Due to the timing, Plaintiff H is not a candidate for IDOC to provide the surgery and care required.

Plaintiff H was referred for an endocrinology consult with the UIC Clinic, and her labs were titrated. She was ordered a pituitary MRI by Dr. Katz and Plaintiff H was to be reevaluated in 3 months. Exhibit 9.

Plaintiff H was considered for a transfer to Logan Correctional Center in July 2022, but was denied at that time. Exhibit 10.

As to her complaints regarding receipt of a gaff, those are not available on commissary. Gaffs, binders, and other medical items are available by medical order only. This is not an issue that may be fixed as part of the commissary providing gender-affirming items.

Plaintiff H's declaration also explains that she has a testicular mass that is painful to her and that was supposed to be removed for medical reasons. Unfortunately, the underlying medical issue is outside of this suit as it is unrelated to gender dysphoria.

### Response to Exhibit I [Doc. 480]

Plaintiff H is one of the approximately 14 transgender individuals incarcerated at Pinckneyville Correctional Center (as of December 1, 2022). She was initially presented for a transfer request in May 2021. She was denied at that time because she was new to hormones, not consistently taking them, and had received multiple tickets.

She claims she has requested surgery but it is not clear whether that request has been communicated to the THAW Committee. Defense counsel will follow up on that aspect of her declaration.

### Response to Exhibit J [Doc. 481]

Plaintiff J is a class member at Pontiac Correctional Center. Plaintiff J has filed documents in this matter, previously to which Defendants responded. [*See* Doc. 414]. It is believed that the declaration of Plaintiff J also refers to incidents of staff conduct which were also reported by co-

Monitor julie graham in her second update. [Doc. 460]. These allegations were investigated by Pontiac Correctional Center and not found to meet the standards for a PREA allegation. [Doc. 492, p. 2].

### Response to Exhibit K [Doc. 484]

Plaintiff K is a class member at Sheridan Correctional Center. As of December 1, 2022, there was only one transgender prisoner housed at Sheridan. Offender 360 lists Plaintiff K with the Gender Identity Designation of "F" for female.

Contrary to Plaintiff K's declaration, she has been allowed to have both job assignments as well as educational programming at Sheridan. Exhibit 11. She is not designated as a single cell prisoner, meaning she is able to have cellmates. Further, the Warden of Sheridan Correctional Center previously provided a declaration attesting that a transgender individual in custody is allowed a private shower in the health care unit, which has a shower in private room with a solid door with no window and a full shower curtain. [Doc. 400-2, p. 36, ¶ 3]. Plaintiff K should utilize this accommodation.

Although Plaintiff K desires a transfer, it appears from transportation entries that she going on regular medical furloughs outside of the facility, often returning within a few hours of her appointment. Exhibit 12. It would make sense that a medical hold would be in place to keep her near the treating provider. Regardless, a decision by medical staff that holds a person from being transferred should be honored until that hold may be removed.

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | ROB JEFFREYS, MELVIN HINTON, and STEVEN BOWMAN, |
|  | Defendants, |
| Lisa A. Cook, #6298233<br>Assistant Attorney General<br>500 South Second Street<br>Springfield, Illinois  62701<br>(217) 785-4555 Phone<br>(217) 524-5091 Fax<br>Email: lisa.cook@ilag.gov | KWAME RAOUL, Attorney General<br>State of Illinois<br><br>Attorney for Defendants,<br><br>By:   s/Lisa A. Cook<br>          Lisa A. Cook |

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS DIVISION**

| | |
|---|---|
| JANIAH MONROE, MARILYN MELENDEZ, LYDIA HELENA VISION, SORA KUYKENDALL, and SASHA REED, | ) ) ) ) |
| Plaintiffs, | ) ) |
| - vs- | ) No. 18-156-NJR ) |
| ROB JEFFREYS, MELVIN HINTON, and STEVEN BOWMAN, | ) ) ) |
| Defendants. | ) ) |

**CERTIFICATE OF SERVICE**

I hereby certify that on January 5, 2023, the foregoing document, **DEFENDANTS' RESPONSE TO SEALED DECLARATIONS**, was electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

| | |
|---|---|
| Abby L. Parsons | aparsons@kslaw.com |
| Sarah Jane Hunt | sarahjane@tkennedylaw.com |
| Thomas E. Kennedy, III | tkennedy@tkennedylaw.com |
| Brent P. Ray | bray@kslaw.com |
| Samantha G. Rose | sam.rose@kirkland.com |
| Amelia Bailey | abailey@kirkland.com |
| Camille Bennett | cbennett@aclu-il.org |

And all other counsel of record

        s/ Lisa A. Cook
        Lisa A. Cook, #6298233
        Assistant Attorney General
        Office of the Attorney General
        500 South Second Street
        Springfield, Illinois   62701
        (217) 785-4555 Phone
        (217) 524-5091 Fax
        Email: lisa.cook@ilag.gov