



THE MOSS GROUP, INC.

*Experienced Practitioners Committed to Excellence in Correctional Practice*

# Effective Management and Supervision of Transgender & Gender-Incongruent Individuals in Custody







Monroe, et al. v. Rauner, et al., (18-156) Document No. 408180


# Training Objectives

**❶** Differentiate between key concepts and terminology related to gender identity.

**2** Build on historical context, national best practices, and local policy for safely housing transgender and gender incongruent individuals.

**3** Review local and national data to support a culture of respect and safety that considers pathways, experiences, and nuances of transgender individuals.

**4** Explore operational practices and policies specific to the management and supervision of transgender individuals.

**❺** Build on professionalism and communication skills to apply learned techniques in scenario-based activities.

Monroe, et al. v. Rauner, et al., (18-156) Document No. 408181



Monroe, et al. v. Rauner, et al., (18-156) Document No. 408182



# About this Training



This is a required training for all Logan Correctional Center staff to ensure understanding and consistent adherence to agency values, expectations, and practices specific to the effective management and supervision of transgender inmates.

This training does not serve to strengthen or convert political viewpoints, religious beliefs, or personal opinions.

Monroe, et al. v. Rauner, et al., (18-156) Document No. 408183





# Unit 1: The Basics

*An Overview of Transgender Terminology*

Monroe, et al. v. Rauner, et al., (18-156) Document No. 408184



*The language we use helps to create a culture of safety and respect.*



Monroe, et al. v. Rauner, et al., (18-156) Document No. 408185



# Word Match Activity

| | | | |
|---|---|---|---|
| Sex | Intersex | Assigned Sex or Birth Sex | Gender |
| Gender Identity | Gender Expression | Gender Incongruent | Gender Dysphoria |
| Sexual Orientation | Non-binary | Cisgender | Questioning |
| Transgender Man | Transgender Woman | Transgender Administrative Committee | Transgender Health and Wellness Committee |

Monroe, et al. v. Rauner, et al., (18-156) Document No. 408186





Monroe, et al. v. Rauner, et al., (18-156) Document No. 408187

# Dimensions of Identity



*Source:* Allegheny County, Pennsylvania, DHS LGBTQ Community Training Team/SOGIE Project Team.

Monroe, et al. v. Rauner, et al., (18-156) Document No. 408188

The Moss Group, Inc.



# Sex and gender are the same thing.

Monroe, et al. v. Rauner, et al., (18-156) Document No. 408189





# Sexual orientation and gender identity are the same thing.

Monroe, et al. v. Rauner, et al., (18-156) Document No. 408190



**To be considered transgender an individual must have gender-affirming surgery.**

Monroe, et al. v. Rauner, et al., (18-156) Document No. 408191



## Social Emotional Transition

affirming name + pronouns

clothing + finding support +

self-identification

## Medical Transition

hormone replacement therapy +

affirming surgeries + hormone

suppressing medication

Monroe, et al. v. Rauner, et al., (18-156) Document No. 408192



THE MOSS GROUP, INC.
*Experienced Practitioners Committed to Excellence in Correctional Practice*

# Unit 2: The Landscape
*An Overview of National Trends, Historical Context, and IDOC's Path Forward*

Monroe, et al. v. Rauner, et al., (18-156) Document No. 408193



# National Perspective



- Hot Topic Nationally

- Public Divide

- State Laws and Policies

**ALL GENDER RESTROOM**



Hello
my name is

my pronouns are



LPGA



THE **TRANSGENDER** TIPPING POINT

America's next civil rights frontier
BY KATY STEINMETZ



NCAA

Monroe, et al. v. Rauner, et al., (18-156) Document No. 408194



# Prisons are a microcosm of society—yet exacerbated.

| Psychiatric Needs | Substance Abuse | Infectious Diseases | Crime & Violence |
|---|---|---|---|
| Racism | Sexual Orientation | Access to Medical Care | Gender Identity |

Monroe, et al. v. Rauner, et al., (18-156) Document No. 408195

# Evolving Legal Landscape



Kosilek v. Spencer (1st Cir. 2014)

- MADOC ordered to provide sex reassignment surgery to treat Kosilek's severe gender identity disorder. En banc panel reverses decision.

Quine v Beard (ND CA 2015)

- CDCR acknowledges sex-reassignment surgery medically necessary for Shiloh Quine.

Edmo v Corizon (9th Cir. 2020)

- Idaho Department of Corrections must provide medically necessary gender confirmation surgery to Adree Edmo.

Monroe, et al. v. Rauner, et al., (18-156) Document No. 408196

# Evolving Legal Landscape



Iglesias v Federal BOP (SD IL 2022)

- BOP ordered to provide gender affirming surgery—facial feminization surgery—to Cristina Iglesias.

Chandler v CDCR (ED CA – filed 2021)

- The Women's Liberation Front (WoLF) filed a lawsuit on behalf of five incarcerated women challenging CDCR's placement of men who identify as "transgender, nonbinary, or intersex" into a women's correctional facility.

Williams v Kincaid (4th Circ. 2022)

- The Americans with Disabilities Act protects transgender people with gender dysphoria from discrimination on the basis of disability.

Monroe, et al. v. Rauner, et al., (18-156) Document No. 408197



# Historical IDOC Policy Context

In 2003, IDOC developed policy for evaluating transgender offenders as they enter the prison system.

In 2011-12, the department established a Gender Identity Disorder Committee (GIDC), which addresses placement, security concerns and hormone therapy treatment plans, if any, for prisoners.

Following a 2019 injunction, the GIDC divided into the Transgender Administrative Committee and Transgender Health and Wellness Committee.

April 1, 2021, IDOC adopted two new Administrative Directives: 04.03.104, entitled "Evaluation, Treatment and Correctional Management of Transgender Offenders" and 05.01.113 "Searches of Offenders"

An injunction issued by the US District Court for the Southern District of Illinois on August 9, 2021, required that clothed and unclothed searches of transgender or gender non-conforming individuals in custody be conducted by the gender of the staff designated on their identification card.

Monroe, et al. v. Rauner, et al., (18-156) Document No. 408198



*"IDOC's mission is to serve justice and increase public safety by **promoting positive change** in offender behavior, operating successful reentry programs and reducing victimization. The IDOC population is **too diverse for a one size fits all approach** to change...."*

*IDOC PRISM Special Support Program Plan Overview*

Monroe, et al. v. Rauner, et al., (18-156) Document No. 408199





THE MOSS GROUP, INC.

*Experienced Practitioners Committed to Excellence in Correctional Practice*

# Unit 3: The Transgender Experience

*Data, Trauma, and Pathways of Transgender Offenders*

Monroe, et al. v. Rauner, et al., (18-156) Document No. 408200

# Logan Population Data

As of March 30, 2023, Logan had a total population of 1,051, with 39 transgender men and 11 transgender women.



Transgender Women, 11

, 0

Transgender Men, 39

Cisgender Women, 1001

■ Transgender Women   ■ Transgender Men   ■ Cisgender Women   ■

Monroe, et al. v. Rauner, et al., (18-156) Document No. 408201

# Experience—Prior to Incarceration

 Most were people of color, lesbian, gay, or bisexual, and relatively young.

 More likely to experience homelessness: 21% experience housing discrimination in the past year; 28% were homeless at one time. *

 Most were arrested for the first time when they were 18 or younger, and many spent time in a juvenile facility.

 The majority did not complete high school. 80% experienced mistreatment in K-12 school. *

 Less than half were employed the month prior to arrest. 21% live in poverty. *

 Majority have been on probation before, and over a third had served time in jail at least twice before.

*Source: Survey of Prison Inmates, 2016 This is a periodic survey last administered in 2016 and released in 2020.*
*\* Includes specific stats from the Illinois Transgender Survey from 2015.*

Monroe, et al. v. Rauner, et al., (18-156) Document No. 408202

# Experience—Medical & Mental Health

 Challenges with access to medical care due to state laws, faith-based organizations, and geographic locations

 Higher risk for illness and cancers due to less preventative screenings

 High rates of suicidal ideation and attempts. Suicide is the leading cause of death

 More likely to experience verbal and physical abuse, major depression, and anxiety

 Higher risk of HIV, other STI, PTSD, intimate partner violence, and eating disorders

 Two times more likely to abuse substances

Substance Abuse and Mental Health Services Administration. *Top Health Issues for LGBTQI Populations Information & Resource Kit*. HHS Publication No.(SMA) 12-4684. Rockville, MD: Substance Abuse and Mental Health Services Administration, 2012. SPEAK (Suicide Prevention Education Awareness for Kids) )https://williamsinstitute.law.ucla.edu/wp, 2012  The National Alliance to End Homelessness. (2014). LGBTQ Homeless youth survey.

Monroe, et al. v. Rauner, et al., (18-156) Document No. 408203

# Experience—In Public

 Overall isolation, including being excluded from family functions, public-facing positions, and being largely unaccepted by society

 Develop a mistrust for authority figures—including crisis centers and shelters that may have turned them away or been unable to provide services

 Only 11% report all documents match their name and identity; 65% have no correct ID. *

 Increased police interactions and arrests

 Development of anti-social survival skills for meeting basic needs

 Anxiety over being outed and misgendered

Substance Abuse and Mental Health Services Administration. *Top Health Issues for LGBTQI Populations Information & Resource Kit*. HHS Publication No.(SMA) 12-4684. Rockville, MD: Substance Abuse and Mental Health Services Administration, 2012. SPEAK (Suicide Prevention Education Awareness for Kids) )https://williamsinstitute.law.ucla.edu/wp, 2012  The National Alliance to End Homelessness. (2014). LGBTQ Homeless youth survey.

Monroe, et al. v. Rauner, et al., (18-156) Document No. 408204



# Damage of Being Misgendered

- ***Misgendering*** refers to using a word, especially a pronoun or form of address, that does not correctly reflect the gender with which the individual identifies.
- ***Deadnaming*** means referring to someone by a name they used prior to transitioning.

| | | |
|---|---|---|
| Distress | Increased depression and anxiety | Lower self-esteem |
| Social isolation | Can lead to or strengthen stigmatization | Loss of trust |

Monroe, et al. v. Rauner, et al., (18-156) Document No. 408205



# Experience—While Incarcerated

Transgender individuals are disproportionately over-represented in confinement settings.                     (BJS, 2014)

Transgender individuals are more likely to receive incident reports and discipline for minor infractions and be placed in restricted housing, compared to the cisgender population.

(BJS, 2014)

Often ostracized from the population, which limits healthy interactions, access to programming, and preferred work assignments.

Monroe, et al. v. Rauner, et al., (18-156) Document No. 408206





Monroe, et al. v. Rauner, et al., (18-156) Document No. 408207

# What does this all mean?



It does not mean that...

- Transgender inmates are always victims.
- Transgender inmates are always aggressors.
- Transgender inmates are dangerous.



It does mean that...

- We need to be aware of the pathways of transgender people.
- We have to be aware of the impact of trauma.
- We have to make respect and good communication core practices.
- We have to consider vulnerability in housing and other operational procedures in the facilities.

Monroe, et al. v. Rauner, et al., (18-156) Document No. 408208

The Moss Group, Inc.



THE MOSS GROUP, INC.

*Experienced Practitioners Committed to Excellence in Correctional Practice*

# Unit 4: IDOC Directive 403.104

*Evaluation, Treatment, and Correctional Management of Transgender Offenders*

Monroe, et al. v. Rauner, et al., (18-156) Document No. 408209



# Medical Evaluation

| | | |
|---|---|---|
| Sexual activity, specifically homosexual, heterosexual, or bisexual | Previous operative procedures related to gender identity | Hormone therapy |
| Clarify offender's sense of gender identity | Plans regarding future surgery and lifestyle | If possible, verification of treatment and medical records from community medical provider |
| Physical examination, including a concise description of genitalia. | Preliminary determination of gender status | |

Monroe, et al. v. Rauner, et al., (18-156) Document No. 408210



# Mental Health Evaluation

| | | |
|---|---|---|
| Gender Dysphoria – using current DSM criteria | Consistency of offender's gender identify other than that assigned at birth | Offender's sexual activity, sexual preference and current gender identification |
| Offender's regularity and history of hormone therapy (and if hormones prescribed and monitored by a physician) | Any gender related counseling prior to incarceration | If applicable, mental health symptoms and psychiatric stability for consideration of readiness for any requested hormone therapy |

Monroe, et al. v. Rauner, et al., (18-156) Document No. 408211



# Facility Placement

Transgender, intersex and gender incongruent offenders shall not be assigned to gender-specific facilities based solely on their external genital anatomy.

Transgender Administrative Committee (TAC) makes individualized determinations about facility placement to ensure the safety of each offender.

Representative of the TAC interviews the offender, reviews PREA allegations, offender grievances, criminal history, psychiatric and disciplinary records.

Monroe, et al. v. Rauner, et al., (18-156) Document No. 408212

# TAC Considerations

Perception of whether male or female facility is safest for him or her, as well as preferred gender of staff to perform searches

Prior institutional history, including incidents and grievances

Prior violent or sexual criminal history

Gender expression, including physical appearance, age, and physical build

Likelihood of perpetrating abuse against other offenders, including allegations of sexual abuse or harassment

Vulnerability to sexual victimization, including prior allegations of sexual abuse or harassment made by the offender

Monroe, et al. v. Rauner, et al., (18-156) Document No. 408213

# TAC Considerations, continued

Compliance with medical and mental health treatment plans, including psychopharmacologic and hormone therapy compliance.

Any relevant information obtained about the offender from security staff or medical and mental health staff since arrival.

The ability of security staff to house and supervise the offender to ensure his or her safety and the safety of the population in the current and requested environment.

Services available to meet the needs of the offender in each environment.

Any obstacles identified for the appropriate management of the offender in each facility.

Any other relevant information about the offender's ability to positively or negatively manage himself or herself in each type of environment.

Monroe, et al. v. Rauner, et al., (18-156) Document No. 408214

# TAC Placement Decisions



TAC Cases Reviewed for Transfer to Logan

Monroe, et al. v. Rauner, et al., (18-156) Document No. 408215



# Identification

Bureau of Identification (B of I) shall identify offenders who are transgender, intersex or gender incongruent in Offender 360

B of I shall add gender identification to the offender's ID unless the offender opts to decline gender identification on their ID card

ID cards for those identified shall note gender difference for purposes of special accommodations such as search, commissary, separate showering, etc.

The name entered on the offender's Judgment and Commitment Order shall remain the official committed name for all IDOC records.

Monroe, et al. v. Rauner, et al., (18-156) Document No. 408216

# Unclothed Visual Searches

Conducted to ensure as much privacy as practical and be completed in a respectful and professional manner.

Transgender, intersex or gender incongruent offenders should be searched by the gender of the staff designated on their ID card.

If offender reports they are transgender, intersex, or gender incongruent but has not been identified as such pursuant to the procedures in this policy, they will be searched in accordance with the gender of the facility they are housed.

If this occurs, submit an Incident Report – DOC 0434 – document the concern raised by the offender and forwarded to the TAC.

Monroe, et al. v. Rauner, et al., (18-156) Document No. 408217



# Commissary

Permitted to have undergarments of their identified gender.

Access to commissary items consistent with gender identity.

Binders, breast pads, etc. Medical Appliances - available by medical prescription only.

Use of make-up shall not prevent accurate identification of the offender.

Monroe, et al. v. Rauner, et al., (18-156) Document No. 408218





# Unit 5: Policy to Practice

*Practical Application of Learned Concepts*

Monroe, et al. v. Rauner, et al., (18-156) Document No. 408219

# Six Policy to Practice Approaches

**1** Adopt and normalize policy and practice.

**2** Consistently use pronouns appropriately.

**3** Use effective communication skills.

**4** Maintain professional boundaries and rapport.

**5** Follow protocols for handling confidentiality and sensitive information.

**6** Promote accountability and credibility.

Monroe, et al. v. Rauner, et al., (18-156) Document No. 408220



# 1 Adopt and Normalize

Familiarize yourself with policy and department expectations.

Respect how people identify.





Monroe, et al. v. Rauner, et al., (18-156) Document No. 408221



# 2 Use Pronouns Appropriately

Know where to access pronoun preference information.

Don't revert to referring to incarcerated individuals by "inmate" or other terminology to avoid use of pronouns.

Consider using more gender-neutral terms, such as folks, everyone, friend, child, partner or spouse, and sibling.

Monroe, et al. v. Rauner, et al., (18-156) Document No. 408222



# **3** Use Effective Communication Skills

Ensure tone, body language, and wording are in alignment.

Do not use profanity or derogatory slurs—the population will model how staff treat and refer to the transgender population.

Recognize your role within the department and how your position impacts safety.

Programs & Treatment

Custody & Operations

Leadership & Management

Monroe, et al. v. Rauner, et al., (18-156) Document No. 408223



# Your Words are Powerful!



**Respectful Language:**

- Increases safety and security and supports a reporting culture
- Contributes to creating a culture of safety and respect
- Models what is acceptable and unacceptable to say
- Increases the likelihood you will be respected in return



**Disrespectful Language:**

- Decreases safety and security and discourages reporting of safety concerns
- Negatively impacts the well-being of colleagues and inmates
- Condones the same behavior from inmates
- Damages your professional credibility

Monroe, et al. v. Rauner, et al., (18-156) Document No. 408224

# **4** Maintain Professional Boundaries


Consistently address behaviors—don't focus on the person.


Use your influence, not just your authority.


Don't engage in the rumor mill or cliques.


Don't discuss your personal life or beliefs at work.


A sense of humor is welcome—but no inappropriate or offensive jokes.


Know your own triggers and rechargers—take care of yourself.

Monroe, et al. v. Rauner, et al., (18-156) Document No. 408225



# 5 Follow Confidentiality Protocols

Be careful with personal information you may have about someone else. This is important if it is related to a coworker or an inmate.

Remember that perceptions and assumptions can be harmful and unnecessarily sharing information can get someone hurt.

Honor confidentiality. Share information only on a need-to-know basis for your safety and the safety of others.

Do not spread rumors or gossip about people said to be involved in allegations.

Monroe, et al. v. Rauner, et al., (18-156) Document No. 408226

# **6** Promote Accountability & Credibility

If you make a mistake, apologize.

Help your peers—address problematic attitudes and remarks. Focus on the behavior.

Create credibility among inmates and staff by being fair and policy driven.

Educate inmates on the impact of false reports to the individuals involved, the system, and efforts to protect their safety.

Monroe, et al. v. Rauner, et al., (18-156) Document No. 408227



# Scenario Activity



1. In small groups, select a recorder, reporter, and facilitator. Others are contributors.

2. Discuss the scenario as a group and answer the questions on the worksheet.

3. Be prepared to share your responses.

Monroe, et al. v. Rauner, et al., (18-156) Document No. 408228

# Scenario Debrief

Scenario 1: You overhear another staff member repeatedly use pronouns that are not consistent with the gender identity of the incarcerated individual.

Scenario 2: You overhear a group of cisgender incarcerated individuals discussing their fear and anxiety having a transgender woman in the unit.

Scenario 3: You're a supervisor and a nursing manager has reported to you that a custody staff member in the infirmary has been speaking openly about transgender patient care and treatment with other staff.

Scenario 4: You observe a transgender incarcerated individual with a hickey.

Monroe, et al. v. Rauner, et al., (18-156) Document No. 408229

# Summary—Tips to Remember

Gender identity is a national controversial hot topic with global implications throughout organizations, media, sports, education, communication, healthcare, and criminal justice systems.

IDOC Administrative Directives have implemented thoughtful processes and practices for the safe and effective housing and supervision of transgender men and women.

Respect and professionalism are core values in corrections and are vital to the safety and security of staff, facility operations, those living in IDOC institutions, and our communities by promoting positive change for successful reentry.

Monroe, et al. v. Rauner, et al., (18-156) Document No. 408230





Monroe, et al. v. Rauner, et al., (18-156) Document No. 408231

# Thank You.

Questions, comments, or concerns can always be addressed to
The Moss Group, Inc. at 202-546-4747 or info@mossgroup.us.



All materials are © copyright The Moss Group, Inc., unless otherwise noted.

Monroe, et al. v. Rauner, et al., (18-156) Document No. 408232