## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

JANIAH MONROE,
MARILYN MELENDEZ,
LYDIA HELÉNA VISION,
SORA KUYKENDALL, and
SASHA REED, individually and on
behalf of a class of similarly situated
individuals,

    Plaintiffs,

v.                                             Case No. 3:18-CV-00156-NJR

STEVEN BOWMAN,
MELVIN HINTON, and
LATOYA HUGHES,

    Defendants.

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

A status conference and continuation of the hearing on Plaintiffs' Motion for Finding of Contempt was held on April 26, 2023, via videoconference, attended by Co-Monitors Dr. Amanda Harris and julie graham, as well as counsel for the parties. This was another continuation of the proceedings held on December 15, 2022, which continued on January 19, 2023, February 21, 2023, and March 31, 2023. Plaintiffs' Motion for Finding of Contempt (Doc. 455) remains under advisement. Another status conference will be held via video on **Friday, June 2, 2023, at 2:00 p.m. Central Time.**

Following the January 19 Status Conference, the Court entered an Order setting deadlines for certain actions, reports, and certifications to be completed (Doc. 522). A

subsequent Order set forth directives following the March 31 Status Conference (Doc. 552). **Those Orders contain future deadlines and directives and remain in effect.**

**Summary of April 26, 2023 Hearing**

The parties and Co-Monitors met twice since the last status hearing. On April 14, 2023, their meeting included Dr. Puga and other IDOC officials, and it focused on a method to compile an accurate list of class members to track whether class members are receiving transgender related health care as ordered by the Court. The lack of an accurate, updated class list hinders the ability to monitor whether Defendants are making progress to comply with several provisions of the injunctive relief orders—such as medication monitoring, the Continuing Quality Improvement "CQI" tool, transfer requests, and accurate placement information to ensure gender affirming items are available where class members are located. An accurate list will also be needed for distribution of the "tool kit" under development for class members.

Counsel for the parties met again with the Co-Monitors on April 19, 2023, to discuss issues related to transfer requests from class members and whether there should be an "automatic transfer" for class member(s) away from facilities that have failed to comply with shower and search requirements. This issue will require further discussion to develop solutions that do not "reward" noncompliance or harm individual class members.[1]

---

[1] The parties' next meeting was scheduled to occur yesterday, May 10, where they planned to focus on potential revisions to the IDOC's Administrative Directive regarding transgender inmates. (Doc. 577). The Court is eager to hear the outcome of that meeting.

Co-Monitor graham has investigated Plaintiffs' reports of shower noncompliance facility by facility, which has resulted in some corrections. This is time consuming for the Co-Monitor and frustrating for the Court as it should have been a straightforward matter for Defendants to provide private showers for class members as ordered *long ago.* In *August 2021*, the Court ordered Defendants to "immediately" allow transgender inmates access to a private shower (Doc. 332, p. 3). This directive was reiterated in the February 7, 2022, Preliminary Injunction which gave Defendants **14 days** to report measures taken to comply (Doc. 384, p. 10). Despite Defendants' assurances and certificates of compliance with the Court's Orders, members of the class continued to report instances of noncompliance at several institutions in late 2022 and early 2023. (*See* Doc. 455, Plaintiffs' Motion for Finding of Contempt; Docs. 444, 450, 460, 546, Co-Monitor graham's reports). For example, some shower doors at Pinckneyville currently have a large hole through which the person showering can be seen, and a solid metal plate in the upper door is not high enough to prevent viewing the person's chest area. (*See* Docs. 546, 559).

To be sure, some institutions have satisfactorily provided private showers, and IDOC officials have responded to Co-Monitor graham's inquiries with commitments and action to correct identified problems. But Defendants' persistent noncompliance in several prisons during the twenty months since the Court first ordered Defendants to remedy the lack of private showers is troubling to say the least. The parties' and Co-Monitors' reports demonstrate that to the extent Defendants have complied with the orders to provide private showers, many remedial actions have been taken only in response to the ongoing efforts of Co-Monitor graham, rather than on Defendants' own

initiative. Co-Monitor graham has operated as an ombudsperson taking on an active role in investigating, responding to class members' reports, and problem-solving on the private shower issue as well as complaints regarding body searches and other matters. As graham put it, this type of intervention is "not exactly what I thought I was doing" when she accepted the monitoring role.

Co-Monitor Harris has taken the lead on prompting Defendants to produce a comprehensive list of class members that can be regularly and accurately updated. The Co-Monitors' and parties' comments at the April 28, 2023, status hearing demonstrate that such a list is a necessary prerequisite to successfully monitor and achieve compliance with the medical provisions, class members' transfer requests, and other issues covered in the preliminary injunctions. Dr. Harris has received documentation on class members' hormone therapy showing improvement in that area, but the information provided does not give a comprehensive, individualized picture of each class member's care. She is working to develop a reporting system to aggregate available information on each class member including the specific medications provided, referrals to the endocrine clinic if applicable, where the person is housed, and whether they requested surgery or a transfer and the outcome of such request(s). Defendants have been providing Co-Monitor Harris with regular reports as previously ordered. Yet she is waiting to receive the monthly census list from the mental health department of each facility, which is expected to include all people diagnosed with or under evaluation for gender dysphoria or who are otherwise members of the class. As the mental health providers are the "front line" staff for individuals in custody who are experiencing gender dysphoria or are seeking gender

affirming care, it is hoped that these monthly census lists will provide an accurate picture of the class.

Defendants have provided Co-Monitor Harris with a sample of their CQI tool for transgender care, but have yet to supply her with complete information covering all class members.

Transfer requests by class members continue to be a concern. No transfer requests were considered at the March 2023 TAC meeting, and Defendants report there is no backlog of requests. A number of class members' transfer requests were denied during 2021-2022, however, and it appears they have not been brought up for reconsideration even when Defendants' transfer chart indicated this would be done. (Sealed Doc. 563, TAC Transfer List; *See also* Doc. 564, Joint Status Report). Further, Co-Monitor graham and Plaintiffs' counsel indicate that some class members may believe their transfer requests are awaiting consideration when they in fact are not. It appears that Defendants have not implemented steps to ensure that class members' denied transfer requests are brought up for reconsideration or to effectively inform individuals of the reconsideration process or timeline.[2] The mental health providers are the "gatekeepers" to submit transfer requests from class members, but it is unclear whether these providers are timely submitting requests from class members who want to transfer or advising them of the process to request a transfer. Defendants do not appear to have any tracking system to

---

[2] Defendants were ordered in August 2021 to evaluate pending transfer requests from class members seeking to move to a facility matching their gender identity by December 7, 2021, provide the individual with a written explanation of each reason for a denial, and allow the individual to again request a transfer within 180 days. (Doc. 332, pp. 2-3; Doc. 384, pp. 8-9).

prompt the re-evaluation of denied transfer requests once 180 days have elapsed since a denial. Plaintiffs' counsel notes that the denial letters sent to class members lack specifics on the reason(s) why the transfer was denied and what the individual must do to qualify for a transfer. Defendants do not appear to have adopted any concrete, objective, or transparent criteria for the TAC to apply when considering a transfer request. The lack of an accurate list of individuals belonging to the class is a hindrance.

It is imperative that Defendants quickly finalize and distribute the "tool kit" or "FAQ" handout for class members in consultation with Co-Monitor graham (*See* Doc. 552, p. 9). This handout must clearly explain class members' right to request a transfer, the process for submitting transfer requests, and the re-evaluation process if a transfer is denied. In addition, the parties—along with the Co-Monitors—should draft objective criteria for consideration and ultimate adoption to guide the TAC in making decisions on class members' transfer requests. These criteria should include consideration of an individual's safety, medically necessary social transition, and whether mental health issues may be improved by placing the individual in a facility matching their gender identity.

Co-Monitor graham reports that the availability of gender affirming commissary items is improving, but problems remain with timely stocking items on order. She continues to troubleshoot these issues. Again, inaccuracies in the list of class members in each facility prevents items from getting to those who need them.

Class members continue to report problems regarding searches, including delays while waiting for a female staff member to search a transgender woman, or a search being

conducted by the wrong gender officer. Co-Monitor graham has followed up on these reports but has found it difficult to ascertain what happened, because class members often do not file grievances out of fear of retaliation or being "outed" as transgender. The parties plan continued discussion to agree on a process for Plaintiffs' counsel and Co-Monitor graham to receive copies of all grievances filed by class members relating to issues in this case (not limited to searches). The Court expects that reports of any noncompliance will continue to be filed by counsel and/or Co-Monitor graham. Plaintiffs' counsel should encourage class members to file grievances over instances of misconduct related to searches so that these issues are documented and addressed. Retaliation or other inappropriate conduct by IDOC staff against class members for filing grievances will not be tolerated.

Fortunately, progress is being made to provide training to IDOC employees at Logan, with sessions in June 2023 to train IDOC staff who will then conduct training of other employees. The curriculum for training individuals in custody at Logan should be completed by June 1, 2023, and this training should be completed by the end of September 2023.

**Documents Filed After the April 26, 2023 Status Hearing**

Defendants filed their report on April 28, 2023 (Docs. 571, 572), listing the in-person surgical consultations scheduled for 13 class members with Dr. Schechter, which will take place between June 15, 2023, and July 20, 2023.[3] The Court had previously

---

[3] This list of 13 individuals includes people who were approved for surgery as of January 4, 2023, as well as additional individuals who were approved for gender affirming surgeries in March

ordered Defendants to schedule these consultations to take place *no later than March 8, 2023* (Doc. 522), and then extended the deadline to April 28, 2023 (Doc. 557). The scheduled consultations are thus set to take place one and a half to three months *after* the Court's extended deadline. Further, Defendants did not comply with two previous orders (Docs. 522, 552) to report whether and when another surgical provider at Rush Medical Center will start accepting patients for gender affirming surgery, nor did they file a list of other providers contacted for gender affirming surgery if another Rush provider is not available. Instead, Defendants wish to continue working with Dr. Schechter, with whom they have a longstanding relationship to provide gender affirming surgery. *This track record does not demonstrate reasonable diligence* to comply with the ordered injunctive relief. In fact, Defendants have flouted this Court's Orders to identify additional providers, which it was hoped would result in meeting the surgical needs of the class in a more timely manner.

While the Court appreciates the value of having Dr. Schechter, a skilled gender-affirming surgeon, provide surgeries for class members, Defendants' schedule raises the question whether it is feasible for this single provider to timely perform the approved surgeries, let alone surgeries that may be approved in the future. Notably, the June-July 2023 schedule is just for class members' *consultations*—there is no indication of how soon the actual surgeries will be performed. Moreover, Defendants admit that some individuals who were previously approved for surgery have been dropped from the list

---

and April 2023 (Doc. 571). Defendants note that some individuals whose surgeries had been approved are omitted from the list because they have been released from custody. *Id.*

because their impending release dates from IDOC custody would not allow for surgery and the necessary follow-up care. Had Defendants scheduled surgical consultations in a timely manner as the Court ordered, these class members might not have lost their opportunity for this medically necessary treatment. This clearly constitutes harm to the affected class members.

Under these circumstances, the Court must hold Defendants to their previously-ordered obligation to explore the availability of other surgical providers, both at Rush Medical Center and other locations, particularly for less-complicated surgery such as mastectomies for transgender men and orchiectomy for transgender women. Plaintiffs are encouraged to suggest other potential providers as well.

If Defendants again fail to comply with the Court's directives and schedule set forth below, **_they will be held in contempt, and the Court will impose appropriate sanctions_**. Sanctions may include requiring Defendants to pay the Co-Monitors' (Special Masters') fees (*See* Docs. 457, 558, 561) and the imposition of fines where a particular prison continues to have verified reports of noncompliance with the orders for injunctive relief as discussed above.

The Court finds it necessary to adopt the following additional schedule, to ensure timely progress and provide measurable benchmarks. Future timelines set forth in the Orders of January 24, 2023 (Doc. 522) and April 4, 2023 (Doc. 552) are included below. The parties and Co-Monitors are **ORDERED** to do the following:

1. **PLAINTIFF CLASS IDENTIFICATION/RECORDKEEPING:**

    On a monthly basis, Defendants shall promptly provide the mental

health departments' monthly census list of individuals in custody who are members of the Plaintiff class, including their locations, to both Co-Monitors and Plaintiffs' counsel.

## 2. HORMONE THERAPY:

Defendants shall continue to monitor class members' blood hormone levels every three months as previously ordered, and shall file quarterly updates regarding blood levels of all class members to the Court under seal and to Co-Monitor Harris.

## 3. GENDER AFFIRMING SURGERY:

a. Defendants shall provide to Plaintiffs' counsel, the Co-Monitors, and file under seal by **June 30, 2023,** the dates on which the individuals whose consultations are set for June 15, 2023 and June 22, 2023 (in Doc. 572) will undergo gender affirming surgery. Defendants will supplement this information as additional surgeries are scheduled for the class members having consultations in July 2023, and for any other class members who are newly scheduled for surgical consultations and surgery.

b. Defendants shall report by **June 1, 2023**, **whether and when another surgical provider at Rush Medical Center will start accepting patients for gender affirming surgery. If availability of another provider at Rush cannot be confirmed by that date, then Defendants shall file under seal a list of other providers contacted for gender affirming surgery, no later than June 15, 2023**.

c. Defendants shall continue to provide Plaintiffs' counsel with copies of future written decisions issued to class members on their requests for gender affirming surgery.

## 4. CQI:

By **June 15, 2023**, Defendants shall provide the *complete* audit/compliance tool in its native format, including data on all class members (not merely a sample) to Plaintiffs' counsel and to Co-Monitor Harris for review. Defendants shall also communicate and provide updates to Co-Monitor Harris and Plaintiffs' counsel as class members are added to or removed from the CQI tool.

5. **TRANSFERS:**

   a. Defendants shall issue written notice to all class members who requested and were denied a transfer and who are still in custody, to inform them of the right to request reconsideration after six months from the denial. The notice shall specify the reason for the prior denial, explain the issues that must be resolved before a transfer may be approved, and explain the process to resubmit a transfer request. The parties and Co-Monitors shall confer on the boilerplate contents of this notification letter. Notices shall be provided by **June 1, 2023** to class members whose transfer requests were denied on or before October 31, 2022. Going forward, this notice shall be provided to class members whose transfer requests were denied, after the 180 days has elapsed, informing the individual that they may submit a request for reconsideration of the transfer denial and including the information set forth above. Defendants shall provide copies of these letters to Plaintiffs' counsel, to both Co-Monitors, and to the mental health provider assigned to the individual receiving the notice.

   b. By **June 15, 2023**, Defendants shall file under seal with the Court a list of the class members who received the first round of notices (those due by June 1, 2023) and their current location. Thereafter, Defendants shall report quarterly the list of class members who were sent this notice during the previous period (due starting October 1, 2023, and thereafter on January 1, April 1, July 1, etc.).

   c. The parties and Co-Monitors shall continue discussions to formulate objective criteria to guide the TAC in making decisions on class members' transfer requests. These should include consideration of an individual's safety, medically necessary social transition, and whether mental health issues may be improved by placing the individual in a facility matching their gender identity, as well as other relevant issues. They should be prepared to update the Court on this issue at the next status hearing on June 2, 2023, at which the Court may set a date for a written report on this matter.

   d. Along with developing objective criteria to guide transfer decisions, the parties and Co-Monitors shall continue discussion on when and under what circumstances it would be appropriate for Defendants to offer a transfer to individual class members to facilitate improved care and social transition as well as safety.

    e.  As previously noted (Doc. 552, p. 6), the current TAC committee structure for deciding on class members' transfer requests, and the qualifications of the individuals involved continues to be a concern in light of the slow pace of action on class members' transfer requests, and merits continued attention from the parties and Co-Monitors to devise possible solutions.

6. **COMMISSARY:**

    The parties and Co-Monitors shall continue working to achieve adequate commissary supplies of gender affirming items throughout IDOC facilities and to reach agreement on the items to be included in a gender-affirming kit for all class members as standard-issue medical care. By the **June 2** continued hearing, the parties and Co-Monitors shall propose compliance deadlines for the gender-affirming commissary kit to be distributed to all class members and to any new transgender person entering IDOC custody. Issues to be resolved include what to do if different class members want different items, and whether replenishment of such items for class members will be honored as medical care.

7. **SHOWERS:**

    a.  As noted above, reports of noncompliance with the Court's Orders to provide private showers to class members continue to occur. (Docs. 545-550, 553, 559, 569-570, 573). Co-Monitor graham will continue to follow up on these reports, and the Court expects Defendants and the officials at each facility to promptly respond and address concerns. Going forward, the Court will accept Co-Monitor graham's certification if she finds that a facility is not in compliance with the private shower mandate, and may impose appropriate sanctions on Defendants if the facility is not promptly brought into compliance.

    b.  Plaintiffs' counsel shall continue to advise the Court and Co-Monitor graham within **seven days** of their receipt of any reports of noncompliance with the private shower requirement.

    c.  The parties and Co-Monitors shall continue discussions on procedures and deadlines to offer a transfer to any class member away from a facility that fails to provide them with a private shower, to a facility where compliance has been achieved. The parties shall file another joint status report on this issue by **June 30, 2023**.

8. **SEARCHES:**

   a. Reports of problems relating to the avoidance of cross-gender searches have continued from some institutions (Docs. 546, 573). These matters are complicated by class members' reluctance to file grievances, and by class members who do not wish to be publicly identified as transgender out of fear of discrimination or safety issues. Co-Monitor graham will continue to follow up with the individual institutions to correct the problems identified, including availability of female officers to conduct searches, and adequate planning to ensure timely searches for pre-planned events such as court and medical writs.

   b. The parties and Co-Monitors shall continue discussions on procedures and deadlines to offer a transfer to any class member from a facility that fails to comply with the search provisions, to a facility where compliance has been achieved. The parties shall file another joint status report on this issue by **June 30, 2023**.

9. **TRAINING:**

   a. Training of IDOC staff at Logan is underway, including training of those IDOC employees who in turn will conduct training of other staff members at Logan. Defendants shall report to the Court, Plaintiffs' counsel, and the Co-Monitors, **on or before June 30, 2023**, on the content of that training, who participated, whether the training of all Logan staff has been completed and if not, when it will be completed.

   b. Design of the training program for all incarcerated persons at Logan should be finalized by June 1, 2023 and Defendants report all incarcerated persons at Logan should have finished the training by the end of September 2023. Defendants shall update the Court on progress at the June 2, 2023 continued hearing.

   c. Defendants shall also update the Court at the June 2, 2023 continued hearing on the status of training provided to all IDOC staff at all institutions regarding interactions with the transgender and gender-nonconforming population. Initial training was provided by the Moss Group in 2022. Has any refresher been given to staff and if so, when? Are Defendants tracking employees' completion of this training and are new hires also undergoing this training?

d. In response to the Order of April 4, 2023 (Doc. 552, p. 8, sec. 9.c.), Defendants reported on April 25, 2023 (Doc. 562) that IDOC plans to release a "roll call memorandum" to all facilities to be read at each shift, to reiterate the Standards of Conduct expected of all staff, and will address accountability for subordinates at the next Wardens' meeting. By **June 1, 2023**, Defendants shall file a copy of the roll call memorandum with the Court and provide it to Plaintiffs' counsel and the Co-Monitors. Defendants shall update the Court at the June 2, 2023 continued hearing as to how the matter was addressed at the Wardens' meeting and what further steps will be taken to train administrators and subordinate staff on interacting with class members in a professional manner, holding staff accountable for misconduct and unprofessional behavior, and the expected timeline to conduct further training.

e. As previously ordered (Doc. 552, p. 8, sec. 9.d.), the parties and both Co-Monitors shall discuss and agree on the date by which additional WPATH training will be completed for all medical and mental health providers serving class members. Defendants shall file certificates of completion by medical/mental health staff no later than **June 30, 2023**.

10. **ADDITIONAL MATTERS & REPORTING:**

a. The parties shall file a notice advising the Court of the date of each monthly (or more frequent) meeting between counsel, the Co-Monitors, and the appropriate IDOC officials, and the anticipated topic(s) for discussion, as soon as each date is set.

b. As previously ordered (Docs. 522, 552), the parties and Co-Monitors shall discuss and set timeframes for Defendants to provide copies to Co-Monitor graham and Plaintiffs' counsel of all class member grievances concerning staff conduct relating to the issues in this case, and for Defendants to provide copies to Co-Monitor graham and Plaintiffs' counsel, and file under seal, of any investigation or disciplinary actions taken against a staff member for violations of AD 03.02.108 (Standards of Conduct) relating to the issues in this case.

c. As previously ordered (Docs. 522, 552), on a monthly basis, Defendants shall provide Plaintiffs' counsel with updates to the IDOC transgender databases for medical care and accommodation.

d.  As previously ordered (Docs. 522, 552), Defendants shall provide to Plaintiffs' counsel any other documents provided to the Co-Monitors, at intervals agreed upon by the parties and Co-Monitors.

e.  As previously ordered (Docs. 522, 552), Defendants shall continue to consult with Co-Monitor graham on the contents and finalization of the "FAQ" or "tool kit" handout for transgender/gender nonconforming individuals in custody. This should include information to class members on the procedure to request transfer to a different institution. By **June 1, 2023**, Defendants shall submit a copy of this handout to the Court if it has been finalized, or shall report on the expected timeline for its completion if it is not yet finalized.

**IT IS SO ORDERED.**

**DATED:  May 11, 2023**

**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**