IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS DIVISION

| | |
|---|---|
| JANIAH MONROE, MARILYN MELENDEZ, LYDIA HELENA VISION, SORA KUYKENDALL, and SASHA REED, <br><br> Plaintiffs, <br><br> - vs- <br><br> LATOYA HUGHES, MELVIN HINTON, and STEVEN BOWMAN, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) No. 18-156-NJR |

**DEFENDANTS' MOTION TO VACATE RECENT ENFORCEMENT ORDERS AND TO REQUEST AN EVIDENTIARY HEARING PRIOR TO ORDERING FURTHER RELIEF**

The Defendants, LATOYA HUGHES, MELVIN HINTON, and STEVEN BOWMAN (sued in their official capacities as IDOC administrators), move pursuant to Federal Rule of Civil Procedure 60(b)(5) & (b)(6) and 18 U.S.C. § 3626 to vacate the recent enforcement orders in place in this matter, [*see* Docs. 522, 552, 584], and request an evidentiary hearing so the Court can be fully informed prior to entering further enforcement orders or permanent relief.

In support of their motion, Defendants provide the following:

**Introduction**

This matter is a certified class action that includes all IDOC prisoners who seek or have requested evaluation or treatment for gender dysphoria. Multiple preliminary injunctions have been entered in the case. [*See* Doc. 384, incorporating Docs. 186-87, 211-12, 336]. This matter proceeded to a bench trial in August 2021 but the Court has not yet issued a final adjudication.

Although the preliminary injunctions expired 90 days after their issuance, the Court has entered new orders purporting to enforce the preliminary injunctions and imposing new obligations that exceed the limitations imposed by the Prison Litigation Reform Act (PLRA).

Importantly, the Court has continued to enter orders that impose additional relief against Defendants absent any findings "that such relief is narrowly drawn, extends no further than necessary to correct the violation of a [constitutional] right, and is the least intrusive means necessary to correct the violation of the [constitutional] right." 18 U.S.C. § 3626(a)(1)(A); *see also id.* § 3626(a)(2) ("Preliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm."). The Court has therefore erred by entering orders contrary to the plain language of the PLRA that impermissibly infringe upon Defendants' discretion. Defendants have attempted to flag these issues for the Court in deferential terms by raising them in various filings, but now seek to formally vacate the orders as contrary to the PLRA and binding case law.

For context, immediately after the August 2021 trial, the Court entered a preliminary injunction pending its review of the evidence in the record. Although nearly 22 months have passed since the Court took evidence as to the alleged need for continuing relief, no final order has been entered. Instead, successive orders have issued setting forth obligations and deadlines for Defendants to meet, without any of the findings required by the PLRA.

The Court has erred by continuing and incorporating older preliminary injunctions that all automatically expired, with the last one expiring over a year ago. Additionally, the Court has conflated the Plaintiffs' and the co-Monitors' suggestions with what is constitutionally required, without making the statutorily required findings that such relief is, in fact, necessary to remedy a constitutional harm.

For these reasons, as will be argued below, the Court should recognize the expiration of the preliminary injunctions or vacate them **and** vacate the enforcement orders setting deadlines that have been entered this year. This relief is necessary because: (1) each preliminary injunction

expired 90 days after its issuance, and therefore has no operation; (2) recent orders purporting to enforce the expired preliminary injunctions are invalid; (3) to the extent the enforcement orders could be deemed preliminary injunctions, they are invalid because they lack the required PLRA findings; (4) in any event, the preliminary injunctions and enforcement orders must be vacated because Plaintiffs cannot prove a continuing constitutional violation, *i.e.*, deliberate indifference to a serious medical need; and (5) the preliminary injunctions and enforcement orders must be vacated because they impermissibly require specific actions within specific timeframes instead of permitting Defendants discretion to plan and execute remedial measures. Once the Court examines evidence as to the current status of IDOC's policies and procedures, it should then determine whether Defendants are, in fact, deliberately indifferent in violation of the Eighth Amendment and whether permanent injunctive relief is necessary.

## Procedural Background and Recent Orders

On December 19, 2019, the Court granted Plaintiffs' motion for preliminary injunction and entered the first preliminary injunction in this matter. [Docs. 186-87]. The initial injunction was later vacated and replaced with another preliminary injunction, entered March 4, 2020. [Docs. 211-12]. The very next day, the Court granted Plaintiffs' motion for class certification. [Doc. 213].

Beginning on August 1, 2021, a four-day bench trial was held. At the conclusion of the trial, on August 5, 2021, the Court entered preliminary relief pending a review of the evidentiary record, which included deposition designations and other materials stipulated or agreed to as evidence. The Court was clear that it had depositions and exhibits still to review—which would take some time—but that it determined issues came to light in the course of the trial that warranted immediate relief. [Doc. 334 at 221 of 236, l: 9-13]. At that time, the Court recognized that it would need to enter permanent relief, stating: "So, obviously I am going to have to

continue to follow up with permanent injunctive relief and may at some point consider the appointment of an independent monitor to ensure ongoing compliance, but that's an issue for another day." [*Id*. at 219, l: 21-25].

It continued the prior preliminary injunction [Doc. 212] and ordered additional relief. [Doc. 332, entered Aug. 9, 2021, corrected at Doc. 336]. On February 7, 2022, the Court entered a fourth preliminary injunction. It incorporated and continued the prior preliminary injunctions and granted additional relief. [Doc. 384]. The February 2022 preliminary injunction is the last injunction entered in this matter.

In the interim, the Court appointed two co-Monitors to oversee compliance. On December 13, 2021, the Court gave notice of an intent to appoint a Monitor. [Doc. 370]. The Court specifically determined that it would appoint a Monitor to oversee Defendants' compliance and to assess and advise the Court and parties whether further revisions of IDOC policies and procedures were necessary. [*Id*.] Although the Court order stated that it was in the "post-trial remedial phase" no final relief had yet been entered and the Court referenced only the previous preliminary injunctions. [*Id*. at 1, 5, 15]. Two monitors were eventually designated in April and May 2022. [Docs. 418, 423].

On November 14, 2022, Plaintiffs moved for contempt. [Doc. 455]. Defendants responded to each of the items raised in Plaintiffs' motion. [Doc. 462]. The Court has taken the contempt motion under advisement, and it remains pending as of today. However, beginning in January 2023, the Court began to issue orders purportedly enforcing the preliminary injunctions, which require additional reporting and imposing additional deadlines. [Docs. 522, 552, 584]. These orders are largely based upon the Plaintiffs' Recommendations for Modifications to Preliminary Injunction. [Doc. 485-1]. There, among other suggestions, Plaintiffs advocated for timelines including one by which Defendants must contact additional surgical providers. [*Id*. at 3]. The

Court incorporated that suggestion and others in an order entered on January 24, 2023. [Doc. 522 at 3]. Although Defendants have attempted to explain the relationship built with the surgeon who is accepting IDOC patients for gender-affirming surgeries and have kept the Court and parties apprised of updates in the scheduling of surgeries and surgical consults, which are scheduled throughout the summer [*see* Docs. 462 at 5-7, 540, 555, 571], the Court has nonetheless ordered Defendants to begin scheduling consultations and surgeries with another surgeon or risk being held in contempt. [Doc. 584 at 7-10].

## Argument

I.   **The Prison Litigation Reform Act applies and provides for the automatic expiration of preliminary injunctions after 90 days.**

So far, the Court has entered four injunctions that are, by their own terms, preliminary in nature. The PLRA provides: "Preliminary injunctive relief *shall automatically expire* on the date that is 90 days after its entry, unless the court makes the findings required under subsection (a)(1) for the entry of prospective relief and makes the order final before the expiration of the 90-day period." 18 U.S.C. § 3626(a)(2) (emphasis added in *italics*). The Court has not made any of its orders final nor has it made the corresponding findings required by subsection 3626(a)(1)(A).

The decision to implement long-standing preliminary injunctions contravenes the plain language of the PLRA provision on injunctions. Ordinarily, the purpose of a preliminary injunction is to prevent the plaintiff from suffering irreparable injury before the court can reach a final decision on the merits. *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1982); 11A Charles A. Wright & Arthur Miller, Federal Practice and Procedure §§ 2947 (3d ed. 2020). For this reason, preliminary injunctions are typically effective until a decision has been reached at a trial on the merits. *Id.* § 2941; *see also Michigan v. U.S. Army Corps of Eng'rs*, 667 F.3d 765, 783 (7th Cir. 2011). This is because the threshold findings at the preliminary stage differ from

those at the permanent relief stage, and the findings made at the preliminary injunction stage do not bind the district court as a case progresses. *Michigan v. U.S. Army Corps of Eng'rs*, 667 F.3d at 782. A preliminary injunction under the PLRA, however, may or may not last until a final decision on the merits is made. Instead, it is to expire *unless* certain conditions are met, one of which is the entry of a permanent injunction after a trial on the merits. § 3626(a)(2).

Under the plain language of the PLRA, the preliminary injunctions entered in this case have all automatically expired. The post-trial injunction, entered on August 9, 2021, expired as of November 7, 2021. And, the most recent injunction, entered on February 7, 2022, expired on May 8, 2022. In fact, other appellate circuits have dismissed appeals as moot after the 90-day automatic expiration of injunctions. *E.g., Ahlman v. Barnes*, 20 F.4th 489 (9th Cir. 2021) (dismissing appeal as moot because preliminary injunction expired under the PLRA 90 days after it was issued), *cert. denied*, 142 S. Ct. 2755 (2022); *United States v. Sec'y, Fla. Dep't of Corr.*, 778 F.3d 1223, 1228 (11th Cir. 2015) (preliminary injunction not made final by district court expired after 90 days and appeal was moot). In *Ahlman*, the Court found that "[t]he statutory text of the PLRA unambiguously states that any preliminary injunction expires automatically after 90 days unless the district court makes subsequent required findings and makes the order final." 20 F.4th at 493. The Ninth Circuit even found that a stay issued by the Supreme Court did not toll the 90-day limit "unambiguously detailed in the PLRA." *Id*. at 494 ("While the Supreme Court's stay may have prevented the injunction from having any further effect, it did not toll the 90-day limit unambiguously detailed in the PLRA."). This is because the automatic expiration is taken by its plain language. Furthermore, there is no statutory authority to extend a preliminary injunction other than by making the injunction final. 18 U.S.C. § 3626(a)(2); *Ahlman*, 20 F.4th at 494.

When raised earlier in this case, the Court suggested Defendants must assert the expiration issue in the context of a motion to vacate. [Doc. 246 at 4-5]. But that is not the sequence of events contemplated by the PLRA or followed by the circuits that have addressed the issue head-on. As those courts explained, the preliminary injunctions automatically "passed on to injunction heaven" upon the expiration of the 90-day period. 778 F.3d at 1229.[1] The preliminary injunctions here met the same fate, and the Court should recognize their expiration on the record.

Moreover, the Court has characterized its more recent orders as efforts to compel compliance with those since-expired preliminary injunctions. But any enforcement orders necessarily expired at the same time as the injunctions on which they were based. *See Victory v. Berks Cnty.*, 789 F. App'x 328, 333 (3d Cir. 2019) ("When the District Court's May 20 preliminary injunction expired, so too did the Court's July 11 order requiring the County to implement its plan for complying with the injunction."). In other words, any enforcement orders would have no effect because the preliminary injunctions they were designed to enforce have all expired.

These orders created new duties and obligations not included in the preliminary injunctions. But even if these orders were viewed as modifications to the preliminary injunctions, they do nothing to extend the limited time period of the injunctions. *See United States v. Sec'y, Fla. Dep't of Corr.*, 778 F.3d 1223, 1228 (11th Cir. 2015) (preliminary injunction "expired by operation of law" 90 days after it was entered where neither the injunction nor subsequent orders "contained specific findings that any of the preliminary injunction's requirements satisfied the need-narrowness-intrusiveness criteria" and the court "did not issue an order finalizing" the injunction). While a district court may renew or enter a new preliminary injunction, a

---

[1] As the Eleventh Circuit concluded: "like the proverbial tree, if an issue falls in the forest of federal law, courts must take notice of the sound even if the parties did not hear it." *United States v. Sec'y, Fla. Dep't of Corr.*, 778 F.3d at 1227.

clarification is not the same as the renewal. *Id*. at 1228, n.9. Also, those enforcement orders could operate independently as preliminary injunctions only if they were supported by the requisite statutory findings, *see* 18 U.S.C. § 3626(a)(2), which were not made, and would automatically expire after 90 days in any event, *see Mayweathers v. Newland*, 258 F.3d 930, 936 (9th Cir. 2001) (while the PLRA does not prohibit multiple preliminary injunctions, it "imposes a burden on plaintiffs to continue to prove that preliminary relief is warranted").

Accordingly, the Court must recognize the expiration of the preliminary injunctions entered in this case and vacate the clarifying enforcement orders because there is no active preliminary injunction capable of enforcement.

**II.     The Court's recent enforcement orders must be terminated because they do not contain the statutorily mandated findings and are not tethered to constitutional violations.**

As detailed above, the enforcement orders cannot be characterized as valid orders because the preliminary injunctions they purportedly enforce have all automatically expired. The orders, therefore, could only have operation if they operate independently as preliminary injunctive relief. Indeed, they provide prospective relief when no final judgment has been entered. *See* 18 U.S.C. § 3626(a)(2) (authorizing preliminary injunctive relief). The orders, however, fail to meet the statutory narrowness-need-intrusiveness requirement of the PLRA. The putative enforcement orders must be terminated because they do not meet the requirements of the PLRA. Even so, the Court's orders were made in the absence of evidence and particular findings.

**A.     The recent enforcement orders must be terminated because they do not contain the necessary PLRA findings.**

Under the PLRA, a defendant is "entitled to the *immediate termination* of any prospective relief if the relief was approved or granted in the absence of a finding by the court that the relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right,

and is the least intrusive means necessary to correct the violation of the Federal right." 18 U.S.C. 3626(b)(2) (emphasis added in *italics*).

The PLRA requires particularized findings to support each requirement imposed by an injunction sufficient to satisfy that it "is narrowly drawn, extends no further than is necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." 3626(a)(1)(A); *see also Rasho v. Jeffreys*, 22 F.4th 703, 711-12 (7th Cir. 2022). These particularized findings are notably absent from the orders entered after the most recent preliminary injunction, entered in February 2022. [*See* Docs. 522, 552, & 584].

None of the orders at issue contain an analysis or discussion of the constitution, deliberate indifference, or the PLRA. [Docs. 522, 552, 584]. The Court made no findings regarding the constitutionality of IDOC's procedures or actions. Such findings are critical because prison injunctions may only go so far as needed to correct a constitutional violation, and no further. *See Westefer v. Neal*, 682 F.3d 679, 684 (7th Cir. 2012). The PLRA's narrowness-need-intrusiveness requirement demands a court both consider and articulate what is constitutionally required as opposed to what is constitutionally adequate. *Id*. at 683-84. These are not rote formalities. Yet, in the enforcement orders at issue, the Court made no findings as to what the Eighth Amendment floor required with respect to prison medical care. The Court may have found that IDOC was not sufficiently complying with its prior injunctions and orders, but that is not the constitutional standard.

### B. The Court must make the requisite findings because the enforcement orders at issue are not tied to constitutional violations.

Recently, in reviewing a permanent injunction entered against IDOC officials, the Seventh Circuit found that a district court erred by conflating the most effective or preferred solution with what is constitutionally required. *Rasho*, 22 F.4th at 713. There, the district court decreed

staffing levels and specific timelines of evaluation. *Id*. In doing so, the district court had conflated the most effective or preferred solution with what is constitutionally required. *Id*. Here, the district court has moved from more general terms in its preliminary injunctions to increasingly specific terms in its recent orders. Such specific orders and timelines, without specific findings that they are constitutionally required, contravene the PLRA.

In recent weeks, the Court's orders have increasingly imposed specific obligations and timelines without the findings required by the PLRA. For instance, the Court initially set no timelines on the provision of surgical care—when the third injunction was entered in August 2021 it merely noted that no surgeries had yet taken place. The Court ordered that class members were to be evaluated by IDOC and provided a letter with an explanation of a denial. [Doc. 332, pp. 2-3, ¶ 7]. Yet, beginning in January 2023, with no evidence as to the status of Plaintiffs' surgical readiness or care, the Court began mandating that Defendants contact other providers for gender-affirming surgery. [Doc. 552, p. 3, ¶ 2]. However, as demonstrated by the record and as can be explained during an evidentiary hearing, IDOC has worked for nearly two years with one surgeon to set up the pre-surgical and post-surgical guidelines, training, and accommodations. There is no evidence in the record to show that contacting another surgeon will speed this process up in any way. Moreover, this Court has made no particularized findings with respect to the timing of surgery besides noting delays.

In addition, although the Court had entered orders with respect to commissary, in January 2023, the Court for the first time ordered the parties to reach an agreement as to items to be included in a gender-affirming kit for class members. [Doc. 522, p. 4, ¶ 6]. Previously, Defendants had only been ordered to make gender-affirming commissary items "available." [Doc. 384, p. 4, ¶ 8; p. 9, ¶ 7]. Now, the Court is ordering Defendants to provide an unspecified set of items to class members free of charge. Without any findings on whether the unavailability

of certain items evinces deliberate indifference, the parties do not have any parameters in place to assess what items should be considered "standard-issue medical care" or should be considered in creating a gender-affirming kit. This had led to meetings and conversations between counsel for Plaintiffs, counsel for Defendants, and the co-Monitors to discuss what they believe should be "standard-issue medical care." The order requiring the provision of gender-affirming commissary items conflates items the Plaintiffs or co-Monitors prefer with what is constitutionally required.

For these reasons and others not specifically addressed in this motion but addressed elsewhere in the record, the Court's enforcement orders do not operate under the "least intrusive means necessary to correct the violation of the Federal right" but rather conflate preferred care with what is constitutionally required. In following the request of Plaintiffs' counsel or either of the co-Monitors, without making any particularized findings about the constitutional necessity of those measures, the Court overlooked the requirements of the PLRA. For these reasons, the Court's enforcement orders must be vacated.

### C. The enforcement orders entered in this action are not appropriate under the limitations imposed by the PLRA.

Distinct from whether the Court made the necessary PLRA findings in its orders is the issue of whether the orders are, in fact, overly broad. Setting aside any requirement that the Court actually find that its orders extend no further than necessary to correct a violation and are the least intrusive means necessary, the deadlines and specific mandates imposed in the recent orders are not appropriate under the PLRA.

In *Rasho*, the Seventh Circuit Court of Appeals determined that the scope of an injunction entered against IDOC exceeded the bounds set by the PLRA. 22 F.4th at 714. There, like here, the Central District Court determined that changes to the prison system's mental health care

pursuant to the parties' settlement agreement were proceeding too slowly. The district court concluded that IDOC displayed a "lack of a sense of urgency" and entered a permanent injunction setting forth steps to be completed on a mandatory timetable. *Id*. at 706. The Seventh Circuit determined that the court orders did not meet the standard necessary for a finding of deliberate indifference. *Id*. It also determined that the district court order exceeded the remedial limitations allowed by the PLRA. *Id*. The appellate court reversed the order and vacated the injunction. *Id*.

Here, the Court has criticized the timing of changes implemented by IDOC and has entered orders mandating timetables for specific actions, most notably timing for surgical consults to be completed, which was first ordered in January 2023. The Court's January 24, 2023, order stated that the deadlines were in place to "keep [the] efforts on track and provide measurable benchmarks" but they imposed drastic changes impacting IDOC's work. In addition to requiring IDOC to retain additional surgeons, the Court also directed the parties for the first time to "reach agreement on the items to be included in a gender-affirming kit for all class members as standard-issue medical care." [Doc. 522 at 4, ¶ 6]. Even so, in that same order, the Court recognized that progress had been made, even if not as much progress as the Court had expected. [Doc. 522 at 1].

In an April 2023 order the Court again found progress had been made in certain areas but found progress "sluggish" in other areas. [Doc. 552 at 2]. As with the January order, although the Court described its April order as intended to ensure timely progress and benchmarks, it again created new obligations. For instance, the Court determined that IDOC had not been holding its staff sufficiently accountable for misconduct towards class members and despite IDOC's previous gender training for its staff, ordered that Defendants develop a training requested by co-Monitor julie graham and report on its status within 3 weeks from the date of the order. [*Id*. at 8,

¶ 9.d.]. As another example, in the May 11, 2023, order, the Court imposed even more obligations, including that the audit tool (CQI tool) created by IDOC be applied to all class members rather than a statistically significant sample. These "benchmarks" are moving goal posts rather than a means to achieve and measure constitutional compliance.

Falling short in efforts to meet constitutional minimums does not, by itself, equate to deliberate indifference. *Rasho*, 22 F.4th at 711, *citing Peate v. McCann*, 294 F.3d 879, 882 (7th Cir. 2002). In *Rasho*, the district court erred by finding deliberate indifference even though IDOC made significant efforts to improve mental health treatment. This Court has erred in the same way. The record plainly demonstrates that IDOC has attempted to meet the obligations set forth by this Court and has acted in a way that reflects a willingness to change and adapt as new obstacles appear. [*See, e.g.*, Docs. 462, 492, 540, 547-48, 559, 562, 585]. For these reasons, Defendants have not acted with deliberate indifference and the Court's recent orders go well beyond what may be constitutionally required.

### III. Because there has been no final relief entered, this Court should take evidence on the current status and make the appropriate findings.

"The propriety of preliminary relief and resolution of the merits are of course significantly different issues." *Michigan v. U.S. Army Corps of Eng'rs*, 667 F.3d at 782, *quoting Parents Involved in Cmty. Sch. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 721 n. 10 (2007). A plaintiff seeking a preliminary injunction has a lighter burden than one seeking a permanent injunction. The former must only show a likelihood of success on the merits rather than actual success, which is required for the latter. *Id*.

Now that the IDOC directives and plan have been underway since the Summer of 2021, this Court should reassess whether Defendants' policies, procedures, and actions demonstrate

deliberate indifference to the serious medical needs of this class. An evidentiary hearing will put the current facts into the record and allow the Court to make the required findings.

Whether IDOC meets the *constitutional requirements* of class members in this case is certainly an important question—one that is not addressed by the more recent orders entered in this matter. Even so, of the primary similarities with the *Rasho* case that requires vacatur of the injunctions is that significant progress has been made such that it negates a showing of deliberate indifference, otherwise described as "something approaching a total unconcern for the prisoner's welfare in the face of serious risks." *Rosario v. Brawn*, 670 F.3d 816, 821 (7th Cir. 2012), *quoting Collins v. Seeman*, 462 F.3d 757, 762 (7th Cir. 2006). The co-Monitors and this Court have referenced Defendants' improvement and good faith effort. *See, e.g.,* Court's enforcement orders referenced, *supra; see also* Doc. 552 at 2 (noting that co-Monitor Harris found hormone therapy had improved); Doc. 444 at 4 (co-Monitor julie graham reported that IDOC had made partial compliance on commissary, but "has been making a good faith effort towards compliance.").

Things have certainly changed since the August 2021 injunction was entered. In August 2021, the Court noted that IDOC had implemented new Administrative Directives that applied to the care, treatment, and accommodations for class members. [Doc. 331]. Although, at that time the Court was not able "to analyze the flaws in the new policy," the Court found that progress had been made that included hiring consultants and attempting to separate medical/mental health treatment and security issues. [*Id*. at 6]. The Court wrote then that it was "satisfied that IDOC is taking the issue of its care and treatment of transgender inmates seriously." [*Id*.]. But, at that point, the bigger problem noted by the Court was that the policies had not been fully implemented and there were still issues with the provision of hormone therapy while no inmate had received gender-affirming surgery. [*Id*. at 8-9]. Since then, IDOC's policies have been fully

implemented, hormone therapy has improved, with Monitor Dr. Harris affirming that the majority of class members are receiving appropriate care, and surgeries have begun, with the necessary post-operative component in place. [*See* Docs. 462-63]. IDOC has a schedule in place to conduct routine lab work as to hormone therapy. Further, additional transfer requests have been reviewed. Numerous transgender prisoners have been transferred to a facility that matches their gender or have been placed into the PRISM program, which was discussed at trial and has been finalized and implemented in accordance with the Court's order. [*See* Doc. 332, p. 4, ¶ 5]. Medical and mental health providers received WPATH training, and it continues to be mandated for new providers. Staff members have received ongoing training regarding transgender issues and awareness. While shortages of certain commissary supplies still exist, IDOC has put new methods in place to obtain makeup and other gender-affirming items. [*See* Docs. 387 at 5-6, 460].

Overall, IDOC has established that it has tried and remains committed to trying to improve life for transgender prisoners. Defendants have acted with reasonable diligence, explained circumstances where measures are falling short, and have explained what they have done in an effort to work around obstacles. [Doc. 462]. The record is already full of Defendants' significant attempts to provide care and treatment for class members greater than what is constitutionally required. Given the opportunity to provide evidentiary testimony of its policies, procedures and actions, Defendants will demonstrate they have not acted with deliberate indifference, even if they have fallen short in certain areas.

### IV.     The Court erred by failing to allow the Defendants to propose remedial relief.

Defendants have previously raised concerns with the method of achieving compliance with the Court's orders. [Doc. 346 at 4-5; Doc. 499 at 2-3]. The PLRA and interpreting cases recognize the substantial discretion of prison administrators over the institutions they manage,

which is embodied in the PLRA's limitations on equitable relief. *See, e.g., Rasho*, 22 F.4th at 712; *Westefer*, 682 F.3d at 683.

As argued previously, *Westefer* clearly set forth the general framework for remedial injunctions concerning prison conditions. 682 F.3d 670 (7th Cir. 2012). District courts are to "do no more than order IDOC officials [to act] in general terms and to verify that the plan they submit satisfies the relevant constitutional standards." *Id*. IDOC has the authority to craft the procedures, and the district court should "do no more than to order IDOC officials to do so." This means that the trial court enters an injunction but defers to IDOC as to how to plan and implement the relief. *Lipscomb v. Pfister*, case no. 12-cv1041, 2014 U.S. Dist. LEXIS 9366, at *5 (C.D. Ill. Jan. 27, 2014) ("The Court understands [*Westefer*] to mean the injunction awarded is the general instruction to satisfy constitutional obligations; the verification of the plan is simply a way to ensure compliance with the injunction.").

In *Rasho*, the Seventh Circuit found that the district court erred by implementing specific deadlines without allowing for agency input. Instead of mandating what it felt was appropriate, the district court should have deferred to the IDOC officials' proposal which appropriately had general terms to address unconstitutional conditions. *Id.*, citing *Westefer*, 682 F.3d at 686.

Crucially, the Seventh Circuit and other circuits have reiterated the need for comity and recognition of federalism limitations. "Federal injunctions interfere with local control over local decision making, and, in turn, local democracy does not work as our federal constitutional design envisions." *Shakman v. Clerk of Cook Cnty*, 994 F.3d 843 (7th Cir. Apr. 16, 2021), *citing Kindred v. Duckworth*, 9 F.3d 638, 644 (7th Cir. 1993); *Frew v. Hawkins*, 540 U.S. 431, 442 (2004); *Horne v. Flores*, 557 U.S. 433, 448 (2009). It also emphasized that federal courts are not in place to oversee and monitor governmental practices for years on end. *Id*.

With respect to prison injunctions in particular, the United States Supreme Court recognized in *Lewis v. Casey*:

> It is the role of courts to provide relief to claimants, in individual or class actions, who have suffered, or will imminently suffer, actual harm; **it is not the role of courts, but that of the political branches, to shape the institutions of government in such fashion as to comply with the laws and the Constitution**. In the context of the present case: It is for the courts to remedy past or imminent official interference with individual inmates' presentation of claims to the courts; it is for the political branches of the State and Federal Governments to manage prisons in such fashion that official interference with the presentation of claims will not occur. Of course, the two roles briefly and partially coincide when a court, in granting relief against actual harm that has been suffered, or that will imminently be suffered, by a particular individual or class of individuals, orders the alteration of an institutional organization or procedure that causes the harm. **But the distinction between the two roles would be obliterated if, to invoke intervention of the courts, no actual or imminent harm were needed, but merely the status of being subject to a governmental institution that was not organized or managed properly. If—to take another example from prison life—a healthy inmate who had suffered no deprivation of needed medical treatment were able to claim violation of his constitutional right to medical care, see** *Estelle* v. *Gamble*, **429 U.S. 97, 103, 50 L. Ed. 2d 251, 97 S. Ct. 285 (1976), simply on the ground that the prison medical facilities were inadequate, the essential distinction between judge and executive would have disappeared: it would have become the function of the courts to assure adequate medical care in prisons.**

518 U.S. 343, 349-50, 116 S. Ct. 2174, 2179 (1996) (emphasis added in **bold**).

Accordingly, district courts must consider the discretion afforded to prison officials in remedying any violation and refrain from "dictating precisely" what course prison officials should follow. 518 U.S. at 362-63, *quoting Bounds*, 430 U.S. at 818. State prison systems are "entitled to far more than an opportunity for rebuttal" and should be afforded the opportunity to propose the course of action. *Id*. at 363. The now-expired preliminary injunction orders and the later enforcement orders impermissibly encroach upon IDOC's discretion, with increasing frequency. Despite Defendants' early explanation for their methods [Doc. 346 at 3-5], the Court's orders have increasingly become more specific and onerous, dictating what IDOC must do and when. Some portions of the Court's orders have been unclear to the parties and co-

Monitors, raising questions as to how to proceed. [*See* Doc. 564, ¶ 3 (Joint Report)]. The Court has also allowed the Plaintiffs and co-Monitors to provide suggestions that it incorporates into its orders without considering input from Defendants. Or, alternatively, the Court has left it up to the parties to discuss with an effort to reach agreement on the appropriate course of action. [Doc. 584, p. 14, ¶ 10]. This method of proceeding has eroded Defendants' discretion and should be corrected going forward.

**Conclusion**

The Court should recognize the expiration of the preliminary injunctions it has entered and vacate the enforcement orders entered in this matter beginning in January 2023. The Court has erred by straying from the PLRA's requirements and plain language by issuing multiple orders that lack the requisite findings about the necessity of the ordered relief, are unsupported by any continuing constitutional violation, and purport to enforce preliminary injunctions that have all automatically expired. The Court has also erred by failing to follow the procedures for allowing IDOC to propose remedial actions and seeking to exercise the power of the Illinois executive branch to maintain its prisons. It should therefore recognize the expiration of the preliminary injunctions and vacate the enforcement orders.

Then, Court should consider up-to-date evidence as to the Defendants' policies, procedures, and actions to determine whether Defendants are acting with deliberate indifference such that further relief should enter. And in the event that the Court finds further relief is necessary, the Court should allow the Defendants to craft a remedial plan in line with the Court's findings.

WHEREFORE, Defendants respectfully request that this Court declare that the preliminary injunctions [Doc. 384, incorporating Docs. 186-87, 211-12, 336] have expired and have no effect, or, alternatively, vacate the preliminary injunctions. Defendants also request the Court vacate the enforcement orders entered at Docs. 522, 552, and 584. Finally, Defendants request

that the Court allow Defendants to provide up-to-date evidence of IDOC's efforts prior to deciding whether to enter further relief in this action.

                      Respectfully submitted,

                      LATOYA HUGHES, MELVIN HINTON, and STEVEN BOWMAN,

                          Defendants,

| | |
|---|---|
| Lisa A. Cook, #6298233<br>Assistant Attorney General<br>500 South Second Street<br>Springfield, Illinois 62701<br>(217) 785-4555 Phone<br>(217) 524-5091 Fax<br>Email: lisa.cook@ilag.gov<br>       gls@ilag.gov | KWAME RAOUL, Attorney General<br>State of Illinois<br><br>    Attorney for Defendants,<br><br>By:  s/Lisa A. Cook<br>        Lisa A. Cook |

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS DIVISION

| | |
|---|---|
| JANIAH MONROE, MARILYN MELENDEZ, LYDIA HELENA VISION, SORA KUYKENDALL, and SASHA REED,<br><br>Plaintiffs,<br><br>- vs-<br><br>LATOYA HUGHES, MELVIN HINTON, and STEVEN BOWMAN,<br><br>Defendants. | No. 18-156-NJR |

## CERTIFICATE OF SERVICE

    I hereby certify that on May 31, 2023, the foregoing document, ***Defendants' Motion to Vacate Recent Enforcement Orders and to Request an Evidentiary Hearing Prior to Ordering Further Relief***, was electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

| | |
|---|---|
| Abby L. Parsons | aparsons@kslaw.com |
| Sarah Jane Hunt | sarahjane@tkennedylaw.com |
| Thomas E. Kennedy, III | tkennedy@tkennedylaw.com |
| Brent P. Ray | bray@kslaw.com |
| Samantha G. Rose | sam.rose@kirkland.com |
| Amelia Bailey | abailey@kirkland.com |
| Camille Bennett | cbennett@aclu-il.org |
| And all other counsel of record | |

    s/ Lisa A. Cook
    Lisa A. Cook, #6298233
    Assistant Attorney General
    Office of the Attorney General
    500 South Second Street
    Springfield, Illinois  62701
    (217) 785-4555 Phone
    (217) 524-5091 Fax
    Email: lisa.cook@ilag.gov