**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| JANIAH MONROE, MARILYN MELENDEZ, LYDIA HELÉNA VISION, SORA KUYKENDALL, and SASHA REED, individually and on behalf of a class of similarly situated individuals, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | Civil No. 3:18-cv-00156-NJR |
| v. | ) ) ) | |
| ROB JEFFREYS, MELVIN HINTON, and STEVEN BOWMAN, | ) ) ) ) | |
| Defendants. | ) | |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO VACATE**

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................................... 1

FACTUAL BACKGROUND .................................................................................... 2

LEGAL STANDARD................................................................................................ 7

ARGUMENT ............................................................................................................. 8

   I.   The Court's Orders Comply With The PLRA. ................................................. 8

     A.   The Orders Contain Findings of "Need, Narrowness, and Intrusiveness." .................. 8

     B.   Defendants Waived Any Challenge By Recognizing the Court's Ongoing Orders Until Contempt was Imminent................................................... 11

     C.   The Court Already Finalized Its Order for Prospective Relief. .................................. 11

   II.   The Record Has Not Changed In Two Years To Warrant A New Trial.......................... 12

     A.   Defendants' Alleged "Changed Circumstances" Do Not Justify a New Evidentiary Hearing. ................................................................................ 13

     B.   Consistent with the PLRA, the Court's Orders Permit Defendants to Comply in their Own Way. .................................................................. 16

   III.   The Court Need Not Find A "Current And Ongoing Violation" Of The Constitution Because There Is No Pending Motion To Terminate And Any Such Motion Is Premature. ................................................................ 18

CONCLUSION.......................................................................................................... 19

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Braggs v. Dunn*,
  2020 WL 5517262 (M.D. Ala. 2020) ................................................................. 19

*Campbell v. Kallas*,
  936 F.3d 536, 545 (7th Cir. 2019) .................................................................... 2

*Fields v. Smith*,
  653 F.3d 550 (7th Cir. 2011) ....................................................................... 9, 11

*Horne v. Flores*,
  557 U.S. 433 (2009) ......................................................................................... 7

*Jones-El v. Berge*,
  374 F.3d 541 (7th Cir. 2004) ..................................................................... 10, 16

*Mansoori v. Shaw*,
  2002 U.S. Dist. LEXIS 11670 (N.D. Ill. 2002) ................................................ 8

*Mares v. Busby*,
  34 F.3d 533 (7th Cir. 1994) ............................................................................. 7

*NLRB v. Haven Salon +  Spa, Inc.*,
  60 F.4th 1058, 1059 (7th Cir. 2023) ............................................................. 18

*Rasho v. Jeffreys*,
  22 F.4th 703 (7th Cir. 2022) .............................................................. 9, 17, 18


**Statutes**

18 U.S.C.A. § 3626(a)(2) ................................................................................... 12

18 U.S.C.A. § 3626(f)(5) ................................................................................... 11

18 U.S.C.A. § 3626(b)(3) ................................................................................... 18


**Other Authorities**

Fed. R. Civ. P. 60(b) ........................................................................................... 7

## INTRODUCTION

Following extensive evidentiary hearings and detailed factual findings, this Court entered injunctive relief that complies with the Prison Litigation Reform Act (PLRA) to address the systemic failures by Defendants to provide constitutionally required health care for prisoners with gender dysphoria in their custody. But Dendants' failures did not end there. Defendants have continued to fail to abide by the Court's Orders over the nearly two years since trial.

This disturbing pattern could not go on, and the Court entered its May 11 Order: "If Defendants again fail to comply with the Court's directives and schedule set forth herein, they will be held in contempt, and the Court will impose appropriate sanctions." Dkt. 584. The Court set a June 2 status conference to determine compliance. *Id*.

How did Defendants spend the next 22 days? Instead of doing everything possible to comply with the May 11 Order, they researched, drafted, and filed a Motion to Vacate and a Motion to Stay. Even setting aside Defendants' transparent attempt to dodge sanctions, these motions lack merit as much as they do credibility.

The PLRA operates to make sure that vague and overreaching orders do not impose a burden upon prison systems beyond what is necessary to correct what is wrong. This Court's well-founded, extremely detailed and narrowly tailored orders are ***not*** what the PLRA was designed to prevent. This is particularly true given the Court's employment of qualified Monitors to conduct and report on conditions at Defendants' facilities for transgender prisoners. If anything, the Court went above and beyond to make sure that its Orders are specific and up to date.

Defendants' Motion to Vacate should be denied.

## FACTUAL BACKGROUND

The PLRA findings that underpin the Court's recent orders rest on a foundation that was laid in 2019.  Defendants do not address these findings or say what is wrong with them now.  The Court's December 2019 Order summarized the pertinent evidence from experts, Plaintiffs and Class members, and Illinois Department of Corrections (IDOC) personnel. Dkt. 186 at 3-28. At the outset of its discussion in the December 2019 Order, the Court made it very clear that it was aware of the PLRA "need/narrowness/intrusiveness" requirements, quoting the relevant language. Dkt. 186 at 29.

- **Need.** The Court first noted that "[t]he parties agree that gender dysphoria is an objectively serious medical condition."  Dkt. 186 at 29-30 (citing *Campbell v. Kallas*, 936 F.3d 536, 545 (7th Cir. 2019)).

- **Narrowness.** The debate here revolved around the standards of care, and in particular whether the WPATH standards set the standard of care "necessary" to correct the violation of a federal right implicit in any [systemic] failure to treat a "serious medical condition," which the parties agreed gender dysphoria was. The Court explained that it was persuaded by the testimony of Plaintiffs' experts, who relied on nationally accepted standards, that those standards were the "floor" for treating gender dysphoria (especially since Defendants did not put forth any expert to challenge this, and many other courts had so found). Dkt. 186 at 30-31. Indeed, the Court noted, "Defendants' witness, Dr. Puga, testified he was not familiar with any other association that rivals WPATH's level of universal acceptance" in the field.  *Id*. at 31.

- **Intrusiveness.** The Court simply required Defendants to provide medically-recognized treatments for gender dysphoria.  The Court required Defendants to set up mechanisms by which Class members could be evaluated—by appropriately qualified professionals—for these medically-necessary treatments and obtain them if they were determined to be, again, medically necessary.  In directing changes to the system by which Class members were evaluated to receive this medically necessary care, finally, the Court noted the various ways in which the current system denied care, sometimes with disastrous consequences.  *Id*. at 32-35.

- **Public Interest.** The opinion made clear that "the public has the 'highest' interest in preventing the violation of [ ] constitutional rights." *Id*. at 36 (citing *United States v. Raines*, 362 U.S. 17 (1960)).

Upon this foundation, the Court set out relief framed in the most non-intrusive way possible: "cease the policy and practice of" and "develop policies and procedures" to allow access to qualified clinicians; "allow inmates to obtain evaluations for gender dysphoria"; "develop a policy to allow [] medically necessary social transition"; and "advise the Court what steps, if any, IDOC has taken to train" staff on transgender issues including "the harms caused by misgendering and harassment." Dkt. 186 at 37-38. Defendants filed a motion for reconsideration of this order (Dkt. 203) in which they once again challenged the use of the WPATH standards to set the constitutional floor, but the Court again noted that Defendants had offered no "alternative" or "an expert who can speak to differing medically accepted treatment criteria." Dkt. 211 at 6-7.

These findings remain as pertinent today as they were in 2019. But critically, they have continuously been supplemented by new evidence since 2019.

In August 2021, the Court conducted a four-day trial. On the final day of trial, the Court commented on the evidence and stated, "I find that IDOC is not in compliance with the preliminary injunction order and that the reasons for issuing preliminary injunctive relief as set forth in my December 19, 2019 order and the one that followed that still call for injunctive relief." Dkt. 328 at 5-6; *see also id*. at 11-12 ("for the same reasons I stated in the preliminary injunction order, I find that Defendants continue to be deliberately indifferent to Plaintiffs' serious medical condition"). The Court further observed that "I do not want to run the Department of Corrections" and that accordingly the Court's practice had been not to "order[] transfers or surgery" but to order "simply constitutionally adequate medical care and treatment for gender dysphoria and competent evaluation for transfers and surgery." *Id*. at 9.

Quoting the PLRA's "need/narrowness/intrusiveness" requirements, the Court reiterated that these requirements were why, to date, it had not ordered "specific things to be done" but that

they be "competently evaluated and considered." *Id*. at 10. The Court then supplemented the existing injunctive relief with additional directives on issues that had arisen in the course of the four days of trial, finally noting that "[i]f Defendants seek clarification of anything in my ruling today or the order that will be issued by Monday setting out these rulings, they can seek clarification by filing a motion also on or before August 16th." *Id*. at 14-21.

In the Memorandum and Order issued the following Monday, August 9, 2021 (Dkt. 331) the Court "CONTINUE[D] its previous preliminary injunction" and ordered additional relief as the result of the evidence at trial, stating, among other matters, that "the Court adopts the discussion of the claims in its previous order (Doc. 186)." Dkt. 331 at 2, 10. The deadline of August 16 for Defendants to seek clarification was reiterated (*id*. at 13), but Defendants did not file any such motion. On December 1, 2021—more than 90 days after the issuance of the August 9 order—the Court issued an "Order for Status Report" directing the Defendants to "file with the Court, no later than December 8, 2021, a status report disclosing whether or not they have accomplished the matters they were ordered to finalize and implement within 120 days of the Court's August 9, 2021, Preliminary Injunction (Doc. [332], pp. 3-4). That 120-day deadline falls on December 7, 2021." Dkt. 367.

That 120-day status report—which Defendants filed without protest (*see* Dkt. 369)— formed part of an additional factual post-trial substrate, along with post-trial briefing and other filings of reports and documents (*e.g.*, Dkt. 355, 357, 359). Thereafter, the Court remained unpersuaded of Defendants' compliance with the relief based on its findings to date, or its ability to comply without ongoing supervision. In its December 13, 2021 Order, the Court noted this additional factual record (including some 1,700 pages of records relating just to hormone treatments filed with Defendants' 60-day status report), and notified the parties that, after having

4

previously rejected Plaintiffs' proposals that a monitor be appointed, "the Court concludes that the post-trial remedial phase of this matter is sufficiently complex" to warrant the appointment of a Monitor to report on "compliance with the ordered injunctive relief."  Dkt. 370 at 4-6.

In addition to the inability to determine, from the records submitted, whether hormone treatments were progressing, the Court also noted:

> IDOC has completed evaluations of Plaintiff class members who have requested gender-affirming surgery and transfers, but this process will be ongoing for those whose requests were denied. The new Continuing Quality Improvement tool, PRISM project, and training programs represent progress (Doc. 369, pp. 3-5), but Defendants' past track record on implementation of policy revisions raises concern over when and how effectively these changes will be fully put into practice to produce tangible results and improve conditions for the Plaintiff class. And by Defendants' own description, these changes are still in the beginning stages and not fully implemented.

*Id*. at 6.  The Court also observed that the "August 2021 trial testimony demonstrated, however, that Defendants had not made or implemented the changes necessary to comply with the December 2019 injunction" and that, "[t]he 120-Day Status Report demonstrates progress, but also reveals that Defendants have not fully implemented the requirements of the August 2021 order." Dkt. 370 at 4-5.

On February 7, 2022, the Court dutifully summarized the results of the four-day trial and supplemented the relief previously ordered.  Dkt. 383.  Defendants acknowledge the resulting Order (Dkt. 384) incorporated the previous injunctive orders issued in the case (Dkt. 587 at 1) but fail to note that the Order (i) incorporates by references its findings from August 2021 (Dkt. 383 at 2), and (ii) states that "the written Order/Preliminary Findings of Fact and Conclusions of Law dated August 9, 2021 … noted that the previous (December 2019) Preliminary Injunction continues in force."  Dkt. 383 at 1.

As in its previous Orders, the Court explicitly referenced the requirements of the PLRA in the course of its summary and analysis.  Dkt. 383 at 64.  On the basis of the post-trial briefing

and status reports, the Court also ordered additional relief in the *same* categories already identified and previously ordered. Dkt. 383 at 74-87. The Order thus represented a comprehensive summation of (i) the findings made over the course of the Court's active management of the case dating back to August 2019, and (ii) the relief the Court found was required—within the PLRA—for the constitutional violations it found based upon the record evidence.

After February 2022, except for orders relating to the Court's decision to divide the monitoring duties between two Monitors, the Court issued no further Orders for several months, but evidence continued to come its way. Defendants submitted reports and documents in accordance with the February Order (*see* Dkt. 392-96, 400-404, 414-46), and Plaintiffs submitted declarations from the named Plaintiffs and Class members about ongoing problems (*see* Dkt. 405-10, 417). On August 12, 2022, Co-Monitor Dr. Amanda Harris issued her initial report on the issues within her monitoring sphere (Dkt. 439), and on September 1, 2023, Co-Monitor julie graham submitted graham's first report (Dkt. 444). Since then, the Monitors have issued additional reports and the parties have responded to them.

On November 14, 2023, as a result of the findings in the Monitors' reports and ongoing complaints from Class members, Plaintiffs filed a Motion for Finding of Contempt. Dkt. 455. Plaintiffs submitted as additional evidence eleven declarations from Class members in seven prisons, detailing a spectrum of continuing failure to address the serious medical needs relating to their gender dysphoria, as well as routine harassment, humiliation, and psychological distress. Dkt. 467-74, 478-81, 483-84.

As a result of Plaintiffs' Motion, the Court ordered monthly hearings attended by the Co-Monitors and parties. At these hearings, the Court collected additional information, along with other data and information collected by the Court, precipitating the January, April, and May 2023

Orders Defendants now seek to vacate.  *See* Dkt. 522 at 1-3; Dkt. 552 at 1-3; Dkt. 584 at 1-7.  The Court also imposed additional reporting obligations on both parties as to matters which it regarded as lagging, mostly upon Defendants, but also upon Plaintiffs (*e.g.*, violations of private shower requirements).  Dkt. 522 at 4.

These 2023 Orders address long-standing issues in the case where the Court made need, narrowness and intrusiveness findings and ordered relief narrowly tailored to address the wrongs—hormone therapy; gender-affirming surgery; CQI; transfers and housing; commissary and gender-affirming items; showers; searches; training, and staff conduct.  Dkt. 522 at 3-6; Dkt. 522 at 4-9; Dkt. 584 at 10-15.  There is no new category of relief.  Instead, everything is directly tethered to an issue upon which significant evidence exists in the record.

**LEGAL STANDARD**

Defendants moved to vacate the Court's enforcement orders pursuant to Federal Rules of Civil Procedure 60(b)(5) and (b)(6), along with the Prison Litigation Reform Act ("PLRA"), 18 U.S.C. § 3626.  Rule 60 provides:  On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief.  FED. R. CIV. P. 60(b).

This rule, however, is "an extraordinary remedy and is granted only in exceptional circumstances." *Mares v. Busby*, 34 F.3d 533, 535 (7th Cir. 1994) (internal qotation marks and citation omitted).  Specifically, subsection 60(b)(5) may not be used to challenge the legal conclusions on which a prior judgment or order rests and the movant must show that "a significant change either in factual conditions or in law" renders continued enforcement "detrimental to the

7

public interest." *Horne v. Flores*, 557 U.S. 433, 447 (2009). And "'[r]elief under Rule 60(b)(6) is warranted only upon a showing of extraordinary circumstances that create a substantial danger that the underlying judgment was unjust.'" *Mansoori v. Shaw*, 2002 U.S. Dist. LEXIS 11670, at *7 (N.D. Ill. 2002) (quoting *Margoles v. Johns*, 798 F.2d 1069, 1073 (7th Cir. 1986)). Regarding interpretation of the PLRA, an argument that the court "got it wrong" is not enough to meet the "extraordinary circumstances" bar for relief. *Id.*

## ARGUMENT

### I.    The Court's Orders Comply With The PLRA.

Defendants' disingenuous attempts to delay or avoid a finding of contempt by claiming they have no enforceable obligations to Plaintiffs does not change the underlying conclusion: nothing in the Court's orders violates the PLRA. The PLRA prescribes the expiration of preliminary injunctive relief "unless the court makes the findings required under subsection (a)(1) for the entry of prospective relief and makes the order final before the expiration of the 90-day period." 18 U.S.C.A. § 3626. Other than a single conclusory statement claiming that the Court failed to make the "need-narrowness-intrusiveness" findings required by subsection 3626(a)(1)(A), Dkt. 587 at 5, Defendants do not make any substantive arguments regarding the scope of the current injunction or its predecessors. Defendants also misread the requirements of the PLRA with regard to making the current injunction "final." Instead, Defendants' motion is representative of an ongoing pattern of delay and denial of constitutionally required treatment to class members.

### A.  The Orders Contain Findings of "Need, Narrowness, and Intrusiveness."

First, the Court has already made findings of fact sufficient to satisfy the PLRA's "need-narrowness-intrusiveness" standard. The Court's February 2022 Memorandum and Order contained a thorough discussion of the evidence presented at trial and the Court's findings of fact

and conclusions of law. Dkt. 383. Contrary to Defendants' contentions, the PLRA does not require a "provision-by-provision explanation of a district court's findings." *Fields v. Smith*, 653 F.3d 550, 558 (7th Cir. 2011) (quoting *Armstrong v. Schwarzenegger*, 622 F.3d 1058, 1070 (9th Cir. 2010)). Instead, the Court is required to show that it "evaluated the record as a whole and identified evidence that fully supports the scope of the injunctive relief granted." *Fields*, 653 F.3d at 558. The Court did so here. *See, e.g.*, 8/5/2021 Trial Transcript; Dkt. 331, 370, 383 (incorporating prior findings and orders).

Second, Defendants overstate the requirements of the PLRA with regard to the three challenged enforcement orders. Defendants rely heavily on *Rasho*, but *Rasho* is inapposite because of the specific relief ordered in that case compared to the more narrowly tailored relief and less intrusive relief ordered here. The *Rasho* court found that part of the district court's injunction violated the "PLRA's least-intrusive means requirement" because, for example, "the judge ordered IDOC to hire and maintain precise numbers and types of personnel." *Rasho v. Jeffreys*, 22 F.4th 703, 712 (7th Cir. 2022). Here, the Court has continually shown great deference to the operational requirements of IDOC and has consistently required IDOC to meet constitutional standards without involving itself in the day-to-day operations of IDOC. *See, e.g.*, Preliminary Rulings/Orders by the Court, 8/05/2021 Trial Transcript at 10 (The Court: "[T]he Prison Litigation Reform Act applies to this case…. That's why I haven't ordered that specific things are done, but, instead, that they are competently evaluated and considered."); Dkt. 383 at 68 ("The focus [of the ordered relief] must be on the outcome …  but the Court leaves that up to the Monitor to analyze and make appropriate proposals.")

Finally, this Court is not required to make additional need-narrowness-intrusiveness findings when it is acting to enforce its own previous and valid grant of prospective relief under

the PLRA. In *Doe v. Cook County*, the Seventh Circuit held that "simple enforcement" of already ordered prospective relief "does does not require a new round of [need-narrowness-intrusiveness] findings under § 3626." 798 F.3d 558, 564 (7th Cir. 2015) (finding that enforcement of a consent decree did not require new findings). "So long as the underlying [prospective relief] remains valid …the district court must be able to enforce it." *Jones-El v. Berge*, 374 F.3d 541, 545 (7th Cir. 2004). The district court retains authority to enforce its orders where, as here, "the defendants here have not (yet) made a § 3626(b) motion to terminate or modify the decree." *Id*.

Defendants' vague assertions that the Court's enforcement orders do not fulfill the PLRA's requirements, and should therefore not be binding on Defendants, are as unhelpful as they are heartless. "Problematically, the defendants failed to make any of their highly fact-bound arguments as to why the order would violate the PLRA in their briefing to the district court …. This failure … deprived the plaintiffs of a meaningful opportunity to respond." *Jones-El v. Berge*, 374 F.3d 541, 545 (7th Cir. 2004). Had Defendants raised specific examples of which aspects of the enforcement orders purportedly violate the PLRA, Plaintiffs could respond more comprehensively.

In the alternative, Plaintiffs could argue, for example, that the Court's additional findings of ongoing violations of the search policy were sufficient to support a new injunction. *See, e.g.*, *id*. at 6-7 ("Class members continue to report… a search being conducted by the wrong gender officer.").[1]

---

[1]     To the extent this Court has ordered any "new" relief (it has not), the Court's orders already fulfill the PLRA's requirements under the standard established in *Fields*.

**B. Defendants Waived Any Challenge By Recognizing the Court's Ongoing Orders Until Contempt was Imminent.**

The parties have been acting as if the preliminary injunction remains in effect since it was entered. Now, when Defendants face possible sanctions for their failure to comply with the existing injunctive relief, they claim that the operative injunction expired May 8, 2022. This is inconsistent with Defendants' representations to the Court, Plaintiffs, and the Co-Monitors. For example, nearly five months after the purported expiration date of the operative Order, Defendants acknowledged in their October 2022 Response to Co-Monitor julie graham's report that "IDOC w[ould] continue to work internally, with vendors, and with the Co-Monitors to comply with this Court's orders and to improve the care and treatment of class members in its custody." Dkt. 448 at 4. Defendants have also continued to work with the Co-Monitors since they were appointed despite the PLRA's command that "[i]n no event shall the appointment of a special master extend beyond the termination of the relief." 18 U.S.C.A. § 3626(f)(5). Defendants waived any challenge to the finality of the injunction by representing to Plaintiffs, the Court, and the Co-Monitors that they were complying with, and intended to continue complying with, the injunctions.

**C. The Court Already Finalized Its Order for Prospective Relief.**

One way to resolve Defendants' motion is for the Court to clarify that this Court's February 7, 2022 injunction was intended to be "final" despite its "preliminary injunction" label. That was, apparently, the impression that all parties were operating under until the eve of a status conference where Defendants may have been held in contempt due to their ongoing noncompliance with this Court's Orders.

Defendants' motion is premised on their assertion that this Court never finalized its orders for prospective relief, despite Defendants' ongoing attempts to comply with the supposedly

expired orders. Defendants apparently read a requirement into the PLRA that this Court must enter a permanent injunction to avoid the expiration of its orders for prospective relief, but this ignores the text of the PLRA, which only requires that the Court "makes the order final." 18 U.S.C.A. § 3626(a)(2).

There is no binding authority that clarifies what it means to make an order "final" under the PLRA or that requires a Court to make a preliminary injunction into a permanent injunction in order to fulfill the PLRA's finality requirements. In its August 9, 2021 Memorandum and Order regarding its Preliminary Injunction, the Court stated that "prior to the entry of final judgment, [the Court] will summarize the testimony of each witness at trial and the depositions and exhibits." Dkt. 331 at 2. In the Court's February 7, 2022 Memorandum and Order, the Court, as promised, "more fully summarize[d] the August 2021 bench trial testimony and the depositions and exhibits submitted at trial, factual findings, and conclusions of law supporting the preliminary injunctive relief previously ordered." Dkt. 383 at 2. The Court then continued the existing injunctive relief and ordered additional relief injunctive relief consistent with its review of the record. Dkt. 383 & 384. Defendants cite to no binding precedent that suggests this was insufficient to fulfill the PLRA's finality requirements. Essentially, the Court said that it would render a final judgment after reviewing the evidence, then ordered additional prospective relief in the same order in which it reviewed that evidence.

## II.    The Record Has Not Changed In Two Years To Warrant A New Trial.

Once PLRA findings have been made, the PLRA contemplates that, until a two-year threshold is met, a termination motion and additional hearing are not ripe.  A court may need to make additional findings if new relief is ordered, but nothing that the Court has ordered in the last six months is new.

Defendants make absolutely no effort in their Motion to show that the circumstances that warranted relief in 2019 and 2021 have materially changed.  Defendants start from the false premise that the Court is uninformed, stating that they "request an evidentiary hearing so the Court can be fully informed prior to entering further . . . orders . . . ." Dkt. 587 at 1.  As detailed in the Factual Background, this premise and this request are incomprehensible after two substantial evidentiary hearings in this case, many reports from Defendants, the two Court-appointed monitors, declarations and reports submitted by Plaintiffs, and monthly conferences including the Monitors starting in December 2022 in which the Court has questioned the parties and the Co-Monitors extensively as to the status of the matters in her Orders.

Defendants have had ample opportunity in the past several months, in the reports they have been directed to make to the Court, the responses they have been permitted to make to the Co-Monitors' reports, and the regular conferences, to "fully inform[]" the Court of whatever Defendants believe shows their substantial progress in delivering constitutional care to the Class. Defendants pretend that the Court's recent orders have been entered in some kind of factual void, necessitating a new evidentiary proceeding, but in fact, the Court has found, on the basis of an ongoing and continuously supplemented factual record, that the relief it originally ordered is still required and needs reinforcement.

### A.    Defendants' Alleged "Changed Circumstances" Do Not Justify a New Evidentiary Hearing.

Defendants highlight two specific examples to attempt to demonstrate that circumstances have changed to warrant relief from the Court's Orders. These examples, however, pale in comparison to the long list of ongoing failures by IDOC to provide constitutionally adequate medical and mental health care to the class.  Neither (collectively or individually) warrant a new evidentiary hearing.

1. <u>The requirement to identify additional surgeons does not warrant a new hearing.</u>

The first of two specific issues Defendants raise relates to its perception that the Court "ordered Defendants to begin scheduling consultations and surgeries with another surgeon or risk being held in contempt." Dkt. 587 at 4-5. This is factually inaccurate. Instead, in the January 2023 Order, in the wake of Defendants' very slow progress in providing this essential medical care to Class members, the Court directed Defendants to file a list of additional providers "*contacted*" about gender-affirming surgery. Dkt. 522 at 3 (emphasis added). Defendants do not explain what is so extremely burdensome about "contact[ing]," surgeons, or why this violates comity. In any event, Defendants did not file this list; instead, they filed an explanation of why they needed to continue to work with Dr. Loren Schechter (and him only). Dkt. 540 at 2-4.

In the April Order, the Court noted Defendants' filing, but also the slow rate of surgeries, and directed Defendants either to "report whether and when another surgical provider [in Dr. Schechter's practice] at Rush . . . will start accepting patients" or, again, file a list of other providers contacted. Dkt. 552 at 4. Defendants also did not do this. On April 28, 2023, Defendants once again simply filed a statement saying that "they wish to continue working with Dr. Schechter." Dkt. 571 at 1. When the surgical consultation schedule referenced in that filing showed that the 13 Class members now approved for surgeries were not having their *consultations* for surgery until June and July (meaning that the actual dates of surgeries were still unknown), the Court noted that this, and the flouting of the Court's prior orders about contacting additional providers, did not demonstrate "reasonable diligence." Dkt. 584 at 7-8. The resulting order, however, merely directed Defendants, once again, to report "whether or when another surgical provider at Rush [] will start accepting patients," or to file a list of other providers contacted. Dkt. 584 at 10.

14

In any event, the Court's request for Defendants to contact additional surgical providers is justified.  In March 2022, Defendants filed an under seal list of 16 Class members who had been approved for surgery.  Dkt. 415 at 7-8.  As of December 5, 2022, when Defendants filed their Response to Plaintiffs' Motion for Finding of Contempt, *no surgeries had yet taken place*—Defendants had the temerity to argue that the Court's order "contained no requirement that actual surgery be completed" within any timeframe.  Dkt. 462 at 5.  Defendants blamed the slow progress on Dr. Schechter's transfer of hospitals (*id.* at 6), and complained about Plaintiffs' proposal that another physician in addition to Dr. Schechter be found.  *Id.*  In January and February 2023, in the wake of Plaintiffs' Motion, three gender-affirming surgeries (one mastectomy and two vaginoplasties) finally took place; a second mastectomy has now reportedly also been completed. This is slow progress on an original list of 16, especially when how many more Class members urgently seek this medically-necessary care remains unknown.

2.    Provision of a "gender affirming kit" to all class members does not warrant a new evidentiary hearing.

The other issue about which Defendants specifically complain is items for the "gender-affirming kit" for Class members but it, too, does not provide a basis for a finding of changed circumstances to warrant an evidentiary hearing.  The Court made findings at trial that gender-affirming items are medically necessary and should be provided to the Class Members.  The Court's recent Orders on this issue merely relate to enforcement and do not require new findings. *See Doe*, 798 F.3d at 564; *Jones-El*, 374 F.3d at 545. The fact that the parties are still negotiating over what should be provided to the Class is evidence that circumstancese have ***not*** changed.  For example, the Court ordered both parties "confer with each other and the Co-Monitors . . . to reach agreement on the items to be included in a gender-affirming kit for all class members as standard-issue medical care. . . . The parties shall continue this process and shall set compliance deadlines

15

. . . The parties shall be prepared to report on progress in this area at the next status hearing." Dkt. 584 at 6.  The parties are doing just that.

There is no dispute that Defendants have had difficulty in sourcing and providing items to comply with the Court's Orders.  Currently, the Department already distributes free underwear and other items to *all* prisoners, and medically needed items are also provided free of charge to prisoners once they are determined to be medically necessary.  On March 10, 2023, the Co-Monitors and the parties had an initial meeting about the issues relating to Class member access to gender-affirming items.  Co-Monitor julie graham proposed that there be a "kit," and Plaintiffs offered a written proposal for the "kit" prior to the March 10 meeting.  As a result of the discussion at that meeting (and further discussion by Plaintiffs' counsel with their expert, Dr. Randi Ettner), Plaintiffs subsequently presented a revised proposal to Defendants and Co-Monitor julie graham.  That proposal was still under review when Defendants filed their motion—julie graham had not yet commented on it.  In other words, nothing has changed to warrant the Court's attention now.

**B.   Consistent with the PLRA, the Court's Orders Permit Defendants to Comply in their Own Way.**

Defendants complain that Court failed to let Defendants make their own plans but the Court allowed Defendants to comply in any way possible.  And when Defendants' plans proved ineffective, the Court let them make other plans—for example, the new training program for staff.  Despite this flexibility, Defendants repeatedly missed deadlines.  If more "comity" could be extended to them, it is hard to imagine what that would look like.

In February 2022, the Court acknowledged that, "[w]hile changes certainly need to be made to accomplish the relief the Court has ordered," it could not at that time "simply … implement the wide-sweeping revisions to Administrative Directive 4.103.104 Plaintiffs seek." Dkt. 383 at 68 (citing *Westefer* and *Rasho*).  Accordingly, the Court suggested that Administrative

Directive alterations be a topic to be discussed by the Monitor and the parties, with a "focus ... on outcome," meaning that "class members must have timely decisions and action on requested treatment for gender dysphoria." *Id*.  The Court firmly maintained this course in all subsequent orders, directing meetings of the parties and the Co-Monitors on a regular basis to attempt to reach consensus on the policy changes that would facilitate these "outcomes." *See e.g.,* Dkt. 522 at 1-2, 552, 577, 584.

Of course, the Court did not permit Defendants to make its plan in a void, without reporting to the Court on the results of their "plan[ning]" and without engaging in dialogue with the expert Co-Monitors and representatives of the Class whose welfare depends on these "plans." If the results of those plans are thus far disappointing and sluggish, that is neither the Court's fault nor because the Court somehow curtailed Defendants' ability to make their own plans.  Either way, the Court is entitled to have the goal achieved by *some* means, hence the January, April, and May Orders.

As discussed earlier, Defendants rely heavily on *Rasho*, but significant differences exist, critically the passage of time. In *Rasho*, the Seventh Circuit found that it was premature to hold IDOC deliberately indifferent for failing to meet its timetables in a plan to improve mental health care, when the plan was only formed in a 2016 settlement, the district court entered its order in 2018, and the defendants made other progress that the Court regarded as notable (specifically, expensive construction projects).  22 F.4th at 707-08.  Here, over three-and-a-half years passed since the Court first ordered relief for the Class; soon it will be four.  When Defendants failed to meet timetables, and presented reasons for those failures, the Court extended those timetables. But a Court need not tolerate perpetual violation of its orders. *NLRB v. Haven Salon + Spa, Inc*., 60 F.4th 1058, 1059 (7th Cir. 2023) ("Parties ignore court orders at their peril").

17

**III.    The Court Need Not Find A "Current And Ongoing Violation" Of The Constitution Because There Is No Pending Motion to Terminate And Any Such Motion Is Premature.**

Defendants' Motion to Vacate—filed under the auspices of Section 3626(a)(1)—seeks to improperly add a showing of a "current and ongoing violation" not required under that section of the PLRA. For example, Defendants argue that "the preliminary injunctions and enforcement orders must be vacated because Plaintiffs cannot prove a ***continuing*** constitutional violation, *i.e.*, deliberate indifference to a serious medical need[.]" *See, e.g.*, Mot. at 3 (emphasis added); *see also id.*, Section II. But that showing of a continued violation is only required to terminate an order of the court and no such motion to terminate is pending here. *See, e.g.*, 18 U.S.C. § 3626(b)(3). At least one court considered and rejected the same misreading of the PLRA:

> The termination provision of § 3626(b)(3) requires a court to find that the relief at issue "remains necessary to correct a current and ongoing violation of the Federal right," and that it is narrowly tailored and the least intrusive means of doing so. 18 U.S.C. § 3626(b)(3). That provision requires ***both*** a "current and ongoing violation" ***and*** that the relief meet the need-narrowness-intrusiveness finding as to that ongoing violation.

> By contrast, § 3626(a)(1)(A) requires only that the relief "extends no further than necessary to correct the violation of the right" and is narrowly drawn and the least intrusive means to address the violation. ***The absence of the "current and ongoing" language from § 3626(a)(1)(A), which otherwise duplicates the standard of § 3626(b)(3), is conspicuous and must be given interpretive significance.*** And interpreting the need-narrowness-intrusiveness requirement to subsume the "current and ongoing violation" standard would make the latter language in § 3626(b)(3) redundant.

*Braggs v. Dunn*, 2020 WL 5517262, at *35-36 (M.D. Ala. 2020) (emphasis added). In other words, Defendants' motion does not require a showing of a "current and ongoing" violation.

Even if this was a requirement (it is not), it is premature by almost a year. Defendants are not entitled to seek termination of this Court's Orders until at least "2 years after the court granted or approved the prospective relief," which, calculated from the February 2022 Order, is no sooner

than February 2024. "[P]rospective relief" is defined as having the "findings" and is "ma[de] final". *See* § 3626(b)(1)(A)(i)). Worse, if the Court credits Defendants' argument that the February 2022 Order does not comply with the PLRA, then the two-year clock has not even begun. For this additional reason, the Court should deny Defendants' premature attempt to terminate its remedial Orders.

To be sure, Defendants cannot show that the statutory exception applies that termination is "otherwise legally permissible" at this time to avoid the two-year rule. *See* § 3626(b)(4) ("Nothing in this section shall prevent any party [] from seeking modification or termination before the relief is terminable under paragraph (1) or (2), to the extent that modification or termination would otherwise be legally permissible."). The only possible basis for this exception to apply here would be if Defendants had fully complied with all of the Court's Orders. But as demonstrated with extensive evidence in Section II, that is a feat Defendants have not come close to achieving.

There is no requirement that Plaintiffs demonstrate a "current and ongoing violation" of the Eighth Amendment to deny Defendants' Motion to Vacate.

## CONCLUSION

For the reasons stated herein, the Court should deny Defendants' Motion to Vacate in its entirety.

19

Dated: June 20, 2023

Respectfully submitted by:

*/s/ Abby L. Parsons*

**Amelia H. Bailey**
**Thomas Leahy**
KIRKLAND & ELLIS LLP
300 North LaSalle Street
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
*amelia.bailey@kirkland.com*
*thomas.leahy@kirkland.com*

**Camille E. Bennett**
**Michelle T. García**
ROGER BALDWIN FOUNDATION
OF ACLU, INC.
150 North Michigan Avenue, Suite 600
Chicago, IL 60601
Telephone: (312) 201-9740
Facsimile: (312) 288-5225
*cbennett@aclu-il.org*
*mgarcia@aclu-il.org*

**Brent P. Ray**
KING & SPALDING LLP
110 N. Wacker Drive, Suite 3800
Chicago, IL 60606
Telephone: (312) 995-6333
Facsimile: (312) 995-6330
*bray@kslaw.com*

**Abby L. Parsons**
KING & SPALDING LLP
1100 Louisiana Street, Suite 4100
Houston, TX 77002
Telephone: (713) 751-3294
*aparsons@kslaw.com*

**Thomas E. Kennedy III**
**Sarah Jane Hunt**
KENNEDY HUNT P.C.
906 Olive Street, Suite 200
Saint Louis, MO 63101
Telephone: (314) 872-9041
*tkennedy@KennedyHuntLaw.com*
*sarahjane@KennedyHuntLaw.com*

*Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on June 20, 2023, I electronically filed the foregoing document and any exhibits with the Clerk of this Court by using the CM/ECF system, which will accomplish service through the Notice of Electronic Filing for parties and attorneys who are Filing Users.

By: */s/ Abby L. Parsons*