**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

JANIAH MONROE, MARILYN )
MELENDEZ, LYDIA HELÉNA VISION, )
SORA KUYKENDALL, and SASHA )
REED, individually and on behalf of a class )
of similarly situated individuals, )
                              )
          Plaintiffs, )     Civil No. 3:18-cv-00156-NJR
                              )
v. )
                              )
LATOYA HUGHES, MELVIN HINTON, )
and STEVEN BOWMAN, )
                              )
          Defendants. )

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR TRANSFER OF CLASS
MEMBER O.A. AND OTHER CLASS MEMBERS OUT OF PINCKNEYVILLE
CORRECTIONAL CENTER**

Plaintiffs submit this Reply in Support of their Motion For Transfer of Class Member O.A. and Other Class Members Out of Pinckneyville Correctional Center ("Motion For Transfer") in accordance with the Court's Order (Dkt. 621). Defendants' Response to the Motion For Transfer (Dkts. 617-620) provides no reason why the Court should not grant the requested relief. The Response ignores Defendants' ongoing violations of the Court's orders, which have not been stayed, and instead focuses on irrelevant attacks on Class member O.A.[1] and attempts to relitigate the adequacy of the Class representatives under Rule 23. The Court has the authority to order the transfer of Class members out of Pinckneyville.

---

[1] Plaintiffs will submit a declaration from O.A. addressing the factual attacks, to the extent they are pertinent, as soon as the signed copy has been returned to counsel.

## ARGUMENT

**I.     The humiliations Class members face at Pinckneyville are the result of longstanding noncompliance with the Court's orders by Defendants.**

One fact remains constant: the Court's orders from 2019-2022 (Dkts. 186-87, 211-12, 332, 336, 384) have *not* been vacated, stayed, or modified in any way, and so they remain in effect today. The relief requested in the Motion For Transfer derives from those orders. The mistreatment O.A. and other Class members experienced at Pinckneyville results from Defendants' longstanding noncompliance with the Court's orders. Defendants were explicitly ordered multiple times[2] to address concerns regarding noncompliance with orders for private showers and officer searches based on preferred gender. *See* Dkts. 187 at 2, ¶ 3; 332 at 2-3, ¶¶ 6, 10; 384 at 8,10, ¶¶ 5, 9; *see also* 522 at 4-5, ¶¶ 7(a-c), 8(a-b), 552 at 6-7, ¶¶ 7(a-c), 8(a-b), 584 at 12-13, ¶¶ 7(a-c), 8(a-b).

The Court's more recent enforcement orders (Dkts. 522, 552, 584) could leave Defendants with no doubt that the Court regarded the obligations to provide Class members safe and private showers and appropriate searches as matters (still) requiring immediate compliance and focused attention. In those 2023 orders, Defendants were required—among other things—to participate in discussions with Plaintiffs and the Co-Monitors to facilitate transferring any class member from a facility that fails to adhere to the Court's orders for searches and showers. Dkts. 522 at 4-5, ¶¶ 7(c), 8(b); 552 at 7, ¶¶ 7(c), 8(b); 584 at 12-13, ¶¶ 7(c), 8(b). The intention was to relocate Class members to a facility where compliance with these provisions has been met. By June 30, 2023, both the Defendants and Plaintiffs were to file a joint report outlining the outcomes of their discussions. Dkt. 584 at 13, ¶ 8(b). Unfortunately, as highlighted in the previous joint status report (*see* Dkt. 601), the Defendants have chosen to decline and continue their refusal to participate in

---

[2] As the Court stated in its May 2023 order, Defendants' noncompliance with shower requirements is "frustrating for the Court as it should have been a straightforward matter for Defendants to provide private showers for class members as ordered ***long ago***." Dkt. 584 at 3 (emphasis in original).

discussions concerning these critical issues, despite the ongoing need for relief and the fact that these orders were not stayed (see below). As a result, the health and safety of Class members are in danger in certain facilities, requiring swift intervention. Given the Defendants' continued failure to follow the Court's orders, Plaintiffs were left with no alternative but to take decisive action and request immediate transfers for O.A. and other individuals at Pinckneyville Correctional Center.

## II.   The PLRA and Defendants' Motion to Vacate do not provide an excuse for Defendants' ongoing disregard for Class members' rights and their suffering.

Defendants' Response says explicitly that it "adopt[s] and incorporate[s]" their Motion to Vacate (Dkt. 617 at 3), though they also acknowledge that "as of the instant filing, there is no final adjudication." *Id.* at 2. There is, in fact, no adjudication at all, and Defendants cannot grant themselves relief from the Court's orders on the basis of their own Motion.

Defendants' confidence in the outcome of their Motion is not well-placed. As to the "historic" orders (the injunctions of December 2019, August 2021, and February 2022), Defendants insist that they have "expired" as preliminary injunctions without PLRA findings. Defendants assert in passing that those orders do not have the requisite PLRA findings (Dkt. 587 at 8), but they make no effort to explain this, and the argument is frivolous. As this Court pointed out more than two years ago when Defendants made a similar argument about the December 2019 order expiring (*see* Dkt. 226), they had "not clearly shown that the injunction has expired and is no longer enforceable." Dkt. 246 at 4. The Court also emphasized that it had "made the required findings under the statute" when it issued its December 2019 order. *Id.* at 4-5. The Court's subsequent orders (as Plaintiffs explained) likewise contain the "required findings." Dkt. 598. As to the "historic" orders, then, Defendants' Motion to Vacate hangs entirely on a precarious thread of nomenclature: Defendants insist that the 87-page Memorandum and Order issued in February 2022, because it was titled "preliminary," cannot be "final" in spite of the fact that it is a *post-trial*

*order* with all the findings required by 18 U.S.C. § 3626(a)(1) *and* a finding of ongoing constitutional violations (not just the "likelihood of success" on such a claim which is all that is required for "preliminary" relief). *See* Dkt. 383 at 64-65, 66, 70 ("[T]he undersigned finds that the evidence introduced at trial shows serious ongoing violations of the Eighth Amendment. It was for that reason the Court ordered immediate injunctive relief and outlined additional injunctive relief that was needed but would take time when the trial concluded."). At best, Defendants' Motion, as Plaintiffs said, is no more than a premature motion for termination. Dkt. 598 at 18-19.

As to the 2023 orders (Dkts. 522, 552, 584) that Defendants have challenged for lack of findings, as Plaintiffs have previously explained, no additional findings were needed because the 2023 orders are based on the findings made in the historic orders. *See Jones-El v. Berge*, 374 F.3d 541, 545 (7th Cir. 2004); *Doe v. Cook County*, 798 F.3d 558, 564 (7th Cir. 2015). Defendants' challenge to the 2023 orders may have triggered the PLRA automatic stay, but not until June 30. Prior to that date, Defendants were mandated to take multiple steps to address showers and searches' noncompliance, but they did not do so.

### III.   Defendants cannot unilaterally grant themselves a stay of the Court's orders, and the orders have not been stayed.

Defendants filed a Motion to Stay (Dkt. 588) together with their Motion to Vacate, but that motion has also not been granted although Defendants rely on it (Dkt. 617 at 2). Defendants cannot grant themselves a stay.

The PLRA has an automatic "stay" provision, but it barely applies here, since it is a 30-day "automatic" stay provision only for orders that have met certain duration requirements not relevant here or do not have the "findings" required by the statute (specifically, it applies to orders challenged by "motion[s] made under paragraph (1) or (2) of subsection (b)"). 18 U.S.C. § 3626(e)(2)(A). Defendants have challenged the Court's "historic" orders—the injunctions issued

4

in December 2019, August 2021, and February 2022—on the grounds that they expired after 90 days under section 18 U.S.C. § 3626(a)(2). That is, they have challenged them under a section of the statute to which the 30-day automatic stay provision does not apply. As described above, the obligations as to searches and showers derive from the "historic" orders, not the 2023 orders that Defendants have challenged for lack of "findings." Thus, at worst, the Court's 2023 orders (which Defendants have challenged for lack of "findings" despite well-settled Seventh Circuit law that enforcement orders require no additional PLRA findings) were stayed pursuant to the statute's thirty days after Defendants had filed the Motion to Vacate (so as of June 30). This did not relieve Defendants of any obligations they had under those orders throughout the month of June, and it did not relieve Defendants of the obligation to comply with the Court's historic orders.[3]

This action effectively usurps the Court's authority to enforce its own orders and unjustly denies the Plaintiffs the relief rightfully due to them. Yet, a party's unilateral choice of ceasing compliance with a court order cannot stay its execution. *See, e.g.*, *Maness v. Meyers*, 419 U.S. 449, 458–59 (1975) ("We begin with the basic proposition that all orders and judgments of courts must be complied with promptly. If a person to whom a court directs an order believes that order is incorrect the remedy is to appeal, but, absent a stay, he must comply promptly with the order pending appeal."); *Mac Naughton v. Harmelech*, 338 F. Supp. 3d 722, 727 (N.D. Ill. 2018), aff'd, 932 F.3d 558 (7th Cir. 2019) ("In determining whether a party has knowingly defied a court order,

---

[3] Defendants have missed several deadlines, including providing a comprehensive audit tool, sharing a list of class members with transfer notices and their current locations, disclosing the dates for gender-affirming surgeries, updating on the Moss Group training at Logan, sharing certificates for WPATH training, and maintaining ongoing reports on databases and hormone levels. In addition, Defendants have "missed" or cancelled several in-person surgical consultations. Most transgender women and one transgender man, initially scheduled for in-person consultations with Dr. Schechter for gender-affirming surgery in June and July of this year, did not have these consultations as planned. The Defendants did not inform Plaintiffs' counsel, the Co-Monitors, or the Court about these cancellations. Plaintiffs' counsel learned about these cancellations during legal calls with Class members on the consultation list. Plaintiffs have received two signed declarations (attached hereto as Exhibits 1 and 2, filed under seal) from affected Class members and are working to collect more. Plaintiffs will submit these declarations to the Court under seal as soon as possible.

it makes no difference whether the order is subject to challenge."); *Alexander v. Chicago Park Dist.*, 927 F.2d 1014, 1025 (7th Cir. 1991) ("Parties must obey court orders regardless of their validity, unless the orders are stayed pending appeal."). And "[p]ersons who make private determinations of the law and refuse to obey an order generally risk [] contempt even if the order is ultimately ruled incorrect." *Maness*, 419 U.S. at 458. The Court's historic orders have *not* been vacated, stayed, or modified in any way, and so remain in effect today.

Finally, to the extent that Defendants' Motion to Vacate complained that any specific aspects of the Court's recent orders did not comply with the PLRA (*see* Dkt. 587 at 10-12)[4]—the Seventh Circuit has recently made *very clear* that the PLRA does not insulate a State from duties that it may not want to perform because they are too complicated or may require new expenditures: "the state may not continue to rely on cost and logistical difficulties to evade its constitutional obligations. The PLRA does not shield states from unwanted expenditures necessary to comply with constitutional mandates." *Howe v. Hughes*, 74 F.4th 849, 859 (7th Cir. 2023). In its August 2021 and February 2022 orders, the Court made evidence-based determinations of what the components of a constitutional level of care for Class members would be, as it was entitled to (*see id.*), and the Class members are entitled to have those determinations honored without further complaint by Defendants about the difficulties of compliance. *Howe* makes clear that Defendants' objections to the Court's orders are no defense to their failure to provide needed medical care.

## IV. Rather than transferring Class members to a facility that can comply with the Court's orders as to showers and searches, Defendants attempted to discredit O.A., who was interrogated by Defendants about the matters in Plaintiffs' Motion without counsel.

Defendants' Response to the Motion For Transfer barely touches on Pinckneyville at all—

---

[4] For instance, the Court's directive to Defendants to contact additional surgical providers for gender-affirming surgeries, or to negotiate and provide Class members with a gender-affirming "kit."

it ignores the cumulative record of problems at that facility already before the Court, as well as the suffering reported by other Class members in their answers to Plaintiffs' shower and search survey. *See* Dkts. 444 at 18 (Co-Monitor graham's September 2022 report); 546 at 1 (March 2023 report); 573 at 2 (April 2023 report); 591 (May 2023 report); *see also* Dkt. 584 at 3 ("[S]ome shower doors at Pinckneyville currently have a large hole through which the person showering can be seen, and a solid metal plate in the upper door is not high enough to prevent viewing the person's chest area."). Instead, the Response focuses on irrelevant attacks on Class member O.A. to undermine her credibility and dismiss the substantial concerns about her safety at Pinckneyville. Fully half of the Response and *all* its 167 pages of exhibits are devoted to this effort. Dkts. 617 at 4-9; 619; 620. Plaintiffs will file O.A's declaration concerning her experiences at Pinckneyville as soon as the signed copy is received, but even without this, Defendants' "evidence" proves nothing. The reason why O.A. was moved from Centralia to Pinckneyville is irrelevant, but Defendants apparently believe that if they can persuade the Court that O.A. did something wrong at Centralia that will justify her mistreatment at Pinckneyville. Defendants' investigatory record into the events which supposedly led to O.A.'s transfer completely overlooks O.A.'s side of the story, fails to examine her claim that someone else had threatened to make a false PREA claim against her, and credits only the interviewees who wanted to assert that O.A. had done something wrong. Dkt. 620 at Exs. A, B. Further (though Defendants fail to comment on this), their own exhibits indicate that O.A. had maintained a nearly spotless disciplinary record throughout her time in PRISM. *See* Dkt. 619 at Ex. K; *see also* Dkt. 620 at Ex. A (Attachment 17).

As to events at Pinckneyville, Defendants took unfair advantage of their access to O.A. to try to create a record favorable to themselves and harmful to her and to Plaintiffs' Motion. Although Defendants acknowledge that they had received complaints from Plaintiffs' counsel and

Co-Monitor julie graham about O.A.'s treatment at Pinckneyville before Plaintiffs filed the Motion For Transfer (*see* Dkt. 619 at Exs. E (Attachments 1, 2, and 4), G), it was not until ten days *after* the Motion had been filed that Lieutenant Frank from IDOC Internal Affairs finally interrogated her *about the very matters raised in Plaintiffs' Motion*. If there were any doubt that the purpose of Lt. Frank's interview was done in the service of Defendants' litigation strategy, the *only declaration* submitted with Defendants' Response is that of Lt. Frank. Dkt. 619 at Ex. F.

Plaintiffs' counsel were not notified of, let alone permitted to attend the interview with O.A., despite the fact that O.A., as a member of a class that has been certified since 2020, is a represented person in this case. Once a class has been certified, every class member is considered a client of the lawyers for the class. *See* Annotated Manual for Complex Litigation § 21.33 (4th ed. 2022). In matters related to this litigation—which Defendants' investigation was—Defendants are required to exclusively communicate through class counsel. *Id.*

Unsurprisingly, Lt. Frank determined that every single one of O.A.'s complaints was "unsubstantiated." Dkt. 619 at Exs. E, F. The correctional officers he reportedly interviewed, when asked if they had done something wrong, of course, said they had not. Dkt. 619 at Ex. E. In a facility full of cameras, he reviewed video relating to only one incident, only to determine—of course—that it was "not substantiated." *Id.*[5] As to the issues raised by the other Class members cited in Plaintiffs' Motion, Defendants dismiss them in a few vague sentences, concluding (although this is for the Court not for them to conclude) that the "circumstances" do not "rise to the level of deliberate indifference." Dkt. 617 at 10.

---

[5] As Plaintiffs read Lt. Frank's description of this video, it shows that, in fact, other prisoners were also let out of their cells at the same time when O.A. was let out to take her shower (but Lt. Frank concluded this was not a problem). *Id.*

**V.     Plaintiffs have standing to raise these issues because the Monroe Class has been certified and is deemed a separate entity for standing purposes.**

Defendants claim that Plaintiffs lack standing to pursue the relief sought in their Motion. However, Defendants fundamentally misinterpret well-established legal precedents regarding standing in the context of class actions.[6]

Defendants' argument here is identical to a similar unsuccessful argument they made in another case about prisoners. In that case, Judge Michael Mihm rejected Defendants' argument against standing and underscored the significance of class certification when it comes to determining standing. Judge Mihm emphatically stated that "the true plaintiff is the entire class." *Daniels v. Jeffreys*, No. 07-1298, slip. op. at 7 (C.D. Ill. Aug. 25, 2023), attached hereto as Exhibit 3. That is because, as the Seventh Circuit has stated, once a class is properly certified "statutory and Article III standing requirements must be assessed with reference to the *class as a whole*, not simply with reference to the individual named plaintiffs. *See Payton v. Cnty. of Kane*, 308 F.3d 673, 680 (7th Cir. 2002) (emphasis added). The Supreme Court has also recognized this principle in *Sosna v. Iowa*, which clarifies that a "controversy may exist [] between a named defendant and a member of the class represented by the named plaintiff, even though the claim of the named plaintiff has become moot." 419 U.S. 393, 402 (1975).

This Class was officially certified in March 2020—more than three years ago. This Court defined the class as "all prisoners in the custody of IDOC who have requested evaluation or treatment for gender dysphoria." Dkt. 213 at 11. This Court conducted an exhaustive examination

---

[6] Defendants have cited several cases, including *Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016), in their attempt to undermine Plaintiffs' standing. However, none of these cases are directly applicable to our situation. First, some of these cases are in entirely different procedural postures and analyze whether named plaintiffs have standing *before* class certification, which differs from our current situation where the class has already been certified. Additionally, some of these cases do not address the same widespread and systemic issues as the ones we are dealing with here. Instead, they involve isolated incidents of harm.

under Rules 23(a) and (b), determining that the proposed class, as represented by the Named Plaintiffs, satisfactorily met the requirements of numerosity, commonality, typicality, and adequacy. *Id.* Central to the Court's assessment of class certification was the "system-wide policies and practices" within IDOC that have deprived class members of constitutionally adequate medical care. *Id.* at 7, 10. Specifically, the Court found that "Plaintiffs have repeatedly identified IDOC policies and practices that have allegedly resulted in inadequate medical treatment for Plaintiffs and *apply to all those in the proposed class*." *Id.* at 6 (emphasis added). As a result, the "Plaintiffs and the proposed class members have experienced the *same* harm and seek the *same* injunctive relief." *Id.* at 7 (emphasis added).

While the Plaintiffs' recent Motion specifically addressed the dire situation at Pinckneyville, it is important to note that the harms and injuries described in that Motion are the same as those outlined in the original Complaint and the Memorandum and Order on Class Certification. These harms stem from what the Court described as "system-wide policies and practices" within IDOC. In fact, just a few weeks ago, the Plaintiffs submitted their *fourth* report of shower-related noncompliance and their first report regarding noncompliance with search requirements at multiple facilities, echoing the challenges experienced at Pinckneyville. Dkts. 615-616. As such, Class members O.A. and the other Class members mentioned in the Plaintiffs' Motion have standing to seek relief for Defendants' failure to provide proper showers and searches.

Dated: August 28, 2023

Respectfully submitted by:

/s/ Camille E. Bennett
**Camille E. Bennett**
**Michelle T. García**
**Alexis Picard**
ROGER BALDWIN FOUNDATION OF ACLU, INC.
150 North Michigan Avenue, Suite 600
Chicago, IL 60601
Telephone: (312) 201-9740
Facsimile: (312) 288-5225
*cbennett@aclu-il.org*
*mgarcia@aclu-il.org*
*apicard@aclu-il.org*

**Amelia H. Bailey**
**Thomas J. Leahy**
**Sam G. Rose**
**Ashton Dubey**
KIRKLAND & ELLIS LLP
300 North LaSalle Street
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
*amelia.bailey@kirkland.com*
*thomas.leahy@kirkland.com*
*sam.rose@kirkland.com*
*ashton.dubey@kirkland.com*

**Brent P. Ray**
KING & SPALDING LLP
110 N. Wacker Drive, Suite 3800
Chicago, IL 60606
Telephone: (312) 995-6333
Facsimile: (312) 995-6330
*bray@kslaw.com*

**Abby L. Parsons**
KING & SPALDING LLP
1100 Louisiana Street, Suite 4100
Houston, TX 77002
Telephone: (713) 751-3294
*aparsons@kslaw.com*

**Thomas E. Kennedy III**
**Sarah Jane Hunt**
KENNEDY HUNT P.C.
906 Olive Street, Suite 200
Saint Louis, MO 63101
Telephone: (314) 872-9041
*tkennedy@KennedyHuntLaw.com*
*sarahjane@KennedyHuntLaw.com*

**Malita Picasso**
AMERICAN CIVIL LIBERTIES UNION
125 Broad Street
New York, NY 10004
Telephone: (212) 549-2561
*mpicasso@aclu.org*

*Attorneys for Plaintiffs*

11

## <u>CERTIFICATE OF SERVICE</u>

I certify that on August 28, 2023, I electronically filed the foregoing document and any exhibits with the Clerk of this Court by using the CM/ECF system, which will accomplish service through the Notice of Electronic Filing for parties and attorneys who are Filing Users.

By: */s/ Camille E. Bennett*