IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JANIAH MONROE, MARILYN MELENDEZ, LYDIA HELÉNA VISION, SORA KUYKENDALL, and SASHA REED, individually and on behalf of a class of similarly situated individuals,<br><br>　　　　Plaintiffs,<br><br>v.<br><br>STEVEN BOWMAN, MELVIN HINTON, and LATOYA HUGHES,<br><br>　　　　Defendants. | Case No. 3:18-CV-00156-NJR |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Pursuant to the Order of November 16, 2023, which denied Defendants' Motion to Vacate and granted in part/denied in part Plaintiffs' Motion for Contempt Finding (Doc. 678), the Court held a status conference on December 5, 2023, via videoconference, attended by counsel for the parties and by Co-Monitors Dr. Amanda Harris and julie graham, MFT. (Doc. 692).

The Court asked Plaintiffs' counsel and the Co-Monitors to identify the three most critical areas that need immediate attention to achieve compliance with the Permanent Injunction of February 7, 2022 (Doc. 384). First, Plaintiffs' counsel and both Co-Monitors agreed that consolidation of class members into a limited number of prison facilities that

are fully staffed with individuals qualified to meet their needs is a key goal to improve conditions, treatment, and safety for the class. Consolidation also will improve the IDOC's ability to comply with the ordered injunctive relief through training and accountability. The intake process for individuals newly arriving into IDOC custody must include identification of new class members for them to be properly placed.

Defendants' counsel responded that such a plan is in development, and 14 out of the total 30 facilities[1] have been identified to receive class members willing to transfer. This number was chosen to allow leeway to avoid placement of known enemies in the same location and to allow class members to continue any programming in which they participate. Co-Monitor graham believes six facilities would be more manageable (two medium, two maximum, and two minimum-security). Co-Monitor Harris's report (Doc. 674) reflects that some consolidation/movement of class members to certain facilities is already underway. Plaintiffs' counsel expressed concern that the number of class members in Menard has increased, while problems continue to be reported at that institution.

Plaintiffs' counsel and the Co-Monitors also agreed that IDOC and the class would greatly benefit from hiring a coordinator/advocate for the transgender population, who can maintain an accurate list of class members, monitor whether their needs are being met, and advocate for necessary steps to ensure class members receive constitutional care and treatment. The Co-Monitors have been doing this work, but they are not best situated

---

[1] With the Court's Order to consider transfers of class members out of Pinckneyville Correctional Center (Doc. 680), the number of target facilities will actually be 13.

to carry out this function within IDOC as they are not on-site and do not have direct access to IDOC's information/databases on the class. Dr. Harris has developed her own database of class members in order to collect all the relevant information for monitoring their treatment. Co-Monitor graham noted that the prison system in Washington State hired three individuals to provide this coordinating function for transgender prisoners and contracted out with a medical specialist to deal with providers' discomfort around prescribing hormones. It is critical to have someone in a position to manage the "huge" cultural changes required to serve the transgender population.

Defendants' counsel reported that, in connection with discussions on revising the Administrative Directive on transgender individuals in custody, IDOC has decided and internally approved a plan to hire a "patient navigator" to oversee the needs of class members and act as a resource. The job description is not yet finalized, and the position has not been posted. Counsel believes the person hired will have some mental health background and will go through the WPATH training on transgender issues.

Opinions diverged on the third priority, but the common thread is improving delivery of gender affirming medical treatment. Plaintiffs' counsel stated that the delays in providing gender affirming surgery for class members must be addressed, as it is still not clear whether additional providers are available and consultations that were scheduled during the summer of 2023 did not take place. Co-Monitor Harris would put a higher priority (over surgery) on ensuring that individuals in custody who seek evaluation for gender dysphoria or have been so diagnosed are effectively identified and screened, and ensuring that gender affirming hormone treatment and counseling is

available to them. She noted that some class members have decided not to pursue gender affirming treatment or have de-transitioned because they feel unsafe or don't get consistent access to care. This ties into the need to transfer class members to institutions where they feel safe. Surgery should continue to be available, but the process is more complex and difficult for incarcerated people.

Concern was also raised over the slow progress in revising the Administrative Directive. A draft was shared in April or May 2023, but there has been no discussion with the Co-Monitors or between the parties since that time. The Co-Monitors' valuable expertise is not being sought. Defendants' counsel reports that the draft is pending review by IDOC's legal department, and they would like to complete that review before sharing the draft.

Also of concern is class members' reports that they are unable to consistently access grievance forms. As an example, inmates at Pinckneyville must now request them from an officer, when the forms previously were available on each housing unit. Defendants' counsel did not know when or why that policy changed.

Training of IDOC staff members on transgender issues has been ongoing at Logan. Defendants' counsel reports that IDOC is seeking to have the Moss Group expand training to other facilities; if that is not possible, Dr. Reister will continue to conduct training.

Co-Monitor graham reported that the IDOC staff member who has been coordinating commissary needs will expand her role to include helping with the clothing rooms.

The Court agrees with Plaintiffs' counsel that regular status hearings and updates are critical to keep progress moving in this case and anticipates setting another status hearing in January 2024. There will likely also be another evidentiary hearing needed in February 2024.

Defendants are reminded that on May 11, 2023, they were ordered to provide certain documentation to the Co-Monitors and to Plaintiffs' counsel on a monthly, quarterly, or other regular basis (Doc. 584, pp. 9-15). **That ongoing periodic reporting shall continue.**

In order to get this case back on track toward compliance with the permanent injunctive relief ordered on February 7, 2022 (Doc. 384) and to ensure timely progress, the Court finds it necessary to adopt the following schedule. The Court will set another status conference to assess progress by separate order.

By **January 4, 2024**, Defendants are **ORDERED** to provide to Plaintiffs' counsel, the Co-Monitors, and file with the Court:

1. An update on the status of the process to hire a patient navigator for the transgender population, including a description of the patient navigator's duties, desired qualifications, and the anticipated timeline for posting and filling the position. Confidential/proprietary information may be filed under seal.

2. A description of the IDOC's plan to consolidate the class members' placement into fewer institutions by offering transfers, including the timeline and process for implementing such potential transfers, identifying the institutions designated to receive those individuals willing to transfer and the security level of each, and the reasons why those institutions were chosen.

3. A report on the status of the proposed revised Administrative Directive ("AD") on transgender individuals in custody that is currently under

review by IDOC's legal department, including when that legal review is expected to be completed, and what other steps must be taken to finalize the revised AD.

4. A report on the wardens' meeting scheduled for December 14, 2023, including any discussion and decisions made in that meeting regarding members of the Plaintiff class.

5. A sworn statement from the warden of every facility where class members are housed concerning how and where grievance forms are made available to class members in each institution, including whether grievance forms must be requested from staff members (and if so, from whom).

**IT IS SO ORDERED.**

**DATED: December 7, 2023**

*[signature]*

**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**