IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS DIVISION

| | |
|---|---|
| JANIAH MONROE, MARILYN MELENDEZ, LYDIA HELENA VISION, SORA KUYKENDALL, and SASHA REED, <br><br> Plaintiffs, <br><br> - vs- <br><br> LATOYA HUGHES, MELVIN HINTON, and STEVEN BOWMAN, <br><br> Defendants. | No. 18-156-NJR |

**DEFENDANTS' RESPONSE TO PLAINTIFFS' FIFTH REPORT OF PRIVATE SHOWER NONCOMPLIANCE AND SECOND REPORT OF DEFENDANTS' NONCOMPLIANCE WITH SEARCHES**

NOW COME the Defendants, LATOYA HUGHES, MELVIN HINTON, and STEVEN BOWMAN (sued in their official capacities as IDOC administrators), and hereby provide their Response to Plaintiffs' Plaintiffs' Fifth Report of Private Shower Noncompliance and Second Report of Defendants' Noncompliance with Searches [d/e 697], stating as follows:

**INTRODUCTION**

On December 11, 2023, Plaintiffs filed a Fifth Report of Private Shower Noncompliance and Second Report of Defendants' Noncompliance with Searches. [d/e 697]. This report appears to be a continuation or supplementation to the prior report [d/e 615] based upon a survey distributed to class members within the Illinois Department of Corrections ("IDOC"). [*See* d/e 697, 697-1, 698]. Plaintiffs attach survey responses received from fifteen class members and provided analysis of the responses. [*See* d/e 698]. As with the prior Notice, the surveys consist of responses to eight distinct questions, and the survey responses were recorded using discretion based on the comments section. *Id*. Defendants' position remains that in doing so, the nuance and actual circumstances are

lost. This Report has been substantially delayed, as the mailing dates on the survey responses indicate Plaintiffs' counsel received the lion's share of the responses between July and August. [*See* d/e 698]. As such, several of the responses come from individuals who have moved facilities[1] and further, the reports are outside of the seven-day reporting requirement imposed by the Court as they appear to have been postmarked three to four months ago. [*See* d/e 584, p. 12, ¶ 7(b)].

## RESPONSE

As previously noted, the survey responses to the eight questions posed to Class Members reveal the circumstances are far more nuanced and dependent upon the reporting individual. Through Plaintiffs' attempts to condense the responses and categorize them in such an absolute fashion, they lose the individual circumstances. In doing so, Plaintiffs overstate the issues identified by the surveys. Further, Plaintiffs take the fifteen additional survey responses, primarily obtained in July and August 2023, which contain outdated information and fail to account for any changes subsequent to the last report or that occurred through the IDOCs evolving approach to treatment of individuals with gender dysphoria, and by their own admission, combine it with the same information from the Fourth report in an attempt to paint a bleak picture, though not updated or accurate.

Plaintiffs contend they received fifteen additional surveys between the filing of the last report and "as recently as November 2023." [d/e 697, ¶ 3]. However, of the fifteen additional surveys attached to Plaintiffs' Report, there are thirteen envelopes. [*See* d/e 698]. Of those thirteen, seven are postmarked from July 2023. [*Id.*]. Four are postmarked in August 2023. [Id.]. One envelope is postmarked April 2023. [*Id.*]. As for the singular envelope that is postmarked in November 2023, it was sent concerning the alleged conditions at Pinckneyville Correctional

---

[1] The four individuals who reported from Pinckneyville Correctional Center have been transferred to different facilities. [d/e 698; *see* https://idoc.illinois.gov/offender/inmatesearch.html, last accessed December 26, 2023].

Center by an individual who has been at Menard Correctional Center since approximately October 13, 2023, as noted within Plaintiffs' recent Motion to transfer Class Members out of Menard Correctional Center. [d/e 698, pp. 37-41; *see also* d/e 705-4, Plaintiffs' Exhibit 4, ¶ 4]. As such, there is a concern that such information is outdated and does not account for developments and changes within the Department since the prior reports and through normal departmental procedures, including but not limited to the Wardens' meeting, which Defendants plan to report on consistent with the Courts' Order, in early January 2024. Further, Plaintiffs make several specific allegations concerning Menard Correctional Center. [*See* d/e 697]. Plaintiffs have filed a Motion to transfer class members out of Menard, and Defendants plan to respond on or before January 4, 2023. Those specific allegations will be addressed further in that Response.

Defendants have previously addressed the inaccuracies within and responded to Plaintiffs' Fourth Report of Shower Noncompliance and First Report of Search Noncompliance. [d/e 615]. To the extent Plaintiffs seek to reallege or include the same information, Defendants incorporate and adopt their prior Response. [d/e 623]. Defendants, in turn, will address the fifteen new surveys identified in Plaintiffs' recent filing. [d/e 698].

### I.   Shower Compliance

Plaintiffs contend eight additional class members reported no access to a private shower, contending 48 class members have no access to a private shower. [d/e 697, ¶ 5]. Plaintiffs' numbers continue to have the same reporting issues as discussed in Defendants' prior response, as some reported numbers appear miscalculated or changed using discretion. [d/e 623].

Of the fifteen new surveys, eleven individuals report having asked for a private shower, and four indicated they had not asked. [*See* d/e 698]. Ten reported they had access to private showers while only five indicated they did not. [*Id.*]. Therefore, while Plaintiffs contend 40

individuals report access while 48 individuals indicate they do not, the data indicates only 30 of the 88 reporting Class Members indicated they did not have private access. [*See* d/e 615-2; 698]. Consistent with Defendants' prior reports on shower methodology, Defendants maintain they have the policies and procedures in place for Class Members to have private shower access. Further, the reports indicate that when an issue is in fact brought to a facility's attention, it is addressed. Specifically, one individual indicated that in response to the then-recent inquiries by co-Monitor julie graham, there had been additional updates, consistent with Defendants' prior report. [d/e 698, p. 3; *see also* d/e 623]. Further, there is a nuance in how individual class members are defining "private." Here, the records indicate majority of the reporting individuals report access to private showers, and when notified of concerns, facilities are investigating and responding. As these reports are dated July and August, it is Defendants' position that the reports are also outdated and fail to account for evolving policies and follow up.

## II. Search Compliance

Here, eight class members indicated they are able to request a specific gender conduct the strip search while seven indicated they are not able to request a specific gender. [*See* d/e 698]. Of the responses on times they must wait, the reports range from 10 minutes to one individual who indicated one and a half to two hours. [*Id.*]. Three individuals indicated no wait, while five indicated no response. [*Id.*] A Class Member reporting from Joliet Treatment Center indicated it was "the best facility [she has] been housed in as far as being housed in an all male facility;" and while she pointed out alleged deficiencies with Pontiac correctional officers allegedly refusing to search her, she did not reside at Pontiac and cannot speak to the current conditions there. [*See* d/e 698, p. 11].

Plaintiffs report 18 class members indicated no access to searches by a preferred gender, 58 class members indicated a search by a preferred gender was available with a wait, and 12 class members indicated they received a search by a preferred gender with no wait. [d/e 697, Table 2]. From review of the surveys, however, it appears that 64 reporting class members indicate they are able to request an officer of a specific gender search them while only 22 report otherwise. [*See* d/e 616, 698]. Fourteen class members indicate there was no wait, and of the 62 who reported a wait, the times range from mere minutes to very few outliers reporting it could take over an hour. [*Id*.].

While Plaintiffs report sixty-one class members responded the prisons do not use scanners, as previously noted, many of the individuals who report no use of scanners come from the same individuals who report they have access to searches by a preferred gender with little or no wait. [*See* d/e 616, 698]. Of the fifteen new surveys, three individuals reported scanners were available, and eight reported being able to request a search by a specific gender. [d/e 698].

In sum, the reports themselves reflect the situation is not as dire as Plaintiffs contend. While there are reports of class members not receiving a private shower or search by an officer of a preferred gender, the majority of the individuals report access to such. Further, this most recent report contains outdated information that does not account for recent developments or progression within the Department, which Defendants anticipate further addressing within their upcoming status report and Response to Plaintiffs' Motion concerning Menard Correctional Center.

## **CONCLUSION**

Plaintiffs' representations as to the results of these surveys are not entirely accurate or complete and, more concerning, consist of reports from July and August – four months ago. In any event, there is certainly insufficient evidence to support their contention that Defendants have

"systematically failed to provide class members in seventeen prisons access to private showers and searches by officers of their preferred gender." [*See* d/e 697, ¶ 16].

WHEREFORE, for the above and foregoing reasons, Defendants respectfully request that this Honorable Court accept their Response to Plaintiffs' Fifth Report of Private Shower Noncompliance and Second Report of Defendants' Noncompliance with Searches. [d/e 697].

Respectfully submitted,

LATOYA HUGHES, MELVIN HINTON, and STEVEN BOWMAN,

Defendants,

Kyrstin Beasley #6323618
Assistant Attorney General
201 West Pointe Dr., Ste. 7
Belleville, IL 62226
(618) 236-8781 Phone
(618) 236-8620 Fax
Email: kyrstin.beasley@ilag.gov

KWAME RAOUL, Attorney General
State of Illinois

Attorney for Defendants,

By:  s/Kyrstin Beasley
         Kyrstin Beasley

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS DIVISION**

| | |
|---|---|
| JANIAH MONROE, MARILYN MELENDEZ, LYDIA HELENA VISION, SORA KUYKENDALL, and SASHA REED, | ) ) ) ) |
| Plaintiffs, | ) ) |
| - vs- | ) No. 18-156-NJR |
| ROB JEFFREYS, MELVIN HINTON, and STEVEN BOWMAN, | ) ) ) ) |
| Defendants. | ) |

**CERTIFICATE OF SERVICE**

  I hereby certify that on December 26, 2023, the foregoing document, ***Defendants' Response to Plaintiffs' Plaintiffs' Fifth Report of Private Shower Noncompliance and Second Report of Defendants' Noncompliance with Searches***, and exhibits filed under seal, with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

    Abby L. Parsons     aparsons@kslaw.com
    Sarah Jane Hunt     sarahjane@tkennedylaw.com
    Thomas E. Kennedy, III   tkennedy@tkennedylaw.com
    Brent P. Ray       bray@kslaw.com
    Samantha G. Rose     sam.rose@kirkland.com
    Amelia Bailey      abailey@kirkland.com
    Camille Bennett     cbennett@aclu-il.org
    And all other counsel of record

                s/ Kyrstin Beasley
                Kyrstin Beasley #6323618
                Assistant Attorney General
                Office of the Attorney General
                201 West Pointe Drive, Ste. 7
                Belleville, Illinois 62226
                (618) 236-8781 Phone
                (618) 236-8620 Fax
                Email: kyrstin.beasley@ilag.gov