IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JANIAH MONROE,[1] MARILYN MELENDEZ, LYDIA HELÉNA VISION, SORA KUYKENDALL, and SASHA REED, individually and on behalf of a class of similarly situated individuals,<br><br>Plaintiffs,<br><br>v.<br><br>STEVEN BOWMAN, MELVIN HINTON, and LATOYA HUGHES,<br><br>Defendants. | Case No. 3:18-CV-00156-NJR |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

On April 3, 2024, the Court notified the parties that a new Co-Monitor[2] would be appointed to replace the second Co-Monitor overseeing this case. (Doc. 766); FED. R. CIV. P. 53; 18 U.S.C. § 3626. For background, the Court appointed julie graham, MFT, as the second Co-Monitor on May 10, 2022. (Doc. 423). The Court charged graham with overseeing Defendants' compliance with the Court's ordered injunctive relief. (*Id.*). Pursuant to the appointment, graham's responsibilities include submitting routine reports to the Court and parties to address progress towards compliance in the categories

---

[1] The named Plaintiffs, and many members of the Plaintiff class, use chosen names reflecting their gender identity rather than their given names at birth.
[2] This appointment falls under the category of Special Master, but the Court uses the term Monitor or Co-Monitor. *See* 18 U.S.C. § 3626(g)(8).

of gender-affirming prison commissary items, elimination of cross-gender body searches, implementation of an effective transgender identification policy including access to private showers, and training of correctional staff and inmates on transgender issues and awareness. (Docs. 370, pp. 11-14; 384, pp. 3-5, 8-12; 423). After two years in this role, graham has informed the Court of her intention to resign from her appointment and to withdraw from her responsibilities in this case. To allow time for a replacement to be appointed and become acquainted with the current state of the case, the Court recently extended graham's appointment for another six months. (Doc. 785).

Throughout this case, the Court has found that the assistance of a Monitor is necessary to oversee progress and advise the Court and the parties regarding Defendants' compliance with the ordered injunctive relief, as the Court alone cannot effectively and timely manage the complex remedial phase or reasonably gather all the necessary information to monitor compliance. (*See* Docs. 370; 384; 418; 423; 449; 457; 558; 583; 653; 690; 773; 785); *See* 18 U.S.C. § 3626(f)(1)(B); FED. R. CIV. P. 53(a)(1)(C). This remains the case. Thus, a replacement Co-Monitor to fill graham's role is necessary and warranted by the complex and comprehensive nature of the ongoing remedial phase.

Because of graham's intention to resign, the Court notified the parties of its plan to replace graham with another professional to assume her responsibilities pursuant to Federal Rule of Civil Procedure 53 and 18 U.S.C. § 3626. (Doc. 766). In doing so, the Court informed the parties that Co-Monitor graham's replacement would hold the same role and responsibilities outlined for graham, including filing reports and monitoring specific

categories of compliance.[3] Pursuant to her contract, Co-Monitor graham recommended a candidate for her replacement. The Court equipped the parties with information to evaluate graham's recommended candidate and instructed the parties to review the candidate's credentials. Defendants objected to the recommended candidate due to a perceived risk of potential bias. (Doc. 769). In light of this objection, the Court ordered each party to submit up to five candidates to replace Co-Monitor graham and allowed each party to remove up to three candidates from the opposing party's list leaving at least one candidate if the parties could not agree on a replacement. Plaintiffs submitted three candidates for a replacement Co-Monitor. (Doc. 783). Defendants declined to submit any candidates and objected to two of Plaintiffs' suggested candidates, which left one candidate remaining. (Doc. 784). The Court discussed the appointment with the remaining candidate, Dr. Soo Chun, a board-certified psychiatrist, who is qualified and interested in replacing julie graham as Co-Monitor in this case.

## APPOINTMENT OF REPLACEMENT SECOND CO-MONITOR

The Court now **APPOINTS** Soo Chun, M.D., as the second Co-Monitor to take over graham's responsibilities[4] of overseeing the matters in Part I, Sections D, E, and F,

---

[3] The Court determined that a Monitor was necessary to oversee and advise the Court and the parties regarding Defendants' compliance with the ordered injunctive relief, implementation of IDOC revised Administrative Directives regarding prisoners suffering from gender dysphoria, and to assess and advise the Court and the parties as to whether further revisions of IDOC policies and Administrative Directives are necessary to remedy the unconstitutional treatment of gender dysphoria. (Doc. 423). The Court outlined graham's duties as monitoring Defendants' compliance with the ordered injunctive relief on access to gender-affirming commissary items (clothing, personal care, and hygiene); elimination of cross-gender body searches and implementation of IDOC's transgender identification policy (including access to private showers); and training (on transgender issues and awareness for all correctional staff, and for Logan Correctional Center inmates and staff regarding incoming transgender inmates). (*Id.* at p. 4).

[4] There will be a brief overlap of Dr. Chun's appointment with julie graham's continued appointment, to assist with the transition of co-monitoring responsibilities.

of the Court's Order at Doc. 370, pp. 11-13, which includes injunctive relief in the areas of gender-affirming prison commissary items, eliminating cross-gender body searches and implementation of an effective transgender identification policy, and training of correctional staff on transgender issues and awareness. (*See* Doc. 384, pp. 3-5, 8-12, as detailed above). These responsibilities correspond to the following sections/paragraphs of the Court's comprehensive permanent injunction (Doc. 384; *See* Doc. 678):

Section II (Aug. 9, 2021), ¶¶ 6, 8, 10 (Doc. 384, pp. 3-4), and ¶¶ 6-8 (Doc. 384, p. 5)[5]

Section IV (Feb 7, 2022), ¶¶ 5, 7, 9, 14-16 (Doc. 384, pp. 8-12).

Defendants shall permit Dr. Chun to access correctional facilities and speak to staff and inmates, upon at least 48 hours' prior notice to Defendants' counsel, in connection with her monitoring responsibilities. For a short period of overlap, Dr. Chun will work with julie graham while familiarizing herself with the case and the Co-Monitor role.

Within **seven days** of the date of this Order, Dr. Chun shall file an affidavit with the Court disclosing whether there is any ground for her disqualification under 28 U.S.C. § 455. If a ground is disclosed, the parties shall inform the Court within **three business days** of the filing of the affidavit whether they waive the disqualification. (Doc. 766, p. 4); *See* FED. R. CIV. P. 53(b)(3).

---

[5] Paragraphs 6-8 of Doc. 384, p. 5, consist of items to have been completed by the 120-day deadline that ended on December 7, 2021. Defendants have contracted to provide the training referenced in ¶ 6 to all staff by March 30, 2022 and to provide future training; ongoing updates are needed on compliance, especially given the motions filed in this case that slowed progress and the active appeal. (Docs. 369, p. 4; 369-7; 369-8). Contracts are also in place to provide training to Logan staff and inmates (¶ 7); monitoring of implementation is needed. (Docs. 369, pp. 4-5; 369-7; 369-8). The transgender identification policy (¶ 8) was finalized and implemented; monitoring is needed to assess its effectiveness at ending cross-gender body searches and access to private showers, which seem to be persistent problems. (Docs. 369, p. 5; 369-9).

### REPORTING BY REPLACEMENT SECOND CO-MONITOR

Dr. Chun shall make an initial report to the Court and the parties indicating the status of Defendants' compliance with the aforementioned areas[6] within **90 days** of the date of this Order. After this initial report, Dr. Chun shall submit follow-up reports at intervals to be determined by the Court, which shall address the identified areas of Defendants' compliance, partial compliance, or noncompliance. Either party shall have **30 days** in which to respond to a report. (*See* Doc. 370, pp. 13-14).

In addition, if Dr. Chun concludes that Defendants are not in compliance with any component of the ordered injunctive relief within the scope of her monitoring duties, Dr. Chun shall report such finding to the parties and to the Court within **14 days** of such finding. Either party shall have **14 days** in which to respond to a report of noncompliance.

As previously set forth, the Co-Monitor's duties will include assisting and facilitating the parties' development of remedial plans, including possible further revisions to IDOC's Administrative Directives governing transgender prisoners. Dr. Chun may arrange conferences with counsel for the parties and with IDOC staff as appropriate, which may include coordination with the first Co-Monitor, Dr. Harris. (*See* Doc. 370, p. 14).

The hourly compensation rate for both Co-Monitors (special masters) is the rate established under 18 U.S.C. § 3006A for payment of court appointed counsel. (Docs. 423, pp. 5-6; 774). This hourly rate is currently $172.00; thus, Co-Monitor Dr. Chun will be

---

[6] The matters set forth in Parts D, E, and F of Doc. 370 and the related sections of Doc. 384.

compensated from the Court's appropriated funds at this rate plus costs she reasonably incurs in relation to her appointment.

The Court shall review Co-Monitor Dr. Chun's appointment every six months following the appointment to determine whether the services of the Co-Monitor remain necessary during the remedial phase of this matter. 18 U.S.C. § 3626(f)(5).

**IT IS SO ORDERED.**

**DATED:  June 25, 2024**

*[signature: Nancy J. Rosenstengel]*

**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**
