IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JANIAH MONROE,<br>MARILYN MELENDEZ,<br>LYDIA HELÉNA VISION,<br>SORA KUYKENDALL, and<br>SASHA REED, individually and on<br>behalf of a class of similarly situated<br>individuals,<br><br>   Plaintiffs,<br><br>v.<br><br>STEVEN BOWMAN,<br>MELVIN HINTON, and<br>LATOYA HUGHES,<br><br>   Defendants. | Case No. 3:18-CV-00156-NJR |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Now before the Court is Defendants' Motion for Stay Pending Appeal. (Doc. 709). Plaintiffs oppose the motion. (Doc. 727). For the reasons set forth below, the motion is granted in part and denied in part.

## BACKGROUND

This civil rights action was brought on behalf of a class consisting of all prisoners in the custody of the Illinois Department of Corrections ("IDOC") who have requested evaluation or treatment for gender dysphoria.[1] (Docs. 1; 213). The named Plaintiffs are transgender women incarcerated in IDOC facilities. The named Defendants are,

---

[1] The class was certified on March 4, 2020. (Doc. 213).

respectively, the IDOC Chief of Health Services, the IDOC Chief of Mental Health, and the IDOC Acting Director, all sued in their official capacities. The Court first ordered preliminary injunctive relief on December 19, 2019, after a two-day evidentiary hearing completed on August 1, 2019. (Docs. 156-158; 186; 187, amended on March 4, 2020 at Doc. 212). Among other matters, Defendants were ordered to develop a policy to ensure that treatment decisions regarding gender dysphoria are made by medical professionals qualified to treat the condition; to ensure that timely hormone therapy and monitoring is provided when medically necessary; to cease the policy and practice of depriving gender dysphoric prisoners of medically necessary social transition and to develop a policy to allow such transition (including individualized placement decisions, avoidance of cross-gender strip searches, and access to gender-affirming clothing and grooming items); and to advise the Court regarding steps taken to train all correctional staff on transgender issues. (Doc. 212; *see also* Doc. 679).

The second Order for preliminary injunctive relief was entered on August 9, 2021, following a four-day bench trial.[2] (Docs. 331; 332).[3] That Order included preliminary findings of fact and conclusions of law from the bench trial and noted that the December 2019 Preliminary Injunction's provisions (Doc. 212) continued in force. It included specific timelines related to hormone therapy and consideration of class members' requests for transfer to a facility matching their expressed gender; instructed Defendants

---

[2] The undersigned had issued a verbal ruling for specific preliminary injunctive relief at the close of the bench trial on August 5, 2021, later set forth in the Order of August 9, 2021. (Docs. 331; 349, pp. 972-92).
[3] A correction to the ordered injunctive relief was made on August 18, 2021, to reflect the correct target testosterone level for transgender females undergoing hormone treatment. (Doc. 336).

to "immediately ensure that transgender inmates are allowed access to a private shower;" and directed that "Plaintiff class members shall be allowed to choose the gender of the correctional officer who will conduct a search of their person, and the search **SHALL BE** conducted by a correctional officer of the gender requested." (Doc. 331, pp. 11-12) (emphasis in original). The Court also ordered supplemental briefing and responses. (Doc. 331, pp. 13-14).

The Court's third Order for injunctive relief, including the full findings of fact and conclusions of law from the August 2021 bench trial, was entered on February 7, 2022 (Docs. 383; 384).[4] On November 16, 2023, the Court clarified that this Order provided *permanent* injunctive relief, though it was mistakenly labeled as a preliminary injunction. (Doc. 678). That Order also denied Defendants' Motion to Vacate (Doc. 587) and Motion to Stay Compliance (Doc. 588), and partially granted and partially denied Plaintiffs' Motion for Contempt Finding (Doc. 455). Judgment was also entered that date, but the case has remained open with the Court retaining jurisdiction to enforce and ensure compliance with the ordered injunctive relief. (Doc. 679).[5]

Defendants filed their Notice of Appeal on December 14, 2023 (Doc. 699); the matter was docketed as Appeal No. 23-3371. (Doc. 704).

---

[4] In early 2022, the Court appointed two Special Masters/Co-Monitors, Dr. Amanda Harris and julie graham, MFT, to oversee Defendants' compliance with the ordered injunctive relief and implementation of IDOC's revised Administrative Directives regarding transgender prisoners and to assess and advise the Court and parties regarding further policy revisions needed to remedy the unconstitutional treatment of class members. (Docs. 370; 418; 423). The Co-Monitors have submitted written reports, participated in status conferences, investigated class members' complaints, and shared their expertise with the Court and the parties. The Court recently appointed Soo Chun, M.D., to replace julie graham as Co-Monitor (Doc. 790).
[5] The Court partially granted Plaintiffs' Motion for Transfer of Class Members Out of Pinckneyville Correctional Center on November 16, 2023 (Doc. 680) and held status conferences on December 5, 2023, and January 8, 2024, to assess compliance with its Orders. (Docs. 692; 693; 713; 714).

On December 21, 2023, Plaintiffs filed a Sealed Motion for Transfer of Class Member [name redacted] and all Other Class Members Out of Menard Correctional Center. (Sealed Doc. 705, redacted version at Doc. 715). Defendants responded in opposition, and Plaintiffs replied. (Docs. 741; 748). This transfer motion also remains pending before the Court.

Defendants filed the instant Motion to Stay Pending Appeal on December 29, 2023. (Doc. 709). Pursuant to Federal Rule of Civil Procedure 62, they request that the Court stay enforcement of all injunctive relief ordered in the Judgment of November 16, 2023 (Doc. 679) pending their appeal. Specifically, Defendants pursue "a stay of any further orders, evidentiary hearings, reporting, etc. related to the enforcement of the judgment and contempt orders that are subject to appeal." (Doc. 709, p. 2).

## DISCUSSION

Under Federal Rule of Civil Procedure 62(c), a district court's order for injunctive relief is not stayed even if an appeal is taken, unless the court orders otherwise. During the pendency of an appeal of a final judgment granting, continuing, or modifying an injunction, the court may "suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights." FED. R. CIV. P. 62(d). Rule 62 works in coordination with Federal Rule of Appellate Procedure 8(a), which dictates that "[a] party must ordinarily move first in the district court for…an order suspending, modifying, restoring, or granting, an injunction while an appeal is pending."

"The party requesting a stay bears the burden of showing that the circumstances justify an exercise of [the Court's] discretion" to grant the stay. *Nken v. Holder*, 556 U.S.

418, 433-34 (2009). In deciding whether to grant a stay pending appeal, the Court must consider four factors: "(1) whether the stay applicant has made a strong showing that [they are] likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken*, 556 U.S. at 434 (quoting *Hilton v. Braunskill,* 481 U.S. 770, 776 (1987)). The first two factors are the most critical. *Nken*, 556 U.S. at 434.

**1. Defendants' Likelihood of Success on the Merits of the Appeal**

Defendants acknowledge they must make a "strong showing" that they are likely to succeed on the merits of their appeal to obtain a stay. (Doc. 709, p. 3). First, Defendants argue that certain relief ordered in the November 16, 2023 Judgment has been mooted or resolved. Second, Defendants point to four of their previous filings in this case, asserting these constitute a strong showing of their likelihood of success based on "legal issues with Plaintiffs' requested relief, the breadth of this Court's orders, the minimizing of the deference afforded to Defendants and IDOC administrators, and procedural errors in this matter." (*Id.* at p. 4, referring to Docs. 238, 346, 499, and 587).[6] Defendants do not elaborate on these arguments, other than to say they have relied on the plain language of the Prison Litigation Reform Act ("PLRA"), established case law, and newer, recent precedential

---

[6] Defendants referred to the following documents: their December 2, 2020 Motion for Summary Judgment (Doc. 238), which the Court denied on February 4, 2021 (Doc. 252); their September 7, 2021 response to Plaintiffs' Post-Trial Brief (Doc. 346); their December 29, 2022 Response to Plaintiffs' Recommendations for Modifications to Preliminary Injunctions (Doc. 499); and their May 31, 2023 Motion to Vacate various Court Orders (Doc. 587), which the Court denied on November 16, 2023 (Doc. 678).

opinions (which they do not cite or discuss). (Doc. 709, p. 4). Further, they state their intent to argue that "errors leading up to" the Judgment warrant reversal, pointing to the continuation of preliminary injunctions that they contend expired automatically under the PLRA and their objection to the Court's modification of "an expired preliminary injunction" to make it a permanent one. (*Id.* at p. 9).

In opposition, Plaintiffs argue that Defendants' failure to develop their "skeletal argument" constitutes waiver of their claimed likelihood of success on the merits. (Doc. 727, pp. 6-7); *see, e.g., Crespo v. Colvin*, 824 F.3d 667, 674 (7th Cir. 2016). Plaintiffs further note that while Defendants claim that they have successfully complied with portions of the Court's injunctive relief orders, they never filed a motion to terminate prospective relief under 18 U.S.C. § 3626(b), thus a claim that Defendants have made progress or achieved compliance is not ripe for appeal. (Doc. 727, p. 8).

In its November 16, 2023 Order, this Court rejected Defendants' claim that the operative injunction had expired and corrected the mistaken labeling of its February 7, 2022 injunction as "preliminary," clarifying that it was a permanent injunction ordered as a result of the bench trial in August 2021. (Doc. 678). As outlined in that Order, all parties proceeded with the understanding that the February 7, 2022 Order set forth permanent injunctive relief, and Defendants did not appeal that injunction. (*Id.*). Defendants sought to vacate the injunctive relief over a year later, only after they were warned of a potential contempt finding because of their delays (even after extensions of time) in scheduling surgical consultations and gender affirming surgeries for class members who had long ago been granted approval for these procedures but were kept

waiting without explanation. (*See* Doc. 584).

Plaintiffs' point regarding Defendants' gaunt argument is well taken. In the instant motion, Defendants do not develop any arguments regarding the Court's purported errors or the imprudence of its granted injunctive relief. Instead, Defendants simply distill their issues on appeal into two paragraphs without support, aside from passing reference to their previous filings. Based on their motion, the Court cannot find that Defendants have made a "strong showing" of their likelihood of success as to the reversal of the permanent injunctive relief. The same is true for Defendants' mere citation to their earlier filings to support their contention of a likelihood of success on appeal concerning the breadth and scope of the relief provided and the sovereignty preserved by the PLRA.[7] The motion fails to expand upon any legal or factual argument to substantiate their case for a stay pending appeal.

Defendants' claim that some relief ordered in the November 16, 2023 Judgment has been mooted or resolved likewise does not amount to a strong showing of likely success on appeal. It is true that Defendants completed certain actions by the specific dates ordered and have worked toward improving the treatment of class members. (*See*, *e.g.*, Doc. 679, pp. 2-3 re: lab tests, hormone therapy, surgical evaluations, and transfer evaluations). For example, the availability of gender affirming commissary items and clothing has improved, particularly after Defendants designated a staff member to address these matters. Inmates can obtain evaluation for gender dysphoria more easily,

---

[7] *See* filings cited *supra* note 6.

and consistency and efficacy of hormone treatment has improved. Defendants have also implemented training for correctional staff as to transgender issues.

But Defendants conflate progress with compliance. Despite the progress made in some areas, Defendants' compliance with many aspects of the ordered injunctive relief, as well as with the overarching goal of eliminating unconstitutional treatment of class members, continues to fall short. A culture of hostility toward transgender individuals persists among many staff members, resulting in mistreatment of class members and outright violations of provisions contained in the permanent injunction. For instance, class members have recently reported alarming instances of abuse, assaults (including sexual assaults), and other mistreatment by prison staff and fellow inmates at Menard. (Sealed Docs. 705; 717; 740). Class members and the Co-Monitors continue to report ongoing failures to meet class members' basic needs as ordered to address gender dysphoria. (*See* Docs. 764; 788; 824). Specifically, cross-gender body searches remain common, and class members are still being denied access to private showers in some facilities. (Sealed Docs. 760; 792; 797; 801). While the consistency and efficacy of hormone treatment and necessary lab testing has improved, some class members still suffer from inadequate treatment and monitoring. Gender affirming surgery has been accomplished for some individuals, but evaluations and referrals, even for class members who were approved for surgery long ago, appear to have slowed or stalled. IDOC officials have been working on revising their policies regarding the treatment of transgender individuals but refused to engage with the Court-appointed Co-Monitors for their input until the Court (again) ordered them to do so. (Doc. 714). These ongoing concerns

undermine Defendants' argument that their efforts to comply with the ordered injunctive relief moot some of the injunction or represent a strong showing that they are likely to succeed on the merits of their appeal.

Moreover, Plaintiffs raise a question of the ripeness of Defendants' arguments regarding their compliance with portions of the Court's ordered injunctive relief. Because Defendants never filed a motion to terminate prospective relief under 18 U.S.C. § 3626(b), Plaintiffs argue the question is not ripe and thus cannot succeed on appeal. The ripeness question is, of course, a matter for the appellate court to determine—but Defendants' failure to pursue a Section 3626(b) termination motion also tends to undermine the required showing of a likelihood of success.

As Defendants highlight, they are not required to convince this Court that it has erred or win the Court over as to their case on the merits. But at the very least, they must present a well-supported argument in their favor. They have not done so. Thus, the Court concludes that Defendants have not made a strong showing of a likelihood of success on the merits of their appeal that would warrant the issuance of a stay.

**2. Will Defendants be Irreparably Injured Absent a Stay?**

Defendants raise concerns that a future evidentiary hearing, the adjudication of Plaintiffs' transfer motions, and the possibility of another contempt motion would injure them by requiring them to "continuously defend against their compliance" with the injunction now under appeal, as well as handle "ancillary matters that arise that were not specifically part of the preliminary injunction." (Doc. 709, pp. 5-6). Defendants assert that "[b]ased upon the history of this matter and the Court's expressed plan, there is a high

likelihood that this Court will modify its injunction or issue further purported enforcement orders unless a stay is put into place." (*Id.* at p. 6). Lastly, Defendants describe their position on appeal as "awkward" because they will have to continue to litigate this matter and defend their ongoing compliance while simultaneously appealing overlapping procedural and legal issues to the appellate court. (*Id.*).

As an initial matter, Defendants make much of the Court's "expressed" intentions. Defendants claim that the Court plans to hold another evidentiary hearing in relation to its November 2023 Order and Judgment. This is a misstatement. The Court simply recognized that Defendants are entitled to move for termination of the ordered prospective relief, pursuant to the PLRA, two years after the date a court grants or approves the relief. 18 U.S.C. § 3626(b)(1)(A)(i). As the permanent injunction in this case was entered in February 2022, the Court anticipated that Defendants would move for termination of the ordered prospective relief after two years passed in February 2024. If Defendants did so move, the Court would then hold an evidentiary hearing to determine whether termination of the prospective relief is appropriate. The PLRA makes clear that prospective relief shall not terminate if a court makes findings based on the record that prospective relief remains necessary to correct a current and ongoing violation of a federal right (along with other findings). *Id.* at § 3626(b)(3). Defendants have not filed such a motion; thus the Court does not intend to hold an evidentiary hearing at this time.

Defendants also assert that the Court "both encouraged Plaintiffs to file another contempt motion and expressed that it would modify the injunction or enter another enforcement order if it disagrees with Defendants' plan on achieving full compliance."

(Doc. 709, p. 5). This is a misrepresentation of the Court's words. In its November 2023 Order, the Court stated,

> Defendants must confer with the Co-Monitors to develop and propose a plan with reasonable timelines to achieve compliance in each of the areas identified in the operative injunction. *The Court will consider the proposed timelines and either clarify or modify the operative injunction or enter another enforcement order with the timelines for compliance and reporting*. To be sure, *if Defendants remain in contempt*, Plaintiffs are encouraged to file another motion, and the Court will not hesitate *to investigate and issue sanctions as necessary* to ensure compliance.

(Doc. 678, p. 25) (emphasis added). The Court intended to memorialize the proposed timelines, if reasonable, by clarifying, modifying, or entering an enforcement order to keep Defendants accountable to their own suggested deadlines. Further, the Court encouraged Plaintiffs to file another motion for contempt only if Defendants remained in contempt, and sanctions would issue only after investigation into the claims of contempt. Defendants' contention that "[t]here is also a high chance that Plaintiffs will move for another contempt finding based upon the Court's encouragement" is entirely misplaced. (Doc. 709, p. 6). If Plaintiffs move for another contempt finding, it would most certainly be based upon Defendants' contempt, *not* the Court's "encouragement."

In any event, Defendants again fail to connect the dots as to how simply fulfilling their obligations under the Court's ordered injunctive relief—that has been in effect for over two years—constitutes irreparable harm. In deciding a motion to stay, a showing of some possible or speculative irreparable injury does not satisfy the second factor. *Nken*, 556 U.S. 434-35. Any harm related to a future evidentiary hearing is speculative, especially considering the Court has not set a hearing and does not plan to do so absent

a motion from Defendants to terminate its ordered prospective relief. Further, Defendants cannot sensibly argue that they may suffer irreparable harm by facing the consequences of their own failure to comply with the ordered injunctive relief through a possible motion for a finding of contempt. Furthermore, keeping up with their ongoing obligations under the permanent injunction does not create a threat of irreparable harm. Such "ordinary incidents of litigation…do not constitute irreparable harm." *Crist v. Miller*, 846 F.2d 1143, 1144 (7th Cir. 1988). With no concrete examples, the Court finds that Defendants have failed to demonstrate that they would suffer irreparable harm in absence of a stay.

### 3. Will a Stay Substantially Injure Plaintiffs?

Next, Defendants again point to their progress to argue that Plaintiffs will not be substantially injured if a stay is granted on appeal. Apparently, they do not seek to stay the ongoing efforts to "achieve compliance and improve care" for Plaintiffs, but rather seek to preserve the "*status quo* as it stands." (Doc. 709, p. 7). Maintaining the status quo, according to Defendants, will not cause substantial harm to Plaintiffs.

To the contrary, Plaintiffs argue that their safety, health, and wellbeing are entirely controlled by Defendants, who have shown (at best) indifference to their constitutional rights. (Doc. 727, p. 12). After the bench trial in August 2021, the Court found serious and ongoing violations of the Eighth Amendment with respect to Defendants' treatment of the Plaintiff class and their diagnosed gender dysphoria. Even with improvement since that time, progress has been painfully slow, the Court previously found that Defendants were in contempt of its Orders, and most recently, the Co-Monitors have collected very

concerning reports as to the ongoing noncompliance by prison staff. Plaintiffs assert that they face very real danger, and the current status quo is an "unchecked culture of abuse towards class members." (*Id.* at p. 14). While Defendants may suffer inconvenience in complying with Court Orders to achieve constitutionally adequate medical care, Plaintiffs argue they face real and substantial physical, mental, and constitutional harms if a stay is granted.

Defendants appear to recognize that an outright stay of the case pending appeal, including halting or reversing the Court's efforts to ensure Defendants' compliance with its ordered injunctive relief, would be detrimental to the health and welfare of the Plaintiff class. As the Court has previously noted, without constitutionally adequate care, Plaintiffs face serious risks for self-harm, anxiety, depression, suicidal ideation, and sexual harassment by staff and other inmates. (*See* Doc. 383). The ongoing reports submitted by the Co-Monitors confirm the ongoing presence of these risks and paint a bleak picture as to the regression regarding compliance within the IDOC.

For this third factor, the Court finds that a stay would substantially harm Plaintiffs. Defendants appear to agree that efforts to achieve compliance should continue. As counsel for Plaintiffs pointed out at the status conference earlier today, Defendants could comply with the relief that has already been ordered and stop the unconstitutional treatment that has been reported. Indeed, Defendants propose a stay of everything but the "status quo." The Court will discuss this proposition in more detail below after review of the fourth factor.

**4. Does the Public Interest Weigh in Favor of or Against a Stay?**

Lastly, Defendants argue that, under the PLRA, they should be allowed to develop their own procedures and plans as to how to comply with the ordered injunctive relief. (Doc. 709, p. 7). Defendants further contend that any newly ordered obligations, without appellate review of the process thus far, will "further entrench the Court's involvement in agency operations." (*Id.*).

This argument makes little sense. First, the Court has permitted Defendants to develop many of their own procedures and plans for compliance within their facilities. By ensuring compliance with the ordered injunctive relief, the Court is not "involving itself in agency operations" any more than is necessary to correct the constitutional violations at issue. Second, in this argument, Defendants have not identified any public interest that warrants a stay pending appeal. Alternatively, the public has a very strong interest in its public institutions, such as prisons, operating in a constitutional manner. More specifically, the public has an interest in having prisoners receive constitutionally adequate medical care while in custody. This factor, too, weighs against a stay pending appeal.

All of the factors considered by the Court weigh against granting a stay pending appeal. As such, the Court will not grant a blanket stay during the pendency of the appeal. To the extent Defendants' motion seeks an outright stay of the case pending appeal, their pending Motion to Stay (Doc. 709) is denied.

**5. The Status Quo**

Now, to the extent Defendants seek a stay that preserves the "status quo," their

arguments beg the question—what is the status quo?

While the filing of a notice of appeal from a district court's judgment "generally vests jurisdiction over the cause appealed in the court of appeals, it has long been recognized that the trial court reserves the power to make orders appropriate to preserve the *status quo* while the appeal is pending." *Rakovich v. Wade*, 834 F.2d 673, 673-74 (7th Cir. 1987) (internal citations omitted); *Newton v. Consol. Gas Co. of New York*, 258 U.S. 165, 177-78 (1922) ("Undoubtedly, after appeal the trial court may, if the purposes of Justice require, preserve the status quo until decision by the appellate court."). The Federal Rules of Civil Procedure permit a district court to modify an injunction to maintain the status quo pending appeal. *Eli Lilly and Company v. Arla Foods, Inc.*, 893 F.3d 375, 384 (7th Cir. 2018); *see also United States v. Spectrum Brands, Inc.*, 924 F.3d 337, 346 (7th Cir. 2019) (approving a district court's efforts to preserve the status quo pending appeal by clarifying an injunction's specific requirements, as opposed to adding new injunctive requirements while on appeal).

After ordering the February 2022 injunctive relief and before the entry of Judgment in November 2023, the Court held five status conferences. (Docs. 493; 521; 539; 551; 565). These conferences, which were also in continuation of contempt hearings, addressed problems raised in Plaintiffs' Motion for Contempt Finding. (Doc. 455). The status conferences resulted in several Orders specifying deadlines for Defendants to take certain actions, with the goal of enforcing and bringing Defendants into compliance with the previously ordered injunctive relief. (Docs. 494; 522; 552; 584). During this time, from January to May 2023, the parties held several meetings with the Co-Monitors to tackle

outstanding issues. Some progress was made toward compliance, as reflected in the Orders, but Plaintiffs and the Co-Monitors continued to receive reports of violations and noncompliance.

After entry of the November 16, 2023 Order (now being appealed), the Court held two status conferences, one on December 5, 2023, and one on January 8, 2024. (Docs. 692; 713). As a result of these conferences, the Court ordered Defendants to produce various updates, reports, sworn statements, and other evidence of compliance. (Docs. 693; 714). Once the Notice of Appeal was filed, the Court was mindful of its power to maintain the status quo during the pendency of Defendants' appeal.

While Defendants "do not intend to change course as to the work that is already underway," they seem to define the status quo as staying ongoing enforcement of the permanent injunction and the November 2023 Judgment that are the subject of the pending appeal. The Court disagrees. The status quo must entail enforcement of the ordered injunctive relief, including ongoing monitoring of Defendants' compliance, directing corrective action to mitigate noncompliance, clarifying the injunctive relief ordered, mandating updates and reports, and modifying the injunctive relief to impose reasonable deadlines where Defendants demonstrate an inability or unwillingness to comply. These actions will help maintain the status quo—or what should be the status quo by now—of ensuring Defendants' compliance with the injunction and raising Defendants' care of the Plaintiff class to the requisite constitutional floor. Notably, this active monitoring of compliance, or lack thereof, is especially necessary given recent reports from the Co-Monitors and declarations of class members that detail continued

noncompliance relating to private showers[8] and body searches—the very basic kind of relief ordered by the Court long ago.

The Court, however, does agree with Defendants that ordering new relief, such as would be required in ruling on Plaintiffs' motion for transfer, would likely alter or exceed the status quo. Of course, the Court's injunctive relief directs Defendants "to evaluate Plaintiff class members who have requested transfer to a facility matching the inmate's expressed gender for transfer." (Docs. 383, p. 79; 384, pp. 3-4, 8-9). But the Motion for Transfer of Class Members Out of Menard (Sealed Doc. 705, redacted version at Doc. 715) refers to transfer under different circumstances.

While Defendants have not met the required showing for a stay on appeal, the Court is limited by the parameters in Rule 62 while the case is on appeal. As such, the Court finds that it cannot decide Plaintiffs' motion to transfer at this time. Accordingly, as to Defendants' request for a stay regarding the pending motion for transfer within their Motion to Stay (Doc. 709), the Court grants their motion to stay in part.

## Conclusion

For the reasons explained above, Defendants' Motion to Stay Pending Appeal (Doc. 709) is granted in part and denied in part. The Court declines to stay the case. To preserve the status quo, the Court will continue actively monitoring Defendants' efforts to comply with the ordered injunctive relief, including holding status conferences, reviewing reports by the Co-Monitors and ordering responses to those reports, clarifying

---

[8] In some instances, reports indicate there is backsliding from former progress (*e.g.*, shower curtains that had been in place are now missing).

the directives within the injunction as necessary, and creating plans and deadlines to rectify noncompliance. Defendants' motion is granted in part only as to the request to stay consideration of Plaintiffs' Motion for Transfer. As that motion exceeds the status quo in this case, the Court will hold the Motion for Transfer (Sealed Doc. 705, redacted version at Doc. 715) in abeyance until the appeal is resolved.

**IT IS SO ORDERED.**

DATED: **August 6, 2024**

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**