CERTIFIED COPY
A True Copy
Teste:

Deputy Clerk
of the United States
Court of Appeals for the
Seventh Circuit

*In the*

# United States Court of Appeals

## For the Seventh Circuit

———————————

No. 23-3371

JANIAH MONROE, et al., individually and on behalf of a class of similarly situated individuals,

*Plaintiffs-Appellees,*

*v.*

STEVEN BOWMAN, et al.,

*Defendants-Appellants.*

———————————

Appeal from the United States District Court for the
Southern District of Illinois.
No. 3:18-cv-00156-NJR — **Nancy J. Rosenstengel,** *Chief Judge.*

———————————

ARGUED SEPTEMBER 19, 2024 — DECIDED DECEMBER 5, 2024

———————————

Before ROVNER, HAMILTON, and KIRSCH, *Circuit Judges.*

HAMILTON, *Circuit Judge.* For six years, the district court has presided over this class action challenging the treatment of prisoners with gender dysphoria by the Illinois Department of Corrections. The defendant prison officials appeal several injunctions and a finding of civil contempt by the district court.

Injunctive relief in this case is subject to the Prison Litigation Reform Act of 1996, which includes in 18 U.S.C. § 3626(a)(2) this provision that governs the outcome of this appeal: "Preliminary injunctive relief shall automatically expire on the date that is 90 days after its entry, unless the court makes the findings required under subsection (a)(1) for the entry of prospective relief and makes the order final before the expiration of the 90-day period."

The district court issued a preliminary injunction on February 7, 2022. Further injunctions followed to supplement and modify the terms. On November 16, 2023, more than a year and a half after the preliminary injunction was issued, and after defendants invoked the 90-day limit in § 3626(a)(2), the district court ruled that its original label — literally "Preliminary Injunction" — had been a mistake. The judge wrote that the February 7, 2022 order was actually in substance a permanent injunction. The judge ordered the clerk of the court to amend the docket to label the injunction permanent and to issue a final judgment consistent with the February 7, 2022 decision.

The court did not use the Latin phrase "nunc pro tunc" ("now for then") but the label fits this attempt to transform retroactively a preliminary injunction into a permanent one. This substantive, retroactive transformation was not authorized. Federal courts may issue nunc pro tunc orders to "reflect the reality" of what has already occurred, but the court "cannot make the record what it is not." *Missouri v. Jenkins*, 495 U.S. 33, 49 (1990), quoted in *Roman Catholic Archdiocese of San Juan v. Acevedo Feliciano*, 589 U.S. 57, 64–65 (2020); accord, e.g., *United States v. Daniels*, 902 F.2d 1238, 1241 (7th Cir. 1990) ("A judge may correct a clerical error at any

time" but "may not rewrite history."). The attempted retroactive change here cannot be deemed a correction of a clerical or typographical error. And the attempted retroactive change would also impair defendants' substantive rights. Parties are entitled to take federal court orders at face value. They are not required to divine what the judge might have meant, contrary to what the judge actually said. E.g., *Grede v. FC Stone, LLC*, 746 F.3d 244, 255–58 (7th Cir. 2014) (bankruptcy court's authorization of a post-petition transfer of funds could not be "clarified" retroactively to deem the transfer unauthorized; despite judge's later regrets, supposed "clarification" of order ran contrary to its plain language).

Under § 3626(a)(2), the preliminary injunction issued on February 7, 2022 expired 90 days later, on May 8, 2022. Accordingly, we vacate all existing injunctions and remand for further proceedings consistent with this opinion. We must, however, dismiss the portion of the appeal challenging the finding of contempt. The district court made the finding but has not yet imposed any sanctions, which are needed to establish appellate jurisdiction.

I.    *The Lawsuit and the Injunctions*

    A.    *Plaintiffs' Claims*

The named plaintiffs are transgender women housed in Illinois prisons. The plaintiff class is comprised of prisoners in the Illinois Department of Corrections who have requested evaluation or treatment for gender dysphoria.

Gender dysphoria is a condition in which a person experiences clinically significant distress stemming from incongruence between the person's experienced or expressed gender and the person's assigned gender. The plaintiffs and

defendants agree that gender dysphoria is a serious medical condition. The parties also agree that the Eighth Amendment calls for appropriate medical treatment of a prisoner's gender dysphoria. Appropriate treatment options include social role transitioning, cross-sex hormone therapy, psychotherapy, and surgery.

Plaintiffs contend that the defendant correctional officials have acted or failed to act with deliberate indifference to their gender dysphoria. Plaintiffs have sought injunctive relief to ensure timely evaluations and treatment in the form of hormone therapy and monitoring, gender-affirming surgery where medically necessary, and appropriate support for social transitioning, including gender-affirming clothing and grooming items, and access to private showers. Plaintiffs also seek access to medical and mental health care providers competent to treat gender dysphoria, and they seek individualized housing placement decisions and an end to what they experience as cross-gender strip searches.

B. *The District Court Proceedings*

This case presents issues that have been challenging for the district court, the plaintiff class, and the defendant prison officials. As one corrections expert testified here, the criminal justice system has been "binary in every way," and modifications to deal with transgender prisoners require "monumental change." We provide only a brief summary of the years of litigation in the district court, focusing on events most relevant to this appeal.

The case was filed on January 31, 2018 as a putative class action. District Judge Herndon screened the complaint as required under 28 U.S.C. § 1915A and found that plaintiffs

had alleged colorable claims for relief. After Judge Herndon's retirement, the case was assigned to Judge Rosenstengel. In the spring of 2019, plaintiffs moved for class certification and a preliminary injunction. On December 19, 2019, the court granted a preliminary injunction, and on March 4, 2020, amended that preliminary injunction. Those early orders required defendants to provide plaintiffs some limited relief, including ensuring that medical decisions about transgender inmates would be made by medical professionals, ensuring timely hormone therapy where medically necessary, with medically appropriate monitoring, allowing social transitioning, allowing evaluations for gender dysphoria on request, and taking steps toward appropriate staff training (which looks like a long-term institutional challenge). On March 4, 2020, the court certified a class of all prisoners in the custody of the Illinois Department of Corrections who have requested evaluation or treatment for gender dysphoria. The class seeks injunctive and declaratory relief and was certified under Federal Rule of Civil Procedure 23(b)(2).

The court scheduled a bench trial for August 2021 and heard evidence for four days. On August 9, 2021, the court issued preliminary findings of fact and conclusions of law and a modified preliminary injunction.

Coming to the events most central for this appeal, on February 7, 2022, the district court issued an 87-page "Memorandum and Order" and a separate 13-page "Preliminary Injunction."[1] The court found that the plaintiffs

---

[1] The court issued the preliminary injunction in a separate document to comply with this court's interpretation of Federal Rule of Civil Procedure 65 in *MillerCoors LLC v. Anheuser-Busch Cos.*, 940 F.3d 922 (7th Cir. 2019). The district court docket entry for the document now reads:

were not receiving appropriate and timely evaluation for
gender dysphoria and were not receiving timely and
appropriate care for their condition in many respects. These
included social transitioning, hormone therapy with
medically necessary monitoring, individualized assessments
of housing decisions, and eliminating cross-gender strip
searches, among others. Testimony also showed significant
resistance on the part of many correctional officers to training
on transgender inmates and to appropriate treatment of such
inmates.

In the February 7, 2022 preliminary injunction, the court
also ordered status reports on compliance with the injunction
and took steps toward appointing a monitor for compliance.
In April and again in May 2022, about the time the
preliminary injunction was expiring by operation of law
under 18 U.S.C. § 3626(a)(2), the court followed up by
appointing two co-monitors to oversee compliance with the
injunctive relief. Six months later, on November 14, 2022,
plaintiffs filed their Motion for Finding of Contempt. The
motion asserted that defendants in many respects were failing
to make reasonable efforts to comply with the "preliminary
injunction." While the contempt motion was pending, the
court issued further orders to modify and enforce the
February 7, 2022 Preliminary Injunction on January 24, 2023,
April 4, 2023, and May 11, 2023.

---

"PERMANENT INJUNCTION (to be interpreted in accordance with the
Court's Order at Doc. 678.)" This attempt to rewrite history is a central
focus of this appeal.

C. *Retroactive Conversion of the "Preliminary Injunction"
into a Permanent Injunction with a Final Judgment*

The district court confronted the 90-day problem and the
contempt motion in a Memorandum and Order issued on
November 16, 2023. The court began by reviewing the history
of the case, but it ended up rewriting that history in ways
prejudicial to defendants' rights. The court wrote that the
February 7, 2022 "Memorandum and Order" had actually set
forth what the court now called its "Final Findings of Fact and
Conclusions of Law," and it ordered the "Preliminary
Injunction" of February 7, 2022 to be redesignated as a
permanent injunction. The court acknowledged that it had
made mistakes and took responsibility for any confusion.
Unfortunately, however, the court's remedy – transforming
its prior order – has caused only greater confusion.

The court also found that defendants were in contempt for
failing to act with reasonable diligence to comply with the
court's orders. The court declined, however, to impose any
sanctions: "But because of the confusion that this Court
unintentionally infused into this case concerning the nature
of the operative injunction, and given the considerable time
that has passed since the issuance of the Court's enforcement
orders and the filing of the Motion for Contempt Finding, the
Court is inclined to avoid imposing sanctions at this time."
The court also instructed the clerk of the court to enter a final
judgment for plaintiffs "as should have been done after the
entry of the February 2022 Order." The court concluded: "The
Court recognizes that these solutions are not perfect and
apologizes for the procedural confusion created with its prior
orders." The court also scheduled a status conference to see

how to move forward. Defendants have appealed from that final judgment and the finding of contempt.

## II. *The Prison Litigation Reform Act*

The Prison Litigation Reform Act imposed a range of new restrictions on cases challenging prison conditions. Section 3626 of Title 18 of the United States Code imposed requirements and limits for injunctive relief on prison conditions. An important substantive requirement is that injunctive relief is permitted only to the extent necessary to correct the violation of the plaintiffs' federal rights. In most civil cases requiring injunctive relief, a court has considerable discretion to shape the relief to ensure it is effective, especially where defendants have persisted in wrongful conduct or inaction. E.g., *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 192 (1949) (injunction barring violations of labor law was justified based on defendant's "record of continuing and persistent violations" of law); *Russian Media Group, LLC v. Cable America, Inc.*, 598 F.3d 302, 307 (7th Cir. 2010) ("district court has the discretion to issue a broad injunction" where "a proclivity for unlawful conduct has been shown"); *Lineback v. Spurlino Materials, LLC*, 546 F.3d 491, 506 (7th Cir. 2008) (affirming injunction against specified violations of labor laws and against actions violating the law "in any like manner").

Under § 3626(a), however, the court has less discretion:

> Prospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs. The court shall not grant or approve any prospective relief unless the court finds that such relief is

> narrowly drawn, extends no further than
> necessary to correct the violation of the Federal
> right, and is the least intrusive means necessary
> to correct the violation of the Federal right. The
> court shall give substantial weight to any
> adverse impact on public safety or the operation
> of a criminal justice system caused by the relief.

§ 3626(a)(1)(A); see *Rasho v. Jeffries*, 22 F.4th 703, 713 (7th Cir.
2022) ("the PLRA requires that courts give prison
administrators wide latitude to set constitutionally adequate
procedures"); *Westefer v. Neal*, 682 F.3d 679, 684 (7th Cir. 2012)
(vacating injunction that failed to comply with PLRA's
narrow-tailoring requirement).

Section 3626(a)(2) includes a similar substantive require-
ment for preliminary injunctive relief:

> Preliminary injunctive relief. — In any civil
> action with respect to prison conditions, to the
> extent otherwise authorized by law, the court
> may enter a temporary restraining order or an
> order for preliminary injunctive relief.
> Preliminary injunctive relief must be narrowly
> drawn, extend no further than necessary to
> correct the harm the court finds requires
> preliminary relief, and be the least intrusive
> means necessary to correct that harm. The court
> shall give substantial weight to any adverse
> impact on public safety or the operation of a
> criminal justice system caused by the
> preliminary relief and shall respect the
> principles of comity set out in paragraph (1)(B)
> in tailoring any preliminary relief. * * *

18 U.S.C. § 3626(a)(2). As noted, that paragraph also includes a time limit: "Preliminary injunctive relief shall automatically expire on the date that is 90 days after its entry, unless the court makes the findings required under subsection (a)(1) for the entry of prospective relief and makes the order final before the expiration of the 90-day period." *Id.*

III. *Analysis*

A.  *The Reason to Reverse*

The principal issue in this appeal is simple. On February 7, 2022, the district court issued a document called a "Preliminary Injunction." Within the next 90 days, the court never made a finding that might have allowed extension of that preliminary injunction. Under § 3626(a)(2), that preliminary injunction expired 90 days after it was issued, on May 8, 2022. After that date, the injunction no longer had any legal effect.

On the other hand, the expiration of the February 7, 2022 Preliminary Injunction did not conclude the case, and the court did not lose the power to issue further preliminary injunctions or a permanent injunction. But any such further injunctions had to satisfy the requirements of § 3626(a), including its time limits.

B.  *The District Court's Reasons*

In the memorandum of November 16, 2023, the district court recognized that it had created a procedural mess. Its solution was (a) to transform the February 7, 2022 preliminary injunction retroactively into a permanent injunction, (b) to order entry of a final judgment on November 16, 2023 consistent with the terms of the February 7, 2022 documents that it now called its findings of fact, conclusions of law, and

No. 23-3371                                                          11

permanent injunction, (c) to decline to impose sanctions on
defendants for the contempt it found, and (d) to set a status
conference to get the case back on track to achieve protection
of plaintiffs' federal constitutional rights.

The district court and plaintiffs did not cite, and we have
not found, any precedent in federal law for such a retroactive
transformation of a preliminary injunction into a permanent
injunction, or, frankly, any comparably substantive retroac-
tive transformation of a court order.

To justify this rewrite, the district court said that it had un-
derstood the four-day hearing in August 2021 to have been
the final trial on the merits. The court acknowledged that its
order had been entitled "Preliminary Injunction" and that the
accompanying memorandum set forth and applied the legal
standard for issuing a preliminary injunction.

In the November 2023 opinion, however, the court went
on to write that, in its February 2022 memorandum, it had
found that plaintiffs had shown actual success on the merits
of their claims, as needed for a permanent injunction. See
*Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 32
(2008) ("it would be an abuse of discretion to enter a
permanent injunction, after final decision on the merits, along
the same lines as the preliminary injunction."); *Vaughn v.
Walthall*, 968 F.3d 814, 824–25 (7th Cir. 2020) ("Since a
permanent injunction is a form of relief on the merits, the
plaintiff must also show not just a probability of success on
the merits but actual success."). The court noted it had also
made the PLRA findings of necessity, narrowness, and least
intrusive means, which are needed for any covered
injunction, preliminary or permanent.

12                                                    No. 23-3371

When a United States District Court exercises its power to
grant injunctive relief, the difference between preliminary
and permanent relief is fundamental. The choice between
them is elementary, with substantial, even dramatic, practical
and legal consequences. Different legal standards apply.
Different standards of appellate review apply. Different
requirements for a bond or other security apply. And under
§ 3626(a)(2), one is limited to 90 days at a time and the other
is not.

A district court issuing an injunction must be
unmistakably clear about whether the injunction is
permanent or preliminary. See *Lacy v. Cook County*, 897 F.3d
847, 859 (7th Cir. 2018) (reversing grant of permanent
injunction because "the district court sent extremely mixed
messages about the nature of the hearing itself. The record
reveals that none of the participants understood exactly what
the court was deciding—preliminary or permanent injunctive
relief."). Parties have a right to take the court's action at face
value. See *Matter of Wade*, 991 F.2d 402, 408 (7th Cir. 1993) ("the
order of a district court that is final in form and is, to all
appearance, proper, will be taken at face value and will be
regarded as final").

The plaintiffs' arguments on appeal and the district court's
memorandum of November 16, 2023 highlight various
features of the Memorandum and Order of February 7, 2022
and the "Preliminary Injunction" issued on February 7, 2022
that supposedly should have told the defendants that the
court had actually issued a permanent injunction. The court
wrote:

> Admittedly, the Court, throughout its February
> 2022 Order, referred to either "preliminary

> relief" or simply "injunctive relief," outlined the
> standard for preliminary injunctive relief, and
> titled the accompanying injunction a
> "Preliminary Injunction." Simply put, this was
> a mistake.
>
> But from the substance of the February 2022
> Order and operative injunction, along with the
> context and ongoing actions of the Court and
> the parties, it is clear that the relief was intended
> and understood to be *permanent* injunctive relief
> resulting from the evidence presented at the
> bench trial. (Footnote omitted.)

Among these features, the court emphasized that it had
found not only a likelihood of success on the merits but actual
violations of plaintiffs' Eighth Amendment rights. The court
also referred to its statement at the close of the August 2021
bench trial that the court would "follow up with permanent
injunctive relief and may at some point consider the
appointment of an independent monitor to ensure ongoing
compliance …." Apparently, this statement should have been
understood at the time as a signal that the court would be
entering a permanent injunction. The court also referred to
the subject of the just-completed trial as "permanent
injunctive relief."

None of those comments or findings were sufficient to tell
the parties that the document labeled "Preliminary Injunc-
tion" was not actually a preliminary injunction subject to Rule
65 and § 3626(a)(2). See *Kusay v. United States*, 62 F.3d 192, 193
(7th Cir. 1995) ("The United States does not ask us to correct
records to show what happened; it wants us to change

history. Incantation of Latin phrases [e.g., nunc pro tunc] does
not bestow such an Orwellian power.").

This principle is fundamental enough that closely similar
cases seem to be rare. This court rejected analogous revisionist
arguments in *Grede v. FC Stone*, 746 F.3d 244 (7th Cir. 2014),
and *Mendez v. Republic Bank*, 725 F.3d 651 (7th Cir. 2013). In
*Grede*, this court held that a bankruptcy court had abused its
discretion when it tried to "clarify" that an earlier order
authorizing a transfer of funds had not *actually* authorized the
transfer, at least for purposes of preventing clawbacks. 746
F.3d at 255. We explained that "the post-petition transfer was
clearly authorized by the bankruptcy court," and that the
"court's later clarification of its order ran contrary to the plain
language of its order." *Id.* "Parties and non-parties alike
should be able to rely on the text of a court order where the
text is clear, rather than having to dig through the docket and
record to determine the order's true meaning. Especially
where, as here, the issues were urgent and the stakes were
high." *Id.* at 257, citing *Mendez*, 725 F.3d at 663; see also *In re
Trans Union Corp. Privacy Litigation*, 741 F.3d 811, 816 (7th Cir.
2014) ("Litigants as well as third parties must be able to rely
on the clear meaning of court orders setting out their
substantive rights and obligations, and appellate courts
should interpret those orders in the same manner.").

A different approach would invite confusion and would
unnecessarily upset the reliance interests of the parties and
others. See *Grede*, 746 F.3d at 257–58. As in *Grede*, the issues
here carried some degree of urgency, and the stakes were
high. Those circumstances, however, do not allow a court to
correct, clarify, or modify retroactively the substance of its

No. 23-3371                                                                          15

order in ways that cause substantive prejudice or upset reliance on the plain language of the court's order. *Id.*

To be fair, the district court also pointed out that both plaintiffs and defendants had behaved after February 2022 as if that injunction had been permanent. Most important, after the preliminary injunction expired by operation of law on May 8, 2022, defendants "continued to acknowledge the role of the Co-Monitors, engaged in status conferences and many other communications with the Co-Monitors, Plaintiffs, and the Court, and responded to Plaintiffs' Motion for Finding of Contempt." Defendants did not invoke the expiration of the preliminary injunction for over a year, at the end of May 2023. They first did so when the district court was considering finding them in contempt of court for failing to comply with that preliminary injunction.

The district court treated defendants' delay in raising the 90-day limit as waiving that limit. A145–46, quoting *Carr v. O'Leary*, 167 F.3d 1124, 1126 (7th Cir. 1999) ("But a party's unreasonable delay in advancing a good ground for a change in a previous ruling is normally a compelling ground for deeming even a good ground waived."). *Carr* addressed the state's failure to raise a timely defense under *Heck v. Humphrey*, 512 U.S. 477 (1994), but ultimately found that *Heck* did not provide a good defense in any event. *Carr* is not sufficient authority for the retroactive rewrite of history in this case. Here, the February 2022 injunction's expiration governed and limited defendants' legal obligation to follow the injunction's terms.

Treating defendants' cooperation with the court in this case as a waiver of an important limit in the PLRA would also create a harmful disincentive. The district court created the

procedural confusion, as it candidly admitted. Yet, despite the procedural confusion, the merits issues were not going away. The case would be continuing whether the district court had issued a preliminary injunction, a permanent injunction, or no injunction. Under these circumstances, parties should not be faulted for erring on the side of cooperation. Neither the district court nor plaintiffs have shown how they relied to their prejudice on the defendants' earlier silence on the PLRA time limits. We must also note that plaintiffs never asked the district court to fix the 90-day limit inherent in the court's preliminary injunction of February 7, 2022.

Also, to be fair, defendants have not offered even an explanation for their delays in raising the 90-day limit. Accordingly, we appreciate that there is a sense in which defendants too are asking us to rewrite history, as if the district court had not issued what amounts to a series of preliminary injunctions. For example, the district court appointed the co-monitors, and they worked under the court's aegis without defendants having objected to the timing of their appointments. They are entitled to be paid accordingly for the work they did.

We are confident, however, that defendants' failure to raise the 90-day issue earlier did not amount to a waiver of the issue going forward in the case. All of the orders are now older than 90 days. No findings sufficient to extend any of them have been issued as required under § 3626(a)(2). None of the preliminary injunctions are in effect now.

The 90-day limit and our enforcement of it do not mean that the case is over. Our decision today remands this case to the district court for further proceedings. If plaintiffs believe, as they argue here, that defendants have been continuing to

No. 23-3371                                                                    17

violate their Eighth Amendment rights, they may ask the
district court for a new injunction, preliminary or permanent.
See, e.g., *Mayweathers v. Newland*, 258 F.3d 930, 936 (9th Cir.
2001) (affirming second preliminary injunction under PLRA:
"Nothing in the statute limits the number of times a court may
enter preliminary relief. If anything, the provision simply
imposes a burden on plaintiffs to continue to prove that
preliminary relief is warranted."). The district court need not
forget what has happened in the last six years of litigation, but
new injunctive relief will need to address the current
situation. Any such relief will need to comply with the PLRA,
including § 3626.

### C. *Plaintiffs' Counterarguments*

Plaintiffs' counterarguments do not rescue the district
court's attempted solution for this procedural mess. First,
plaintiffs cite *French v. Duckworth* and argue that the district
court's reference to "the standards for a preliminary, not a
permanent injunction" was merely a "mis-citation" of "no
practical consequence, since the findings of the February 2022
Order supported the entry of permanent injunctive relief."
178 F.3d 437 (7th Cir. 1999), rev'd on other grounds sub nom.
*Miller v. French*, 530 U.S. 327 (2000).

*French* does not support the attempt at rewriting history in
this case. In *French*, we found that "the district court simply
cited the wrong statutory section [in its preliminary
injunction order], a mistake to which we need not attach any
significance unless it affects the substantial rights of the
parties…." 178 F.3d at 440. We emphasized that the court's
order set "forth in plain English what it was doing." *Id.* at 441.
The district court made clear which statutory provision of the
PLRA it had intended to enjoin. *Id.*

In this case, by contrast, the district court did not merely cite the preliminary injunction standard. It took care to apply that standard and titled its order as a preliminary injunction. The court first tried to rewrite the order more than twenty months later, and only in response to a compelling motion to vacate by defendants. Moreover, the attempted retroactive transformation here would have affected defendants' substantial rights. Whether an order is preliminary or permanent has a dramatic effect on the calculus for deciding whether to pursue an interlocutory appeal.

Plaintiffs also cite *Rose v. Franchetti*, 979 F.2d 81 (7th Cir. 1992), to argue that the February 2022 Order was "a functional equivalent of a permanent injunction." In *Rose*, the district court had said "default" when it meant to say "order to show cause," and entered default before rather than after the needed hearing. 979 F.2d at 86. We found those errors harmless, though. The court had given the defendant fair notice and an opportunity to be heard, we said, and had reasonably found that the defendant was lying on material points. The court's procedural missteps did not affect the defendant's substantial rights because the hearing ultimately occurred, and the defendant had an opportunity to avoid default. *Id.* This case, by contrast, is not one of sequencing. Instead, our focus is the very existence of the injunction at relevant times, including the present.

Plaintiffs also rely on the district judge's statements in the August 2021 bench trial transcript that foreshadow a potential permanent injunction. This is exactly the type of argument we rejected in *Grede*, 746 F.3d at 255–58, *Mendez*, 725 F.3d at 663, and *Trans Union*, 741 F.3d at 816. Those decisions prudently sought to protect parties, lawyers, and non-parties from

No. 23-3371                                                                   19

uncertainty created by weighing the plain language of court
orders against the meaning of ambiguous statements in court
transcripts. The judge's oral comments here about future
permanent injunctive relief do not undermine the later order
that clearly announced it was a preliminary injunction.

D. *The District Court's Contempt Finding*

In the memorandum of November 16, 2023, the district
court found that defendants were in civil contempt of its prior
orders, but the court imposed no sanctions at that time. As
noted, the court acknowledged its own responsibility for the
procedural confusion in the case. Defendants challenge the
contempt finding on appeal. In the absence of any sanction,
however, the finding alone does not support appellate
jurisdiction. *Motorola, Inc. v. Computer Displays International,
Inc.*, 739 F.2d 1149, 1154 (7th Cir. 1984) ("An order finding a
party in civil contempt disposes of all the issues raised only if
it includes both a finding of contempt and the imposition of a
sanction."), accord, e.g., *United States for & on Behalf of Small
Bus. Admin. v. Torres*, 142 F.3d 962, 969–70 (7th Cir. 1998),
overruled in part on other grounds by *Hill v. Tangherlini*, 724
F.3d 965, 967 n.1 (7th Cir. 2013); *Petroleos Mexicanos v. Crawford
Enterprises, Inc.*, 826 F.2d 392, 399 (5th Cir. 1987). For lack of
appellate jurisdiction, we therefore dismiss the portion of this
appeal challenging the contempt finding.

IV. *Conclusion*

We appreciate the district court's and the parties' efforts in
this challenging case. We also recognize that our decision
today does not resolve anything about the merits of the
parties' claims and defenses. Nevertheless, for the reasons we
have explained, we must **VACATE** all existing injunctions

No. 23-3371

and **REMAND** this action for further proceedings consistent
with this opinion. We must also **DISMISS** the portion of the
appeal challenging the district court's interlocutory finding of
contempt, without having imposed sanctions.