## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS
## EAST ST. LOUIS DIVISION

JANIAH MONROE, MARILYN MELENDEZ,  )
LYDIA HELENA VISION,  )
SORA KUYKENDALL, and SASHA REED,  )
  )
  )
      Plaintiffs,  )
  )
   - vs-  )      No. 18-156-NJR
  )
LATOYA HUGHES, MELVIN HINTON,  )
and STEVEN BOWMAN,  )
  )
      Defendants.  )

## DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION PROHIBITING CLASS MEMBERS FROM LIVING AT MENARD <u>CORRECTIONAL CENTER</u>

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................ 1

LEGAL STANDARD.................................................................................................. 2

ARGUMENT ............................................................................................................. 3

I. Plaintiffs' Motion is Procedurally Improper and Should Therefore be Dismissed. 3

A. Rule 23(b)(2) Prohibits the Relief Sought in Plaintiffs' Motion................ 3

B. Plaintiffs' Motion and Allegations Contained Therein Are Not Related to the Allegations in Their Initial Complaint. ............................................... 5

C. Most of the Individuals Whom Plaintiffs Rely Lack Standing .................. 7

II. Plaintiffs' Motion Is Mostly Based on Previously Filed Declarations of *Previous* Conditions, Not *Current* Conditions.................................................................... 8

III. Plaintiffs Are Not Likely to Succeed on Their Eighth Amendment Claims......... 10

A. Plaintiffs' Conditions Allegations Do Not Rise to the Level of "Cruel and Unusual Punishment" for Purposes of the Eighth Amendment. ............... 10

B. Plaintiffs' Vague Allegations Are Insufficient........................................ 12

C. Plaintiffs Fail to Adduce Sufficient Evidence That Defendants Acted with Deliberate Indifference. ........................................................................ 12

i. No Deliberate Indifference As to Alleged Assaults or Harassment. ........................................................................................... 14

ii. No Deliberate Indifference As to Administration of Hormone Shots.......................................................................................... 14

iii. No Deliberate Indifference As to Private Showers...................... 15

iv. No Deliberate Indifference As to Alleged Cross-Gender Searches. ........................................................................................... 16

v. No Deliberate Indifference As to Gender-Affirming Commissary Items.......................................................................................... 17

vi. No Deliberate Indifference As to Transfers................................ 17

vii. No Deliberate Indifference As to Gender-Affirming Surgeries. .. 18

viii.   No Deliberate Indifference As to Grievance Forms, Law Library,
        or Calls. .......................................................................................... 19

ix.    No Deliberate Indifference As to Alleged Double-Cells. ............. 19

IV.    Plaintiffs' Request Is Barred by the PLRA and Applicable Case Law................. 19

V.     Plaintiffs' Requested Relief is Barred by the Eleventh Amendment. ................... 22

CONCLUSION.................................................................................................................. 24

40432\324235638.v1

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Dent v. Dennison*,
No. 17-cv-1356-MJR-SCW, 2018 U.S. Dist. LEXIS 153948 (S.D. Ill. June 15, 2018) .................................................................................................................................8

*Doe v. Univ. of S. Ind.*,
43 F.4th 784 (7th Cir. 2022) ......................................................................................12

*Dunmore v. Hodge*,
No. 3:14-184-JPG-PMF, 2014 U.S. Dist. LEXIS 150404 (S.D. Ill. July 22, 2014) .................................................................................................................21, 22

*Eason v. Pritzker*,
18-CV-2553, 2020 U.S. Dist. LEXIS 215779 (N.D. Ill. Nov. 18, 2020) ................24

*Endelman v. Jordan*,
415 U.S. 651 (1974)....................................................................................................23

*Estelle v. Gamble*,
429 U.S. 97 (1976)......................................................................................................12

*Farmer v. Brennan*,
511 U.S. 825 (1994)....................................................................................................11

*Hampton v. Faiyaz Ahmed*,
No. 20-cv-1300-DWD, 2024 U.S. Dist. LEXIS 176257 (S.D. Ill. Sep. 28, 2024) ........................................................................................................................12

*Hearne v. Bd. of Educ. of City of Chicago*,
185 F.3d 770 (7th Cir. 1999) .....................................................................................24

*Holloway v. Delaware County Sheriff*,
700 F.3d 1063 (7th Cir. 2012) ...................................................................................12

*Horne v. Flores*,
557 U.S. 433 (2009)....................................................................................................22

*Hunter v. Mueske*,
73 F.4th 561 (7th Cir. 2023) ......................................................................................13

*Iglesias v. True*,
No. 19-cv-00415-JPG, 2020 U.S. Dist. LEXIS 247720 (S.D. Ill. Jan. 7, 2020) ......................6

40432\324235638.v1

*Jackson v. Pollion*,
  733 F.3d 786 (7th Cir. 2013) .............................................................11

*Knight v. Wiseman*,
  590 F.3d 458 (7th Cir. 2009) .......................................................10, 12

*Lavite v. Hertz*,
  No. 13-53-GPM, 2013 U.S. Dist. LEXIS 79317 (S.D. Ill. June 6, 2013)..............12

*Lewis v. Casey*,
  518 U.S. 343 (1996)...................................................................8, 22

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992) ........................................................................8

*Mann v. Miller*,
  No. 3:22-CV-839-RLM-MGG, 2022 U.S. Dist. LEXIS 212355 (N.D. Ill. Nov.
  22, 2022) ......................................................................................12

*Mazurek v. Armstrong*,
  520 U.S. 968 (1997)..........................................................................2

*McCree v. Sherrod*,
  408 F. App'x 990 (7th Cir. 2011) .......................................................11

*Monroe v. Bowman, et al.*,
  122 F.4th 688 (7th Cir. 2024) .........................................................2, 9

*Padilla v. Wills*,
  No. 24-cv-02478-SPM, 2025 U.S. Dist. LEXIS 15207 (S.D. Ill. Jan. 28, 2025) .....8

*Peate v. McCann*,
  294 F.3d 879 (7th Cir. 2002) ...........................................................13

*Pennhurst State Sch. & Hosp. v. Halderman*,
  465 U.S. 89 (1984).........................................................................23

*Portis v. City of Chicago*,
  347 F. Supp. 2d 573 (N.D. Ill. Nov. 24, 2004) .......................................8

*Rasho v. Jeffreys*,
  22 F.4th 703 (7th Cir. 2022) ............................................13, 14, 19, 21

*Renolds v. Ahmed*,
  No. 21-cv-00345-SPM, 2021 U.S. Dist. LEXIS 163412 (S.D. Ill. Aug. 30,
  2021) ...........................................................................................8

40432\324235638.v1

*Robinson v. Wallace,*
   No. 2:19-cv-00560-JPH-MJD, 2020 U.S. Dist. LEXIS 132354 (S.D. Ind. July 27, 2020) ..............................................................................................................11

*Rodgers v. Rankin,*
   99 F.4th 415 (7th Cir. 2024) ...........................................................................................13

*Roe v. Elyea,*
   631 F.3d 843 (7th Cir. 2011) ..........................................................................................12

*Roman v. Hileman,*
   No. 18-CV-1288-SMY-GCS, 2019 U.S. Dist. LEXIS 32273 (S.D. Ill. Feb. 28, 2019) ...................................................................................................................3, 19

*Rosario v. Brawn,*
   670 F.3d 816 (7th Cir. 2012) ..........................................................................................12

*Simon v. E. Ky. Welfare Rights Org.,*
   426 U.S. 26 (1976).............................................................................................................7

*Simpson v. Joseph,*
   2007 U.S. Dist. LEXIS 8226 (E.D. Wis. Feb. 5, 2007), *aff'd by Simpson v. Joseph*, 248 F. App'x 746 (7th Cir. 2007) ......................................................................15

*Spokeo, Inc. v. Robins,*
   578 U.S. 330 (2016)...........................................................................................................7

*United States v. Furando,*
   40 F.4th 567 (7th Cir. 2022) .............................................................................................7

*Wal-Mart Stores, Inc. v. Dukes,*
   564 U.S. 338 (2011).......................................................................................................3, 4

*Warth v. Seldin,*
   422 U.S. 490 (1975)...........................................................................................................7

*Watkins v. Blinzinger,*
   789 F.2d 474 (7th Cir. 1986) ..........................................................................................23

*Wolff v. McDonnell,*
   418 U.S. 539 (1974).........................................................................................................20

*Ex Parte Young,*
   209 U.S. 123 (1908)..........................................................................................22, 23, 24

40432\324235638.v1

**Statutes**

18 U.S.C. § 3626(a)(1)(A) ..................................................................................................3

**Other Authorities**

Rule 23(b)(2)......................................................................................................1, 3, 4, 5

Rule 23(b)(3)..............................................................................................................4

NOW COME the Defendants, LATOYA HUGHES, MELVIN HINTON, and STEVEN BOWMAN (hereinafter "Defendants"), sued in their official capacities as IDOC administrators, and hereby provide their Response to Plaintiffs' Motion for Preliminary Injunction Prohibiting Class Members from Living at Menard Correctional Center (Dkt. No. 873) (hereinafter "Motion"), and state as follows:

## INTRODUCTION

Plaintiffs' Motion is outside the scope of this class action, certified under Federal Rule of Civil Procedure (hereinafter "Rule") 23(b)(2), which requires that the relief sought be cohesive and applicable to each and every class member at once. Rule 23(b)(2) does not allow piecemeal requests for relief, as Plaintiffs attempt to do here by seeking relief specific only to class members housed at Menard Correctional Center (hereinafter "Menard"). Because Plaintiffs' Motion is procedurally improper, it should be dismissed in its entirety.

Additionally, Plaintiffs' Motion is procedurally improper because the majority of the allegations do not pertain to the class-wide issue of medical treatment as plead in their governing complaint; instead, Plaintiffs assert new allegations not related to their complaint involving individual concerns, such as law library access, phone calls with counsel, and intermittent access to gender-affirming commissary items, to name a few.

Further, their Motion is procedurally improper because the declarations are mostly from individuals who have been already discharged from Menard or transferred to another facility, resulting in a lack of standing under Article III. In fact, as discussed below, Plaintiffs cite the declarations of six individuals who have been discharged from Menard and three who have been transferred to a different facility. *Id.*

1

Moreover, in relying on declarations alleging *past* conditions, some dating back to November and December of 2023, Plaintiffs' Motion fails. Importantly, the Seventh Circuit in its recent order vacating all existing injunctions in this matter and remanding for further proceedings, specifically instructed that any injunction, whether preliminary or permanent, must "address the current situation" as opposed to what allegedly occurred in the past, such as those allegations presented by Plaintiffs in their Motion. *Monroe v. Bowman, et al.*, 122 F.4th 688, at *22 (7th Cir. December 5, 2024).

With regard to the few declarations that allege current, individual complaints from individuals who have Article III standing, Plaintiffs fail to meet their burden of demonstrating they are likely to succeed on their Eighth Amendment claim because they fail to adduce sufficient evidence of "deliberate indifference," and many of Plaintiffs' new allegations regarding conditions of confinement do not rise to the level of "cruel and unusual punishment" for purposes of the Eighth Amendment. As such, those allegations are not actionable.

Even further, the Prison Litigation Reform Act (hereinafter "PLRA") prohibits the relief Plaintiffs seek given it is not narrowly drawn, extends further than necessary to correct any alleged harm, and is not the least intrusive means necessary to correct any alleged harm. Finally, the Eleventh Amendment bars the relief Plaintiffs seek.

For these reasons, as discussed further below, this Court should deny Plaintiffs' Motion.

## LEGAL STANDARD

A preliminary injunction is "an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). In order to obtain a preliminary injunction, the plaintiff has the burden of establishing that: (1) she is likely to succeed on the merits of her claim; (2) she has no adequate remedy at law; and (3) she is likely to suffer irreparable harm without the

40432\324235638.v1

injunction. *Roman v. Hileman*, No. 18-CV-1288-SMY-GCS, 2019 U.S. Dist. LEXIS 32273, *4 (S.D. Ill. Feb. 28, 2019). In the context of prisoner litigation, the scope of the Court's authority to issue an injunction is circumscribed even further by the PLRA. *Id.* (citing *Westefer v. Neal*, 682 F.3d 679, 683 (7th Cir. 2012)). Under the PLRA, preliminary injunctive relief "must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." *Roman*, 2019 U.S. Dist. LEXIS at 4 (citing 18 U.S.C. § 3626(a)(2); *Westefer*, 682 F.3d at 683 (noting the PLRA "enforces a point repeatedly made by the Supreme Court . . . prisons officials have broad administrative and discretionary authority over the institutions they manage") (internal quotation marks and citation omitted)); *see also* 18 U.S.C. § 3626(a)(1)(A). Further, a court must "give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief." *Id.*

## ARGUMENT

I. <u>Plaintiffs' Motion is Procedurally Improper and Should Therefore be Dismissed.</u>

    A.   *Rule 23(b)(2) Prohibits the Relief Sought in Plaintiffs' Motion.*

Rule 23(b)(2), under which this class was certified, requires any relief sought be applicable to all members of the class. *See* Class Order, Dkt. No. 213, 10. The "key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360 (2011). In other words, under Rule 23(b)(2), "the relief sought must perforce affect the entire class at once." *Id.* at 361-62. Therefore, "Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class . . . . [and] [i]t does not authorize class certification

when each individual class member would be entitled to a *different* injunction or declaratory judgment against the defendant." *Id.* at 360.

Notably, this distinction and requirement were crucial to Plaintiffs obtaining class certification in the first place because Plaintiffs only sought and obtained certification under Rule 23(b)(2). *See* Class Order, Dkt. No. 213. They did not have to make the elevated showings required under Rule 23(b)(3) relating to predominance and superiority. *Id.*; *see also Wal-Mart Stores, Inc.,* 564 U.S. at 361-62 ("When a class seeks an indivisible injunction benefiting all its members at once, there is no reason to undertake a case-specific inquiry into whether class issues predominate or whether class action is a superior method of adjudicating the dispute.").

As the Seventh Circuit has recognized, "Rule 23(b)(2) operates under the presumption that the interests of the class members are cohesive and homogeneous such that the case will not depend on adjudication of facts particular to any subset of the class nor require a remedy that differentiates materially among class members." *Lemon v. Int'l Union of Operating Eng'rs*, Local No. 139, 216 F.3d 577, 580 (7th Cir. 2000). Consistent with this rule, the Court certified the class here based in part on a finding that the Plaintiffs established IDOC department-wide policies and practices related to medical treatment for Plaintiffs that applied to the class. *See* Class Order, Dkt. No. 213, 6. The Court also acknowledged it was certifying a class under Rule 23(b)(2) because a single injunction or declaration would provide relief to all members of the class, rather than providing different relief to individual class members. *Id.* at 9.

Yet, here, Plaintiffs now proffer new allegations, not plead in the complaint, that the conditions are so poor at Menard—many conditions unrelated to the care of transgender prisoners—that these few class members should be transferred. There are no new allegations about class members residing at any other IDOC facility. Plaintiffs' new allegations do not form the basis

4

for any injunctive relief applicable to the entire class. As such, Plaintiffs' Motion violates Rule
23(b)(2) and should be denied.

B.    *Plaintiffs' Motion and Allegations Contained Therein Are Not Related to the
      Allegations in Their Initial Complaint.*

In their Complaint, filed on January 31, 2018, Plaintiffs outlined allegations from various

individuals in custody who either sought a gender dysphoria diagnosis or who had received such

a diagnosis, but allege that IDOC had failed to provide proper medical treatment for said diagnosis.

*See* Complaint, Dkt. No. 1. The allegations from each individual plaintiff all fall into these general

categories: (1) necessary medical treatment for gender dysphoria, including but not limited to

hormone therapy, gender-affirming surgery, and access to medical professionals with specialized

knowledge of treating gender dysphoria, (2) individualized evaluation and consideration of

medical and placement decisions; and (3) social transition support. *Id.* Specifically, their

Complaint outlines that class members sought the following relief:

> d. Order Defendants and their agents, employees, officials, and all persons acting
> in concert with them under color of state law, to develop and implement, as soon as
> practical, a plan to eliminate the substantial risk of serious harm that Plaintiffs and
> members of the Plaintiff Class suffer due to Defendants' inadequate evaluation and
> treatment of gender dysphoria. At minimum, this plan should include:  (i) Prisoner
> access to clinicians to treat gender dysphoria who meets [sic] the competency
> requirements stated in the Standards of Care; (ii) Prompt evaluation for gender
> dysphoria upon request or clinical indication of the condition; (iii) Timely
> fulfillment of medical prescribed treatment for gender dysphoria, including, but not
> limited to, hormone therapy and gender affirming surgery; (iv) Accommodation of
> medically necessary social transition, including individualized placement
> determinations, avoidance of cross-gender strip searches, and access to gender
> affirming clothing and grooming items; and (v) Ceasing the practice whereby
> medical decisions regarding gender dysphoria are second-guessed and treatment is
> governed by the GID Committee.

*Id.* at 37.

Nowhere in their Complaint do Plaintiffs complain of individual concerns related to

assaults, transfers, or lack of access to the law library, grievance forms, legal phone calls, or private

showers. Similarly, the Court, in its previous preliminary injunction orders, made no mention of lack of access to the law library, grievance forms, or legal phone calls.[1] Plaintiffs cannot now, five years after filing their Complaint, seek injunctive relief for a portion of the class based on new, individual claims.

Notably, "preliminary injunctive relief sought in a case must relate to the claims pending in the underlying lawsuit." *Iglesias v. True*, No. 19-cv-00415-JPG, 2020 U.S. Dist. LEXIS 247720, at *3 (S.D. Ill. Jan. 7, 2020) (citing *Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994) (holding that "a party moving for a preliminary injunction must necessarily establish a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint"). "A motion for preliminary injunction is not a proper avenue to pursue additional claims or name additional defendants." *Iglesias*, 2020 U.S. Dist. LEXIS at *3.

Here, as noted above, Plaintiffs' complaint brings one Eighth Amendment claim, alleging that "Defendants subject all Plaintiffs and the Plaintiff Class to a substantial risk of serious harm and injury from inadequate and delayed evaluation and treatment of gender dysphoria." *See* Complaint, Dkt. No. 1, ¶ 120. However, in their Motion, Plaintiffs seek relief that is wholly unrelated, including relief related to alleged assaults, private showers, transfers, and interference with grievance forms, the law library, and phone calls with counsel. This relief does not relate to "inadequate and delayed evaluation and treatment of gender dysphoria." Plaintiffs' attempt to piggy-back individual claims onto those that the parties have been actively litigating for the past five years is not only prejudicial to Defendants, but is procedurally improper, and their Motion

---

[1] The Court did, however, in its August 9, 2021 Order, add that private showers be provided to transgender individuals in custody. *See* Dkt. No. 212; Dkt. No. 331, 10-14; Dkt. No. 332. These orders though were vacated by the Seventh Circuit; however, the mention of these orders and the Court's direction in them is necessary to show that neither in Plaintiffs' Complaint nor in the Court's Orders did the topics of access to law library, grievances, or phone calls appear.

fails as a matter of law.

### C.  Most of the Individuals Whom Plaintiffs Rely Lack Standing Pursuant to Article III.

Many of the individuals who provided declarations in support of Plaintiffs' motion are no longer housed at Menard. Specifically, M.L., J.P., K.M., C.B.,[2] T.F., P.M., R.C., S.M., and Ms. M. have either been discharged from IDOC custody or have been transferred to other facilities. *See* Moskus Declaration, attached as Ex. A, ¶ 4-6, 8, 12, 14, 16, 18. Accordingly, these individuals lack standing under Article III and the Court lacks jurisdiction. The declarations brought forth by these individuals should therefore be disregarded in their entirety.

The Supreme Court has made clear that a suit's status as a class action "adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 n.6 (2016), citing *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26 (1976) and *Warth v. Seldin*, 422 U.S. 490, 502 (1975). It also is well established that "[s]tanding must be demonstrated for each claim the claimants seek to press and for each form of relief that is sought." *United States v. Furando*, 40 F.4th 567, 575 (7th Cir. 2022) (emphasis added). As such, a class representative in a certified class must establish Article III standing for each form of relief sought. This is setting aside the Article III limitation that a federal court "act only to redress injury that can fairly be traced to the challenged action of the defendant, and not injury that results from the independent action of some third party not before the court." *Simon*, 426 U.S. at 41-42.

---

[2] C.B. was paroled from Menard on July 23, 2024, and has since been returned to the Northern Reception Center as a parole violator and is awaiting transfer to a parent facility. *See* Moskus Declaration, attached as Ex. A, ¶ 8.

"[S]tanding is not dispensed in gross …. nor does a plaintiff who has been subject to injurious conduct of one kind possess by virtue of that injury the necessary stake in litigating conduct of another kind, although similar, to which he has not been subject." *Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996); *see also Portis v. City of Chicago*, 347 F. Supp. 2d 573, 579 (N.D. Ill. Nov. 24, 2004) (named plaintiffs cannot "revive a dead claim for injunctive relief by 'piggybacking' on the claims of the class they represent."). As individuals M.L., J.P., K.M., C.B., T.F., P.M., R.C., S.M., and Ms. M. are not currently incarcerated at Menard, they cannot show they face an injury where it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992).

Therefore, the Court should disregard in their entirety these individuals' declarations.

## II. Plaintiffs' Motion Is Mostly Based on Previously Filed Declarations of *Previous* Conditions, Not Current Conditions.

Plaintiffs' Motion is mostly based on previously filed declarations that address alleged, *past* conditions at Menard. Motions for preliminary injunctions must focus on *current* conditions, not *past* conditions. *Dent v. Dennison,* No. 17-cv-1356-MJR-SCW, 2018 U.S. Dist. LEXIS 153948, at *23 (S.D. Ill. June 15, 2018) ("Plaintiff has evidence of his previous conditions which he can use in furtherance of his claims . . . . [b]ut as to Plaintiff's current cell conditions, the undersigned finds that Plaintiff is not entitled to a preliminary injunction ."); *Padilla v. Wills*, No. 24-cv-02478-SPM, 2025 U.S. Dist. LEXIS 15207, at *9 (S.D. Ill. Jan. 28, 2025) (denying preliminary injunction because "[i]n the original motion, Plaintiff states that he is no longer in segregation and does not discuss his current conditions of confinement."); *Renolds v. Ahmed*, No. 21-cv-00345-SPM, 2021 U.S. Dist. LEXIS 163412, at *13 (S.D. Ill. Aug. 30, 2021) (finding a "'possibility' of harm based on past conduct . . . is insufficient to demonstrate that 'irreparable injury is *likely*' without Court interference."). As such, Plaintiffs' Motion should be denied.

Notably, the Seventh Circuit in its remand order, specifically instructed that "[i]f plaintiffs believe, as they argue here, that defendants have been *continuing* to violate their Eighth Amendment rights, they may ask the district court for a new injunction, preliminary or permanent" and "new injunctive relief will need to address the *current* situation." *Monroe*, 122 F.4th at *22 (emphasis added). Therefore, Plaintiffs much "address the current situation" as opposed to what allegedly occurred in the past. *Id.* Plaintiffs acknowledge this requirement. *See* Plaintiffs' Motion for Extension, Dkt. No. 870 ("time has passed, and Plaintiffs' counsel have been diligently working . . . . to ensure that the motion reflects current information about the conditions at that facility . . . . as the Court observed in its order, the case has 'changed substantially' since the original motion was filed (*id.* at 2-3), necessitating revision of the motion."). They fail to do so.

Specifically, most of Plaintiffs' cited declarations in their initial Motion allege *past* conditions, some dating back to December of 2023,[3] and, as noted above, are mostly from individuals who are not even still housed at Menard. *Id*. These declarations are not even from this year. *Id.* Of note, Plaintiffs attach a second declaration from T.S., dated February 7, 2025; however, it only alleges one *past* incident from September 6, 2024. *See* Second T.S. Declaration, Dkt. No. 874-2, 1-3. They also attach a complaint filed on February 14, 2025, by A.M.; however, it only alleges *past* incidents from December 12, 2023; December 13, 2023; December 14, 2023; January

---

[3] Out of those declaration from individuals who are actually housed at Menard, Plaintiffs cite to the following: (1) A.M., dated December 21, 2023 (Dkt. No. 705-3); (2) Ms. D., dated December 11, 2023 (Dkt. Nos. 705-7; 740, Ex 7); (3) T.S., dated December 21, 2023 and January 23, 2024 (Dkt Nos. 705-11; 740, Ex. 11); (4) C.P., dated January 18, 2024 (Dkt. Nos. 716-2; 717, Ex. 13; 740, Ex. 13); (5) Ms. F., dated January 18, 2024, January 19, 2024 and February 8, 2024 (Dkt. Nos. 739, Ex. 14; 740, Ex. 14; 763, Ex. 14); (6) D.L., dated January 25, 2024 and February 26, 2024 (Dkt. Nos. 739, Ex. 15; 740, Ex. 15; 763, Ex. 15); (7) D.H., dated April 24, 2024 (Dkt. No. 779; Ex. 17; 780, Ex. 17); (8) D.H. (#2), dated November 19, 2024 (Dkt. No. 843, Ex. 21); and (9) A.B., dated July 1, 2024 and July 15, 2024 (Dkt. Ns. 800, Ex. 20; 823, Ex. 20).

1, 2024; and February 22, 2024. *See* A.M. Complaint, Dkt. No. 874-1, 1-15. Such allegations are outdated and do not account for the significant developments and changes the Department has made such as new administrative directives and procedures since the prior declarations, as further discussed below.

After Plaintiffs filed their initial Motion, they unsuccessfully attempted to address and remedy this fatal deficiency by untimely filing three additional declarations. *See* D.F. Declaration, Dkt. No. 881-1; B.M. Declaration, Dkt. No. 881-2; A.R. Declaration, Dkt. No. 881-3. These three newly filed declarations also though mostly fail to allege the current conditions. *Id.*

D.F. alleges a past sexual assault, a request for protective custody made two years ago, and a past incident in December of 2024. *See* D.F. Declaration, Dkt. No. 881-1, 4, 7. B.M. alleges past incidents from June and August of 2024. *See* B.M. Declaration, Dkt. No. 881-2, 7-9. A.M. alleges past incidents in 2024. *See* A.M. Declaration, Dkt. No. 881-3, 5-8. The other, vague allegations about current, individual issues in their declarations including alleged abusive behavior of guards and prisoners, transfers, cross-gender searches and/or lack of access to a private shower, gender-affirming commissary items, and hormone therapy, do not amount to an Eighth Amendment violation for the reasons described below.

As a result, Plaintiffs' Motion should be dismissed.

III.    Plaintiffs Are Not Likely to Succeed on Their Eighth Amendment Claims.

    A.    *Plaintiffs' Conditions Allegations Do Not Rise to the Level of "Cruel and Unusual Punishment" for Purposes of the Eighth Amendment.*

On the outset, the Eighth Amendment prohibits "cruel and unusual punishment" and includes only freedom from excessive force, protection from other inmates, and "adequate food, clothing, shelter, and medical care." *Knight v. Wiseman*, 590 F.3d 458, 463 (7th Cir. 2009) (citing *Johnson v. Snyder*, 444 F.3d 579, 583 (7th Cir. 2006). Specifically, Plaintiffs must show that it is

likely that the conditions denied them "basic human needs" or "the minimal civilized measure of life's necessities." *McCree v. Sherrod*, 408 F. App'x 990, 992 (7th Cir. 2011) (citing *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). "[P]rison life [is] often uncomfortable by necessity and that only deprivations denying prisoners 'the minimal civilized measure of life's necessities,' constitute violations of the Eighth Amendment." *Id*. "Only 'extreme deprivations . . . make out a conditions-of-confinement claim,' because routine discomfort is 'part of the penalty that [prisoners] pay for their offenses against society.'" *McCree*, 408 F. App'x 990 at 992 (citing *Hudson v. McMillian*, 503 U.S. 1, 9 (1992); *Babcock v. White*, 102 F.3d 267, 273 (7th Cir. 1996); *Rhodes*, 452 U.S. at 347). Plaintiffs fail to meet this burden in their Motion.

Instead, Plaintiffs allege conditions that are not related to "basic human needs" or "the minimal civilized measure of life's necessities" including sporadic or no access to private showers, cross-gender strip searches, sporadic or no access to gender-affirming commissary items, and interference with grievance forms, the law library, and phone calls with counsel. *See, e.g., Robinson v. Wallace,* No. 2:19-cv-00560-JPH-MJD, 2020 U.S. Dist. LEXIS 132354, at *2 (S.D. Ind. July 27, 2020) ("A temporary denial of law library access does not rise to the level of inhumane treatment that is proscribed by the Eighth Amendment.") (citing *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (Eighth Amendment rights include freedom from excessive force, protection from other inmates, "adequate food, clothing, shelter, and medical care.")).

Further, as to the remaining allegations, Plaintiffs have couched individual medical malpractice claims as constitutional violations, which are not equivalent. Neither medical malpractice nor common law negligence are sufficient to meet the high hurdle of deliberate indifference. *Jackson v. Pollion*, 733 F.3d 786, 790 (7th Cir. 2013) (distinguishing between a serious medical condition and the risk of harm for failure to treat condition); *see also Farmer*, 511

11

U.S. at 837 (finding that there must be some form of punishment at issue.); *Holloway v. Delaware County Sheriff*, 700 F.3d 1063, 1073 (7th Cir. 2012); *Rosario v. Brawn*, 670 F.3d 816, 821 (7th Cir. 2012); *Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011); *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (finding "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.")

B.      *Plaintiffs' Vague Allegations Are Insufficient.*

Most of the allegations in the declarations that Plaintiffs rely on in their Motion are vague and generalized without sufficient details as to dates or parties involved, making it impossible for Defendants to properly investigate and respond to the Motion. This is insufficient. *Doe v. Univ. of S. Ind.*, 43 F.4th 784, 791 (7th Cir. 2022) (when addressing a preliminary injunction, the court need not accept the allegations as true or give the plaintiff the benefit of all reasonable inferences). "Vague allegations regarding the sporadic loss of phone privileges, showers, recreation time, and food trays—without more—are not the type of non-speculative irreparable harm the extraordinary remedy of mandatory preliminary injunctions are meant to address." *Mann v. Miller*, No. 3:22-CV-839-RLM-MGG, 2022 U.S. Dist. LEXIS 212355, at *8 (N.D. Ind. Nov. 22, 2022) (citing *Winter v. NRDC, Inc.*, 555 U.S. 7, 22 (2008)). This Court should disregard the vague allegations.

C.      *Plaintiffs Fail to Adduce Sufficient Evidence That Defendants Acted with Deliberate Indifference.*

Further, an Eighth Amendment cruel and unusual punishment claim requires Plaintiffs to establish that Defendants acted with deliberate indifference. *Hampton v. Faiyaz Ahmed*, No. 20-cv-1300-DWD, 2024 U.S. Dist. LEXIS 176257, at *8 (S.D. Ill. Sep. 28, 2024); *Lavite v. Hertz*, No. 13-53-GPM, 2013 U.S. Dist. LEXIS 79317, at *6 (S.D. Ill. June 6, 2013). Deliberate indifference requires a showing of more than mere or gross negligence. *Knight*, 590 F.3d at 463 (citing *Matos v. O'Sullivan*, 335 F.3d 553, 557 (7th Cir. 2003); *Proffitt v. Ridgway*, 279 F.3d 503,

506 (7th Cir. 2002) (explaining that deliberate indifference to a prisoner's safety implies avoidance of known risk, not merely foreseeable risk)). It requires Plaintiffs to show that Defendants "actually knew of and disregarded a substantial risk of harm." *Rodgers v. Rankin*, 99 F.4th 415, 419 (7th Cir. 2024). "So long as [Defendants] took measures reasonably calculated to address the risk [the Plaintiffs] faced, they cannot be held liable under § 1983, even though they ultimately failed to prevent [ ] injury." *Hunter v. Mueske*, 73 F.4th 561, 566 (7th Cir. 2023) (citing *Dale v. Poston*, 548 F.3d 563, 569 (7th Cir. 2008)).

Deliberate indifference "is a high bar 'because it requires a showing [of] something approaching a total unconcern for the prisoner's welfare in the face of serious risks.'" *Rasho v. Jeffreys,* 22 F.4th 703, 710 (7th Cir. 2022) (citing *Rosario v. Brawn*, 670 F.3d 816, 821 (7th Cir. 2012)). In fact, "[e]vidence that the defendant responded reasonably to the risk, even if he was ultimately unsuccessful in preventing the harm, negates an assertion of deliberate indifference." *Rasho*, 22 F.4th at 710 (citing *Farmer*, 511 U.S. at 844; *Peate v. McCann*, 294 F.3d 879, 882 (7th Cir. 2002); *Sinn v. Lemmon*, 911 F.3d 412, 423-24 (7th Cir. 2018)). Similarly, "the mere failure of the prison official to choose the best course of action does not amount to a constitutional violation." *Peate*, 294 F.3d at 882. It does not matter whether those efforts "fell short" because "that does not equate to a constitutional violation." *Rasho*, 22 F.4th at 710. "It is always possible to do more or move faster, but the existence of policies that may have been more effective does not mean an official recklessly disregarded the risk of harm." *Id*.

Like IDOC's efforts in *Rasho*, numerous reasonable steps have been taken so there can be deliberate indifference. IDOC follows an Administrative Directive[4] titled "Evaluations of Transgender Offenders." *See* Directive 04.03.104, attached as Ex. B. The Department seeks to

---

[4] IDOC personnel have been actively working issuing an updated version of this AD to provide even more direction and support to DOC staff.

foster an environment where transgender individuals in custody are living in a dignified manner with full respect of their right to be free from discrimination, harassment, victimization, bullying or violence whether emotional, physical or verbal. *Id*. And, it seeks to meet the medical, mental health, transition and security needs of all segments of the population. *Id*.

Further, two committees were created to better foster such an environment: the Transgender Administrative Committee (TAC) and the Transgender Health and Wellness Committee (THAWC). *Id*. TAC reviews placement, transfer, safety, commissary, and security concerns of transgender individuals in custody. *Id*. THAWC provides medical oversight for medical and mental health care. *Id*. All staff participate in transgender training and annually thereafter. *Id*.

### i.     No Deliberate Indifference As to Alleged Assaults or Harassment.

It is the policy of Menard and all of IDOC to provide a safe and secure environment for all individuals in custody and to maintain a program for the prevention of sexual assaults. *See* Menard Orientation Manuel, attached as Ex. C; Warden Wills Declaration, attached as Ex. D, ¶ 5. IDOC has zero tolerance for sexual abuse or sexual harassment of any person or sexual relationships between staff and individual in custody. *Id*. That means IDOC is "committed to investigating EVERY allegation, getting services to EVERY victim, and punishing EVERY perpetrator." *Id*. Further, the Warden of Menard, Anthony Wills, has confirmed this policy and reports of feeling unsafe or sexual harassment are of concern to him. *See* Warden Wills Declaration, attached as Ex. attached as Ex. D, ¶ 5. If Warden Wills' office receives allegations concerning staff or staff conduct, those complaints are forwarded to Internal Affairs for investigation. *Id.*

### ii.    No Deliberate Indifference As to Administration of Hormone Shots.

Per IDOC policy, if an offender arrives to the facility having already started on cross-gender hormones, the medical provider continues the prescription of the hormone treatment unless

there are any contraindications as determined by the medical provider. *See* Directive 04.03.104, attached as Ex. B. Also, the facility medical provider provides transgender individuals with appropriate gender-related mental health and cross-gender hormone services, as necessary, throughout their incarceration. *Id*. When issues arise at Menard concerning access to hormone treatment, the Health Care Unit is contacted to review the medical chart and follow up. *See* Warden Wills Declaration, attached as Ex. D, ¶ 10. Notably, C.P. admitted that, while at Menard (she is no longer housed there as noted above), she had "been on hormones for approximately 4-5 years now and I have been told that my hormones are in a good range for surgery." *See* C.P. Declaration, Dkt. Nos. 716-2; 717, Ex. 13; 740, Ex. 13. As to A.B., the doctor allegedly told her he did not want to refer her for hormone treatment because of stomach issues. *See* A.B. Declaration, Dkt. No. 705-3.

Here, Plaintiffs allege that A.M. has once been administered hormone shots in the presence of male officers. *Id.* Security staff though may be present during the administration of medications, especially injections, to assist medical staff and address security concerns. *See Simpson v. Joseph*, 2007 U.S. Dist. LEXIS 8226, at *37-41 (E.D. Wis. Feb. 5, 2007), *aff'd by Simpson v. Joseph*, 248 F. App'x 746 (7th Cir. 2007) (finding no Eighth Amendment violation in policy requiring security staff to remain in close proximity to individuals during medical examinations). Further, Plaintiffs allege one incident in which A.M. was allegedly injected a hormone shot on September 7, 2023, in the lower back. *Id.* One alleged mistake in administration of the shot does not amount to an Eighth Amendment violation. *Id.* Notably, T.F., while at Menard (she is no longer housed there as noted above), indicates that the nurse denied her hormone shots "going forward because she didn't have a female officer available to be present while she does the shot." *See* T.F. Declaration, Dkt. No.. 705-10.

iii.     No Deliberate Indifference As to Private Showers.

As to showers, transgender individuals are provided access to private showers. *See*

Directive 04.03.104, attached as Ex. B. Photographs of the showers at Menard show that private showers are available, which Warden Wills confirms. *See* Shower Photographs, attached as Ex. E; Warden Wills Declaration, attached as Ex. D, ¶ 6. Further, in instances where there are allegations of violations of shower policies at Menard, Warden Wills follows up with the Major of the relevant cell house and has the policies and procedures reiterated for the staff. *Id*. Per IDOC policy, ID Cards note gender difference for purposes of separate showers. *See* Directive 04.03.104, attached as Ex. B. And, transgender individuals are allowed the same frequency of showers, and showers are separate and private from other offenders." *Id.*

        iv.     No Deliberate Indifference As to Alleged Cross-Gender Searches.

As to unclothed visual searches, IDOC policy requires them to occur in a manner designed to ensure as much privacy to the offender as practical and in a respectful and professional manner and in the least intrusive manner possible consistent with security needs. *Id.* To that end, transgender individuals are searched by the gender of the staff designated on their offender identification card. *Id.* For those individuals who have not yet been identified as transgender, the TAC is notified, and the TAC assists with ensuring proper searches. *Id.*

Specific to Menard, it maintains policies that allow transgender individuals to be searched by a female officer when their identification card indicates transgender status (or the scanner is used). *See* Warden Wills Declaration, attached as Ex. D, ¶ 7. In instances where there are allegations of violations of search policies at Menard, Warden Wills follows up with the Major of the relevant cell house and has the policies and procedures reiterated for the staff. *Id*. Per IDOC policy, ID Cards note gender difference for purposes of searches. *See* Directive 04.03.104, attached as Ex. B.

Also, Menard prepares for large shakedowns by having female TACT members available. *See* Warden Wills Declaration, attached as Ex. D, ¶ 8. When instances of alleged violations occur,

Warden Wills and the administration respond accordingly, reiterating policies and procedures where necessary and looking into allegations of alleged violations. *Id.* This is done through inquiries with Internal Affairs, Warden's memorandums, cycle training, and the Department's planned trainings. *Id.*

v.    No Deliberate Indifference As to Gender-Affirming Commissary Items.

As for commissary items, a number of gender-affirming commissary items are offered including hair ties, eyebrow pencils, eye shadow, lip gloss, lip stick, blush, eyeliner pencil, tinted hydrator, mascara, magic shave, hair net, sport bra, underwear, and foundation. *See* Menard Inmate Commissary Fund, attached as Ex. F. Further, when issues concerning commissary or clothing at Menard are raised, Warden Wills contacts his business administrator to follow up on the reports. *See* Warden Wills Declaration, attached as Ex. D, ¶ 9. In the event there is a shortage or lack of items, the business administrator goes through the relevant process to procure those items. *Id.* The individual would be notified in the event there is a shortage and placed on a list that allows the facility to provide that item once it is received. *Id.* Further, per IDOC policy, transgender individuals are allowed access to commissary items consistent with the offender's gender identity and are allowed to have undergarments of their identified gender, which the Department will provide throughout incarceration. *See* Directive 04.03.104, attached as Ex. B.

vi.    No Deliberate Indifference As to Transfers.

As for transfers, per IDOC policy, transgender individuals are not assigned to gender-specific facilities based solely on their external genital anatomy. *Id.* The facility reviews placement and programming assignments twice annually to review any threats to safety experienced or posed. *Id.* TAC makes "individualized determinations about how to ensure the safety of each offender including considering transfer from one gender-specific facility to an opposite gender facility and specifying the gender of staff which will perform searches of the offender" and "consider[s], on

17

a case-by-case basis, whether a specific placement would ensure the offender's health and safety, and whether the placement would present management or security concerns." *Id.* TAC "make[s] these determinations without the necessity of a referral . . . . [h]owever, an offender may be referred for these reviews by written request of the offender, the offender's treating mental or medical providers, or the CAO." *Id.* A number of factors are considered. *Id.* Further, the decision is documented and the individual is be notified by letter from the Chairperson of the TAC or designee. *Id.*

Importantly, the only two individuals in which Plaintiffs rely on declarations and whom are still housed at Menard and have made a request to TAC for transfer to an alternative gender facility are A.M. and C.P. *See* TAC TG Transfer Requests, attached as Ex. G. A.M.'s transfer request was denied due to aggression, disciplinary issues and psychiatric instability. *Id.* TAC letters were sent on February 15, 2022, and June 1, 2023. *Id.* C.P.'s transfer request was denied due to security issues, her recent serious assault of a Mental Health personnel, psychiatric instability, new to hormones, and the need for BMU level of programming. *Id*. TAC letters were sent on November 1, 2021, and June 1, 2023. *Id*

vii.    No Deliberate Indifference As to Gender-Affirming Surgeries.

As for surgeries, per IDOC policy, individuals may request gender-affirming surgery to THAWC or ask a QMHP or the CAO to submit the request on their behalf. *See* Directive 04.03.104, attached as Ex. B. The Agency Medical Director or Deputy Chief of Health Services, in consultation with an interdisciplinary team of medical and mental health professionals, make the decision as to the medical necessity of the surgery. *Id.* Additionally, the determination of the decision whether the surgery is approved is communicated to the individual. *Id.* Further, when issues at Menard arise concerning access to medical care, the Health Care Unit is contacted to review the medical chart and follow up. *See* Warden Wills Declaration, attached as Ex. D, ¶ 10.

18

As of March 14, 2025, fifty-four (54) patients have been approved for gender approved surgery, eight (8) patients have had/received surgery, and six (6) more patients are currently scheduled for surgery in 2025. *See* Transgender Patients Approved for Surgery, attached as Ex. H.

viii.    No Deliberate Indifference As to Grievance Forms, Law Library, or Calls.

With regard to access to grievances forms, the law library and phone calls with counsel, Menard's policy allows access. *See* Warden Wills Declaration, attached as Ex. D, ¶ 11. When issues arise at Menard, Warden Wills advises the relevant cell house Major of the issue to be looked into and addressed and also sends out a memorandum or bulletin that reiterates the appropriate procedures for staff. *Id*.

ix.    No Deliberate Indifference As to Alleged Double-Cells.

Per IDOC policy, any time a cellmate is considered for a transgender individual, the Placement Officer considers the placement on a case by case basis to ensure the offender's health and safety and whether the placement would present management or security concerns. *See* Directive 04.03.104, attached as Ex. B. *Id*. When issues concerning double-cells are raised by individuals at Menard, Warden Wills advises the relevant cell house Major of the issue to be looked into and addressed and also send out a memorandum or bulletin that reiterates the appropriate procedures for staff. *Id*.

IV.    Plaintiffs' Request Is Barred by the PLRA and Applicable Case Law.

Plaintiffs' requested relief is barred by the requirements set forth in the PLRA. As noted in the above legal standard section, under the PLRA, preliminary injunctive relief "must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." *Roman*, 2019 U.S. Dist. LEXIS at 4 (citing 18 U.S.C. § 3626(a)(2)). The Supreme Court has repeatedly emphasized that prison administrators have substantial discretion over the institutions they manage. *Rasho v.*

*Jeffreys*, 22 F.4th 703, 711-12 (7th Cir. 2022) (citing *Florence v. Bd. of Chosen Freeholders of Cnty. of Burlington*, 566 U.S. 318, 326 (2012)). Here, Plaintiffs move for (i) "enjoining Defendants from housing any class member at Menard," and (ii) "requiring Defendants to offer a transfer for all class members to Logan and/or consolidating class members in a few, safer facilities at the IDOC with concentrated services to evaluate and treat gender dysphoria." *See* Motion, Dkt. No. 874, 1, 16-18. This requested relief far exceeds the PLRA.

First and foremost, "the operation of a correctional institution is at best an extraordinarily difficult undertaking." *Wolff v. McDonnell,* 418 U.S. 539, 566 (1974). In fact, Menard is one of only three maximum correctional facilities in the state of Illinois. In considering and granting transfers, the Transfer Coordinator's Office ("TCO") must consider a variety of factors, including but not limited to height, weight, security threat group affiliation, "Keep Separate From" orders, committing county, home county, security level, escape risk, and other factors. *See* Transcript of Motion Hearing (Day 2), Dkt. No. 668, 23:1-24:22; Redacted Transcript of Motion Hearing (Day 2), Dkt. No. 670, 23:1-24:22. Another factor that is considered is the available resources at a particular facility, for instance mental health programs, group therapy programs, proximity to outside medical facilities, and other similar factors. *Id.* Importantly, Menard is a critical facility for the Department, as it is the maximum-security facility in the southwestern portion of the state, close to many medical facilities within the St. Louis metropolitan area and serves as a Reception and classification facility. The importance of Menard's close proximity to the St. Louis metropolitan area and its numerous medical facilities cannot be understated, especially with regard to the medical treatment of individuals diagnosed with gender dysphoria who often require specialized treatment.

20

Given this background, transferring class members at Menard to Logan and/or consolidation would have a substantial adverse effect on the operation of the correctional system in Illinois, in violation of the PLRA and existing case law, as it would directly place Plaintiffs in the position of directing their own placement within the IDOC, through the Court, and placing an undue burden upon prison officials. Plaintiffs' requested relief therefore is not narrowly drawn, extends much further than necessary to correct the alleged harm, and is not the least intrusive means necessary to correct any alleged harm.

Additionally, instead of focusing on what Menard can do, such as updating its procedures to reasonably address the concerns alleged by Plaintiffs, Plaintiffs simply seek to transfer class members out of Menard (or consolidate). This is not the narrow tailoring that the PLRA requires. It is up to IDOC or the facility itself to craft procedures, which they have done, that meet constitutional requirements. Importantly, the Seventh Circuit has emphasized that a jail need not go beyond what is constitutionally required. *Rasho v. Jeffreys*, 22 F.4th 703, 712 (7th Cir. 2022) (citing *Westefer v. Neal*, 682 F.3d 679, 683 (7th Cir. 2012)). "The court should do no more than to order IDOC officials to do so in general terms and to verify that the plan they submit satisfies the relevant constitutional standards." *Id.* Plaintiffs provide no authority that their requested relief is constitutionally *required*, and in fact, as noted herein, goes well beyond what is required by the Constitution.

Likewise, the public would not be served by Plaintiffs' requested relief. *Dunmore v. Hodge*, No. 3:14-184-JPG-PMF, 2014 U.S. Dist. LEXIS 150404, at *3-4 (S.D. Ill. July 22, 2014) ("Moreover, the public would not be served by this type of injunctive relief . . . .[t]he public is best served by allowing prison officials, who are most familiar with the varied needs of the inmate population, to determine housing assignments.). Institutional reform injunctions, such as the one

21

sought here, raise "sensitive federalism concerns" because they involve "areas of core state responsibility." *Horne v. Flores*, 557 U.S. 433, 448 (2009). Here, Plaintiffs ask this Court to usurp the role of the IDOC and, by extension, the State. But this is not the role given to federal courts. Rather, as elucidated by the Supreme Court:

> It is the role of courts to provide relief to claimants, in individual or class actions, who have suffered, or will imminently suffer, actual harm; it is not the role of courts, but that of the political branches, to shape the institutions of government in such fashion as to comply with the laws and the Constitution.

*Lewis v. Casey*, 518 U.S. 343, 349 (1996). For these reasons, in addition to those raised by Defendants in prior filings, the relief sought by Plaintiffs and the manner in which they have tried to obtain it disserves the public interest.

For all these reasons, the particular relief requested — a transfer to another prison facility or consolidation — is not narrowly drawn, extends further than necessary to correct the harm the court may find requires preliminary relief, and is not the least intrusive means to correct any anticipated harm. *Dunmore v. Hodge*, No. 3:14-184-JPG-PMF, 2014 U.S. Dist. LEXIS 150404, at *3 (S.D. Ill. July 22, 2014) (finding "[t]he most appropriate relief would be attention from qualified medical providers who are familiar with [the plaintiff's] medical history, his prior treatment, his response to treatment, and his current condition.).

Accordingly, Plaintiffs' Motion should be denied.

## V.    Plaintiffs' Requested Relief is Barred by the Eleventh Amendment.

The E*x Parte Young* exception requires an unconstitutional act carried out by a state official claimed to be proceeding under authority of their government capacity to enforce an unconstitutional and, therefore, void law. *Ex Parte Young*, 209 U.S. 123, 159-60 (1908). Such an act strips the individual of "official or representative character" and subjects them "to the

consequences of [their] individual conduct." *Id*. at 160. This very limited purpose treats the official as outside of "the state" to render the Eleventh Amendment inapplicable. *Id.; Green*, 474 U.S. at 68. But, without this clear violation of the law, such a suit against a state officer "should be treated for what it is: a suit against the state." *Watkins v. Blinzinger,* 789 F.2d 474, 484 (7th Cir. 1986) ("Young is a narrow and somewhat anomalous sidestep . . . ."). And, suits brought against the state—whether for damages or injunctive relief—are barred. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 102 (1984). The *Ex Parte Young* exception is limited though to complaints alleging an ongoing violation of federal law and those that seek relief properly characterized as prospective. *Lukaszczykv. Cook County*, 47 F.4th 587, 604 (7th Cir. 2022). The Eleventh Amendment does not allow "reparation for the past." *Endelman v. Jordan*, 415 U.S. 651, 665 (1974) (quoting *Rothstein v. Wyman*, 467 F.2d 226 (2d Cir. 1972)). Nor does it allow for deterrence or notice injunctions based on past conduct. *Green*, 474 U.S. at 68-69.

Here, Plaintiffs' Motion neither alleges an ongoing violation of federal law nor seeks prospective relief. As noted above, Plaintiffs cannot show an Eighth Amendment violation, and instead tries to control and interfere with the public administration of IDOC duties. Further, Plaintiffs only complain of past conditions, not current conditions, which do not account for the significant developments and changes the Department has made such as new administrative directives and procedures since the prior declarations, as further discussed above. As such, Plaintiffs do not seek "prospective relief," and the *Ex parte Young* exception does not apply.

Further, for the *Ex parte Young* exception to apply, the official sued must have a connection with the enforcement of the challenged act, or else it is merely making him or her a party as a representative of the state, and thereby attempting to make the state a party. *Ex parte Young,* 209 U.S. at 158 (the defendant must be "specially charged with the duty to enforce the statute"); *see*

*also Hearne v. Bd. of Educ. of City of Chicago*, 185 F.3d 770, 777 (7th Cir. 1999) (holding that plaintiff challenging the constitutionality of state statutes had failed to state a viable claim against the governor who "had no role to play in the enforcement of the challenged statutes" and did not have "the power to nullify legislation once it ha[d] entered into force"). For example, high-level executives do not automatically satisfy the requirement simply by sitting atop the executive branch. *Eason v. Pritzker*, 18-CV-2553, 2020 U.S. Dist. LEXIS 215779, at *7-8 (N.D. Ill. Nov. 18, 2020). A plaintiff must instead show the defendant's specific involvement in the unconstitutional policy or practice. *Eason*, 18-CV-2553, 2020 U.S. Dist. LEXIS 215779, at *7-8 (N.D. Ill. Nov. 18, 2020).

Here, Plaintiffs fail to provide any evidence the named Defendants have the requisite connect necessary. Even Plaintiff's request for relief implicitly undermines their argument—specifically, Plaintiffs ask for all class members housed at Menard to be transferred to Logan. Plaintiffs cannot argue both sides here. Plaintiffs seek that Defendants be held liable for "IDOC's [allegedly constitutionally inadequate] policies and practices"—the very same policies and practices that exist at Logan. If IDOC's policies and practices are the impetus for such alleged deliberate indifference and such policies and procedures are consistent throughout all of IDOC facilities, the requested transfer of class individuals out of Menard would not provide any relief from the alleged violations.

For these reasons, the *Ex Parte Young* exception does not apply, and Plaintiffs' Motion should be denied.

## CONCLUSION

WHEREFORE, for the above and foregoing reasons, Defendants respectfully request that this Honorable Court deny Plaintiffs' Motion for a Preliminary Injunction, and any other relief this Court deems just.

24

40432\324235638.v1

Date: March 21, 2025

Respectfully submitted,

DEFENDANTS LATOYA HUGHES,
MELVIN HINTON, and STEVEN
BOWMAN

*/s/ Justin Penn*
One of the Attorneys for Defendants

Justin Penn
Hinshaw & Culbertson LLP
151 North Franklin Street, Suite 2500
Chicago, Illinois 60606
Telephone: 312-704-3000
jpenn@hinshawlaw.com
DEFENDANTS LATOYA
HUGHES, MELVIN HINTON, and
STEVEN BOWMAN

40432\324235638.v1

## CERTIFICATE OF SERVICE

The undersigned certifies that on March 21, 2025, I, Erin Pisani served *Defendants'
Response to Plaintiffs' Motion for Preliminary Injunction* to all counsel of record via ECF filing,
which will accomplish service electronically to all counsel of record.

*/s/ Peggy A. Michael*
Peggy A. Michael

26