# EXHIBIT C



# Menard Correctional Center
# Orientation Manual
## 2024-2025

THE INFORMATION CONTAINED IN THIS MANUAL IS SUBJECT TO CHANGE.  IT IS **YOUR RESPONSIBILITY** TO READ ALL POSTED BULLETINS FOR INFORMATION WHICH MAY SUPERSEDE MATERIAL PRESENTED IN THIS DOCUMENT.

## Table of Contents

**General Introduction**

| | | | |
|---|---|---|---|
| Introduction | 3 | Statement of Purpose | 3 |
| Facility Information | 3 | Classification | 3 |
| Placement | 4 | Orientation | 4 |

**Institutional Organization**

| | | | |
|---|---|---|---|
| Table of Organization | 5 | Responsibility of Major Departments | 5 |

**Operations**

| | | | |
|---|---|---|---|
| Admission Procedures | 8 | Housing Units | 8 |
| Evacuation Procedures | 8 | Schedules | 8 |
| Movement | 9 | Assignment of individual in Custody | 9 |
| Job Assignment | 9 | Protective Custody | 10 |

**Department Rules**

| | | | |
|---|---|---|---|
| Diminution of Sentence (DR 107B) | 10 | Earned Discretionary sentence Credit | 13 |
| Earned Program Sentence Credit | 13 | Revocation of Time and Credit | 13 |
| Restoration of Time and Credit | 13 | Assignment Committee (DR 420) | 14 |
| Library and Legal Material (DR430) | 14 | Committed Persons Business Ventures | 14 |
| Cleanliness and Grooming (DR502) | 15 | Discipline (DR504) | 15 |
| Restrictive Housing/Investigative Conf. | 34 | Grievance Procedures (DR504) | 40 |
| Rights and Privileges (DR 525) | 43 | Visiting Procedures / Rules (DR525B) | 43 |
| Mail Procedures (DR525B) | 48 | Telephone Services        (DR525B) | 51 |
| Publication Review       (DR525C) | 54 | Transfers (DR503) | 55 |
| Personal Property (DR 535) | 57 | Reimbursement for Expenses (730 ILCS) | 68 |
| Chaplaincy Services (DR 425) | 69 | Institutional Rules | 69 |
| STG Renunciation Policy | 71 | Specimen Collection/Mandatory DNA | 71 |
| Prison Rape Elimination Act (PREA) | 71 | | |

**Programs and Services**

| | | | |
|---|---|---|---|
| Education | 74 | Vocational | 75 |
| Clinical Services / Case Management | 75 | Clinical Services Programs | 76 |
| Health Care Services | 77 | Americans with Disabilities Act | 80 |
| HIV&AIDS Counseling and Testing | 81 | Mental Health | 82 |
| Leisure Time Services | 83 | Chaplaincy Services/Religious Practices | 83 |
| Library Services and Legal Material | 85 | Volunteer Programs | 86 |
| Field Services / Release Planning | 87 | Substance Abuse Programs | 94 |

**Additional Information**

| | | | |
|---|---|---|---|
| Identification Cards | 94 | Procedures for Money Vouchers | 94 |
| Trust Office | 94 | JPAY/Western Union/GTL | 95 |
| Commissary | 97 | Freedom of Information Act | 100 |
| Prison transportation for families | 101 | | |

## INTRODUCTION

Menard Correctional Center is an adult male correctional facility located on the eastern bank of the Mississippi River in Randolph County, Illinois. The facility was originally opened in 1878. Individuals in custody of the Menard Correctional Center are assigned to one of three major housing areas: The General Division, which is Maximum Security; Medium Security Unit, or the Reception and Classification unit.

The Menard Correctional Center Orientation Manual is designed to familiarize each individual in custody with the programs and services provided at Menard.  Also, the manual will attempt to answer questions you may have regarding your initial adjustment to the facility. It is anticipated that this manual will provide enough information to enable you to make the right decisions concerning the constructive utilization of your time at this institution.

## STATEMENT OF PURPOSE

The primary purpose of Menard Correctional Center is to confine adult male individuals in custody in a safe, secure, and humane manner, preserve and promote individual rights and responsibilities, and in turn, ensure the ultimate protection of society. Inherent within this purpose is the offering of a variety of program activities for individuals in custody housed within the institution by complying with Department Rules and Directives.

Individuals in custody shall be afforded the opportunity to explore and participate in programs designed to assist them towards a successful reintegration into society and to reduce the negative effects of incarceration. It is essential that these functions be conducted within the realities of the security needs of a maximum-security correctional center.

## FACILITY INFORMATION

Physical Address:

Menard Correctional Center
711 Kaskaskia Street
Menard, IL  62259-0711

Phone Number: (618) 826-5071

Mailing Address:

Menard Correctional Center
P.O. Box 1000
Menard, IL 62259
Individual in custody last name and ID number

### Gender and Sexual Identity/LGBTQ

IDOC is sensitive to the needs of our gender and sexual minority populations. If you need accommodations as a result of this identification, please contact your mental health staff for a confidential discussion of what is available and what may be needed.

## CLASSIFICATION

It is the policy of the Department to maintain a classification level system that creates a process for the classification of individuals in custody according to their security classification, risk level and needs related to treatment and programming. This process shall consider behavior and such other objective factors as are available and relevant when assessing an individual in custody's institutional security needs, including, but not limited to:

- History of assaultive, violent or disruptive behavior
- Age
- History of escape or attempts to escape
- Enemies of record
- Gender identification
- Sex
- Medical status
- Mental and emotional stability
- Notoriety of offenses
- Criminal history
- Type of sentencing and release eligibility
- Programming and education history
- Security Threat Group (STG) affiliation
- Previous adjustment at less restrictive security levels

The Reception and Classification Center at Menard is responsible for the initial classification of all individuals in custody received from counties and those returned on parole or work release violations.  Each individual's criminal, social, medical, and mental health history shall be assessed to determine appropriate placement for that individual in custody.

## PLACEMENT

Department of Corrections has established security designations for all adult facilities to assist in placement of individuals in custody.  You will be assigned to a facility that can best address your individual needs.  For more information specific to your placement please see your assigned Correctional Counselor.

## ORIENTATION

It is the policy of the Department of Corrections and Menard Correctional Center that all individuals in custody will be

3

provided with a thorough orientation in their own language. The program shall include all aspects of the correctional center's expectations of them, and what they may expect to derive from institutional programs.

Upon transferring to Menard from any facility, including a Reception Center, all individuals in custody will be placed into orientation status until such time that the orientation process is completed. This process consists of the following:

- Medical Screening
- Mental Health Screening
  - o PREA Screening
  - o Suicide Assessment
- Clinical Services Interview/Resources
  - o Assess Aggression Level
  - o Issue Menard Orientation Manual
  - o Issue Visitor and Phone Lists
- Dressed-in by the Clothing House
- Issued new individual in custody ID by B of I
- Personal Property issuance

Individuals in custody in orientation status shall have their movement restricted to those activities listed above.  Once orientation is complete, individuals in custody will be moved to the appropriate housing unit and receive privileges consistent with current grade.

Individuals in custody that are newly admitted into IDOC shall be placed into Reception status (this includes parole violators and ATC violators that are returned to IDOC).  All individuals in custody in Reception status will be housed in the designated Reception and Classification unit.  Reception status is terminated once the individual in custody is transferred to an assigned correctional facility.

During the reception process, various tools are used to determine appropriate placement for the individual in custody.  These tools include, but are not limited to, counselor, mental health, medical, substance abuse screener interviews, and criminal history.  Every effort is made by Reception staff to place an individual in custody into a facility that best suits their programming needs.  While in reception status, the individual in custody may expect the following:

- Access to medical services, mental health services, and chaplaincy services.
- Will be allowed to send and receive mail.  Will not be allowed visits except legal.
- Will not receive any state pay.
- Will be given commissary privileges up to a maximum of $15, one time per month, limited to basic hygiene items, writing supplies, gym shoes, and a cup.  Clothing (adequate for the season), towels, bedding, and soap shall be provided.  Audio visual equipment will not be allowed.
- Will be granted access to reading materials and have access to materials from the facility Law Library.
- Any movement shall be escorted.  All meals will be served in the individual in custody's cell.  Out of cell movement shall be limited to recreation, showers, legal visits, medical, mental health services, and classification interviews.
- An individual in custody may also be placed in restrictive housing status for disciplinary reasons.  Further restrictions may apply, and initial classification recommendations may also be affected by disciplinary actions.

## ORGANIZATION



MENARD CORRECTIONAL CENTER ORGANIZATIONAL CHART

---

## RESPONSIBILITIES OF MAJOR DEPARTMENTS:

**Warden -** The Warden of this correctional center is also known as its' Chief Administrative Officer. The CAO is responsible for the overall operation of the facility, the supervision and protection of its individuals in custody, as well as the supervision of staff members. The CAO is ultimately responsible for overseeing both program and operational services of this facility, as well as ensuring compliance with all departmental directives and rules.

**Assistant Warden of Operations -** The Assistant Warden of Operations handles the day-to-day functioning of the

security staff at Menard Correctional Center. Areas under immediate supervision include; Maintenance, Dietary, Security, Laundry, Visiting, All Housing Units, and the Medium Security Unit.

**Assistant Warden of Programs -** The Assistant Warden of Programs is responsible for the supervision and administration of program services at this facility. Departments which fall under direct supervision include; Clinical Services, Field Services, Bureau of Identification, Record Office, Library, Grievance Committee, Health Care Unit, Leisure Time Activities, Education, Chaplaincy, Commissary, Barber Shop, Industries, and Communications.

**Assistant Warden of MSU & R&C -** The Assistant Warden of MSU & R&C is responsible for the supervision and administration of program services the Menard Medium Security Unit and Reception and Classification Unit.

**Superintendent of MSU -** The Superintendent of MSU is responsible for the operation of the Medium Security Unit, the supervision and protection of its individuals in custody assigned, as well as the supervision of staff members. Responsible for overseeing both program and operational services, as well as ensuring compliance with all departmental directives and rules. Reviews and approves all community projects including response to disaster relief.

**Administrative Major -** Directly responsible for the security of the entire institution and all grounds pertaining to such; and is a member of the policy making staff.

**Unit Majors -** Under administrative direction of the Assistant Warden of Operations and Administrative Major, plans and administers all programs and operations activities within a living unit at Menard. Assists in the formulation and implementation of and carries out policies, procedures and instructions of the Chief Administrative Officer; responsible for the treatment and rehabilitation of individuals in custody, supervises staff in maintaining and enforcing disciplinary, safety, security, sanitary and custodial measures.

**Shift Commander (Major) -** The Shift Commander oversees security staff assigned to his shift.  Deployment of the security force including roster management, supervision, and training, are all responsibilities of the Administrative Major.

**Clinical Services -** The purpose of the Clinical Services Department is to provide support and services to individuals in custody in order to assist them in their adjustment, involvement in programs, and reintegration into society.

**Dietary Department -** The Dietary Department oversees the preparation and serving of all meals for all individuals in custody and employees of this institution. These functions are carried out through a staff complement of Corrections Food Supervisors and a large group of individual in custody workers. The Dietary Department provides nutritional meals three (3) times a day and prepares special diet trays for individuals in custody by the direction of the Medical or Chaplaincy department.

**Chaplaincy Department -** The purpose of the Chaplaincy Department is to facilitate growth or movement toward a meaningful, spiritual faith experience and behavior according to the individual in custody's particular faith orientation. This purpose presupposes that the holistic view of an individual in custody includes a spiritual dimension. Religious resources are available. Requests shall be made in writing and directed to a Facility Chaplain (except for discontinuance of a Religious Diet, which requires a DOC 0286 plus a DOC 0389).

**Laundry Department -** The laundry department is responsible for laundering all state issue individual in custody clothing and bedding. Laundry Managers supervise individual in custody help as they perform these duties. The laundry department's function is to wash the clothing, linens, and bedding. Individual in custody clothing is washed on a weekly basis and blankets are washed quarterly. Laundry schedules are arranged according to the individual in custody's placement in the cell house or gallery.

**Education -** The Education Department is a division of the Department of Corrections Office of Adult Ed and Vocational Services (OAEVS.)  Programs offered include the following:  Adult Basic Education (ABE), General Education Development (GED) now referred to as Adult Secondary Education (ASE), to earn a GED now referred to as High School Equivalency (HSE), and a Vocational Program (Building & Construction Maintenance).  The Educational Program is coordinated through the Office of Adult Education and Vocational Services.

**Health Care Unit -** The Health Care Unit provides individuals in custody with medical and dental services at a level commensurate with good medical practice for all individuals in custody and staff. In addition to the Dental Clinic, the

Health Care Unit is responsible for pharmacy services, laboratory and radiology services, and optometry services.

**Record Office -** The Record Office is responsible to ensure that the proper committing papers accompany each individual in custody to this correctional center. The Record Office is also responsible to initiate a master file and maintain it so that it may be used throughout the individual in custody's incarceration. It is also their responsibility, through the Bureau of Identification facilities, to ensure that proper identification of each individual in custody can be made through the use of pictures and fingerprints. The Record Office is responsible to ensure that individual in custody is released at their proper time, either by court order or discharge. The Record Office provides accurate sentence calculations and grade status determination**.**

**Bureau of Identification -** The Bureau of Identification is responsible for identifying individuals in custody, issuing individual in custody identification cards, and fingerprinting individuals in custody for Illinois and FBI criminal histories.

**Business Office -** The Business Office of this facility is functionally combined with the commissary, stores, and warehouse areas. The operation of the combined unit is to coordinate budgeting procedures, control the disbursement of funds budgeted, maintain inventory controls, and prepare necessary accounting reports. The Business Office is also responsible for maintaining accurate trust fund accounts, payment for individual in custody assignments, and the individual in custody benefit fund.

**Leisure Time Services -** It is the purpose of the Leisure Time Services Department to provide the individual in custody with daily planned and organized leisure opportunities which are a representation of the individual in custody's overall interest and abilities. A variety of activities are offered to enable the individual in custody to develop a varied foundation of leisure time pursuits, which are not only designed to enrich present life, but also add wholesome enjoyment to life in the future.

**Commissary -** The Commissary is responsible for providing basic food items, personal hygiene items, clothing, and audio/visual items to individuals in custody confined at this correctional facility as per the approved Statewide Commissary List. The Commissary makes available a wide range of items for purchase through the individual in custody's trust fund accounts.

**Maintenance -** The Maintenance Department provides building maintenance for all the cellhouses and support buildings at this institution. This department also maintains the on-site utilities, repairs of concrete roads and sidewalks, and maintenance of the institution vehicles.

**Barber Shop -** The Barber Shop provides haircuts and shaves to all individuals in custody. To obtain either or both, simply send a note to the cellhouse Lt. for an appointment. You will be scheduled as soon as possible. No "specialty" haircuts will be allowed.

## OPERATIONS

### New Admission Procedures

**Receiving and Classification** counselors will orientate individuals in custody received in the reception and classification center.  Individuals in custody received from counties or returned on parole or work release violation will be processed as follows and housed in the designated Reception and Classification unit until appropriate placement is approved:

Step 1:  Individuals in custody will be searched and placed in appropriate clothing.
Step 2:  Individuals in custody will be processed through the Bureau of Identification where they will receive an I.D. card.
Step 3:  Individuals in custody will receive an initial orientation from counseling staff and will be evaluated by Mental Health Staff.
Step 4:  Medical and Dental exams are done.

**Individuals in custody transferring into Menard** general population from other facilities will be housed according to aggression level, disciplinary transfers will be housed in restrictive housing.  Individuals in custody transferring in will be processed as follows:

Step 1:  Individual in custody will be processed through the Bureau of Identification and clothing house.
Step 2:  Individual in custody will receive a medical orientation by medical staff and an initial orientation by counseling

staff.  Individual in custody' property is given to them as soon as property is processed.
Step 3:  Individual in custody file will be reviewed to ensure appropriate housing placement, individual in custody is then moved from East Cell House orientation gallery to assigned housing unit.

## Housing Units

Within the confines of Menard Correctional Center, there are nine housing units. They are the Reception and Classification Unit, where all individual in custody initially admitted from court, parole violation, or work release violation transfers are located; the East cellhouse; West cellhouse; South Uppers and South Lowers (currently closed); North Uppers and North Lowers; and North II. Assignment outside the perimeter is the Medium Security Unit.

General Population – East, West, North Lowers, North Uppers, South Lowers, South Uppers, North II
Restrictive Housing – North II
Administrative Detention – North II
Temporary Confinement – North II
Protective Custody – West, R&C

## Evacuation Procedures
In the event of an emergency requiring evacuation, you are to follow the instructions of security staff.

## Schedules
Yard/recreation schedules are issued seasonally. All other schedules are issued as changes necessitate.  See cellhouse staff for current laundry, yard, recreation, and chapel schedules.

## Movement
All mass movement of individuals in custody will be controlled and supervised by staff. Mass movements will consist of going to and from meals and recreation yard. Individuals in custody will proceed to these destinations two abreast (paired up).

All individual in custody movement is escorted. Call passes are used for the purpose of calling an individual in custody to certain areas (i.e., health care and library). You must have your ID card on your person at all times you are outside of your cell. Movement will be recorded on a movement chart upon leaving an assignment/location, and again upon arrival at the destination specified.  If you are moving without a pass or an escort or are attempting to move on a pass designated for another individual in custody, you may be detained and can be issued a disciplinary report.

All individuals in custody confined to restrictive housing will be handcuffed behind their back before their cell is opened and Correctional Staff will escort them to and from the destination.  All individuals in custody confined to Protective Custody will be escorted to and from a destination by at least one (1) Correctional Officer. Recreational yard will be provided by escorting one (1) gallery at a time under the supervision of the appropriate security staff. Individual in custody in approved Protective Custody will eat their designated meals in the main dining room under supervision of security staff.

## ASSIGNMENT OF INDIVIDUAL IN CUSTODY

**DEFINITIONS:** "Assignment Officer" is one or more persons designated by the Chief Administrative Officer to, among other matters, conduct reviews and make recommendations concerning institutional assignments, inter-institutional transfers, security classifications and program assignments.  Assignment may also refer to an individual in custody's status; unassigned, protective custody status, disciplinary status, and any others deemed necessary by the Warden.  You may request consideration for a job assignment through counseling staff.

## GENERAL PROVISIONS:
A.    The Assignment Officer shall make a recommendation for the assignment of a committed person received at an assigned facility.
B.    Recommendations made by the Assignment Officer shall be in writing.
C.    All recommendations are subject to review and approval by the Chief Administrative Officer or his designee.

## JOB ASSIGNMENT FOR INDIVIDUAL IN CUSTODY
Individuals in Custody may request consideration for a job assignment through counseling staff.
Requests for job assignments will generally not be processed unless the Individual in Custody has been out of restrictive

8

Housing for 6 months with no further discipline.  Exceptions must be approved by the CAO (no designee).

Must be a resident of Menard CC for at least 3 months prior to consideration for any job assignment (excluding MSU).

If an individual in Custody is denied for placement in a specific assignment category, he may not be resubmitted for that category for 12 months.

The Placement Office shall ensure that all work assignments are given a planned end date in 360.  Extensions may be requested by the assignment supervisor and must be approved by an Assistant Warden or Above.

## REMOVAL/REASSIGNMENT:

A.    A committed person may be removed from his assignment and/or reassigned by the Chief Administrative Officer or by the Assignment Officer with subsequent approval by the Chief Administrative Officer. Removal and/or reassignment shall be based upon matters including, but not limited to, the committed person's inability or incompetence in performing or completing the assignment, disciplinary reasons, the committed person's request for an assignment change, staff recommendation, security or administrative reasons i.e., six month critical and non-critical reviews.

B.    Placement in restrictive housing status shall result in the removal of an adult committed person from an assignment.

1.    When a committed person is found not guilty of a rule violation or an investigation indicates that he did not commit a violation, he may be returned to the assignment he held prior to being removed. Factors to be considered may include, but not limited to, the availability of the assignment, basis for the finding of not guilty, results of the investigation or staff recommendation.

2.    When a committed person is found guilty of a rule violation he shall, upon release from restrictive housing status, be given an assignment other than the assignment held prior to being placed in restrictive housing, unless return to the same assignment is approved in writing by the Chief Administrative Officer.

## PROTECTIVE CUSTODY

A protective custody area is provided for committed persons whose safety and security may be threatened in the general population. Those individuals requesting protective custody are housed in the West cellhouse.  Neither general population nor restrictive housing individuals are permitted access to this area except as approved by the Warden. Housing accommodations and essential services such as phone calls, yard, and commissary are comparable to those provided to the general population.

An individual in custody may request placement in protective custody through any officer or employee. Reassignment from general population to protective custody will be accomplished as quickly as possible.  The Individual in custody placed in protective custody will, within 10 working days, appear before an Assignment Committee. This committee will make a recommendation to the Warden concerning the necessity of continued protective custody placement. These factors, among other matters, are considered by the Assignment Committee in making its recommendation.
- o  Size, stature, age, degree of aggressiveness, criminal history, or any history of being victimized;
- o  Identification of a specific individual who has threatened and can be expected to continue to threaten or physically harm the person requesting protective custody status;
- o  Institutional records indicating that the person has previously had difficulties adjusting within the general population due to pressure from other committed individuals in custody;
- o  Written or verbal reports from correctional employees or others;
- o  Any other information that, in the Committee's judgment, makes continued protective custody placement necessary.

The Warden makes the final determination and the person requesting protective custody shall be informed of the decision in writing. If the individual in custody intends to grieve the decision, he must indicate his intent to do so in writing at the time he is served with the Warden's decision.  No other grievance is necessary, the ARB/Director will ultimately determine if protective custody is warranted. You will remain in the protective custody area, until the ARB/Director renders their decision.

Any individual in custody who is voluntarily in protective custody shall be returned to general population as soon as possible upon request and approval from CAO.

Chaplaincy services are provided for Protective Custody individuals.  These services may include worship services, instruction or discussion groups, counseling, and religious literature.  Individual counseling and communal services may

be available upon request to the Chaplaincy Department.  All requests of a religious nature should be addressed to the office of the Senior Chaplain.

Protective custody individuals will be provided visits in an area separate from general population individuals.  All visiting information and rules listed in this manual apply to protective custody status individuals as well.

Individuals confined in protective custody areas shall also be afforded the opportunity for access to the Law Library where notary and photocopy services are available. Requests for Law Library access should be addressed to the Law Library and may be sent through the institutional mail or given to individual law clerks in the unit. **REQUESTS MUST INCLUDE THE INDIVIDUAL IN CUSTODY'S NAME, I.D. NUMBER, CELLHOUSE, AND CELL LOCATION**.

## DEPARTMENT RULES

### Dimunition of Sentence (DR 107 B)
In accordance with DR 107 B, Menard Correctional Center Record Office will ensure sentences are decreased appropriately as it applies to each individual in custody.

### Indeterminate Sentences:
- Committed persons serving indeterminate sentences shall appear before the Prisoner Review Board prior to their parole eligibility date after having served their minimum sentence or 20 years (whichever is less), less statutory good time and compensatory good time, and day or day credit.

- In the event a committed person must serve the maximum sentence, he shall be released after serving the maximum of the sentence, less statutory and compensatory good time, and day for day credit.

- A committed person serving a determinate sentence shall be released after serving his determinate sentence less any applicable credit awarded or earned.

### Good Time Schedules and Sentence Credit applicable to Felony Sentences:

A.    Statutory good time on indeterminate sentences, with reference to the minimum and maximum sentences, shall be calculated in accordance with the following table for persons sentenced prior to June 1, 1977, if the schedule contained in the table would be more beneficial than awarding day for day good conduct credits as of February 1, 1978.

### Statutory Good Time Calculations for Those Sentenced Prior to June 1, 1977*

| SENTENCE | TIME TO BE SERVED |
|----------|-------------------|
| 1st year | 11 months |
| 2nd year | 1 year and 9 months |
| 3rd year | 2 years and 6 months |
| 4th year | 3 years and 2 months |
| 5th year | 3 years and 9 months |
| 6th year | 4 years and 3 months |
| 7th year | 4 years and 9 months |
| 8th year | 5 years and 3 months |
| 9th year | 5 years and 9 months |
| 10th year | 6 years and 3 months |
| 11th year | 6 years and 9 months |
| 12th year | 7 years and 3 months |
| 13th year | 7 years and 9 months |
| 14th year | 8 years and 3 months |
| 15th year | 8 years and 9 months |
| 16th year | 9 years and 3 months |
| 17th year | 9 years and 9 months |
| 18th year | 10 years and 3 months |
| 19th year | 10 years and 9 months |
| 20th year | 11 years and 3 months |

*Agency Note: On the maximum sentence, six months of good time is earned for each additional sentence year.

B.   Statutory good time on indeterminate sentences, with reference to minimum and maximum sentences, shall be
calculated in accordance with the following table for all persons sentenced to the Department of Corrections on or
after June 1, 1977, but prior to February 1, 1978, for establishing the time credit for that portion of the sentence
which was served prior to February 1, 1978.

### Statutory Good Time Calculations for Those Sentenced On, or after June 1, 1977*

| SENTENCE | TIME TO BE SERVED |
|---|---|
| 1st year | 9 months |
| 2nd year | 1 year and 6 months |
| 3rd year | 2 years and 3 months |
| 4th year | 3 years |
| 5th year | 3 years and 9 months |

*Agency Note: Three months good time shall be earned for each additional sentence year.

1.   For those persons whose sentences are calculated under the table in Paragraph B, the remaining portion
of the sentence served on or after February 1, 1978, shall be credited with day for day credits.

2.   For a person who is sentenced on or after June 1, 1977, but prior to February 1, 1978, for an offense
committed prior to June 1, 1977, the table in Paragraph A shall be used if it would be more beneficial in
calculating the minimum or maximum sentence or both.

C.   Compensatory good time shall be earned on those indeterminate sentences or portions thereof which are
calculated under the statutory good timetables. Compensatory good time shall normally be awarded at the rate of
seven and one-half (7½) days for each month in custody. Committed persons shall receive compensatory good
time on a prorated basis during the month placed in and released from custody in accordance with the following
table.

### Prorated Compensatory Good Time

| INCOMING FELONS | | RELEASED FELONS | | |
|---|---|---|---|---|
| Day of Month Received | Days Credit | Scheduled Date of Release | Days Credit | New Release Date |
| 2-4 | 6 | 1-4 | 0 | 1-4 |
| 5-9 | 5 | 5-9 | 1 | 4-8 |
| 10-14 | 4 | 10-14 | 2 | 8-12 |
| 15-19 | 3 | 15-19 | 3 | 12-16 |
| 20-24 | 2 | 20-24 | 4 | 16-20 |
| 25-28 | 1 | 25-28 | 5 | 20-23 |
| 29 plus | 0 | 29 plus | 6 | 23 |

D.   Committed persons shall not be eligible to receive compensatory good time against that portion of their sentence
which is calculated under day for day good conduct provisions.

1.   A committed person shall not be awarded compensatory good time for any month during which he is
reported by his work/program supervisor for carelessness, negligence or refusal to work, providing such
action is recommended by the facility's Adjustment Committee and approved by the Chief Administrative
Officer.  No committed person shall lose any compensatory good time credits because he was unable to
work or participate in a facility program through no fault of his own.

2.   Any committed person placed in restrictive housing or confinement for a period of three (3) days or more
during a given month pursuant to a hearing before an Adjustment Committee shall not be awarded
compensatory good time for that month. However, no person shall lose compensatory good time for more
than one month pursuant to such a hearing unless he is placed in restrictive housing or confinement for at
least 10 additional days during the second and subsequent months.

3.   Any committed person placed on investigative status shall receive compensatory good time for that
month if the investigation findings indicate that the committed person did not commit a violation.

4.   Every committed person assigned to a community correctional center shall be credited with compensatory

good time unless an Adjustment Committee finds that he has violated disciplinary rules.

     5.     Any awarded compensatory good time may not be revoked.

E.     Day for day credits, with reference to the minimum and maximum sentences, shall be calculated by awarding one day of credit for each day served for all committed persons sentenced on or after February 1, 1978, if such credit would be more beneficial than statutory and compensatory good time credits. Determinate sentences entered on or after February 1, 1978, shall receive day for day good conduct credits.

G.     Statutory sentence credit, with reference to determinate sentences for offenses committed on or after June 19, 1998 but prior to January 1, 2018, or earned statutory sentence credit, with reference to determinate sentences for offenses committed on or after January 1, 2018, shall be awarded in accordance with the Truth in Sentencing provisions of Section 3-6-3 of the UCOC.

H.     Any individual in custody convicted of a sex offense, as defined in the Sex Offender Registration Act [730 ILCS 150], that was committed on or after June 1, 2008, shall receive no statutory sentence credit or earned statutory sentence credit unless he or she successfully completes or is participating in sex offender treatment. However, if the individual in custody is on a waiting list for treatment but is unable to participate due solely to lack of Department resources, he or she may be awarded statutory sentence credit or earned statutory sentence credit at the discretion of the Director.

## Consecutive Sentences:

A.     Consecutive sentences shall be aggregated and treated as though they are a single term.

B.     Committed persons serving consecutive sentences, one or more which is indeterminate, shall receive statutory good time under the most beneficial table in effect on or after the commission of the crime. Compensatory good time shall also be credited to consecutive sentences. As of February 1, 1978, the remaining portion of the minimum or maximum sentence shall be calculated under day for day good conduct provisions unless the statutory and compensatory good time provisions would be more beneficial.

## Concurrent Sentences:

When a committed person already subject to a sentence receives one or more concurrent sentences, he shall receive credit on the subsequently imposed sentences from the date of sentencing.

## Earned Discretionary Sentence Credit

Individuals in custody committed to the Department may be eligible to receive earned discretionary sentence credit for good conduct in addition to other credit awarded in accordance with this Part.  The award of earned discretionary sentence credit shall be at the sole discretion of the Director, or his or her designee, and shall be awarded in accordance with the provisions of Subpart C.

## Earned Program Sentence Credits:

Committed persons who are enrolled in full-time substance abuse programs, correctional industry assignments, vocational or academic educational programs, behavior modification programs, life skills courses, job assignments, or re-entry planning approved by the Department may be eligible to receive earned program sentence credits in addition to other credit awarded in accordance with this Part. Earned program sentence credits shall be awarded at the applicable rate for each day during which program goals have been achieved.

## Revocation of Time and Credits:

A.     Any committed person who is found guilty of misconduct or violating department rules or the terms of parole or mandatory supervised release may lose statutory good time, day for day credit, statutory sentence credit, earned statutory sentence credit, supplemental sentence credit, earned discretionary sentence credit, program sentence credit, or earned program sentence credit.

B.     Statutory good time may be revoked at the discretion of the Director upon the recommendation of the Adjustment

Committee and the Chief Administrative Officer, or the Deputy Director.

C.      A maximum of 30 days of credits may be revoked from any committed person at the discretion of the Director during any 12-month period. If the amount of credit at issue exceeds 30 days or when, during any 12-month period, the cumulative amount of credit revoked exceeds 30 days, the Department shall submit its recommendation to revoke good conduct credits to the Prisoner Review Board for approval.

D.      When an infraction is committed or discovered within 60 days prior to an individual's scheduled release, the Department may revoke up to 30 days of credits without approval of the Prisoner Review Board. If the Department seeks to revoke more than 30 days, its recommendation for revocation of the additional credit shall be submitted to the Prisoner Review Board for approval.

## Restoration of Time and Credit:

A.      Statutory good time, day for day credit, statutory sentence credit, earned statutory sentence credit, supplemental sentence credit, earned discretionary sentence credit, program sentence credit, and earned program sentence credit may be restored by the Director, either by his own action or upon the recommendation of:
1.      The Administrative Review Board,
2.      The Adjustment Committee and the Chief Administrative Officer, or
3.      The Deputy Director

B.      In determining the restoration, the Director may consider, among other matters:
1.      The nature of the incident which served as the basis for the revocation;
2.      The disciplinary proceedings which led to the revocation;
3.      Any specific report or recommendation from staff made concerning the individual.
4.      The individual's entire disciplinary record to date.
5.      Job performance of the individual.
6.      Program participation or achievements of the individual.
7.      Additional recommendations or information supplied to reviewing staff.
8.      Overall conduct of the individual since the original revocation of good time.
9.      The amount of time that has lapsed since the infraction that resulted in the revocation.
10.     The amount of time since the individual was found guilty of a disciplinary infraction.
11.     Completion of the Extended Restrictive Housing Transition and Stabilization Plan.
12.     Whether the individual is currently serving Dead Time.

C.      The restoration must be approved by the Prisoner Review Board.

D.      The committed person may petition the Adjustment Committee for a review for restoration of revoked time no more frequently than once every three months.  If the Adjustment Committee recommends the restoration, said recommendation shall be forwarded through designated channels to the attention of the Director. Notification of the Director's decision shall be given to the committed person.

## Assignment Committee (DR 420)
The Assignment Committee shall among other matters conduct reviews and make recommendations concerning institutional assignments, inter-institutional transfers, security classifications and program assignments.

## Library Services and Legal Material (DR 430)
Opportunities for access to library services and legal materials shall be provided.  However, general library services and/or direct access to a law library may be limited, restricted or denied if library privileges have been abused or institutional safety or security may be jeopardized.  An alternative means of access shall be provided in these instances.

## Manuscripts:
A committed person may submit a manuscript for publication but shall not enter into contractual agreements with publishers for a regularly published column.   Individuals may submit manuscripts to any market listed in the book, *Writer's Market,* published by Writer's Digest Books, 9933 Alliance Road, Cincinnati, Ohio 45242.   A copy of this book can be found in the library.

**Business Ventures:**   All committed persons are required to inform the Chief Executive Officer (CAO) in writing of any business venture.  The CAO may deny such request at his/her discretion.

A.    All committed persons are required to inform the Chief Administrative Officer or his designee of the following in writing before entering into any business venture:
1.    Type of business;
2.    Service or product to be provided;
3.    Anticipated mail volume (incoming and outgoing); and
4.    Date the business will begin.

B.    The Chief Administrative Officer or his designee shall determine the facility's capability to handle any administrative burden generated by a business venture and shall specify reasons for denial of such a request in writing unless inappropriate because of safety or security considerations.

C.    No committed person shall sell any property, product or service, either individually or through a business entity in which he has a personal or economic interest, to any other committed person or employee.

## Cleanliness and Grooming for Committed Person (DR 502)

Committed persons may have any length of hair, sideburns, and mustaches or beards as long as they are kept neat and clean and do not create a security risk.

Department rules allow for the imposition of an individual grooming policy when an individual in custody's hairstyle (including facial hair) creates a security risk or health or sanitation problem.  In accordance with this rule, an individual grooming requirement may be imposed on those individuals in custody who continuously change their appearance and thereby interfere with the orderly function of the facility or on individual in custody who maintain their hair (including facial hair) in the following manner:

• Hairstyles that may signify affiliation with Security Threat Groups, including but not limited to initials, symbols, multiple parts, hair disproportionately longer in one area than another (excluding natural baldness);
• Hair that poses a health or sanitation problem;
• Hairstyles that create a risk that contraband hidden in the hair cannot be detected or that impede searches for contraband or that pose a risk that contraband hidden in the hair may injure the employee(s) charged with searching the individual in custody.

Those individual in custody who maintain their hair in the above manner and who refuse to comply with an order to either undo the hairstyle or to submit to a haircut may be subject to disciplinary action, and if necessary, forcibly changing the hairstyle.

## Discipline (DR 504)

### TITLE 20:  CORRECTIONS, CRIMINAL JUSTICE, AND LAW ENFORCEMENT
#### CHAPTER I:  DEPARTMENT OF CORRECTIONS
#### SUBCHAPTER e:  OPERATIONS

PART 504
DISCIPLINE AND GRIEVANCES

### SUBPART A:  ADMINISTRATION OF DISCIPLINE

Section
504.10        Applicability
504.12        Definitions
504.15        Responsibilities
504.20        Offenses and Maximum Penalties
504.30        Preparation of Disciplinary Reports
504.40        Investigative Status and Temporary Confinement
504.50        Review of Disciplinary Reports
504.60        Investigation of Major Disciplinary Reports
504.70        Adjustment Committee and Program Unit Composition
504.80        Adjustment Committee Hearing Procedures
504.90        New or Additional Proceedings
504.100       Program Unit Hearing Procedures
504.110       Computation of Discipline for Multiple Offenses
504.115       Indeterminate and Long Term Restrictive Housing Placement
504.120       Reduction in Restrictive housing Placement

| | |
|---|---|
| 504.130 | Demotion and Restoration in Grade |
| 504.140 | Restitution Procedures |
| 504.150 | Restoration of Time and Credit |

**SUBPART B:  ADMINISTRATION OF DISCIPLINE - JUVENILE**

Section
| | |
|---|---|
| 504.200 | Applicability (Repealed) |
| 504.202 | Definitions (Repealed) |
| 504.205 | Responsibilities (Repealed) |
| 504.210 | Offenses and Maximum Penalties (Repealed) |
| 504.220 | Preparation of Disciplinary Reports (Repealed) |
| 504.230 | Temporary Confinement (Repealed) |
| 504.240 | Review of Disciplinary Reports (Repealed) |
| 504.250 | Adjustment Committee and Program Unit Composition (Repealed) |
| 504.260 | Adjustment Committee Hearing Procedures (Repealed) |
| 504.270 | New or Additional Proceedings (Repealed) |
| 504.275 | Program Unit Hearing Procedures (Repealed) |
| 504.280 | Computation of Discipline for Multiple Offenses (Repealed) |
| 504.290 | Restitution Procedures (Repealed) |
| 504.300 | Restoration of Good Time (Repealed) |

**SUBPART C:  ADMINISTRATION OF DISCIPLINE - COMMUNITY SERVICES**

Section
| | |
|---|---|
| 504.400 | Applicability (Repealed) |
| 504.402 | Definitions (Repealed) |
| 504.405 | Responsibilities (Repealed) |
| 504.410 | Offenses and Maximum Penalties (Repealed) |
| 504.420 | Preparation of Disciplinary Reports (Repealed) |
| 504.430 | Temporary Confinement (Repealed) |
| 504.440 | Review of Disciplinary Reports (Repealed) |
| 504.450 | Adjustment Committee and Program Unit Composition (Repealed) |
| 504.460 | Adjustment Committee Hearing Procedures (Repealed) |
| 504.470 | New or Additional Proceedings (Repealed) |
| 504.480 | Program Unit Hearing Procedures (Repealed) |
| 504.490 | Computation of Penalty for Multiple Offenses (Repealed) |
| 504.500 | Restitution Procedures (Repealed) |
| 504.510 | Restoration of Good Time (Repealed) |

**SUBPART D:  RESTRICTIVE HOUSING AND CONFINEMENT**

Section
| | |
|---|---|
| 504.600 | Applicability |
| 504.602 | Definitions |
| 504.605 | Responsibilities |
| 504.610 | Placement in Restrictive housing Status |
| 504.620 | Restrictive housing Standards |
| 504.630 | Investigative Confinement |
| 504.640 | Confinement Pending Transfer (Repealed) |
| 504.650 | Confinement in Control Restrictive housing (Repealed) |
| 504.660 | Administrative Detention (Renumbered) |
| 504.670 | Recreation for Persons in Restrictive housing Status |
| 504.680 | Release from Disciplinary Restrictive housing |
| 504.690 | Administrative Detention |

**SUBPART E: CONFINEMENT PROCEDURES - JUVENILE**

Section
| | |
|---|---|
| 504.700 | Applicability (Repealed) |
| 504.710 | Definitions (Repealed) |
| 504.715 | Responsibilities (Repealed) |
| 504.720 | Placement in Confinement (Repealed) |
| 504.730 | Confinement Procedures (Repealed) |

**SUBPART F:  GRIEVANCE PROCEDURES FOR INDIVIDUALS IN CUSTODY**

Section
504.800          Applicability
504.802          Definitions
504.805          Responsibilities
504.810          Filing of Grievances
504.820          Grievance Officer
504.830          Grievance Procedures
504.840          Emergency Procedures
504.850          Appeals
504.860          Records
504.870          Direct Review by Administrative Review Board

**SUBPART G:  GRIEVANCE PROCEDURES FOR RELEASEES**

Section
504.900          Applicability
504.905          Definitions
504.910          Responsibilities
504.920          Filing of Grievances
504.930          Review of Grievances
504.940          Appeals


504.APPENDIX A          Offense Numbers and Definitions
504.TABLE A             Maximum Penalties
504.TABLE B             Maximum Penalties for Juvenile Individual in custody (Repealed)
504.TABLE C             Offenses and Maximum Penalties - Community Services Division (Repealed)
Reg. 3869, effective April 1, 2017


# SUBPART A:  ADMINISTRATION OF DISCIPLINE

**Section 504.10 Applicability**

This Subpart applies to individual in custody within the Department of Corrections.
    **(Source:  Amended at  41 Ill. Reg. 3869, effective April 1, 2017)**

**Section 504.12 Definitions**
    "Chief Administrative Officer" means the highest ranking official of a correctional facility.
    "Department" means the Department of Corrections.
    "Director" means the Director of the Department.
    "Employee", for the purpose of this Part, means any Department employee, contracted employee, employee of a vendor, or a volunteer.
    "Investigative Status" means a confinement status in which an individual in custody's movement may be restricted while an incident or matter is being investigated.
    "Individual in custody" means a person committed to the Department or to the custody of the Department.
    "Seriously Mentally Ill", for the purpose of this Part, means an individual in custody is seriously mentally ill if he or she, as a result of a mental disorder as defined in the current edition of the Diagnostic and Statistical Manual of Mental Disorders (DSM) of the American Psychiatric Association, exhibits impaired emotional, cognitive or behavioral functioning that interferes seriously with his or her ability to function adequately except with supportive treatment or services.  These individuals also must either currently have, or have had within the past year, a diagnosed mental disorder, or must currently exhibit significant signs and symptoms of a mental disorder.  A diagnosis of alcoholism or drug addiction, of developmental disorders, or of any form of sexual disorder shall not, by itself, render an individual seriously mentally ill.  The combination of either a diagnosis or significant signs and symptoms of a mental disorder and an impaired level of functioning, as outlined in this definition, is necessary for one to be considered seriously mentally ill.  Whether a person meets the criteria of seriously mentally ill is initially determined by a comprehensive, professional clinical assessment by a Department Mental Health Professional in order to determine if the individual has a diagnosable mental disorder as defined by the current DSM and to establish the person's overall level of functioning.  The appropriate threshold to establish level of functioning that equates to a serious mental illness includes serious impairments in capacity to recognize reality in work, school or learning environments; frequent problems with the authority/rules; occasional combative behavior; serious

16

impairments in relationships with friends and family; serious impairments in judgment, thinking and mood; and serious impairment due to anxiety.  These disturbances must be observed in at least one of the listed areas.  "Temporary Confinement" means a confinement status in which an individual in custody may be placed until a determination is made as to whether a disciplinary report or investigative report is to be issued or pending a disciplinary hearing.

## Section 504.15  Responsibilities

a)     Unless otherwise specified, the Director or Chief Administrative Officer may delegate responsibilities stated in this Subpart to another person or persons or designate another person or persons to perform the duties specified.

b)     No other individual may routinely perform duties whenever a Section in this Subpart specifically states the Director or Chief Administrative Officer shall personally perform the duties.  However, the Director or Chief Administrative Officer may designate another person or persons to perform the duties during periods of his or her temporary absence or in an emergency.

## Section 504.20  Offenses and Maximum Penalties

Disciplinary offenses are defined in Appendix A.  Maximum penalties for conduct that constitutes a disciplinary offense are set forth in Table A.

a)     No individual in custody shall be found guilty of any violation of this Part without a hearing before the Adjustment Committee or Program Unit.  If an individual in custody is transferred from one facility to another while pending a hearing, the individual shall be provided with an opportunity to present a defense at any subsequent disciplinary hearing held at the receiving facility that is comparable to that which would have been afforded, in accordance with this Subpart, at the sending facility.

b)     In determining the appropriate sanctions, the Adjustment Committee or Program Unit, the Chief Administrative Officer and the Director shall consider, among other matters, mitigating or aggravating factors including:
1)     The individual in custody's age, medical and mental state at the time of committing the offense;
2)     If the individual in custody is determined to be seriously mentally ill and if the sanctions for the violation may include a period of restrictive housing, the recommendations of a mental health professional;
3)     The extent and degree of participation in the commission of the offense;
4)     The amount or nature of stolen property, contraband or injury; and
5)     The individual in custody's prior disciplinary record.

c)     Corporal punishment, disciplinary restrictions on diet, medical or sanitary facilities, clothing, bedding, mail or access to legal materials and reductions in the frequency of use of toilets, washbowls and showers shall be prohibited.

d)     Disciplinary restrictions on visitation, work, education or program assignments and use of the library shall be related as closely as practicable to the abuse of these privileges.  This subsection shall not apply to restrictive housing of individual in custody for purposes of institutional control.

e)     Individual in custody are presumed to be responsible for any contraband or other property prohibited by this Part that is located on their person, within their cell or within areas of their housing, work, educational or vocational assignment that are under their control.  Areas under an individual in custody's control include, but are not limited to, the door track, window ledge, ventilation unit, plumbing, and the individual in custody's desk, cabinet, shelving, storage area, bed and bedding materials in his or her housing assignment, and desk, cubicle, workstation and locker in his or her work, educational or vocational assignment.  If the individual in custody produces evidence that convinces the Adjustment Committee or Program Unit that he or she did not commit the offense, the individual in custody shall be found not guilty.

## Section 504. APPENDIX A Offense Numbers and Definitions

100.     VIOLENT ASSAULT OF ANY PERSON - Causing a person, substance, or object, to come into contact with another person in a deadly manner or in a manner that results in serious bodily injury.

101.     ARSON - Setting fire in any location whether public or private, including, but not limited to, any part of the facility, its grounds, or State vehicles.

102a.    ASSAULT WITH INJURY - Causing a person, substance, or object to come into contact with, and resulting in injury to, a staff member, contractual employee, official visitor, visitor or volunteer.

102b.    ASSAULT - Causing a person, substance or object to come into contact with a staff member, contractual employee, official visitor, visitor or volunteer in an offensive or provocative manner; or fighting with a weapon.

102c.    ASSAULT TO AN INDIVIDUAL IN CUSTODY - Causing a person, substance or an object to come into contact with any individual in custody in an offensive, provocative or injurious manner; or fighting with a weapon.

103.    BRIBERY & EXTORTION - Demanding or receiving anything of value in exchange for protection, to avoid bodily injury, or through duress or pressure.  Giving or receiving money or anything of value to violate State or federal law or to commit any act prohibited under this Part.

104.    DANGEROUS CONTRABAND - Possessing, manufacturing, introducing, selling, supplying to others or using without authorization any explosive, acid, caustic material for incendiary devices, ammunition, dangerous chemical, escape material, knife, sharpened instrument, gun, firearm, razor, glass, bludgeon, brass knuckles, cutting tools, tools which may be used to defeat security measures such as hacksaw blades, keys and lock picks, any other dangerous or deadly weapon or substance of like character or any object or instrument that is made to appear to be or could be used as a deadly or dangerous weapon or substance.

105.    DANGEROUS DISTURBANCES - Causing, directing or participating in any action or group activity that may threaten the control or security of a facility or seriously disrupt or endanger the operations of a facility, persons or property, including the taking or holding of hostages by force or threat of force and engaging in prohibited group activities such as work stoppages or hunger strikes.

106.    ESCAPE - Leaving or failing to return to lawful custody without authorization, including the failure to return from furlough, leave or authorized absence within two hours after the designated time.

107.    SEXUAL MISCONDUCT - Engaging in sexual intercourse, sexual conduct or gesturing, fondling or touching done to sexually arouse, intimidate or harass either or both persons; or engaging in any of these activities with an animal. However, private masturbation in the individual in custody's living area, excluding a deliberate display of the act or to affront others, shall not be considered sexual misconduct.

108.    SEXUAL ASSAULT
Causing unwilling contact between the sex organ of one person and the sex organ, mouth or anus of another person or any intrusion of any part of the body of one person or object into the sex organ or anus of another person by use of force or threat of force, including pressure, threats or any other actions or communications by one or more persons to force another person to engage in a partial or complete sexual act.

109.    ELECTRONIC CONTRABAND - Possessing, selling, receiving, supplying to others, or using without authorization any electronic device, video recording device, computer or cellular communications equipment, including, but not limited to, cellular telephones, cellular telephone batteries, pagers, computers and computer peripheral equipment.

110.    IMPEDING OR INTERFERING WITH AN INVESTIGATION - Obstructing, impeding or refusing to provide information relevant to an investigation in an attempt to undermine or alter the course of the investigation.

111.    SECURITY THREAT GROUP OR UNAUTHORIZED ORGANIZATIONAL LEADERSHIP ACTIVITY
Knowingly accepting or assuming any leadership position or a position of authority over other individual in custody in any security threat group or unauthorized organization; or pressuring, recruiting, organizing, authorizing or directing others to engage in security threat group or unauthorized organizational activities, meetings or criminal acts on behalf of an organization not approved pursuant to 20 Ill. Adm. Code 445 or 450.

201.    CONCEALMENT OF IDENTITY - Wearing a disguise or a mask, impersonating another or otherwise concealing one's identity.

202.    DAMAGE OR MISUSE OF PROPERTY - Destroying, damaging, removing, altering, tampering with, or otherwise misusing property belonging to the State, another person or entity, including the obstruction of locks or security devices, destroying or tampering with bar codes or identification cards, or the use of another person's identification card.

203.    DRUGS AND DRUG PARAPHERNALIA - Possessing, manufacturing, introducing, selling, supplying to others, or receiving alcohol, any intoxicant, inhalant, narcotic, syringe, needle, unauthorized controlled medication, controlled substance, unidentifiable medication or marijuana; or being under the influence of any of the above substances; or refusing to be tested for drug or alcohol use, including failure to provide a specimen within two hours after the request; or destroying or tampering with drug or alcohol tests or testing equipment.

204.    FORGERY - Forging, counterfeiting or reproducing without authorization any document, article of identification, money, security or official paper.

205.    SECURITY THREAT GROUP OR UNAUTHORIZED ORGANIZATIONAL ACTIVITY - Engaging in security threat group or unauthorized organizational activities, meetings or criminal acts; displaying, wearing, possessing or using security threat group or unauthorized organizational insignia or materials; or giving security threat group or unauthorized organizational signs.

206.    INTIMIDATION OR THREATS - Expressing by words, actions or other behavior an intent to cause harm to any person or property that creates the reasonable belief that physical, monetary or economic harm to that person or to another will result; or any unauthorized contact or attempt to contact staff outside of official 208.

208. DANGEROUS COMMUNICATIONS - Engaging in verbal or written communication that is likely to encourage violence against persons or that is likely to disrupt or endanger the safety and security of the facility, including, but not limited to, escape plans and manufacture of weapons.

209.    DANGEROUS WRITTEN MATERIAL - Possessing or causing to be brought into the facility written material that presents a serious threat to the safety and security of persons or the facility, including, but not limited to, written material relating to methods of escape and the manufacturing of weapons.

210.    IMPAIRMENT OF SURVEILLANCE - Using curtains, coverings or any other matter or object in an unauthorized manner that obstructs or otherwise impairs the line of vision into an individual in custody's cell or room or that obstructs or otherwise impairs any viewing panel or surveillance equipment, both audio and visual, within the facility.

211.    POSSESSION OR SOLICITATION OF UNAUTHORIZED PERSONAL INFORMATION
Possessing or soliciting unauthorized personal information regarding another individual in custody, releasee, employee, former employee or volunteer, including, but not limited to, personnel files, master files, medical or mental health records, photographs, social security numbers, home addresses, financial information or telephone numbers, except as authorized by a court order or as approved in writing by the Chief Administrative Officer.

212.    FRIVOLOUS LAWSUIT - A pleading, motion or other paper filed by the individual in custody for which the court, in accordance with 730 ILCS 5/3-6-3, has found to be frivolous.

213.    FAILURE TO REVEAL ASSETS - Failing to fully cooperate in revealing financial assets on the form provided, including tangible and intangible property and real and personal property; providing false or inaccurate information regarding financial assets or dependents on the forms provided; or refusing to cooperate in revealing financial assets on the form provided.

214.    FIGHTING - Fighting with another person in a manner that is not likely to cause serious bodily injury to one or the other and that does not involve the use of a weapon.

215.    DISOBEYING A DIRECT ORDER ESSENTIAL TO SAFETY AND SECURITY
Willfully refusing, or neglecting to comply with, an order when continued refusal results in a use of force to maintain the safety and security of a facility.  This shall include, but not be limited to, refusing to submit to a search, refusing to submit to the application of mechanical restraints, refusing a designated housing assignment or refusing to leave an area.

302.    GAMBLING - Operating or playing a game of chance or skill for anything of value, making a bet upon the outcome of any event, or possessing any gambling device.  This shall include participating in any lottery.

303.    GIVING FALSE INFORMATION TO AN EMPLOYEE - Lying or knowingly providing false information to an employee, either orally or in writing.

304.    INSOLENCE - Talking, touching, gesturing or other behavior that harasses, annoys or shows disrespect.

305.    THEFT - Department business. Taking property belonging to another person or entity or the facility without the owner's authorization.

306.    TRANSFER OF FUNDS - Causing money to be transferred from one trust fund to another or through an outside source to the account of another individual in custody or entering into contracts or credit agreements without written approval from the Chief Administrative Officer.

307.    UNAUTHORIZED MOVEMENT - Being anywhere without authorization or being absent from where required to be or returning late or not traveling directly to or from any authorized destination without prior staff approval.

308.    CONTRABAND OR UNAUTHORIZED PROPERTY - Possessing, giving, loaning, receiving or using property that an individual in custody has no authorization to have or to receive and that was not issued to the individual through regular procedures, including the unauthorized possession of food or clothing or the possession of property in excess of that authorized by the facility; or property that has been altered from its original state.  This offense includes prescribed medication misuse, such as, but not limited to, prescribed medication that is expired, loose or altered from its original state.

309.    PETITIONS, POSTINGS AND BUSINESS VENTURES - Writing, signing or circulating a petition without authorization; unauthorized distributing or posting of any printed or written materials, including surveys; engaging in an unauthorized business venture; or representing oneself as a corporation or official of a corporation without authorization.

310.    ABUSE OF PRIVILEGES - Violating any rule regarding visits, mail, the library, yard, commissary, telephone, authorized electronic communication or recreational activities.  This includes unauthorized telephone usage, three-party calls, call forwarding, corresponding or communicating, by any means, with a victim, a victim's family member or any other person after the individual in custody has received notice that such person has informed the Department that he or she does not wish to receive correspondence from the individual in custody.  However, if the conduct also constitutes a violation of federal or State law, a committed person may also be charged under #501.

311.    FAILURE TO SUBMIT TO MEDICAL OR FORENSIC TESTS - Willfully refusing to submit to, or cooperate with, testing, examinations or the provision of samples required by court order, State law or current standards of public health and safety, including the refusal to submit to annual tuberculosis screening and mandatory HIV or DNA testing.

312.    POSSESSION OF MONEY - Possessing or causing to be brought into the facility any coin, currency or other negotiable instrument without authorization or for residents of transition centers, failure to promptly submit all income to center staff, including wages, tips, gifts or any check for social security, disability, veteran's benefits, grants, scholarships or loans.

313.    DISOBEYING A DIRECT ORDER - Willfully refusing or neglecting to comply with an order, including the refusal to participate in educational testing; to accept a work, educational or housing assignment; or to perform a work assignment.

402.    HEALTH, SMOKING OR SAFETY VIOLATIONS - Smoking; tattooing or body piercing, including, but not limited to, piercing of the ear, nose or lip; or disregarding basic hygiene of any person, cell, living or work area, or other place in the facility or its grounds.

404.    VIOLATION OF RULES - Willfully disobeying any rule of the facility.  If the specific offense is stated elsewhere in this Part, a committed person may not be charged with this offense.  The rule violated must be specified in the disciplinary report.

405.    FAILURE TO REPORT - Failure to report for a work, educational or program assignment or for transport.

406.    TRADING OR TRAFFICKING - Trading or trafficking with any person.

501.    VIOLATING STATE OR FEDERAL LAWS - Committing any act that would constitute a violation of State or federal law.  If the specific offense is stated elsewhere in this Part, an individual in custody may not be charged with this offense except as otherwise provided in this Section.  The State or federal offense must be specified in the disciplinary report.

601.    AIDING AND ABETTING, ATTEMPT, SOLICITATION OR CONSPIRACY - Aiding and abetting any person in the commission of any of these offenses; attempting to commit any of these offenses; making plans to commit any of these

offenses; soliciting another to commit any of these offenses; or conspiring to commit any of these offenses shall be considered the same as the commission of the offense itself and shall carry the penalty prescribed for the underlying offense.  The underlying offense must be specified in the disciplinary report.

(Source:  Amended at __41 Ill. Reg. 3869, effective April 1, 2017)

**Section 504.TABLE A  Maximum Penalties**

| Offense | | Maximum Penalties for Individual in custody | | | |
|---|---|---|---|---|---|
| | | Loss or Restriction of Privileges | B or C Grade | Sentence Credit Revocation | Restrictive Housing |
| 100. | Violent Assault of any Person | 1 year | 90 days | 1 year | Indeterminate |
| 101. | Arson | 1 year | 90 days | 1 year | 6 months |
| 102a. | Assault with Injury | 1 year | 90 days | 1 year | 1 year |
| 102b. | Assault | 1 year | 90 days | 6 months | 3 months |
| 102c. | Assault of an Individual in custody | 6 months | 90 days | 6 months | 3 months |
| 103. | Bribery & Extortion | 1 year | 0 days | 1 year | 29 days |
| 104. | Dangerous Contraband | 1 year | 90 days | 1 year | 1 year |
| 105. | Dangerous Disturbance | 1 year | 90 days | 1 year | 6 months |
| 106. | Escape or Runaway | 1 year | 1 year | 1 year | 1 year |
| 107 | Sexual Misconduct | 6 months | 90 days | 6 months | 6 months |
| 108. | Sexual Assault | 1 year | 90 days | 1 year | 1 year |
| 109. | Electronic Contraband | 1 year | 90 days | 1 year | 3 months |
| 110. | Impeding or Interfering with an Investigation | 3 months | 0 days | 3 months | 29 days |
| 111. | Security Threat Group or Unauthorized Organizational Leadership Activity | 1 year | 90 days | 1 year | 1 year |
| 201. | Concealment of Identity | 6 months | 0 days | 0 days | 29 days |
| 202. | Damage or Misuse of Property | 6 months | 0 days | 0 days | 0 days |

| Offense | | Maximum Penalties for Individual in custody | | | |
|---------|--|---------------------------------------------|--|--|--|
| | | Loss or Restriction of Privileges | B or C Grade | Sentence Credit Revocation | Restrictive Housing |
| 203. | Drugs and Drug Paraphernalia | 6 months/ 1 month for intoxicants | 0 days/1 month for intoxicants | 0 days | 6 months/ 29 days for intoxicants |
| 204. | Forgery | 3 months | 0 days | 0 days | 0 days |
| 205. | Security Threat Group or Unauthorized Organizational Activity | 6 months | 0 days | 0 days | 29 days |
| 206. | Intimidation or Threats | 6 months | 0 days | 0 days | 29 days |
| 208. | Dangerous Communications | 6 months | 0 days | 0 days | 29 days |
| 209. | Dangerous Written Material | 6 months | 0 days | 0 days | 29 days |
| 210. | Impairment of Surveillance | 6 months | 0 days | 0 days | 29 days |
| 211. | Possession or Solicitation of Unauthorized Personal Information | 6 months | 0 days | 0 days | 29 days |
| 212. | Frivolous Lawsuit | 0 days | 0 days | 6 months | 0 days |
| 213. | Failure to Reveal Assets | 0 days | 0 days | 0 days | 0 days |
| 214. | Fighting | 6 months | 6 months | 0 days | 29 days |
| 215. | Disobeying a Direct Order Essential to Safety and Security | 6 months | 6 months | 0 days | 29 days |
| 302. | Gambling | 3 months | 3months | 0 days | 0 days |
| 303. | Giving False Information to an Employee | 3 months | 3 months | 0 days | 0 days |
| 304. | Insolence | 3 months | 3 months | 0 days | 0 days |
| 305. | Theft | 6 months | 6 months | 0 days | 0 days |

| Offense | | Maximum Penalties for Individual in custody | | | |
| --- | --- | --- | --- | --- | --- |
| | | Loss or Restriction of Privileges | B or C Grade | Sentence Credit Revocation | Restrictive Housing |
| 306. | Transfer of Funds | 3 months | 3 months | 0 days | 0 days |
| 307. | Unauthorized Movement | 3 months | 3 months | 0 days | 0 days |
| 308. | Contraband or Unauthorized Property | 6 months | 6 months | 0 days | 0 days |
| 309. | Petitions, Postings, and Business Ventures | 3 months | 3 months | 0 days | 0 days |
| 310. | Abuse of Privileges | 3 months | 3 months | 0 days | 0 days |
| 311. | Failure to Submit to Medical or Forensic Tests | 3 months | 3 months | 0 days | 0 days |
| 312. | Possession of Money | 3 months | 3 months | 0 days | 0 days |
| 313. | Disobeying a Direct Order | 6 months | 6 months | 0 days | 0 days |

| | | | | | |
| --- | --- | --- | --- | --- | --- |
| 402. | Health, Smoking, or Safety Violations | 3 months | 3 months | 0 days | 0 days |
| 404. | Violation of Rules | 1 month | 1 month | 0 days | 0 days |
| 405. | Failure to Report | 1 month | 1 month | 0 days | 0 days |
| 406. | Trading or Trafficking | 2 months | 2 months | 0 days | 0 days |
| 501. | Violating State or Federal Laws | 1 year | 90 days | 1 year | 1 year |
| 601. | Aiding and Abetting, Attempt, Solicitation, or Conspiracy | Same as underlying offense | Same as underlying offense | Same as underlying offense | ½ as underlying offense |

(Source:  Amended at _41 Ill. Reg. 3869, effective April 1, 2017)

Section 504.TABLE B  Maximum Penalties for Juvenile Individual in custody (Repealed)
(Source:  Repealed at 41 Ill. Reg. 3869, effective April 1, 2017

**DRUG AND ALCOHOL TESTS**

All individuals in custody are subject to drug or alcohol tests and subject to disciplinary action in accordance with Department Rule 504 or revocation of parole or mandatory supervised release for any drug or alcohol related offense

such as:

A.    Failure to submit to testing;

B.    Failure to provide a urine specimen within two (2) hours of notification, unless it is medically determined by the Agency Medical Director that the individual in custody is unable to provide a specimen within the established time frames;

C.    Destroying or tampering with or attempting to destroy or tamper with drug or alcohol tests or testing equipment; or

D.    Receiving a positive test result for which there is no medical justification.

Any individual in custody found guilty of a drug related offense is subject to a referral for voluntary or mandatory alcohol abuse intervention or treatment or both. Drug related offenses include the offenses listed above and possession or being under the influence of any alcohol or drugs or drug paraphernalia.

## CONTROLLED FEEDING STATUS

In order to maintain the safety and security of the institution, and to encourage acceptable behavior, Menard Correctional Center has implemented a controlled feeding status program as of 12/2/02. Controlled feeding status consists of a combination of food items used in regular meals, using standard portions, prepared in a single loaf form for breakfast, lunch, and dinner.

Individuals in custody who display inappropriate behavior such as throwing food items or utensils, containers, trays, failure to return or properly dispose of uneaten food, drink items, serving utensils, containers or trays, obstruction or prevention of the closure of food passage, spitting, throwing, making weapons, or improper disposal of human waste discharge or fluids MAY be placed on controlled feeding status (Meal Loaf).

The first placement on controlled feeding status will be for 72 hours beginning with the first meal after the inappropriate behavior has occurred and ending with the same meal at the 72-hour period. Any incident occurring while an individual in custody is on controlled feeding status MAY result in an extension or reinstatement of controlled feeding status. Any future occurrence of inappropriate behavior may result in a six-day placement on controlled feeding status. At the end of each six-day period, a regular, medical, or religious diet will be served for 24 hours. Individual in custody shall be provided the meal loaf and access to water. No other food or liquid items shall be provided.

### Section 504.30 Preparation of Disciplinary Reports

a)    Every employee has the duty to observe the conduct of individual in custody.

b)    If an employee observes an individual in custody committing an offense, discovers evidence of its commission, or receives information from a reliable witness of the conduct, the employee shall promptly prepare a disciplinary report. However, if the infraction is listed in the 400 series in Table A and the employee determines a disciplinary report is not necessary to resolve the situation, the employee may orally reprimand the individual in custody.

c)    The disciplinary report must be fully completed. The reporting employee shall provide the following information to the extent known or available:

1)    The name and identification number of the individual in custody.
2)    The place, time and date of the offense.
3)    The offense that the individual in custody is alleged to have committed.
4)    A written statement detailing the conduct observed.
5)    The names of individual in custody, employees and visitors who were witnesses. The identity of witnesses may be withheld for reasons of security provided a statement to that effect and the information the confidential source provided are included on the disciplinary report to the extent the information can be included without jeopardizing security.
6)    The signature of the reporting employee and the date and time the report is completed.

d)    If an individual in custody is suspected of committing a disciplinary offense, an investigative disciplinary report, hereinafter referred to as an investigative report, shall be issued that reasonably informs the individual in custody of the subject of the investigation to the extent that safety and security allow. In no event shall an investigative report be served upon an individual in custody more than eight calendar days after the suspected commission of an offense or the discovery of an offense, whichever is later, unless the individual in custody is unavailable or unable to participate in the proceeding.

e)    Service of a disciplinary report upon the individual in custody shall commence the disciplinary proceeding. In no event shall a disciplinary report be served upon an individual in custody more than eight calendar days after the commission of an offense or the discovery of an offense unless the individual in custody is unavailable or unable to participate in the proceeding.

**Section 504.40 Investigative Status and Temporary Confinement**

The shift supervisor shall determine whether it is necessary to place the individual in custody in investigative status or in temporary confinement status pending a disciplinary hearing or a determination whether to issue a disciplinary or investigative report in accordance with Section 504.30.  If the individual in custody has been diagnosed as seriously mentally ill, the shift supervisor shall ensure a mental health professional completes a documented review of the individual in custody within 48 hours and provides his or her recommendation for temporary confinement to the Chief Administrative Officer.  The Chief Administrative Officer shall also have the authority to release the individual in custody from temporary confinement.  The decision to place an individual in custody in investigative status or temporary confinement may be based, among other matters, on:

a)    The aggressiveness of the individual in custody;
b)    The threat posed to the safety and security of the facility or any person;
c)    The need to restrict the individual in custody's access to general population to protect the individual from injury or to conduct the investigation;
d)    The seriousness of the offense; or
e)    Contraindication for placement determined by a mental health professional.

**Section 504.50 Review of Disciplinary Reports**

a)    The Chief Administrative Officer of each facility shall designate one or more Reviewing Officers.

b)    The Reviewing Officer shall review the decision to place an individual in custody in temporary confinement within three calendar days after the placement, whenever possible, and may order release from or placement in temporary confinement.  Among other matters, the factors listed in Section 504.40 may be considered.  If a disciplinary or investigative report has not been written within three calendar days after placement in temporary confinement, the Reviewing Officer shall inform the Chief Administrative Officer.

c)    An individual in custody who receives an investigative report shall be interviewed by the Reviewing Officer in order to permit the individual in custody an opportunity to present his or her views regarding placement in investigative status.  The interview shall be conducted within 10 calendar days after initial placement in investigative status, whenever possible.

1)    The Reviewing Officer shall recommend whether to continue placement of the individual in custody in investigative status.  Among other matters, factors listed in Section 504.40 may be considered.  The Chief Administrative Officer shall make the final determination.
2)    The individual in custody shall be informed of the decision and the decision shall be documented in writing.
3)    The individual in custody may be detained in investigative status for up to 30 days.
4)    If the investigation does not indicate that the individual in custody may be guilty of any disciplinary offense, placement in investigative status shall be terminated and the report shall be expunged from the individual in custody's records.  A copy shall be maintained in an expungement file.  This decision shall be made by the Chief Administrative Officer and shall be documented in writing.
5)    If, as a result of the investigation, it is necessary to amend or modify the original charges, the individual in custody shall be issued a revised disciplinary report.
6)    Upon completion of the investigation, the individual in custody shall appear before the Adjustment Committee for a hearing on the disciplinary report unless the report has been expunged.
7)    In the event that an investigation cannot be completed within 30 days due to an institutional emergency, the Chief Administrative Officer may personally authorize, in writing, an extension of up to 30 days placement pending investigation.  As used in this Section, an institutional emergency includes riots, strikes, lockdowns and natural disasters.
8)    The Director may personally authorize, in writing, additional extensions of up to 30 days each if an institutional emergency prevents completion of the investigation within 60 days.  The individual

in custody shall be informed of the decision in writing.

d)    The Reviewing Officer shall review each disciplinary report and determine whether:

1)    The reported facts justify a disciplinary hearing.  If not, the report shall be expunged from the individual in custody's records.  A copy shall be maintained in an expungement file.

2)    The disciplinary report has been completed properly.  If not, the Reviewing Officer shall make the necessary corrections or direct the reporting employee to make the corrections.  The individual in custody shall be provided with a copy of the corrected report.  In the event the corrected report contains new charges, the individual in custody shall be provided a copy of the corrected report at least 24 hours prior to the hearing, unless the individual in custody waives this notice in writing.

3)    The offense is major or minor in nature.  Major offenses shall be assigned to the Adjustment Committee for a hearing and minor offenses shall be assigned to the Program Unit for a hearing.

A)    Aiding and abetting, soliciting, attempting to commit, conspiring to commit, or committing any offense listed in the 100, 200, or 500 series of Table A shall be considered a major offense.

B)    Those offenses listed in the 300 or 400 series or the aiding and abetting, soliciting, attempting to commit, or conspiring to commit any of these offenses shall be designated as major or minor based on the seriousness of the offense and factors enumerated in Section 504.20(b).

e)    The Reviewing Officer shall forward copies of all major disciplinary reports to the Hearing Investigator.

## Section 504.70 Adjustment Committee and Program Unit Composition

a)    The Chief Administrative Officer shall appoint the Adjustment Committee, which shall be composed of at least two members.

1)    The Adjustment Committee shall include:
A)    To the extent possible, a person representing the counseling staff; and
B)    At least one minority staff member.

2)    The Chief Administrative Officer shall designate a chairperson.

b)    The Program Unit shall be composed of a group of employees appointed by the Chief Administrative Officer who shall serve as Hearing Officers.  At least one member of the Program Unit shall be a minority staff member.

## Section 504.80  Adjustment Committee Hearing Procedures

a)    The Adjustment Committee hearing shall be convened, but need not be concluded, within 14 days after the commission of the offense by an individual in custody or its discovery, whenever possible, unless the individual in custody has received a continuance or is unable or unavailable for any reason to participate in the hearing.  For purposes of this Section, when an investigation has taken place, an offense is considered to be discovered upon the conclusion of the investigation.  Inability to participate includes the absence of the individual in custody from the facility for any reason or certification by health care or mental health staff that the individual in custody is unable to appear.

b)    The individual in custody shall receive written notice of the facts and charges being presented against him or her no less than 24 hours prior to the Adjustment Committee hearing.  The individual in custody may waive the 24-hour advance notice.  The waiver shall be in writing.

c)    The individual in custody shall be informed before or at the hearing of information that would tend to show that the individual in custody was not guilty.  If the information is provided to him or her at the hearing, the individual in custody, upon request, shall be given a continuance.

d)    Any person who initiated the allegations that serve as the basis for the disciplinary report, or who conducted an investigation into those allegations, or who witnessed the incident, or who is otherwise not impartial shall not serve on the Adjustment Committee hearing that disciplinary report.  An individual in custody who objects to a member of the Adjustment Committee based on a lack of impartiality must raise the matter at the beginning of the hearing.  The Adjustment Committee shall document the basis of the objection and the decision in the Adjustment Committee summary.

e)      An individual in custody may, upon written request and for good cause shown, be granted additional time to prepare his or her defense.  If, at the time of the hearing, the Adjustment Committee determines that the individual in custody was unable to prepare a defense because of a language barrier or hearing impairment, the Adjustment Committee shall automatically grant a request for a continuance for language assistance.  The committee shall then make the necessary arrangements for language assistance.  Inability to prepare a defense due to a language barrier includes, but is not limited to, a request for witnesses.

f)      Any individual in custody charged with a violation of any rule shall have the right to appear before and address the Adjustment Committee.  Any refusal to appear shall be documented and provided to the Adjustment Committee.  However, failure to appear before or address the Adjustment Committee may be adversely construed against the individual by the Adjustment Committee.

   1)    The individual in custody may make any relevant statement or produce any relevant documents in his or her defense.
   2)    Prior to the hearing, the individual in custody may request that witnesses be interviewed.  The request shall be in writing on the space provided in the disciplinary report and shall include an explanation of what the witnesses would state.  If the individual in custody fails to make the request in a timely manner before the hearing, the individual may be granted a continuance for good cause shown.

g)      The Adjustment Committee shall consider all material presented that is relevant to the issue of whether the individual in custody committed the offense.

h)      If the individual in custody has been diagnosed as seriously mentally ill, the Adjustment Committee may request the reviewing mental health professional to appear before the Adjustment Committee to provide testimony relevant to his or her review.

i)      The Adjustment Committee shall consider any statements of witnesses with relevant knowledge of the incident who are reasonably available.

   1)    The Adjustment Committee or its Hearing Investigator may interview witnesses and prepare or review summaries of their testimony prior to or at or subsequent to the hearing.
   2)    The individual in custody does not have the right to confront or cross-examine any witnesses but may submit questions for witnesses to the Adjustment Committee prior to the hearing.  These questions shall be asked by the Adjustment Committee or its Hearing Investigator unless found to be cumulative, irrelevant or a threat to the safety of individuals or the security of the facility.
   3)    A means shall be provided in each living unit for individual in custody to submit witness request slips.  The Adjustment Committee may disapprove witness requests that are not received prior to the hearing.
   4)    Requests by individual in custody for witnesses may be denied if their testimony would be, among other matters, irrelevant or cumulative or would jeopardize the safety or disrupt the security of the facility.  If any witness request is denied, a written reason shall be provided.
   5)    At least one person who serves as an Adjustment Committee member shall hear the in-person testimony of the individual in custody's witnesses when the individual in custody makes a timely request for the witnesses or is granted a continuance to request witness testimony.  In-person testimony of the individual in custody's witnesses shall be defined as face-to-face contact or telephonic contact by the Adjustment Committee.
   6)    If the Adjustment Committee makes a written determination that the in-person testimony by the witness requested by the individual in custody would undermine authority or would present potential disruption of the operations of the facility or a threat to the safety of any person or institutional safety or correctional goals, the Adjustment Committee may elect to accept the testimony through other legally permissible means, including, but not limited to, a sworn written summary of an interview of the witness or a sworn statement.
   7)    A sworn written statement or sworn written summary of a witness' testimony is a reasonable alternative to in-person testimony if the witness' testimony will be accepted as credible and it involves verification of alleged facts, including, but not limited to, a witness who will testify to the authenticity of contents of a record or document, cell location, work assignment, writ status, staff work schedule or identification.

27

8) When testimony is presented to the Adjustment Committee in the form of a written summary or statement, a copy of the written summary or statement shall be given to the accused individual in custody unless the Adjustment Committee finds that disclosure presents a threat to the safety of any person.

j) The individual in custody shall not have the right to either retained or appointed counsel. The individual in custody may request the assistance of a staff member in the preparation and presentation of his or her defense if he or she is illiterate, has a hearing impairment or does not speak English; or when other circumstances exist that preclude the individual from adequately preparing his or her defense.

k) The Adjustment Committee shall decide whether the individual in custody committed the offense based upon all relevant information and evidence.

1) The Adjustment Committee must be reasonably satisfied there is some evidence that the individual in custody committed the offense for the individual to be found guilty.
2) The Adjustment Committee may require that any part of the hearing process be recorded, including, but not limited to, a self-admission of guilt by the individual in custody.
3) Polygraph or voice stress analysis results may be considered but may not be the sole basis for finding the individual in custody guilty of the offense.

l) The Adjustment Committee shall take one of the following actions, based upon the evidence admitted:

1) Find that the individual in custody did not commit the offense. In that case, the Adjustment Committee shall order that the disciplinary report be dismissed and expunged from the individual in custody's record. A copy shall be maintained in an expungement file.
2) Find that further investigation is necessary to determine if the individual in custody did or did not commit the offense and place the individual in custody in investigative status.
3) Find that additional time is needed to obtain information relative to the charge. The hearing may be continued for a reasonable time. However, unless the individual in custody is placed in investigative status, the individual may not be confined for more than 14 days from the date of placement in temporary confinement.
4) Find that the individual in custody did commit the offense or a lesser offense for which the elements were included in the original charge. The Adjustment Committee may recommend one or more of the following disciplinary actions:

   A) Reprimand the individual in custody.
   B) Suspend or restrict one or more privileges of the individual in custody for a specific period of time.
   C) Reduce the individual in custody's grade or level.
   D) Change the individual in custody's program.
   E) Change the individual in custody's housing assignment or transfer the individual to another correctional facility.
   F) Revoke the individual in custody's statutory sentence creditor recommend an adjustment of provisionally awarded supplemental sentence credit.
   G) Increase the individual in custody's security classification.
   H) Place the individual in custody in restrictive housing. If the individual in custody has been diagnosed as seriously mentally ill, the Adjustment Committee shall consider the recommendation of the reviewing mental health professional for the term of restrictive housing, including no period of restrictive housing.
   I) Require the individual in custody to make restitution.
   J) Revoke the individual in custody from a transition center. If revocation is recommended, the Adjustment Committee may also recommend reduction in grade and placement in restrictive housing.
   K) Require forfeiture of items of contraband used in the offense or possessed in violation of this Part.

5) This Part shall in no way be construed to restrict or limit the Department's ability to administratively change an individual in custody's job, educational, program or housing assignment, to restrict privileges or to transfer the individual in custody to another facility.

m)   A written record shall be prepared and signed by all members of the Adjustment Committee that contains:

   1)   A summary of oral and written statements and other evidence presented.

      A)   The Adjustment Committee may consider information from confidential sources if:

         i)   It finds that his or her identity must be withheld for reasons of security; and
         ii)   The information is reliable.

      B)   Reliability may be established by one of the following:

         i)   The investigating officer has indicated, in writing and by his or her appearance before the Adjustment Committee, the truth of his or her report containing confidential information;
         ii)   Corroborating testimony such as statements from other sources or polygraph or voice stress analysis results; or
         iii)   A statement by a member of the Adjustment Committee or an oral or written statement to the Adjustment Committee by supervisory or administrative staff that the individual has firsthand knowledge of the sources of information and considers them reliable on the basis of their past record of reliability.

      C)   If the identity of a source is being withheld for reasons of security, a statement to that effect and a statement that the Adjustment Committee finds the information reliable must be included.  A summary of the information provided and the basis for the finding of reliability shall be documented but need not be included in the summary based on safety and security concerns.

   2)   If the Adjustment Committee members find that the individual in custody committed the offense, a statement as to their reasons for the finding.  If exonerating evidence is presented and disregarded, the Adjustment Committee must state the basis for disregarding the evidence.

   3)   The disposition of the charges, the disciplinary action recommended and the reasons for recommending the disciplinary action.

n)   If the safety or security of the facility or any person is jeopardized by certain references in the written record, they may be deleted but the fact that omissions have been made shall be noted on the summary, along with a finding that material is being deleted based on safety or security concerns.

o)   If the individual in custody is found guilty, the individual shall be informed of the opportunity to appeal through the grievance procedures in 20 Ill. Adm. Code 504.Subpart F.

p)   A copy of the disciplinary report, Adjustment Committee summary, and, if applicable, the mental health review, shall be forwarded to the Chief Administrative Officer for review and approval, and a copy shall be filed in the individual in custody's record.  The individual in custody shall be given a copy of the Adjustment Committee summary.

q)   The Chief Administrative Officer shall review all Adjustment Committee dispositions.  The Director shall review all Adjustment Committee dispositions in which it is recommended that the individual in custody lose statutory sentence creditor provisionally awarded supplemental sentence credit.

   1)   The Director, Deputy Director or Chief Administrative Officer may take the following actions:

      A)   Confirm the recommendation in whole or in part.
      B)   Order additional or new proceedings.
      C)   Suspend or overturn the recommendation.
      D)   Offer the individual in custody a work assignment that, if accepted and satisfactorily completed, will result in reduction of original disciplinary sanctions.

2)   The Director, Deputy Director or Chief Administrative Officer shall not increase the sanctions recommended by the Adjustment Committee, but he or she may reduce them.  The individual in custody shall be sent a copy of any modification to the Adjustment Committee recommendations.

**Section 504.90 New or Additional Proceedings**

a)     The Director, Deputy Director or Chief Administrative Officer shall remand the decision to the Adjustment Committee for new proceedings if the proceedings are found to be defective due to:

    1)     Inadequate notice, including failure to state the correct date of the offense on the disciplinary report or failure to provide the individual in custody with 24-hour notice of the hearing, unless notice was waived.

    2)     Lack of impartiality of the Adjustment Committee.

    3)     Improper exclusion of witnesses.

    4)     Failure to provide exonerating information to the individual in custody prior to the hearing.

b)     New or additional proceedings may be ordered in other circumstances, as determined by the Director, Deputy Director or Chief Administrative Officer.

    1)     The individual in custody shall be provided with notice of the rehearing within a reasonable time after the Chief Administrative Officer's decision or the facility's receipt of the decision.

    2)     The rehearing shall commence within 14 calendar days after the Chief Administrative Officer's decision or the facility's receipt of the decision, whenever possible.

    3)     The procedures on remand shall be conducted in accordance with the procedures governing the hearing on the original charge.

c)     The Director, Deputy Director or Chief Administrative Officer may remand the decision to the Adjustment Committee for additional documentation, correction or clarification of the Adjustment Committee summary, including the statement of reasons for excluding witnesses, the basis for the finding of guilt and imposition of sanctions, statement of reasons for deeming sources to be confidential or the failure to specify reasons for finding a confidential source to be reliable.

    1)     The individual in custody shall not have the right to a new hearing but shall be notified of the decision.

    2)     After the Adjustment Committee has amended its summary, it shall be forwarded to the Chief Administrative Officer and then to the Director in accordance with the procedures applicable to review of the original disposition.

d)     Upon remand, sanctions greater than those imposed at the original hearing shall not be permitted unless the individual in custody is charged with a different offense that provides for a greater penalty than provided for under the original charge or new evidence is produced that was not available at the original hearing and justifies the imposition of greater punishment.  However, this does not prohibit the individual in custody from being found guilty and disciplined on remand when the Adjustment Committee had erroneously dismissed the disciplinary report on procedural grounds.

**Section 504.100  Program Unit Hearing Procedures**

a)     The Program Unit hearing shall be convened, but need not be concluded, within 14 calendar days after the commission of the offense or its discovery, whenever possible, unless the individual in custody is unable to participate in the hearing.

b)     The individual in custody shall receive written notice of the facts and charges being presented against him or her prior to the hearing.

c)     Any person who initiated the allegations that serve as the basis for the disciplinary report, or who conducted a formal investigation into those allegations, or who witnessed the incident, or who is otherwise not impartial, shall not conduct a hearing on that report.

d)     The hearing may be continued to obtain additional information or upon the individual in custody's written request and for good cause shown.

e)     The individual in custody shall have the right to appear before and address the Program Unit Hearing Officer.

f)     The Program Unit Hearing Officer may call witnesses and review any information relevant to the charge.

g)     The individual in custody shall not have the right to retained or appointed counsel.  The individual in custody may request the assistance of a staff member in the preparation of his or her defense if the individual is illiterate, has a hearing impairment or does not speak English, or when other circumstances exist that preclude the individual from adequately preparing his or her defense.

h)    The Program Unit Hearing Officer may return a disciplinary report to the Chief Administrative Officer with a recommendation for a hearing before the Adjustment Committee.  The factors listed in Section 504.20(b) shall be considered when making this determination.

    1)    If approved by the Chief Administrative Officer, a hearing before the Adjustment Committee shall commence within 14 calendar days after the approval, whenever possible.

    2)    If not approved, the disciplinary report shall be referred back for a hearing before the Program Unit that shall commence within 14 calendar days after the decision not to approve the recommendation, whenever possible.

i)    The Program Unit Hearing Officer may recommend any of the actions authorized in Section 504.80(l), except that the Officer may not recommend placement in restrictive housing or confinement, revocation of sentence credit, revocation of transition center status, an increase in the individual in custody's security classification, or transfer to another correctional facility.

j)    A record shall be signed by the Hearing Officer that contains a summary of oral and written statements and other evidence presented, the decision and the disciplinary action recommended.

k)    The summary shall be processed in accordance with Sections 504.80 (p) and (q) and 504.90.

## Section 504.110  Computation of Discipline for Multiple Offenses

a)    When an individual in custody has been found in violation of more than one offense arising from a single incident, the maximum penalty shall not exceed the maximum penalty for the most serious offense the individual is found to have committed.

b)    When an individual in custody has been found in violation of more than one offense arising from separate incidents, the maximum penalty for each offense may be imposed, and such penalties shall run consecutively.  For example, an individual in custody who is found guilty of assaulting several persons within a short period of time has committed multiple offenses that would be punishable consecutively.

## Section 504.130 Demotion and Restoration in Grade

a)    Privileges shall be afforded to individual in custody assigned to correctional centers based upon their current grade, in the following manner:

    1)    Individual in custody in "A" grade shall be eligible to receive all institutional privileges.  Newly admitted individual in custody shall be placed in "A" grade.

    2)    Individual in custody in "B" grade shall be eligible to receive institutional privileges limited to medical, critical illness or funeral furlough; yard; limited commissary, not to exceed $30 per month; visits, excluding video visitation; and no more than two telephone calls per 30-day period.

    3)    Individual in custody in "C" grade shall be ineligible to receive institutional privileges, except yard, restricted commissary and visits, excluding video visitation; however, audio-visual privileges may be restored if directed by the treating mental health professional.  An individual in custody may only purchase from the commissary personal hygiene items and other items approved by the Chief Administrative Officer, based on the individual in custody's institutional status, once each 30-day period while in "C" grade.  The 30-day period shall commence on the date of placement into "C" grade.

b)    Grade reductions shall be effective on the date the Chief Administrative Officer renders a decision, unless otherwise specified.

c)    An individual in custody who has been demoted to "B" or "C" grade as a result of a disciplinary infraction shall be automatically promoted to the next highest grade at the expiration of the time period specified by the Adjustment Committee.

d)    An individual in custody who has been demoted to "C" grade and automatically placed in "B" grade after expiration of the time period specified by the Adjustment Committee shall be required to spend the same time period in "B" grade as in "C" grade.  Upon expiration of this time period, the individual in custody shall be restored to "A" grade.

e)    An individual in custody may petition the Adjustment Committee for restoration in grade based upon their good conduct and institutional record no more often than every 90 days.  The decision shall be provided to the individual in custody in writing and, if denied, shall provide the factual basis for the denial.

## Section 504.140 Restitution Procedures

a)    The Adjustment Committee or Program Unit may recommend that the individual in custody make

restitution in any amount not to exceed costs incurred or damages sustained by any person, entity, or state as a result of the disciplinary offense, including expenses for investigating the matter and processing the disciplinary report.  The Adjustment Committee or Program Unit shall document the amount and the conditions of payment.

b) If the Adjustment Committee or Program Unit determines that restitution is appropriate, it shall ask the individual in custody to authorize disbursement from his or her trust fund or from any other account.

1) If the individual in custody agrees to make restitution the individual shall sign an authorization for disbursement of funds either to the State or to the appropriate individual.

2) If the individual in custody refuses to authorize disbursement of his or her current funds or future earnings in accordance with the Adjustment Committee's or Program Unit's recommendation, the Adjustment Committee or Program Unit may recommend that a hold be placed on the individual's account for such amount, and may further recommend that the individual's commissary privileges, other expenditures, or State pay be suspended in whole or in part for a definite period of time.  However, the individual in custody shall be permitted to retain a sufficient amount of funds to purchase basic personal hygiene items if such items are not provided by the facility.

c) The Adjustment Committee or Program Unit may consider the individual in custody's willingness to make restitution in imposing any other disciplinary sanctions.

d) An individual in custody shall not be subjected to greater punishment because he or she is without funds and therefore unable to make restitution.

e) In the event an individual in custody is released prior to full payment of restitution, arrangements shall be made for payment of the balance of the authorized restitution.  If the individual in custody did not authorize restitution, all or a portion of the grant money provided for in 20 Ill. Adm. Code 502.320 may be suspended.

**Section 504.150 Restoration of Time and Credit**

Time and credit that has been revoked may be restored in accordance with 20 Ill. Adm. Code 01.07.427

SUBPART D:  RESTRICTIVE HOUSING AND CONFINEMENT

**Section 504.600 Applicability**

This Subpart applies to correctional facilities within the Department of Corrections.

**Section 504.602 Definitions**

"Chief Administrative Officer" means the highest ranking official of a correctional facility.
"Department" means the Department of Corrections.
"Director" means the Director of the Department.
"Individual in custody" means a person committed to the Department or to the custody of the Department.

**Section 504.605 Responsibilities**

a) Unless otherwise specified, the Director, Deputy Director or Chief Administrative Officer may delegate responsibilities stated in this Subpart to another person or persons or designate another person or persons to perform the duties specified.

b) No other individual may routinely perform duties whenever a Section in this Subpart specifically states the Director, Deputy Director or Chief Administrative Officer shall personally perform the duties.  However, the Director, Deputy Director or Chief Administrative Officer may designate another person or persons to perform the duties during periods of their temporary absence or in an emergency.

**Section 504.690 Administrative Detention**

Administrative detention is a non-disciplinary status of confinement that removes an individual in custody from general population or restricts the individual's access to general population.

a) The Chief Administrative Officer may, with the approval of the Director or Deputy Director, place an individual in custody in administrative detention for up to 90 days.

b) In determining whether to place an individual in custody in administrative detention, the Chief Administrative Officer may consider, among other matters:

1)    The seriousness of the offense;
2)    The safety and security of the facility or any person;
3)    The individual in custody's behavioral and disciplinary history;
4)    Reports and recommendations concerning the individual in custody;
5)    The interview and any submissions of relevant material and information;
6)    Institutional order; and
7)    Other legitimate penological interests.

c)    The Chief Administrative Officer shall review the record of each individual in custody in administrative detention every 90 days to determine whether continued placement is appropriate.
1)    The individual in custody need not be interviewed during these reviews.
2)    The Chief Administrative Officer shall document the decision in writing.

d)    Living conditions in administrative detention shall meet, at minimum, the standards set forth in Section 504.620.
e)    Telephone privileges shall be afforded in accordance with 20 Ill. Adm. Code 525.150.
f)    Recreation standards for administrative detention shall be determined by the Chief Administrative Officer and shall afford the opportunity for recreation outside the cell no less than amounts established for other statuses of confinement.

# RESTRICTIVE HOUSING, INVESTIGATIVE CONFINEMENT

## Section 504.610 Placement in Restrictive housing Status

a)    In accordance with this Part, individual in custody may be confined in designated areas on restrictive housing status.  Restrictive housing status includes:
1.    Temporary confinement pending a disciplinary hearing or investigation; or
2.    Disciplinary restrictive housing resulting from a disciplinary hearing.
3.    Administrative Detention
b)    Restrictive housing areas include the restrictive housing unit or any cell, living area or other area designated by the Chief Administrative Officer to house individual in custody who are in restrictive housing status.

## Restrictive Housing Policies:

All individual in custody are placed in tan jumpsuits.
Individual in custody in restrictive housing status may ONLY purchase hygiene and stationary items.
Visits are limited to seven (7) visits per month.
All visits in restrictive housing will be non-contact visits.
Audiovisual privileges are restricted by c grade only at the direction of the treating MHP.
Individuals in custody are permitted to shower three times a week per Department Rule 504D.
Phone calls are permitted to those individuals in custody in A and B grade only, one (1) time per month.

## Section 504.620 Restrictive housing Standards:

Standards for living conditions in restrictive housing areas shall include the following provisions:

A.    Double celling shall be permitted upon approval of the Chief Administrative Officer. Prior to assigning committed persons to a double cell, a review shall be conducted to determine whether there are reasons why the person should not be double celled. This is based on the individual in custody' aggressiveness and/or medical condition.
B.    Minimally, each cell shall be furnished with:
1.    A bed securely fastened to the cell for each committed person.
2.    Clean bedding, including a mattress, blanket, sheets, pillow and pillowcase for each committed person.
3.    A wash basin with running water and flushable toilet facilities (controls may be located outside the cell)
4.    Adequate lighting for reading and observation purposes.
C.    Restrictive housing cells shall be located at or above ground level and have heat and ventilation consistent with the climate.
D.    Each cell shall have a single door and a food passage. Any solid cell door shall have a vision panel or shall be designed to permit observation.

E.    The use of physical restraints to confine the committed person's movements within the cell shall generally be prohibited.
F.    Cleaning materials shall be made available on a regular basis.
G.    Personal health and hygiene needs of the committed person shall be permitted as follows:
      1.    A shower and shave no less than three times per week.
      2.    If the committed person is indigent, State issued toilet paper, soap, toothpaste and toothbrush for daily use, will be handed out one (1) time per month.
      3.    A weekly exchange of clean institutional clothes or availability of laundry services at least weekly.
      4.    False teeth, eyeglasses and other essential items of personal hygiene and health shall be permitted unless they are a threat to safety or security.
H.    Committed persons in restrictive housing status shall be permitted personal property as approved by the Chief Administrative Officer except for property prohibited by 20 Ill. Adm. Code 535.
I.    Persons in restrictive housing status shall receive nutritionally adequate food.
J.    Visits shall be permitted in accordance with 20 Ill. Adm. Code 525, Subpart A.
K.    Medical personnel shall visit the Restrictive housing Unit daily to screen requests for medical attention, and a physician shall visit the unit on a weekly basis.
L.    A chaplain designated by the Chief Administrative Officer shall visit the restrictive housing area once per week.
M.    A Counselor shall visit the restrictive housing area once per week.
N.    Continued involvement in programs may be permitted on an individual basis on approval of the Chief Administrative Officer.
O.    Committed persons shall be afforded the opportunity for exercise outside their cells in accordance with Section 504.670.
P.    Committed persons who are not in C grade shall be permitted to make one collect telephone call per month for a period of no more than 15 minutes.
Q.    Library services are provided on a weekly basis to individual in custody in restrictive housing in the following manner. Individual in custody may submit a written request on a library request form. Requests are filled from the available collection designation for restrictive housing. Individual in custody may have three (3) books at a time.
R.    Physical access to the general reading library or the Law Library is not provided to restrictive housing individual in custody. Library services are provided as described elsewhere in this manual.
S.    Any equipment, personal property, or material provided or allowed in the cell of a committed person in restrictive housing status, in accordance with this Subpart, may be removed or restricted as approved by the Chief Administrative Officer if the committed person destroys, damages, or abuses it in a manner that jeopardizes the safety of any person or the facility or disrupts institutional safety or order.
T.    Any equipment, personal property or material provided or allowed in the cell of an individual in custody in restrictive housing status, in accordance with this subpart, may be removed or restricted as approved by the Chief Administrative Officer if the individual in custody destroys, damages or abuses it in a manner that jeopardizes the safety of any person or the facility or disrupts institutional safety and order.

**Section 504.630 Investigative Confinement**

Individual in custody placed in confinement pending completion of an investigation shall be provided with the same conditions and services as those required for the restrictive housing area.

**Section 504.120 Reduction in Restrictive housing Placement**

a)    An individual in custody shall receive credit against the term of restrictive housing placement for time spent in temporary confinement or in investigative status.

b)    An individual in custody may petition the Adjustment Committee no more often than every 90 days to reduce the restrictive housing term based on his or her conduct while in restrictive housing.
c)    The Adjustment Committee may either recommend reduction of the original restrictive housing term imposed or deny the petition.
d)    The Adjustment Committee's recommendation shall be reviewed by the Chief Administrative Officer.
e)    The decision shall be provided to the individual in custody in writing and, if denied, shall provide the factual basis for the denial.

**Section 504.670 Recreation for Persons in Restrictive housing Status**

a)    The Chief Administrative Officer shall determine the number of hours per week individual in custody in restrictive housing status may recreate outside their cells. Individual in custody in restrictive housing status shall be afforded the opportunity to recreate outside their cells a minimum of eight hours per week

distributed in increments over no less than two days per week, unless otherwise specified by the settlement agreement approved in the case of *Rasho et al. v. Baldwin, et al*., Case No. 07-1298 in USDC CDIL, or unless otherwise restricted by the Chief Administrative Officer in accordance with this Section.

b) Unless medically contraindicated, out of cell recreation may be temporarily restricted or suspended if the Chief Administrative Officer determines the activity to be a threat to the safety and security of the facility or any person.  For example:
   1) Individual in custody who are in restrictive housing status and who are also under investigation may have their congregate recreational opportunities restricted during the pendency of the investigation for a period not to exceed 90 days.
   2) Individual in custody may have their recreation restricted or limited due to a medical or mental health condition as determined necessary by a health care professional.
   3) Individual in custody who have been witnesses in criminal cases against other individual in custody, who are informants, or who otherwise require precautions to ensure their protection may have their congregate recreational opportunities restricted.
   4) Individual in custody who are classified as escape risks may have their recreational opportunities restricted.
c) Individual in custody who are found guilty, under Subpart A, of:
   1) Committing assault, possessing dangerous contraband, escape or aiding or abetting, attempting, soliciting, or conspiring to commit any of those offenses while in restrictive housing status may be:
A) Restricted from congregate recreational opportunities for up to 90 days for the first offense and
B) Restricted from congregate recreational opportunities for 30 days or indefinitely placed on limited recreation or both for the second and subsequent offenses.
   2) Any other major rule infraction that is yard-related and was committed while the individual in custody was in restrictive housing status may be restricted from congregate recreation for up to 90 days for the first offense and up to 90 days for each subsequent major offense.
   3) A minor disciplinary offense that is yard-related and was committed while the individual in custody was in restrictive housing status may be restricted from congregate recreation for up to 15 days for the first offense and up to 30 days for each subsequent offense.
   d) Restrictions on recreational opportunities shall be documented, including the type, length of and reason for the restriction.  A copy of the documentation shall be maintained by the facility, a copy shall be placed in the individual in custody's master record file, and a copy shall be given to the individual in custody.
e) Whenever an individual in custody's congregate recreation is restricted for more than 90 consecutive days, the restriction and any health concerns must be personally reviewed and approved in writing by an Assistant Chief Administrative Officer or above.
f) Individual in custody whose recreational opportunities have been restricted or limited may grieve the determination in accordance with subpart F.
g) Recreational opportunities shall not be required during institutional lockdowns or during institutional emergencies, including, but not limited to, riots, strikes, fires, work stoppages, power outages and natural disasters.

## Section 504.680 Release from Disciplinary Restrictive Housing

The Department shall make every attempt to ensure individual in custody are not released directly to the community from disciplinary restrictive housing status.  In the event such a release is imminent, within 180 days prior to release:
   a) The Deputy Director shall determine if the individual in custody may transition through a less secure placement option or if continued placement in disciplinary restrictive housing status is appropriate.
   b) If the Deputy Director determines continued placement in disciplinary restrictive housing status is appropriate, a transition and stabilization plan shall be developed and appropriate programming, based on safety and security concerns, shall be provided.


## North II Restrictive housing Law Library Service:

Individual in custody residing in North II Restrictive housing will receive access to the Law Library according to the following policies:
A. Individual in custody law clerks tour the North II Restrictive housing Unit on a regular basis every Monday (except for holidays, then on Tuesdays). The law clerk's primary responsibility is to provide access to legal materials. The law clerk will also answer basic questions about legal remedies.
B. Individual in custody must purchase their writing supplies from the commissary. Indigent individual in custody will receive monthly indigent stationary supplies via institutional mail.
C. Notary and photocopy service will be provided by civilian library staff. Requests for these services should be

submitted in writing on a legal request form to the individual in custody law clerk, or requests may be sent through institutional mail to the Law Library. **ALL REQUESTS FOR LIBRARY SERVICES MUST INCLUDE INDIVIDUAL IN CUSTODY'S NAME, I.D. NUMBER, CELLHOUSE AND CELL LOCATION**.

D.     Main (general) library services are being provided to the North II individual in custody. An individual in custody library clerk will tour the galleries with general library material.

**Loaned Materials Policy:**

For those individuals in custody without direct access to the Law Library, copies of case law and limited research materials may be loaned. Individual in custody without a deadline **may** borrow no more than five (5) cases at a time. Those with a valid deadline may borrow up to ten (10).  If materials are returned within 30 days in serviceable condition, the individual in custody will not be charged. If materials are not returned, the individual in custody will be charged for the material; disciplinary action may result in such refusals and future loans may be denied.

**APPROVED PERSONAL PROPERTY AND LIMITATION FOR INDIVIDUAL IN CUSTODY IN DISCIPLINARY RESTRICTIVE HOUSING:**

**NOTE**:  Personal property storage boxes and correspondence storage boxes are placed in storage while individual in custody are in disciplinary status.

CLOTHING:
- Boots – pair black no steel toe or reinforced toe, no metal support, no heavy, thick soled, military style, or Timberland style boots or any boot deemed a security risk (1)
- Briefs/boxers – 3 (white only)
- Gym shoes – 1 pair (white)
- Insoles – 2
- Jumpsuit – 1 (brown)
- Pillowcase
- Shower shoes – slip on (white, brown, orange) (1)
- Skull cap or ball cap – 1 (navy)
- Socks – 6 pair (solid white)
- Thermal bottom – 1 (white)
- Thermal top – 1 (white)
- Towel – 2 (white)
- T-shirts – 3 (solid white)
- Washcloths – 2 (white only)

MISCELLANEOUS:
- Bed – 1 per person (state issued)
- Blanket – 1 per person (state issued)
- Calendar – 1
- Commissary price list – 1 (state issued)
- Desk – 1 (state issued)
- Laundry bag, small mesh, no string – 2 per person (state issued)
- Mattress – 1 per person (state issued)
- Playing cards/pinochle – 1 deck each
- Rule book – 1 (state issued)
- Sheets – 2 per person (state issued)

PAPER PRODUCTS:
- Address book, pocket size – 1
- Dictionary (paperback) – English/Spanish or combination
- Filler notebook paper – 200 CT – 8½" x 11", standard rule
- Flex pen – no longer than 4"/clear flexible (3)
- Greeting cards – with postage (5)
- Large clasp envelopes – 9" x 12" – 2
- Legal pads – 8½" x 11" – 3 (yellow only)
- Photo album, w/plastic/no metal – 8½" x 11" – 1
- Pre-stamped envelopes (20)
- Pre-stamped post cards (10)
- Envelopes (blank envelopes) (20)

PERSONAL CARE:
- Acne treatment – 1 ounce tube (2)
- Baby powder – individual packets only less than 2oz (2)
- Bar soap – 4 (state issued)
- Chap Stick – 2
- Conditioners – 4oz bottle (2) or individual packets (15)
- Cough drops – 2
- Denture cleanser products – 2 boxes as needed
- Denture grip/adhesive – 1 package as needed
- Deodorant or deodorant/antiperspirant – 2 units/6 oz. or less (push up or roll on)
- Eye drops – 2 bottles

False teeth – as needed
Foot powder – individual packets only (no larger than 2 oz.) - 2
Hair comb or Afro comb – 1 no longer than 4" in length
Hair grease and styling gel products – non-alcohol – 1 unit
Hair pick – plastic only with no handle/made of flexible plastic – 1
Hairbrush – military brush – 1 (commissary approved)
Lotions, skin care products – non-alcohol/clear plastic bottle/6 oz. or less – 2 units
Mouthwash – non-alcohol – 2 bottles (6-ounce clear plastic bottles)
Prescription eyeglasses – per doctor's order – 1 pair (no metal frames)
Q-Tips/cotton swabs – 1 (small container/box)
Shampoo – 4oz bottle (2) or individual packets (30)
Toilet paper – 1 (state issued)
Toothbrush (3" or less length) – 1 (replacement by request) (state issued)
Toothpaste – 2 (state issued)
Tylenol or other pain relievers/non-aspirin- bottle – 24 ct. or less (1)
Vitamins – multi vitamin/Centrex Plus – bottle-100 ct. or less (1)

READING/LEGAL MATERIALS:
Publications – combined total of (25)
 Legal materials – as needed

RELIGIOUS MATERIALS:
(All religious items are subject to safety and security of the individual and the institution)
Religious symbols (medal or medallion not to exceed 2" diameter and chain not to exceed 24 inches in length and combined value of medallion and chain shall not exceed $50.00.  To be worn under clothing) -1
Prayer rug (only if essential part of religious faith)- 1
Kufi (1)
Tallit or Prayer shawl (only if essential part of religious faith) -1
Tzitzit or fringed garment (only if essential part of religious faith, only to be worn under clothing, and not to be worn as jewelry) - 2
Phylacteries or Tefillin (only to be worn in cell or Chapel and only if essential part of religious faith)-1
Rosary beads or prayer beads (solid black, brown, or white and not to be worn as jewelry and only if essential as a part of Religious faith)- 2
Religious headgear: yarmulke or kufi (black, brown, or white and only to be worn in cell or Chapel and only if essential part of religious faith)- 1
Fezzes (maroon and only to be worn in cell or Chapel and only if essential part of religious faith) – 1

ELECTRONICS:
AM/FM Radio/Cassette Player w/cord-single deck, no recording devices, no detachable speakers, clear (permit item) – 1
Batteries (watch
Coax Cable – 1 (not to exceed 6')
Ear buds – pair (1)
Fan- clear and no larger than 10" (with permit) – 1 Per DAO approval
Television –clear no larger than 15" (with permit)-1
Watch - (Department approved) -1

1.      An individual in custody placed in Restrictive housing shall be denied the privilege of possessing all Audiovisual equipment until he is released from restrictive housing or has his privileges restored in accordance with 20 Ill. Dm. Code 504.  His items will be returned when he signs a receipt for them.

2.      Any individual in custody in Restrictive housing for more than 60 consecutive days on the same rule infraction may submit a written request to the Unit Supervisor for restoration of his audiovisual privileges. The request shall be considered only if the individual has had no disciplinary infractions in the 60 days period prior to the submission of his request.

3.      Any individual in custody in Restrictive housing who has had audiovisual privileges restored may lose them again for a subsequent disciplinary infraction.

4.      Any individual in custody who is placed in confinement pending investigation or disposition of a disciplinary infraction or who is confined for non-disciplinary reasons shall be allowed the same audiovisual privileges he had prior to being placed on such status.

5.      When audiovisual equipment is confiscated or returned, an audiovisual equipment inventory form shall be given to the owner and a copy placed in his master record file. If the individual in custody does not have the proper permit, disciplinary action may be taken.

E.      **APPROVED PERSONAL PROPERTY AND LIMITATIONS FOR ELEVATED SECURITY STATUS INDIVIDUAL IN CUSTODY:**

CLOTHING:
Shower Shoes – slip on (white, brown, orange) (1)
Briefs/boxers – 1 (white)
Socks – 1 pair (solid white)
Thermal bottom – 1 (white)
Thermal top – 1 (white)
T-Shirt – 1 (solid white)
Bath Towels – 2 (white)

Washcloths – 2 (white)

MISCELLANEOUS:
Bed – 1 per person (state issued)
Blanket – 1 per person (state issued)
Desk – 1 (state issued)
Laundry bag, small mesh, no string – 2 per person (state issued)
Mattress – 1 per person (state issued)
Sheets – 2 per person (state issued)

PAPER PRODUCTS:
Address book, pocket size – 1
Filler notebook paper – 200 CT – 8½" x 11", standard rule
Flex pen – no longer than 4"/clear flexible (2)
Greeting cards – with postage (5)
Legal pads – 8½" x 11" – 3 (yellow only) (3)
Pre-stamped envelopes (20)
Envelopes (Legal Size) (10)

PERSONAL CARE:
Hotel soap – 12
Cough drops – 2
Deodorant (Fresh Scent) (2)
Q-Tips/cotton swabs – (1)
Shampoo/Body Wash Packets (10)
Toilet paper – 1 (state issued)
Toothbrush (3" or less length) – 1 (replacement by request) (state issued)
Toothpaste – 3 (travel size)

READING/LEGAL MATERIALS:
Publications – combined total of (25)
Legal materials – as needed
Notebook
Typing Paper

RELIGIOUS MATERIALS:
Religious symbol (medal or medallion not to exceed 2" diameter) – (1)
Prayer rug – 1
Rosary beads (solid black, brown or white) – 2

ELECTRONICS:
Fan- clear and no larger than 10" (with permit) – 1 Per DAO approval

JEWELRY:
Watch – 1 clear/standard (department approved)
Wedding Band – 1 (no stones, etching, engraving or markings/single tone only)

## Tablets in Restrictive Housing

In Accordance with Administrative Directive 05.15.100, Individuals in Custody that are assigned to Extended Restrictive Housing, may earn their tablet privileges. Currently, all Individual's in Custody can request their audio/visual, televisions, after 60 days, if the Individual in Custody has not received a DOC 0317 Disciplinary Report in that time frame. Individuals may request their tablet 90 days without a DOC 0317. Shakedowns are conducted weekly on Restrictive Housing Individuals and if the tablet is found in another Individual in Custody's cell, it is removed, and the Individual in Custody will have to resubmit in 90 days from the incident. Every incident where the Individual in Custody's tablet has been found in another's cell, the submission increases by 30 days. First offense 90 days, second 120 days, etc. Upon receiving said tablet, the officer shall document when it was received in the comments section of the DOC 0586 Administrative Detention/Restrictive Housing Privilege/Tour Log.

## Grievance Procedure Summary:

Original grievances should be filed within 60 days after the discovery of the incident.  Allegations of sexual abuse have no time limitation. Complete an Individual in custody's Grievance (DOC 0046) for all grievances other than protective custody denials.  Grievances concerning protective custody denials shall be documented on the Protective Custody Status, DOC 0054 - These do not come to the Grievance Office.


# NOTE: Individuals in custody are encouraged to place ONE issue or concern on each grievance form.

Grievance forms are available in all housing units upon request.

***Place grievances in the locked GRIEVANCE box in your assigned cell house. During lockdown or in a restricted movement housing unit, place your grievance directly in the handheld locked portable grievance box.  Grievances should be respectful, legible, and to the point for quicker response times. Do not submit duplicates or requests. Insolent and illegible grievances will be returned to individual in custody to be rewritten. You will be sent a CHAMP receipt once the grievance is received at each level of review. If you do not receive your CHAMP "receipt", you may contact your counselor to inquire on your behalf or write a note directly to the Grievance Office.

**Counselor** will address all issues except: issues involving discipline and alleged incidents of sexual abuse, and ARB issues. If the individual in custody wishes to appeal the Counselor's response, he or she must forward the <u>original</u> DOC 0046 <u>that includes the Counselor's response along with any attachments or memos for the response to the Grievance Officer. This may include memos from other departments or the DOC 0743p (Follow-up individual in custody counselor response).</u>

**Grievance Officer** will review issues involving discipline at the present facility, grievances deemed an Emergency by the CAO, grievances deemed ADA by the ADA Coordinator, grievances alleging sexual abuse or issues that have not been resolved by the Counselor. If you wish to appeal the Grievance Officer's review, you may mail your copy of the grievance response (with attachments) that have been signed by the CAO to the ARB.

Mail to the **Administrative Review Board** (ARB) for issues involving involuntary administration of psychotropic medications; protective custody; issues from another facility other than for personal property or medical issues (submit at present facility); or to appeal facility decisions (send copy signed by CAO with all attachments).

**ADA** - Individuals in custody may submit grievances regarding alleged <u>discrimination</u> based on disability or <u>denied requests for accommodation to access programs, activities, or services based on disability</u>. Individuals in custody should first follow procedure and write to the facility ADA Coordinator or Assistant ADA Coordinator with their ADA concerns prior to authoring a grievance. Review the ADA section of the Orientation Manual for directions to submit "Requests for ADA Accommodation".

**HIPPA** - Individuals in custody may submit grievances identified as a Health Insurance Portability and Accountability Act (HIPAA) which are issue involving the privacy of medical records, access to medical records, restriction of medical records, or an error in medical records.

## SUBPART F:  GRIEVANCE PROCEDURES FOR INDIVIDUAL IN CUSTODY

### Section 504.800 Applicability
This Subpart applies to individual in custody assigned to correctional facilities within the Department of Corrections.

### Section 504.802 Definitions
"Chief Administrative Officer" means the highest ranking official of a correctional facility.
"Department" means the Department of Corrections.
"Director" means the Director of the Department.
"Facility ADA Coordinator" means the person or persons designated by the Chief Administrative Officer to coordinate efforts of the facility in carrying out its responsibilities under Title II of the Americans with Disabilities Act of 1990 (42 USC 12101 et seq.).
"Individual in custody" means a person committed to the Department or to the custody of the Department.

### Section 504.805 Responsibilities
a)   Unless otherwise specified, the Director or Chief Administrative Officer may delegate responsibilities stated in this Subpart to another person or persons or designate another person or persons to perform the duties specified.
b)   No other individual may routinely perform duties whenever a Section in this Subpart specifically states the Director or Chief Administrative Officer shall personally perform the duties.  However, the Director or Chief Administrative Officer may designate another person or persons to perform the duties during periods of his or her temporary absence or in an emergency.

### Section 504.810 Filing of Grievances
a)   An individual in custody may file a written grievance on a grievance form that shall be made available in all living units.  Grievances shall be addressed to his or her institutional counselor; however, complaints concerning discipline or sexual abuse shall be sent by the individual in custody directly to the Grievance Officer.  A grievance must be filed with the counselor or Grievance Officer in accordance with the

       procedures in this Subpart, within 60 days after the discovery of the incident, occurrence or problem that gives rise to the grievance.  However, if an individual in custody can demonstrate that a grievance was not timely filed for good cause, the grievance shall be considered.  Grievances related to allegations of sexual abuse shall not be subject to any filing time limit.

b)     The grievance procedure shall not be utilized for complaints regarding decisions that have been rendered by the Director, such as, but not limited to, facility placement, awards of supplemental sentence credit or transfer denials, or decisions that are outside the authority of the Department, such as parole decisions, clemency or orders regarding length of sentence.

c)     The original grievance form shall be deposited in the living unit mailbox or other designated repository. The grievance shall contain factual details regarding each aspect of the individual in custody's complaint, including what happened, when, where and the name of each person who is the subject of or who is otherwise involved in the complaint.  This provision does not preclude an individual in custody from filing a grievance when the names of individuals are not known, but the individual in custody must include as much descriptive information about the individual as possible.

d)     Staff assistance shall be available as requested by those individuals in custody who cannot prepare their grievances unaided as determined by institutional staff.

    1)    All individual in custody shall be entitled to file grievances regardless of their disciplinary status or classification.

    2)    Each facility shall take reasonable steps to ensure that the grievance procedure is accessible to individual in custody who are impaired, disabled or unable to communicate in the English language.

    3)    If staff assistance writing the grievance form is provided, the name of the individual providing the assistance shall be documented on the form.

e)     Individual in custody shall be informed of the grievance procedure at the admitting facility and may request further information regarding the procedure from their counselors.

    1)    The written procedure shall be available to all individual in custody.

    2)    An individual in custody unable to speak or read the English language may request that the procedure be explained in the individual's own language.

## Section 504.820 Grievance Officer

a)     The Chief Administrative Officer shall appoint two or more employees who may serve as a Grievance Officer to attempt to resolve problems, complaints and grievances that individual in custody have been unable to resolve through routine channels.

b)     No person who is directly involved in the subject matter of the grievance or who was a member of the Adjustment Committee that heard a disciplinary report concerning the grievance may serve as the Grievance Officer reviewing that particular case.

## Section 504.830 Grievance Procedures

a)     Grievances shall be reviewed and a written response provided to the individual in custody.  Grievances on issues that are deemed without merit may be returned as denied to the sender without further investigation.  No merit grievances include grievances that:

    1)    Have previously been addressed for which there is no additional information;

    2)    On issues that do not involve or affect the individual in custody;

    3)    Are not filed timely, and for which good cause justification for the delay is not provided; or

    4)  Are decisions previously rendered by the Director

b)    Grievances alleging discrimination based on disability or a request for an accommodation based upon disability shall be forwarded to the facility ADA Coordinator.  If deemed an ADA issue, the facility ADA Coordinator shall conduct the investigation as deemed appropriate and make written recommendations to the Chief Administrative Officer for resolution of the grievance.

c)     Grievances identified as a Health Insurance Portability and Accountability Act (HIPAA) issue involving the privacy of medical records, access to medical records, restriction of medical records, or an error in medical records shall be forwarded to the facility Privacy Officer.  The facility Privacy Officer shall conduct an investigation and make written recommendations to the Chief Administrative Officer for resolution of the grievance.

d)     An individual in custody may be afforded an opportunity to appear before the Grievance Officer unless the grievance is deemed without merit. The Grievance Officer may call witnesses as deemed appropriate.

e)     The Grievance Officer shall consider the grievance and report his or her findings and recommendations in

writing to the Chief Administrative Officer within two months after receipt of the written grievance, when reasonably feasible under the circumstances. The Chief Administrative Officer shall review the findings and recommendation and advise the individual in custody of his or her decision in writing. Responses to duplicate grievances on issues that are currently being grieved may be combined in one response.

**Section 504.840 Emergency Procedures**

An individual in custody may request a grievance be handled on an emergency basis by forwarding the grievance directly to the Chief Administrative Officer.

a)  If there is a substantial risk of imminent personal injury or other serious or irreparable harm to the individual in custody, the grievance shall be handled on an emergency basis.

b)  If the Chief Administrative Officer determines that the grievance shall be handled on an emergency basis, he or she shall expedite processing of the grievance and respond to the individual in custody, indicating what action shall be or has been taken.

c)  If the Chief Administrative Officer determines that the grievance should not be handled on an emergency basis, the individual in custody shall be notified in writing that he or she may resubmit the grievance as non-emergent, in accordance with the standard grievance process.

**Section 504.850 Appeals**

a)  If, after receiving the response of the Chief Administrative Officer, the individual in custody still believes that the problem, complaint or grievance has not been resolved to his or her satisfaction, he or she may appeal in writing to the Director. The appeal must be received by the Administrative Review Board within 30 days after the date of the decision. Copies of the Grievance Officer's report and the Chief Administrative Officer's decision should be attached.

b)  An Administrative Review Board shall be appointed by the Director.

c)  The Administrative Review Board shall meet as frequently as necessary and may schedule hearings on grievances. Hearings may be conducted in person or via video or telephonic conference. The Board may call witnesses or examine records at its discretion.

d)  The Administrative Review Board shall submit to the Director a written report of its findings and recommendations.

e)  The Director shall review the findings and recommendations of the Board and make a final determination of the grievance within six months after receipt of the appealed grievance, when reasonably feasible under the circumstances. The individual in custody shall be sent a copy of the Director's decision.

f)  In those instances, in which an individual in custody is appealing a grievance determined by the Chief Administrative Officer to be of an emergency nature, the Administrative Review Board shall expedite processing of the grievance.

**Section 504.860 Records**

**Records regarding the filing and disposition of grievances shall be maintained in the individual in custody's master file.**

**Section 504.870 Direct Review by Administrative Review Board**

a)  Individual in custody shall submit grievances directly to the Administrative Review Board when grieving:

1)  Decisions regarding protective custody placement, including continued placement in or release from protective custody.

2)  Decisions regarding the involuntary administration of psychotropic medication.

3)  Decisions regarding disciplinary proceedings that were made at a facility other than the facility where the individual in custody is currently assigned.

4)  Other issues that pertain to a facility other than the facility where the individual in custody is currently assigned, excluding personal property and medical issues.

c)  The Administrative Review Board shall review and process the grievance in accordance with Section 504.850.

# Rights & Privileges (DR 525)

## <u>Visiting Procedures and Rules:</u>

It is the individual in custody's responsibility to submit a visiting list to his assigned Correctional Counselor. Once the visiting list is approved, a copy will be returned to the individual in custody. It is then the individual in custody's responsibility to inform those individuals on his list that they are approved to visit. Any person who appears on an

individual in custody's visiting list that may be considered a victim of that individual in custody, may be denied approval to visit.

All visits are subject to monitoring and video recording unless prior approval is given for confidential attorney or other privileged visits.
.
*All visitors are subject to search of their vehicle, physical search of their person, and are required to clear search with a medical detector or other contraband detection equipment. Contraband includes alcohol, cannabis, controlled substances, hypodermic syringes or needles, weapons, knives, explosives, guns (loaded or unloaded), hacksaw blade and key and lock picking devices. Illinois Law provides that it is a felony to attempt to bring contraband into a correctional facility.  Anyone attempting to bring in contraband on facility grounds will be subject to prosecution.*

All visitors must be scheduled and on the approved list in order to visit. Visitors *17 years* of age and *below* are permitted only when approved and accompanied by a parent or guardian who is an approved visitor. All children *17 years* of age and *under* must always be escorted and under direct supervision by a parent or guardian. No minor child may be left alone in a vehicle unsupervised. Visitors should receive a confirmation call the day of the appointment, please notify the institution in advance of any cancelations or delays.

## PARKING:
Parking is permitted only in the South Parking Lot designated for visitor parking and is numbered appropriately. Handicapped Parking is available at the front of the Gatehouse. All vehicles must have all windows rolled up and all doors secured. Visitors must call the institution at x2900 to check in upon arrival.

## REQUIRED IDENTIFICATION:
All visitors (including legal visitors) *18 years* of age and *older* are required to present two forms of identification. Forms of identification shall be a valid photo ID, such as driver's license, state ID, military ID, or acceptable documentation of non-US citizen including a current passport, Visa or Matricula, and documentation that includes birthdate. Both forms of identification are required to have the same matching address as applicable.

**Acceptable forms of Identification:** (No club cards, banking cards, mail, or paycheck stubs)

| | |
|---|---|
| • Driver's license (Photo) | State ID card (Photo) |
| • Social Security Card | Passport/Visa (Photo) |
| • FOID card (Photo) | Concealed Carry Card (Photo) |
| • Birth Certificate | Marriage License |
| • Health Ins/Medicaid/ Medicare Card | Vehicle Insurance Card |
| • Vehicle Registration | Matricula (Green Card) |
| • Voter's Registration | Military ID (Photo) |
| • Work ID (Photo) | |

## VISITOR'S REGISTRATION LOG:
All visitors entering the facility (with the exception of minors) shall sign in upon entry including name, time in, **vehicle license plate number**, home address, race, birthdate, and the name and registration number of the Individual in Custody receiving the visit. When departing the institution visitors will be required to log signature and time out.

## LOCKERS:
Visitors must rent lockers where they are required to secure keys and ID/documentation. Purses, watches, cellular phones, diaper bags are not permitted inside and must be secured in personal vehicle. The cost of the locker is .50 cents. (quarters only). There is a change machine in the Gatehouse that accepts only one-dollar bills. It is recommended to bring extra quarters in the event of a locker malfunction or visitor forgetting to secure personal items. The locker key is the responsibility of the visitor and is to be kept by the visitor until they have signed out.

## VENDING:
Visitors *18 years* of age or *older*, may bring in/purchase one vendor debit card.  The card may be purchased in the Gatehouse with **only** a $5 bill. Visitors should then only add the amount of money to the debit card that is anticipated to spend for each visit not to exceed $50. All other property (including ID and vehicle keys) must be secured inside of the locker. No chewing gum, candy, etc. may be taken in by the visitor. All snack items bought in the visiting room must be consumed during the visit.

## CLOTHING:

Appropriate clothing for all visits must be worn or the visit will not be permitted. Clothing which is revealing or too form fitting in nature is not allowed. Clothing must be in good taste and not advertise nor suggest any product that is illegal. Inappropriate or revealing dress attire for visitors includes but is not limited to the following:

- Shorts, shirts, dresses or skirts **(must be knee length)**
- No "See-through", sheer, low-cut blouses, tank tops, and/or sleeveless blouses
- No Yoga pants, jeggings, or form fitting pants
- No low-rise jeans or shorter shirts (waist no bra is to be exposed- including when raising arms)
- No clothing with tears or holes above the knees showing skin
- No garments displaying obscenities, gang-relate comments/insignias, sexual material, or depictions of drug use (i.e., marijuana leaf, "queen", crowns)
- No bib-overall type outfit or any excessive metal on jackets, etc.
- No easily removable hair accessories: i.e., clips, bobby pins, headbands, bandanas, scarfs
- No hats, sunglasses, gloves, scarves, shawls, and/or poncho type tops
- **No shoes with open toes. (flip flops, slides, or house shoes) No shoes with heels less than 1 ½ inches in width or heels taller than 2 inches**

**JEWELRY:**
Visitors will be allowed to wear one ring, one pair of matching earrings (1" diameter or less- size of a quarter), and one necklace not to exceed 18". No watches, lockets, wrist, or ankle bracelets. No jewelry with writing (names, initials, or words), pictures, unknown, heavy, or that could be considered intimidating to any person such as replicas of guns, knives, ammunition, and/or drug paraphernalia. All piercings must be removed with the exception of surgically implanted piercings. **Surgically implanted piercings/permanent piercings (dermals) must be approved/disapproved *in writing* at the discretion of the Duty Administrative Officer.**

## Visitors:

- Prospective visitors who have been convicted of a felony, have criminal charges pending, or are currently on parole or probation may visit only with prior written approval of the Warden. Previously incarcerated individual in custody that have been denied a visit are not permitted to remain on State property.
- All individuals from birth to 99 years old must be on the approved list in order to visit. Visitors may only visit once per day; this includes in person and video visits. Attorney and Chaplain visits are to be excluded from this limit.
- Visitors who appear to be under the influence of drugs or alcohol are prohibited from visiting any individual in custody.
- Visitors are required to fill out a Prospective Visitor Interview Form online at signupgenius prior to visiting. All questions must be answered completely and truthfully. If it is determined that any information provided is false, visitor will be denied entry to the facility and are subject to permanent visitor restriction from all Illinois Department of Corrections facilities.

## Video Visits:

- Visiting Hours for Video Visits in General Division are Monday-Sunday 8:30 a.m.-5:20 p.m. (last visit ending at 5:20 p.m.). General Division Video Visits are done in the NORTH 2 Non-Contact Visiting Room and are subject to the rules and regulations of a restrictive housing visiting room. Video Visits are also available in the Health Care Unit 3rd floor.
- MSU Hours are 8:30 a.m.-6:20 p.m. (last visit ending at 6:20 p.m.) every day. MSU Video Visits are done in their visiting room and on each cell wing.
- All Videos are recorded and monitored by an officer. The visitor will check in via this officer to start the video visit.
- Visitors must check in for video visit prior to start of visit up to 15 mins in advance and must present 2 forms of ID. One must be a photo ID. If Minors are included, they will be identified by name.
- Only individual in custody in A and B grade will be allowed to video visit.
- Individual in custody may receive one (1) video visit per day (**no more than (3) approved visitors per video visit.)**
- Individual in custody may receive two (2) video visits per week if slots are available
- Visitors may schedule one (1) video visit per day and must be scheduled at least seven (7) days in advance or up to thirty (30) days in advance.
- Video Visits will not count towards each individual in Custody's number of allowed in-person visits per month.
- ONLY scheduled visitors may appear in the video visit (if more than one registered, only one visitor is able to appear on screen at a time, excluding children who need assistance sitting for the visit)
- Family Members must register at ILDOC.GTLVISITME.COM and provide a valid email address. They will get approved by the Visitation Coordinator before visits can be scheduled via that email address.

- The phone number for TECHNICAL SUPPORT IS 855-208-7349
- Any visitor with felonies/criminal history will need to write AWO to be approved to video visit.
- All Video Visitors **including minors** must be on Individual in custody Visiting List and approved.
- Video Visits are 20mins for $3.25 and paid for by the Visitor.
- Visitors are responsible for reading and agreeing to IDOC visitation rules prior to scheduling a visit.
- Visitation Coordinator is not responsible for Scheduling Visits for the Individual in custody, only the call pass.
- The visitor will select the time and date of the video visit and must work it out with the individual in custody. Call passes are entered for the individual in custody based on the visitors scheduled date and time.

## Video Visit Guidelines:

- The video visitor is required to be dressed appropriately in attire approved for in-person visits.
- No Smoking
- No nudity or breastfeeding
- Clothing cannot be changed or removed after the start of the Video Visit
- No behavior or actions that are of sexual nature
- Any use or display of weapons, drugs or alcohol, or related paraphernalia is strictly prohibited
- Unlawful activity or deception of unlawful activity is prohibited
- No recording or filming of the Video Visit by any third party or visitor participant
- Activity or display or graphics/paraphernalia associated with any security threat group is strictly prohibited
- Visitors must always remain seated during the Video Visit
- Any inappropriate behaviors displayed will result in immediate termination of the video visit
- **Any violation of the Video Visit regulations will result in not only termination of that visit but both in-person and Video Visit privileges will be suspended**

## Visiting Limitation:

**General Population Individual in custody/Protective Custody Individual in custody**- Contact Visiting Hours: 8:00am-12:00pm and 12:00pm-4:00pm. Individuals in custody are allowed one visit per day; this includes in person and video visits. Extended visits can be two back-to-back time slots for a total of 6 hours and must be pre-approved.

Contact Visits: Individuals in custody not under visit restriction are allowed seven (7) visits per month. No more than three (3) visitors per visit. This number includes children.

Non-Contact Visits: Level "E"/Administrative Detention individual in custody are allowed seven (7) visits per month. Visiting Hours: 8:00 a.m.- 2:00 p.m. daily. Visits are a maximum of two (2) hours and maximum of two (2) visitors.

## Restrictive housing Individual in custody/Non-Contact Visits:

Visiting hours are 8:00 a.m.-2:00 p.m. daily. Visits are a maximum of one (1) hour for restrictive housing and a maximum of two (2) visitors.

Individual in custody under visit restriction are allowed seven (7) visits per month. No more than two (2) adult visitors may visit simultaneously.

## Non-Contact Visits

1.    Visits shall be restricted to non-contact for individual in custody:
       a.    In restrictive housing;
       b.    Designated as extremely high escape risks;
       c.     Determined by the Chief Administrative Officer to be a threat to safety, security or order.
2.    Visits shall be restricted to non-contact for a minimum of six months for individual in custody:
       a.    Found in possession of illegal drugs;
       b.    Who have failed a drug test;
       c.    Involved in gang activities;
       d.    Found guilty of assaulting a Department employee; or
       e.    Determined by the Chief Administrative Officer to be a threat to safety, security or order.

## Medium Security Unit:

Visiting hours are 8:00 a.m-12:00pm and 12:00pm-4:00pm daily. Individuals in custody are allowed seven (7) visits per

month. Three (3) adult visitors may visit simultaneously. This number includes children.

## General Rules:
**Visiting privileges may be suspended or restricted for security and safety requirements, space availability, disruptive conduct, abuse of visiting privileges, violation of Departmental Rules and state or federal laws by the individual in custody and/or visitor.**

**Returning to the Electric Eye prior to the end of <u>their</u> visit may result in the termination of your visit.**

All children 17 years of age and under must be escorted and under direct supervision by a parent or guardian at all times.

Smoking is not permitted in any visiting room or waiting room.  Visitors and individual in custody are not allowed to be in possession of tobacco items in the Visiting Room.

Contact Visits:  Visitors and Individual in custody are allowed to have a brief embrace upon entering and exiting the visiting room.  Open mouth kissing is prohibited.  Visitors and Individual in custody are required to sit in an upright position.  This means feet flat on the floor and hands above the table.  While seated at the table, the individual in custody and visitor may hold hands above the table.  Intentional contact to the breasts or genitals is prohibited.  Any acts of sexual misconduct are not permitted and will result in the immediate termination of the visit and may result in a temporary or permanent restriction of visiting privileges.  Visitors are not allowed to exchange any item with an individual in custody or take any items from an individual in custody without the approval of the C.A.O. or Duty Warden.  Once in the visiting room; visitors will be subject to a standard pat search before and after using the restroom.  One adult visitor must accompany children, as children will also be searched after using the restroom.  Individual in custody who use the restroom will be pat searched before being allowed to use the facility and pat searched after.

Medication: Immediate life care medication (nitroglycerin pills, asthma spray or inhaler) may be taken to the Visiting Room by the visitor. If a visitor needs to take a maintenance-type medication at a required time, they must inform the officer at the Electric Eye prior to being processed in. The visitor will be allowed to return to the front desk and obtain the medicine. The officer will then observe the visitor consume their medication. The visitor will then be allowed to return to the Visiting Room. With the exception of the above-mentioned taking of medication, under no circumstances shall a visitor be allowed to return to his/her locker until the visit is completed.

Wigs are not allowed without prior approval from the Assistant Warden of Operations Office and are subject to shakedown if approved.  Hair extensions and weaves are not considered as wigs and shall be processed so that a proper shakedown can occur.

Dark glasses or sunglasses are not allowed as well as any other material that may distort the identity of the visitor. Female visitors must wear a bra.  All visitors must wear undergarments.  Religious headgear may be permitted only with prior approval of the C.A.O. All visitors must wear clothing that will clear a metal detector, or the visitor will not be permitted to visit (i.e. under-wire bra, bib overalls, etc.) Hats, gloves, and scarves will not be permitted.

Books, Magazines and Newspapers:  A visitor may leave approved publications at the Electric Eye.  Publications shall be limited to a maximum of five (5) per visit and shall be not packaged, wrapped, or otherwise contained in any other way. Each item must have the individual in custody's name and register number clearly labeled on it.

Female Hygiene: Female visitors will be required to change and dispose of any hygiene items prior to shakedown.  The institution will provide hygiene items.

**Infants: Infants will be allowed to have one (1) blanket, one (1) clear plastic bottle containing white milk or formula, one (1) pacifier and one (1) bib. The parent or guardian will be required to change and dispose of the infant's diaper in the presence of an officer prior to shakedown. The institution will provide diapers and baby wet wipes.**

Individual in custody will not be allowed to approach the vending machines, microwave, or garbage cans.  Individual in custody is to remain seated unless approaching the Sergeant's podium to use the restroom.  Individual in custody will remain at the table at the end of their visit until instructed otherwise.

Individual in custody will be seated at the designated individual in custody seat.  One adult visitor will be required to sit directly across the table from the individual in custody.  Children and additional adult visitors may be seated on either side of the individual in custody.  Children are not allowed to sit on the individual in custody lap.

There will be no cross visiting. Visitors will only be permitted to visit the individual in custody registered upon sign-in. Talking or yelling across the visiting room is prohibited. This may result in possible termination of the visit and restriction of visiting privileges.

Cell phones, pagers, recording devices, and cameras are not allowed on state grounds other than the visitors parking area. They are to be secured in the visitor's vehicle prior to entering the main gate.

Offensive and/or profane language is prohibited.

**Infirmary Visits:** If individual in custody's condition allows, visitation will be done in the visiting room.

In the case where a patient's condition does not allow for visitation in the visiting room, a visit may be approved in the infirmary. **This must be approved by the Warden or his designee only.**

Such visits will be one (1) hour or less in duration depending on the individual in custody's condition and treatment program.

No vending items are allowed.

**Outside Hospitals:**

Visits are restricted to clergy or immediate family members with prior written approval from the Warden. The Assistant Warden of Programs will review the request on a case-by-case basis.

**Attorney/Clergy/Agency Visits:**

Legal visitors and government officials who request to visit an individual in custody for the purpose of conducting business on behalf of the department or other government agency shall be exempt from completing the DOC 0148 (Perspective Visitor's Information) form.

Legal visitors and government officials shall be required to show photo identification including government identification, official credentials, and attorney registration or law student certification.

Legal visits will be arranged through the litigation coordinator at least 2 days in advance of the visit. Attorneys, student lawyers, etc. need not be on the individual in custody visiting list.

Special Clergy visitation will be approved in advance through the A/W of Programs. The requesting clergy must provide proof of legitimacy prior to entering the facility. Bibles and Koran's are allowed during Pastoral Counseling.

Government agencies must coordinate with the A/W of Operations prior to visiting.

Clergy Visits must be arranged through the Senior Chaplain.

## MAIL, TELEPHONE, AND PUBLICATION REVIEW

**Definitions**
A.      "Chief" or "Deputy Director" means the highest ranking official of a bureau, district, or division within the Department.
B.      "Chief Administrative Officer" means the highest ranking official of a correctional facility.
C.      "Department" means the Department of Corrections.
D.      "Director" means the Director of the Department.
E.      "**Incoming privileged mail**," means mail from the following:
        1.      The Director;
        2.      Assistant Director, Chiefs, and Deputy Directors of the Department;
        3.      Department attorneys and State's Attorneys;
        4.      Members of the Administrative Review Board;
        5.      Members of the Prisoner Review Board;
        6.      The Governor of Illinois;
        7.      Federal or Illinois legislators;

46

       8.      Chief Executive Officers of the Federal Bureau of Investigation, the Drug Enforcement Administration, the Criminal Division of the Department of Justice, the United States Customs Service, the Secret Service, the Illinois State Police, and Sheriff's Offices and Police Departments in the State of Illinois;
       9.      John Howard Association; and
      10.    Legal mail.
      11.    Illinois Inspector General.

F.     "**Outgoing privileged mail**," means mail to the following:
       1.      The Director;
       2.      Assistant Director, Chiefs, and Deputy Director of the Department;
       3.      Department Attorneys and State's Attorneys;
       4.      Members of the Administrative Review Board;
       5.      Members of the Prisoner Review Board;
       6.      The Governor of Illinois;
       7.      Federal or Illinois legislators;
       8.      Chief Executive Officers of the Federal Bureau of Investigation, the Drug Enforcement Administration, the Criminal Division of the Department of Justice, the United States Customs Service, the Secret Service, the Illinois State Police, and Sheriff's Offices and Police Departments in the State of Illinois;
       9.      John Howard Association;
      10.    Clerks of courts or of the Illinois Court of Claims; and
      11.    Legal mail.
      12.    Illinois Inspector General.

G.     "Legal mail" means mail to and from the following:
       1.      Registered Attorneys, except Department Attorneys and State's Attorneys;
       2.      The Illinois Attorney General;
       3.      Judges or magistrates of any court or the Illinois Court of Claims Judges; and
       4.      Any organization which provides direct legal representation to individual in custody, but not including organizations which provide referrals to attorneys, such as bar associations.

H.     "Individual in custody" means a person committed to the Department or to the custody of the Department.

## Processing of Mail

A.     Mail shall be delivered promptly.

B.     Individual in custody may correspond with anyone in the free community in accordance with this Subpart without prior written approval of the Chief Administrative Officer, except with employees, former employees, or releasees of the Department.   Permission for individual in custody to correspond between intra-state and inter-state correctional facilities shall require the approval of the Chief Administrative Officers of both facilities and shall be based on safety and security concerns.

C.     Each facility shall establish procedures in cooperation with the local post office for processing certified or registered mail.  To send certified or registered mail, individual in custody must have sufficient funds in their trust fund accounts and must attach to the envelopes signed money vouchers so that the proper postage may be applied, and the amount deducted from their trust fund accounts.

D.     Individual in custody shall not be permitted to open, read, or deliver another individual in custody's mail without the person's permission.  However, individual in custody may transport mail in sacks or other closed containers under the direct supervision of an employee.

E.     No disciplinary restrictions shall be placed on an individual in custody's mail privileges.

## Outgoing Mail

Outgoing mail shall be collected in all living units daily, Monday thru Saturday, except on Federal/State holidays.

This Section applies to all correctional facilities within the Department.

A.  Individual in custody shall be permitted to send privileged and non-privileged letters at their own expense. Individual in custody with insufficient money in their trust fund accounts to purchase postage shall be permitted to send reasonable amounts of legal mail and mail to clerks of any court or the Illinois Court of Claims, to certified court reporters, to the Administrative Review Board, and to the Prisoner Review Board at State expense if they attach signed money vouchers authorizing deductions of future funds to cover the cost of the postage.  The individual in custody's trust fund account shall be restricted for the cost of such postage until paid or the individual in custody is released or discharged, whichever is soonest.

B.  Individual in custody must clearly mark all outgoing mail with their name and in adult facilities with their institutional number.  Mail that is not properly marked, including privileged mail, shall be opened and returned to the sender if the sender's identity can be determined.  If the sender's identity cannot be determined, the mail shall be destroyed.

C.  Outgoing privileged mail must be clearly marked as "privileged" and sealed by the individual in custody. Outgoing mail which is clearly marked as privileged and addressed to a privileged party may not be opened for inspection except as provided in subsection (d) of this Section.

D.  In adult facilities, outgoing privileged mail shall be examined for dangerous contraband, using an x-ray, fluoroscope, or other similar device.  Such examination may be conducted in juvenile facilities.  Outgoing privileged mail may be inspected for dangerous contraband by other means which do not damage the mail, and which do not permit the mail to be read.  Except in an emergency, outgoing privileged mail shall not be opened, unless there is reasonable suspicion that dangerous contraband is contained therein, legal services is consulted, and the mail is opened in the individual in custody's presence.

E.  With the exception of privileged mail, all mail shall be unsealed when collected or placed in housing unit mailboxes.  Sealed mail that is not privileged will be opened and returned to the sender if the sender's identity can be determined.  If the sender's identity cannot be determined, the mail shall be destroyed.

F.  Each correctional facility shall establish procedures for the collection of outgoing mail.  Collections shall be made daily, Monday through Friday, except on State holidays.  Every effort shall be made to ensure that mail is delivered to the U.S. Postal Service on the same day.

G.  Outgoing non-privileged mail shall be inspected for contraband.  If a letter from an individual in custody is confiscated because it contains contraband, the individual in custody shall be notified promptly in writing.

H.  Department employees may spot check and read outgoing non-privileged mail.  Outgoing non-privileged mail or portions thereof may be reproduced or withheld from delivery if it presents a threat to security or safety, including the following:

1.  The letter contains threats of physical harm against any person or threats of criminal activity;
2.  The letter contains threats of blackmail or extortion;
3.  The letter contains information regarding sending contraband into or out of the facility, plans to escape, or plans to engage in criminal activity;
4.  The letter is in code and its contents cannot be understood by correctional staff;
5.  The letter violates any departmental rules or contains plans to engage in activities in violation of departmental or institutional rules;
6.  The letter solicits gifts, goods, or money from other than family members;
7.  The letter contains information which, if communicated, might result in physical harm to another;
8.  The letter contains unauthorized correspondence with another individual in custody; or
9.  The letter or contents thereof constitute a violation of State or federal law.

I.  Any outgoing letter may be stopped and returned to the sender if the person to whom it is addressed (or a parent or guardian, if the addressee is a minor or incompetent) has notified the Chief Administrative Officer in writing that the person does not wish to receive mail from the individual in custody.  This rule shall not be construed to prevent individual in custody from corresponding with their children unless their parental rights have been terminated.

J.  If an individual in custody is prohibited from sending a letter or portions thereof, the individual in custody shall be informed in writing of the decision.

K.      Material from a letter which violates subsection (h) of this Section may be placed in an individual in custody's master file.

L.      Individual in custody may not send packages without approval of the Chief Administrative Officer, whose decision shall be based on administrative, safety, and security considerations.

## Incoming Mail

A.      Incoming privileged mail must be clearly marked as "privileged" and be clearly marked with the name, title, and address of the sender.

B.      Incoming privileged mail may be opened in the presence of the individual in custody to whom it is addressed to inspect for contraband, to verify the identity of the sender, and to determine that nothing other than legal or official matter is enclosed.

C.      Incoming privileged mail may contain communications only from the privileged correspondent whose name and address appear on the envelope. If non-privileged material or correspondence from a third party is found to be enclosed, such material shall be treated as non-privileged mail.

D.      All incoming non-privileged mail, including mail from clerks of courts, shall be opened and inspected for contraband.

E.      Cashier's checks and business checks subject to the restrictions imposed by 20 Ill. Adm. Code 205 shall be deposited in the individual in custody's trust fund account, with a record made of the sender's name, the amount received, and the date.  For purposes of this Section a business check shall mean a check written on any agency's or firm's account and any check written on an employer's personal account for wages due a person assigned to a transition center. Individual in custody shall be notified of all monies received and deposited in their trust fund accounts.  However, any checks which exceed the limitation on the amounts (20 Ill. Adm. Code 205) shall be returned to the sender, and the individual in custody shall be notified.

F.      Personal checks and cash shall be returned to the sender, and the sender shall be notified that funds cannot be received in that form.

G.      Correctional officials may spot check and read incoming non-privileged mail.  Incoming mail or portions thereof may be inspected, reproduced, or withheld from delivery for any of the reasons listed in Section 525.130 (h) of this Subpart or in Subpart C of this Part.

H.      When an individual in custody is prohibited from receiving a letter or portions thereof, the committed person and the sender shall be notified in writing of the decision.

I.      If an individual in custody has been transferred or released, first class mail shall be forwarded to the person if the address is known.  If no forwarding address is available, the mail shall be returned to the sender.

J.      If an individual in custody has been absent from the facility on a furlough or pursuant to writ, the person's mail shall be held at the facility for a period of one month, unless the individual in custody has made a written request to the Chief Administrative Officer to have the mail forwarded to another address.  At the conclusion of the month, first class mail shall be forwarded to the individual in custody's address, if known, or returned to the sender, unless alternative arrangements have been made.

K       Individual in custody may receive publications, including books, periodicals and catalogs, in accordance with Subpart C of this Part.  Other packages may be received only as approved by the Chief Administrative Officer.  All packages shall be opened and searched prior to delivery.

• **For the safety and security of the facility, Individuals in Custody may not possess books larger than 10"x 17.5"**

**NOTE:  Mail received by the mail room must have individual in custody's name and identification number on the outside of the envelope or it will be returned to sender.**

MAIL SCAN PILOT PROGRAM

A pilot mail scan program will be implemented at Menard CC. In an effort to prevent contraband from entering the facility, the CAO may recommend an individual in custody for the mail scan process on all non-privileged mail prior to delivery to an individual in custody.

The mail scanner shall photocopy each piece of mail (including a photocopy of the envelope indicating the sending and return addresses and the post mark date) and once completed, the mail shall be placed into an envelope with the individual in custody's name, number and current cell location and distributed to the individual in custody.

1.  The mail scan status shall only be implemented for purposes of maintaining the safety and security of the facility, its staff, and individuals in custody. The reasons for placing an individual on mail scan status may include, but are not limited, the following circumstances:

    1.  Evidence that the individual in custody misappropriated or has attempted to misappropriate the mail system for the purposes of introducing contraband into the facility.

    2.  Possession of contraband that is likely to have been introduced through the mail system.

    3.  Failed drug tests for substance(s) likely introduced into the facility through the mail system.

b.  The CAO's decision to recommend the Mail Scan status shall:

    (1)    Provide the factual basis for the recommendation of mail scan status on the DOC0729; and

    (2)    Be provided to the individual in writing.

**NOTE:** The factual basis shall, with specificity, state the grounds for which the mail scan status is being recommended in order to provide the individual in custody an opportunity to appeal the recommendation of the CAO.

All recommendations for placement of an individual in custody on mail scan status shall be documented on the Notice of Mail Scan Status, DOC 0729, and forwarded to the Regional Deputy Director for review and approval.

If approved, mail scan status shall be implemented and shall be effective on the date of the Deputy Director's approval.

Items that cannot be scanned such as books, magazines or newspapers shall not be permitted to be received through the mail during this time, unless it is mailed directly from the publisher or brought to the facility by an approved visitor.

**NOTE:** All mail received from the publisher shall be reviewed and approved or denied in accordance with Administrative Directive 04.01.108 prior to being distributed to the individual in custody.

Upon receipt of the DOC 0729, the individual in custody shall indicate on the DOC 0729 their election for handling non-privileged mail items, which includes:

a.    To have all non-privileged mail that gets photocopied or digitally scanned returned to sender after original mail items have been scanned;

~~b.~~    To have all non-privileged mail that gets photocopied or digitally scanned sent home on the next scheduled visit; or

~~c.~~    To have the mail destroyed at the facility.

The individual in custody shall have 72 hours upon receipt of the DOC 0729 to rebut in writing the recommendation of the CAO.

The initial recommendation by the CAO and individual in custody's rebuttal shall be documented on a DOC 0729 and forwarded to the Regional Deputy Director for a final determination. The Regional Deputy Director shall make a final decision in writing on the DOC 0729 after reviewing the recommendation and rebuttal contained on the DOC 0729. The final determination of the Regional Deputy Director shall be provided to the individual in custody and is appealable.

If an individual in custody is transferred from Menard CC to another facility while on mail scan status, the individual in custody shall return to normal mail procedures upon arrival at the newly assigned facility.

**Mail Scan Status Appeal**

1.  The individual in custody shall be provided an updated notification of the final decision for mail scan status by receipt of the DOC 0729 and notified of his or her right to appeal the Regional Deputy Director's decision.

2.  If the individual in custody elects to appeal the Regional Deputy Director's decision to place him or her into mail scan status, he or she shall indicate the decision to appeal on the DOC 0729 and submit the form to the Chief of Operations, within fourteen (14) calendar days from the date the DOC 0729 was served.

3.  If an appeal is not submitted by the individual in custody and received by the Chief of Operations within fourteen (14) days, the decision on mail scan status placement shall become final.

4.  The Chief of Operations shall consider all appeals and respond to the individual in custody within fourteen (14) calendar days of receipt of the DOC 0729, whenever practicable.

5.  Upon receipt of the DOC 0729, the Chief of Operations shall review and document his or her final decision on the DOC 0729 and a copy shall be provided to the individual in custody.

6.  If the Chief of Operations denies the appeal and the individual in custody is placed on mail scan status, incoming mail items shall be processed in accordance with the selection made on the DOC 0729 by the individual in custody in accordance with Section II.J.3.

## Telephone Services

Individual in custody will fill out a phone list, adding numbers they want to be able to call and deleting numbers they want off their list. Individual in custody can receive a phone list every 30 days to make changes and receive a copy of their PAN list (numbers) every 90 days. Individual in custody who are in C grade or have telephone privileges suspended will not be allowed to make telephone calls.  If you are experiencing problems with your telephone system, you may contact Securus Technologies by writing them at:

**Individual in custody must complete a DOC 0193.**
- **Up to 30 numbers on an individual in custody's approved telephone list**
- **All fields used must be filled out completely or it will not be processed (add/delete, telephone number, full name, relationship, complete address – no P.O. Box)**
- **Sign and Date form**
- **Changes can only be made 1x in 30 days**
- **Individual in custody can request a copy of approved telephone list 1x in 90 days**
    - **T**elephone services are provided by Securus Technologies and are 20 min in length
    - Individuals in custody are not allowed to use another individual in custody's PIN.
    - The PIN must be dialed to make a call.
    - Time taken up by the message about monitoring and recording the messages and the warning that the call time is almost over will not be included in the allowed twenty minutes.
    - The call will be cut off if the called party attempts to connect a three-way call, conference call or answers call waiting.
    - In the case of a verified critical illness or a verified death in the committed person's verified immediate family, consideration shall be given to allowing a special telephone call, regardless of the individual's institutional status for the purpose of the family to inform the individual in custody.
    - All committed person's telephone calls shall be subject to monitoring and recording at any time by departmental staff, unless prior special arrangements have been made to make or receive confidential telephone calls to or from their attorneys.  Attorneys must pre-schedule calls through the facility.  All calls remain subject to restrictions by Departmental Rules.  Calls must not interfere with regular institutional routines and will be terminated during count.

**If you are experiencing problems with your telephone system, you may contact Securus Technologies at  800-844-6591** or by writing them at:

| Securus Correctional **Billing Services** | Securus **Telephone/Phone List ISSUES** |
|---|---|
| P.O. Box 650757 | PO Box 1549 |
| Dallas, TX 75265-0757 | Mattoon, IL 61938 |

Please note that only one phone number per check is allowed. If you want to apply funds to multiple phone accounts, please submit separate checks for each account.  Family/friends must have an account open at Securus for these funds to be applied.  Once the money is added, it becomes property of the account holder to use as they see fit.  The number must be on the individual in custody approved list. Any issue that an individual in custody has with Securus is to be directed to Securus.  This includes but not limited to telephone list, wrong numbers, money on accounts, etc.  It is the responsibility of the individual in custody to manage his account.  He can listen on the phone to his approved list. Phone minutes are able to be purchased at commissary. There is a purchase limit per commissary visit of 999 units (111 minutes each, equaling 110,889 total minutes available. The purchase of minutes does count toward monthly spending limits in the commissary.

Family and friends must call 1-800-844-6591 to open or place funds on a prepaid account.
1-866-718-4777 will appear on Caller ID when a call is placed.

A. Telephone privileges shall be granted to individual in custody in accordance with their institutional status and provisions of this Section.
B. Collect calls may be made to persons in the continental United States and Puerto Rico, where billable.
C. Individual in custody may not place telephone calls to:
  1. Toll free area codes, including but not limited to 800 series area codes, or to area codes or prefixes for which a charge is assessed to the line from which the call was placed, including but not limited to 800 or 900 series area codes or 976 prefixes;
  2. Emergency or directory assistance or to long-distance carriers;
  3. Persons or companies which have requested that a block be placed on their telephone numbers;
  4. Numbers suspected of being used fraudulently or for fraudulent purposes;
  5. Parolees, ex-individual in custody, former employees, or current employees absent the approval of the Chief Administrative Officer; or
  6. Numbers or persons restricted for other legitimate penological reasons, including security and order.
D. **A block may be placed on telephone calls to**:
  1. The local community except to the individual in custody's friends, family, and others in the local community who request to receive calls from the individual in custody.
  2. A telephone number for which there is a large unpaid balance on the account, with the exception of telephone numbers of attorneys and law firms.
  3. Any telephone numbers listed in subsection (c) of this Section.
E. Individual in custody may not engage in call forwarding or in conference calls.
F. In the case of valid emergencies, such as critical illness or death in an individual in custody's immediate family, consideration shall be given to allowing a special telephone call, regardless of the individual's institutional status.  Immediate family shall include parent or guardian, children, brother, sister, grandparent, whether step, adopted, half, or whole, and spouse.
G. Individual in custody who are the subject of a new criminal indictment, information, or complaint shall be permitted to make reasonable telephone calls to attorneys for the purpose of securing defense counsel, regardless of the individual's institutional status.
H. **All individual in custody' telephone calls shall be subject to monitoring and recording at any time by departmental staff, unless prior special arrangements have been made to make or to receive confidential telephone calls to or from their attorneys.**

### Inmate Debit Calling Account

With an Inmate Debit account, you may make local, long distance, or international calls to landlines and cell phones to anyone on your approved calling list, *subject to facility restrictions.*  Because you control the Inmate Debit account, you have more choices of who you can call without being restricted to the limited numbers on friend and family prepaid accounts.  You can also better manage your account balance to ensure funds are available for calling.

### To Open an Inmate Debit Account

When you were booked in, an Inmate Debit account was automatically opened for you with a $0 balance. To make calls, funds simply need to be added to the account.

### To Fund an Inmate Debit Account

Make a commissary request to transfer money from your facility trust/commissary account to your Inmate Debit calling account.

**To Make a Call**

- Pick up the phone
- Select your language
- Select the debit calling option: "*For a Debit call, press….*"
- Enter your PIN number
- Enter the phone number you would like to call

**To Collect A Refund**

Your Inmate Debit refund can be processed through Western Union. To collect a refund, you will follow the below process:

* Upon your release, your unused Inmate Debit account balance will be made available for you to collect at any Western Union retail location.

* For identification at Western Union, you must provide:  Your last name, first name, inmate identification number/account number, Pin

* The refund should be available for collection at any Western Union retail location within 15 minutes of your release.

* Your refund will be available for collection for 90 days. No refunds will be issued after 90 days.

* A Western Union fee may apply and be deducted from your balance available for refund, so it is recommended that you use your Inmate Debit account balance up prior to release.

**TTY (TELETYPEWRITER) VRS (VOICE RELAY SERVICE)**

Individual in custody may have the opportunity to utilize TTY/VRS equipment any time there is a need to communicate with a person who uses TTY equipment due to a hearing impairment or if the need exists for himself. Individual in custody may request use of the TTY/VRS equipment by sending a request of day and time to Clinical Services at least 3 days in advance.   The requirements for use are as follows:

Individual in custody must not be in "C" grade.
Advanced notice for use of the TTY/VRS equipment is required at least 3 days
All TTY/VRS calls will be recorded and monitored, <u>unless</u> it is an approved confidential attorney call

## Publications
**Definitions**

"Obscene" means any material that the average person, applying contemporary adult community standards, would find that, taken as a whole, appeals to the prurient interest; and the average person, applying contemporary adult community standards, would find that it depicts or describes in a patently offensive way, ultimate sexual acts or sadomasochistic sexual acts, whether normal or perverted, actual or simulated, or masturbation, excretory functions or lewd exhibition of the genitals; and taken as a whole, it lacks serious literary, artistic, political, or scientific value [720 ILCS 5/11-20(b)].

## Publications Review Officer

The Chief Administrative Officer shall appoint at least 2 employees to serve as Publication Review Officers to review publications.  At least one individual shall be from program staff and at least one individual shall be from security staff.

## Procedure for Review of Publications

A.     A Publication Review Officer, hereafter referred to as Officer, shall review publications to determine whether to recommend prohibiting acceptance of any publications that he or she finds to contain material determined to be:
   1.     Obscene;
   2.     Detrimental to security, good order, rehabilitation, or discipline or if it might facilitate criminal activity, or be detrimental to mental health needs of an individual in custody as determined by a mental health professional.

B.     A publication may not be rejected solely because its content is religious, philosophical, political, social, or sexual or because its contents are unpopular or repugnant.  A publication that may be rejected includes, but is not limited to, a publication or portion thereof that meets one of the following criteria:

C.
   1.     It is obscene;
   2.     It is written in code or facilitates communication between individual in custody;
   3.     It depicts, describes, or encourages activities that may lead to the use of physical violence or group disruption or it facilitates organizational activity without approval of the Chief Administrative Officer;
   4.     It advocates or encourages violence, hatred, or group disruption or it poses an intolerable risk of violence or

disruption;

5. It encourages or instructs in the commission of criminal activity;
6. It includes sexually explicit material that by its nature or content poses a threat to security, good order, or discipline or it facilitates criminal activity;
7. It is otherwise detrimental to security, good order, rehabilitation, or discipline or it might facilitate criminal activity or be detrimental to mental health.

D.    If a review is initiated, the individual in custody shall be notified in writing that the publication is under review and the notice shall include an explanation why the publication is deemed to contain unacceptable material in accordance with the standards set forth in this Section. The written notice shall indicate that:

1.    He or she may submit a written supportive statement or other documentation within 7 days after the date of the notice that the publication is under review. An extension will be granted if in the opinion of the Officer there is a legitimate reason why relevant information could not be submitted timely.
2.    He or she may request to appear before the Officer. The appearance will be allowed if the Officer determines that such appearance is necessary for an appropriate review.
3.    He or she may ask for assistance or information regarding the publication review procedure.
4.    If the publication is approved, it will be forwarded to the individual in custody upon completion of the review. If the publication is not provided to the individual in custody within 60 days after the date of the written notice, the publication shall be deemed disapproved and the individual in custody may file a grievance in accordance with 20 Ill. Adm. Code 504: Subpart F.

E.    Any recommendation for denial shall be forwarded to the Chief Administrative Officer with an explanation. If the Chief Administrative Officer concurs with the recommendation to deny the publication, the publication shall be disapproved.

F.    The Publication Review Officer shall maintain copies of decisions in a designated area for at least 3 years.

G.    If after 6 consecutive issues of a publication have been denied and it is determined unlikely that future issues of the publication will be approved, the publication may be banned.

G.    If the characteristic content of a banned publication significantly changes to no longer warrant denial of the publication in accordance with this Section, an individual in custody may request another review of the publication by the Publication Review Officer. A previously banned publication shall be subject to review no more frequently than every 4 months. If a review is to be initiated, the individual in custody shall be advised to arrange for one or more issues of the publication to be submitted to the Publication Review Officer at the individual in custody's expense.

1.    The review shall be conducted in the same manner as the initial review of the publication.
2.    If an issue of a previously banned publication is approved, an individual in custody may request subsequent issues to be reviewed notwithstanding the 4-month review period.
3.    The Publication Review Officer may recommend that a previously banned publication be approved.

A.    The Director may establish a Central Publication Review Committee to periodically review and make recommendations regarding facility determinations or recommendations to the Director who may approve or disapprove the recommendations based on the standards set forth in this Section. If a Committee is appointed:

1.    Committee members shall consist of at least one representative each from administrative and operational staff.
2.    Reviews need only be conducted by one member of the Committee.
3.    The facility and the individual in custody shall be notified of any decision made by the Director.

I.    Individual in custody will have access to copies of the Facility and Department Approved, Conditionally Approved, and Disapproved Publication Lists in the facility library or in another designated area.

However, the facility may still disapprove or restrict a publication that is on the central approved list in accordance with 20 Ill. Adm. Code 525: Subpart C.

## **Transfers (DR 503)**

## Administrative Transfers:
A.      A committed person may be transferred by the Department to any of its facilities or programs or as otherwise permitted by law.
B.      Transfers shall be reviewed and approved by the Director or his designee.

## Assignment and Program Transfers:
A.      A request or recommendation for transfer may be submitted by a Department employee or the committed person to the Clinical Services Department.
B.      A member of the Clinical Services staff shall transmit to the Assignment Committee, all available information regarding the proposed transfer, a summary of the individual's adjustment and program involvement, and any other relevant information.
C.      The Assignment Committee shall make a recommendation to the Chief Administrative Officer who shall approve or disapprove the recommendation. The committed person shall be informed of the decision in writing.
D.      If the Chief Administrative Officer approves a request or recommendation for transfer, he shall submit his recommendation and a record regarding the proposed transfer to the Director or his designee for approval or disapproval. The committed person shall be informed of the decision in writing.

## Disciplinary Transfers:
Transfers may be recommended by the Adjustment Committee pursuant to a finding of guilty of an infraction in accordance with 20 Ill. Adm. Code 504.

## International Transfer Notice:
The United States has entered into International Treaties with many countries which may permit a foreign national prisoner from one of the treaty countries to transfer to his home country to serve the remainder of his sentence.  The State of Illinois has enacted legislation which allows it to participate in the international prisoner transfer program.  The transfer program is discretionary and not everyone who applies will be qualified or will be approved for the transfer.  To transfer your application must first be approved by the State of Illinois.  The United States and your home country must also approve your application before a transfer can occur.  If you are a foreign national from one of the countries listed below and are interested in further information about the program or would like to apply for transfer, please contact your correctional counselor and your nearest consulate for additional information.

I.      Bilateral Treaties and Transfer Agreements*

| | | | |
|---|---|---|---|
| Bolivia | Hong Kong | Federated States | Republic of Palau |
| Panama | Thailand | Canada | Marshall Islands of Micronesia |
| Peru | Turkey | France | Mexico |

II.     Participants in the Council of Europe Convention on the Transfer of Sentenced Persons (COE Convention)

| | | | | |
|---|---|---|---|---|
| Albania | Ecuador | Liechtenstein | Luxembourg | |
| Andorra | Lithuania | Armenia | Estonia | |
| Australia | Finland | Macedonia | Portugal | |
| Austria | France | Romania | Poland | |
| Azerbaijan | Georgia | Russia | Slovakia | |
| Bahamas | Germany | Malta | San Marino | |
| Belgium | Greece | Serbia | Mauritius | |
| Bolivia | Herzegovina | Mexico | Slovenia | |
| Bosnia | Honduras | Spain | Sweden | |
| Bulgaria | Hungary | Moldova | Switzerland | |
| Canada | Iceland | Montenegro | Chile | |
| Ireland | Netherlands** | Tonga | Costa Rica | |
| Israel | Trinidad & Tobago | CroatiaItaly | Turkey | Cyprus |
| Japan | Norway | Ukraine | Czech Republic | Korea |
| United Kingdom*** | Denmark | Panama | Venezuela | Latvia |

III.    Participants in the Inter-American Convention on Servin Criminal Sentences Abroad (OAS Convention)

| | | | |
|---|---|---|---|
| Argentina | Chile | El Salvador | Mexico |
| Saudi | Arabia | Belize | Czech Republic |

| | | | |
|---|---|---|---|
| Guatemala | Nicaragua | Uruguay | Brazil |
| Costa Rica | India | Panama | Venezuela |
| Canada | Ecuador | Kazakhstan | Paraguay |

\*    Some of these countries are also parties to multilateral prisoner transfer conventions to which the United States is a signatory.  For example, Mexico, France, Canada, Bolivia, Panama, and Turkey are signatories to the COE Convention.  Mexico, France, and Bolivia prefer proceeding under the bilateral treaty; Panama prefers proceeding under the COE Convention; and the United States prefers proceeding with Turkey under the COE Convention. Canada, Mexico, and Panama are also signatories to the OAS Convention.  Mexico prefers proceeding under the bilateral treaty.  Costa Rica is signatory to the COE Convention and the OAS Convention.  Although Costa Rica does not have a treaty preference, the United States processes its prisoners transfer requests pursuant to the COE Convention unless Costa Rica or the prisoner requests otherwise.

\*\* Includes Caribbean Netherlands (Bonaire, Sint Eustatius, and Saba) and Kingdom of the Netherlands constituent countries Aruba, Sint Maarten, and Curacao.

\*\*\*  Includes British territories of Anguilla, Bermuda, British Indian Ocean Territory, British Virgin Islands, Cayman Islands, Ducie and Oeno Islands, Falkland Islands,Gibraltar, Henderson Island, Isle of Man, Montserrat, Pitcairn, Sovereign Base Areas of Akrotiri and Dhekelia in the Island of Cyprus, and St. Helena, Ascencion and Tristan da Cunha (formerly St. Helena Dependencies).

## ADULT TRANSITION CENTERS/ELECTRONIC DETENTION

The lists of individual in custody who are submitted for adult transition centers/electronic detention will be received from the Transfer Coordinator's Office.  You will be submitted when your name appears on the list or you may request when eligible.

When you have questions about any transfer policy, please speak with your Correctional Counselor.

## INTERSTATE TRANSFERS

Individual in custody may submit a written request to the Transfer Coordinator's Office in Springfield indicating their desire to transfer to another state.  The cost of transporting an Illinois individual in custody approved for out of state transfer, initiated as an individual in custody request, is the responsibility of the individual in custody.  Once placed in another state, the sending state still retains jurisdiction of sentence requirements.  The following states have an interstate agreement with Illinois:  Alabama, Arizona, Arkansas, Colorado, Connecticut, Delaware, Florida, Iowa, Kansas, Kentucky, Maryland, Michigan, Minnesota, Montana, Nevada, New Hampshire, New Jersey, New Mexico, North Dakota, District of Columbia, Oklahoma, Rhode Island, South Carolina, South Dakota, Texas, Utah, Virginia, Washington and Wisconsin.

## Personal Property (DR 535)

Allowable personal property – items sold in the facility commissary and state issued items or as authorized by Department Rules.

Correspondence storage box – a standard, departmentally approved, fire retardant storage container issued for use in the individual in custody's living area for storage of his legal materials, correspondence, and publications.

Legal materials – pleadings, complaints, petitions, motions, briefs, exhibits, Department Rules, affidavits, transcripts, expert reports, correspondence to and from attorneys or persons employed by attorneys in a legal capacity, correspondence to and from courts or expert witnesses, copies of case law, notices of filing or other documents to be filed in a court of law, court of claims, or other forum in which a suit may be filed, documents to be filed in support of executive clemency, or any other documents which are or may be required to be served upon opposing counsel or parties.

Publications – includes hard or soft bound books, magazines, newspapers, periodicals, and catalogs.

Personal property storage box – a standard, departmentally approved, fire retardant storage container issued for use in the individual in custody's living area for storage of his personal property.

## MODESTY SHEETS

Each individual in custody shall be provided with a modesty sheet along with their state-issued bedding.  The modesty sheet may be used to cover oneself to provide additional privacy while using the in-cell toilet.  The modesty sheet shall be laundered on the same schedule as state-issued bedding.  Use of the modesty sheet for any purpose other than covering oneself while toileting, including hanging the modesty sheet on the cell-front bars or in any manner to impair surveillance, shall be strictly prohibited and subject to tickets/discipline.

**General Provisions:**

A.   All individual in custody personal property shall be stored in a safe and secure manner in accordance with this directive.

B.   All property in a living area shall be stored in a manner that will not obstruct lines of sight or paths of egress or access to the living area.

C.   The overall use of electrical power within an individual in custody's living area shall be controlled by    facility administration for safety, security, and other penological reasons. Hot pots and stingers are prohibited.

D.   Decorations and furnishings of living areas shall be noncombustible and controlled by facility administration for safety and security and other penological concerns.

E.   The affixing of posters, photographs, paper or other items to the walls, ceilings, floors, doors, windows, bars, furniture, or storage boxes and the open display of nude images and depictions shall be prohibited.

F.   Any individual in custody who damages, defaces, or loses a standard storage box shall be subject to disciplinary action in accordance with Department Rule 504A.

G.   Unless otherwise specified in this directive, an individual in custody's personal property shall be stored in the standard personal property storage box. Correspondence may be stored in the personal property storage box; however, only correspondence shall be stored in the standard correspondence storage box.

H.   In accordance with Department Rule 525, publications shall not be limited to those received from publishers and shall be permitted to be ordered, solicited, or brought to the facility by a family member or friend, subject to screening for contraband and review by the Publication Review Committee.

I.   Individual in custody who have physician certified physical conditions that would prohibit them from opening and closing their property boxes may have an approved altered box substituted for the normal boxes.

**NOTE:** The altered property and correspondence boxes are maintained in the Springfield warehouse for those individuals in custody who are physically unable to use the regular boxes. These are the **only** property and correspondence boxes approved for modification and are only to be used for those individuals in custody who have a physician approved permanent physical condition that prevents them from opening and closing the regular boxes.

J.   If an individual in custody is determined to have a physician approved physical condition that requires a modified box, the Health Care Unit Administrator shall notify the Administrative Major in writing. The Administrative Major shall contact the Deputy Director of Program Services to obtain the boxes needed for that individual in custody. A normal box must be exchanged in order to obtain an altered box.

Individual in custody are not allowed to cover their exterior windows, their observation windows, or allowed to have any lines hanging in their assigned living areas.  Excess garbage, food trays, drink cartons, etc. should not be allowed to accumulate in cells.  The expectations for individual in custody compliance and safety\sanitation issues shall be included in the individual in custody orientation manual/handbook. The expectations of line staff/supervisors to ensure compliance/sanitation shall be outlined in their post descriptions.

Pictures depicting how a cell/living area are expected to be maintained should be posted in common areas, so individual in custody have a clear understanding of what is required of their assigned living area. Examples are below:



## Allowable Equipment and Jewelry for Individual in custody Not in Restrictive housing Status:

**A.   An individual in custody may possess a combination of one each of any Six of the following equipment items:**

    a.     Fan –clear and no larger than 10" with plastic shroud and guard (permit item).

    b.     Television –clear and no larger than 15" (permit item).

    c.     AM/FM radio/cassette player w/cord- single deck, no recording devices, no detachable speakers- clear
              (permit item).

    d.     Walkman-clear (permit item).

    e.     MP3 player w/cord – clear commissary approved (permit item) OR 2.0 tablet   (permit item)

         f.     Razor and cord – (must have trimmer head removed) (permit item).

    g.     Beard trimmer – clear (permit item).

         h.     Clip on light with LED bulb - clear (Commissary Approved) (permit item).

**Note: Headphones do not count against the 5 permit items; however, they do require a permit. Additionally, individual in custody who are recognized as ADA individual in custody are allowed to possess a tactile watch (permit item). The watch does not count against the permit items.**

State Loan Fan Procedure- starting June 1 and ending October 1. Individual in custody must send a written request for a state loan fan to the assigned Cellhouse Major. In order to have an individual in custody be eligible for the state loan program, the individual in custody will have insufficient funds available in his account to purchase a fan on commissary. If the individual in custody is eligible for a state loan fan, the individual in custody will be issued a call pass from Personal Property. The individual in custody must show ID and sign the necessary forms presented to him. Individual in custody who accept a state loan fan will have their funds held, allowing only the purchase of hygiene items until proper funding becomes available for the purchase of a new fan. At that time, the individual in custody will receive the fan along with a copy of the state loan contract. At the time when proper funding becomes available for the purchase of a new fan, the Individual in custody Commissary staff will complete the purchase of a new fan on the individual in custody account. The individual in custody will be issued a call pass to Personal Property to exchange his state loan fan for the newly purchased fan. During the call pass, the individual in custody must show ID and bring the assigned state loan fan along with the state loan fan permit. When the state loan fan is returned to Personal Property, the hold on the individual in custody's trust fund will be removed.  If when the state loan fan is turned into Personal Property and it is found to be broken, damaged, or missing parts, a ticket will be issued to the individual in custody and reimbursement charged.

Of the allowable equipment items, individual in custody shall be limited to two portable audio devices.

B.          **An individual in custody may possess one each of the following jewelry permit items:**

a.      Department approved wristwatch – commissary approved – not to exceed **$50** in value.
b.      Religious medallion (no stones or screws permitted) not to exceed 2 inches in height or width or total weight of 20 grams; with chain not to exceed 24 inches in length or 3mm gauge; purchased through individual in custody commissary or approved vendor; and not to exceed $50 in combined value documented on a receipt with vendor name and phone number included.
c.      Wedding ring (no stones, etching, engraving or markings: single tone only)
 -not to exceed $50.00 in value documented on a receipt with vendor name and phone number included.

**Note:** A jewelry permit item shall not be allowed if a receipt is not submitted by the individual in custody.

## Storage of Allowable Personal Property:

A.      When an individual in custody is not in his living area, all property maintained in the living area shall be stored in a closed standard storage box, except:

1.      Hygiene items of one (1) bar of soap, one (1) clear plastic soap dish, one (1) roll of toilet paper, one (1) toothbrush, and one (1) tube of toothpaste, one (1) deodorant.
2.      Eyeglasses.
3.      Dentures and denture cup.
4.      Artificial eyes, artificial eye receptacle, and artificial limbs.
5.      One (1) white towel.
6.      One (1) white washcloth.
7.      Equipment items:
     a.      Fan; 10"/clear
     b.      Television; on TV stand or shelf
     c.      AM/FM Radio/ cassette player
     d.      Clip on light- clear (commissary approved)
     e.      MP3 player- clear or clear 2.0 tablet (commissary approved)
8.      Earbuds or headphones (hearing impaired only)
9.      One (1) approved laundry bag, no string.
10.     Soiled clothing items which are inside the laundry bag, no string
11.     One (1) photo album.
12.     One (1) drinking cup, mug, or tankard (no lid and shall not be insulated).
13.     Wet outerwear.
14.     One (1) pair of footwear.
15.     One (1) religious book, i.e., a Bible or Koran.
16.      One (1) coat

B.      The following is a list of the personal property items an individual in custody may possess in his living area.
**Alteration or redesign of any item of property from its original condition may result in its classification as contraband and eventual confiscation of the altered property**.

C. **APPROVED PERSONAL PROPERTY FOR INDIVIDUAL IN CUSTODY NOT IN RESTRICTIVE HOUSING:**

**NOTE:** Designated amounts are the combined possession limits for state issued and personal property items allowed in General Population. Individual in custody must store items in a standard storage box when not in his living area.

All art supplies will be sold on the individual in custody commissary. The following art supplies and limits are the only items authorized for individual in custody possession.

ART SUPPLIES
    Art Papers/ Art Work
    Art Books/ Painting
    Art Panel, not to exceed 11x14 (2)
    Canvas Pad, (2)
    Pencils (Including: Colored, Drawing, Charcoal)-not to exceed 4" in length (18) Eraser, soft (2)
    Acrylic Paint, 2 Oz, Color Varies (1 each)
    Oil Paint, 1.25 Oz, Color Varies (1 each)
    Tag Board, 9" x12", 100 sheets, White (1)
    Paint Brush, -not to exceed 4" in length (6)
    Palette, Plastic, (1)
    Pastels, Square, (12)
    Paint, -not to exceed 2.5oz container (24)
    Tracing Pad, 9x12, (2)
    Watercolor Pan Set, 8 colors (1)
    Watercolor Paper Pad, 9.5x13, 20 sheets (2)

BEVERAGES:
    Bottled water–clear plastic, 20 oz. or less no squirt bottles (12)
    Coffee - regular and / or decaf bags not to exceed 16 oz
    Hot chocolate – Container not to exceed 16 oz
    Powdered Fruit Drink- Plastic-Sugar free
    Gatorade/Powerade– 16 or 20 oz. bottle, screw on cap, no squirt bottles (12)
    Tea- no more than 15 oz container or 10 oz bag
    Sugar Free Drink Concentrate- Foil

CAKES:
    Cakes –2 boxes or 10 individual packages

CANDY:
    Bagged candy, do not exceed 5oz (6)
    Candy bars (6)
CLOTHING:
    Ball caps – navy (1)
    Boots – black (1 pair) no steel toe or reinforced toe, no metal support, no thick soled, military style, or Timberland style boots, or any boot deemed a security risk.
    Briefs/Boxers/Boxer Briefs – white only (2 packages of 4)
    Cooling Towel
    Gloves – canvas/cotton/work gloves – brown or white (1 pair)
    Gym shoes – solid white including sole (non-gloss, low-mid or high top, may have some grey accent) (2 pair)
    Gym shorts – gray (2)
    Jean Jacket- (1)
    Pajamas – light blue or white (1)
    Pillow (1)
    Pillowcase––green\earth tone (1 set)
    Sheet Set- green/earth tone (1 set)
    Robes – light blue or white (1)
    Shoelaces – white or black (1 pair)
    Shower shoes – slip on, solid color (orange, brown, white) (1 pair)
    Ski band – blue (1)

Skull cap – blue (1)
Socks – solid white (6)
Sweatpants – gray only (1)
Sweatshirts – gray only (1)
Thermal underwear – solid white only (1 set)
T-shirts – white only (3)
T-shirts – strap (tank top) – white only (3)
Washcloths & towels – solid white only (2 each)

CRACKERS AND COOKIES:
Cookies – 20 oz. clear package or less (2)
Crackers – 20 oz. box or less (2)

ELECTRONICS (In Accordance with A.D. 05.10.110 & 05.10.115):
Adapter – single head – clear (1)
Clear Case Walkman (1)
Batteries (watch)
Cable coupler – F81 (1)
Cable splitter (1)
Calculator – clear case (solar powered or dual powered) – pocket size (1)
Clear Walkman Adapter (1)
Coax cable –6' (1)
LED Battery Operated Lamp – clear (1)
Earbuds (1)
Electric razor & cord – can be battery operated – clear – no trimmer (1)
Extension cord – 6' (1)
Extension for head phones – 6' (1)
Fan (clear 8"or10") – clear with cord not to exceed 6' (1)
MP3 Player (1)
MP3 Player Holder, mesh (1)
Replacement blades for battery razor (1)
Surge protector (1 with a cord no longer than 2 ft. and only 3 receptacles) – clear--DELETE
Television (no speaker, clear) – 8"-15" flat screen – attached cord not to exceed 6' (1)
Watch (standard) – clear – no special features (1)
Watch band replacement – clear (1)
Trimmer, clear (w/aa batteries) (1)
Y Adaptor (1)

FOOD:
BBQ Sauce (10 packets)
Beans/refried beans and rice variety (8)
Beef stew – foiled package (4)
Beef summer sausage (4)
Boneless ham – 8 oz. (4)
Boneless roast beef with or without gravy (4)
Boneless turkey with or without gravy (4)
Cereal 22oz. or smaller – clear bag (2)
Cheese – plastic – individual packets (limit 24 individual packets or 2 tubs)
Cheese Sticks (24 Individual sticks)
Chicken with or without gravy (4)
Chili with or without beans – foiled packages foiled packages (4)
Chunk white chicken and broth (4)
Egg Crystals (4 individual packets)
Foil Pack Beef (9)
Foil Pack Chicken (9)
Foil Pack Ham (9)
Foil Pack Turkey (9)
Floured tortillas (2 packages)
Granola/Cereal Bars (2 boxes)
Mild sauce or Picante Sauce individual packets – no squeeze bottle (limit 24)

Jalapeno slices (no juice) – individual packets (limit 24)--DELETE
Jelly (no squeeze bottle) – individual packets (limit 24)
Macaroni and Cheese Dinner (6)
Mayonnaise – individual packets (limit 24)
Ms. Dash or other Salt Substitute (1)
Mustard – individual packets (24)
Peanut butter – ( 24 individual packets)
Pepperoni slices (2 packages)
Pickles – individually wrapped (4)
Pop Tarts (2 boxes)
Powdered/Dry Milk (1)
Ramen/Top Ramen noodles – Oodles of Noodles (24)
Refried Beans (4)
Rice – clear package (4)
Salad Dressing – individual packets (24)
Salsa (2)
Seafood Items--Sardines/Mackerel/Tuna/Clams/Fish Steaks/Salmon/Shrimp/etc. – foiled packages (12)
Sausage and cheese (4)
Sweetener – non-sugar – (100 individual packets or less)
Tokyo dinner (8)
Vegetables (pouch or plastic containers only) (4)
BBQ Sauce
Jelly
Spice
Mac & Cheese

MISCELLANEOUS:
Arch supports- pair (2)
Assorted games – no dice/play money (3)
Blanket – neutral color/earth tone (beige /tan) (1)
Bowl – 24 oz. without lid (1)
Calendars – seasonal (1)
Checkerboard
Checker set
Chess set no larger than 2.5 inches and have a removable and/or wooden bottom.
Coffee mugs/tumblers – Clear non-insulated plastic without lids and handles (1)
Cooling Towel, White or Tan (1)
Dominos
Eyeglasses- (non-metal frames) - (2)
Laundry bag – small mesh (2) – no string
Laundry soap individual packets (20)
Medical Devices
Playing cards/pinochle cards (2)
Racquet/Hand balls (1)
Rug – prayer (special order Business Office) (1)

NUTS AND SNACKS:
Beef deli stick (2)
Beef jerky (2)
Chips, popcorn, pretzels, etc. – 14 oz. bags or smaller (6)
Nuts – no shells (2)

PAPER PRODUCTS:
Address book – pocket size (1)
Box of Blank Envelops (1)
Dictionary (paperback) – Spanish/English or combination (1)
Filler notebook paper – 200 count – 8½"x 11", standard rule (1 pk)
Find-A-Word Crossword (no staple) (1)
Large (self-seal) envelopes – 9" x 12" (10)

Legal pads – 8 ½" x 11", yellow only (2)
Pencils, lead no longer than 4" (3)
Pens – Bic clear/flex no longer than 4" (4)
Photo albums – w/plastic/no metal – 8½" x 11" (2)
Pre-stamped envelopes (40)
Thesaurus- (1)
Typing Paper
Writing tablets (3)
Wireless notebook (3)

OVER THE COUNTER MEDICATIONS (1 each unless other wised marked):
Anti-fungal foot/jock itch cream (Tinactin)
Hydrocortisone cream (low concentration)
Benadryl cream
Ranitidine (generic Prilosec)
Gas-X
Hemorrhoid Cream
Fiber tabs or Metamucil
Pepto-Bismol
Kaopectate
Vitamins (C, D, E, MVI)
Calcium
Lactaid
Ensure or Boost
Saline Nasal Spray
Sore throat Lozenges (2)
Loratidine
Ibuprofen
Muscle Rub
Aspirin
Dandruff shampoo (2)
Coal Tar shampoo (2)
Coal Tar lotion
Bacitracin or triple antibiotic ointment
Ear was removal drops
Sensodyne toothpaste
Reading Glasses – non-metal
Certain generic splint sleeves – wrist, elbow, ankle, knee
Corn Pads
Artificial tears
Cole sore ointment (Blistex or Abreva)
Tylenol or other pain relievers/non-aspirin no more than 24 tablets (1)

PERSONAL CARE:
Acne treatment – 1 oz. tube (2)
After Shave – no alcohol (1)
Ambi Fade cream (2)
Antacids – Rolaids (2)
Baby powder – individual packets only (no larger than 2oz) (2)
Bar soap or cleansing/complexion bar (4)
Bar soap box – clear (4)
Chap Stick (2)
Cold/allergy medication (2)
Cocoa butter sticks (2)
Conditioners – clear bottles – not to exceed 4 oz. (2) or individual packets (30)
Cough drops (1) bag
Denture cleanser products – tablets (2) boxes
Denture cup – clear plastic (1)
Denture floss loops- bags (1)
Denture grip/adhesive- tube (1)

Dentures (1)
Deodorants or deodorant/antiperspirant (2)
Detergent
Eye drops (1)
Nail clipper – (small) no nail file (1)
Foot powder – individual packets only (no larger than 2 oz.) (2)
Hairbrushes – military brush (no long handles/commissary approved only) (1)
Hair combs or Afro comb – 4" or less (no long handles) (1)
Hair Dressing (2)
Hair grease and styling gel products – non-alcohol (2)
Hair pick – plastic only with no handle/made of flexible plastic (1)
Lotions, skin care products – non-alcohol/bottles/clear not to exceed 4 oz. (1) or
(30) individual packets
Magic Shave – cream (1)
Mirror – 4" x 6" or less – non-shank (1)
Mouth Guard (1)
Mouthwash – non-alcohol – 6 oz. or less, clear container (2)
Nasal Spray (2)
Ointment (2)
Petroleum jelly (1)
Q-Tips/cotton swabs – small bag or small cardboard box (1)
Shampoo – clear bottle/not to exceed 4 oz., non-squirt bottle (2) or (30) individual
packets
Shampoo Dandruff (2 bottles 4oz or smaller)
Shave creams/gels (1)
Skin Cream (2)
Sunscreen (1)
Toilet paper - 4 rolls or less
Toothbrush – may not exceed 4.5" (3)
Toothbrush holder – clear (1)
Toothpaste – non-alcohol – medicated – clear tube (2)

READING/LEGAL MATERIALS/PAINTINGS:
Publications –individual in custody are allowed a combination of up to (25) approved publications which must be stored  in their correspondence box. Publications which do not fit in the correspondence storage box may be stored in the individual in custody's personal property box. Individual in custody are permitted to have one (1) holy book, such as the Bible or Koran, outside their storage box.
Legal materials – as needed.

RELIGIOUS MATERIALS:
(All religious items are subject to safety and security of the individual and the institution)
Religious symbols (medal or medallion not to exceed 2" diameter and chain not to exceed 24 inches in length and combined value of medallion and chain shall not exceed $50.00.  To be worn under clothing) -1
Prayer rug (only if essential part of religious faith)- 1
Tallit or Prayer shawl (only if essential part of religious faith) -1
Tzitzit or fringed garment (only if essential part of religious faith, only to be worn under clothing, and not to be                    worn as jewelry) -2
Phylacteries or Tefillin (only to be worn in cell or Chapel and only if essential part of religious faith)-1
Rosary beads or prayer beads (solid black, brown, or white and not to be worn as jewelry and only if essential as a part of Religious faith)- 2
Religious headgear: yarmulke or kufi (black, brown, or white and only to be worn in cell or Chapel and only if essential part of religious faith)- 1
Fezzes (maroon and only to be worn in cell or Chapel and only if essential part of religious faith) – 1

AUDIOVISUAL:
Head cleaner (tape type) – 1
Tapes – 18 (no screws).

**NOTE**:   Committed persons shall be permitted to receive or possess commercially made religious audio cassettes, sealed In cellophane or similar a material not available through the commissary and are sent directly from a manufacturer, retailer or distributor. Committed persons shall also be permitted to receive or possess religious audio cassettes directly from religious Organizations. The Chief Administrative Officer or Chaplain may review and deny such audio cassettes if they are deemed to pose a threat to the safety or security of the institution. If such audio cassettes are denied, they shall be submitted to the Religious Advisory Board for review

Individual in custody may order or receive books on tape from Recorded Books, Music by Mail, or Christian Book Distributers. If the individual in custody wishes to order a book on tape from another vendor, he must seek prior approval from the Assistant Warden of Programs.

Addresses for Approved Vendors:

| | |
|---|---|
| Recorded Books, LLC | Christian Book Distributors |
| 270 Skipjack Road | PO Box 7000 |
| Prince Frederick, MD  20678 | Peabody, MA  01961-7000 |
| Perspectives | |
| PO Box 2985 | |
| Laurel, MD 20709 | |

## Control of Personal Property and Correspondence Storage Boxes and Lids

1. Personal property storage boxes and correspondence storage boxes shall be tracked at the facility to allow accountability for damages caused by the individual in custody.

2. A personal property storage box shall be issued for each individual in custody received at a facility unless a personal property storage box was transferred in with the individual in custody. The assignment or transfer of all personal property storage boxes shall be tracked at the facility.  Excess personal property that cannot be stored in one personal property storage box shall be confiscated and handled in accordance with the provisions outlined in Department Rule 501C.  A Notice and Course of Action for Excess Personal Property, DOC 0410, shall be processed and a copy shall be given to the individual in custody.

3.Upon an individual in custody's request, a correspondence storage box shall be issued to the individual in custody and documented unless a correspondence storage box was transferred in with the individual in custody or he already has a correspondence storage box in the living area.  The correspondence storage box shall be tracked at the facility.

**F.**     Individual in custody must have correspondence box full of legal only.  Excess legal materials that cannot fit into the individual in custody's correspondence storage box shall be stored and maintained in a secure area of the Personal Property Storage Building.

1.     The individual in custody may inventory and pack the additional correspondence storage box(s). Cardboard storage boxes may be used for materials not stored in the individual in custody's living area.

2.     A receipt for the correspondence storage box(s) shall be signed by the individual in custody.  A copy of the receipt shall be placed in each of the box(s) in the presence of a staff person, a copy of the receipt shall be maintained by a designated staff person, and one copy of the receipt shall be issued to the individual in custody.

3.     The storage box shall be sealed by the designated staff person in the presence of the individual in custody and clearly labeled with the individual in custody's name, number, the designation of "excess legal material" and the total number of storage boxes (i.e. 1 of 2, 2 of 2, etc.).

4.     To gain access to the material, the individual in custody must submit a written request seven days prior to the desired review date, absent verified court, statutory or statute of limitations deadlines or other verified emergency. The individual in custody shall be allowed access to the material:

a.     Individual in custody must bring the full legal box with him to verify legal storage is needed.

b.     With the condition that he retrieve and return to his living area no more material than what will fit into the storage box(es) that are in his living area; and

       c.      Provided that he has been allowed access no more than once a week, absent verified court, statutory or statute of limitations deadlines or other verified emergency.

5.      Individual in custody Paralegals/Library Research Clerks shall not be subject to the once per week access restriction in relation to the work he does on other individual in custody' cases.

6.      Individual in custody names and numbers, access request dates, date of approval or denial, and if applicable, the reason for denial shall be documented.

7.      A DC 434 Incident Report shall be completed any time an individual in custody refuses a personal property legal exchange pass.

**G.**      Individual in custody shall store all personal belongings except those items in paragraph II.G in the personal property storage box or correspondence storage box prior to movement.

1.      A warning shall be given to indicate that movement will begin shortly.  All property must be returned in the appropriate personal property storage box and correspondence storage box; the box lids shall be closed; and the personal property storage box and correspondence storage box shall be stored under the bunks prior to inspection.

2.      Individual in custody who refuse to comply with the order to return their property prior to the appropriate personal property storage box and correspondence storage box prior to movement:

       a.      Shall not be permitted movement;
       b.      May be refused the service or privilege for which the movement is needed
       c.      Shall be subject to disciplinary action in accordance with Department Rule 504A.

      NOTE:  Exceptions to this policy shall be made for court ordered writs, attorney telephone calls, medical reasons, and Administrative Review Board and Prisoner Review Board proceedings.

**H.**      When an individual in custody is placed in Restrictive housing, the personal property storage box and correspondence storage box shall be stored and maintained in a secure area of the Restrictive housing personal Property Storage Building.

**I.**      When an individual in custody is transferred:

1.      To any facility utilizing storage boxes, the individual in custody's personal property storage box and correspondence storage box shall also be transferred and tracked locally at the receiving facility.

2.      To a facility that does not utilize personal property or correspondence storage boxes, the individual in custody's property shall be inventoried and packed in standard transfer boxes in accordance with Department Rule 535.  The personal property and correspondence storage boxes shall be retained at the sending facility and shall be tracked locally.

**J.**      In accordance with the provisions of Department Rule 535, staff shall pack an individual in custody's property in the event of an emergency or when during a cell, unit, or facility transfer, the individual in custody's behavior is threatening, violent, or dangerous or he must be immediately moved. In all such cases, a Correctional Lieutenant (when possible) or a staff witness shall be present with the packing staff person to ensure no damage or theft occurs before property can be inventoried.  Packing shall be in accordance with the priority packing list established by this directive.  Excess property items shall be confiscated and handled in accordance with the provisions outlined in Department Rule 501C and the DOC 0410 shall be processed and a copy shall be given to the individual in custody.

**K.**      Individual in custody shall be notified of personal property procedures via Orientation Manual, Warden's Bulletins, and by announcements on the institution television channel.

**L.**     In accordance with Department Rule 504.620(t), property may be removed or restricted as approved by the Warden if the individual in custody destroys, damages, alters, or abuses property in a manner that jeopardizes the safety of any person or the facility or disrupts institutional safety or order.

**M.     Outgoing Electronics Procedure:**

1.     Staff shall ensure TV's, radios, and any other permit items are in working condition.  Appropriate notations shall be made on the inventory form.  Specifically note if the item is inoperable, and if so, note that the individual in custody was given a 30 day notice to have the item mailed home or destroyed.  A DOC 0300, Shakedown Record/Confiscated Contraband form shall be completed and processed, as well as a DOC 0434 Incident Report.

2.     Any existing damage found to permit items should be noted on the inventory form (e.g., chipped, cracked, missing buttons, etc.).  Electronic Items shall be packed in a cardboard shipping box and padded with the individual in custody's clothing to secure items inside the box for shipping.  (If clothing is not available, air packing cushions should be used.)

3.     All items should be packed, and the inventory recorded on an inventory form in the presence of the individual in custody.  The individual in custody should sign the form.

4.     If the individual in custody cannot be present at the time the property is being packed, note "Individual in custody not present" on the form.  Note any damage including scratches, chips, missing buttons, etc.  Ensure items are in working order; otherwise, make notations accordingly.  If inoperable, the items shall be confiscated.  A DOC 0300 Shakedown Record/Confiscated Contraband slip shall be issued and the individual in custody given 30 day notice to have the item destroyed or mailed home.  A DOC 0434 Incident Report shall be written.

**N.     Incoming Electronics Procedure:**

1.     All permit items shall be listed on an inventory form.

2.     Staff shall ensure TV's; radios and any other permit items are in good working condition.  Notations shall be made on the inventory form.

3.     Any damages shall be noted on the inventory form and a DOC 0434 Incident Report shall be completed notating the specifics.

4.     Individual in custody shall receive copies of personal property receipts along with transfer contracts for items.

5.     All items shall be listed and signed by the Personal Property Officer as well as the individual in custody verifying that all his personal property has been received in working condition.

6.     A copy of all paperwork shall be placed in the individual in custody's master property file and the facility's permanent property file.  Items shall be logged in transfer property logs.

7.     Any non-functioning items shall be confiscated, and a relinquishment of personal property form completed.  A shakedown slip shall be issued, and a DOC 0434 Incident Report shall be written.  The item shall be stored in Personal Property for a <u>minimum</u> of 60 days.  Having the item available will assist in the grievance process.  The individual in custody has 60 days from the date he becomes aware of an issue to file a grievance.

**NOTE:**  In the event the individual in custody notes on the 30 day confiscation form that a grievance is filed in regard to personal property items, possession of the item shall be maintained until a final resolution is determined by the facility/ARB.  If the item in question cannot be maintained for a prolonged period, such as food items due to sanitation issues, specific documentation should be maintained noting the reason necessitating the items be destroyed.

**O.**     Parolee Personal Property – The facility is required to accept the personal property items Of Parole Violators, Extraditions, or any Parolee/Individual in custody turned over to Menard's custody and shall ensure property items are inventoried, signed for, and securely stored at the time the Parolee/Individual

in custody is dropped off outside of normal working hours or weekends.

1.      Upon arrival at the facility, the escorting official(s) and Parolee/Individual in custody will enter the facility through the Main Gate "Electric Eye" where the escorting staff will sign in.

2.      Staff and Individual in custody will then be escorted to the North II Double Gate where the Individual in custody will be signed in and brought up to the Restrictive housing Visiting Shakedown Room for search.

3.      All items of clothing and personal items will be confiscated at that time and documented on a DOC0300, Shakedown Record/Confiscated Contraband Form, and distributed in accordance with the distribution list at the bottom of the form.

4.      All items shall be stored in the Personal Property Box located in the shakedown room.

5.      Personal Property Officers will process items in accordance with Department Rule501C and Administrative/Institutional Directives 05.10.110, 05.10.115 or 05.10.120.  The Individual in custody will be given a choice to designate whether unallowable property items are destroyed or mailed home at their expense.

## Reimbursement For Expenses (730ILCS 5/3-7-6,3-12-1,3-12-2)

## Recovery of the cost of incarceration

730ILCS 5/37-6, 3-12-1, 3-12-2 and 3-12-5 stipulates the guidelines under which all correctional facilities within the Department shall recover the cost of incarceration.  Effective January 1, 2003, all individual in custody shall be required to disclose their assets to the Department of Corrections on the Financial Status Report.

Failure to cooperate shall be considered for parole determination and shall subject the individual in custody to disciplinary action including loss of Good Conduct Credits of up to 180 days.

At any time that it is suspected that the financial status of an individual in custody has changed substantially since the last Individual in custody Status Report, an updated report may be requested.

## CHAPLAINCY SERVICES AND RELIGIOUS PRACTICES (DR 425)

The Chaplaincy Department schedules various religious services throughout the week in order to accommodate individual in custody's various religious needs.  Contact cell house staff or write to the Chaplaincy Department in order to obtain schedule of services.

## INSTITUTIONAL RULES

The following is a list of rules and instructions, which will guide you in your day-to-day life at this correctional facility. It is the individual in custody' responsibility to familiarize his self with these rules and with others discussed throughout this manual.

1.      **When entering a cell, you must be sure that no contraband articles are in that cell, because you are responsible for everything in your cell at all times.**

2.      **You are subject to search by any employee at any time.**

3.      **When out of cell, individual in custody must be fully dressed.  Individual in custody are to wear an issued state blue shirt (tucked in and buttoned up to the button directly below the collar button), issued state blue pants (buttoned and worn around the waist), and shoes (shoes can be approved tennis shoes or stated used shoes/boots).  All clothing will be worn the proper way (i.e. pant legs the same length, hats facing straight ahead, no clothing worn inside out, both shoes tied, etc.)  Absolutely nothing will be worn off to one side or the other.**

4.      **You are required to keep your cell walls, bars, windows, bed, wash basin, toilet stool, floor, and furniture**

clean at all times.

5.  Anything not issued by the institution, not purchased in the commissary, or not permitted by special order will be considered contraband and anyone found in the possession of contraband will be considered to be the owner of that contraband and issued a disciplinary ticket.

6.  Radios, MP3 players, Tablets, and TVs will be registered and engraved with the individual in custody's name and number by the Personal Property Officer. These items are not to be loaned to other individual in custody as they would be considered contraband. You must have an up-to-date permit for each of these items and your number must be engraved on it.

7.  Scratching, marring, or unauthorized painting of a cell or cell walls is not permissible.

8.  Garbage is to be placed in the garbage receptacles which are found in the cellhouses. You are never permitted to throw garbage out of your cell onto either the gallery, or the cellhouse flag.

9.  You are responsible for all state property which is issued to you and it is your responsibility to return this property upon your release from this facility. Failure to do so will result in you being charged with the price of the missing articles.

10.  Only approved furniture is allowed in your cell.

11.  You are not allowed to sign your name to anyone else's checks, vouchers, or receipts for anything which is not your own property.

12.  You may possess only books and magazines which have been issued by the library or school, or those that are allowed under Department Rules.

13.  Running, except when participating in games in the yard, is strictly forbidden anywhere on the grounds or within the structure of this correctional facility.

14.  Individual in custody should have no direct contact with any fencing surrounding yard areas.  No leaning, pulling, hanging, etc. will be allowed.

15.  You are not allowed to obstruct or darken a light bulb in your cell. You are not allowed to cover the bars of your cell since this obstructs the view of your cell and can cause a fire hazard. This especially includes the use of sheets, blankets, or cardboard.

16.  Sunglasses or tinted glasses are not permitted unless approved by the institutional physician or authorized with a permit.

17.  When a signal is given for count, you must be in plain view of the counting officer. If the signal is given for a recount, you must be in plain view. Lights must be on for all counts.

18.  You must take prescribed medication when it is given to you. Under no circumstances are you allowed to accumulate any type of controlled medication since this will be considered contraband and confiscated.

19.  You must carry your I.D. card on your person at all times whenever you are out of your cell. You must produce your I.D. upon request of any employee.

20.  During escorted line movement individual in custody will be paired up and must remain paired up while in line.  Individual in custody will move in an orderly fashion. Any type of disruptive behavior, disorderly conduct, or yelling while in line movement is not permitted.

21.  You must remove caps, hats, and earmuffs when entering the dining room.

22.  When entering the dining room, you will be seated by an officer, and you are not allowed to change seats.

23.  IDR's will be issued for any item removed from the dining room i.e., food, milk, juice, utensils, etc..

24.    In accordance with Illinois Administrative Code 425, Chaplaincy Services and Religious Practices (AD 04.25.101), religious headwear and ceremonial headwear may be possessed by an individual in custody (including but not limited to kufis and yarmulkes) shall be of a solid color, black, gray, or white; fezzes shall be maroon; crowns and headbands may be multi-colored.

Individual in custody currently in possession of religious headgear not meeting the above conditions will be required to either mail home or destroy the unapproved item through Personal Property.

The wearing of ceremonial headwear, religious garments, and the use of prayer rugs shall be limited only to the individual in custody's immediate sleeping area during prayer and to the area of religious service provided that verification is submitted that the wearing of the religious headgear, religious garments or use of a prayer rug is required by the committed person's designated faith. The religious headwear (including but not limited to kufis and yarmulkes) may be worn at all times.  If you are observed wearing ceremonial headwear, religious garments or are in possession of a prayer rug outside the authorized areas, a disciplinary ticket will be issued.

25.    All individuals in custody are to close their cell door when leaving and returning to their cell for any type of movement.

26.    When in your cell, you are permitted to converse with other individual in custody.  This must be conducted in a normal   talking voice.    Yelling is not permitted.

27.    Mirrors are not to be used for purposes other than for personal hygiene; they are not to be used as "lookout" devices.

28.    Earbuds must be utilized when using audiovisual equipment. Earbuds may only be worn          outside of cell when recreating. Earbuds shall not be worn during line movement. Earbud cords
          Are not to be used as a laundry line.

29.    When entering your gallery from line movement, you are to proceed directly to your cell.  When exiting your cell, you are to proceed directly off the gallery.

30.    Religious medallions, Rosary Beads and/or Prayer Beads are not to be worn as jewelry, Religious medallions are to be worn under Shirts/ T-shirts

31.    Rubber bands and or dental floss are not to be used for ponytail holders.

32.    An individual in custody who possess a special cuffing or medical device permit must carry said permit on their person any time they exit their cell.

## Renunciation Policy:

Effective 06/01/00, Administrative Directive 05.08.105, RENUNCIATION OF AFFILIATION WITH SECURITY THREAT GROUPS, was made applicable to all individual in custody in the custody of the Illinois Department of Corrections.

Administrative Directive 05.08.105 provides individual in custody an opportunity to renounce affiliation with a Security Threat Group at any time. However, requests will not be considered more than once every 180 days.

When an individual in custody decides to renounce affiliation with a Security Threat Group, a request to renounce must be submitted in writing. All individual in custody shall submit written requests addressed to the appropriate Case Work Supervisor. The request is then hand delivered to the Clinical Services Supervisor. Subsequently, the individual in custody shall be interviewed regarding the request to renounce Security Threat Group affiliation. In order to renounce affiliation, an individual in custody must cease all Security Threat Group activity and convince the Department he will no longer be a participatory member of a Security Threat Group.

After the interview has been conducted, a decision will be made on whether to accept or reject the individual in custody's request to renounce. When that decision has been made, the individual in custody shall be advised of whether his request was accepted or rejected. If the renouncement is rejected, the individual in custody may grieve the decision in accordance with D.R. 504.

## Specimen Collection/Mandatory DNA:

Illinois law requires that all individuals convicted, found guilty, or incarcerated in a Department of Corrections facility for a felony offense on or after August 22, 2002, submit a DNA specimen prior to their release as a condition of their release. The specimen shall be sent to the Illinois State Police for genetic marker grouping analysis.

Buccal swabs shall be used to obtain specimens unless the buccal specimen is not adequate, the individual in custody is physically unable to perform the swab, or the individual in custody refuses to provide the specimen.  In those instances, the specimen shall be collected through a blood draw.

NOTE:  Individual in custody who are physically unable to provide a specimen shall NOT be subject to disciplinary action for failure to provide a specimen.
Refusal to provide a specimen:

1.  Shall result in disciplinary action including but not limited to revocation of good conduct credits.

2.  Shall result in forcible blood draw specimen collection.

3.  May result in referral to the State's Attorney for prosecution.

## Prison Rape Elimination Act (PREA) Sexual Abuse/Sexual Harassment Awareness & Prevention

It is the policy of the Department to provide a safe and secure environment for all individual in custody and to maintain a program for the prevention of sexual assaults.

If you should be a victim of a sexual assault, report this to the nearest staff member. You are not required to name the attacker. You will be referred to the Health Care staff for follow-up counseling and testing for sexually transmitted diseases. It is important for your health and safety this is done immediately. If you are being pressured, there are certain things you can do to prevent an assault. **DO NOT** be a loner, interact with other individual in custody. See your counselor or other staff members for further help. **DO NOT** wait.

The Prison Rape Elimination Act (PREA) is a federal law that prohibits and seeks to eliminate sexual abuse and sexual harassment in correctional institutions and community corrections settings. The Department of Corrections is committed to providing a safe and healthy environment for staff and individual in custody.  The Illinois Department of Corrections has zero tolerance for sexual abuse or sexual harassment of any person or sexual relationships between staff and individual in custody.  Individual in custody who have consensual sexual contact with another individual in custody will be disciplined.  Individual in custody who initiate non–consensual sexual contact with another individual in custody will be disciplined and referred to law enforcement.  Employees, contract staff, and volunteers who engage in sexual contact or sexual misconduct with individual in custody will be terminated and referred for criminal prosecution when applicable.

**Sexual abuse and custodial sexual misconduct are against the law.**
The Department is committed to your safety and the safety of staff. Sexual abuse and sexual harassment compromises everyone's safety.
The Department has ZERO TOLERANCE of sexual abuse and sexual harassment. That means we are committed to investigating EVERY allegation, getting services to EVERY victim, and punishing EVERY perpetrator. That includes involving law enforcement and prosecutors.

### What is sexual abuse
•   Anytime another inmate sexually touches the sexual parts of your body, forces you to touch the sexual parts of their body, has sex with you without you're ok, or forces you to have sex with someone else without your ok, it is against the law.

Anytime a staff member, contractor, or volunteer makes sexual advances or comments, sexually touches you, forces you to touch them, or has sex with you, it is against the law. Even if you wanted or invited it, the

staff person is not allowed to respond. This does not include routine searches or touching for certain medical procedures.

**What is sexual harassment**
- Repeated and unwelcome sexual advances, requests for sexual favors, or verbal comments, gestures, or actions of a derogatory or offensive sexual nature by one inmate toward another.

- Repeated verbal comments or gestures of a sexual nature to an inmate by a staff member, contractor, or volunteer; including demeaning references to gender, sexually suggestive or derogatory comments about body or clothing, or obscene language or gestures.  Including voyeurism by staff for reasons unrelated to their official duties.

**Examples of sexual abuse / sexual harassment**
- Rape
- Someone forcing you to have sex with them or another person to repay a debt
- Someone offering you protection in exchange for sex
- A staff person offering you a privilege or a favor in exchange for sex

**How to prevent sexual abuse / sexual harassment**
- Anyone offering you favors, lending you things, or providing you protection, may be setting you up for an assault or targeting you as a potential victim. DON'T DO IT!

- Be aware of situations that make you feel uncomfortable. Trust your instincts. If it feels wrong, leave or call out for a staff member. It's your right to say "NO," "STOP IT," or "DON'T TOUCH ME!"

- If you or someone else is being pressured for sex, tell a staff member immediately. You don't need to wait for an assault to happen to ask for help.

- Be aware of areas where it may be hard to be seen by staff or where you would have trouble getting help if you needed it.

- Stay out of other people's cells and keep them out of yours.

- Be alert – contraband such as drugs and   alcohol will make it hard for you to stay alert and make decisions.

**What to do if you've been sexually abused / sexually harassed**
- Get to a safe place.

- Even if you want to clean up immediately after the event, it is important to save the evidence.

- Don't use the bathroom, don't brush your teeth, don't shower, or don't change your clothes.

- Report it, even if you don't have any evidence. It doesn't matter when the abuse happened.

- Tell ANY staff person. Or drop a note to a trusted staff. Or tell a family member to call the PREA Report Line. Or you call the PREA Report Line.  Or write to any of the below addresses.  ***PREA Report Line (217) 558-4013***.

- Get victim services through mental health, medical staff, or your counselor. They will know how to get services for you.

**How to report sexual abuse / sexual harassment**
If you are a victim of sexual abuse / sexual harassment OR you suspect someone else has been sexually abused / sexually harassed or involved in sexual misconduct with a staff member, you need to report it.  A thorough and impartial investigation has to be conducted.

1. Talk to any staff member you feel comfortable with.  This can be a security staff, counselor, nurse, ANYONE.  (or)

2. Send a note, request slip, or file a grievance and then place into the facility mail. (or)

3. Report the incident to the ***PREA Report Line 1-(217) 558-4013***.  This number can be accessed from inmate phones.  Simply enter your pin and dial this number, like any other phone call.  This call is free.

a. You will get a recorded message and you need to leave all the information you can or are comfortable giving.  Remember, we cannot investigate if we do not have enough information.

b.  What occurred, Who is involved, Where did this occur.  All information will be kept in strict confidence. (or)

4.  You may also write to the following address, if you do not feel comfortable reporting this to your facility:  Illinois Department of Corrections
    Attention: PREA
    1301 Concordia Court
    Springfield, IL 62794-9277

5.  If you do not feel comfortable reporting to anyone at your facility or through the PREA Report Line, you may also make a PREA report about sexual abuse or harassment to IDOC PREA officials by reporting through an independent outside entity, the John Howard Association of Illinois (JHA).

    **\*\*Please remember that mail is not the quickest way for you to get a response to your issue.\*\***

    JHA is a private non-profit entity that is not part of IDOC or the government that has "Privileged" mail status within IDOC, meaning that mail to JHA can be placed in a sealed envelope and labeled "Privileged" and should not be read by anyone at the facility. *See* 20 Ill. Admin. Code 525.110 and 525.130.

    JHA can receive PREA reports and will forward reports relating to sexual abuse and sexual harassment to IDOC PREA officials. You can request to be anonymous. Please state in your letter if you want your name to be included or not in the report that is sent to IDOC PREA officials. For PREA reports, JHA does not provide independent investigation or rape crisis counseling and JHA can only forward reports to IDOC PREA officials.   JHA does not maintain records or copies of allegations regarding to PREA.

    Write "**Attention: PREA**" on the top of your letter to JHA inside the envelope, if you want it to be forwarded to IDOC for investigation of sexual abuse or harassment concerns. If a letter to JHA is **not** marked "Attention: PREA" or does not report a PREA concern, relating to sexual abuse or harassment, JHA **will not** forward it to IDOC for investigation. Do not mark your letter "Attention: PREA" if it is not related to sexual safety concerns.
    Remember that you may also send JHA privileged letters about other, non-PREA issues that JHA will respond to. See your facility library or write to JHA for information about JHA's work.

        Send mail, including PREA reports, marked "**Privileged**" on the envelope to:
        John Howard Association
        P.O. Box 10042
        Chicago, IL 60610-0042

**REPORTING IS THE FIRST STEP**

IDOC investigates all allegations of individual in custody–on–individual in custody sexual abuse and staff sexual misconduct. Investigations are initiated by the Investigation Unit at IDOC Headquarters. Please understand without detailed information it is difficult to investigate a sexual abuse or sexual harassment situation.

 Individual in custody grievances involving alleged incidents of sexual abuse shall be exempt from any informal (counselor) grievance process.  Individual in custody grievances related to allegations of sexual abuse shall not be subject to any filing time limit.  For emergency grievances alleging an individual in custody is subject to a substantial risk of imminent sexual abuse, the Department shall provide an initial response within 48 hours and shall have a final decision provided within 5 calendar days

# How to Report Sexual Abuse or Sexual Harassment

## The Illinois Department of Corrections and the Menard

# Correctional Center have *ZERO TOLERANCE* towards all forms of sexual abuse and sexual harassment.

## Reporting is the First Step:

Report to **ANY** staff member;

Drop a request slip or 'kite';

Call the PREA Hotline: **(217) 558-4013**;

File a grievance; or

Write to any of the following:

| IDOC PREA Coordinator | John Howard Association |
|---|---|
| Write to: | Write *privileged mail* to: |
| Illinois Department of Corrections | John Howard Association |
| Attn:  PREA | PO Box 10042 |
| 1301 Concordia Court; PO Box 19277 | Chicago, IL  60610-0042 |
| Springfield, IL  62794-9277 | |

**\*\*Anonymous reports or reports made on someone's behalf (3rd party) may be submitted\*\***

## The Next Steps

If you are a victim of sexual abuse, individuals in custody may contact victim advocates for emotional support services related to sexual abuse.

If you would like additional information regarding emotional support services, you may contact your Counselor, Mental Health, Facility PREA Compliance Manager or write to:

Call For Help, Inc.
28 Bronze Pointe; Suite B
Swansea, IL  62226
(618) 397-0975

## PROGRAMS AND SERVICES

### EDUCATION

The Illinois Department of Corrections primary educational goal is to ensure that resources are effectively and appropriately used to assist you in meeting your academic and vocational goals. In consideration of this, new priorities have been established for determining individual in custody access to educational and vocational programs. Beginning 9/16/99, individual in custody eligible for educational or vocational assignments who are not currently assigned shall be placed in their requested or mandated educational program if there is space available. If classes are filled to their established capacity, individual in custody shall be placed on a waiting list for the specific program requested or required based on the following priority schedule. Please note, if upon entry you have alleged that you have a GED/HSE or High School diploma you may not qualify for some education programs.

74

Placement of individual in custody serving indeterminate sentences shall be done based upon outdate.

Note: The GED Program is now referred to as Adult Secondary Education (ASE).

Individual in custody with sufficient time remaining to complete a significant portion of a program will have placement priority over those who do not.

Placement of individual in custody serving indeterminate sentences shall be done based upon outdate.

The Educational Administrator is responsible for organizing waitlists for the educational program offered at the facility. Your position on a particular waitlist may fluctuate with changes in the institutional population. This procedure shall not guarantee any individual in custody placement into a program or prohibit other factors from determining eligibility for any educational program or placement on the waitlist.

The Menard school system is an attendance center for the Department of Corrections Adult Division. Programs are offered on both full time and part time basis for persons in need of Adult Basic Education, Adult Secondary Education (ASE), and vocational training.

The Menard school system has a limited class enrollment at night for individual in custody who work on a daytime assignment. In order to qualify for Night Adult Secondary Ed Class, an individual in custody must have scored a 8.0 average on the TABE Test and have a primary work assignment listed on the O360 roster. Individual in custody who are assigned to this class must show academic achievement to remain. If an individual in custody is removed from his job assignment, he will be automatically dropped from Night Adult Secondary Ed Class by the Placement Office.

All individuals in custody; except for those with less than a 2 year sentence, those with a life sentence, or those returning to Menard Correctional Center on a technical parole violation; are required to be tested with the TABE achievement test within 40 days from reception (or whenever feasible). Refusal to participate in testing will result in disciplinary action. Any individual in custody who scores less than an average of 6.0 is required to participate in Adult Basic Education for a period of 90 days. A mandatory student may be recommended for testing after 45 days of instruction if ample knowledge of the subject matter is shown. If an individual in custody's attendance is interrupted during the 90-day period for more than 30 days due to absences not due to transfers, lockdown, or days when no school was offered, the individual in custody will restart the program without any credit being given for previous attendance. Refusal to attend or poor attendance will result in disciplinary action.

The Adult Basic Education Program contains classes in basic Language Arts, and Mathematics.   This program is offered only on a full-time basis. Individual in custody in the program receive 120 minutes of instruction daily. The goal of this program is to enable the student to achieve a level of 6.0 on his TABE Test and either enter an Advanced ABE Class (6.0-7.9 or an ASE Class (8.0+) or higher. The goal of the Adult Secondary program is to enable the student to pass the High School Equivalency (HSE) Test.

## PROGRAM SENTENCE CREDIT (PSC)—EDUCATION

Individuals in custody who meet the eligibility requirements for PSC are required to meet certain established goals to earn the credit of **1.0** days of sentence reductions for the number of days covered by the goal period.

This program is intended to reward those students that are eligible and who complete their educational goals.  The educational goal statement formalizes an educational goal that consists of three parts: part one of the goal is an attendance requirement, part two is a behavioral requirement, and part three is the educational achievement goal.  Students must meet all three parts of the goal for the goal statement to be met.

All active students eligible for PSC awards shall sign a goal statement form that will detail performance and time requirements.  Refusal to sign a goal statement shall result in the individual in custody being dropped from the program.  Mandatory students who refuse to sign a goal statement will be dropped from the program; their name placed on the bottom of the waiting list and issued a disciplinary report.

## VOCATIONAL

The Educational Administrator is responsible for organizing waitlists for the vocational programs offered at the facility. Your position on a particular waitlist may fluctuate with changes in the institutional population. This procedure shall not guarantee any individual in custody placement or prohibit other factors from determining eligibility for any educational

program or placement on the waitlist.

Construction & Building Maintenance offers three different levels of learning in the construction trade (Core, General Carpentry, Advanced Carpentry). At each level, nationally recognized certificates can be earned from National Center for Construction Education & Research (NCCER).

Requirements to be eligible for enrollment: 8.0 on TABE and high school diploma. It is possible to earn EPSC in this program.

## CLINICAL SERVICES (CASE MANAGEMENT/COUNSELING)

The purpose of the Clinical Services Department at the Menard Correctional Center is to provide support and services to individuals in custody to assist them in their adjustment, involvement in programs, and reintegration into society. The Clinical Services Department functions under a case management system.

Individuals in custody are assigned a counselor according to their living unit. Each counselor meets with individuals in custody assigned to them after their release into general population. It is the counselor's responsibility to review the progress of every individual in custody assigned to them at least once every 60 days.

Counselors are responsible for providing individual counseling for their caseloads. In most cases, the counselor is the initial person who assesses the various requests made by an individual in custody. Counselors evaluate and refer individuals in custody to the Assignment Committee for security reductions, institutional transfers, pre-release placement, furloughs, and job placement. The counselor may also refer individual in custody to other departments and/or programs. The counselor is responsible for providing crisis intervention and referrals of individuals in custody to the Mental Health department. Initial efforts to resolve grievances should be presented to counselors. Counselors are also members of the Adjustment Committee, Assignment Committee, and Programs Team. Clinical Services personnel respond to most incoming requests for information. They prepare Parole Progress Reports for the Prisoner Review Board. In general, the Clinical Services Department is concerned with the delivery of services to individuals in custody. Clinical Services is also involved in assisting the institution in meeting its needs. If you need to speak with your counselor between your routine meetings with them, send your counselor a request slip.

## RISK AND NEEDS ASSESSMENT / CASE PLANNING

It is the policy of the Illinois Department of Corrections to provide a holistic and systematic approach to prepare an individual in custody for a successful re-entry into the community, beginning at the individual in custody's admission into the Department and continuing until his or her final release from supervision. Re-entry planning shall address an individual in custody's criminogenic needs and risk factors, programming needs, linkages to the community and appropriate community supervision activities following their release.

Individuals in custody admitted to the Department shall see a Corrections Assessment Specialist (CAS) or Social Worker II (SWII) while at the reception center to complete a risk assessment screening. Those who score as a moderate or high risk to recidivate will be scheduled to complete a full risk assessment. An individual in custody's risk to recidivate is based on the results of the completed risk and needs assessment. Risk levels can refer to both an individual in custody's risk of recidivism and individual domain scores, with programming and intervention needs recommended accordingly.

A case plan shall be completed for all individuals in custody that score moderate or higher on any risk and needs assessment tool, except for those individuals with an MSR date within sixty days of arriving at the parent institution. Case plans are an individualized plan for individuals in custody designed to target the individual's dynamic risk factors that are identified by the risk and needs assessment. Case plans will be developed by the CAS or SWII in conjunction with the individual in custody. The CAS or SWII shall make recommendations and referrals to appropriate programs and interventions based upon the individual in custody's risk level and needs, identified dynamic risk factors, and resources available. The case plan shall be reviewed and updated annually or upon completion or termination of programming and/or pro-social activities.

## CLINICAL SERVICES PROGRAMS

Menard Correctional Center offers evidence-based re-entry programs to individuals in custody at both the General Division and Medium Security Unit. These programs emphasize behavior modification and life skills development and are designed to assist participants in making changes to their thinking and behavior and gaining skills that will aid them during the remainder of their time in custody, as well as promoting positive community reintegration and reducing the risk of recidivism. Most programs are eligible for Earned Program Sentence Credit (EPSC) upon successful completion of the program. Programs offered at this facility are as follows:

- **AIM HIGHER:** Participants cover 12 different subject areas in which individuals in custody often struggle, such as criminal thinking and behavior, anger, violence, substance use, relationships, setting boundaries, re-entry, etc. Each subject provides a basic overview of each of these areas. **(24 Sessions, 2x per week)**

- **ANGER MANAGEMENT:** Participants learn to become more aware of their anger, events that trigger feelings of anger, cues for anger, and how to appropriately express their anger. Participants will also learn strategies to help them better take control over their thoughts, feelings, and expression of anger. **(10 Sessions, 1-2x per week)**

- **BUILDING CHANGE:** Helps participants gain better control over their impulses and reducing risky behavior. Participants learn to recognize thoughts, habits, and situations that can lead them to act impulsively, as well as strategies to help them think before reacting and instead act in more effective ways that are in line with their long-term goals. **(32 Session, 2x per week)**

- **DRUG AWARENESS:** Using the Hazelden "A New Direction" curriculum, participants are provided information on the risks and damage that substance use and criminal lifestyles have for themselves, their families, and their community. It also informs participants about relapse prevention techniques to help them reintegrate into society living a sober and crime-free lifestyle. **(10 Sessions, 1-2x per week)**

- **INSIDE OUT DAD:** Connects incarcerated fathers to their families, helping to improve behavior while incarcerated and to break the cycle of recidivism by developing pro-fathering attitudes, knowledge, and skills, along with strategies to prepare fathers for release. Participants get the tools they need to become more involved, responsible, and committed in the lives of their children -- providing increased motivation for them to get out and stay out. **(12 Sessions, 1-2x per week)**

- **MONEY SMART:** Participants gain knowledge and skills to help them manage money and create a stable financial future. This program covers topics such as values about money, tracking income and expenses, building savings, managing debt, credit and borrowing, and planning your financial future. **(13 Sessions, 1-2x per week)**

- **START NOW:** Based on the idea that, no matter what, we can begin to move forward by *starting now* and focusing on *ourselves*. The program uses a strengths-based approach to help participants change ways of thinking that lead to negative outcomes. Participants learn skills to cope with emotional problems, build better relationships, and meet their personal goals. **(32 Sessions, 2x per week)**

- **THINKING FOR A CHANGE:** Designed to help participants take control of their lives by taking control of their thinking and behavior. This program takes a highly structured approach with an emphasis on skills practice to help participants recognize risk, implement new ways of thinking, and develop social skills and problem-solving skills. **(25 Sessions, 2x per week)**

Programs are offered on a rotating basis determined by the level of need and available resources. Individuals in custody may request any of the above programs by submitting a written request to the Clinical Services department and identifying which specific programs they wish to participate in. If the program requested is not currently being offered, individuals in custody will be added to a waiting list for that program. Because the availability of programming is limited, priority for program selection is based on an individual in custody's case plan, but the following criteria is also considered:

1. Individuals in custody who have four years or less remaining to serve or to see the Prisoner Review Board.
2. Score of Very High, High, or Moderate on the Risk and Needs Assessment.
3. Recommendations from Prisoner Review Board, courts, etc.
4. Suitability (i.e., how motivated an individual in custody is to attend, participate, follow the program rules, etc.)

**Voluntary Sex Offender Treatment Program (VSOTP)**
Criteria: Individual in Custody has a criminal history of a sexual offense (not disciplinary infractions – 107 Sexual Misconduct)

- VSOTP is offered at Big Muddy River (Medium Security), Taylorville (Minimum Security), Logan (Women's Division).
- Individuals in Custody that are interested in VSOTP will notify Clinical Services verbally or in writing via request slip. Individual only needs to submit the request once on current incarceration, should they transfer to another facility their name will not be removed or changed on the waitlist.
- VSOTP is a treatment request not a transfer. The individual does not choose which facility they want to go to, this determination is made by the Transfer's Coordinator Office based on bed availability and appropriate classification. All security levels are eligible to make a request for VSOTP.

An individual in custody who has been convicted of a sex offense as defined in Section 2 of the Sex Offender Registration Act shall receive no sentence credit unless he or she either has successfully completed or is participating in sex offender treatment as defined by the Sex Offender Management Board.

An individual in custody that has successfully completed sex offender treatment in the community or through a different agency outside of the Illinois Department of Corrections may provide documentation to the Office of Sex Offender Services for review and determination of EPSC eligibility.

# HEALTH CARE SERVICES

Menard Health Care Unit provides the individual in custody population of Menard Correctional Center with Medical, Dental and Mental Health services.  The Health Care Unit consists of a First Aid Room, Treatment/Exam rooms, Medical Records Department, Dental Clinic, Laboratory, X-Ray, Eye Clinic, Physical Therapy, and Infirmary.

The Health Care Unit provides 24-hour nursing coverage and a physician on call 24 hours a day 7 days a week.  When medical problems develop that cannot be handled at Menard's medical facility an individual in custody will receive off site medical care.

## Reception and Classification:
During reception and classification intake medical services at Menard consist of blood tests for syphilis, Quantiferon Gold basic metabolic panel, hepatic panel, and HIV. A Quantiferon Gold blood test will be drawn to rule out exposure to TB. A medical history will be taken by a nurse.  You will be referred to a medical provider for a physical exam.  You will also be referred to the dentist for a complete dental exam.  The nurse will round the gallery daily to offer sick call.

## Sick Call Procedures:

The Health Care Unit has developed a system for providing healthcare needs while you are an individual in custody at Menard Correctional Center.

You are requested to report any non-emergency health problem in writing on a sick call slip.  The sick call request should include date, name, number, cell location and description of your medical complaint.  The sick call slip should be placed in the sick call box located in your housing unit during lockdown status sick call slips can be given to security staff; counselor; or nurse.  The assigned housing unit nurse will review these slips daily and place you on the nurse sick call line for the next day.  The morning you are scheduled for nurse sick call your cell will be deadlocked.  Once the nurse sick call visit is complete and your symptoms warrant you will be referred to a practitioner.
Emergency health situations should be reported to housing unit staff immediately for treatment.

A Health Care Unit pass will be issued to an individual in custody the evening before the health care service is scheduled.  You are encouraged to honor all call passes.  Accepting a call pass and subsequently failing to honor it may result in a disciplinary ticket.  You may refuse a call pass by signing a "Refusal of Medical Services".

## Medication Procedures:

Taking your medication as ordered by your practitioner will promote and maintain good health.  Medications will be delivered in two ways:  1) "Bubble Pack" which holds a 30 day supply of medication 2) Direct Observation Therapy which means the nurse will deliver your medication one dose at a time and will directly observe you taking the medication Direct Observation Therapy medications will be passed daily from 7:00 p.m. to 9:00 p.m. and 3:00 a.m. to 5:00 a.m. When the nurse delivers your medication, you should do the following:
1.      Present your I.D. card
2.      Have a drink ready
3.      Swallow the pill immediately
4.      Return any medication container to the nurse
Failure to comply with the medication procedure will constitute a refusal of medication, and the medication maybe discontinued.

## Living Will

An individual in custody 18 years of age or older may contact any HCU Staff to request information about a Living Will. You may contact a member of the HCU Staff if interested in completing a Living Will.  The Living Will must be renewed on a yearly basis and can be changed at any time.

## Health Education

During Reception and Classification, you will be enrolled in an Orientation Class.  The Orientation Class is taught by a Peer Educator.  A Peer Educator is an individual in custody that has been taught about certain health conditions.  The Orientation Class will include the following material:

- Acute and Chronic Sexually Transmitted Disease
- Hepatitis A, B, and C
- HIV/AIDS
- TB – Tuberculosis
- Annual Flu Vaccine
- Personal Hygiene
- Good Hand Hygiene to avoid spread of germs and Hepatitis A
- Avoid sharing items such as toothbrushes and nail/hair clippers to avoid spread of HIV and Hepatitis B & C
- Sick Call Process
- Medication Administration – "Bubble Packs" and Direct Observation Therapy

## Lab Services

Lab services are available Monday thru Friday.  You will receive a HCU Lab pass the day prior to the scheduled lab draw. To assure your labs are as accurate as possible the lab pass may instruct you to not eat or drink after midnight.

## Dental Services

The Dental Clinic provides routine dental services.  The on-site dental services include but are not limited to cleaning, fillings, and extractions.  At times it may be necessary to seek off-site dental services as determined by the dentist upon evaluation.  Individual in custody are responsible for submitting a sick call request slip to dental.  All dental sick call slips are to be placed in the cell house sick call box.

## Eye Clinic

The Eye Clinic provides routine eye exams and manages chronic eye disease.  An Individual in custody is eligible for a pair of eyeglasses every 2 years.  Your eyeglasses will be ordered the day of your eye exam and take approximately 2 months to receive.

## Medical Records

In the event that you would like a copy of your health record you must request in writing to the Medical Record Department.  The Medical Record Department will provide you with a Release of Information Consent.  A fee may apply for copies of your health record.

## Yearly Flu Vaccines

Flu vaccines are offered yearly, normally starting in October – January.  The nurse will offer each individual in custody the flu vaccine at which time you can accept or decline.  Good hand hygiene is encouraged at all times to prevent spread of germs.

## Chronic Clinics

Chronic Clinics are designed to manage individual in custody with chronic health conditions.  Chronic health conditions are defined as the following:
- Cardiac
- Asthma/COPD
- Diabetes
- Seizures
- High Risk (HIV and Hepatitis C)

• General Med e.g. thyroid issues; high cholesterol; and various other conditions as defined by the practitioner

## MEDICAL COSTS

As of Jan 1, 2020, there is no copay, if an individual in custody seeks health care services while at Menard for non-emergency medical or dental services. Requested medical services include: Nurse Sick Call, Optometrist appointments, Dental and while seeing the Doctor, should you want treatment for anything outside your chronic clinic appointment.

## LAY-IN STATUS
Individual in custody may be placed on temporary lay-in for illness or injury that may limit activity but not require placement in the Health Care Unit Infirmary.  The medical doctor, dentist or registered nurse must order lay-ins.  Lay ins, unless otherwise specified, are permitted to go to the dining hall and medication line but must remain in their housing unit at all other times.

## PATIENT RESPONSIBILITIES
The Health Care Unit has many functions to perform, including the prevention and treatment of diseases and the education of health care professionals and patients.  Success is based on a mutual understanding of each other's responsibilities, including:
• HealthCare passes are mandatory, and no shows will be subject to discipline.
• To keep all appointments scheduled for you;
• To follow all reasonable instructions prescribed by your physician and those working under his/her direction, including RN's and other Health Care personnel.  You may question any instruction you do not understand;
• To provide adequate, truthful information concerning your health/medical history and past hospitalizations;
• To show consideration for other patients and all Health Care personnel by following all rules and regulations pertaining to smoking, noise and general conduct.

### PATIENT'S MEDICAL BILL OF RIGHTS

As a patient at the Menard Correctional Center:
• You have the right to be treated with consideration and dignity.
• You have the right to privacy in your treatment.
• You have the right to be fully informed regarding access to all medical services available to you.
• You have the right to receive information necessary to give informed consent prior to treatment, examination or procedure except for emergency conditions.  Information you receive should include specific procedures and/or treatment, risk involved and possible recovery.  If there are changes of information or care, you have the right to receive this information.  You must understand that all treatment is guided by the physician's orders.
• You have a right to confidential treatment of your personal medical record.  Information from these sources will not be released without your prior consent, unless otherwise provided by law or administrative regulations, which have the force and effort of the law.
• You have the right to refuse treatment to the extent permitted by law and to be told what can happen as a result of refusing treatment.
• You have the right to voice complaints regarding health care or services and to be informed of the procedures for processing such complaints.
• You have the right to expect that you will be given the name of any person providing treatment when you ask for it.
• You have the right to know what rules and regulations must be followed when you receive health care.
• You have the right to expect the Illinois Department of Corrections will be sensitive to your needs and respond in a reasonable time and manner to any complaint you may have.

If there are any questions or problems that cannot be resolved by the medical staff, they are to be brought to the attention of the Health Care Unit Administrator.  If he/she cannot resolve the problem, you have the right to file a complaint through normal grievance procedures.  The medical staff is available to meet health care needs and make sure every effort is expended.

## AMERICANS WITH DISABILITIES ACT (ADA)

It is the policy of the Illinois Department of Corrections (Department) to comply with the provisions of the ADA Amendments Act of 2008. Programs, activities, and services of the Department shall not be denied to qualified individual in custody based upon disability.

## REQUESTS FOR ADA ACCOMODATIONS

Requests for an accommodation shall be made in writing on the "Individual in custody Request" form (DOC 0286) and directed to the Facility ADA Coordinator. If you have limited writing or language skills, you may request assistance from your counselor in completing the Individual in custody Request form. When completing an Individual in custody Request for an ADA accommodation, identify: **(1)** the program, activity, or service being offered by your facility, **(2)** how your disability limits your ability to use the service, activity or program in the same way that other individual in custody would be able use it, and **(3)** what assistance you would like your facility to give you that will help you overcome your limitations and make it possible for you to use the service, activity, or program.

The Department will determine whether an accommodation is appropriate on a case-by-case basis.

## DEAF and HARD OF HEARING:

If you are Deaf or Hard of Hearing, or think you have trouble hearing, there are accommodations available:

You may request a hearing screening to assess your level of hearing. Individual in custody who are determined to be Deaf or Hard of Hearing will have an assessment completed by a Qualified Specialist that visits the facility on a periodic basis. The Qualified Specialist will complete a communication plan for each individual in custody he/she assesses. In the meantime, individual in custody who need to be accommodated for a Deaf or Hard of Hearing issue should have an interactive dialogue with the facility ADA Coordinator.

Accommodations may include written material, notification of daily activities, sign language interpretation services, amplifying/assistive listening technology, teletypewriter (TTY) phone usage, closed captioned televisions, and other auxiliary aids and services.

*Prior to a warning shot being fired and/or an emergency in which would require the need for individual in custody to get down on the ground, and if time allows without sacrificing the safety of staff or individual in custody, exterior warning strobe lights shall be activated. If the exterior warning strobe lights were not activated prior to the warning shot being fired and/or an emergency, the lights shall be activated as soon as operationally possible thereafter. All other towers in the vicinity of the warning shot and/or an emergency shall also activate the exterior warning strobe lights.*

MEDICAL: All requests of a medical nature such as hearing aids will require a medical examination.

TELECOMMUNICATIONS EQUIPMENT: All individual in custody phones in the facility have been adjusted to a minimum volume of 65 dB with background noise cancellation activated to allow individual in custody who are Hard of Hearing to communicate more effectively. Individual in custody using TTY equipment will be allowed three times the amount of time allowed for regular phone calls. Like regular phone calls, TTY calls are subject to monitoring except for scheduled legal calls. Video Relay Service phones are also available. Work with your counselor to gain access to these devices.

SIGN LANGUAGE: If sign language is your primary language, tell your counselor and request that the facility ADA Coordinator be notified. You may request a sign language interpreter for interactions that are complex, lengthy, or involve legal due process. Significant interactions that may require a sign interpreter include: introduction to facility rules; counseling sessions; educational and vocational programs; medical and mental health services; religious and other group setting services; due process procedures including disciplinary hearings and Prisoner Review Board hearings; and field services' pre-release instructions.

## HIV DISEASE – HUMAN IMMUNODEFICIENCY VIRUS

All individual in custody are offered HIV testing and counseling, free of charge, upon arrival to Menard Correctional Center from Reception and Classification and again prior to release.

HIV disease is spread from one person to another by intimate, direct sexual contact or contact with blood from infected individuals (such as sharing needles). HIV disease is not contracted through casual contact, coughing, sneezing, spitting, food preparation, handshakes, nonsexual contact, toilet seats, bathtubs, showers or being

around an infected person even daily over a long period of time. Most HIV infected cases have occurred among identified high-risk groups such as: Homosexual/bisexual men; IV drug abusers; hemophiliacs and others who receive blood transfusions; sexually active heterosexuals with multiple partners or whose partner is an IV drug user or is HIV infected.

## INFECTION CONTROL

• You need to maintain good hygiene while incarcerated by bathing, brushing teeth, doing your laundry, and keeping your cell neat and clean, etc.
• Hand hygiene, on a routine basis, is to be performed by using soap and water and washing for at least 20 seconds. This needs to be done before and after meals, after using the restroom, and any other time you have come into contact with another individual in custody's skin, bodily fluids, blood or if hands are visually soiled.
• Don't touch your eyes, nose and mouth if unnecessary. If you need to do so, wash your hands first, following above instructions.
• Practice coughing etiquette (manners). If you have a cough, cough into elbow spaces, cover cough with hands/Kleenex and wash hands immediately.
• If blowing nose, wash hands immediately after.
• When showering, dry from head to toe and wear shower shoes (available in commissary).

## Mental Health:

Individual in custody admitted to Menard Correctional Center have access to mental health services. Services provided include routine referrals as well as emergency and crisis referrals.

Any employee whose duties bring him into periodic contact with an individual in custody who appears to be in need of such an evaluation makes referrals for mental health evaluations. Any employee can make an emergency crisis referral by contacting a member of the crisis team.

The institution has psychiatrist and other mental health professionals who are scheduled at the facility on a regular basis.

The institution has areas designated for close supervision which consists of a treatment status that provides for verbal and visual monitoring of those individual in custody determined by a mental health professional to be acutely disturbed or suicidal. All staff are responsible for reporting unusual behavior to the Crisis Intervention Team. This team is composed of various members of the counseling, medical, security, chaplaincy and mental health staff.

An individual in custody will be placed in the crisis care area only after evaluation and recommendation by a mental health professional. For the most part, individual in custody placed in the crisis area are those who are determined to pose a danger to themselves or others.

If you have a history of psychiatric behavior, or feel you are in need of a psychiatric evaluation, consult with your correctional counselor or any staff.

Psychologists, social workers, and psychiatrists provide mental health services 7 days per week between the hours of 7:00am and 8:00pm. Services are provided by appointment on a call line basis. This facility has capabilities for tele-psychiatry sessions. Services may be obtained in the following manner:

A.    Writing a note directly to the Mental Health Department.
B.    Asking your counselor to refer you to the Mental Health Department
C.    Informing the cell house officer of your desire.
D.    Asking the Social Worker and/or Psychiatrist making rounds in the Restrictive housing or the Protective Custody Unit to place you on the call line

If an individual in custody is having a crisis, they should contact their wing officer or zone lieutenant. When a crisis or emergency occurs, any staff member shall notify a Crisis Team Member, who will interview the individual in custody on the same day. There are Crisis Team Members available on every shift. All mental health professionals, by default are crisis team members, additionally many nurses, counselors, and security staff may also be crisis team members. A crisis assessment may be performed by any active crisis team member at the facility. Crisis team members have received advanced training to teach them how to intervene and assess those individuals who may be experiencing a mental health related emergency. Each time a crisis assessment is performed by a crisis team member, they will consult with a licensed

mental health professional who will make recommendations for the appropriate care or course of action. As a reminder, asking for a crisis will not guarantee you are seen immediately by a mental health professional or person of your choosing, rather, it will insure that you are assessed and appropriate interventions are taken to insure your safety as well as the safety of others. While the reasons one may require a crisis intervention are numerous, it is important to note that issues with property, privileges, and cell placement are best addressed through non-emergent means. Please refer to section to mental health section a: 3: for further information.

Mental Health staff provide group services on a variety of topics. Mental Health Group Services are available only for individual in custody on the MH caseload. Please submit a request slip to the Mental Health Department, to participate and be screened and accepted for a group. Individual in custody may send a request for services to the mental health professional or submit a request for services by placing a request in HCU mailbox. A mental health professional is available to see an individual in custody in the Health Care Unit or in the housing unit medical office. All requests for mental health services must be placed in the Health Care Unit box in order to be received by mental health staff.

A Mental Health Professional will be available in the Health Care Unit for mental health evaluation and treatment. Individual in custody may send a request for services to the Mental Health Professional or submit a request for services through a counselor or nursing staff member.

A Psychiatrist is available for psychiatric services by referral from the Mental Health Professional, when deemed necessary

Referrals for Mental Health Services - Referrals for mental health services may be initiated through staff, credible outside sources such as family members, other individual in custody or self-reporting

Procedures for individual in custody self-referrals, credible referrals by other individual in custody, and information individual in custody can provide to friends or family for making referrals for mental health services shall be provided in the individual in custody handbook. Individual in custody will be encouraged to submit their requests on the Individual in custody Request, DOC 0286.

# LEISURE TIME SERVICES

## General Division

- Yard is offered continuously on a rotating schedule. Yard activities include but are not limited to basketball, weight training, hand ball, soccer, volleyball, track activities, table games and telephones. Seating is provided for table games and viewing sporting activities.
- Indoor activities are based in Randolph Hall and the Multi-Purpose Building and are offered on a rotating schedule. Gym activities include but are not limited to basketball, weight training, volleyball, yoga, table games and telephones. These buildings include seating for table games and viewing sporting activities.
- Individuals in custody are eligible to utilize these privileges except for those in Disciplinary Restrictive housing and those in C grade or otherwise specifically under loss of recreation privileges. Regardless of grade, individuals in custody are given the opportunity for recreational yard, weather permitting.
- Leisure Time Services (LTS) offers an Art class two times a day in the School Building. Individuals in custody can place a request to participate in the LTS mailbox located in all cellhouses.

## Menard Medium Security Unit (MSU)

- Yard is offered continuously on a rotating schedule. Yard activities include but are not limited to basketball, weight training, soccer, volleyball, track activities, table games and telephones. Seating is provided for table games and viewing sporting activities.
- Leisure Time Services (LTS) offers organized activities two times a day in the gymnasium on a rotating schedule. Activities consist of basketball, soccer, volleyball, yoga, chess, cards, bowling, ping pong and other table games. Seating is provided for table games and viewing competitive sporting activities.
- Individuals in custody are eligible to utilize these privileges except for those in Disciplinary Restrictive housing and those in C grade or otherwise specifically under loss of recreation privileges. Regardless of grade, individuals in custody are given the opportunity for recreational yard, weather permitting.

## General Division and MSU

- Individuals in custody (excluding those housed in restrictive housing) may take the following items with them to yard or recreation:
  1 individual in custody I.D. card (mandatory)
  1 deck of playing cards
  1 set of dominoes or (1) one board game (chess/checkers)

1 pair of brown jersey gloves
1 handball (no canisters)-East, West, and South houses only
1 washcloth (no large towels)

- Individuals in custody will not be allowed to take extra clothing items with them to yard or recreation, i.e., only clothing that is worn will be allowed.
- During Heritage/Awareness month events, opportunities that promote Diversity, Equity and Inclusion are provided allowing individuals in custody the opportunity to express themselves through art, short essays and poetry. Certificates of Achievement will be given to all who participate.

# <u>CHAPLAINCY SERVICES AND RELIGIOUS PRACTICE</u>

The Chaplaincy Department schedules different religious services throughout the week in order to accommodate an individual in custody various religious needs.  Contact cell house staff or write to the Chaplaincy Department in order to obtain a schedule of services.

It is the policy of the Menard Correctional Center that every individual in custody incarcerated here shall have the opportunity to practice the religion of his choice.  The Chaplaincy Department schedules different religious services throughout the week to accommodate the residents' various religious needs.  The Senior Chaplain is charged with the responsibility of planning and coordinating religious services.  The schedule of chapel activities is posted in the housing units and is available in the chapel.

Unless otherwise approved by the Senior Chaplain, an individual in custody shall only be permitted to attend regularly scheduled non-denominational religious activities or religious activities for the specific faith group which the individual in custody has designated as his religious affiliation.

Individual in custody wishing to change their designated religious affiliation in their master files may do so by making the request through Menard's Chaplaincy Department.  Only one change of religious affiliation is permitted during a 12-month time frame.

**<u>Attending Services:</u>**  Individuals in custody shall send a request slip to the chapel office requesting an activity if they desire to attend a particular religious service that matches their declared religious affiliation.  Additions to religious services are entered into the computer system as time and safety capacity allows.

Participation in or attendance at religious activities shall be voluntary.  Two consecutive unexcused absences from a religious activity or failure to follow posted chapel rules will be reason for termination from the religious activity for a period of at least 60 days.

Individuals in custody shall not pressure or coerce other persons to join or participate in the activities of a particular religion.  Individuals in custody shall not engage in religious activities which may encourage violence against others or are likely to disrupt institutional safety or operations.

Religious activities for which religious program volunteers or chaplains are not available from that particular religious tradition may be permitted under specific guidelines.  Requests for such services should be directed to the Senior Chaplain.

**<u>Religious Items:</u>**  Individuals in custody may obtain religious publications or religious items in accordance the departmental rules governing purchasing, incoming mail, and personal property.

Individuals in custody may obtain a religious medallion and chain.  The religious medallion shall be a recognized symbol of the committed person's religious affiliation.  Medallions shall not exceed two inches in height or width and 12 grams in weight.  Medallions shall not contain precious stones or engravings.  Medallions shall not be of a design that could be used as a weapon or contain contraband.  The chain (not to exceed 3mm gauge) upon which a medallion is attached shall not exceed 24 inches in length.  The chain and medallion shall be a solid color.  The combined value of the medallion and chain shall not exceed $50.

All religious necklaces shall be worn inside and underneath clothing – not displayed.

Religious symbols attached to pins shall not be permitted.

Rosary/prayer beads shall be a solid color (black, brown, or white) and shall not be permitted to be worn as jewelry.

Prayer rugs may be permitted if utilized as a component of the committed person's faith but will be limited to the immediate living area and may only be out during prayer times or during religious services in the area designated for religious service.

Individuals in custody may wear articles of religious clothing only in the immediate living area during prayer times or in the area designated for religious service if verification is submitted that the clothing is a component of their religion.

Religious headwear, specific to a declared and identified religious tradition, may be worn by individuals in custody of their identified religious tradition, at all times.  But ceremonial headwear may be worn only during scheduled, supervised, religious ceremonies and/or events, traditionally but not strictly limited to, the geographic space of a chapel or designated event space.

**Religious Diet:** Individuals in custody may abstain from consuming any food items that would violate their religious tenets.

Individuals in custody who desire to receive an alternative diet for religious reasons may submit a written request (DOC 0388) to the chapel office.  An individual in custody who has been receiving an alternative religious diet must submit a written request (DOC 0286) to the chapel office if he desires to discontinue the alternative religious diet.

Individuals in custody are the responsible parties for requesting a dietary modification required by a religious holiday or ceremony.  They shall submit their written request (DOC 0388) for a religious holiday diet modification to the chapel office at least 45 days before the holiday or ceremony.

Individuals in custody who do not adhere to the alternative religious diet shall no longer receive the alternative religious diet.

**Marriage – Civil Unions:** Menard does permit individuals in custody to observe a marriage-civil union ceremony.  Requests must be made through the chapel office for a packet detailing the regulations concerning marriages-civil unions.  A request for a civil union-marriage request shall be considered if the individual in custody is either "A" or "B" grade, has not been housed in restrictive housing unit in the last twelve months, and has not lost any "good time" in the last twelve months.

# LIBRARY SERVICES AND LEGAL MATERIAL

Opportunities for access to library services and legal materials shall be provided.  However, general library services and/or direct access to a law library may be limited, restricted or denied if library privileges have been abused or institutional safety or security may be jeopardized.  An alternative means of access shall be provided in these instances.  Requests for assistance from the library should be submitted in writing to the library through institutional mail.  All requests for access are handled on a first-come, first-serve basis, unless a verified court deadline is known or claimed.
The Library provides E-filing service for the Illinois United States District Courts for Northern, Central, and Southern District.
Individual in custody should make sure that they have the correct District &Division court and case number on their documents when sending to the law library for scanning to the court to be filed.  Without this information the document will be returned to the individual in custody to provide the information for their e-filing request.

> Note: No other e-filing is available currently through the law library for Court of Claims, County Courts, Appellate Courts, Illinois and U.S. Supreme Courts or Federal 7th Circuit Court of Appeals.  These filings must be mailed through United States Postal Service.

**ALL REQUESTS FOR LIBRARY ACCESS MUST INCLUDE INDIVIDUAL IN CUSTODY'S NAME, I.D. NUMBER, CELLHOUSE AND CELL LOCATION.**

## Legal Services:

1.     Individual in custody with a pro se court deadline (verifiable dates by which some action must be completed-usually court orders, but it may also include imminent statutory or statute of limitations deadlines) will receive priority for Law Library services, both for scheduling purposes and cellhouse visits. It is the individual in custody's responsibility to inform the Law Library of the existence of these deadlines. Documentation will be retained by the Law Library and may be verified through the courts
2.     The Law Library maintains a comprehensive state and federal library of legal materials.
3.     The names and addresses of legal organizations, courts and attorneys are available in the library. Since addresses continually change, current addresses should be obtained from the most recent directory available in the library.

4.     Resource for Information and Other Prisoner Issues:
        John Howard Association
        PO Box 10042
        Chicago, IL  60610-0042

5.     Typewriters are available for use by individual in custody in the law library.  Individual in custody who are in restricted areas, such as restrictive housing, do not have access to these typewriters. In these instances, documents are to be handwritten, as this is acceptable to the Courts for most legal documents being submitted. The law library runs call lines in the morning, afternoon, and sometimes in the evenings. Law library will conduct tours in the cell house during institutional or cell house lockdowns.

6.     Individual in custody law clerks are assigned to work in the library for the purpose of assisting other individual in custody in learning to do their own research and to become familiar with the court system.  Law clerks may assist other individual in custody in the use of the Law Library collection, researching case-law, and provide assistance in the preparation of legal documents.  Committed persons shall not receive compensation for such assistance and must have written permission from civilian law library staff to possess another individual's legal material.

7.     Notary Service is available for the following documents: (1) Petition for Executive Clemency, (2) Power of Attorney, and (3) Medical Authorization Release Forms and 4) Courts of Claim Law library staff will also honor any attorney or Court ordered request for Notary. Notary is not required for grievances and generally will not be provided on letters or other non-legal documents.

8.     Photocopies will be provided by law library staff, with the approval of civilian law library staff.

9.     Individual in custody who require photocopies of their legal documents should submit a request to the library, along with a signed money voucher.  Individual in custody who have access to the library should bring their materials to be photocopied to the library with them on their call passes.  Individual in custody in restrictive housing should submit their material to be reviewed and approved by civilian Law Library staff.  Materials to be photocopied will be made at the cost of ten cents ($.10) per copy.  Committed persons without funds shall be provided copying services and will be charged for the photocopies as indicated above.  These charges will be deducted from the individual in custody's trust fund account when funds become available.  Only legal documents will be photocopied in this manner.  Legal documents shall be deemed to mean pleadings, complaints or petitions, briefs, exhibits, affidavits, notices of filing, or other documents to be filed in a court of law or other forum in which a suit may be filed or which are required to be serviced upon counsel or other parties.

10.     Individual in custody who wish to make photocopies of legal reference materials should submit the requested materials to the library for approval.  If the materials are accepted for photocopying, the individual in custody will be asked to sign a money voucher for processing through the trust fund.  When the voucher is approved by the trust fund office, photocopies will be made.  If an individual in custody does not have sufficient funds in his account, the photocopy request will be denied.  Any original documents submitted for approval will be returned to the individual in custody.

11.     In general, non-legal or personal photocopies will not be made unless approved by the supervisor of the Law Library.

12.     No law books or legal research material in the Law Library shall be checked out by the individual in custody for removal from the library.  Individual in custody who do not have access to the Law Library, such as restrictive housing individual in custody, health care unit, receiving and classification unit, may request to have legal materials loaned to them, per the loaned material policy below. When the materials are returned to the library in usable condition, individual in custody may borrow more materials.  Failure to return the borrowed materials will result in the individual in custody being charged for the materials or other disciplinary action, as appropriate.

## General Library Services:

1.     The number of books and materials a committed person may accumulate may be limited where the amount poses a fire, sanitation or security hazard.

2.     Individual in custody with physical access to the general library may check out two books at a time.  Books have a return date stamped on them at the time of checkout.  Failure to return the books on time may result in disciplinary action, including being charged for the lost materials or being restricted or limited in library loans in the future.

3.     General library services may be restricted or eliminated during institutional lockdowns.

4.     Audio books are available to individuals in custody with documented visual impairments or physical impairments that prevent holding a book. Individuals in custody who wish to check out an audio book from the library must complete the appropriate request form for checking out an audio book, which is available in the library or by mail via request slip. Menard staff will verify that the requesting individual in custody meets Americans with Disabilities Act (ADA) guidelines for visual and/or physical impairment(s) prior to fulfilling the request. Individuals in custody will be allowed to listen to the book in a designated area during regular law library line hours. The audio book will not be allowed to leave the library under any circumstance. As with any item that is property of the State of Illinois

and the Illinois Department of Corrections, damage to the audio device and/or its components will result in disciplinary action.

## Loaned Materials Policy:

For those individual in custody without direct access to the Law Library, copies of case law and limited research materials may be loaned. Individual in custody without a deadline **may** borrow no more than five (5) cases at a time.  Those with a valid deadline may borrow up to ten (10).  If materials are returned within 30 days in serviceable condition, the individual in custody will not be charged. If materials are not returned, the individual in custody will be charged for the material; disciplinary action may result in such refusals and future loans may be denied.

# VOLUNTEER PROGRAMS

There are several volunteer services available at the Menard Correctional Center. They are designed to allow volunteers to enter the institution and provide services to individual in custody in a variety of areas.

The Chaplaincy Department utilizes religious volunteers to provide services to many diverse faith groups.

# FIELD SERVICES/RELEASE PLANNING

## FIELD SERVICES DEPARTMENT

### Release Planning/Host Site
When you are within 6 months of your Mandatory Supervised Release (MSR) date, you will receive a Request for MSR Plan from Field Services asking for your potential host site(s).  Host sites cannot be investigated until your Prison Review Board (PRB) Orders are approved which is approximately 4 months prior to an MSR date. These Conditions are based upon a review of your behavioral and criminal history, clinical evaluations and recommendations, the results of any risk and needs assessments available, and an interview with the Board (where applicable). Once the facility receives your PRB Conditions, your host site is placed on investigation. Once your host site is approved or denied, you WILL be notifying in writing by this office. All MSR's are MANDATED to have an approved plan prior to be released from the facility.

### Transitional Housing/Half-way House Placement

If you are unable to attain an approved host site, Field Services will automatically submit your case to the Parole Re-Entry Group (PRG).  The PRG coordinates ALL transitional housing (ex. Halfway house, shelter) based upon availability of contracted approved State vendors from your County of Commitment. Transitional housing does not hold spots; therefore, your placement will not be finalized until a few days prior to your MSR date. Please remember that PRG placement is not always guaranteed. Individuals in Custody cannot choose their housing when being placed by the PRG.

### Interstate Compact

If requesting an out-of-state parole, you must first meet one of the following requirements:
1. Be proposing to reside with family in which transfer is desired and have an offer of employment or a visible means of support (host willing to financially support).  Family member must have resided in the receiving state for at least 180 days.
     *For purposes of Interstate Compact transfers, **family is defined as:**
     -Parent              -Adult Child        -Step-Parent              -Adult Sibling    -Grandparent
     -Legal Spouse (Marriage Certificate must be submitted to Field Services)

2. Be considered a **resident of the state** in which transfer is desired and **have an offer of employment or a visible means of support.**
     *To qualify as a resident you must have lived in the state for at least 180 days prior to Illinois incarceration.
     *Documents required to verify proof of residency:
-Tax Forms              -Driver's License           -Pay Stubs        -Real Estate Documents (if you owned your home)
     NOTE:  Bills, such as utility, phone, water, ect., **do not qualify**

Prior to submitting the application, the following must be on file in Field Services:
1. Letter from host stating they are willing and capable to provide financial support. **This letter must be sent from the host directly to Field Services.**

2.  Reason applicant is requesting to parole out of state.
3.  An alternate Illinois host site.
4.  Police report of your holding conviction.

The Interstate Compact Application will not be completed until Field Services has ALL required documentation.  **It is your responsibility to contact the host for the letter of financial support.  Provide all required documentation 4 months prior to your release date.**

Please have your family send the Letter of Support and Police Report to the following address:

Menard Correctional Center
ATTN:  Field Services
711 Kaskaskia Street
Menard, IL  62259

If your family has any questions about this process, they are also welcome to call the Field Services Department at 618-826-5071 ext. 2195/2503.
**For Sex Offenders:**

In addition to the above requirements, you must submit to Field Services a signed and dated detailed description stating the WHO, WHAT, WHEN, WHERE, WHY, and HOW of your current convictions and any past sex convictions resulting in the requirement to Register as a Sex Offender.  Past sex offenses need to state the offense description, state of conviction, and date of conviction.

We do not have access to the conditions of parole/rules of conduct for other states.  If you are approved to parole to another state, you will be advised of their rules of conduct and conditions of parole by that state's parole division.  Additionally, if the person in custody is approved for out of state parole, the person in custody is required to follow the rules of conduct and conditions of parole in both Illinois and the state in which they are approved to parole to. Transfer acceptance by the receiving state does not guarantee transfer. All final decisions are made by the Illinois Department of Corrections. Transfers are a privilege, not a right.

**Departure/Travel Arrangements**

On the day of your release, if you do not have a ride, you will be sent home by public transportation.  If someone is coming to pick you up, your ride <u>must</u> notify Field Services Department @ extension 2195/2503 *no earlier* than 3 weeks prior to your release.  Due to numerous departments involved in securing transportation, it is important that you coordinate with your own personal transportation this information. Upon confirmation of pick-up, details such as directions, parking and pick of times will be explained to your ride.
**Release Clothing**

Release clothing can be mailed to Menard Correctional Center 3 weeks prior to release. The clothing must be sent in standard flat rate U.S. Postal Service and fit inside one box. The outside of the box should be clearly marked "INDIVIDUAL IN CUSTODY RELEASE CLOTHING" and be addressed with your name, number and release date. Clothing does not have to be newly purchased and may include the following items:
-One pair of pants or shorts (plain with no designs or holes)
-One shirt (no graphics)
-One pair of shoes (no slides, no designs, all white or all black in color)
-One jacket (seasonal)
-One pair of undershorts
-One pair of socks
You have the option to purchase a gray sweatshirt and sweatpants to wear on your release date. If you are indigent or do not have clothing for release, proper attire will be provided. Clothing items that are mailed into the facility that do not meet the above guidelines will not be allowed to be work out of the facility.

**Commissary**

Commissary purchases are restricted 60 days prior to release to hygiene items, stationery items, and clothing items to be worn upon release.

**Warrants**

A warrant check is conducted approximately one month prior to release. If the individual in custody has an outstanding warrant/detainer/hold from another authority, Field Services acts in a liaison capacity with the Records Office ensure that the individual in custody is turned-over-to the detaining authority.

**Re-entry Support Packet**

Upon release, every individual in custody will be provided an IDOC Re-entry Support packet.

- Illinois Prisoner Review Board – COVID-19 Emergency Movement Order Modification
- IDPH information regarding COVID-19
- IDPH information regarding social distancing
- CDC information about what to do if you are sick with COVID-19
- IDOC COVID-19 Preventive Measures Memorandum
- TASC Re-entry Support Information
- SAFER Foundation Re-entry Support Information
- Department of Healthcare and Family Services' Application for Health Coverage
- Illinois Secretary of State information regarding a Driver's License/State ID Card
- Information regarding Voting Rights
- Illinois Department of Human Services information regarding food connections
- Heroin and Fentanyl ALERT
- Spotlight Re-entry Centers/IDES
- Homeless Status Certification

**Identification Card**

EVERY Person in Custody who is released will receive an identification card verification form.  If the Person in Custody has the birth certificate and/or social security card in their Tickler, they will be verified in the system and verified on the identification card form.  Then, the Person in Custody will be able to take only this form to the D.M.V. and receive a free 90- day temporary IL State ID card.  If the Person in Custody does not have the Social Security card and/or birth certificate in the Tickler, the Person in Custody will still receive the form however, the information will not be verified.  The Person in Custody will have to take that form and 2 forms of I.D. (social security cared/birth certificate etc.) to the D.M.V. to receive the free 90-day temporary IL State ID card.  This must be completed within 30 days of release from IDOC.

## (1)    Illinois State Identification Cards

    (a)    To be eligible for the State ID Program, individuals in custody shall have:

        i.    An approved parole site or discharge address on file in the State of Illinois; and

        ii.    An original copy of his or her birth certificate and social security card OR an original copy of their United States Military Service Record (DD-214) on file at the facility in the Field Services tickler file.

**Notification to Register with the Selective Service**
All male Person in Custody who have reached their 18th birthday but who have not attained their 26th birthday shall be notified of their legal obligation to register with the Selective Service System.  Prior to the release of the Person in Custody from the facility, he shall be requested to read and sign a Notification to Register form indicating he understands his legal obligation to register with the Selective Service System.

**Project Safe Neighborhood**

Upon release, all Persons in Custody are notified of Project Safe Neighborhoods by the Field Service Representative.  Project Safe Neighborhoods (PSN) is a nationwide commitment to reduce gun crime in America by networking with local programs that target gun crime and providing those programs with additional tools necessary to be successful.  If you have

ever had a gun conviction or if you have a history of gang involvement, you may be required to attend a One-hour Project Safe Neighborhoods meeting during your parole term.  At the meeting, you will be briefed on the consequences of federal prosecution for repeat gun offenses and gang related crimes.  If you are notified by a parole agent to attend a PSN meeting, you MUST attend, and you MUST be there on time.  Failure to attend could result in a parole violation warrant being issued.

### Registries

Illinois required Registries for the following convictions:
- Sex Offender
- Violence Against Youth
- Murder
- Arson
- Gun (Chicago residents)

### Release Documents

Upon release from the facility, Field Services will ensure any original documents (birth certificate/social security card) are given to you.  Field Services will provide you with an Identification Card Verification Form which will serve as your proof of residency.  The form must be filled out and signed by IDOC staff in its entirety and stamped with an embossed seal.  If you does not provide an address, you will not be afforded the opportunity to receive a free ID through this process.

### RELIEF FROM DISABILITIES

Did you know that getting some jobs require you to apply for a special license – and it can be tough to get that license with a criminal record?  There is help for first-time non-violent felony Persons in Custody who meet eligibility requirements.

If you have a criminal record, it may be difficult for you to get certain types of jobs that require licenses.  While not all jobs require licenses, certain ones do…. including barbering, nail technicians, landscape architects, roofers, athletic trainers, professional boxers, real estate agents and others.  If you are seeking employment upon release for any of these types of jobs, you will need to apply to the Illinois Department of Financial & Professional Regulation (*or other state licensing agency as required*) for a license.  In many cases, your past criminal record may make it hard for you to get approved for certain licenses.  However, there is help for first-time non-violent felony Persons in Custody (see eligibility requirements listed on backside of Certificate of Relief from Disabilities Request Form) to improve their chances of getting approved for these licenses.

If you are a first-time non-violent felony Person in Custody who meets eligibility requirements, a new law allows you to apply to the Prisoner Review Board (PRB) for a CERTIFICATE OF RELIEF FROM DISABILITIES that could help improve your chances of getting approved for these types of licenses, so you can get to work!  If the PRB approves your application, you must send a copy of your certificate to the Illinois Department of Financial & Professional Regulation (*or other appropriate licensing agency as listed below*) along with your license application so that you will have a better chance of being approved to work in your area of interest.  However, please note that this certificate is NOT a guarantee of getting an approved license, and that it does not apply to suspension or revocation of a license to operate a motor vehicle.

## ISSUING TEMPORARY IDENTIFICATION

The Department shall issue temporary identification cards to Individual in Custody upon their release, who provide the required documentation and fee along with a timely request for an identification card to their counselor.  This card may be used as one form of identification required by the Secretary of State to obtain a State of Illinois Identification Card. TO RECEIVE A TEMPORARY ID:  you will need to obtain a certified Birth Certificate and a duplicate Social Security Card.
1.) Certified Birth Certificate – can be requested at any time but not shorter than 45 days.
  a)  You can have your family mail your Birth Certificate into the facility (no copy must be certified).  The envelope needs to be address it to the Person in Custody.  The facility will pull the documents to be given to you upon release.
  b)  To obtain by mail through the county or Division of Vital Records (for IL birth certificates): send a written request to your Correctional Counselor to obtain an application. There is a fee for the Birth Certificate if Person in Custody already received it while in

IDOC custody.  ** PLEASE NOTE IF BORN IN COOK COUNTY NOTE THIS ON THE REQUEST!! Cook county has a different application.  If needing an out of state birth certificate please note what state on your written request, different states have different fees and criteria.

2.) Social Security Card - Please note, recent Federal legislative changes to the SSA process may require Individual in Custody to appear in person once released.   If you meet all the requirements below, send a written request to your counselor.  Your counselor will provide you with an application and instructions on completing.  There is no fee for a replacement social security card. Social
    Security cards can ONLY be requested between 30-180 days prior to release

a)  You must be incarcerated under your real name

b)  US Citizen

c)  No extraditable felony, out-of-state detainers.

d)  You must have been issued a Social Security Card with your legal birth name and are applying for a _REPLACEMENT_ card.

When you are from 30 days from release and if you have both your Social Security Card and Birth Certificate in your Masterfile, send your correctional counselor a request slip indicating that you are requesting a temporary ID. You will be instructed to complete and give your counselor a money voucher for ONE DOLLAR.  Your counselor will verify your identification, request the dollar to be removed from your account and authorize B of I to print a temporary ID which will be given to you, along with your birth certificate and social security card as you are leaving the facility.

_PLAN EARLY._  It is the Individual in Custody's responsibility to obtain the required documentation for the issuance of the identification card.  The facility shall ensure the safekeeping of the required documents and they shall be returned to the Individual in Custody upon their release along with the identification card.  Note:  Recent federal legislative changes to SSA process may require Person in Custody to appear in person, once released, in order to obtain a replacement social security card.  The identification card will be distinctively labeled "Released Person in Custody ID," and will have expiration date 30 days from the date of issuance. Please see your assigned counselor for more information.

Certified copy of his/her birth certificate

Social Security Card (can be only requested with 180 days left on sentence, must be incarcerated under legal name no aliases)

All Illinois born Individuals in Custody who arrive at their parent facility who have not already obtained their documents will be required to complete an Illinois Department of Public Health (IDPH), Application for Search of Birth Records.  In order to obtain a copy of the birth certificate, IDPH requires a prescribed verification form completed by DOC verifying the released person's date of birth and social security number.  Per 410 ILCS 535/25 if the Person in Custody submits this, the search fee will be waived beginning January 1, 2018. The fee waiver is only good one time and for IL only.  Cook County has a different application to complete. Birth Certificates are for Individuals in Custody may be applied for at any time.

Individuals in Custody should attempt to complete the form during their orientation.  It is understood that they may need to contact family for additional information prior to turning the form in.  Those Individuals in Custody who have not returned the form will be contacted during routine 60-day contacts to determine the status of their applications.

An Individual in Custody not born in Illinois will be provided with the applicable applications and fee notices for the state they were born in.  When the birth certificate is received at the facility, staff will notify the Person in Custody in writing that it has arrived and will be placed in his/her Masterfile.

Clinical Services will contact the Individual in Custody and secure the application for Social Security Administration in order to obtain a copy of his/her social security card.  When the social security card is received at the facility, staff will notify the Person in Custody in writing that it has arrived and will be placed in the Masterfile.

If Individual in Custody does not apply for a Secretary of State issued Identification Card within 30 days upon release, they will not be eligible for a no fee Identification Card and must pay the statutorily required fee set forth in Section 12 of the Illinois Identification Card Act.

Social security cards and birth certificates are requested through the facility Re-entry Counselor (not Field Services). Social security cards can ONLY be requested between 30-180 days prior to release.  Birth certificates can be requested at any time.  However, you are only entitled to 1 birth certificate purchased by the state no matter how many times you

are incarcerated.  It is NOT available to you each time.

# EMPLOYMENT ISSUES

**Information Sheet for Pre-Start Participants & Parolees**
**Regarding Public Act 93-0207 (HB 569)**

**Did you know that getting some jobs require you to apply for a special license – and it can be tough to get that license with a criminal record?**

**There is help for first-time non-violent felony individual in custody who meet eligibility requirements.**

**If you are interested in any of the jobs listed below, get a head start on a job! Please talk to your IDOC Counselor or Parole Agent about getting a**
**"Certificate of Relief from Disabilities."**

If you have a criminal record, it may be difficult for you to get certain types of jobs that require licenses.  While not all jobs require licenses, certain ones do…. including barbering, nail technicians, landscape architects, roofers, athletic trainers, professional boxers, real estate agents and others.  If you are seeking employment upon release for any of these types of jobs, you will need to apply to the Illinois Department of Financial & Professional Regulation (*or other state licensing agency as required*) for a license.  In many cases, your past criminal record may make it hard for you to get approved for certain licenses.  However, there is help for **first-time non-violent felony individual in custody** (see eligibility requirements listed on backside of Certificate of Relief from Disabilities Request Form) to improve their chances of getting approved for these licenses.

If you are a **first-time non-violent felony individual in custody who meets eligibility requirements**, a new law allows you to apply to the Prisoner Review Board (PRB) for a CERTIFICATE OF RELIEF FROM DISABILITIES that could help improve your chances of getting approved for these types of licenses so you can get to work!  If the PRB approves your application, you must send a copy of your certificate to the Illinois Department of Financial & Professional Regulation (*or other appropriate licensing agency as listed below*) along with your license application so that you will have a better chance of being approved to work in your area of interest.  However, please note that this certificate is NOT a guarantee of getting an approved license, and that it does **not** apply to suspension or revocation of a license to operate a motor vehicle.

**Please review this list of some of the jobs that require you to apply for a license, and the name of the law that requires you to have the license.  All of these jobs are eligible for Certificates of Relief from Disability – so please apply as soon as possible to get a head start on a new career!**

| Type of Job | Type of License | Where to Apply for a License |
|---|---|---|
| **Athletic Trainers** | Illinois Athletic Trainers Act | Dept. of Financial & Professional Regulation |
| **Barbers, Cosmetologists, Estheticians and Nail Technicians** | Barber, Cosmetology, Esthetics, & Nail Technology Act of 1985 | Dept. of Financial & Professional Regulation |
| **Professional Boxer** | Professional Boxing Act | Dept. of Financial & Professional Regulation |
| **Certified Shorthand Reporters** | Illinois Certified Shorthand Reporters Act of 1984 | Dept. of Financial & Professional Regulation |
| **Interior Designers** | Interior Design Title Act | Dept. of Financial & Professional Regulation |
| **Professional Land Surveyor** | Illinois Professional Land Surveyor Act of 1989 | Dept. of Financial & Professional Regulation |
| **Landscape Architect** | IL Landscape Architecture Act | Dept. of Financial & Professional Regulation |
| **Marriage and Family Therapist** | Marriage & Family Therapy Licensing Act | Dept. of Financial & Professional Regulation |
| **Professional Counselor/Clinical Prof. Counselor** | Professional Counselor and Clinical | Dept. of Financial & Prof. Regulation |
| **Real Estate Agent** | Real Estate Licensing Act | Dept. of Financial & Professional Regulation |
| **Roofer** | Illinois Roofing Industry Licensing Act | Dept. of Financial & Professional Regulation |
| **Professional Engineer** | Prof. Engineering Practice Act of 1989 | Dept. of Financial & Professional Regulation |
| **Electrologists** | Electrologists Licensing Act | Dept. of Financial & Professional Regulation |
| **Animal Welfare Inspector** | Animal Welfare Act | Department of Agriculture |
| **Boiler and Pressure Vessel Repairer** | Boiler and Pressure Vessel Repairer Regulation Act | State Fire Marshall |
| **Farm Labor Contractor** | Illinois Farm Labor Contractor Cert. Act | Department of Labor |
| **Counselor for an Employment Agency** | Private Employment Agency Act | Department of Labor |

**Water Well and Pump
Installation Contractor**    Water Well and Pump Installation    Department of Public Health
Contractor's License Act

**How do you contact these licensing agencies to get an application for a license?**

First of all, any first-time non-violent felony individual in custody who meets eligibility requirements can apply to the PRB at any time for a Certificate of Relief from Disabilities – whether you are involved in Pre-Start prior to release from prison, on parole, or even if you have been off of parole for several years with no new offenses.  Once you have been approved for a Certificate of Relief from Disabilities by the PRB, you may then contact the appropriate state agency to get a copy of the appropriate license application.  In most cases, the agencies will have copies of these applications on their websites, and you can simply print them from the Internet.  In other cases, you can choose to either write a letter to request an application or call the agency to order one.  It should be noted that <u>a certificate does **not** guarantee you of an approved license</u> but will certainly help you in the approval process.  The decision to grant the license will be made by the licensing or certifying state agency.
**This is a list of the contact information for all state licensing agencies:**

<u>IL Dept. of Financial & Professional Regulation</u>
Division of Professional Regulation
Licensing & Testing Division
320 W. Washington Street
Springfield, IL 62786-0002
www.IDFPR.com / 217-785-0800

<u>IL Department of Agriculture</u>
Division of Agriculture Industry Regulation
State Fairgrounds
P.O. BOX 19281
Springfield, IL 62794-9281

<u>Illinois Prisoner Review Board</u>
319 E. Madison, Suite A
Springfield, IL 62701-1096
217-782-7273

<u>Office of the State Fire Marshal</u>
James R. Thompson Center
100 W. Randolph, Ste. 11-800
Chicago, IL 60601
www.state.il.us/osfm / 312-814-2693

<u>Illinois Department of Labor</u>
160 N. LaSalle, Floor 13
Chicago, IL 60601-3150
www.state.il.us/agency/idol / 312-793-2810

<u>Illinois Department of Public Health</u>
535 W. Jefferson, Floor 5
Springfield, IL 62761-5058
www.idph.state.il.us / 217-782-4977

## ADDITIONAL INFORMATION

## IDENTIFICATION CARDS

The identification card that you are issued is property of the Illinois Department of Corrections.  The following rules apply:
1.      Identification card must be on your person at all times.  Individual in custody attempting to move from one area to another will be returned to their cell if they do not have their I.D. card.
2.      If you lose the card, you are to report it to an officer.
3.      If you cannot produce the card upon request, a disciplinary report will be written.
4.      If caught with another individual in custody's I.D. card you may be subject to disciplinary action.  If you find

another individual in custody's I.D., turn it over to staff immediately.

Individual in custody will be charged $5 for a replacement I.D. card if a new card must be made due to change in individual in custody appearance, defacement of the card rendering it unreadable, the photograph is damaged, barcode is no longer machine readable, card is torn or broken, or card is lost.

## PROCEDURES FOR MONEY VOUCHERS

Money vouchers are available in the cellhouses. They should be clearly written and you should have your I.D. available when signing them. The Trust Office process the money vouchers within ten (10) working days after they receive them.

In General Division, the individual in custody will be required to fill out the money voucher in its entirety and place the voucher in the voucher box located in each cellhouse. The 3-11 Lieutenant assigned to the cellhouse will collect the vouchers and verify with the individual in custody that the money on the voucher is to be removed from his trust fund account. After verification, the Lieutenant will sign the voucher and forwarded to the Shift Commander's Office for approval. The Shift Commander's Office will place the designated seal on the voucher to verify that it is an authorized voucher and sign designating either approved or disapproved. Approved vouchers will be sent to the Trust Office for processing. Disapproved vouchers will be returned to the individual in custody.

In MSU, the individual in custody will be required to fill out the money voucher in its entirety and have the cellhouse Lieutenant verify that the money on the voucher is to be removed from his trust fund account. After verification, the Unit Superintendent will sign the voucher and place and place the designated seal on the voucher to verify that it is an authorized voucher.

# TRUST OFFICE

Upon entering the institution, any money, which you have brought with you, will be taken to the Trust Office where it is logged into your account for use at the commissary and a receipt for same is sent to you. As of 1/1/2014, the Illinois Department of Corrections no longer accepts money orders at the correctional facilities. All money orders intended for Illinois individual in custody must be sent through JPay.

A JPay deposit slip and money order must be sent to the below address:
JPay, Inc.
PO Box 260250
Hollywood, FL  33026

JPay will process the mailed deposit within 2 business days from the date the money order was received at no cost.

Additional deposit slips can be printed from www.jpay.com/moneyorder.aspx or picked up at the Menard Correctional Center Electric Eye or visiting room. If you do not have access to a facility or internet, please call 866-333-5729 and a JPay customer service representative will be available to assist you.

JPay also offers faster ways to send money to Illinois individual in custody. The options below ensure that the money will be posted to the individual in custody's trust account within 2 business days, for a small fee.

1) Go to www.jpay.com and create an account to send money electronically
2) Call 800-574-5729 to send a payment over the phone
3) Go to any Money Gram location and ask to send money through JPay

An individual in custody can also have money sent to him providing it arrives at Menard by cashier check, which may not exceed $200.00. The Mail Office will return money orders, cash and personal checks to the sender received at the facility. When funds do arrive through the Mail Office, it is taken from the envelope and a notice of receipt is stamped on the envelope. The letter and/or envelope are then forwarded to the individual in custody. Money may take up to five days before it is posted on the individual in custody's account. A record is kept by the Trust Office of any and all monies received. In addition to this, the Trust Office provides the following services:

1.    Processes individual in custody money vouchers. (outside purchases, all postage, all copies, medical copays, electronic repairs, and ID card fees)
2.    Processes the individual in custody payroll.

3.    Handles all commissary expenditures of individual in custody.
4.    Court ordered fees/restitution.

Funds may also be sent to your trust account via JPAY or Western Union.  Family and friends may contact JPAY at 1-800-574-5729 or Western Union Quick Collect at 1-800-325-6000 GTL Services at 1-888-988-4768.  There may be a fee, per transaction, depending on amount being sent and the distance from the institution.

**Send Money to Individual in custodys:**

## 1.  <u>JPAY</u>

Fast & Easy Internet,    Visit   www.JPay.com
Telephone                      Call  (800) 574-5729
Walk-Up                        Visit a Money/Gram store using the Blue Money Gram Express Payment Form reiving
                                    code is 7364 (Walmart, CVS, 7-11)

The J-Pay Moneygram receive code is <u>7364</u>,   Acct # is ID number and last name

## 2.  <u>Western Union:</u>

**Three easy ways to send money within the U.S.**

**Internet Payments:**
- 24/7 at westernunion.com/corrections
- Credit or debit card accepted*
- $3.95

**Telephone payments: ***
- 24/7 by calling 1-800-634-3422
- Credit or debit card accepted*
- $5.95

**Walk –in Cash Payments:**
- Call 1-800-325-6000 or visit westernunion.com for a participating Agent
- The Blue Western Union Quick Collect form must be filled out
- A receipt will be provided to confirm transaction
- $5.95

## 1.  <u>GTL Services</u>:

Web site: www.gtl.net/ilstate
Phone: 1-888-988-4PMT (4768)
–You will need to know the individual in custody ID
–You will need to know the individual in custody name
–You will need to know the individual in custody's date of birth
–Site ID: 169 (Site ID applies to ALL IDOC locations)

Effective November 1, 2021 the agency will no longer receive commissions from the purchase of GTL Services, and the costs individuals in custody and their families will be lowered on most services. In addition, video visits will now be 20 minutes in duration. However, video visit changes will continue to be 15 minutes in duration and no cost until a solution for Apple products is implemented. Finally, rates for movie subscriptions will remain the same but the agency will no longer be paid commissions on those sales. The rate changes are outlined below.

<u>GTL Pricing/Purchasing Guide:</u>

**Electronic Messaging Pricing Current Rate:**
Price for a Single Credit                    $0.15

Price for 20 Credits                     $3.00
Price per Single Message 1 Credit/$0.30 1 credit/$0.15

**Pricing for Electronic Funds Transfer Current Rate**
Straight Rate for Per Dollar Sent $0.175 $0.155
$0.01-$30.00 $3.50 $2.45
$30.01-$100.00 $5.75 $4.00
$100.01-$200.00 $6.75 $4.75
$200.01-$300.00 $8.95 $6.30

**MP3 Download Pricing for Individual in custody's Current Rate:**
Price per Single MP3 Download        $1.60
Price per 20 MP3 Downloads          $28.00
**30-Day Subscriptions Current Rate**
Music        $19.99
Games        $4.79
Podcasts     $7.99
Newsfeeds    $7.99
**90-Day Subscriptions Current Rate**
Music        $54.00
Games        $12.96
Podcasts     $21.56
Newsfeeds    $19.99
**180-Day Subscriptions Current Rate**
Music        $95.96
Games        $21.56
Podcasts     $35.96
Newsfeeds    $38.39
**One Year (365 Day) Subscriptions Current Rate**
Music        $159.99
Games        $34.60
Podcasts     $57.56
Newsfeeds    $67.19

**Hourly Subscription & Service**
**Infrastructure Fees Current Rate New Rate**
3-Hour Unlimited Movies $3.99 $3.99

24-Hour Unlimited Movies $7.99 $7.99

*Link Units are purchased in $10.00 increments only. 1,000 Link Units = $10.00/ 5,000 Link Units =*
*$50.00/ 10,000 Link Units = $100.00*

For Customer Service Inquiries, please contact **1-866-607-6006**.

**Please tell friends and family to provide this information to transfer money at any participating Agent location, by phone or online.**

**Pay to:**               Illinois Dept. of Corrections
**Code city:**            ILDOC
**State:**                IL
**Sender's account #:**   Include individual in custody's ID and individual in custody's last name
**Attention:**

**Also, money can be sent from 150 countries and territories, including Mexico. Fees may vary by country. \*\*\***

\*If you use a credit card you may be charged an additional cash advance fee by your credit card issuer for this service.
\*\*For telephone payments sent from CT, MA, ME, MN or NY fees same as cash with $300 limit.
\*\*\*IN ADDITION TO THE TRANSFER FEE, WESTERN UNION ALSO MAKE MONEYFROM THE EXCHANGE OF CURRENCIES.

For current exchange rates, please call 1-800-325-4045.
2009 Western Union Holdings, Inc. All Rights Reserved.

# COMMISSARY

Commissary privileges for individual in custody in A grade are two trades per month. Individual in custody in A grade are restricted to a purchase limit of $100.00 within personal property guidelines.  The only exceptions to the $100.00 are as follows:  All Clothing Items, Gym Shoes, Fan, LED Lamp, Shaver, Trimmer, TV, MP3 Player, Tablet, Songs and Messages.

Commissary privileges for individual in custody in B grade are only the first trade of the month. Individual in custody in B grade are restricted to a purchase limit of $30.00 within personal property guidelines.  The only exceptions to the $30.00 are as follows:  All Clothing Items, Gym Shoes, Fan, LED Lamp, Shaver, Trimmer, TV, MP3 Player, Tablet, Songs and Messages.

Commissary privileges for individual in custody in C grade are only the first trade of the month. Individual in custody in C grade are restricted to a purchase limit of $30.00 within personal property guidelines.  The only exception to the $30.00 is a Fan.

Individual in custody in loss of commissary status are only the first trade of the month.  Individual in custody in loss of commissary status are restricted to a purchase limit of $15.00 and may only purchase Cosmetic items, Hygiene items, and Stationery items.  The only exception to the $15.00 is a Fan.

Individual in custody in Restrictive housing status are only one trade per month.  Individual in custody in Restrictive housing status may only purchase Hygiene items, Stationery items, and a Fan.

Paper bags are no longer issued for commissary shopping.  Individual in custody are allowed to purchase mesh laundry bags without drawstrings that can be used to carry commissary items.

During Level I lockdown individual in custody commissary purchases are **prohibited**.

Level II Lockdown:

Individual in custody with commissary privileges shall be allowed to order items on the approved schedule.  All transactions shall occur at the cell; the individual in custody shall not be permitted to shop at the commissary in person. Items shall be limited to essential hygiene products (such as, toothpaste, toothbrush, soap, shampoo, and shaving material); writing materials (such as envelopes, tablet, pen, pencil) and coffee/hot cocoa (Kool-Aid in summer) in quantities consistent with personal property guidelines.

Eligibility for miss-out commissary includes: call/pass tickets for the Warden, Assistant Wardens, Prisoner Review Board, Administrative Review Board, visits, educational testing (GED only); an authorized absence from the institution (writ, medical furlough, etc.); or for any reason determined as special consideration. No other exceptions will be made.

Any individual in custody who misses his regular trade day for one of the above reasons must submit a commissary slip to a person in his cell house with the rank of Lieutenant or above. The commissary slip must include the individual in custody's name, number, grade, and the reason he could not trade on the scheduled day.

A Grade

$100.00 Limit

Override the following items ONLY:

Fan, Lamp, Trimmer, Shaver, TV, Tablet,

Songs, Messages, Headwear, Gloves, Socks,

Shower Shoes, Gym Shoes, Gym Shorts,

Underwear, Undershirts, Sweat Clothes,
Thermal Clothes, Links

B Grade

1 Shop Per Month (1st Shop)

$30.00 Limit

Override just like A Grade


C Grade

1 Shop Per Month (1st Shop)

$30.00 Limit

Hygiene

Stationary/Writing Items

Liquid Laundry Detergent (4)

Override the following items ONLY:

Fan, Headwear, Gloves, Socks, Shower Shoes,
Gym Shoes, Gym Shorts, Underwear,
Undershirts, Sweat Clothes, Thermal Clothes


*R&C Individual in custody*

1 Shop Per Month ( Shops with Seg)

$15.00 Limit

Hygiene

Stationary/Writing Items

Liquid Laundry Detergent (4)

Tumbler (1)

Override the following items ONLY:
Fan, Shower Shoes, Gym Shoes, Thermal Clothes

Transgender Individuals in custody
Bras- white only (4)
Panties- white only (10)
Hair Net-Brown (1)
Scrunchies- Black (1)
Blush (1)
Eye Shadow-neutral color (1)
Eyebrow pencil (1)
Eyeliner pencil (1)
Foundation (1)
Lip Gloss- clear (1)
Lip stick- neutral color (1)
Mascara (1)
Cosmetic bag-clear plastic (1)
Body scrubber (1)
Facial hair remover/magic shave (1)


MSR

$15.00 Limit

Hygiene

Stationary/Writing Items

Liquid Laundry Detergent (4)

Coffee (4)

LAST 30 DAYS ONLY

Override the following items ONLY:

Gym Shoes and Clothing


State Loan Fan

Hygiene

Stationary/Writing Items

Liquid Laundry Detergent (4)


Temp Confinement

Investigative Status

1 Shop Per Month (1st Shop)

A Grade--$100 Limit

B Grade--$30 Limit
C Grade--$30 Limit


*Phase 1*

1 Shop Per Month (1st Shop)

$30.00 Limit


Hygiene

Stationary/Writing Items

Liquid Laundry Detergent (4)

SEG Limited to SEG Items Only

Override the following items ONLY:

Fan, Headwear, Gloves, Socks, Shower Shoes,

Gym Shoes, Gym Shorts, Underwear,

Undershirts, Sweat Clothes, Thermal Clothes


*Phase 2*

$100.00 Limit A Grade

Override just like General Population A Grade


$30.00 Limit B Grade / 1 Shop Per Month (1st Shop)

Override just like General Population B Grade


$30.00 Limit C Grade / 1 Shop Per Month (1st Shop)

Override just like General Population C Grade


SEG Limited to SEG Items Only / 1 Shop Per Month (1st Shop)
Override just like Restrictive housing


Phase 3

$100.00 Limit A Grade

Override just like General Population A Grade


$30.00 Limit B Grade / 1 Shop Per Month (1st Shop)

Override just like General Population B Grade


$30.00 Limit C Grade / 1 Shop Per Month (1st Shop)

Override just like General Population C Grade


Restrictive Housing Limited to Restrictive Housing
Items Only / 1 Shop Per Month (1st Shop)
Override just like Restrictive housing

**Transgender Current List**
Bras
Underwear
**(All other items still unavailable due to vendor)**

**AUDIOVISUAL PURCHASES**

Any individual in custody wishing to purchase items through the commissary should consider the following procedural rules and limitations.

A.    Audiovisual items are already in stock at the commissary and are available for immediate sale.
B.    Repair on audiovisual equipment purchased within sixty (60) days is handled through the commissary.

## Prison Transportation for Families

Finding transportation to visit a loved one is difficult when you are far away.  This is a list of transportation companies that provide pick up and drop off primarily from the Chicagoland area to State and Federal Prisons throughout Illinois.  All transportation set up is strictly between the family/friend and the transportation company.  IDOC and the facilities do not recommend or have information regarding transportation schedules or facility destinations or costs.

**LA Transportation Illinois, LLC**- PO Box 278893, Riverdale, IL, 60827
        Call- 708-257-0584
        Based in Cook County; Serving Northern and Central Regions
        Email- LA_TRANSPORTATIONILLINOIS@YAHOO.COM

**Clear Choice Transportation**- Call- (312) 217-6199
        Leaves from Chicago, visits most IL prisons
        Email- http://clearchoicetransportation.com/Services.html

**Doable Transportation** – Call (708)365-6993
        Serves from Chicago to most IL prisons
        Email- http://doabletransporation.com/about/

**Statewide Christian Transportation** – Call (773) 440-8737
        Email – http://www.statewidechristiantransportation.com

**A and E Prison Transportation** – Call (708) 232-0942

**JJEC Transportation** – Call (708) 629-8561

**Umoja Transportation LLC** – Call (773) 791-0580; PO Box 17268 Chicago, IL 60617

**Amtrak** – 1-800-872-7245; website – Amtrak.com

Nearest Stations:      20 N. Chestnut, Du Quoin, IL 62832
401 S. Illinois, Carbondale, IL 62901

**Hotel** – Best Western Chester Hotel, 2150 State St, Chester, IL 62233    (618) 826-3034

**Airport** – Veterans Airport of Southern Illinois, 10400 Terminal Dr, Unit 200, Marion, IL 62959      Call – (618) 993-3353
        Website: http://veteransairport.com/

## <u>FREEDOM OF INFORMATION ACT</u>

### <u>REQUESTS FOR RECORDS:</u>

A.      All requests for public records pertaining to the Illinois Department of Corrections shall be mailed in a postage paid envelope to:

Lisa Weitkekamp
Freedom of Information Act Officer
Department of Corrections
Office of Communications
P.O. Box 19277
Springfield, Il 62794-9277

NOTE:  Requests for records from outside agencies, i.e., circuit courts, sheriff's department, county departments, PRB, etc., must be addressed and mailed in a postage paid envelope directly to that agency.

B.      All requests shall be in writing. Requests should be printed or typed and must include the following information:

1.      The requestor's full name;
2.      A brief description of the records sought, being as specific as possible including any pertinent dates;
3.      Whether the request is for the inspection and/or copying of records;
4.      Whether the records need to be certified; and
5.      That the request is under the FOIA.

C.      Requests shall be deemed to have been received on the date of receipt by the Freedom of Information Officer, Lisa Weitekamp, at the Springfield address listed above.

D.      The Department is not obligated to create or develop a record which was not already compiled at the time a request is received.

### <u>RESPONSES TO REQUESTS:</u>

A.      The Department shall respond to a written request within five (5) working days after its receipt by the Freedom of Information Officer, Lisa Weitekamp.

B.      The Department shall provide the requestor with one of the following responses:
1.      Require further identification of records. If the original request does not adequately identify the records sought, the requestor will be required to provide more detailed information in order to ascertain the identity of the records. The FOIA request will then be deemed to have been received on the date of the amended request, and the Department shall respond to the amended request within five (5) working days.
2.      Give notice of an extension of time. The Department may give notice of an extension of time to respond which shall not exceed an additional five (5) working days. The requestor shall be advised, in writing, of the reason for the extension as enumerated in Section 3 (e) of the FOIA. The requestor shall then be advised, in writing, within five (5) working days of the Department's compliance with or denial of the request.
3.      Approve all or part of the request.
a.      If all or part of the request is approved, the Department may:
1.      Provide the records immediately;
2.      Give notice that the materials shall be made available upon payment of the reproduction and/or certification costs; or

3.     Give notice of the time and place for inspection of records.

    b.     A partial denial will be processed in accordance with the procedures for denials as stated in paragraph B.4. of this Section.

4.     Denied request. Requested records may be denied by the Department in accordance with Section 3.d. or 9 of the FOIA if the records are exempt because compliance with the request would be unduly burdensome on the Department or if the contents of the records are exempt from inspection and copying.

    a.     If the records are denied, the requestor shall be advised in writing of the specific exemption claimed, the names and titles of the employees who issued the denial, and of the requestor's right to appeal the denial to the Director.

    b.     Copies of all denials issued by the Department shall be available for public review.

    a.     If the Department does not respond to a written request within seven (7) working days after its receipt, the requestor may consider the request to have been denied.

**APPEAL PROCEDURE:**

A.     When a request for public records has been fully or partially denied, the requestor may appeal the denial to the Director. Notice of the appeal shall be made in writing to:

Director
Illinois Department of Corrections
1301 Concordia Court
P. O. Box 19277
Springfield, Illinois 62794-9277
Attention: FOIA Appeal

B.     The notice of appeal shall include:

1.     Copies of the original request and, if available, the Department's notice of denial; and

2.     A brief statement by the requestor as to the reasons the appeal should be granted.

C.     The Director or his designee shall respond within seven (7) working days. The Director or his designee shall either affirm the denial as to all or part of the records or shall determine that the records are available for inspection and copying. If the Director or his designee does not respond to the notice of appeal within seven (7) working days after its receipt, the requestor may consider his appeal to have been denied.

    E.     If the appeal to the Director is denied, the requestor may file for judicial review of the Department's decision.

**FEES:**

A.     Copies of public records shall be provided to the requestor only upon receipt of a check or money order in payment of any and all fees. Fees for copies and certification of public records shall be assessed in accordance with the standard Fee Schedule established by the Department.

B.     Fees may be waived when the Freedom of Information Officer determines that the waiver best serves the public interest.

C.     Additional information is posted in all cellhouses concerning fee schedules.

## THE INFORMATION CONTAINED IN THIS MANUAL IS SUBJECT TO CHANGE. IT IS YOUR RESPONSIBILITY TO READ ALL POSTED BULLETINS FOR INFORMATION WHICH MAY SUPERSEDE MATERIAL PRESENTED IN THIS DOCUMENT.

## REMEMBER YOU WILL ALWAYS BE HELD RESPONSIBLE FOR YOUR BEHAVIOR.  IF YOU ARE UNSURE OF ANY INFORMATION PROVIDED IN THIS BOOK OR INFORMATION PROVIDED BY BULLETINS……ASK

**SOMEONE!**