IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS DIVISION

| | |
|---|---|
| JANIAH MONROE, MARILYN MELENDEZ, LYDIA HELENA VISION, SORA KUYKENDALL, and SASHA REED, <br><br>Plaintiffs, <br><br> - vs- <br><br> LATOYA HUGHES, MELVIN HINTON, and STEVEN BOWMAN, <br><br>Defendants. | No. 18-156-NJR |

**DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' EMERGENCY MOTION FOR DISCOVERY AND BRIEF CONTINUANCE OF THE APRIL 1-4, 2025, PRELIMINARY INJUNCTION HEARING**

NOW COME the Defendants, LATOYA HUGHES, MELVIN HINTON, and STEVEN BOWMAN (hereinafter "Defendants"), sued in their official capacities as IDOC administrators, and hereby provide their Response in Opposition to Plaintiffs' Emergency Motion for Discovery and Brief Continuance of the April 1-4, 2025, Preliminary Injunction Hearing (hereinafter "Motion"), and state as follows:

**INTRODUCTION**

Plaintiffs' instant Motion blames Defendants and their new counsel for fomenting unnecessary delay in the hearing on the preliminary injunction. To the contrary, and as discussed further below, Defendants attempted to resolve these discovery issues with Plaintiffs in an orderly manner with great deference to the pending hearing date, and to allow the pending hearing to proceed as scheduled—especially since Plaintiffs adamantly refused to agree to continue the

1

hearing date to allow time to complete the requested discovery when Defense counsel indicated fulfillment in the time allotted would be impossible. However, now that Plaintiffs have filed their Motion, requesting a continuance, thereby allowing Defendants more time to respond to the voluminous discovery requests, Plaintiffs' Motion is entirely unnecessary and should be denied.

Plaintiffs filed their Motion for Preliminary Injunction on February 14, 2025. However, Plaintiffs did not even request any discovery—formally or informally—until March 5, 2025. The vast majority of discovery sought by Plaintiffs, even though much of it is irrelevant, Defendants were, and remain willing to produce discovery. However, due to the short turn-around time, the date of the impending hearing, and the upcoming deadline for Defendants' response to Plaintiff's Motion for Preliminary Injunction, Defendants were simply unable to fulfill Plaintiffs' requests.[1] Plaintiffs chose to wait a period of over three weeks after filing their Motion before requesting any discovery from Defendants and, as a result, Defendants were left with less than four weeks' time to provide responsive records and schedule the depositions of four Department employees, while simultaneously drafting their response to Plaintiffs' Motion for Preliminary Injunction.

Accordingly, because Defendants agree to produce the majority of the records sought by Plaintiffs and have more time to do so, Plaintiffs' Motion should be denied in its entirety.

## DEFENDANTS' REASONABLE MEET AND CONFER EFFORTS

Somewhat inexplicably, Plaintiffs claim that the motion for preliminary injunction has been "more than a year in the making." *See* Motion, Dkt. No. 902, 1. That assertion begs the question as to why Plaintiffs waited until three weeks ago, on March 5, 2025, to request the

---

[1] It should also be noted that, despite Plaintiffs assertions, Defendants have been producing documents. Specifically, Plaintiffs were provided TAC and THAW records from as recent as December of 2024. These records were provided prior to current Defense counsel's appearance and were provided to Plaintiffs by the Attorney General's Office. As a result, Plaintiffs were already previously provided some of the records they now ask the Court to compel.

documents they wanted that are at issue in the instant Motion.[2] In reality, the Seventh Circuit issued its mandate in this case on December 27, 2024. *Monroe v. Bowman, et al.*, 122 F.4th 688, at *22 (7th Cir. December 5, 2024). As the Court and the Plaintiffs have acknowledged, the case "changed substantially" as a result of the mandate. *See* Court's January 22, 2025, Order, Dkt. No. 867, 1; Plaintiffs' Motion for Extension, Dkt. No. 870, 1-2.

In light of this substantial change, Plaintiffs were directed to refile their "Motion to Transfer Class Members Out of Menard Correctional Center" (hereinafter "Motion for Preliminary Injunction") by February 7, 2025. *See* Court's January 22, 2025, Order, Dkt. No. 867, 1-2. At that point, witness lists were due to be exchanged by February 28, 2025, and the preliminary injunction was set for April 1 through April 4, 2025. *Id*. Plaintiffs were also given the opportunity to file an amended complaint if they so opted, due on March 13, 2025, with the responsive pleading due onMarch 17, 2025. *Id*. Plaintiffs requested an extension of time to file their amended complaint, "due to the complexity of this case," and the Court extended their time to file it to April 17, 2025. *See* Plaintiff's Motion for Extension of Time, Dkt. No. 875; Court's January 27, 2025, Order, Dkt. No. 876.

After receiving an extension to file (*see* Court's February 7, 2025, Order, Dkt. No. 872), Plaintiffs filed their Motion for Preliminary Injunction on February 14, 2024. *See* Motion for Preliminary Injunction, Dkt. No. 873. Plaintiffs waited an additional three (3) weeks before informally[3] requesting documents via email from Defendants on March 5, 2025. *See* Motion, Dkt.

---

[2] Importantly, Plaintiffs did not file a motion for expedited discovery prior to issuing their discovery, and therefore, Federal Rule of Civil Procedure 26(d) applies.

[3] Defendants do not now claim that the requests need to be formal for purposes of a preliminary injunction; however, with that said, courts have emphasized the importance of formal discovery requests in expedited discovery, noting that informal requests may not provide the necessary procedural protections. *C.D.S., Inc. v. Zetler*, 213 F. Supp. 3d 620 (S.D.N.Y. 2016); *Arista Records LLC v. Doe 3*, 604 F.3d 110 (2d Cir. 2010).

No. 902, 3. Two days later, they informally requested depositions. *Id*. Notably, Plaintiffs have been receiving significant discovery for years in this case, as part of the discovery process.

At that time, Defense counsel were in the middle of finalizing their review and drafting the response to Plaintiffs' Motion for Preliminary Injunction, which was then due on March 11, 2025. *See* Court's January 27, 2025, Order, Dkt. No. 876. Due to late disclosures filed by Plaintiffs, Defendants filed a motion to strike that was granted in part, and the deadline to respond was extended until March 21, 2025. *See* Court's March 17, 2025, Order, Dkt. No. 888.

After receiving the document and deposition requests, Defense counsel began working on a response and discussing the availability of witnesses, while contemporaneously briefing the Motion for Preliminary Injunction. Defense counsel requested a call with Plaintiffs' counsel to discuss on March 11, 2025, and March 12, 2025, and received no response. *See* Motion, Exhibit 5, Dkt. No. 902-5. On March 12, 2025, receiving no response for a call, Defense counsel objected via email to the time-period proposed for the documents given "[c]urrent conditions are what is relevant," and to the requested deposition of Director Hughes "on a number of grounds including the Apex doctrine." *Id*. On March 12, 2025, or March 13, 2025, Plaintiffs' counsel and Defense counsel discussed the requests; however, Defense counsel made no agreements and stood on the previously stated objections. *See* Motion, Exhibit 6, Dkt. No. 902-6. Defense counsel did advise that he would speak with his client about the further information provided by Plaintiffs' counsel on the call and inform them if Defendants' position changes. *Id.* Defense counsel never advised them that Defendants' position changed.

Plaintiffs' counsel then waited until March 17, 2025, approximately two weeks before the scheduled preliminary hearing, to follow-up on Plaintiffs' requests for documents and depositions. *Id.* On March 18, 2025, Defendants requested a call to discuss the discovery sought in light of the

4

timing of the preliminary injunction hearing. *See* Motion, Exhibit 9, Dkt. No. 902-9. The parties set a call for the morning of March 20, 2025. *Id*.

At the outset of the March 20, 2025, meet and confer conference, Defendants' counsel explained that they did not think it was possible to both provide the documents requested and schedule all the depositions Plaintiffs wanted prior to the hearing scheduled for April 1, 2025. *See* Penn Declaration, attached as Exhibit 1. Defendants confirmed that Plaintiffs wanted the documents prior to the depositions, a process to which Defendants agreed, and then explained they could not produce all of the documents requested on a timeline that would allow for two (2) to three (3) hour depositions of each requested witness. *Id*. Plaintiffs' counsel indicated that it would not agree to reschedule the hearing scheduled for April 1, 2025, and would vigorously oppose any request from the Defendants to do so. *Id*.

Because Plaintiffs' counsel did not want to move the hearing, the parties discussed what could reasonably be done between then and the preliminary injunction. *Id*. Plaintiffs indicated that they needed to know what Defendants were willing to provide in terms of documents and witnesses, and indicated that they needed to know Defendants' position by the end of the day Friday, March 21, 2025, in order to decide whether to file a motion to compel on Monday morning. *Id*. Defendants requested that Plaintiffs inform them if any documents were a priority, and Defendants agreed to prioritize agreement to produce those documents if that was possible. *Id*. Defendants also asked if Plaintiffs were aware of other witnesses they wished to depose, and Plaintiffs indicated they would not be able to make that determination until they saw Defendants' witness list. *Id*. Remarkably, during the call, Plaintiff's counsel outright refused to discuss their witnesses because "witness exchange is not due until Monday," notwithstanding their own requests and Defense counsel's willingness to informally discuss discovery prior to witness exchange. *Id*.

In light of the foregoing, Defendants indicated that they would respond as to what they could produce and which witnesses they could make available, and they did so as promised by the end of Friday, March 21, 2025. *Id.*; *see also* Motion, Exhibit 9, Dkt. No. 902-9. Given Plaintiffs' counsel's refusal to agree to a continuance, Defense counsel advised that they could only agree to the production of some documents given the time-constraints, including the scheduled hearing and because Plaintiffs' counsel requested all the documents prior to any depositions proceeding. *See* Motion, Exhibit 9, Dkt. No. 902-9. Defendants' proposal to produce documents and avoid the instant Motion and further delay was to produce nine categories of documents, and then produce three of the five witnesses requested. *Id*.

Specifically, Defendants agreed to produce Drs. Puga, and Reister along with Warden Wills for depositions. *Id.* They explained that they could not present Dr. Conway because she is unavailable due to a medical issue, and objected to a deposition of Director Hughes, *inter alia*, based on the Apex doctrine. *Id.* They also agreed to produce the following records for class members currently housed at Menard:

1. Medical records from last 6 months
2. Mental health records from last 6 months
3. Written, official grievances and responses while housed at MEN CC and in the possession of MEN CC from 6/2024 to present
4. Disciplinary cards
5. Written, official PREA complaints and responses while housed at MEN CC and in the possession of MEN CC from 12/2023 to present
6. CHAMP (aka cumulative counseling summary) from 12/2023 to present (marked attorneys-eyes only due to it containing victim information, phone numbers and addresses of private individuals)
7. Written, official requests to be placed in protective custody and responses while housed at MEN CC and in the possession of MEN CC
8. Investigation files related to incidents while housed at MEN CC and in the possession of MEN CC from last 6 months to present (with any appropriate redactions for STG information and marked attorneys-eyes only)
9. Official documentation/referrals to and from TAC/THAW from December 2023 to present

*Id.* Due to the timing constraints, this was the best Defendants could do. The offer was made in good faith.

Plaintiffs did not file a motion to compel on the morning of March 24, 2025, and Defendants did not hear further from them. Instead, Plaintiffs emailed Defendants at 9:09 p.m. that night indicating that the proposal was unacceptable, that they would file a motion the next day, and explained that "we will make sure the Court understands how your calculated delay and feigned ignorance is the cause of the extension." *See* Ray's March 24, 2025, Email, attached as Exhibit 2. They essentially refused to meet and confer too, stating "[w]e are available to meet and confer tomorrow AM if productive, but we've made our position on these issues already clear, and we doubt this email comes as any surprise." *Id.* Defense counsel responded the very next morning that they "remain willing to meet and confer" and "can meet this afternoon or tomorrow morning if you would like/think it would be productive, but given your statements below, it appears you have determined a motion to compel is necessary." *Id.* He further explained that they would review the motion to try to narrow the issues that the Court needs to decide. *Id.* This emergency motion followed.

For these reasons, and those discussed below, Plaintiffs' Motion should be denied.

## LEGAL STANDARD

Although Plaintiffs did not move for expedited discovery, they are proceeding as if they had. District courts within the Seventh Circuit "evaluate a motion for expedited discovery 'on the entirety of the record to date and the reasonableness of the request in light of all the surrounding circumstances.'" *Iglesias v. Fed. Bureau of Prisons*, No. 19-CV-415-NJR, 2021 U.S. Dist. LEXIS 198821, *3 (S.D. Ill. Oct. 15, 2021) (citing *Ibarra v. City of Chicago*, 816 F. Supp. 2d 541, 554 (N.D. Ill. 2011) (quoting *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. O'Connor*, 194 F.R.D. 618, 624 (N.D. Ill. 2000)). "Factors relevant to this analysis may include '(1) whether a preliminary

injunction is pending; (2) the breadth of the discovery requests; (3) the purpose for requesting the expedited discovery; (4) the burden on the defendants to comply with the requests; and (5) how far in advance of the typical discovery process the request was made.'" *Iglesias*, 2021 U.S. Dist. LEXIS at *3 (citing *OrthoPediatrics Corp. v. Wishbone Med., Inc.*, 2020 U.S. Dist. LEXIS 255019, *2 (N.D. Ind. Dec. 15, 2020) (quoting *Ibarra*, 816 F. Supp 2d at 554)).

"A party seeking leave to conduct expedited discovery bears the burden of making a prima facie case for such early discovery." *Iglesias*, 2021 U.S. Dist. LEXIS at *3 (citing *OrthoPediatrics Corp.*, 2020 U.S. Dist. LEXIS at *1 (citing *Hard Drive Prods., Inc. v. Doe*, 283 F.R.D. 409, 410 (N.D. Ill. 2012)). "Courts must also protect defendants from unfair expedited discovery." *Iglesias*, 2021 U.S. Dist. LEXIS at *3 (citing *Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 194 F.R.D. at 623). Thus, district courts in the Seventh Circuit require "the movant [to] establish 'good cause.'" *Iglesias*, 2021 U.S. Dist. LEXIS at *3 (citing *Roche Diagnostics Corp. v. Binson's Hosp. Supplies, Inc.*, 2017 U.S. Dist. LEXIS 71940, *1 (S.D. Ind. May 11, 2017) (citing *Hard Drive Prods., Inc.*, 283 F.R.D. at 410)).

## ARGUMENT

Defendants have tried to work with Plaintiffs to resolve these issues under the time constraints provided. Defendants respectfully submit it is not reasonable for Plaintiffs to claim that their Motion for Preliminary Injunction has been in the making for over a year while simultaneously claiming it was reasonable to wait until less than one month prior to the hearing to request documents, and then expect Defendants – whose response to the Motion for Preliminary Injunction was due in less than a week due in part to Plaintiffs' requested extensions of time or their last minute declarations – to drop everything and start working on discovery, especially that

which was not fully discussed or raised prior. Defendants were, and remain willing to produce narrow discovery, as discussed below (and indeed more to avoid further court involvement).

Under the circumstances, Defense counsel informed Plaintiffs' counsel of what could reasonably be completed, and it was not acceptable to Plaintiffs. That position is not an unreasonable one, but it is also not the result of Defendants' conduct. Defendants do not object to the requested continuance of the preliminary injunction (in fact, Defense counsel suggested one would be needed to fulfill Plaintiffs' discovery requests and Plaintiffs adamantly refused), but they do object to any implication that they nefariously caused the need for a continuance. Each side has made reasonable requests to extend deadlines under the circumstances, and this Court has expeditiously ruled on those requests. Defendants are willing to work with Plaintiffs, but the hyperbolic rhetoric in Plaintiffs motion and communications is unwarranted.

    I.    <u>Plaintiffs' Document Requests Are Entirely Overly Broad And Seek Documents Not Reasonably Tailored To The Issues That Will Be Determined At The Preliminary Injunction Hearing.</u>

Motions for preliminary injunctions must focus on *current* conditions, not *past* conditions. *Dent v. Dennison,* No. 17-cv-1356-MJR-SCW, 2018 U.S. Dist. LEXIS 153948, at *23 (S.D. Ill. June 15, 2018) ("Plaintiff has evidence of his previous conditions which he can use in furtherance of his claims . . . . [b]ut as to Plaintiff's current cell conditions, the undersigned finds that Plaintiff is not entitled to a preliminary injunction ."); *Padilla v. Wills*, No. 24-cv-02478-SPM, 2025 U.S. Dist. LEXIS 15207, at *9 (S.D. Ill. Jan. 28, 2025) (denying preliminary injunction because "[i]n the original motion, Plaintiff states that he is no longer in segregation and does not discuss his current conditions of confinement."); *Renolds v. Ahmed*, No. 21-cv-00345-SPM, 2021 U.S. Dist. LEXIS 163412, at *13 (S.D. Ill. Aug. 30, 2021) (finding a "'possibility' of harm based on past conduct . . . is insufficient to demonstrate that 'irreparable injury is *likely*' without Court interference.").

Notably, the Seventh Circuit in its remand order, specifically instructed that "[i]f plaintiffs believe, as they argue here, that defendants have been *continuing* to violate their Eighth Amendment rights, they may ask the district court for a new injunction, preliminary or permanent" and "new injunctive relief will need to address the *current* situation." *Monroe*, 122 F.4th at *22 (emphasis added). Therefore, Plaintiffs must "address the current situation" as opposed to what allegedly occurred in the past. *Id.* Plaintiffs acknowledge this requirement. *See* Plaintiffs' Motion for Extension, Dkt. No. 870 ("time has passed, and Plaintiffs' counsel have been diligently working . . . to ensure that the motion reflects current information about the conditions at that facility . . . . as the Court observed in its order, the case has 'changed substantially' since the original motion was filed (*id.* at 2-3), necessitating revision of the motion.").

Furthermore, Plaintiff's Motion for Preliminary Injunction is limited. *See* Motion for Preliminary Injunction, Dkt. No, 874. It seeks to (1) "enjoin[ ] Defendants from housing any class member at Menard Correctional Center," and (2) "requires Defendants to offer a transfer for all class members to Logan and/or consolidating class members in a few, safer facilities at the Illinois Department of Corrections with concentrated services to evaluate and treat gender dysphoria." *Id.* In support, they allege assaults; cross-gender strip searches; denials of transfer requests; double-cells; and interference with grievance forms, the law library and phone calls with counsel. *Id.* They also allege sporadic or no access to hormones, gender-affirming surgeries, gender-affirming commissary items, or private showers. Plaintiffs' document requests go well beyond these allegations, and in their Motion, they do not otherwise provide a need for the documents related to these allegations.

Relatedly, "preliminary injunctive relief sought in a case must relate to the claims pending in the underlying lawsuit." *Iglesias v. True*, No. 19-cv-00415-JPG, 2020 U.S. Dist. LEXIS 247720,

at *3 (S.D. Ill. Jan. 7, 2020) (citing *Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994). In their Complaint,[4] filed on January 31, 2018, Plaintiffs bring one Eighth Amendment claim, alleging that "Defendants subject all Plaintiffs and the Plaintiff Class to a substantial risk of serious harm and injury from inadequate and delayed evaluation and treatment of gender dysphoria." *See* Complaint, Dkt. No. 1, ¶ 120. However, in their Motion for Preliminary Injunction, Plaintiffs seek relief that is wholly unrelated to "inadequate and delayed evaluation and treatment of gender dysphoria," including relief related to alleged assaults, private showers, transfers, and interference with grievance forms, the law library, and phone calls with counsel." Plaintiffs' document requests equally go well beyond these allegations, and in their Motion, they again do not otherwise provide a need for the documents related to these allegations.

As such, the requested documents dating back to December 31, 2024, are entirely overly broad and not reasonably tailored to the issues that will be determined at the preliminary injunction hearing. *Phila. Newspapers, Inc. v. Gannett Satellite Info. Network, Inc.*, No. CIV. A. 98-CV-2782, 1998 U.S. Dist. LEXIS 10511, 1998 WL 404820, at *2 (E.D. Pa. July 15, 1998) (denying request for expedited discovery when the discovery requests were not "reasonably tailored" to the time constraints for taking the discovery prior to the preliminary injunction hearing or the "specific issues that will be determined at the preliminary injunction hearing."). However, in the spirit of cooperation and as noted below, Defendants agree to comply with most of Plaintiffs' requests given they now have additional time to produce the documents with Plaintiffs seeking a hearing continuance.

---

[4] This case is compounded by the fact that Plaintiffs' amended complaint has not yet been filed, and is now due on April 17, 2025 (*see* Court's February 27, 2025, Order, Dkt. No. 876), and as such, Plaintiffs' Motion for Preliminary Injunction, which must relate to the claims pending in the underlying lawsuit, relates to Plaintiff's original complaint that will soon no longer govern this case.

II. **Most of the Relief Sought in Plaintiffs' Motion to Compel is Moot Since Defendants Can Now Comply Given Plaintiffs Now Seek A Continuance of the Hearing.**

Now that Plaintiffs seek a hearing continuance, Defendants have additional time and now agree to most of Plaintiffs' discovery requests, with three (3) weeks to produce said documents, and with the understanding that Defendants do not waive any additional or later objections, for the reasons stated *supra* in Section I. Specifically, Defendants agree to produce (with proper redactions and/or confidentiality designations) the following documents, from Dec. 30, 2023, to present, for class members currently housed at Menard, and for those records in which relate to MCC and that MCC is in possession: (1) any grievances and responses to same; (2) any records of PREA complaints and responses to same; (3) any records of discipline and/or investigative files; (4) any records of requests made to TAC or THAW, and responses to same; (5) mental health records; (6) medical records; (7) all transfer requests and denials;[5] and (8) all requests to be placed in protective custody and denials at Menard. That leaves only the following document requests at issue, as further discussed below: (1) incident reports and (2) records of requests made to "any other committee or individual with responsibility for dealing with requests relating to individuals with gender dysphoria in custody, and responses to same."

Further, as to depositions, given the parties now have additional time, Defendants agree to present all the requested individuals for a deposition, limited to three (3) hours, as previously agreed by Plaintiff's counsel, and limited to the specific issues that will be determined at

---

[5] Upon information and belief, there is no official document for individuals in custody to request a transfer. Rather, they generally can speak to their counselor or write a kite. The kites are generally not kept by Menard staff. Instead, when a counselor receives a request in either verbal or written form from an individual, he or she creates an entry in the O360 database and documents the request in that individual's CHAMPs. The same processes are performed when and if an individual is either approved or denied for a transfer. The general transfer process differs from a request to transfer for gender dysphoria accommodation.

12

the preliminary injunction hearing. Notably, Plaintiffs' counsel neither sought the depositions of all disclosed witnesses nor met and conferred with Defense counsel prior to filing their Motion. As for Dr. Conway, Defendants only objected to her deposition because she is out of the office due to a medical issue, and was unavailable prior to the hearing for a deposition.

As for Director Hughes, although Defense counsel do not waive any additional or later objections including on the Apex doctrine, Defendants agree to present her for a deposition, limited in scope to denials of class member's requests for protective custody or denials of class members' requests for transfers out of Menard. It should be noted, however, that Director Hughes, upon information and belief, did not personally approve the denials of any class members' requests for protective custody or requests for transfers, and does not otherwise have any unique knowledge as to those requests. Upon information and belief, such requests were signed by a designee using Director Hughes' name. Plaintiffs do not argue Director Hughes has any other knowledge related to the preliminary injunction hearing. *See* Motion, Dkt. No. 902, 8.

Finally, Defendants also have no objection to Plaintiffs' requested continuance of the currently scheduled hearing to complete the discovery prior to the preliminary injunction, but request the adjustment also allow them time to depose the witnesses identified by Plaintiffs. Defendants propose that the parties have three (3) to four (4) weeks after document production is complete to conduct depositions given Plaintiffs now request depositions of the eight (8) individuals disclosed by Defendants in addition to Director Hughes, and Defendants now request the eleven (11) witnesses disclosed by Plaintiff.

For these reasons, this Court should deny Plaintiffs' Motion.

III. <u>Plaintiffs Fail to Meet Their Burden And Do Not Establish Good Cause for "Incident Reports" from December of 2023 to the Present.</u>

As to Plaintiffs' request for incident reports (434s), for the reasons stated *supra* in Section I, it is overly broad and seek documents not reasonably tailored to the issues that will be determined at the preliminary hearing. Furthermore, this request is unduly burdensome. Upon information and belief, incident reports are stored in paper format by date of occurrence (not by topic or individual(s) involved). Conservatively, Menard, which is a MAX facility that experiences a variety of unusual events on any given day, could have between twenty (20) to two-hundred (200) incident reports per day. Staff are directed to write incident reports for any "unusual occurrence" which could mean anything from receiving a strange phone call, twisting their ankle going up the stairs, locating contraband, being assaulted, flooding on the gallery, exchanging terse words with an individual, responding to a Code 3 (medical emergency), just to name a few.

The requested time period from December 1, 2023 to March 26, 2025, is four-hundred and eighty-one (481) days. Even with the conservative estimate fifty (50) incident reports written a day (which is *not* the case, since there can be hundreds on any day), that would require staff to manually search through over twenty-four thousand (24,000) incident reports. Each paper incident report would need to be manually and thoroughly reviewed to determine if any of the class members housed at Menard are mentioned. Such a search would require hundreds of hours of work by staff, which they do not have and is impossible under the current time-constraints and Menard is extremely short-staffed, specifically, upon information and belief, there is only one individual at Menard who is responsible for searching for and providing incident reports.

However, in a good faith attempt to come to an accord, Defense counsel previously agreed to provide incident reports for specific dates for a class member housed at Menard. As discussed

above, Plaintiffs' counsel rejected this proposal and filed the instant Motion. For all these reasons, Plaintiffs' Motion should be denied as to incident reports.

    IV.    <u>Plaintiffs Fail to Meet Their Burden And Do Not Establish Good Cause for "any records of requests made to any other committee or individual with responsibility for dealing with requests relating to individuals with gender dysphoria in custody, and responses to same."</u>

As to Plaintiffs' request for "any records of requests made to any other committee or individual with responsibility for dealing with requests relating to individuals with gender dysphoria in custody, and responses to same," for the reasons stated *supra* in Section I, it is overly broad and seek documents not reasonably tailored to the issues that will be determined at the preliminary hearing. Furthermore, this request is vague, ambiguous and unduly burdensome. It is not clear which "committee" or "individual" from whom Plaintiffs seek documents, making it impossible for Defendants to comply. However, in a good faith attempt to come to an accord, Defense counsel agrees to further discuss any additional "committee" or "individual" that Plaintiffs seek "records of requests" from. For all these reasons, Plaintiffs' Motion should be denied as this request.

## CONCLUSION

The instant Motion is, at least for the most part, unnecessary and a waste of judicial resources. If Plaintiffs' Motion to Continue is granted, Defendants will have more time to produce the requested discovery, and agree to produce the overwhelming majority of it. More time is all that Defendants requested from Plaintiffs in the first place, given Plaintiffs' failure to ask for any discovery until March 5, 2025. For these reasons, Plaintiff's Motion should be denied in its entirety.

40432\324276605.v3

Date: March 26, 2025

Respectfully submitted,

DEFENDANTS LATOYA HUGHES, MELVIN HINTON, and STEVEN BOWMAN

*/s/ Justin Penn*
One of the Attorneys for Defendants

Justin Penn (Bar # 6283726)
Hinshaw & Culbertson LLP
151 North Franklin Street, Suite 2500
Chicago, Illinois 60606
Telephone: 312-704-3000
jpenn@hinshawlaw.com
DEFENDANTS LATOYA HUGHES, MELVIN HINTON, and STEVEN BOWMAN

40432\324276605.v3

## CERTIFICATE OF SERVICE

The undersigned certifies that on March 26, 2025, I, Peggy Michael served *Defendants' Response to Plaintiffs' Motion to Compel* to all counsel of record via ECF filing, which will accomplish service electronically to all counsel of record.

*/s/ Peggy Michael*
Peggy Michael
