## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| JANIAH MONROE, MARILYN MELENDEZ, LYDIA HELÉNA VISION, SORA KUYKENDALL, and SASHA REED, individually and on behalf of a class of similarly situated individuals, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | Civil No. 3:18-cv-00156-NJR |
| v. | ) ) ) | |
| LATOYA HUGHES, MELVIN HINTON, and STEVEN BOWMAN, | ) ) ) | |
| Defendants. | ) ) | |

## PLAINTIFFS' EMERGENCY MOTION TO COMPEL AND TO ENFORCE THE COURT'S MARCH 28, 2025 DISCOVERY ORDER

Plaintiffs seek to compel Defendants to produce the documents identified by Lieutenant Curtis Dallas and Warden Anthony Wills during their depositions and to enforce the Court's March 28, 2025 Order granting Plaintiffs' Emergency Motion for Discovery and Brief Continuance of the April 1-4, 2025 Preliminary Injunction Hearing ("Discovery Order"). Dkt. 906. Plaintiffs deposed Lieutenant Dallas and Warden Wills on May 9 and 15, 2025, respectively, about their knowledge of the matters at issue in Plaintiffs' Motion for a Preliminary Injunction Prohibiting Class Members from Living at Menard Correctional Center ("Menard"). Documents that they reviewed to prepare for their depositions and that they testified about during the depositions are highly relevant to the impending hearing and subject to production under the federal rules. *See* Fed. R. Civ. P. 26, 37. Defendants are stalling, saying that they are looking into this, that one counsel had a death in the family, and that this motion is unnecessary. Yet the Preliminary Injunction Hearing begins on Tuesday; there is no time to wait. Defendants therefore should be compelled to produce the documents *immediately*.

Defendants' failure to produce the documents also violates the Court's Discovery Order, which compelled Defendants to respond to Plaintiffs' March 2025 discovery requests.  *See* Dkt. 906 at 2.  The Court specifically ordered that "Defendants *shall* produce to Plaintiffs, *as soon as possible, but no later than **April 18, 2025***, the following documents for all class members currently housed at Menard, from December 30, 2023, to the present," which included ten categories of documents related to Menard and class members' claims about mistreatment and ongoing misconduct by Menard staff, among other topics.  *Id.* (emphases added).  The documents identified during Lieutenant Dallas' and Warden Wills' depositions are responsive to at least three (or more) categories of documents that the Court has already ordered Defendants to produce.  Given Defendants' clear noncompliance with the Court's Discovery Order by failing to produce responsive documents within their control and about which their witnesses have testified, Plaintiffs are entitled to an adverse inference ruling against Defendants that the documents would have been unfavorable to Defendants.

For the following reasons, the Court should grant Plaintiffs' motion to compel and to enforce the Court's Discovery Order.  The Court should order that Defendants *immediately* produce the materials identified by Lieutenant Dallas and Warden Wills and, if not produced before the hearing, that a negative inference will be drawn against Defendants that the documents are harmful to them.

## FACTUAL BACKGROUND

### I.    The Court's Order Granting Plaintiff's Emergency Motion for Discovery and Compelling Defendants' Production

On March 28, 2025, the Court granted Plaintiffs' Emergency Motion for Discovery and Brief Continuance of the April 1-4, 2025 Preliminary Injunction Hearing.  Dkt. 906.  The Order compelled Defendants to produce documents responsive to Plaintiffs' March 2025 discovery

requests no later than April 18, 2025. *Id.* at 2. Plaintiffs' March 2025 discovery requests sought documents concerning class members' current conditions at Menad, including, but not limited to, records related to "1. [a]ny grievances and responses to same; 2. [a]ny records of PREA complaints and responses to same; [and] 3. [a]ny records of discipline and/or investigative files relating to the class member, and any incident reports for the class member involved corresponding to the dates of those disciplinary actions or investigations." *Id.* In issuing that Order, the Court rejected Defendants' complaints about how long it would take to produce the materials sought by Plaintiffs. *See* Dkt. 905.

The Court's Order also expressly recognized "the lengthy history of this case and . . . [the Court's] earlier findings that Defendants violated Plaintiffs' Eighth Amendment rights to medically necessary health care and necessary social transition for treatment of gender dysphoria, as well as class members' needs for evaluation for this well-recognized serious condition." Dkt. 906 at 2 n.1. The Court thus granted Plaintiffs' emergency request to compel Defendants to produce documents related to class members' claims while living at Menard since 2023, reasoning that "[t]he conditions prevailing at Menard since December 2023, while this matter was on appeal, as well as the current conditions, provide relevant context to the consideration of Plaintiff's" Emergency Motion for Discovery before the Preliminary Injunction Hearing. *Id.*

Against this background, Plaintiffs bring their emergency motion to compel and to enforce the Court's Discovery Order.

## II.    Responsive Documents That Have Not Been Produced

### A.    Responsive Documents Identified By Lieutenant Curtis Dallas

Lieutenant Dallas, who is an Internal Affairs Lieutenant at Menard responsible for conducting internal investigations, testified on May 9, 2025 that Internal Affairs uses email to record, process, and discuss Prison Rape Elimination Act ("PREA") investigations and grievance

investigations, Ex. 1, Dep. Tr. Curtis Dallas 53:22-54:14, 77:14-78:3, 78:24-79:17, and that case summaries are used to record the results of every type of investigation conducted by Menard's Internal Affairs division. *Id.* at 76:4-15. Defendants have since explained that emails are contained in investigatory files and "are sent out to DOC admin outlining the incident including the individuals involved, etc.," and that "the case summaries . . . are contained in the investigations." *See* Ex. 2 at V. Rizzo May 15, 2025 email.

There is no dispute that the documents are responsive to Plaintiffs' 2025 discovery requests, *see id.* at V. Rizzo May 21, 2025 email ("agreed-upon ESI search"), to which the Court has already ordered Defendants to produce documents by April 18, 2025. Dkt. 906 at 2. But Defendants refuse to produce these highly responsive materials before the Preliminary Injunction Hearing, as reflected in the parties' correspondence in the two weeks since the May 9 deposition.

Plaintiffs requested the records on the record, and followed upon the next day by email requesting that "defendants immediately produce the following materials that were the subject of our prior requests for production" and were ordered to "be produced by April 18," 2025. Ex. 2, at S. Prather May 10, 2025 email. Plaintiffs requested production by May 13, 2025, stated that they were "available to meet and confer on May 12, if needed," and previewed an impending motion to compel if Defendants failed to produce the documents. *Id.*; *see id.* at N. Marcotte May 22, 2025 email (informing Defendants that Plaintiffs would be "filing an emergency motion to compel these documents this afternoon unless you can confirm **by noon today** [May 22] whether you intend to and will produce those documents to us today."). Defendants ignored the meet and confer request, and the requested production deadline lapsed. *See id.* at V. Rizzo May 12, 2025 email (responding only that "[w]e are reviewing your email and conferring with client" and "[w]e will get back to you"). On May 14, 2025, Plaintiffs "again request[ed] immediate production" as well as

Defendants' "availability to meet and confer on Thursday, May 15, as required by Local Rule
26.1(c)(2)-(3), before we seek relief from the court." *Id.* at S. Prather May 10, 2025 email.

On May 15—six days after the deposition—Defendants agreed that the documents are
responsive to Plaintiffs' March 2025 discovery requests. *See id.* at V. Rizzo May 15, 2025 email.
While Defendants offered to "conduct an ESI search," they stated that they were "not sure if we
can get you the documents in time for hearing as client is indicating this takes them quite a while."
*Id.* Defendants offered no support for their claim about the time required to perform the searches.
*See id.* Defendants ignored Plaintiffs' position that the case summaries had not been produced to
date, and Plaintiffs' meet and confer request. *See id.* ("To the extent they are not, please let me
know which investigation.").

On May 16, 21, and 22, Plaintiffs again requested immediate production of the documents
*before* the hearing and offered to meet and confer. *See id.* at N. Marcotte May 16, 21-22, 2025
emails. In their responses, Defendants failed to provide any date certain for production, refused
to agree to produce the materials before the hearing, and offered no details about their ESI searches
(e.g., what search terms are being used, which custodians' emails are being searched). *See id.* at
V. Rizzo May 21, 2025 email ("As to agreed-upon ESI search, FYI, the handling attorney had a
death in her family and is out of office. These searches take a while regardless as noted below.");
*id.* at V. Rizzo May 22, 2025 email at 10:49 a.m. (stating only that "[w]e have asked our client and
will get back to you"). Defendants also have identified no legal basis for withholding the materials.

### B.    Responsive Documents That Warden Wills Reviewed to Prepare for His Deposition

On May 15, 2025, Plaintiffs deposed Warden Anthony Wills, who has been the Warden of
Menard since approximately April 2020. Ex. 3, Dep. Tr. Anthony Wills at 26:14-19. Warden
Wills testified that to prepare for his deposition, he reviewed and relied on certain key documents

that he personally drafted, in his capacity as Warden of Menard, about caring for and treating Menard class members. *See id.* at 8:5-19.

Among the materials that Warden Wills reviewed were: (1) a training memorandum he prepared outlining a policy he created to single-cell transgender prisoners housed at Menard in response to concerns raised by former co-monitor julie graham about the improper double-celling of transgender prisoners with dangerous and violent prisoners, *see id.* at 8:5-19; 58:9-13; 117:5-118:5; and (2) bulletins that Warden Wills drafted to remind Menard staff of their responsibilities under and obligations to comply with IDOC AD 04.03.103, the administrative directive setting forth the processes by which to appropriately care for and treat trans incarcerated individuals. *See id.* at 8:5-19; 57:9-58:17; 60:10-15. Warden Wills estimated that he drafted less than ten Warden's bulletins within the last two to three years that cover topics central to Plaintiffs' claims, including access to private showers and gender-affirming commissary items. *Id.* at 57:14-20; 59:9-60:8. He testified that he disseminated the training memorandum and Warden's bulletins to all Menard staff via email to each shift commander and each department head so that they could read to correctional staff every day on each shift during roll call and at daily department head meetings. *See id.* at 8:13-15; 55:7-18; 61:7-13. Physical copies of the bulletins were also placed in each unit so that correctional staff could see them. *See id.* at 55:19-25; 61:23-62:4.

Warden Wills also testified that about (4) his written communications with julie graham regarding issues julie raised with him about mistreatment of class members and (5) his email communications with Menard staff and IDOC officials about the care and treatment of transgender prisoners at Menard. *See id.* at 23:2-12; 23:23-24:3, 55:7-18; 126:23-25. Warden Wills has never been asked to search for emails responsive to class members' requests. *Id.* at 23:2-12; 23:23-24:3.

Class counsel requested production of the documents that Warden Wills reviewed to prepare for his deposition on the record and have followed up multiple times requesting production *before* Tuesday's hearing. *See, e.g.*, Ex. 2, at N. Marcotte's emails. Plaintiffs also repeatedly sought to meet and confer with defense counsel in an attempt to reach a compromise, *see, e.g.*, *id.*,[1] but Defendants ignored those requests entirely.

Plaintiffs explained that Defendants are obligated to produce the documents because Warden Wills testified that he reviewed them to prepare for his deposition. Defendants have offered no response to this argument. Instead, Defendants have made clear that they do not intend to produce the materials before the hearing. *See, e.g., id.* at V. Rizzo emails. Defendants have offered several excuses for the nonproduction, including that they are not responsive to Plaintiffs' March 2025 discovery requests or prior written discovery requests, that Plaintiffs are not entitled to them, and/or that it will take Defendants an unspecified amount of time to obtain them for production. *See id.* Defendants have provided no legal basis for withholding the documents, they do not claim undue burden, and they failed to explain why they "need more time" to produce materials that Warden Wills accessed just last week to prepare for his deposition. *See id.*

## LEGAL STANDARD

"Federal Rule of Civil Procedure 26(b)(1) allows parties to 'obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense,' and public policy favors disclosure of relevant materials." *Reed v. Solvay Fluorides LLC*, 2025 WL 26774, at *1 (S.D. Ill. Jan. 3, 2025) (Rosenstengel, J.) (citation omitted). "Strong public policy considerations favor the disclosure of relevant materials such that '[b]efore restricting discovery, the court should consider

---

[1] Plaintiffs maintain that they are entitled to *all* documents that Warden Wills identified in his deposition. Plaintiffs offered to limit the scope of the documents to be produced before Tuesday's hearing in the spirit of compromise and without prejudice to Plaintiffs' right to obtain all of the Warden Wills records. *See* Ex. 2, N. Marcotte emails.

"the totality of the circumstances, weighing the value of the material sought against the burden of providing it," and taking into account society's interest in furthering "the truthseeking function" in the particular case before the court.'" *Manier v. Dalpra*, 2023 WL 2018462, at *1 (S.D. Ill. Feb. 15, 2023) (Rosenstengel, J.) (quoting *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 681 (7th Cir. 2002)) (alteration in original). The "objecting party bears the burden of showing why a particular discovery request is improper." *Id.* at *4. "[M]erely arguing discovery should be limited" in a manner that "does not raise any specific objection . . . with any legal support" is insufficient. *Id.*

When a party fails to obey a discovery order, the Court has inherent authority to enforce the order. *See, e.g.*, *Green v. Meeks*, 2023 WL 4231110, at *1–2 (S.D. Ill. June 28, 2023) (granting motion to enforce court's prior discovery order). A party's disobedience with an order compelling discovery permits the Court to issue "further just orders" under Rule 37(b) to punish the party for its failure to comply. Fed. R. Civ. P. 37(b)(2)(A); *Equal Emp. Opportunity Comm'n v. Wal-Mart Stores E., L.P.*, 46 F.4th 587, 601 (7th Cir. 2022) (affirming imposition of sanction on party as "within the boundaries of the court's powers . . . for the [party's] failure to obey discovery orders"). As the Seventh Circuit has recognized, a party's violation of a discovery order justifies "imposing sanctions immediately," and disobedience cannot be cured by subsequent "dilatory and partial compliance." *Charter House Ins. Brokers, Ltd. v. New Hampshire Ins.*, 667 F.2d 600, 604 (7th Cir. 1981).

An adverse inference is permissible punishment against a party that has failed to produce responsive materials that are within its control. *Neidhoefer v. Auto. Ins.*, 182 F.2d 269, 271 (7th Cir. 1950) ("The rule is well established . . . that the failure to produce evidence, which under the circumstances would be expected, gives rise to a presumption against the party failing to produce

it."). In drawing a negative inference, the Court presumes that the documents, if produced, would be unfavorable to the party. *See, e.g.*, *N.L.R.B. v. Dorothy Shamrock Coal Co.*, 833 F.2d 1263, 1269 (7th Cir. 1987) ("[Defendant's] failure to produce relevant evidence particularly within its control allowed the [lower court] to draw an adverse inference that such evidence would not be favorable to it.").

**ARGUMENT**

## I.    DEFENDANTS' NONPRODUCTION OF RESPONSIVE DOCUMENTS WARRANTS AN ADVERSE INFERENCE.

Defendants' refusal to timely produce responsive records identified by Lieutenant Dallas and Warden Wills concerning current conditions at Menard relevant to class members' claims violates the Federal Rules of Civil Procedure and the Court's March 28, 2025 Order. *See* Dkt. 906; Fed. R. Civ. P. 26, 37. Defendants have failed to engage with Plaintiffs' counsel about production of the documents, *see supra* pp. 4-5, 7, and they have offered ***no*** objection or legal basis to justify withholding them. Plaintiffs thus seek emergency relief from the Court to remedy Defendants' nonproduction and cure the unfair prejudice to Plaintiffs that has resulted from not having the documents to prepare for Defendants' depositions or the Preliminary Injunction Hearing.

*First*, the parties ***agree*** that the Lieutenant Dallas materials—emails about PREA and grievance investigations and investigatory case summaries—are responsive to Plaintiffs' March 2025 discovery requests. *See* Ex. 2, at V. Rizzo May 21, 2025 email ("agreed-upon ESI search"). Yet Defendants have made clear that the records will not be produced before the hearing, which violates the Court's Discovery Order. *See generally id.*; Dkt. 906 at 2.

Defendants have failed to explain their complete failure to identify the PREA and grievance investigation emails and investigatory case summaries as responsive in the first instance—i.e., in

March and April 2025—and thus produce them by the Court's April 18, 2025 deadline is particularly troubling. As Lieutenant Dallas testified, emails related to PREA investigations and grievance investigations are part-and-parcel of Menard's investigatory process, and Menard's Internal Affairs division uses "case summaries" to record the results *all* investigations. *See* Ex. 1. To date, Defendants have *still* not provided any information about what steps, if any, they have taken to *search* for the materials, much less produce them.

Defendants' vague and unsubstantiated complaint that the "searches take a while" rings hollow and does not—and cannot—excuse Defendants' defiance of the Court's Discovery Order. *See supra* p. 5. Defendants offer no legal objections or other basis to withhold production, yet they have not even tried to comply with their obligations to produce these documents. *See, e.g.*, *Manier*, 2023 WL 2018462, at *1. Defendants' continued refusal to produce responsive documents related to Menard class members' claims has unduly prejudiced Plaintiffs, who have been deprived of the opportunity to review the records to prepare for the hearing and depose Defendants' witnesses.

The Court should enforce the Discovery Order and compel Defendants to immediately produce all emails concerning Menard class members' PREA and grievance investigations and investigatory case summaries for class members. Given Defendants' bad faith and flagrant violation of the Court's Discovery Order in failing to produce the documents, if the documents are not produced in time for the hearing, the Court should draw an adverse inference against Defendants that the documents, if produced, would have been unfavorable to Defendants. *See, e.g.*, *Dorothy Shamrock Coal Co.*, 833 F.2d at 1269.

*Second*, the materials that Warden Wills *himself* chose to review to prepare for his deposition are also highly relevant and central to the issues raised in Plaintiffs' pending Motion

for Preliminary Injunction.  As the Warden testified, he reviewed the training memoranda and Warden's bulletins about the IDOC administrative directive related to the treatment of transgender prisoners that he drafted *specifically* to purportedly address concerns raised about the care and treatment of transgender prisoners at Menard.  Likewise, Warden Wills testified that he reviewed documents related to a policy he supposedly created, such as a single-cell policy in response to concerns raised by julie graham about class members' double cell arrangements in which they were violently assaulted.  Defendants have disclosed that they intend to call Warden Wills as a witness at the hearing, and the Court permitted Plaintiffs to depose him about his knowledge of the issues raised in the Menard class members' claims.  That is why *each* document that Warden Wills reviewed before his deposition and/or testified about is obviously relevant and subject to production under the federal rules.  *See* Fed. R. Civ. P. 26.

Yet Defendants have repeatedly refused to produce these documents (or provide a date certain for doing so) before the hearing.  Defendants' only response to Plaintiffs' requests for immediate production is that they are not responsive to Plaintiffs' March 2025 discovery requests. But Defendants have failed to explain *why*, nor have they provided any legal basis to withhold the documents.  In any event, Defendants are wrong; the documents are responsive to Plaintiffs' discovery requests because they sought "[a]ny records" about several categories of information related to the Menard class members.  *See supra* pp. 2-3; Dkt. 906 at 2.

The Court therefore should compel Defendants to produce the Warden Wills documents immediately.  And Defendants' bad faith in refusing to produce them without justification and in defiance of the Court's Discovery Order justifies the Court drawing an adverse inference against Defendants, if the documents are not produced in time for the hearing.  The Court should presume that the documents, if produced, would be harmful to Defendants.  This is particularly appropriate

11

given Warden Wills' testimony that he created and disseminated the documents to Menard staff and that they reflect steps he and his staff purportedly took to address class members' claims and to comply with IDOC administrative directives.[2]

## CONCLUSION

For these reasons, the Court should grant Plaintiffs' Emergency Motion to Compel and to Enforce the Court's March 28, 2025 Discovery Order. Defendants should be ordered to immediately produce the materials identified herein. Given Defendants' violation of the Discovery Order, if the documents are not produced in time for the hearing, the Court should draw an adverse inference that the materials are unfavorable to Defendants.

Dated: May 23, 2025                          Respectfully Submitted:

<table>
<tr><td></td><td><em>s/</em>Sarah E. Prather</td></tr>
<tr><td><strong>Brent P. Ray</strong></td><td><strong>Camille E. Bennett</strong></td></tr>
<tr><td><strong>Erica McCabe</strong></td><td><strong>Michelle Teresa García</strong></td></tr>
<tr><td><strong>Stephen Ferro</strong></td><td><strong>Alexis Picard</strong></td></tr>
<tr><td>ARNOLD & PORTER</td><td><strong>Mason Strand</strong></td></tr>
<tr><td>KAYE SCHOLER LLP</td><td>ROGER BALDWIN FOUNDATION OF ACLU, INC.</td></tr>
<tr><td>70 West Madison Street Suite 4200</td><td>150 North Michigan Avenue, Suite 600</td></tr>
<tr><td>Chicago, IL 60602-4231</td><td>Chicago, IL 60601</td></tr>
<tr><td>Telephone: (312) 583-2325</td><td>Telephone: (312) 201-9740</td></tr>
<tr><td>brent.ray@arnoldporter.com</td><td>Facsimile: (312) 288-5225</td></tr>
<tr><td><em>erica.mccabe@arnoldporter.com</em></td><td><em>cbennett@aclu-il.org</em></td></tr>
<tr><td><em>stephen.ferro@arnoldporter.com</em></td><td><em>mgarcia@aclu-il.org</em></td></tr>
<tr><td></td><td><em>apicard@aclu-il.org</em></td></tr>
<tr><td><strong>Abby L. Parsons</strong></td><td><em>mstrand@aclu-il.org</em></td></tr>
<tr><td>ARNOLD & PORTER</td><td></td></tr>
<tr><td>KAYE SCHOLER LLP</td><td></td></tr>
</table>

---

[2] The Warden Wills documents are subject to production for an independent reason: Rule 26(e)(1) imposes a continuing obligation on Defendants to produce documents responsive to Plaintiffs' prior written discovery requests as new responsive information becomes available during the course of litigation. Given these documents' responsiveness to those prior written requests (a fact that Defendants have not disputed) and the fact that Defendants have failed to this day to produce them, this Court should compel Defendants to produce the documents pursuant to their Rule 26(e)(1) obligation. *See* Fed. R. Civ. P. 26(e)(1); *see also* Fed. R. Civ. P. 37.

700 Louisiana Street Suite 4000
Houston, TX  77002-2755
Telephone: (713) 576-2442
*abby.parsons@arnoldporter.com*

**Sarah Prather**
ARNOLD & PORTER
KAYE SCHOLER LLP
250 West 55th Street
New York, NY  10019-9710
Telephone: (212) 836-7816
*sarah.prather@arnoldporter.com*

**Thomas E. Kennedy III**
**Sarah Jane Hunt**
KENNEDY HUNT P.C.
906 Olive Street, Suite 200
Saint Louis, MO 63101
Telephone: (314) 872-9041
*tkennedy@KennedyHuntLaw.com*
*sarahjane@KennedyHuntLaw.com*

**Malita Picasso**
AMERICAN CIVIL LIBERTIES UNION
125 Broad Street New
York, NY 10004
Telephone: (212) 549-2561
*mpicasso@aclu.org*

**Amelia H. Bailey**
**Thomas J. Leahy**
**Anne J. Hudson**
**Ashton Dubey**
KIRKLAND & ELLIS LLP
333 Wolf Point Plaza
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
*amelia.bailey@kirkland.com*
*thomas.leahy@kirkland.com*
*anne.hudson@kirkland.com*
*ashton.dubey@kirkland.com*

***Attorneys for Plaintiffs***