IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS DIVISION

| | |
|---|---|
| JANIAH MONROE, MARILYN MELENDEZ, LYDIA HELENA VISION, SORA KUYKENDALL, and SASHA REED, <br><br> Plaintiffs, <br><br> - vs- <br><br> LATOYA HUGHES, MELVIN HINTON, and STEVEN BOWMAN, <br><br> Defendants. | No. 18-156-NJR |

**DEFENDANTS' MOTION TO STRIKE
A.B.'S TESTIMONY AND TO MAKE NO INFERENCE
OR FINDING IN CONNECTION WITH HER REFUSAL TO TESTIFY**

NOW COME the Defendants, LATOYA HUGHES, MELVIN HINTON, and STEVEN BOWMAN (hereinafter "Defendants"), sued in their official capacities as IDOC administrators, and hereby move to strike the testimony of A.B. and to make no inference or finding in connection with her refusal to testify, and state as follows:

**Factual Background**

1. On second day of the evidentiary hearing on Plaintiffs Motion for Preliminary Injunction, counsel for the Plaintiffs relayed the following in court:

> So, [A.B.] is very, very nervous about testifying today, and her -- basically she said if there are guards from IDOC in the room she doesn't feel she will be able to testify. So, what we would like to request -- and we have talked to Defense Counsel, they have no objection – is that when she is brought out to testify that the shackles be put on in the witness chair, and then that any IDOC guards be cleared from the room. She's just very scared of retaliation. And so that is our request, Your Honor, that she be able to do that. She says she doesn't feel she can testify if they are not cleared from the room.

1

Dkt. 976, Evidentiary Hearing Transcript (Day 2) at 160:16-161:1.

2. While the U.S. Marshalls noted "grave concerns" to the Court regarding this request, the Court noted that since the Plaintiffs' action involves allegations of retaliation, and that A.B. would "remain shackled," the Court would grant the request to clear personnel from the Illinois Department of Corrections from the courtroom. *See id.* at 161:12-162:4.

3. A.B. took the stand that afternoon, but after answering a few questions, she refused to testify any further:

Q. And how long have you known that you are transgender?

A. Since I was a little kid.

Q. A little kid. How did you know that?

A. I don't want to answer. I don't feel comfortable doing this.

Q. You don't feel comfortable answering this question?

A. I don't want to do none of this.

Q. What -- What's going on?

A. I just don't feel comfortable.

Q. Why don't you feel comfortable?

A. Like something going to happen to me.

Q. By a guard?

A. By the C/Os at Menard.

THE COURT: That's why I excused them. There are no C/Os in the room.

A. I still don't want to do this.

Q. So, even without the C/Os in the room you are worried about retaliation?

A. Yes, I still don't feel comfortable doing it.

Q. If we were able to say that -- If we were to ask for some sort of assurance that you won't

2

have retaliation, would that help you at all?

A. I just don't want to do it.

THE COURT: Why do you think that you will be subject to retaliation? Has that happened recently?

A. They do stuff to, like, make us not feel wanted, like you just don't feel comfortable.

MR. STRAND: Can I have just a moment, Your Honor?

THE COURT: You may.

*(Brief interruption in proceedings)*

Q. (By Mr. Strand) I just want to ask, did you testify at our Pinckneyville hearing?

A. Yes.

Q. And is that why you are afraid to testify here today?

A. Yes.

Q. Did something happen after that hearing?

A. After I testified I got transferred to Menard.

Q. Okay. And was that your understanding of what was going to happen when you found out you were going to be transferred?

A. No.

Q. What did you think was going to happen?

A. They told me that I was going to go to Centralia or Joliet Treatment Center.

Q. Okay. And you ended up going to Menard?

A. Yes.

Q. And are you afraid that that's going to happen again?

A. Yes.

Q. Okay. Is there anything about your experience while you have been at Menard that you want the Court to know, that you feel comfortable sharing today?

3

> A. No.
>
> Q. Okay. All right. We understand. We want to thank you for being here today.
>
> MR. STRAND: And, Your Honor, I'm not going to ask any further questions at this time.
>
> THE COURT: Okay. And we will take another short break so that [A.B.] can be excused and get the next witness in the stand. All right. Court's in recess.

*Id.* at 201:2-203:9.

4.   The following day, Counsel for the Defendants asked to clarify the record with respect to A.B.'s testimony and whether a Defense motion was needed to address the fact that there was no opportunity to cross-examine the witness.  In response, this Court noted the following:

> THE COURT: Well, sure, I mean, you weren't given an opportunity to ask questions because she didn't testify to anything. She basically took the stand and said, "I don't want to testify." I mean, I think she answered a few preliminary questions. But given her reluctance to testify at all, I didn't think cross-examination was appropriate.
>
> MR. PENN: I don't disagree. As long as we understand that that's not evidence, her refusal to testify.
>
> THE COURT: Well, I think that -- I think I can consider it, the fact that she was -- and I did have to consider that and get the Marshals in here -- the fact that she was scared to testify because of fear of retaliation.
>
> MR. PENN: So, that's what I am asking. So, that is -- The Court is considering that as evidence?
>
> THE COURT: Mr. Ray, do you want to respond?
>
> MR. RAY: Yes, Your Honor, and we absolutely agree that's something that should be considered here, because it pretty much goes to the claims the class members are making because they feel retribution, retaliation from the staff, and here's no motion to strike made of her testimony at the time. So while her testimony was limited, it certainly is germane to the issues that we are presenting at this hearing and should be considered alongside all the other class member testimony.
>
> THE COURT: Well, that's true, there wasn't any motion to strike. I mean, I don't know how I could just not consider the fact that we had a witness say "I'm afraid to testify," and, in fact said, "because I testified at a prior hearing, and right after that I got transferred to Menard."
>
> MR. PENN: I understand that, but my point is we were not given -- We will address it in a motion.

40432\325536385.v1

THE COURT: Yeah, file a motion. Certainly given that the witness was already obviously very intimidated, the last thing I was going to do is add to that by letting cross-examination occur.

MR. PENN: I totally understand. I'm not revisiting that.

THE COURT: Now, and you weren't here yesterday, but I also did comment -- I will just be honest, I am troubled we don't have any representative from IDOC. Just like the last time, nobody is here to listen to the testimony of these witnesses. I know they are all busy and whatever, but these are very serious allegations and there's not a representative of the Department of Corrections here to listen. At the last trial when this Defense team was not counsel, I ordered the named Defendants to read the transcript and file an attestation that they had done so, because it troubled me. And here we are now, years later, and still nobody. And I bring this up --

MR. PENN: There was someone here on the first day.

MR. BRODZIK: And yesterday.

MR. PENN: And yesterday

THE COURT: Who was here?

MR. PENN: On the first day there was somebody from both -- Well, Megan was here from --

THE COURT: Who's Megan? I don't know who Megan is.

MR. BRODZIK: Megan Ditzler.

THE COURT: So that's the Attorney General's office.

MR. PENN: No, no, no. I don't think Megan's Attorney General.

MR. BRODZIK: Should be IDOC.

MR. PENN: I think she's IDOC. And she was here yesterday. Well, no, Judge, I would like to address this.

THE COURT: Okay. Well, I only bring this up now because I said yesterday if we had had someone from IDOC here -- and I made this comment yesterday -- say the warden or an assistant warden or the director, someone maybe could have given her some assurances that there would not be retaliation. But I commented there is no one. And, I mean, I can give her assurances all day long, but we know that, you know, that things happen. I had no idea that there was retaliation after the last hearing, or at least she claims there was retaliation. So, you know, that's not before me, but –

40432\325536385.v1

MR. PENN: Judge, I will get you Megan's title, but, I mean, she's been here both days. I understand –

THE COURT: Was that the woman sitting in the back left?

MR. PENN: Yes.

THE COURT: Okay. Well, so I say that because I think if she's with IDOC now, she used to be with the Attorney General's office, I believe.

MR. PENN: I will confess ignorance to that. I don't know.

THE COURT: Well, anyway, that –

COURTROOM DEPUTY: It shows that she's an attorney with the Attorney General's office.

THE COURT: On the docket sheet?

COURTROOM DEPUTY: Not on this case, but in other cases.

THE COURT: Okay. Deana says CM/ECF shows she's with the Attorney General's office.

MR. PENN: As I say, I will find out.

THE COURT: Okay. And I asked the warden yesterday, "Were you" -- You know, I didn't want to ask about the substance of the conversations, but "Were you briefed on the testimony?"

MR. PENN: Judge, I have heard your concerns. We are way far afield from where I started on this. I will file a motion.

THE COURT: You can file a motion about [A.B.].

MR. PENN: Yeah, that's fine. Thanks, Judge.

Dkt. 977, Evidentiary Hearing Transcript (Day 3) at 317:17-321:8.

5. Defendants' outside litigation counsel subsequently confirmed that Illinois Department of Corrections attorney Meghan Ditzler (who had previously worked at the Illinois Attorney General's Office), was present in court on the day A.B. testified[1].

---

[1] The issue of and confusion relating to Ms. Ditzler's presence and employment status will be addressed in a separate motion.

**Argument**

6.  In light of A.B.'s refusal to testify at the evidentiary hearing and given that Defendants were not provided with an opportunity to cross-examine her as a witness, Defendants ask that her testimony be stricken and further request that this Court make no inference, negative or positive, with respect to her testimony.

7.  The right to cross-examine witnesses is a fundamental component of our system of justice, and absolutely essential to ensuring a fair trial. Our Supreme Court has gone so far as to declare that "cross-examination may be the greatest legal engine ever invented for the discovery of truth," *Stuart v. Alabama*, 586 U.S. 1026, 1027 (2018) (quoting *California v. Green*, 399 U. S. 149, 158 (1970)).

8.  A.B. is a named class member in this action seeking relief based on allegations she is making against Defendants, but declined to continue participating at the preliminary hearing, indicating to the Court that she did not wish to testify. Regardless of her reasons, fear alone is not a valid legal basis for a witness refuses to testify. *United States v. Patrick,* 542 F.2d 381, 388 (7th Cir. 1976) (citing *Piemonte v. United States,* 367 U.S. 556, 559 n.2 (1961) (noting that "fear of reprisal offers an immunized prisoner no more dispensation from testifying than it does any innocent bystander without a record.")).

9.  A.B.'s generalized refusal to testify or to further participate in the preliminary injunction hearing is insufficient to warrant the denial of Defendants' right to confront her as a witness and named plaintiff in this action.

10. Ordinarily, a refusal to testify by a party witness allows the opposing party to a permissive adverse inference. *See generally Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976); *see also LaSalle Bank Lake View v. Seguban*, 54 F.3d 387, 389-91 (7th Cir. 1995) (recognizing that

"[t]he rule that adverse inferences may be drawn from Fifth Amendment silence in civil proceedings has been widely recognized by the circuit courts of appeals, including our own.").

11. A plaintiff's refusal to testify may even constitute a sufficient basis to have their suit dismissed outright. *See Abuharba v. Trice*, 2016 U.S. Dist. LEXIS 127284 *6-7 (S.D.Ill. 2016) (an inmate's defiant actions, including failure to participate in the suit by refusing to testify at a deposition, warranted dismissal with prejudice).

12. Defendants do not request either of those remedies here, but respectfully submit that they should not be prejudiced by consideration of her live, in person testimony without the opportunity to ask her any questions.

13. It would be fundamentally inequitable to allow Plaintiff to "have it both ways" by allowing them to seek a favorable inference based the limited testimony A.B. chose to provide and then prevent the Defendants from any meaningful cross examination. *See Harris v. City of Chicago*, 266 F.3d 750 (7th Cir. 2001) (finding reversible error and abuse of discretion in a Section 1983 case where the district court effectively allowed a party to "testify in attack . . . and at the same time seek refuge behind the shield of the Fifth Amendment.") (internal citation omitted).

14. Given that A.B. presented some form of testimony to the Court, but was not available for further questioning or for cross examination, some form of relief is required. As Defendants are no more interested in compelling A.B.'s testimony than the Court is, the only appropriate solution would be for the Court to discount her testimony in its entirety for the purposes of the preliminary injunction hearing.

15. As this Court is aware, it is well-settled that the judiciary possesses the inherent power to compel testimony through contempt. *In re Crededio*, 759 F.2d 589, 590 (7th Cir. 1985) (internal quotations removed). However, just as a recalcitrant witness should be afforded an

opportunity to present their "reasonable fear of retaliation," the government should be afforded the opportunity to "protect [the witness] against such retaliation or, at the very least, of explaining why it should not be required to take such steps." *In re Grand Jury Proceedings (Freligh)*, 894 F.2d 881, 883 (7th Cir. 1989). This is because "vague and unsubstantiated fears" do to protect a witness from a contempt finding by the Court. *In Re Grand Jury Proceedings*, 903 F.2d 1167, 1171 (7th Cir. 1990)

16. Here, the Court took reasonable steps to assure A.B. that she could feel comfortable testifying by specifically clearing the courtroom of any guards or other law enforcement officers from the Illinois Department of Corrections (despite concerns raised by U.S. Marshal's Service). *See* Dkt 976 at 161:12-162:4. Moreover, the Court appropriately exercised its discretion both in questioning the witness as to the basis of her refusal to testify and also taking these steps to attempt to make A.B. feel comfortable. *See id.,* Dkt. 201:2-203:9, *see also Barnett v. Norman,* 782 F.3d 417, 424 (9th Cir. 2015) (recognizing that a judge has discretion in whether to compel testimony, but at the very least "must try to encourage the testimony or at least explain on the record why, in her discretion, she did nothing because, for instance, such efforts would have been futile.")

17. To be clear, Defendants are not moving this Court to hold A.B. in contempt and are not suggesting that the Court do so. However, it is well-settled that the law does not generally recognize a fear of reprisal by itself as a basis for refusing testimony. *United States v. Patrick,* 542 F.2d at 388; *LaTona v. United States*, 449 F.2d 121, 122 (8th Cir. 1971); *In Re Kilgo*, 484 F.2d 1215, 1221 (4th Cir. 1973). Moreover, to the extent the Court has valid concerns about witness safety, the government is to be provided with an opportunity to address those concerns. *In re Grand Jury Proceedings (Freligh)*, 894 F.2d at 883.

18. While the Court indicated that "I don't know how I could just not consider the fact

9

that we had a witness say 'I'm afraid to testify,' and, in fact said, 'because I testified at a prior hearing, and right after that I got transferred to Menard[,]'"(Dkt. 977 at 318:17 – 318:20), Defendants submit that the law requires that this Court not consider A.B.'s testimony in any way. Short of compelling A.B. to testify, despite taking measures to clear the courtroom, the most appropriate relief would be to simply disregard A.B. testimony in its entirety. This preserves her right to participate in this suit going forward, while not penalizing the Defendants for their inability to cross-examine a named plaintiff in this suit.

WHEREFORE, Defendants respectfully request this Court strike the testimony of A.B., make no inference or finding in connection with her refusal to testify, and for any other relief the Court deems fair and just.

Date: July 16, 2025

Respectfully submitted,

DEFENDANTS LATOYA HUGHES, MELVIN HINTON, and STEVEN BOWMAN

 /s/ Justin M. Penn
Special Assistant Attorney General
State of Illinois

Hinshaw & Culbertson LLP
151 North Franklin Street, Suite 2500
Chicago, Illinois 60606
Telephone: 312-704-3000
jpenn@hinshawlaw.com
DEFENDANTS LATOYA HUGHES, MELVIN HINTON, and STEVEN BOWMAN

10

40432\325536385.v1

## CERTIFICATE OF SERVICE

The undersigned certifies that on July 16, 2025, I, Peggy Michael served *Defendants' Response to Plaintiffs' Motion to Compel* to all counsel of record via ECF filing, which will accomplish service electronically to all counsel of record.

*/s/ Peggy Michael*
Peggy Michael
