IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS DIVISION

| | |
|---|---|
| JANIAH MONROE, MARILYN MELENDEZ, LYDIA HELENA VISION, SORA KUYKENDALL, and SASHA REED,<br><br>Plaintiffs,<br><br>- vs-<br><br>LATOYA HUGHES, MELVIN HINTON, and STEVEN BOWMAN,<br><br>Defendants. | No. 18-156-NJR |

**DEFENDANTS' MOTION CLARIFY THE EVIDENTIARY RECORD AND REOPEN PROOFS TO THE EXTENT NEEDED**

NOW COME the Defendants, LATOYA HUGHES, MELVIN HINTON, and STEVEN BOWMAN (hereinafter "Defendants"), sued in their official capacities as IDOC administrators, and hereby move to clarify the evidentiary record and, to the extent needed, to reopen proofs, and state as follows:

**Introduction**

1. During the evidentiary hearing on the preliminary injunction in this case, two issues arose that, in light of the proposed findings of fact and conclusions of law submitted by the parties, appear to require clarification.

2. First, there was a substantial amount of testimony concerning a transgender correctional officer ("CO") who was involved in the searches of individual inmates. In particular, J.D. testified that she had been strip searched on the way to the evidentiary hearing by a transgender CO that she considered to be male. However, all of the evidence elicited at the hearing revealed

1

that the CO is in fact a transgender female. Nonetheless, Plaintiffs have submitted findings of fact calling into question whether she is in fact a woman, and Plaintiffs' counsel misgendered her at the preliminary injunction hearing.

3. In addition, in discussing whether to consider the testimony offered by A.B. (who was not cross-examined by Defendants' counsel), the Court incorrectly observed that no one from the Illinois Department of Corrections was attending the hearing. While it does not appear this observation is a relevant or appropriate consideration for the Court, Plaintiffs nonetheless chose to include it in their proposed findings of fact submitted.

4. Defendants therefore bring the instant motion to clarify the record and, if necessary, to reopen proofs to submit clarifying evidence.

**The Transgender Female Correctional Officer**

5. On the first day of the evidentiary hearing on Plaintiffs Motion for Preliminary Injunction, J.D. testified that she was searched by a transgender CO. *See* Dkt. 973, Evidentiary Hearing Transcript (Day 1) at 150:13-24. J.D. testified incorrectly, however, that the CO was not a female guard. *Id*. She further testified that she viewed this CO as a man. *Id*. at 151:4-10.

6. This issue was clarified on the second day, including by questions from the Court. In particular, Warden Wills testified that J.D. had been strip searched the day before by a transgender female CO, not a male. *See* Dkt. 977, Evidentiary Hearing Transcript (Day 2) at 294:5-295:1. The Court clarified in the following exchange:

> Q. Warden Wills, when you say a transgender female guard, what do you mean by that? How does the person appear?
>
> A. The officer appears to look like the way that they were born as, but all staff is dressed in the same uniform, gray-in-color uniform top, dark black pants, male or female, and his driver's -- and her driver's license actually reflects her gender.
>
> Q. Okay. I'm a little confused. So, if it's a person who was born with, say, female genitalia and then has transitioned so that from the outside that person looks more like a male, say with facial hair, would you call that person transgender female or

transgender male?

A. Transgender female, because they were born as a male.

Q. Okay. Now, wait. If they were born as a female and then have taken hormones so that they now from outward appearances look more like a man, what would you call that person?

A. That would be a trans female.

Q. And what would you call someone that was born with male genitalia who then takes hormones to look like a female from the outside?

A. Trans male.

Q. And it's your testimony that Menard has transgender female guards, meaning someone who was born as a man and transitioned to look like a woman?

A. Yes.

Q. And is there -- Do you have any guards who were born female who have transitioned to look like a man?

A. Not to my knowledge.

*Id.* at 296:13-297:15.

    7.    The Court further clarified Ms. Buettner's status as a woman on the last day of the hearing. During the cross-examination of a Menard Shift Commander, despite Plaintiffs' counsel misgendering the CO, the following testimony further clarified that Ms. Buettner is a female:

Q. Do you know a correctional officer named Kevin Buettner?

A. I do.

Q. He works at Menard?

A. Buettner works at Menard.

Q. Is correctional Officer Buettner a man or a woman?

A. I believe he identifies as a woman.

Q. So, we have Sheri Buettner and then Kevin Buettner?

A. Correct.

Q. Sheri Buettner presents as a male or woman?

A. Woman.

Q. And Kevin Buettner presents as a male or a woman?

A. Woman.

THE COURT: Does Kevin Buettner have a full beard?

3

> A. He does.
>
> THE COURT: And you're saying that Kevin Buettner was born as a male, but presents as a woman?
>
> A. Correct.
>
> Q. We heard some testimony this week that one of the correctional officers here was a transgender individual. Do you know which one that was?
>
> A. I'm going to assume we are talking about Buettner because of the previous questions, but no.

Dkt. 968, Evidentiary Hearing Transcript (Day 4) at 617:12-618:8.

8. In their proposed findings of fact, Plaintiffs propose describe Ms. Buettner as "a person that presents as male but claims to identify as a woman." *See* **Exhibit 1** (Defendants' Responses and Objections to Plaintiff's Summation and Proposed Findings of Fact and Conclusions of Law From Preliminary Injunction Hearing Regarding Menard, ¶ 144.[1]

9. In reality, Ms. Buettner is a woman. *See* **Exhibit 2** (Declaration of Correctional Officer Kevin Buettner). During the preliminary injunction hearing, Ms. Buettner escorted class members to hearing, and prior to that, she conducted the physical searches of those in custody in preparation for their transport to the Federal Courthouse in East St. Louis. *Id*. She was in the Courtroom for the testimony. *Id*.

10. Ms. Buettner is a transgender female. *Id*. Her pronouns are she/her. *Id*. Her Illinois driver's license indicates her gender is female in accordance with her gender identity. *Id*.

**Personal Attendance by the Illinois Department of Corrections**

11. On the third day of the preliminary injunction hearing, the Court expressed concern that no one from the Illinois Department of Corrections was present to observe the hearing. There

---

[1] Defendants' objections to the Plaintiffs' proposed findings of fact and conclusions of law were submitted directly to the Court. This document recites the proposed findings and conclusions, and then provides Defendants' objections. As this document was submitted directly to the Court (and not filed), and it is filed under seal here out of an abundance of caution.

was some confusion as to whether anyone from IDOC attended because Defendants' attorneys were unprepared to address questions concerning the specific job titles of those observing the trial. Specifically, the following exchange occurred:

> THE COURT: Now, and you weren't here yesterday, but I also did comment -- I will just be honest, I am troubled we don't have any representative from IDOC. Just like the last time, nobody is here to listen to the testimony of these witnesses. I know they are all busy and whatever, but these are very serious allegations and there's not a representative of the Department of Corrections here to listen. At the last trial when this Defense team was not counsel, I ordered the named Defendants to read the transcript and file an attestation that they had done so, because it troubled me. And here we are now, years later, and still nobody. And I bring this up --
>
> MR. PENN: There was someone here on the first day.
>
> MR. BRODZIK: And yesterday.
>
> MR. PENN: And yesterday
>
> THE COURT: Who was here?
>
> MR. PENN: On the first day there was somebody from both -- Well, Megan was here from --
>
> THE COURT: Who's Megan? I don't know who Megan is.
>
> MR. BRODZIK: Megan Ditzler.
>
> THE COURT: So that's the Attorney General's office.
>
> MR. PENN: No, no, no. I don't think Megan's Attorney General.
>
> MR. BRODZIK: Should be IDOC.
>
> MR. PENN: I think she's IDOC. And she was here yesterday. Well, no, Judge, I would like to address this.
>
> THE COURT: Okay. Well, I only bring this up now because I said yesterday if we had had someone from IDOC here -- and I made this comment yesterday -- say the warden or an assistant warden or the director, someone maybe could have given her some assurances that there would not be retaliation. But I commented there is no one. And, I mean, I can give her assurances all day long, but we know that, you know, that things happen. I had no idea that there was retaliation after the last hearing, or at least she claims there was retaliation. So, you know, that's not before me, but --
>
> MR. PENN: Judge, I will get you Megan's title, but, I mean, she's been here both days. I understand –
>
> THE COURT: Was that the woman sitting in the back left?
>
> MR. PENN: Yes.
>
> THE COURT: Okay. Well, so I say that because I think if she's with IDOC now, she used

5

>to be with the Attorney General's office, I believe.
>
>MR. PENN: I will confess ignorance to that. I don't know.
>
>THE COURT: Well, anyway, that –
>
>COURTROOM DEPUTY: It shows that she's an attorney with the Attorney General's office.
>
>THE COURT: On the docket sheet?
>
>COURTROOM DEPUTY: Not on this case, but in other cases.
>
>THE COURT: Okay. Deana says CM/ECF shows she's with the Attorney General's office.
>
>MR. PENN: As I say, I will find out.

Dkt. 977, Evidentiary Hearing Transcript (Day 3) at 317:17 -321:8

12. In their proposed findings of fact, Plaintiffs proposed a finding that "Defendants did not attend the hearing on the present motion for a preliminary injunction." *See* Plaintiff's Summation and Proposed Findings of Fact and Conclusions of Law From Preliminary Injunction Hearing Regarding Menard, ¶ 55.

13. In reality, as Defendants' outside counsel believed to be the fact and explained at the preliminary injunction hearing, Defendants had representatives there observing the hearing.

14. Megan Ditzler, Legal Counsel for the Illinois Department of Corrections, is assigned to handle transgender issues for IDOC. *See* Exhibit 2 (Declaration of Megan Ditzler). She personally attended the preliminary injunction hearing on this matter on May 27, 2025, May 28, 2025, and May 29, 2025. *Id*. She personally attended, was present for, and observed the majority of the testimony from the class members who testified. *Id*. The only day she was not present was May 30, 2025, the final day. *Id*.

15. She had planned on being present for the entirety of the hearing, but she is also the employee tasked with reviewing the emails that were at issue in the motion to compel and motion for sanctions that was at issue on those days. *Id*. As such, the limited time that Ms. Ditzler was not present at the preliminary injunction was spent reviewing the document production that

40432\325547467.v1

Defendants were producing on a rolling basis. *Id*.

16. In addition, R. Brandon Schultz, Assistant Attorney General at Illinois Attorney General's Office, also attended on May 27, 2025 and a portion of May 29, 2025. *Id*.

## Argument

17. Defendant submit that the evidentiary record makes clear that Ms. Buettner is a woman. There appeared, however, to be some confusion on this issue in light of the Court's continued questioning, Plaintiffs' counsel's misgendering, and the proposed findings of fact.

18. Moreover, the presence or absence of a party is not typically something proper for consideration at a trial or an evidentiary hearing. As one court noted, [t]here is no requirement that a party or a corporate representative be present at trial." *Ray v. Ford Motor Co.*, No. 3:07-cv-175, 2011 U.S. Dist. LEXIS 143121, 2011 WL 6183099, *17 (M.D. Ala. Dec. 13, 2011).

19. There were also repeated questions about the presence or absence of witnesses in the prior testimony. As noted repeatedly by Defendants' counsel, there was not an order entered allowing witnesses to observe the testimony.

20. To the extent the Court needs further clarification on these two points, and out of an abundance of caution, Defendant files the instant motion.

21. Defendants believe the record is clear, but to the extent it is not, it requests the Court reopen the evidence to allow submission of the declarations attached hereto as **Exhibits 2 & 3**.

22. "[A] motion to reopen to submit additional proof is addressed to [the court's] sound discretion." *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 331, 91 S. Ct. 795, 28 L. Ed. 2d 77 (1971) (citing *Swartz v. N.Y. Central R. Co.*, 323 F.2d 713, 714 (7th Cir. 1963)); *see also* Fed. R. Civ. P. 59(a)(2) (providing that the court may take additional testimony after a nonjury trial).

23. Even if the case had been removed from the District Court by an appeal, Federal Rule of Appellate Procedure 10(e) still permits a party to supplement the appellate record "[i]f anything material to either party is omitted from or misstated in the record by error or accident." This relief is especially appropriate where, as here, the case is not a jury trial and the issues remain open.

WHEREFORE, Defendants respectfully request this Court either enter an order clarifying the record, or in the alternative reopening proofs for purposes of allowing entry of the Declaration of Correctional Officer Kevin Buettner and the Declaration of Megan Ditzler, and for any other relief the Court deems fair and just.

Date: July 17, 2025

Respectfully submitted,

DEFENDANTS LATOYA HUGHES, MELVIN HINTON, and STEVEN BOWMAN

 /s/ Justin M. Penn
Special Assistant Attorney General
State of Illinois

Hinshaw & Culbertson LLP
151 North Franklin Street, Suite 2500
Chicago, Illinois 60606
Telephone: 312-704-3000
jpenn@hinshawlaw.com

40432\325547467.v1

**CERTIFICATE OF SERVICE**

The undersigned certifies that on July 17, 2025, *Defendants' Motion Clarify The Evidentiary Record And Reopen Proofs To The Extent Needed*, was served to all counsel of record via ECF filing, which will accomplish service electronically to all counsel of record.

*/s/ Justin M. Penn*
Justin M. Penn

40432\325547467.v1