# UNITED STATES DISTRICT COURT SOUTHERN
# DISTRICT OF ILLINOIS

Monroe, et, al
          Plaintiff

          V.                     Civil No 3:18-CV-00156-NJR

Latoya Hughes, et.al
          Defendant

## ORDER TO SHOW CAUSE AND TEMPORARY RESTRAING ORDER

Upon the supporting declaration of the plaintiff and the accompanying Memorandum of law it is ORDERED that defendant Mrs. Hughes show cause in room of the United State Courtroom Southern) District Court, 750 Missouri Ave. East St. Louis Il. 62201 on the day of _____ 2025 at _____ O'clock, why a preliminary injunction should not issue pursuant to rule 65(a) Fed, R. Civ. P. enjoining the said defendant, their successors in office, agents, and employees and all other person acting in concern and participation with them for Ms. Dorn to be transfer to Logan C.C.

IT IS FURTHER ORDERED that effective immediately and pending the hearing and determination of this matter. That Ms. Dorn be seen by Dr. Reister to be re-interview and/or examined to have her gender affirming surgery. Also Dr. William Puga

page 1 of 37

cont page 2 of 37

IT IS FURTHER ODEBED that this order to show cause and all other papers attached to this application shall be served on defendant Warden Wills at Menard C.C. and the United Marshall Service is hereby directed to effectuate such service

United State District Judge

/s/ Mo Dorn

James Dorn #N-90855
P.O. Box 1000
Menard, Ill, 62259
Menard C.C.

Date July 20, 2025

page 3 of 37    ARGUMENT

A. The Plaintiff is threated with irreparable harm. The plaintiff
alleges that she has been denied her gender affirming surgery for reasons
that is inclosed in this Motion, she further to say that over at least
4 years Nobody at Menard C.C. have been interviewed or approve for the
operation, such conduct have already been establish by this court is a
violation of her constitutional right, "intentionally interfering with the
standards that is already set by this court is a form of unlawful
diliberate indifference.

Irreparable Harm and No Adequate Remedy at Law

Ms Dorn can show that she will likely suffer ireparable harm
absent obtaining preliminary injunctive relief. Whitaker, 858
F. 3d at 1044.
Ms. Dorn can show that she cannot wait until the above
class action law suit to be finish in order for her to be transfer
to Logan C.C. That on July 8, 2025 she was beating up by two
person in custody and $110⁰⁰ in commissary was taken from her
See Ex. C). Roland Mach Co V. Dresser Indus, Inc. 749 F. 2d 381
There is no adequate remedy at law should the Preliminary
injunction not issue id. at 1046. Ms. Dorn demonstrate that any
award at this time would be seriously deficient as to what
she could suffer, she futher states; She is a 54 yrs young
transgender woman who is on hormone, her level is that of a
female.

The on going deprivation of plaintiff Eighth and fourteenth Amendment rights stated on the above is an irreparable harm sufficient to warrent a preliminary injunction. See Preston V. Thompson 589 F.2d 300)

The existance of a continuing constitutional violation constitutes proof of an irreparable harm and its remedy certainly would Serve the public interest (Planned Parenthood of Ind. and Ky Inc V. Comm'c, 194 F. 2 supp. 3d 818, 835

## 3. The Relief Sought Will Serve The Public Interest.

In this case, the grant of relief will serve the public interest because it is always in the public interest for prison officials to obey the law, especially the constitution. Phelps Roper V. Nixon 545 F.3d 685, 690 (8th Cir. 2008) Duran V. Anaya, 642 F. Supp 510, 527 [D.N.M] 1986 (Respect for law, particularly by officials responible for the administration of the State correctional System, is in itself a matter of the highest public interest) Llewelyn V. Oakland County prosecuter's office, 402 F. supp 1379, 2393 )( stating the constitution is the ultmate expression of the public interest)

Once a moving party has met it's burden of establishing the thershold requirement for a preliminary injunction, the court must balance the harm faced by both parties and the public as a whole" Whitaker, 858 F. 3d at 1054. In so doing, the court considers (1) The irresporable harm the movant party will endure if the preliminary injunction is wrongfully denied versus the irreparable

page 5 of 37

harm to the Non moving party if it is wrongfully granted and (2)
the effect if any, that the grant or denial of the preliminary
injunction would have No Non parties (the public interest)
Turnell, 796 F. 3d at 662, The court weighs the balance of
potential harm on a sliding scale against the movant's
likelihood of success: the more likely she is to win, the less the
balance of harm must weigh in her favor; the less likely she is to
win the more it must weigh in her favor. If the balance of harm
tips in Plaintiff favor. The will should direct defendant to do their
job; protect plaintiff from abusive Staff and person in custody and
house her appropriately base on an individualized determination
of her need. The court has no intention of interfer with the
operation of I.D.O.C. It is I. D.O.C responsibility to provide
for the safety of all person in custody,
FUTHER it is in the public interest to ensure that Plaintiff
constitutional right are not violated by correctional officers
See Hoskins, 2017 WL 951410 at 7, Bell V. Wolfish, 441 U.S. 520
,547,99 S.Ct. 1861, 60 L.Ed. 2d 447. Prison officials have discretion
to transfer inmates to the facility that they deem most appropriate
for a particular inmate. Zollicoffer, 169 F. Supp 3d at 696 (finding
the Plaintiff has sufficiently alleged facts to show that defendant
knew of and was deliberately indifferent to, the high risk of
sexual assault of gay and transgender inmates at the TDCJ facilities

page 6 of 37

## C. The Balance Of Hardship favors the Plaintiff

In deciding whether to grant T.B.O and/or preliminary injunction
court ask whether the suffering of moving party, if the Notion
is denied will outweigh the suff of moving party, if the Notion
is granted See Mitchill V. Cuomo 748 f.2d 804, 808 (2d cir 1984)
(holding that danger posed by prison crowding outweigh states
financial and aminstrative concern)

D. The Plaintiff class action law suit has pass Merits, which the
court have set standards for I.D.O.C to follow for transgender
woman. Even though they have set these standard I.D.O.C
and/or Menard C.C. feel they don't have to follow them.

E. The Plaintiff SHOULD NOT BE REQUIRED TO POST SECURITY.
The plaintiff is a indigent person in custody, The court have the
discretion to excuse an impoverished litigent from posting
security Elliott V. Kiesewetter, 98 f. 3d 47, 60

### CONCLUSION

For the foregoing reason, the court should grant Notion in it entirety

Date July 20, 2025                    /s/ Ms Dorn
                                      James Dorn #N-90855
                                      P.O. Box 1000
                                      Menard, Ill. 62259 Menard C.C.

DISTRICT OF ILLINOIS

page (7) of 37

Monroe, et al                    Civil NO. 3:18-CV-00156-NJR
        Plaintiff

    V.

Latoya Hughes et al
        Defendant

# DECLARATION IN SUPPORT OF PLAINTIFF MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

Ms. Dorn States:

1) I am the Plaintiff in this case. I make this declaration in support of my Motion for a temporary restraining order and/or a preliminary injunction to ensure that her constitutional right be met by being a transgender woman in I.D.O.C. Her 8, 4, and 14 amendment rights (1) failure to protect (2) Equal protection (3) deliberate indifference (4) Due Process and (5) disabilities Act (ADA)

2) On or about the month of June 2025 I was place in the holding cage with unapprove person in custody Minor which I have a K.S.f (keep separate from. Which he is the person that assaulted my person on my law suit Dorn V. Jeffreys 3:22-CV-02378. Even though there is two cages one for unapprove (which his is) and approve which I am. With that said we was put in both ea put in the same cage. This was preposely done because of the many grievance concerning my rights as a transgender woman Menard.C.C.

page(8) of 37

3) On or about the month of June 2025 I was call to see Lt. Dallas who is the Lt. of Internal Affair at Menard C.C. He wanted to interview concerning a letter I sent to the Governor of Ill. concern my life being threaten by staff and people in custody, A PREA report a wrote in Dec. 2024. This matter was only look into because of the letter I sent to the Governor.

4).

4) On the last week of June 2025 I was to testify on Monroe V. Latoya Hughes et.al 3:18-CV-00156 NJR. On how I was assualt by staff at Menard C.C. (see Ex.7) and I was scared to come out of my cell because threat by people in custody and staff.

5) The Warden of Menard Anthony Wills on the last week of June 2025 was call to testify on the behalf of Menard C.C. and the housen of transgender woman at Menard. At this hearing the Warden Wills was told about threats against Ms. Dorn by her being a transgender at Menard.

6) On 7/8/25 while in commissary Ms. Dorn was jump on by two people in custody and apprx. $110.00 in commissary was taken by a unknown person to her. Which commissary do have cameros (see ex. C)

7) Menard is tryen to do a cover up on what happen at commissary on 7/8/25. While disciplinary report states that Ms. Dorn was eresent to the health care that is not true. If you look at

page (9) of 37

the camera and health care Sign in sheet you will see My name is No whose on them

8) At No time was Ms. Dorn was seen by internal Affair, or did internal iffair take pictures of Ms. Dorn face or body to the Enjury she receive

?) Ms. Dorn was Kick in her right eye, Even after Ms. Dorn told Menard Stuff (Medical) that she just had Surgery in both eyes. They refused to do anything, when it was clearly to see that the whole right side of her face was 2 time it's sizes (see Ex D)

10) It was only after 3 days later that Ms. Dorn was able to wash her body (receiving a restrictive House lay bag) of the O.C. pspray Keep in Mind that she was in restrictive House 7 gellery where the Temp. was in the 90 degree, It felt like she was on fire. She only receive pain Meds four days later because she get exedrin for bad ~~the~~ headache she gets

11) At no time was she call to the adjustment committee to hear her ticket it was only on 7/17/25 when her gallery Mrs. Dame told her, her restricted Housen out date, when ask by Ms. Dorn (see exc

12) On 7/17/25 Mrs. Klausing (Mental health) for transgender at Menard came to investigate what happen on 7/8/25 at commissary during this interview, Ms. Dorn was told she was denied to get her operation to become a woman., Can the court please help

page (10) of 37

to born understand this. In almost 1½ year she only receive 2 disci-
plinary ticket one for putten pocket on my P.J. and another for
put pocket on my pants (a year later). Mrs. Klausing said the committee
denied me because of the above. The committee didn't try to see what
the tickets was for, they only go by I receive a ticket, which the
committee said I was unstable because of above ticket. I never
receive nothing in written I was put in or denied. I was only told by
word of mouth from Mrs. Klausing (MHP) for transgender at Menard.
Joy-Tay V. Dennison 19-CV-00501 NJR. The stated/ the committee just
can not denied her because of the word disciplinary report, they must
look into to see what the reports was about. If the committee
would have look into the disciplinary report they would have seen
it was only for haven pocket on her clothing.

(3) If you look at Exhibit E it is my medical Record from my
Docter from U.I.C. Dr. Katz dated 2/13/24 he stated in this report
that I Iwas to start the process for my bottom surgery. It was
not until almost a year and half that I was put in and the above happen

(4) Ms Doril has file a PREA about the Month of Dec 2024 and
about March of 2025 how she was strip search by a Male and sexual
harras even on her court date to testify on the last Month June
2025 she was strip search by a man before comen to court. Menard
staff refuse to use the X-ray Machine and when they do use the
X-ray Machine on you, it is so much disrespect behind it a trans-
gender woman would never want to go thru that again

page (11) of 37
Once again there was a cover-up to say this never happen

5). On or about the month of June 2025 a transgender placement &
programming review was done by Mental Health (A report that suppose
to be done every six month on transgender) on Ms. Dorn. On this paper
Ms. Dorn was ask "Does the individual in custody report any placement
or housing concern". I stated "Yes" I fear for my life because of staff
threat by Menard Staff and people of custody. It also it ask "Does
the individual in custody report any general safety concerns, once
again I stated yes "I fear for my life because of threats of Staff and
people in custody at Menard. At the bottom of this paper it clearly
states "; NOTE: If the individual in custody answered "YES" to
any of the above questions, immediately forward a copy of this form
to the Shift Supervisor and the facility PREA compliance Manager.
Once again nothing was done.

6) Ms. Dorn have prove on the above (with than this Motion) that she
is being retaliated against not only for being a transgender woman
but also for testify against Menard staff on the class action law suit
Monroe V. Hughes No. 18-CV-156-NJR on the last Month of June 2025

7) Ms. Dorn Mental health is at risk because she suffer from
PTSD, bi-polar and other Mental problem, She is lable as S.M.I
(seriously Mental ill) person in custody. There is no adequate
remedy at law at this time. Money will not make Plaintiff
whole or protect her from physical and emotional abuse

page (17) of 37.

She is haven a hard time to sleep, even though she is on Meds for Nightmare only seem like they are getting real bad, she is scared to come out of her Cell for anything now, because don't know whe the next beating will come from Menard Staff or a person in custody

18) Ms. Dorn pray that this honorable Court excuse her by filen this Motion at this time, this is her only way to get to the Court, she is not able to send a letter to her lawyler Concerning this emergency. Menard staff is not letten Ms Dorn get grievances She was only able to get this matter file because she gave it to another person in custody that work in the Law Library

/s/ Ms. Dorn
James Dorn #N-90855
Menard C.C.
P.U. BOX 1000
Menard, Ill. 62259

Date July 20, 2025

DISTRICT of ILLINOIS

page (13) of 37

Monroe, et al
          Plaintiff                    Civil No: 3:18-CV-00156-NJR
       V.

Latoya Hughes et al
          Defendant

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF
MOTION FOR A TEMPORARY RESTRAINING ORDER
AND PRELIMINARY INJUNCTION

This is a civil rights actions brought under 42 U.S.C § 1983 by a state person in custody who is a transgender woman who is being denied her constitutional rights that have already been agreed by this court against I.D.O.C. The plaintiff seek a temporary restraining order and/or preliminary injunction to ensure that she receive the standard that have already set by this court for transgender in I.D.O.C.
FUTHER MORE
From farmer, 511 U.S. at 833-34, 114 S.Ct. 1976 (prison) officials are obligated to protect prisoner taking preventative measure when they are aware an inmate faced a substantial risk of harm) Plaintiff has established that she has been and continue to be subjected to a substantial risk of serious harm. I.D.O.C has a duty to create a plan to keep transgender woman like myself safe I.D.O.C also should consider my assertion that being

page (14) of 37

house in a Men is the primary cause of her suffering because as a trans woman on hormone, she is especially vulnerable to physical and sexual violence from staff and people in custody. The court have also decide that Ms. Dorn don't have to wait to get assuated again to receive relief from this court.

1) On July 8, 2025 Ms. Dorn was jump on by two different people in Custody (See Ex. c)

2) Ms. Dorn receive a disciplinary report staten that Ms. Dorn was jump on (see exc)

3) At No time did intral Affair interview her or take pictures of her injuryes

4) Ms. Dorn didn't receive no Medical treatment for her enjury even though she told steff she had eye surgery,

5) It wasn't until three days later was she was able to wash the O.C. spray off her body, with tempters up to 90 degrees in the cell house

6) At no time was Ms. Dorn call to the adjustment committee to hear her ticket. When the gallery office John Doe had the list for the adjustment committee (7/12/25) she ask him was she on that list the stated No (See Exc. Affedavet

page (15) of 37

7) On July 17,2025 while Mrs. Dame Ms. Dorn galley officer was
taken her to mental health thrs she found out her restricted house
out date (see ex c)

8) Ms. Dorn was found guilty without being call to the adjustment
committee.

9) The July 8, 2025 was not the first time she was assaulted at
Menard C.C. (see ex. 7)

10) Ms. Dorn Doctor (U.I.C Mr. Katz) made out a report for I Doc
to follow on 3/13/24 for her to get her bottom surgery, it wasn't
until a year and a half (the month month of June 2025) later that
she was submitted and denied, for receive 2 ticket for (1) have
pocked on her PJ and then a year later for haven pocket on her
pants. And for this the committee say she was unstable. They just
saw she had 2 tickets, but never look into to see the detail of
them 2 ticket. Ms. Dorn never receive anything on the above she only
the information from word of mouth from Mrs. klavony on 7/17/25
see (EX. E)

11) Ms.

page (16) of 37

(1) Ms Dorn following constitution Rights have been violated by the staff at Menard, Ms. Dorn will keep getting retaliated against if the court don't grant this Motion. Her 8, 14, 4 constitution is being violate.

1) failure to Protect
2) Equal protection
3) deliberate indifference
4) Due Process
5) Disabilites Act (ADA)

/s/ Ms. Dorn
James Dorn #N-90855
Menard C.C.
P.O. Box 1000
Menard, Il. 62259

Date July 20, 2025

page 17 of 37

# EXHIBIT

# E

EY.F

page 19 of 37

**Mental Health History:**
- Pt previously saw MH in Pickneyville, but currently doesn't see a MH provider
- Follows with psychiatry

**PMHx/PSHx**
PTSD
Bipolar
Schizophrenia
Diabetes
Appendectomy (at 40 years old)

**Other Medications**
Selexa
Minipress
Glipizide
Depakote (for bipolar –not for seizures)
Prilosec
Fish Oil

**Allergies:**
NKDA

**Social Hx:**
Tob: no

**Family Hx:**
Maternal Aunt: HTN
Denies h/o of breast CA, VTE

**REVIEW OF SYSTEMS:**
12 point ROS negative except for as above

**Physical Exam:**
*Exam performed over video
General: NAD, pleasant, well nourished
Skin: no jaundice, no rash
HEENT: EOMI, sclera non-icteric
Neck: no thyroid enlargement appreciated on video exam
Chest: breathing comfortably
Extremity: no appreciable edema
Neuro: A&Ox3, no tremor
Mental status: appropriate

**Labs:**

Dorn v. Crouse (23-cv-4180)

Page 18 of 37                    EXE

Dorn, Ms Dorn (MRN 200195466) DOB: 08/03/1971 Encounter Date: 02/12/2024                    ☑003/008

# Dorn, James

*Menard*

MRN: 200195466

**Office Visit** 2/12/2024
IDOC Transgender Telehealth
Program

Provider: Katz, Joshua Benjamin, MD (Endocrinology)
Primary diagnosis: Gender incongruence

## Progress Notes

Katz, Joshua Benjamin, MD (Physician) • Endocrinology

### Endocrinology: Gender Affirming Care

Name: Ms Dorn
Gender Identity: female
Pronouns: she/her

**Interval History:**
- Transitioned from PO to transdermal estradiol since last visit
- Pt tolerating them well
- Reports mood is improved. No longer having mood swings.
- Continues to notice some chest growth
- Noticed increasing feminine body shape
- Skin is softer
- HA: chronic headaches, unchanged; Vision Changes: denies, Galactorrhea: denies

**Current GAH (started 10/2022)**
- Estradiol patch 0.1 mg/24 hours
- Eligard 7.5 mg qmonth

Gender History:
- Identified as female her entire life
- 2012 came out as transgender
- Started GAH 10/2022

Gender Dysphoria:
    Social: "no because I've been to hell and back twice, so I don't care what people think about you"
    Physical: bottom dysphoria

Social Support:
    - Does not feel socially supported by other inmates
    - Pt reports she is on the list to go to Centralia
    - Pt reports all of their family has passed away

Gender Related Surgeries.
- Interested in bottom surgery. Reports she started the process for informed consent already, but has not heard back recently

Fertility Preservation: not interested

page 20 of 37                    EXE

Dorn, Ms Dorn (MRN 200195466) DOB: 06/03/1971 Encounter Date: 02/12/2024

| Immunoassay | ng/dL | | | |
|---|---|---|---|---|
| Estradiol | 15 - 31 PG/ML | 143 | | 112 |

**(H):** Data is abnormally high
**(L):** Data is abnormally low

**Assessment and Plan:**
Ms Dorn is a 52 y.o. transgender female who presents for gender affirming care.

We discussed that I adhere to the World Professional Association for Transgender Health (WPATH) and Endocrine Society guidelines.

The patient today demonstrated capacity for decision making, well-controlled medical and mental health co-morbidities, and persistently documented gender dysphoria.

Discussed benefits and risks of estrogen therapy, including VTE, HTN, hypertriglyceridemia, elevated LFTs, weight gain, gallstones, increased risk of CV disease, hyperprolactinemia, T2DM and increased risk of breast cancer.

Also discussed that estradiol alone is not usually sufficient to suppress testosterone. Reviewed both spironolactone and GnRH agonists, including their risks and benefits. Spironolactone may not lower testosterone levels, but blocks the effects of the circulating androgens. Pt had opted for spironolactone, but given rising Cr, had transitioned to GnRH agonist.

Estradiol at goal of 100-200. T at goal of <50.

Prolactin mildly elevated, but she is asymptomatic so will CTM.

Plan:
- Continue 0.1 mg/24 hours estradiol patch
       - If patches are falling off, please cover with tegaderm
- Continue eligard 7.5 mg every month
- **Check testosterone, estradiol in 3 months**
- **Check prolactin in 6 months**

- Pt requesting large gaff, please help patient in ordering this

- Fertility Preservation: Not interested
- Surgery: started process with the IDOC for bottom surgery

Health Maintenance
- Lipid Panel: TG wnl 2/2024, continue fish oil per IDOC physician
- A1c: **pt with pre-diabetes, being managed by in facility provider**
- Breast cancer screening: pt still reporting minimal breast tissue, only started GAH 10/2022, will defer for now

**RTC in 3 months**

**Dorn v. Crouse (23-cv-4180)**

02/13/2024 TUE 9:17 FAX    ••• Menard cc
2/13/24, 8:57 AM                                                                    ☑005/008

Dom, Ms Dom (MRN 200195486) DOB: 08/03/1971 Encounter Date: 02/12/2024

**Lab Results**

| Component | Value | Date |
|---|---|---|
| GLUCOSE | 106 | 02/02/2024 |
| CALCIUM | 8.8 | 02/02/2024 |
| NA | 139 | 02/02/2024 |
| K | 4.5 | 02/02/2024 |
| CO2 | 25 | 02/02/2024 |
| CL | 102 | 02/02/2024 |
| BUN | 13 | 02/02/2024 |
| CREATININE | 1.02 | 02/02/2024 |

**Lab Results**

| Component | Value | Date |
|---|---|---|
| HGBA1C | 6.1 (H) | 02/02/2024 |

**Lab Results**

| Component | Value | Date |
|---|---|---|
| CHOL | 193 | 02/02/2024 |
| CHOL | 196 | 06/02/2023 |
| CHOL | 198 | 05/05/2023 |

**Lab Results**

| Component | Value | Date |
|---|---|---|
| HDL | 46 | 02/02/2024 |
| HDL | 49 | 06/02/2023 |
| HDL | 46 | 05/05/2023 |

**Lab Results**

| Component | Value | Date |
|---|---|---|
| LDLCALC | 120 | 02/02/2024 |
| LDLCALC | 115 | 06/02/2023 |
| LDLCALC | 121 | 05/05/2023 |

**Lab Results**

| Component | Value | Date |
|---|---|---|
| TRIG | 134 | 02/02/2024 |
| TRIG | 160 (H) | 06/02/2023 |
| TRIG | 154 (H) | 05/05/2023 |

| | Latest Reference Range & Units | 11/17/23 08:55 | 02/02/24 08:22 |
|---|---|---|---|
| Prolactin | 2.6 - 13.1 NG/ML | 19.1 (H) | 31.2 (H) |
| Testosterone by | 300 - 890 | <3 (L) | <3 (L) |

page 22 of 37

EXHIBIT

B

*pege 23 of 37*

*EXB*

**ILLINOIS DEPARTMENT OF CORRECTIONS**
**Psychiatric Progress Note**

Facility:  Menard Correctional Center

**Individual in Custody**
Name (Last, First)    Dorn, James          ID Number:  N90855          Date:  3/06/2024

| | |
|---|---|
| **Start Time:** | 1115 |

Allergies or Medication Sensitivities?   ☒ No   ☐ Yes   If yes, then describe:

Scheduled Visit Type:   Routine Follow Up ☒   Complex Follow Up Evaluation ☐

| Level of Care: | Outpatient ☒ | Residential Treatment Unit ☐ | mRTU ☐ | Inpatient ☐ | Crisis ☐ |
|---|---|---|---|---|---|

| Type of Visit: | Telepsychiatry ☐ | Onsite Evaluation ☒ | Other ☐ | (identify): |
|---|---|---|---|---|

Has individual in custody been on Crisis Watch since last psychiatric visit?   Yes ☐   No ☒

If yes, explain:

**Source of Information:**   ☒ Individual in Custody   ☐ Mental Health Staff   ☐ Medical Staff   ☐ Mental Health Progress Notes
(Check all that apply)     ☐ Medical Progress Notes     ☐ Mental Health Evaluation dated:
                           ☐ Crisis Records            ☐ Other (identify):
                           ☒ Previous Psychiatric Progress Note   ☒ MAR

| Subjective/Objective |
|---|

Ms. Dorn states she is doing well at this time. She states she is tired today because she was up listening to music last night. She feels her medications are working well and denies need for change. She denies any symptoms of depression or anxiety at this time. No report of SI or HI. Her only complaint is that she has not seen Ms. Hornberger "in a while". She remains excited about possibility of surgery reassignment surgery. No issues with appetite and sleep. States, "I am ready to go to my cell to sleep, I'm tired."

Vitals 98.7, 88, 18, 97%, 158/80

| LIST CURRENT PSYCHOTROPIC MEDICATIONS: | ☐ Check if None |
|---|---|

Prazosin 4mg po q hs
Lexa 40mg po q hs
Depakote 250mg po bid

Pertinent medical medications:

glucotrol, claritin, pamelor, prilosec, senna, colace, eligard, estradiol, fish oil

| Compliance: | ☒ Good | ☐ Poor (list details) | |
|---|---|---|---|
| Side effects: | ☒ None | ☐ Yes (list details below) | |

MAR reviewed:   Yes ☒   No ☐

Is individual in custody currently prescribed Involuntary Psychotropic Medication(s)?   Yes ☐   No ☒

**Lab Results:**  Comment on abnormal results and include drug levels.   None ordered ☐

CMP wnl
Lipid wnl
TSH 4.2

Distribution:    Individual in Custody Medical File          *Printed on Recycled Paper*          DOC 0502 (Rev. 3/2024)
Page 1 of 5

**Dorn v. Crouse (23-cv-4180)**
**IDOC 001285**

*page 24 of 37*

*Ex B*

Illinois Department of Corrections

**Mental Health Progress Note**

Menard Correctional Center

Facility

February 2, 2024        Time: 10:00-12:00PM        Session Duration: **120 Minutes**

ual in Custody:(Last, First)  Dorn James        ID Number: N90855

| Part I:  Information of Individual in Custody |
|---|

☑ General/Outpatient   ☐ Special/Residential Treatment Unit   ☐ Crisis Placement   ☐ Inpatient

[...]        Discharge:  5/8/2050

[...]y: ☑ Designated SMI   ☐ Designated GBMI   ☐ On Enforced Medication   ☐ None

[...] contact occurred
[...] Brief Mental Status Evaluation section, document information in Part III)

☑ Behavioral Health Technician
Brief Mental Status Evaluation section, document information in Part III)

**Part III:  S.O.A.P. Note**

S[...]dual in Custody self-report of presenting problem;**O** = objective, clinician view of presenting problem;
[...]nt, clinician assessment of Individual in Custody; **P** = plan, current plan, link to treatment plan

Re[...]

Th[...]le to run due to multiple emergency tones and no movement in the institution at the time of this
gr[...] in custody will be offered their next scheduled group.

Clinici[...] Salger, BA        Signature: _____        

Facility[...]nal Center        Title: BHT

Distribution        Page 1 of 1        DOC 0282 (Rev. 09/2021)
*Printed on Recycled Paper*

**Dorn v. Crouse (23-cv-4180)**
**IDOC 001284**



ILLINOIS DEPARTMENT OF CORRECTIONS
Disciplinary Report

**Type of Report:**
☑ Disciplinary ☐ Investigative    Facility: Menard Correctional Center    Date: 7/8/2025

Name of Individual in Custody: Dorn, James    ID #: N90855    SMI: ☑ yes ☐ no    Race: BLK

Observation Date: 7/8/2025    Approximate Time: 11:41    ☑ a.m. ☐ p.m.    Location: Commissary

**Offense(s): DR 504:** 105-Dangerous Disturbance, 214-Fighting, 215-Disobeying a direct order essential to safety and security

**Observation:** (NOTE: Each offense identified above must be substantiated.)

On July 8, 2025, at approximately 11:41am I c/o Legus, A (10836) was assigned as west commissary officer. While observing west 8 and 10 galleries in the commissary, I witnessed multiple closed fists being thrown in a group of Individuals. I called a 10-10 (fight in progress) on my institutional radio. The individuals then stopped fighting. Additional staff arrived and I then witnessed Individual in Custody Cano, Anthony-M53840 and Individual in Custody Garza, Christopher-Y25023 start kicking and hitting Individual in custody Dorn, James-N90855 with closed fist punches to the head and chest area. I gave multiple direct orders to stop fighting and they did not comply. Lt Wehrenberg (3136) also gave multiple direct orders to stop fighting which were ignored. Lt Wehrenberg then deployed a burst of O.C. pepper spray to stop the assaultive behaviors. They continued to fight. Once Dorn, Garz, and Cano fighting stopped all the

Witness(es):

☑ Check if Disciplinary Report Continuation Page, DOC 0318, is attached to describe additional facts, observations or witnesses.

| legus, A | 10836 | *[signature] Jesus* | 7/8/2025 | 1:18 | ☐ a.m. ☑ p.m. |
| Reporting Employee (Print Name) | Badge # | Signature | Date | Time | |

---

**Disciplinary Action:**

**Shift Review:** ☑ Temporary Confinement    ☐ Investigative Status    Reasons: *Nature of offense*

*Mr. N. Baker 390* [handwritten]    *[signature] Mr N R.* [handwritten]    7-8-25

Printed Name and Badge #    Shift Supervisor's Signature (For Transition Centers, Chief Administrative Officer)    Date

**Reviewing Officer's Decision:** ☐ Confinement reviewed by Reviewing Officer    Comment: *[handwritten]*

☑ **Major Infraction**, submitted for Hearing Investigator, if necessary and to Adjustment Committee
☐ **Minor Infraction**, submitted to Program Unit

*Kittake* [handwritten]    *[signature]*    7/8/25

Print Reviewing Officer's Name and Badge #    Reviewing Officer's Signature    Date

☐ **Hearing Investigator's Review Required** (Adult Correctional Facility Major Reports Only):

Print Hearing Investigator's Name and Badge #    Hearing Investigator's Signature    Date

**Procedures Applicable to all Hearings on Investigative and Disciplinary Reports**

You have the right to appear and present a written or oral statement or explanation concerning the charges. You may present relevant physical material such as records or documents.

**Procedures Applicable to Hearings Conducted by the Adjustment Committee on Disciplinary Reports**

You may ask that witnesses be interviewed and, if necessary and relevant, they may be called to testify during your hearing. You may ask that witnesses be questioned along lines you suggest. You must indicate in advance of the hearing the witnesses you wish to have interviewed and specify what they could testify to by filling out the appropriate space on this form, tearing it off, and returning it to the Adjustment Committee. You may have staff assistance if you are unable to prepare a defense. You may request a reasonable extension of time to prepare for your hearing.

☐ Check if individual in custody refused to sign

Individual in Custody's Signature    ID#

Serving Employee (Print Name)    Badge #    Signature    ☐ a.m. ☐ p.m.

Date Served    Time Served

☐ I hereby agree to waive 24-hour notice of charges prior to the disciplinary hearing.

Individual in Custody's Signature    ID#

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**(Detach and Return to the Adjustment Committee or Program Unit Prior to the Hearing)**

Date of Disciplinary Report    Print individual in custody's name    ID#

I am requesting that the Adjustment Committee or Program Unit consider calling the following witnesses regarding the Disciplinary Report of the above date:

Print Name of witness    Witness badge or ID#    Assigned Cell (if applicable)    Title (if applicable)

Witness can testify to: _____

Print Name of witness    Witness badge or ID#    Assigned Cell (if applicable)    Title (if applicable)

Witness can testify to: _____

Page 1 of 2
*Printed on Recycled Paper*

Distribution:    Master File
                 Individual in Custody

DOC 0317 (Rev. 7/2021)

PSK 278 37

ILLINOIS DEPARTMENT OF CORRECTIONS

### Disciplinary Report Continuation Page

Mensel C.C.

Facility

☑ Disciplinary Report    ☐ Investigative Report    ☐ Disciplinary Summary    ☐ Adjustment Committee Summary

Report/Incident Date: 7/8/2025    Incident # (if applicable): _____

**Individual in Custody Information:**

Name: Dorn, James    ID #: N90855

Use the space below to provide any additional information.

Individuals in the commissary were then placed in handcuffs and removed from the commissary. All individuals in custody involved were escorted to be seen by medical and mental health and then to Restrictive Housing. There were 70 individuals in custody in the commissary at the time of the incident. Individuals in Custody Cano-M53840, Garza-Y25023, and Dorn, James-N90855 were all later identified by state issued ID card and O360. Rropper chain of command was notified.

Page   2   of   2

Page 28 of 37 Ex C

## State of Illinois - Department of Corrections

## Counseling Summary

| | | | |
|---|---|---|---|
| **IDOC #** | N90855 | **Counseling Date** | 07/16/25 10:03:28:727 |
| **Offender Name** | DORN, JAMES | **Type** | Personal |
| **Current Admit Date** | 02/16/2001 | **Method** | Face To Face |
| **MSR Date** | 11/06/2048 | **Location** | MEN NORTH 2-DISCIPLINARY SEGREGAT |
| **HSE/GAL/CELL** | N2-07-10 | **Staff** | STRONG, LEAH N., Correctional Counselor II |

Seen on Tour- RH out date is 9-8-25.

**Print Date  7/17/2025**

STATE OF ILLIOIS } SS
COUNTY OF Randolph } SS

Ex. C

# AFFIDAVIT

I RAMOS being first duly sworn upon My Oath depose state that the following matter are both true and correct made personal knowledge and belief, and if called as a witness, I am competent to testify there to: I ALFREDO RAMOS THAT ON DAY JUNE 15, 2023, I HEARD CELL 710 INMATE WHY NOT TAKE HIM ADJUSTMENT COMMITTY HEARING I WENT TO THE ADJUSTMENT ON DAY June 15 2023

PUSUANT to 28 USC 1746 and 18 USC 1621, I declare under penalty of perjury that I am a name party in the above action that I have read the above documents, and the information contained there in is true and correct to the best of My Knowledge

/s/ Alfredo Ramos

Menard C.C.
P.O. Box 1000
Menard, Ill.
62259

page 30 of 37



*page 31 of 37*

*Ex O*

# INSTRUCTIONS FOR AN UPCOMING EYE SURGERY

## NAME:   James Dorn  N90855                    W-817

## PROCEDURE: Cataract surgery- Right eye

This is to notify you of an upcoming eye surgery.

**If you wear contact lenses you need to leave them out 3-5 days before surgery. Starting: Monday, May 12**

**You will receive 3 prescription eye drops.**

**Starting:  Tuesday, May 13  use 1 drop in the surgical eye only,**

**3 times a day. Continue using everyday until all drops are gone.**

Please **DO NOT** eat or drink after midnight the night before your procedure. This includes mints, candy, cough drops and water.

Please **DO NOT** take any medications after midnight unless directed by Healthcare.

Please shower or bathe in your cell the night before your procedure,

**DO NOT** apply any lotion or powder to your skin after bathing.

Please wash your hair and **DO NOT** apply any hair products

You may brush your teeth, but **DO NOT** swallow any water.

Remove all jewelry, body piercing, hair accessories or makeup.

If you have dentures, **DO NOT** use any type of adhesive.

If you wear glasses to your surgery, please bring a case with you.

Please let Healthcare know if you become ill prior to your procedure, such as cold symptoms, fever, sore throat, vomiting or diarrhea.

page 33 of 37



On 7/15/25

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF ILLINOIS

JANIAH MONROE, MARILYN                    )
MELENDEZ, LYDIA HELÉNA VISION,            )
SORA KUYKENDALL, and SASHA                )
REED, individually and on behalf of a class )
of similarly situated individuals,         )
                                           )
                Plaintiffs,                )       Civil No. 3:18-cv-00156-NJR
                                           )
v.                                         )
                                           )
LATOYA HUGHES, MELVIN HINTON,             )
and STEVEN BOWMAN,                        )
                                           )
                Defendants.                )

## DECLARATION OF MS. DORN #N90855

I, Ms. Dorn, hereby state:

1.      I am a class member in the above-captioned matter.

2.      I am a transgender woman who is currently housed at the Menard Correctional
Center. I have been at Menard since approximately March 2023.

3.      The Menard correctional officers intimidate and harass class members. In or about
November 2023, one male officer took me to the area where they keep inmates during
transportation; it is called the bullpen. I asked the officer to take me back to my cell because it was
cold near the bullpen. His response was, "I'm tired of you fag sissys." Later that day, the same
male officer came to my cell, and even though I had my back turned to him, he sprayed Mace at
me. He falsely claimed I tried to throw my TV at him.

4.      On the same day as the incident above, another officer took me to the showers when
the sergeant showed up and sprayed Mace at me. He then said, "one down, four to go," talking
about transgender inmates.

1

*pgs 34 of 37*

# Exhibit 7
# (filed under seal)

5.    Other people are around when I shower, and it makes me feel unsafe. I prefer washing up in my cell.

6.    I have been trying to update my class member ID card to show my preferred gender for searches as female officers. However, I am still being searched by male officers, which makes me feel disrespected and violated. There is a body scanner at Menard, but the male officers rarely use it on me.

7.    Correctional officers use disrespectful language like "gay sissy" when referring to class members. They do not address me as "Ms. Dorn" or use my preferred pronouns.

8.    I have not had my hormone treatment in about a month. I used to take hormone pills, but the nurses switched me to patches over two months ago. I am supposed to get a patch twice a week. Dr. Katz said to stay on the pills until my patches arrived, but my pills ran out a month ago, and I still do not have the patches. This means I am not getting my regular hormone treatment right now. My emotions are all over the place, and I am having hot flashes. I filed an emergency grievance about a week ago, but there has been no response. One nurse checks in on me, but I still have not received my patches.

9.    I have been trying to transfer to PRISM and get gender-affirming surgery for over 2 years, but IDOC is taking a long time with the process.

10.    I do not feel safe at Menard.

11.    I am very interested in transferring out of Menard. I want to leave Menard and join the PRISM program at Centralia Correctional Center. Eventually, I hope to be transferred to Logan Correctional Center.

12.    Pursuant to 28 U.S.C. § 1746, I declare that the foregoing is true and correct.

2

Dated: December 11, 2023                    /s/  Ms. Dorn
                                            Ms. Dorn, N90855[1]


Dated: 1/11/24                              Ms. Dorn
                                            Ms. Dorn # N-90855

---

[1] Plaintiffs' counsel spoke with Ms. Dorn on November 9, 2023 and December 11, 2023, by telephone. During these conversations, Ms. Dorn authorized Plaintiffs' counsel to file this declaration on her behalf. Plaintiffs' counsel will supplement this declaration with a signed copy from Ms. Dorn once it is returned to them by U.S. Mail.

UNITED STATES DISTRICT COURT SOUTHERN
DISTRICT OF ILLINDIS

Monroe, et al
        Plaintiff
        V.                    Civil NO: 3:18-CV-00156-NJR
Latoya Hughes, et al
        Defendant
                                NOTICE OF FILING
To: Clerk office for the
Southern District Court
750 Missouri, Ave
East St. Louis, Ill. 62201

SCANNED at MENARD and E-mailed
7-22-25 by TW  37 pages
Date      initials   No.

Please take Notice that on July 20, 2025 I have provided service
to the person listed above by the following by electronically
filed through Menard C.C. Law library 87 pages of A T.R.O
and Preliminary injunction,

DECLARATION UNDER PENALTY OF PERJURY
Pursuant to 28 USC 1746 and 18 USC 1621, I declare under penalty
of perjury that I am a name party in the above action, that I have
read the above document and that the information contained
therin is true and correct to the best of My knowledge

Date 7/20/25                    /s/ Ms. Dorn
                                James Dorn #N-90855
                                Menard C.C.
                                P.O. Box 1000
                                Menard, Il. 62259



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS
prisoner.esl@ilsd.uscourts.gov

ELECTRONIC FILING COVER SHEET

Please complete this form and include it when submitting any type of document, letter, pleading, etc. to the U.S. District Court for the Southern District of Illinois for review and filing.

Dorn, JAMES _____
Name

N90858
ID Number

Please answer questions as thoroughly as possible and circle yes or no where indicated.

1. Is this a new civil rights complaint or habeas corpus petition?    Yes or (No)

   If this is a habeas case, please circle the related statute:   28 U.S.C. 2241 or 28 U.S.C. 2254

2. Is this an Amended Complaint or an Amended Habeas Petition?    Yes or (No)

   If yes, please list case number: _____

   If yes, but you do not know the case number mark here: _____

3. Should this document be filed in a pending case?    (Yes) or No

   If yes, please list case number:  18-CV-60156-NJR

   If yes, but you do not know the case number mark here:  37

4. Please list the total number of pages being transmitted: _____

5. If multiple documents, please identify each document and the number of pages for each document. For example:  Motion to Proceed In Forma Pauperis, 6 pages; Complaint, 28 pages.

   Name of Document                                    Number of Pages
   MOTION                                              37

   _____                                    _____

   _____                                    _____

   _____                                    _____

Please note that discovery requests and responses are NOT to be filed, and should be forwarded to the attorney(s) of record.   Discovery materials sent to the Court will be returned unfiled.