# EXHIBIT 7

Outlook

---

## RE: Monroe v. Rauner - Request for Meet/Confer

---

**From** Legault, Sarah <sarah.legault@kirkland.com>

**Date** Wed 2025-09-17 9:11 AM

**To** Penn, Justin M. <jpenn@hinshawlaw.com>; *abby.parsons@arnoldporter.com <abby.parsons@arnoldporter.com>; Rizzo, Vincent M. <vrizzo@hinshawlaw.com>; Brodzik, James M. <JBrodzik@hinshawlaw.com>; Edwards Jr., Calvin R. <cedwards@hinshawlaw.com>; Vaidya, Anshuman A. <avaidya@hinshawlaw.com>; Shultz, Robert <robert.shultz@ilag.gov>; Cook, Lisa <lisa.cook@ilag.gov>

**Cc** #ACLU Transgender Prisoner Rights External <ACLU_Transgender_Prisoner_Rights_External@kirkland.com>

---

📎 1 attachment (70 KB)

20240916 DRAFT ESI Order.docx;

Counsel,

Please find attached a proposed and revised ESI Order. Plaintiffs would like to meet and confer with you next week regarding the Order. Is there a window on Monday or Tuesday when we could confer?

**Sarah Legault**
She/Her/Hers
================================
**KIRKLAND & ELLIS LLP**
333 West Wolf Point Plaza
Chicago, IL 60654
**T** +1 312 862 3943  **M** +1 312 723 8547
**F** +1 312 862 2200
================================
sarah.legault@kirkland.com

---

**From:** Penn, Justin M. <jpenn@hinshawlaw.com>
**Sent:** Tuesday, September 2, 2025 12:35 PM
**To:** *abby.parsons@arnoldporter.com <abby.parsons@arnoldporter.com>; Rizzo, Vincent M. <vrizzo@hinshawlaw.com>; Brodzik, James M. <JBrodzik@hinshawlaw.com>; Edwards Jr., Calvin R. <cedwards@hinshawlaw.com>; Vaidya, Anshuman A. <avaidya@hinshawlaw.com>; Shultz, Robert <robert.shultz@ilag.gov>; Cook, Lisa <lisa.cook@ilag.gov>
**Cc:** #ACLU Transgender Prisoner Rights External <ACLU_Transgender_Prisoner_Rights_External@kirkland.com>
**Subject:** RE: Monroe v. Rauner - Request for Meet/Confer

Noon to 12:30 works on our end,

**Justin Penn**
Partner
**Hinshaw & Culbertson LLP**

Chicago Office | 151 North Franklin Street, Suite 2500, Chicago, IL 60606
**O:** 310-909-8036 | **F:** 312-704-3001
Los Angeles Office | 350 South Grand Avenue, Suite 3600, Los Angeles, CA 90071

Peoria Office | 416 Main Street, Suite 529, Peoria, IL 61602

jpenn@hinshawlaw.com

My Bio | hinshawlaw.com | 



**From:** Parsons, Abby <Abby.Parsons@arnoldporter.com>
**Sent:** Tuesday, September 2, 2025 12:32 PM
**To:** Penn, Justin M. <jpenn@hinshawlaw.com>; Rizzo, Vincent M. <vrizzo@hinshawlaw.com>; Brodzik, James M. <JBrodzik@hinshawlaw.com>; Edwards Jr., Calvin R. <cedwards@hinshawlaw.com>; Vaidya, Anshuman A. <avaidya@hinshawlaw.com>; Shultz, Robert <robert.shultz@ilag.gov>; Cook, Lisa <lisa.cook@ilag.gov>
**Cc:** #ACLU Transgender Prisoner Rights External <aclu_transgender_prisoner_rights_external@kirkland.com>
**Subject:** RE: Monroe v. Rauner - Request for Meet/Confer

Justin,

Would you prefer 12-1230 or 330-4 pm CT tomorrow?

If you need another time, let us know. Otherwise, I can circulate a dial-in.

Thanks,
Abby

_____
Abby Parsons

Partner | Bio

## Arnold & Porter

700 Louisiana Street | Suite 4000
Houston, TX 77002-2755
T: +1 713.576.2442
Abby.Parsons@arnoldporter.com
www.arnoldporter.com | LinkedIn

**From:** Parsons, Abby
**Sent:** Thursday, August 28, 2025 12:35 PM
**To:** Penn, Justin M. <jpenn@hinshawlaw.com>; Rizzo, Vincent M. <vrizzo@hinshawlaw.com>; Brodzik, James M. <JBrodzik@hinshawlaw.com>; Edwards Jr., Calvin R. <cedwards@hinshawlaw.com>; Vaidya, Anshuman A. <avaidya@hinshawlaw.com>; Shultz, Robert <robert.shultz@ilag.gov>; Cook, Lisa <lisa.cook@ilag.gov>
**Cc:** #ACLU Transgender Prisoner Rights External <aclu_transgender_prisoner_rights_external@kirkland.com>
**Subject:** RE: Monroe v. Rauner - Request for Meet/Confer

Justin,

That will be fine. Do you want to send an invitation for a convenient time? We probably only need 30 minutes.

Thanks,
Abby

_____

Abby Parsons

Partner | Bio

## Arnold&Porter

700 Louisiana Street | Suite 4000
Houston, TX 77002-2755
T: +1 713.576.2442
Abby.Parsons@arnoldporter.com
www.arnoldporter.com | LinkedIn

---

**From:** Penn, Justin M. <jpenn@hinshawlaw.com>
**Sent:** Thursday, August 28, 2025 11:56 AM
**To:** Parsons, Abby <Abby.Parsons@arnoldporter.com>; Rizzo, Vincent M. <vrizzo@hinshawlaw.com>; Brodzik, James M. <JBrodzik@hinshawlaw.com>; Edwards Jr., Calvin R. <cedwards@hinshawlaw.com>; Vaidya, Anshuman A. <avaidya@hinshawlaw.com>; Shultz, Robert <robert.shultz@ilag.gov>; Cook, Lisa <lisa.cook@ilag.gov>
**Cc:** #ACLU Transgender Prisoner Rights External <aclu_transgender_prisoner_rights_external@kirkland.com>
**Subject:** RE: Monroe v. Rauner - Request for Meet/Confer

External E-mail

Abby and all-

How does Wednesday afternoon work for your team?

**Justin Penn**
Partner
**Hinshaw & Culbertson LLP**

Chicago Office | 151 North Franklin Street, Suite 2500, Chicago, IL 60606
**O:** 310-909-8036 | **F:** 312-704-3001
Los Angeles Office | 350 South Grand Avenue, Suite 3600, Los Angeles, CA 90071
Peoria Office | 416 Main Street, Suite 529, Peoria, IL 61602

jpenn@hinshawlaw.com
My Bio | hinshawlaw.com  



---

**From:** Parsons, Abby <Abby.Parsons@arnoldporter.com>
**Sent:** Tuesday, August 26, 2025 2:20 PM
**To:** Rizzo, Vincent M. <vrizzo@hinshawlaw.com>; Penn, Justin M. <jpenn@hinshawlaw.com>; Brodzik, James M. <JBrodzik@hinshawlaw.com>; Edwards Jr., Calvin R. <cedwards@hinshawlaw.com>; Vaidya, Anshuman A. <avaidya@hinshawlaw.com>; Shultz, Robert <robert.shultz@ilag.gov>; Cook, Lisa <lisa.cook@ilag.gov>
**Cc:** #ACLU Transgender Prisoner Rights External <aclu_transgender_prisoner_rights_external@kirkland.com>
**Subject:** Monroe v. Rauner - Request for Meet/Confer

Counsel:

Plaintiffs would like to meet and confer with you next week to discuss discovery, including at least for (i) confirming a date to exchange initial disclosures, (ii) setting initial limits on discovery, and (iii) revisiting/revising the ESI Order from 2018.

We are generally available on Sept. 2 and 3. Is there a window of time on those days we could confer?

Best,
Abby

_____

Abby Parsons

Partner | Bio

## Arnold&Porter

700 Louisiana Street | Suite 4000

Houston, TX 77002-2755

T: +1 713.576.2442

Abby.Parsons@arnoldporter.com

www.arnoldporter.com | LinkedIn

_____

This communication may contain information that is legally privileged, confidential or exempt from disclosure. If you are not the intended recipient, please note that any dissemination, distribution, or copying of this communication is strictly prohibited. Anyone who receives this message in error should notify the sender immediately by telephone or by return e-mail and delete it from his or her computer.

_____

For more information about Arnold & Porter, click here:

http://www.arnoldporter.com

Hinshaw & Culbertson LLP is an Illinois registered limited liability partnership that has elected to be governed by the Illinois Uniform Partnership Act (1997).

The contents of this e-mail message and any attachments are intended solely for the addressee(s) named in this message. This communication is intended to be and to remain confidential and may be subject to applicable attorney/client and/or work product privileges. If you are not the intended recipient of this message, or if this message has been addressed to you in error, please immediately alert the sender by reply e-mail and then delete this message and its attachments. Do not deliver, distribute or copy this message and/or any attachments and if you are not the intended recipient, do not disclose the contents or take any action in reliance upon the information contained in this communication or any attachments.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of the multi-national law firm Kirkland & Ellis LLP and/or its affiliated entities. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| JANIAH MONROE, MARILYN MELENDEZ, EBONY STAMPS, LYDIA HELENA VISION, SORA KUYKENDALL, and SASHA REED, | ) ) ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | No. 18-cv-156-DRH-DGW |
| BRUCE RAUNER, JOHN BALDWIN, STEVE MEEKS, and MELVIN HINTON, | ) ) ) ) | |
| Defendants. | ) ) | |

**[PROPOSED] ORDER REGARDING PRESERVATION AND PRODUCTION OF DOCUMENTS AND ELECTRONICALLY STORED INFORMATION**

Pursuant to Federal Rule of Civil Procedure 26, the Court enters this order regarding the preservation and production of documents and electronically stored information ("ESI") in this matter. This Order shall supersede the Discovery Plan for Electronically Stored Information, filed June 11, 2018 (Doc. 65).

**I.    SCOPE**

1.    This Order shall govern the production of documents and electronically stored information ("ESI"), as described in Federal Rules of Civil Procedure 26, 33, and 34.

2.    The Parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the matter consistent with the Principles Relating to the Discovery of Electronically Stored Information (the "Principles") of the 7th Cir. Pilot Program.

3.    Nothing in this Order shall supersede the provisions of any prior and subsequent Protective Order(s).

4.     The Parties agree that consistent with Rule 26(b)(1) of the Federal Rules of Civil Procedure, the scope of discovery is limited to those matters that are both relevant to the claims and defenses and proportional to the needs of the case. The Parties further agree to apply reasonable limitations regarding the following:

- Data sources;

- Date ranges;

- Custodians; and

- Search terms.

5.     The Parties agree that the Producing Party may use reasonable techniques to identify documents for responsiveness or relevance, including but not limited to search terms, date ranges, custodians, predictive coding, and other technology assisted review methods, and to the extent there are any disputes or questions, the Parties shall meet and confer regarding the same. No Party should object to the discovery of ESI on the basis that it is not reasonably accessible because of undue burden or cost unless the objection has been stated with particularity, and not in conclusory or boilerplate language. If the Parties cannot resolve disagreements regarding review methodologies by meet and confers, the Parties shall notify the Court to schedule a hearing using the Court's procedures within 20 days of the impasse.

6.     A Producing Party who intends or reasonably expects to comply with a Requesting Party's request for production through the use of rolling production shall notify the Requesting Party of its intention or expectation during the meet-and-confer discussions noted above, on a timeline consistent with the Court and the Parties' mutual desire for a prompt resolution of this action with a specific schedule agreed to by the Parties. A Producing Party who is using a rolling production shall notify the Requesting Party when the production is substantially complete.

## II.    DEFINITIONS

7.    For purposes of this Order and any anticipated agreements relating to the production of ESI, the following definitions shall apply, unless any such definition conflicts with the Federal Rules of Civil Procedure, in which case, the Rules shall govern.

a.    *Custodian* means a person who had or has possession, custody, or control of documents or ESI.

b.    *Document* means any written, typed, printed, recorded, imaged, or graphic information or data, including ESI.

c.    *Electronically stored information* or *ESI* as used herein has the same meaning as in Rule 34 of the Federal Rules of Civil Procedure, including any writing, drawing, graph, chart, photograph, sound recording, image, and other data or data compilation stored in any medium from which such information can be obtained either directly or, if necessary, after translation by the Producing Party into a reasonably usable form, including any hard copy document scanned and stored electronically as a static image.

d.    *Extracted text* means a file or files containing text extracted from a document, and shall include all available information contained in the document's body and in any header, footer, comments, and notes that are part or appended to the document.

e.    *Family* means a group of documents that includes a "parent" document such as an email, memorandum, or report and one or more "child" documents such as attachments or embedded files. A document family need not include .gif or .jpeg files with no substantive content, such as banners and logos.

f.    *Hard copy documents* means documents that are maintained in the ordinary course of business in a tangible format, such as paper or micro fiche. The generic term "documents" shall include hard copy and electronic documents.

g.    *Load file* means an electronic file containing information identifying and describing a production set of scanned documents or processed ESI, including where individual pages or files belong together as documents, associating attachments with their parent documents, associating documents with members of their document family, and identifying where each document begins and ends, and containing information about the individual documents, including any extracted or user-created metadata and OCR or extracted text.

h.    *Metadata* means information describing characteristics of a file, generated by the application that created or modified it or generated automatically by a computer or network operating system on which the file is located.

i.    *Native format* means the format in which a file was originally created or modified (in contrast to a static image, such as a .tiff or .pdf file, of a file originally created by a different application).

j.    *OCR file* means a searchable text file created by an optical character recognition application from a static image or scanned hard copy document.

k.    *Person* means an individual; a private or public for-profit or non-profit corporation, company, partnership, firm, association, cooperative, foundation, business trust, or other organization; a unit of government, government agency, department, or board, or other public entity; or a college, university, or school or department thereof.

l.    *Preserve* or *preservation* means to prevent the destruction, alteration, deletion, shredding, incineration, wiping, or theft of documents or ESI.

m.    *Produce* and *production* mean the transmission or delivery of documents by one Party to another Party, whether voluntarily or in response to a formal or informal request,

and the transmission or delivery of documents by a third Party to a Party, whether voluntarily or pursuant to subpoena, for the purpose of discovery.

n.    *Producing Party* means the Party who produces or has the obligation to produce documents.

o.    *Receiving Party* means a Party to whom ESI is produced.

p.    *Requesting Party* means the Party who requests documents.

q.    *Rolling production* means a process in which a Producing Party responds to a request for production incrementally, by making a series of deliveries of responsive documents and ESI to the Requesting Party.

r.    *Search term* means a word or string of words or phrases related by proximity or search operators for the purpose of identifying potentially discoverable ESI.

s.    *Static image* means a representation of ESI produced by converting a native file or a hard copy document into a standard image format, such as Tagged Image File Format (TIFF), Portable Document Format (PDF), or Joint Photographic Experts Group (JPEG) format, which can be displayed and printed on multiple computer platforms using a commonly-available application.

## III.    SEARCHING

8.    Each Party may use one or more methods to collect, search, and review documents for production, and to produce discoverable non-privileged ESI that is responsive to another Party's request for production.

9.    The Parties agree to collaborate on search terms and custodians in an effort to streamline discovery and reduce the cost of discovery.  However, for email productions, a Producing Party shall not be required to search for responsive ESI from more than fifteen

custodians, and the number of search terms shall not exceed a total of ten search terms per custodian per Producing Party. The Parties may jointly agree to modify these limits.

10.     Prior to engaging in any search methodologies, including, but not limited to, search terms, custodians, technology assisted review, or other methods, the Parties shall meet and confer and attempt to reach agreement. The Parties shall in good faith attempt to reach agreement on protocols, such as hit reports or TAR validation, for identifying, searching, and review of documents that may be produced prior to any productions. If no agreement can be reached on search terms, custodians, or other methods, then the Parties shall notify the Court to schedule a hearing using the Court's procedures within 20 days of the impasse.

11.     Notwithstanding the use of search terms to identify responsive documents, if a Party is aware of the existence of specific non-privileged responsive documents maintained in hard copy or as ESI, then that Party shall produce such documents even if they do not include any of the search terms being applied generally to ESI. Furthermore, if a Party is aware of the existence of documents or data sources that contain responsive documents that are not reasonably searchable (e.g., image or other design files of relevant product designs), the Parties agree that applying search terms to these data sources shall be insufficient to identify potentially responsive documents of this nature and review such documents manually for responsiveness and production.

## IV.    PRODUCTION FORMAT

12.     The Parties agree that the documents and information produced shall be produced in accordance with the following specifications.

13.     <u>Hard Copy Documents.</u>   Hard copy documents will be scanned or otherwise converted into electronic form from hard copy documents in the following format specified in Appendix 1.

14.     If any original hard copy document has any note or attachment affixed to it, the Producing Party shall scan and produce copies of the original hard-copy document along with all notes and attachments to it in the same manner as other documents. If any such note or attachment obscures any information on the original hard copy document, the Producing Party shall also produce a copy of the original hard-copy document without the note or attachment affixed in order to make the underlying information visible.

15.     ESI.  The Parties agree, subject to the exceptions herein, that they will produce ESI in TIFF format according to the following specifications set forth in Appendix 1.

16.     TIFFs shall be produced as black & white, single-page TIFF images in accordance with the technical specifications set out in Appendix 1. Upon written request that identifies a reasonable number of individual documents at issue by Bates number, a Party shall produce color images and/or native files for those documents. Documents produced in color shall be produced as single page, 300 DPI, color JPG images with the quality setting of 75% or higher.

17.     All TIFF files are to be provided with an accompanying searchable text (.TXT) file extracted from the native, electronic file (not generated as an OCR file from the TIFF image(s)), and such text files shall contain the full text extraction. To the extent reasonably feasible, extracted text shall provide all comments, tracked changes, speaker's notes, and text from hidden worksheets, slides, columns and rows. In the case of email, the corresponding text file shall include, where reasonably available: (1 ) the individual(s) to whom the communication was directed ("To"); (2) the author(s) of the email communication ("From"); (3) who was copied and blind copied on such email ("CC" and "BCC"); (4) the subject line of the email ("RE" or "Subject"); (5) the names of any attachments; and (6) the text (body) of the email.

18.     <u>Unitization.</u>   The Parties shall use their best efforts to ensure that distinct documents are not merged into a single record, and single documents are not split into multiple records (i.e., hard copy documents should be logically unitized). The Parties shall make their best efforts to unitize the documents correctly. However, the Parties shall be required only to unitize hard copy documents based on the lowest physical binding element (staple, binder clip, etc.) of the documents as they were kept in the ordinary course of business. In the case of an organized compilation of separate documents – for example, a binder containing several separate hard copy documents behind numbered tabs – the document behind each tab should be scanned separately, but the relationship among the documents in the compilation should be reflected in the proper coding of the beginning and ending document and attachment fields. Within 14 days (or as otherwise agreed) after notice from a Requesting Party that a document appears to have been unitized incorrectly, the Producing Party shall either explain why the unitization is correct or produce a correctly unitized replacement.

19.     <u>Metadata Fields.</u>   The metadata fields specified in Appendix 1 that are associated with each electronic document will be produced, to the extent they are available. The Parties agree to meet and confer as necessary on the metadata specifications for sources not explicitly covered.

20.     <u>Documents Produced in Native Format.</u>   The Parties agree that they will produce the following types of ESI in their native file format:

- Excel spreadsheets

- Audio/video files

- Presentations (PowerPoint, Keynote, etc.)

- Documents exceeding 500 pages

21.    <u>Redacted Files.</u>  Extracted text will not be provided for electronic documents that have been redacted—e.g., for privilege—because the extracted text would reveal the redacted information. Instead, these files should be run through an OCR process set to the highest quality setting—to capture the visible text only and the results exchanged in lieu of the original extracted text. Documents that do not render in a readable format to TIFF, such as Excel spreadsheets, may be redacted in native form, so long as the Producing Party keeps a pristine, unredacted copy of the native file and identifies the natively redacted documents to the receiving Party in the redaction field. If Meta-Data is redacted from a file, such redaction will be appropriately reflected in the meta-data field in the load file to the extent reasonable and not burdensome.

22.    <u>Most Inclusive Email Productions.</u>  Email threads are email communications that contain prior or lesser-included email communications that also may exist separately in the Party's electronic files. A most inclusive email thread is one that contains all of the prior or lesser-included emails, including attachments, for that branch of the email thread. The Parties agree that removal of wholly included, prior-in-time, or lesser-included versions from potential review and production will reduce all Parties' costs of document review, production, and litigation-support hosting. Threading is therefore permitted, though not required.

23.    For the avoidance of doubt, only email messages for which the parent document and all attachments are contained in the more inclusive email message will be considered less inclusive email messages that need not be reviewed or produced. If the later in time message contains different text (such as where the later message adds in-line comments to the body of the earlier message), or does not include an attachment that was part of the earlier message, the earlier message must be produced.

24.     To the extent that an email thread contains privileged communications, such communications can be redacted. If an email thread contains both responsive, privileged communications and responsive, non-privileged communications, the entire email thread cannot be withheld as privileged.

25.     <u>Parent-Child Relationships.</u>  The Parties agree that parent-child relationships (the association between an attachment and its parent document) that have been maintained in the ordinary course of business should be preserved and produced to the extent reasonably practicable. For example, if a Party is producing a hard copy printout of an email with its attachments, as with an email, the attachments should be processed in order directly behind the email to the extent reasonably practicable.

26.     <u>Production Media.</u>  The Parties shall produce documents via an encrypted Secure File Transfer Protocol ("SFTP"), a secure ShareFile link, or an encrypted readily accessible electronic media (i.e., a hard drive), unless such electronic transmission is impracticable, or the Parties otherwise agree on a different method of transmission. The produced documents shall be password protected and/or encrypted. In the event of a production by physical media, the media must be delivered by the applicable production deadline.

27.     <u>Identification.</u>  The Parties shall place an identifying Bates numbering system on all documents produced during discovery, consistent with the production specifications and required Meta-Data fields contained in Appendix 1. Pursuant to Appendix 1, native files shall be produced with a single Bates number slip sheet that is branded on the native TIFF slip-sheet and is the filename of the native file and extracted text in the deliverable. To the extent the Parties require additional pagination on native files beyond the single TIFF slip sheet, the following alternatives may be considered by the Parties as necessary: electronically paginating Native File

ESI pursuant to a stipulated agreement that the alteration does not affect admissibility; some method of referring to unnumbered "pages" within each file; or any other practicable and reasonable method.

## V.    THIRD-PARTY ESI

28.    A Party that issues a non-Party subpoena (the "Issuing Party") shall include a copy of this Order with the subpoena and state that the Parties to the litigation have requested that third Parties produce documents in accordance with the specifications set forth herein.

29.    The Issuing Party is responsible for producing any documents obtained under a subpoena to all other Parties.

30.    If the Issuing Party receives any hard-copy documents or native files, the Issuing Party will process the documents in accordance with the provisions of this Order, and then produce the processed documents to all other Parties.

31.    However, any documents the Issuing Party does not intend to process for its own use may be disseminated to all other Parties in the format in which such documents are received by the Issuing Party. If the Issuing Party subsequently processes any such documents, the Issuing Party will produce those processed documents to all other Parties.

32.    If the non-Party production is not Bates-stamped, the Issuing Party will endorse the non-Party production with unique prefixes and Bates numbers prior to producing them to all other Parties.

## VI.    PRIVILEGE REVIEW

33.    A Party may withhold or redact a portion of a document or ESI if and to the extent that the document or portion redacted is protected by attorney-client privilege, the work-product doctrine, or another applicable privilege.

34.    <u>Production of Privilege Logs</u>.    Except as provided otherwise below, for any document withheld in its entirety on the basis of attorney-client privilege or attorney work product, the Producing Party will provide a metadata privilege log in Microsoft Excel format. The following metadata fields will be populated, if available and applicable, for each privilege log entry:

a.    Bates ProdBeg

b.    Bates ProdEnd

c.    Bates BegAttach

d.    Bates EndAttach

e.    Date-Time (Sent for emails, or Created and Last Modified for other ESI)

f.    Subject Line

g.    File Name

h.    Email From:

i.    Email To:

j.    Email cc:

k.    Email bcc:

l.    Author

35.    In the case of scanned hard copy documents, the producing Party will manually populate the corresponding metadata fields in the privilege log to the extent reasonable and not unduly burdensome.

36.    The Receiving Party may in good faith request a full privilege log description and/or privilege basis for certain entries, if it is not reasonably clear from the metadata provided

why the document was withheld. In this instance, the requesting Party must identify each unclear entry and explain the basis for requesting additional information.

37.     The Parties agree to meet and confer to first resolve any questions or disputes that may arise under this section.

38.     <u>Redacted Documents Do Not Need to be Logged.</u>  Redacted documents need not be logged as long as: (a) for emails, the objective metadata (i.e., to recipients, from, cc, bcc, date, and time, unless the privilege or protection is contained in these fields) is not redacted, and the reason for the redaction, such as "Privileged", is noted in the redaction text box or otherwise ascertainable on the face of the document (for redacted documents where the subject matter is not decipherable as a result of redactions, a description of the contents of the document that is sufficient to understand the subject matter of the document may be requested); and (b) for non-email documents, the reason for the redaction, such as "Privileged", is noted in the redaction text box or otherwise ascertainable on the face of the document in the redacted area.

39.     In accordance with this Paragraph, the Producing Party will undertake reasonable efforts to make limited, line-by-line redactions of privileged or work product information. After receipt of the production, if the Requesting Party cannot discern the basis for the privilege redaction, it may request in good faith that the Producing Party create a metadata privilege log for specific redacted documents, subject to the above section on "Production of Privilege Logs."

40.     The Producing Party shall identify the redacted documents on such log by their Bates numbers. Electronic documents that are redacted shall be identified as such in a "redaction" field in the accompanying data load file.

41.     <u>Exclusions from Logging.</u>    Absent a showing of good cause, privileged communications between client and trial counsel that post-date the filing of the complaint need

not be placed on a privilege log. The Parties further agree to meet and confer regarding any proposed additional categories of documents that presumptively need not be logged.

42.    <u>Disputes.</u>  After the receipt of a privilege log, any Party may dispute a claim of privilege. Prior to seeking Court intervention, the Party disputing, questioning, or otherwise objecting to a claim of privilege shall provide in writing the identification of the documents or category of documents for which it questions the claim of privilege and the reasons for disputing, questioning, or otherwise objecting to the privilege designation. Within fourteen (14) days, the Party that designated the documents as privileged shall provide a written response explaining the basis for its claim or privilege, or if applicable, de-designating documents as privilege and producing such documents in accordance with this Order. Thereafter, if the Parties continue to disagree, they shall then then meet and confer in good faith as to the claims of privilege. If agreement has not been reached after fourteen (14) days, the Parties shall submit the dispute to the Court for resolution.

43.    <u>Disclosure of Attorney-Client Privileged or Work-Product Protected Information.</u> Should a Producing Party learn that an inadvertent production or disclosure was made, the Producing Party shall send the Receiving Party a written request for return or destruction of the inadvertently produced or disclosed document. Within two (2) business days of such request, the Receiving Party shall comply with the requirements of Fed. R. Civ. P. 26(b)(5)(B); return or destroy the original and any and all hard or electronic copies of such document; and not otherwise use or disclose any information contained in the document. Should the Receiving Party seek to challenge the claim that the document is protected by the attorney-client privilege or work product immunity, the Receiving Party shall not use or disclose the contents of the document; argue that the Producing Party need satisfy the elements of Fed. R. Evid. 502(b) to

establish inadvertent disclosure; or otherwise argue that the production or disclosure was a waiver of such privilege or immunity. Upon request by the Receiving Party, the Producing Party shall furnish a copy of the document at issue to the Court for in camera review.

IT IS SO ORDERED

Dated: _____          _____

                                                                    Judge N. Rosenstengel

## APPENDIX 1:

## TECHNICAL SPECIFICATIONS AND
## REQUIRED METADATA FIELDS

**1.    IMAGES:**

- Produce documents as single page, black and white, Group IV, TIFF files.

- Image Resolution 300 DPI.

- File Naming Convention: Match Bates Number of the page.

- Insert placeholder image for files produced in Native Format.

- Original document orientation shall be retained.

- Images shall reveal comments, notes, track changes, speaker notes, and the like.

**2.    SPECIAL FILE TYPE INSTRUCTIONS:**

- Responsive, unredacted Microsoft Excel and other spreadsheet files, PowerPoint/Keynote and other presentation files, audio/video files, and animation files shall be produced in Native Format.

- The Producing Party will produce a placeholder (a single-page TIFF slip sheet indicating that the native item was produced) along with the file itself in Native Format.

- The placeholder will be branded with the production number in the lower right hand corner and the phrase "PRODUCED IN NATIVE ONLY" branded in the center of the page.

- The Producing Party will also brand any confidentiality or similar endorsements in the lower left-hand corner of the placeholder or on the TIFF file itself, or in the ESI production file name, pursuant to 112 of the Parties' Order for the Production and Exchange of Confidential and Highly Confidential Information dated October 9, 2023.

**3.    FULL TEXT EXTRACTION/OCR:**

- Produce full extracted text for all file types (Redacted text will not be produced) including text of embedded content.

- Produce OCR text for any hard copy document.

- Produce OCR text for any ESI where the source format was an image file (such as JPG, JPEG, GIF, BMP, PCX, PNG, TIF, TIFF etc.) where extracted text cannot be

provided, using industry standard OCR technology (Redacted text will not be produced).

- Produce OCR text for any redacted document.

- Production format: Single text file for each document, not one text file per page.

- File Naming Convention: Match BegBates Number.

4. **DATA LOAD FILES**

<u>Data Load File</u>: The data load file should use standard delimiters:

    o   Comma - ¶ (ASCII 20);

    o   Quote - b (ASCII 254);

    o   Newline-0 (ASCII174);

- The first record should contain the field names in the order of the data;

- All date fields should be produced in mmldd/yyyy format;

- Use carriage-return line-feed to indicate the start of the next record;

- Load files should not span across media (e.g., CDs, DVDs, Hard Drives, Etc.); a separate volume should be created for each piece of media delivered;

- The name of the data load file should mirror the name of the delivery volume, and should have a .DAT extension (i.e., ABC001.DAT);

- The volume names should be consecutive (i.e., ABC001, ABC002, et. seq.)

5. **IMAGE LOAD FILES**

- The name of the image load file should mirror the name of the delivery volume, and should have an .OPT extension (i.e., ABC001.0PT).

- The volume names should be consecutive (i.e., ABC001, ABC002, et. seq.).

- There should be one row in the Load File per TIFF image.

- Every image in the delivery volume should be contained in the image load file.

- The image key should be named the same as Bates Number of the page.

- Load files should not span across media (e.g., CDs, DVDs, Hard Drives, Etc.), i.e., a separate volume should be created for each piece of media delivered.

- The Opticon OPT image load file (.OPT) configuration shall be a page level comma delimited file containing seven fields per line: PageID, VolumeLabel, ImageFilePath, DocumentBreak, FolderBreak, BoxBreak, PageCount.

## METADATA FIELDS[1]

| Field Name | Description | Email | Non-Email ESI | Hard Copy |
|---|---|---|---|---|
| ProdBeg | Beginning page production number | x | x | x |
| ProdEnd | Ending page production number | x | x | x |
| BegAttach | Beginning page of attachment range | x | x | x |
| EndAttach | Ending page of attachment range | x | x | x |
| AttachCount | Number of attachments | x | x | |
| Custodian | Name of the custodian or repository name of the document produced - Last Name, First Name format | x | x | x |
| All Custodians | Name(s) of the deduplicated custodians or repository name(s) of the document produced - Last Name, First Name format; semi-colon delimited | x | x | x |
| FileName | File name of document | x | x | |
| FileExit | File extension of document | x | x | |
| Record Type | Type of Record, such as email, attachment, electronic (network) document, hard copy, mobile or chat | | | |
| Pages | For documents produced in TIFF form, number of pages in the document. For documents produced in native, page count will be 1 (for placeholder). | x | x | x |

---

[1]    X = denotes that the field should be included.

| Title | Title field extracted from the Metadata of a non-Email document | | | |
|---|---|---|---|---|
| Author | Document author of a non-Email document. | | x | x |
| Subject | Subject of email | x | x | x |
| From | Email author | x | x | |
| To | Email recipients | x | x | |
| CC | Email copies | x | x | |
| BCC | Email blind copies | x | x | |
| Date Sent | Date sent (mmidd/yyyy format) | | | |
| TimeSent | Time received (hh:mm:ss format) | x | x | |
| DateCreated | Creation date (mm/dd/yyyy format) | x | x | |
| TimeCreated | Creation time HH:MM in Coordinated Universal Time (UTC)) | | x | |
| DateLastMod | Last modification date (mm/dd/yyyy format) | | x | |
| TimeLastMod | Time last modified (HH:MM in Coordinated Universal Time (UTC)) | | x | |
| MD5HASH | The MD5 Hash value or de-duplication key assigned to a document. | x | x | |
| Message-ID | The Outlook Message ID assigned by the Outlook mail server, if applicable. | x | x | x |
| ProdVolume | Production volume name | x | x | x |
| Confidentiality | Confidentiality designation pursuant to the Protective Order | x | x | x |

| Redacted | Descriptor for documents that have been redacted (<yes> or <no>) | x | x | x |
|---|---|---|---|---|
| NativeLink | Path to produced native file used for linking. | x | x | x |
| FullText | Path to produced extracted text file used for database linking. | x | x | x |