# EXHIBIT 15



**ROGER BALDWIN FOUNDATION**
**OF ACLU, INC.**
150 N. MICHIGAN AVENUE
SUITE 600
CHICAGO, ILLINOIS 60601-7570
(312) 201-9740
FAX (312) 201-9760
WWW.ACLU-IL.ORG

January 15, 2026

*Via Email*

*Sent pursuant to FRCP 37*

Anshuman A. Vaidya (avaidya@hinshawlaw.com)
James M. Brodzik (JBrodzik@hinshawlaw.com)
Calvin R. Edwards, Jr. (cedwards@hinshawlaw.com)
Vincent M. Rizzo (vrizzo@hinshawlaw.com)
Hinshaw & Culbertson LLP

Lisa Cook (lisa.cook@ilag.gov)
Office of the Illinois Attorney General

Re: <u>*Monroe v. Hughes*, No. 18-cv-156-NJR/Plaintiffs' Fourth Requests for Production</u>

Dear Counsel,

We are writing concerning document discovery. Plaintiffs' Fourth Requests for Production were served on September 26, 2025. Our current fact discovery deadline is January 23, 2026. The parties have exchanged a significant quantity of email correspondence and had meet-and-confers on September 3, November 11, and December 19, with little result.

To date, only a fraction of the documents (perhaps 10%) defendants have produced pertain to class members outside of Menard or respond to categories in our 4th RFP (as opposed to being produced as a result of the court's Menard orders). This means that, with the deadline for fact discovery bearing down, defendants have an enormous amount of catch-up to do and have provided no timetable on which they expect to accomplish this.

Throughout the fall, defendants maintained an unsupportable position that discovery in this certified class action should be limited to the named plaintiffs only, but during our meet and confer on December 19, defendants finally abandoned that position. In turn, at that meeting, we made a significant concession in agreeing that, for now, production of class member medical and mental health records could be limited to the past year.

At the same meeting, you indicated that you were making provision for copying of class member documents on a rolling prison-by-prison basis, as we understood it (since defendants' continued lack of electronic health records at most of the IDOC facilities makes physical copying necessary). We did point out that the records at the women's prisons (including Logan) and JITC were electronic, and that the records of hormone treatment maintained by UIC would also be

1

electronic, and suggested that those could be produced more promptly. However, since that meeting, we have neither seen any results from the roaming copying caravan (which should capture grievances and PREA complaints as well as health records), nor have we seen electronic health records from the institutions that have them.

Finally, defendants' organization of their productions makes it extremely difficult for us to assess what defendants believe they have produced so far, and whether defendants are withholding documents on the basis of objections that we need to take to the court. Rule 34(b)(2)(E)(i) provides that, "A party must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request." Since the documents defendants have produced are not as kept in the usual course, the Rule mandates identification by categories in the request, which defendants have not done. This makes it difficult if not impossible to know which requests defendants have responded to. We need this information promptly and going forward.

Defendants' approach to ESI production (specifically emails) has created even more needless delay. Since the existing ESI protocol dates from 2018 and permits production in formats that are the equivalent of stone tablets, we provided a draft updated ESI protocol on September 17, 2025. Defendants continue to insist that they wish to adhere to the cumbersome method of production they have traditionally insisted on which is enshrined in the old protocol, by *converting emails to pdf*. Defendants never provided any comments on our proposed revised protocol, merely saying, during the November 11 meet and confer, that they did not think it was necessary. Defendants' insistence on a mode of production which is not the native format, eliminates important information, and delays production is indefensible.

Defendants' recent comments on the ESI "hit list" reinforce why this mode of production must stop. Defendants protest that 100,000 emails would be too many, and suggest starting with ***100***. At that rate, discovery by defendants' methods will take until the next decade. 100,000 emails is not excessive in electronic discovery. IDOC is perfectly capable of producing emails in native format and does so in other cases. Moreover, with the further simple modifications we have pointed out that defendants should already be using—including deduplication—the number of hits, as Ms. Hudson has pointed out, will certainly be lower than 100,000, probably considerably lower.

Please let us know promptly (and in any event no later than noon on Tuesday January 20) how (or if) defendants propose to address these issues, and a specific timetable on which they will be addressed, so that we will know which issues we must raise with the court.

Sincerely,

Camille E. Bennett
Director, Corrections Reform

cc: Other plaintiffs' counsel