IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **JANIAH MONROE, *et al.*, individually and on behalf of a class of similarly situated individuals,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**LATOY HUGHES, STEVEN MEEKS, and KENYA KEY,**<br><br>**Defendants.** | **Case No. 3:18-CV-00156-NJR** |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

This matter is before the Court on Plaintiffs' motion to compel non-privileged information and related request for *in camera* review (Doc. 1185). Plaintiffs seek an order compelling Defendants to disclose several categories of documents subject to a claim of privilege. Defendants filed a response in opposition to the motion (Doc. 1198) and produced a sampling of documents from their privilege log for *in camera* review.

After the Court directed the parties to confer regarding the dispute, the parties narrowed their disagreement to three issues. This order addresses two of those issues. First, Plaintiffs argue that Defendants improperly withheld non-privileged documents when a third-party was involved in the communication. Second, Plaintiffs ask the Court to continue the depositions of two witnesses—Drs. William Puga and Shane Reister—so that they can testify regarding privileged matters discussed in the presence of two other

individuals—Drs. Erica Anderson and Joy Houston—whose presence they say constitutes a waiver of any privilege.

Both issues center on whether the presence of a third party destroyed the attorney-client privilege, which, of course, is the general rule. *See United States v. Evans*, 113 F.3d 1457, 1462 (7th Cir. 1997). Defendants argue, however, that the communications here remain protected because the third parties were "functionally equivalent" to employees of the Illinois Department of Corrections ("IDOC"). (Doc. 1194, p. 8). The Court directed Defendants to provide additional information regarding the relationship between IDOC and Drs. Anderson and Houston. (Doc. 1196). Defendants provided materials about the doctors, including an intergovernmental agreement and contract. (Doc. 1198). On August 24, 2026, the Court held a hearing regarding the discovery dispute.

After the hearing, the Court allowed the parties to submit supplemental briefing on the issue of whether an individual's state employment was relevant in determining whether the communications here are protected by attorney-client privilege. (Doc. 1200, p. 1). The Court also ordered Defendants to submit the entire transcripts from the depositions of Drs. Puga and Reister. The Court has now reviewed those documents and additional briefs. (Docs. 1204, 1205).

## LEGAL STANDARDS

The essence of the attorney-client privilege under federal law is well-settled: the privilege "protects communications made in confidence by a client and a client's employees to an attorney, acting as an attorney, for the purpose of obtaining legal advice." *Sandra T.E. v. S. Berwyn Sch. Dist. 100*, 600 F.3d 612, 618 (7th Cir. 2010); *see also*

*Rehling v. City of Chicago*, 207 F.3d 1009, 1019 (7th Cir. 2000). The relevant inquiry looks to whether "legal advice of any kind [was] sought . . . from a professional legal adviser in his capacity as such" and whether the communication "relat[ed] to that purpose" was "made in confidence . . . by the client." *United States v. Evans*, 113 F.3d 1457, 1461 (7th Cir. 1997) (quoting 8 John Henry Wigmore, Evidence in Trials at Common Law § 2292 (John T. McNaughton rev. 1961)). The privilege is narrowly construed because of its effect of reducing information available to the fact finder. *Fisher v. United States*, 425 U.S. 391, 403 (1976). The privilege is maintained even where a particular communication is exchanged between non-attorney employees. *Rusk v. Henry Cnty., Illinois*, No. 4:25-CV-04076-SLD-RLH, 2026 WL 1506189, at *3 (C.D. Ill. May 29, 2026); *In re Loc. TV Advert. Antitrust Litig.*, No. 18-06785, 2023 WL 5956851, at *13 (N.D. Ill. July 28, 2023); *Washtenaw Cnty. Employees' Ret. Sys. v. Walgreen Co.*, No. 15 C 3187, 2020 WL 3977944, at *2 (N.D. Ill. July 14, 2020); *Gerba v. Nat'l Hellenic Museum*, 338 F. Supp. 3d 851, 858 (N.D. Ill. 2018). And it can "extend to communications between two non-attorney agents 'if they reflect the lawyer's thinking or are made for the purpose of eliciting the lawyer's professional advice or other legal assistance.'" *Rusk*, 2026 WL 1506189, at *3 (quoting *Gerba*, 338 F. Supp. 3d at 857 (N.D. Ill. 2018)). But the knowing disclosure to a third-party usually surrenders the privilege. *Burden-Meeks v. Welch*, 319 F.3d 897, 899 (7th Cir. 2003) (collecting cases); *Jenkins v. Bartlett*, 487 F.3d 482, 490 (7th Cir. 2007) ("[O]rdinarily, statements made by a client to his attorney in the presence of a third person do not fall within the privilege, even when the client wishes the communication to remain confidential.").

## Discussion

During their review of Defendants' privilege logs, Plaintiffs noticed individuals who were not employed by IDOC or the Illinois Attorney General's Office on many of the listed documents (primarily emails). These individuals include Dr. Erica Anderson, Dr. Joy Houston and personnel at Southern Illinois University ("SIU"), Dr. Loren Schecter and personnel at Rush University Medical Center, Dr. Joshua Katz and associated personnel at the University of Illinois–Chicago ("UIC"), and staff at Wexford and Centurion. Plaintiffs assert that the presence of these individuals in email chains and communications waives Defendants' attorney-client privilege. Plaintiffs also argue that Defendants waived the privilege over documents shared with these individuals. Similarly, they argue that the presence of Drs. Anderson and/or Houston at certain steering committee meetings (a topic of inquiry during the depositions of Drs. Puga and Reister) waived any claim of privilege for statements made by IDOC attorney Megan Ditzler during those meetings.

Defendants argue that the communications remain privileged because, although non-employees, these individuals were independent contractors or consultants and were acting as the "functional equivalent" of an IDOC employee. In the alternative, Defendants argue that the third parties' relationship with IDOC through Illinois's Intergovernmental Cooperation Act, 5 Ill. Comp. Stat. 220/5, *et seq.*, and/or their common legal interests with IDOC preserve the privilege claim in this case.

**A. Functional Equivalent Test**

Defendants' first argument relies heavily on out-of-circuit precedent. The Eighth Circuit has held that the attorney-client privilege extends to communications with an outside consultant when the consultant is relied on in a manner that is the "functional equivalent" to that of an employee. *Sentis Grp., Inc., Coral Grp., Inc. v. Shell Oil Co.*, 559 F.3d 888, 902 (8th Cir. 2009) (citing *In re Bieter Co.*, 16 F.3d 929, 939–40 (8th Cir. 1994)). Other courts have adopted the *de facto* employee standard set forth in *Bieter*. *See United States v. Graf*, 610 F.3d 1148, 1159 (9th Cir. 2010); *Berisha v. Lawson*, 973 F.3d 1304, 1319 (11th Cir. 2020) (holding that an author's pre-clearance review of a book with publisher's attorney protected by privilege). Defendants ask this Court to adopt the "functional equivalent" test and find that independent contractors such as Dr. Erica Anderson, Dr. Joy Houston, Dr. Loren Schecter, Dr. Joshua Katz, as well as personnel at Southern Illinois University, University of Illinois–Chicago, Rush University Medical Center, Wexford, and Centurion, were functional employees of IDOC when providing medical care for prisoners.

But the Seventh Circuit has not adopted the *Bieter* test, and district courts in this Circuit have questioned whether it would do so.[1] *Breuder v. Bd. of Trs. of Cmty. Coll. Dist.*

---

[1] The closest the Seventh Circuit has come to addressing the *Bieter* test was in denying a writ of mandamus regarding a Northern District ruling that the attorney-client privilege did not protect documents that were shared with Defendant Whirlpool's outside advertising agency. *In re Whirlpool Corp.*, 597 F.3d 858, 860 (7th Cir. 2010). In finding that the company was not entitled to mandamus relief, the court noted that the district court's opinion was "lengthy and thoughtful," and the judge "carefully considered" Whirlpool's arguments regarding privilege. *Id.* at 859-60. The district court's opinion both expressed doubt that the Seventh Circuit would adopt the *Bieter* test and determined that the relationship between Whirlpool and its advertising firm was not that of a *de facto* employee. *LG Elecs. U.S.A., Inc. v. Whirlpool Corp.*, 661 F. Supp. 2d 958, 963-65 (N.D. Ill. 2009). The Seventh Circuit never addressed whether the *de facto* employee test from

*No. 502*, No. 15 CV 9323, 2021 WL 4283464, at *4 (N.D. Ill. Sept. 21, 2021) ("[C]ourts in this Circuit have 'doubt[ed] the wisdom' of the functional equivalent test and questioned 'whether the Seventh Circuit would endorse' it.") (collecting cases); *LG Elecs. U.S.A., Inc. v. Whirlpool Corp.*, 661 F. Supp. 2d 958, 963 (N.D. Ill. 2009) (collecting cases). These courts reason that the test "has the potential to expand the privilege dramatically," contravening Seventh Circuit guidance that the privilege be circumscribed. *In re: Dealer Mgmt. Sys. Antitrust Litig.*, 335 F.R.D. 510, 517 (N.D. Ill. 2020) (cleaned up).

The Seventh Circuit has nevertheless provided some guidance regarding claims of privilege despite a third party's presence. In *Jenkins v. Bartlett*, 487 F.3d 482 (7th Cir. 2007), the Seventh Circuit recognized that "there is an exception to the general rule that the presence of a third party will defeat a claim of privilege when that third party is present to assist the attorney in rendering legal services." *Id.* at 491. The exception applies to those who assist an attorney, such as paralegals and investigators, as well as consultants "engaged to assist the attorney in providing legal services to the client," including retained experts. *Id*. The exception has also been applied to the client's agents. *See Rao v. Bd. of Trs. of the Univ. of Illinois*, No. 14-CV-0066, 2016 WL 6124436, at *3 (N.D. Ill. Oct. 20, 2016); *Heriot v. Byrne,* 257 F.R.D. 645, 665 (N.D. Ill. 2009) ("[T]he attorney-client privilege applies to third parties who are agents of either the lawyer or the client.") (citing *Evans,* 113 F.3d at 1462).

*Bieter* would apply to third-party privilege claims, nor did it have an opportunity to address the issue. The Seventh Circuit's position on the test set forth in *Bieter* remains unsettled.

**B. Illinois's Intergovernmental Cooperation Act**

Defendants also argue that the presence of certain third parties in communications does not destroy the privilege because their relationship with IDOC was through the Intergovernmental Cooperation Act, 5 Ill. Comp. Stat. 220/5, *et seq*. The Intergovernmental Cooperation Act allows one or more agencies to contract with another "to perform any governmental service, activity or undertaking or to combine, transfer, or exercise any powers, functions, privileges, or authority which any of the public agencies entering into the contract is authorized by law to perform, provided that such contract shall be approved by the governing bodies of each party to the contract." *Id.* Nothing in the Act itself indicates that the parties are automatically considered one entity for purposes of attorney-client privilege, although the Act requires that the "contract . . . set forth fully the purposes, powers, rights, objectives and responsibilities of the contracting parties." *Id.*

**C. Common Legal Interest Exception**

The common interest doctrine "encompasses communications made in the presence of third parties where the parties are coordinating a defense strategy or pooling information for a common legal purpose." *Pampered Chef v. Alexanian*, 737 F. Supp. 2d 958, 965 (N.D. Ill. 2010); *see also Diamond Servs. Mgmt. Co., LLC v. C&C Jewelry Mfg., Inc.*, No. 19 C 7675, 2021 WL 5834004, at *4 (N.D. Ill. Dec. 9, 2021) ("The common interest doctrine is applicable when (1) parties undertake a joint effort (2) with respect to an identical legal interest, as opposed to a business or rooting interest, and (3) the withheld communications are made to further the foregoing ongoing legal enterprise."). It is an

exception to the general rule that the presence of a third party waives privilege and only applies when "the parties undertake a joint effort with a respect to a common legal interest." *United States v. BDO Seidman, LLP*, 492 F.3d 806, 815-16 (7th Cir. 2007). There is no requirement that the communications be made in the anticipation of litigation. *Id.* But the communications must be with an attorney or at the direction of the attorney; sharing of information between members of the common interest group is usually not protected. *McCullough v. Fraternal Ord. of Police, Chicago Lodge 7*, 304 F.R.D. 232, 239 (N.D. Ill. 2014) (collecting cases). The exception applies to all communications that would otherwise be privileged to "encourage parties with a shared legal interest to seek legal assistance in order to meet legal requirements and to plan their conduct accordingly." *Id.* at 240. (quotations omitted). It is "strictly confined" to only "those communications made to further an ongoing enterprise." *BDO Seidman, LLP*, 492 F.3d at 815-16.

**D. Third-party Privilege**

Although Defendants ask this Court to adopt the *de facto* employee exception set forth by the Eighth Circuit, the Court finds that many of the third parties identified by Plaintiffs either are protected under the narrower exceptions adopted by the Seventh Circuit or would not otherwise fall within the ambit of the test. The Court discusses the application of *Jenkins* and the common legal interest exception to each category of third-party participants below.

***1. Dr. Anderson***

Dr. Anderson's relationship with IDOC falls squarely within the contours of *Jenkins*. The contract between IDOC and Dr. Anderson indicates that she was hired to

provide "expert consultation services related to the care and management of transgender individuals." (Doc. 1198-2, p. 1). She was specifically hired to "offer professional guidance to support IDOC's review and development of policies," as well as to provide expertise to IDOC "as it evaluates compliance with clinical standards, responds to ongoing litigation, and reviews the medical and mental-health needs" of transgender inmates. (*Id.*). The contract notes that Dr. Anderson would provide assistance in this litigation, "including testifying through deposition and/or courtroom testimony." (*Id.* at p. 2). She would also draft reports or memoranda as directed by IDOC's counsel. (*Id.*). The renewal portion of the agreement states that Dr. Anderson was being contracted to provide "expert consultation in response to ongoing litigation in assessing the IDOC's policies and training for transgender care and treatment." (*Id.* at p. 19).

Dr. Anderson's contract makes clear that she was hired to provide legal advice and assist in developing legal opinions, thus entitling her to attorney-client privilege for those conversations that seek legal advice or a legal response. *See Jenkins*, 487 F.3d at 491. Thus, Defendants did not waive the attorney-client privilege by including her on emails and other communications.

**2. *Dr. Houston and SIU Personnel***

Defendants argue that Dr. Houston's presence on emails and at the steering committee meetings does not destroy privilege because her relationship with IDOC was formalized through the Intergovernmental Cooperation Act, 5 Ill. Comp. Stat. 220/5, *et seq.*. This argument has some initial appeal, as IDOC and SIU are both creatures of state law, and the underlying claim in this litigation is functionally brought against the State

itself. But in light of the Seventh Circuit's guidance that the privilege is to be narrowly construed, the Court does not believe the Intergovernmental Cooperation Act is sufficient to support a claim of privilege here. Notably, nothing in the Act provides that the parties to an agreement are one entity for purposes of attorney-client privilege. And despite Defendants' contention that they have provided a $10 million budget for SIU's services and the fact that the agreement here requires the State to represent officials working under the agreement who are sued, the agreement makes clear that the parties working under the agreement are independent contractors. (Doc. 1198-1, p. 9). The agreement specifically notes that "there is no relationship of agency, partnership, joint venture, employment, or franchise between the Parties." (*Id*.). Nothing in the agreement suggests that the parties to the agreement were one entity, that SIU staff were employees of IDOC, or that they were *de facto* employees of IDOC.

In the alternative, Defendants argue that those individuals who were party to the agreement share a common legal interest thereby protecting their communications with IDOC counsel. Dr. Houston and other SIU personnel were hired to provide gender care for transgender inmates. Dr. Puga testified in his deposition that others at the University were also helping with the settlement in *Lippert v. Ghosh, et al.*, No. 10-cv-04603 (N.D. Ill.), as well as working with IDOC to develop training for staff in transgender care. The documents reviewed by the Court make clear that Dr. Houston and other outside medical staff are also involved in the implementation of and response to court orders. They clearly have the same legal interest in providing constitutionally adequate physical and mental healthcare to transgender inmates. Although Dr. Houston and other medical staff are not

named as defendants in this lawsuit, they are clearly involved in providing care to inmates, subjecting themselves to possible legal liability. IDOC's agreement even recognizes the possibility of legal liability and requires that the State of Illinois represent and indemnify the SIU School of Medicine providers in the event civil proceedings are commenced against the parties (Doc. 1198-1, p. 8). They clearly have a common legal interest in ensuring that care is provided in accordance with the Court's Orders.

That Dr. Houston and other providers are able to speak freely with IDOC's counsel, who are often also their own counsel as employees of the state, "serves the public interest by advancing compliance with the law, facilitating the administration of justice and averting litigation." *BDO Seidman, LLP*, 492 F.3d at 816. The Court therefore finds that the privilege extends to these individuals.

This holding carries over to the disputed deposition testimony. Drs. Puga and Reister testified that at the "steering committee" meetings, they discussed legal issues and Ms. Ditzler provided feedback to the group. Often, those conversations involved updates on this case's progress or questions about the medical providers' own actions for which they sought legal advice. Dr. Houston sometimes participated in those meetings. Based on its conclusion above, the Court finds that any conversations that Dr. Houston participated in with Ms. Ditzler would, likewise, be privileged.

Even if the communications were not protected by the common legal interest exception, the Court notes that there was no clear testimony establishing that either Dr. Houston or Dr. Anderson was present at any meeting where Ms. Ditzler was also present and gave legal advice. Although Dr. Puga testified that Dr. Houston was typically

at the meetings, he testified that Ms. Ditzler sometimes attended. (Deposition of Dr. Puga, Doc. 1194, p. 77). Dr. Reister similarly testified that Ms. Ditzler attended once in a while, and he could not recall if Ms. Ditzler ever answered questions while Dr. Anderson or Dr. Houston was present. (Deposition of Dr. Reister, Doc. 1194, pp. 28, 31). He merely noted that Ms. Ditzler didn't attend often. Nothing in the questioning laid a proper foundation to suggest that any privilege was waived by the presence of a third party.

Further, the Court notes that both doctors had trouble recalling specific details about the meetings. Dr. Puga noted that there were no notes from any meetings—and no agenda. Dr. Reister could not recall a time when a specific legal issue was discussed with Ms. Ditzler at the steering committee, and neither doctor appeared to have a clear recollection of the specifics regarding the meetings. The Court finds that further questioning on this topic would be unlikely to yield relevant information.

***3. Dr. Joshua Katz and UIC Personnel***

The Court finds that Dr. Joshua Katz's relationship with IDOC is a closer call given the limited information in the record. Defendants failed to provide an agreement between the University of Illinois-Chicago ("UIC") and IDOC, but they note that UIC's care is also provided through an intergovernmental agreement that requires indemnification similar to SIU's intergovernmental agreement. (Doc. 1205, p. 5). Like Dr. Houston, Dr. Katz provides medical care to transgender inmates and practices at a public state university. Thus, communications regarding the legal ramifications of providing medical care and implementing the previously issued injunction in this case would be protected by privilege.

*4. Dr. Loren Schecter and Rush University Medical Center Personnel*

The Court has even less information about Dr. Schecter's relationship with IDOC. Defendants merely lump Dr. Schecter in with the entire group of individuals providing care, calling them all "independent consultants" who were highly relevant to the litigation and operating as functional employees of IDOC. (Doc. 1194, p. 9). Defendants have not provided a working agreement between IDOC and Rush, nor have they indicated that Rush had an intergovernmental agreement with IDOC. (Rush University is a private university unlike SIU and UIC.) The burden of demonstrating that there is a valid privilege protecting communications is on the party seeking to invoke that privilege. *Shaffer v. Am. Med. Ass'n,* 662 F.3d 439, 446 (7th Cir. 2011); *United States v. BDO Seidman*, 337 F.3d 802, 811 (7th Cir. 2003). Although Defendants indicate that Dr. Schecter provides medical care to class members, they have failed to provide any documentation from which the Court can determine that Dr. Schecter shares a common legal interest that would sustain the privilege, much less that the functional equivalent test from the Eighth Circuit would apply. Thus, Dr. Schecter's inclusion in otherwise privileged communications would waive the privilege.

*5. Wexford and Centurion Personnel*

Personnel from Wexford and Centurion would also be protected by the common legal interest exception. As Defendants point out, IDOC and the medical companies who provide medical care at the prisons have entered into a Joint Defense and Common Interest Agreement. (Doc. 1194, p. 9). The providers share a common legal interest in providing constitutionally adequate medical care to class members as they too could be

liable for the care provided to transgender inmates. Numerous cases involving medical care by the two medical providers and their employees are brought in this district, demonstrating their potential liability. Any communication that compiles information or seeks legal advice for their common legal interest would be protected by attorney-client privilege.

* * *

Defendants are reminded that the common legal interest exception only applies when the underlying communication itself is a privileged communication. Privilege applies "to those communications which reflect the lawyer's thinking [or] are made for the purpose of eliciting the lawyer's professional advice or other legal assistance" and includes only those communications which further the common legal interest. *BDO Seidman, LLP*, 492 F.3d at 815-16. Simply copying a lawyer on an email does not "transform [a] non-privileged document into a privileged one." *McCullough*, 304 F.R.D. at 237. In conducting its limited *in camera* review, the Court noted some communications that did not appear to contain privileged discussions, despite the inclusion of some attorneys in the email thread. A review of Defendants' privilege log also revealed communications that included third parties beyond the scope of this Order, who do not appear to fit within any of the relationships described above, such as employees of advocacy organizations or court personnel. The inclusion of these third parties in the communications would waive any claimed privilege.

## CONCLUSION

For the reasons stated above, Plaintiffs' motion to compel non-privileged information and request for *in camera* review (Doc. 1185) is **GRANTED in part** and **DENIED in part**. Plaintiffs' request to re-depose Dr. Puga and Dr. Reister, as well as their request to depose Ms. Ditzler, is **DENIED**.

In light of the issues highlighted above regarding the adequacy of Defendants' privilege review, Defendants are **DIRECTED** to review their privilege log and produce to Plaintiffs those documents that do not contain privileged material as set forth in this Order. The Court recognizes that this process may take time and expects the parties to collaborate in good faith. The parties shall file status reports on the status of the privilege review on or before **October 1, 2026**, **October 22, 2026**, and **November 5, 2026**.

**IT IS SO ORDERED.**

**DATED: September 24, 2026**

**NANCY J. ROSENSTENGEL**
**United States District Judge**